UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: TIKTOK, INC., ) <br> CONSUMER PRIVACY ) <br> LITIGATION, ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> This Document Relates to All Cases ) | MDL No. 2948 <br><br> Master Docket No. 20 C 4699 <br><br> Judge John Z. Lee <br><br> Magistrate Judge Sunil R. Harjani |

### DECLARATION OF EKWAN E. RHOW

Pursuant to 28 U.S.C. § 1746, I, Ekwan E. Rhow, MDL Interim Counsel for Plaintiffs Misty Hong, minor A.S., through her mother and legal guardian Laurel Slothower, and minor A.R., through her mother and legal guardian Gilda Avila in the above-captioned matter, based upon my personal knowledge, state as follows:

1. Attached hereto as Exhibits 1 and 2 are true and correct copies of, respectively, the August 6, 2020 and August 14, 2020 Executive Orders by the President relating to, among other things, the mandated sale of TikTok and the directive that Defendants destroy data. Attached hereto as Exhibits 3 and 4 are true and correct copies of, respectively, August 10, 2020 and August 17, 2020 articles published by Reuters relating to the September 20 deadline to sell TikTok as well as potential structures of any such transaction and issues related to transferring TikTok's data and systems.

**Pre-CMO 1 Settlement Discussions and the August 13, 2020 Mediation**

2. My firm, along with Glancy Prongay & Murray LLP, initiated this action with the first-filed complaint, which was filed in the U.S. District Court for the Northern District of California on November 27, 2019. I was appointed as Interim Lead Counsel by the Honorable Lucy

H. Koh in the Northern District of California on July 14, 2020[1] after a competitive Rule 23(g) process involving six different leadership applications and prior to the August 4, 2020 centralization of the TikTok actions in this Court by the Judicial Panel on Multidistrict Litigation ("JPML"). On April 6, 2020, before any of the other cases involved in this MDL were filed, I mediated my clients' claims with Defendants. The case did not settle.

   3.  Prior to the JPML's centralization of the TikTok actions in this Court, Ms. Katrina Carroll—who had been appointed via stipulation and order in this Court as temporary interim plaintiffs' counsel for administrative purposes and only pending the JPML's decision—scheduled an August 13, 2020 mediation with Defendants.

   4.  Both Defendants and Ms. Carroll invited me to participate in the August 13 mediation. I and other counsel declined. We believed it made more sense to conduct a mediation after the TikTok actions were centralized by the JPML and leadership was determined by the court.

   5.  After the JPML centralized the TikTok actions in this Court on August 4, Defendants again invited me to participate in the August 13 mediation. I agreed. While the mediation was still potentially premature, it was important that I attend given my firm's knowledge of the case and given that we – along with Glancy, Prongay & Murray LLP – had been investigating and litigating the matter longer than any other firm. But Defendants quickly reversed course and mere days before the mediation specifically excluded me from participation. Defendants claimed to do so based on a "feeling" and baseless accusations that I and/or my law firm was conspiring with Donald Trump and/or Defendants' competitors.[2]

---

[1] *See* Exhibit 5 hereto, which is a true and correct copy of the July 14, 2020 Order Appointing Interim Lead Plaintiffs' Counsel and Plaintiffs' Executive Committee.

[2] *See* Exhibit 6 hereto, which is a true and correct copy of the email I sent to Defendants' counsel Mr. Tony Weibell on August 11, 2020, concerning, inter alia, the details of my exclusion from the August 13 mediation.

6. Defendants also barred the law firm Glancy Prongay & Murray LLP ("Glancy Firm")[3] from participating in the mediation, and offered the same baseless suspicion as justification. Defendants informed Megan Jones of Hausfeld LLP[4] that she could attend the mediation, but conditioned that involvement on her not sharing any mediation information with me, any attorneys at my law firm, or any Glancy attorneys during or after the mediation. This would of course have prevented counsel from collaborating, analyzing, and assessing whether the settlement made sense for the class. Ms. Jones declined to participate under this condition because it would have required her to violate Judge Koh's July 14, 2020 mandating communication with me and others in the group appointed by Judge Koh, and because it would have interfered with our ethical and professional duties to communicate with our clients.

7. Because Defendants were hand-selecting certain plaintiffs' attorneys to participate while barring others, I did not believe the mediation should proceed, but nonetheless it did. Ms. Carroll's temporary appointment as interim counsel during the pendency of the JPML proceedings had expired on August 4 with the JPML order, and no plaintiffs' counsel present at mediation (either in person or virtually) had been appointed by this Court to serve as Interim Lead Counsel pursuant to Rule 23(g).

8. Following mediation, Defendants and the group led by Ms. Carroll refused to provide any information relating to the settlement terms and conditions. I still do not know the monetary terms, the injunctive relief terms, the conditions attendant to the settlement, or how the participants arrived at such terms and conditions.

---

[3] Prior to the centralization of the TikTok actions in this Court, Kara M. Wolke of Glancy Prongay & Murray LLP had been appointed to the Executive Committee in N.D. Cal. pursuant to Judge Koh's July 14, 2020 Order. *See* Exhibit 5.

[4] Prior to the centralization of the TikTok actions in this Court, Ms. Jones had been appointed to the Executive Committee in N.D. Cal. pursuant to Judge Koh's July 14, 2020 Order. *See* Exhibit 5.

9. Without consulting me or various other law firms whose cases were initially assigned to Judge Koh, on August 16, 2020, Defendants and Ms. Carroll filed a Status Report stating that the one-day August 13 mediation had resulted in a settlement in principle, subject to certain undisclosed conditions.[5] As explained below, Defendants and the Settling Plaintiffs initially refused to disclose, and Defendants continue to refuse to disclose, the terms and conditions of the settlement in principle.

**Post-CMO 1 Settlement and Litigation Status**

10. On August 17, 2020, one day after Defendants and the plaintiffs who participated in the mediation announced their conditional settlement, this Court issued Case Management Order 1 ("CMO 1"). CMO 1 appoints all plaintiffs' counsel as MDL Interim Counsel until the Court appoints Interim Lead Counsel pursuant to Rule 23(g) and requires that the parties meet and confer about a number of case issues, including settlement, evidence preservation and fact discovery.[6]

11. Accordingly, on August 18, 2020, I reached out to Ms. Carroll as well as the other signatories to the Status Report announcing the conditional settlement (hereinafter "Settling Plaintiffs"). First, I informed them that I planned to ask Defendants to disclose the scope and terms of the conditional settlement because all designated MDL Interim Counsel are entitled to know those terms pursuant to CMO 1 and because they pertain to our respective clients and the Class in general.[7] I invited Settling Plaintiffs to join in the request.[8] Second, I asked Ms. Carroll and the other Settling

---

[5] Doc. No. 1.

[6] Doc. No. 4 at ¶¶ 7, 9(d)(i)-(vi).

[7] *See* Exhibit 7 hereto, which is a true and correct copy of the email I sent to Ms. Katrina Carroll and other Settling Plaintiffs' counsel on Tuesday, August 18, 2020.

[8] *See* Exhibit 7 hereto.

Plaintiffs' counsel to meet and confer concerning discovery, class certification, experts, and dispositive motions pursuant to CMO 1.[9]

12. On August 19, 2020, Ms. Carroll and the other Settling Plaintiffs' counsel declined to support our effort to obtain the terms and conditions of the settlement in principle from Defendants. They also refused to meet and confer about the conditional settlement or any other topics included in CMO 1, alleging that the undisclosed conditional settlement had mooted CMO 1's meet-and-confer requirements.[10]

13. I again reached out to Ms. Carroll and other Settling Plaintiffs' counsel on August 20, 2020, reiterating my belief that the disclosure of the terms of the conditional settlement was necessary so that all MDL Interim Counsel could assess whether the conditional settlement was fair and reasonable to the Class.[11]

14. On August 21, 2020, Ms. Carroll and other Settling Plaintiffs' counsel again refused to join me in asking Defendants to disclose the conditional settlement terms to all MDL Interim Counsel and reiterated that a meet and confer on other case issues pursuant to CMO 1 was "not germane in light of the procedural posture of the case."[12] I sent another email to Ms. Carroll and other Settling Plaintiffs' counsel the same day asking if they had any issue with my firm and other Interim MDL

---

[9] *See* Exhibit 7 hereto.

[10] *See* Exhibit 8 hereto, which is a true and correct copy of the email Ms. Katrina Carroll sent to me and others on Wednesday, August 19, 2020.

[11] *See* Exhibit 9 hereto, which is a true and correct copy of the email I sent to Ms. Katrina Carroll and other Settling Plaintiffs' counsel on Thursday, August 20, 2020.

[12] *See* Exhibit 10 hereto, which is a true and correct copy of the email Ms. Katrina Carroll sent to me and others on Friday, August 21, 2020.

Counsel asking Defendants to disclose the conditional settlement terms to all MDL Interim Counsel.[13] Ms. Carroll responded that Settling Plaintiffs would not join in our request.[14]

15. In addition to reaching out to the Settling Plaintiffs, I did the same with Defendants' counsel. On August 19, 2020, I sent correspondence to Defendants' counsel asking them to disclose the terms and conditions of the settlement in principle. I explained that such information was required for all Interim Counsel to adequately protect the interests of their clients and the Class. I also stated that the information was required in order for Interim Counsel to meet and confer regarding settlement as required by CMO 1.[15]

16. On August 20, 2020, Defendants' counsel Tony Weibell responded to my letter and refused to disclose any information about the conditional settlement. The same day, Mr. Weibell sent another email about data preservation, a fact discovery issue about which MDL Interim Counsel are required to meet and confer under CMO 1. Mr. Weibell stated that although relevant data remains under a litigation hold, Defendants were investigating how compliance with the August 14 Executive Order might affect the disposition of the data. He added that he believed that the issue of data preservation had become moot.

17. I responded on August 21, 2020, noting that Defendants' attempt to shield the terms of the conditional settlement from all MDL Interim Counsel was a violation of CMO 1 and reiterated that all MDL Interim Counsel are entitled to access the terms and conditions of the settlement in principle.

---

[13] *See* Exhibit 11 hereto, which is a true and correct copy of the email I sent to Ms. Katrina Carroll and other Settling Plaintiffs' counsel on Friday, August 21, 2020.

[14] *See* Exhibit 12 hereto, which is a true and correct copy of an email sent to me and other counsel by Ms. Carroll on Friday, August 21, 2020.

[15] *See* Exhibit 13 hereto, which is a true and correct copy of the letter I sent to Defendants' counsel Tony Weibell and copied to all other plaintiffs' counsel on Wednesday, August 19, 2020.

18. Later that same day, Defendants and the Settling Plaintiffs jointly filed a Proposed Case Management Order stating: "A Settlement in principle subject to certain conditions has been reached."[16] They further asserted that there is no need for all MDL Interim Counsel to confer regarding discovery or CMO 1 case issues because they allegedly are no longer "applicable as a result of the Settlement."[17]

19. However, the next day, August 22, 2020, Mr. Weibell agreed to schedule a mediation to occur no later than August 29, 2020. Consequently, Mr. Weibell and I – along with other counsel for the Litigating Plaintiffs – jointly filed a status report the following day, August 23, 2020.[18]

20. On August 24, 2020, however, Mr. Weibell informed me that the Settling Plaintiffs had communicated to the mediator that they had concerns about the purpose of the mediation we had announced the day before.

21. Later that same day, Mr. Weibell filed another status report with the Court, reversing course on mediation, stating that Defendants had "misapprehended the circumstances," and affirming their support of the Proposed Case Management Order filed jointly with the Settling Plaintiffs on August 21, 2020.[19]

22. The following day, August 25, 2020, Ms. Carroll announced via email on behalf of the Settling Plaintiffs that "to the extent that defendant is willing to discuss with the non-settling plaintiffs

---

[16] Doc. No. 6 at ¶ 6(e).

[17] Doc. No. 6 at ¶ 6(a)-(d), (f).

[18] Doc. No. 7.

[19] Doc. No. 8.

whether they can agree to the settlement terms already negotiated or alternatively, to add value to the settlement, we are fully supportive of those endeavors . . . ."[20]

23. Mr. Weibell responded to Ms. Carroll's email, changing his position from August 23 when he had agreed to mediation with me, and stating that Defendants were "working to see whether and to what extent it would be beneficial to . . . let the settlement be shared with others prior to submission to the Court for preliminary approval."[21]

24. As of the date of the filing of this Emergency Motion, Defendants and Settling Parties have not agreed to meet and confer about settlement and discovery-related issues set forth in CMO 1. This refusal violates CMO 1 and poses irreparable harm to the Class for the reasons set forth in detail in the Emergency Motion.

25. On August 25, 2020, I provided notice of this emergency motion to all counsel.[22] Defendants responded on August 26, 2020 but did not agree to immediately comply with CMO 1 by taking the steps set forth in our Emergency Motion.[23]

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed at Los Angeles, California.

Executed on August 27, 2020.    /s/ Ekwan E. Rhow
                                Ekwan E. Rhow

---

[20] *See* Exhibit 14 hereto, which is a true and correct copy of the final email in a chain, sent to Mr. Weibell and copied to me and other counsel by Ms. Carroll on Tuesday, August 25, 2020.

[21] *See* Exhibit 15 hereto, which is a true and correct copy of the final email in a chain, sent to Ms. Carroll and copied to me and other counsel by Mr. Weibell on Tuesday, August 25, 2020.

[22] *See* Exhibit 16 hereto, which is a true and correct copy of the final email in a chain, sent by me to counsel on August 25, 2020.

[23] *See* Exhibit 17 hereto, which is a true and correct copy of the final email in a chain, sent by Mr. Weibell to me and other counsel on August 26, 2020.