UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: TIKTOK, INC., | ) | |
| CONSUMER PRIVACY | ) | MDL No. 2948 |
| LITIGATION, | ) | |
| | ) | Master Docket No. 20 C 4699 |
| | ) | |
| | ) | Judge John Z. Lee |
| | ) | |
| | ) | Magistrate Judge Sunil R. Harjani |
| This Document Relates to All Cases | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF EMERGENCY MOTION TO COMPEL DEFENDANTS AND THE SETTLING PLAINTIFFS TO COMPLY WITH THE COURT'S CASE MANAGEMENT ORDER NO. 1**

I.     **INTRODUCTION**

Since the Judicial Panel on Multi-District Litigation ("JPML") issued its August 4, 2020 order centralizing numerous TikTok class actions in this Court, (1) the President has issued two Executive Orders directed at Defendants; (2) Defendants' American CEO just announced his resignation after four months on the job, citing an imminent change in corporate structure and governance; and (3) CNBC reports today that a sale of TikTok may come within 48 hours.[1] In this emergency context, the ongoing disregard for this Court's Case Management Order No. 1 (the "CMO") – including Defendants' refusal to meet and confer on a range of time-sensitive issues – threatens irreparable harm to the Class – including the plaintiffs represented by undersigned Interim Counsel (the "Litigating Plaintiffs").

Immediate relief from the Court is necessary prior to the President's September 20 deadline for Defendants to sell TikTok. Depending on how that sale is structured and the technical steps

---

[1] https://www.cnbc.com/2020/08/27/tiktok-ceo-kevin-mayer-to-leave-the-company.html; https://twitter.com/CNBCnow/status/1298979401338585089.

taken in connection with it, these ongoing violations of the CMO may irreparably harm the Class by permanently preventing them from: (1) obtaining monetary relief from Defendants because those based in China with the greatest financial resources will no longer have property or ties here; and (2) securing the evidence the Class needs to establish Defendants' liability should either (a) Defendants' current, albeit secret, settlement talks with their hand-picked Plaintiffs' group (the "Settling Plaintiffs") break down or (b) an eventually-executed settlement agreement is rejected by the Court. Defendants have offered no reliable assurances on either subject.

Thus, pursuant to this emergency motion, the Litigating Plaintiffs respectfully urge the Court to enter an order compelling Defendants and the Settling Plaintiffs to comply with the CMO by immediately (1) disclosing to, and meeting and conferring with, all Interim Counsel concerning the terms and conditions of the purported settlement; (2) including all Interim Counsel in ongoing settlement discussions; and (3) meeting and conferring with all Interim Counsel on the other specific items required by the CMO. Doc. No. 4. Given the pressing September 20 deadline and a separate November 12 deadline for the destruction of data (which may result in an even earlier data destruction by Defendants), it is urgent that the Court take steps now to ensure the TikTok app data at the center of the Class's claims is preserved by a third party in the U.S. and the destruction of that data in China involves adversarial oversight.

This is not a typical case. TikTok is at the center of a global controversy as a result of Defendants' improper theft of U.S. user data, which they have transmitted to servers in China and elsewhere, and Defendants face an Executive Order issued on August 6, 2020 effectively requiring them to consummate a sale on or before September 20 that would divest the China-based Defendants of their current ownership of TikTok operations and assets in the U.S.[2] Potential

---

[2] This Executive Order, *see* Declaration of Ekwan E. Rhow ("Rhow Decl.") at Ex. 1, was issued pursuant to the International Emergency Economic Powers Act (50 U.S.C. § 1701 *et seq.*), the

acquirers have been mentioned in the press, and some reports suggest the transaction may involve a purchase of Defendants' U.S. assets rather than acquisition of the U.S. companies.[3] If so, that could mean: (1) the China-based Defendants – who have the financial resources to make the Class whole – will have no ties to the U.S. following the deal; and (2) the acquiring domestic entity may be able to avoid assuming any of Defendants' liabilities – including liabilities to the Class. Also, Defendants face a second Executive Order issued on August 14, 2020 requiring them to destroy data they have stolen from U.S. users and other evidence relevant to these centralized actions.[4] Judicial oversight is required to ensure that the destruction does not deprive the Class of the ability to prove its case.

The conditions leading to the purported settlement are also unique. The participants in the August 13 mediation included Defendants and only those Plaintiffs' counsel whom Defendants allowed to attend. Defendants explicitly barred the only Court-appointed interim lead counsel at the time – appointed pursuant to the Honorable Lucy H. Koh's July 14, 2020 Rule 23(g) order prior to transfer – as well as several other counsel. Defendants still refuse to disclose the terms of the purported settlement, even though this Court issued the August 17 CMO designating all counsel of record as Interim Counsel who must discuss settlement issues. Moreover, because they were barred, the Litigating Plaintiffs could not present either (1) their years-long work product and data buttressing the strength of their claims or (2) their recently amended Video Privacy Protection Act claim, with potential statutory damages in the billions of dollars. Doc. No. 5. The Litigating Plaintiffs, not the Settling Plaintiffs, named and served the China-based Defendants, and the Litigating Plaintiffs alone brought many of the claims that Defendants and the Settling Plaintiffs

---

National Emergencies Act (50 U.S.C. § 1601 *et seq.*), and 3 U.S.C. § 301. Two Reuters articles discuss this September sale deadline. *See* Rhow Decl. at Exhs. 3-4.
[3] *See, e.g.,* Rhow Decl. at Exhs. 3-4.
[4] This Executive Order, *see* Rhow Decl. at Ex. 2, was issued pursuant to pursuant to the Defense Production Act of 1950, as amended (section 721), 50 U.S.C. 4565.

purport to have now settled "in principle" with all Defendants. Doc. No. 5. But the Litigating Plaintiffs were in the optimal position to present their claims at any mediation so as to ensure the genuine value of such claims was contemplated and paid.

Defendants and certain plaintiffs' counsel have filed two documents seeking to block the Litigating Plaintiffs from taking the following important steps before the September 20 deadline to protect the Class: (1) critically analyzing the terms of the purported settlement; and (2) acting to preserve the evidence required to prove the Class's claims. Doc. Nos. 1, 6. On August 16, without consulting the Litigating Plaintiffs, Defendants and the Settling Plaintiffs submitted a "Joint Status Report" announcing they had a "settlement in principle" that, subject to certain undisclosed conditions, resolves "all claims" on a "class-wide basis" and asking the Court to stay the case until mid-November. Doc. No. 1 at ¶ 4. Then, on August 21, after refusing to meet and confer with the Litigating Plaintiffs on settlement and other aspects of the CMO, Defendants, the Settling Plaintiffs, and other counsel submitted a "Proposed Case Management Schedule," Doc. No. 6, in which they seek similar delay by asserting that the topics on which the Court mandated the parties to meet and confer are now moot, despite: (1) the exclusion of the Litigating Plaintiffs and other Interim Counsel from the August 13 mediation, Rhow Decl. at ¶¶ 5–6; (2) the absence of a signed settlement agreement, Doc. Nos. 1, 6; (3) the ongoing withholding of the terms and conditions of the purported settlement from the Litigating Plaintiffs, Rhow Decl. at ¶¶ 8–9; and (4) the narrow window of time remaining before the sale, divestment, and data destruction required by the two Executive Orders. Rhow Decl. at Exhs. 3–4.

To be clear, the Litigating Plaintiffs would be in favor of a resolution that provides appropriate monetary and injunctive relief to the Class. But because Defendants refuse to disclose the secret terms and conditions of the so-called agreement in principle, neither the Litigating Plaintiffs nor the Court can assess such terms and conditions to determine if additional steps are

required to protect the Class prior to the September 20 deadline. And there is cause for concern because, as discussed above, the August 13 mediation lacked proper order. Also, without examining the purported settlement's terms, one cannot know: (1) whether there is a signed memorandum of understanding ("MOU") that covers all material terms, sufficiently protects the Class during the finalization of the settlement and the approval process, and ensures that Defendants cannot escape liability after it is too late for the Class to enforce its claims; (2) whether Defendants are required to place sufficient funds in escrow prior to the September 20 deadline to ensure monetary recovery is possible after the mandated sale; and (3) whether Defendants are required to transfer the evidence necessary to prove the Class's claims to a trusted third party before the data destruction required by the August 14 Executive Order.

This is not the usual case where the parties and the Court can await preliminary and final approval of a settlement to probe the purported agreement. If the mandated sale occurs and is structured in a way that prevents the Class from obtaining an appropriate monetary recovery and from preserving the evidence required to litigate the case in the event a settlement is not reached or is not court-approved, the Class will be irreparably injured. Accordingly, to prevent such irreparable harm, the Litigating Plaintiffs respectfully request that the Court order Defendants and the Settling Plaintiffs to comply with the Court's CMO by immediately: (1) sharing with all Interim Counsel the terms and conditions of their purported settlement (pursuant to the standard mediation confidentiality agreement already entered into) as is required to satisfy the CMO's mandate that all Interim Counsel—not just Defendants' hand-picked group—meet and confer about settlement issues; (2) including all Interim Counsel in all aspects of the ongoing oral and written settlement discussions and negotiations between Defendants and the Settling Plaintiffs as is likewise required to satisfy the CMO's mandate that all Interim Counsel meet and confer on settlement issues; and (3)

meeting and conferring with all Interim Counsel on the other specific items in the CMO that Defendants and the Settling Plaintiffs have refused to address with the Litigating Plaintiffs to date.

## II. TIMELINE OF MATERIAL EVENTS

**August 4, 2020:** The JPML issues a transfer order establishing MDL No. 2948. Doc. No. 2.

**August 13, 2020:** The Settling Plaintiffs mediate this case with Defendants. Defendants exclude the Litigating Plaintiffs—who have the longest history in the case, the broadest claims, and the most detailed factual allegations, resulting from their extensive investigations in the U.S. and China undertaken well before the Settling Plaintiffs filed their cases—as well as other plaintiffs' counsel from the mediation despite repeated requests to participate. Doc. Nos. 1, 5-–6; Rhow Decl. at ¶ 5.

**August 14, 2020:** The Litigating Plaintiffs file an amended complaint that they had been preparing for some time stating a cause of action under the Video Privacy Protection Act ("VPPA") with potentially billions of dollars in statutory damages,[5] which Litigating Plaintiffs would have presented at the August 13 mediation had they not been excluded. Doc. No. 5.

**August 16, 2020**: Defendants and the Settling Plaintiffs submit a "Joint Status Report" announcing the purported settlement and asking for a stay until mid-November 2020. Doc. No. 1. To date, no details of the purported settlement have been disclosed to the Litigating Plaintiffs. Rhow Decl. at ¶¶ 8–9.

**August 17, 2020**: The Court issues Case Management Order No. 1 appointing counsel in the various centralized cases as Interim Counsel. Doc. No. 4. The Litigating Plaintiffs file a status report detailing our exclusion from the mediation. Doc. No. 5.

---

[5] Consolidated Amended Class Action Complaint ¶¶ 3, 54–57, 288–96, *In re TikTok, Inc. Privacy Litig.*, Case No. 1:20-cv-04723 (N.D. Ill.), Doc. No. 89 (filed Aug. 14, 2020).

**August 21, 2020**: Defendants, the Settling Plaintiffs, and other aligned plaintiffs submit a "Proposed Case Management Schedule," without input from the Litigating Plaintiffs, seeking to pause proceedings until the end of October by asserting that the issues requiring a meet-and-confer under the CMO are moot. Either Defendants have disclosed the terms of their settlement to this broader group of plaintiffs' counsel, while still excluding the Litigating Plaintiffs, or those other counsel seek to pause this litigation without knowing the terms of the settlement. Doc. No. 6; Rhow Decl. at ¶ 18.

**August 23, 2020:** Defendants agree to mediate with the Litigating Plaintiffs. Rhow Decl. at ¶ 19. Those parties jointly file a Status Report. Doc. No. 7.

**August 24, 2020:** After the Settling Plaintiffs' counsel apparently voiced concerns to the mediator about the purpose of this third mediation, Defendants withdraw their offer to mediate with the Litigating Plaintiffs. Rhow Decl. at ¶¶ 20–21. These apparently are the circumstances that Defendants purport to have "misapprehended" and that resulted in their hopes being "misplaced." Doc. No. 8 at ¶ 2.

**August 25, 2020:** The Settling Plaintiffs' counsel reverse course and announce that they are now willing to allow Defendants to mediate with the Litigating Plaintiffs and agree that the Litigating Plaintiffs should see the terms of the purported settlement. But despite having taken the opposite position only a day before, Defendants then refuse to mediate with the Litigating Plaintiffs. Rhow Decl. at ¶¶ 22-23.

**Upcoming Deadlines**

**September 8, 2020:** Class Counsel Leadership Briefs are due to this Court. Doc. No. 4 at ¶ 11(a).

**September 20, 2020**: Date by which President Trump's August 6 Executive Order requires the China-based Defendants to divest themselves of TikTok's U.S. operations **and assets**. Rhow Decl., Exhs. 1, 3–4.

**September 22, 2020:** This Court has set a hearing for September 22, 2020. Doc. No. 4.

**October 26, 2020**: Date on which Defendants and the Settling Plaintiffs propose to file a motion for preliminary approval of the purported settlement. Doc. No. 6 at ¶ 5(a).

**November 12, 2020**: Deadline for the destruction of Defendants' data under the August 14 Executive Order. Rhow Decl., Ex. 2.

### III.   LEGAL STANDARD

Case management is of the utmost importance in proceedings of this size, and MDL courts have even "greater discretion to organize, coordinate and adjudicate [their] proceedings." *In re Testosterone Replacement Therapy Prod. Liab. Litig.*, No. 1:14-CV-01748, 2018 WL 6258898, at *2 (N.D. Ill. June 11, 2018). This is particularly true with respect to managing discovery and taking actions designed to move the cases "in a diligent fashion toward resolution by motion, settlement or trial." *Id.* District courts handling complex, multidistrict litigation "must be given wide latitude with regard to case management" in order to achieve efficiency. *Dzik v. Bayer Corp.*, 846 F.3d 211, 216 (7th Cir. 2017) (citing *In re Asbestos Prods. Liab. Litig.* (No. VI), 718 F.3d 236, 243, 246–48 (3rd Cir. 2013)).

### IV.   ARGUMENT

  **A. Defendants' refusal to meet and confer with all MDL Interim Counsel about settlement directly violates the CMO.**

This Court issued its CMO on August 17, 2020. Doc. No. 4. The CMO explicitly provides that all counsel electronically registered to receive electronic notifications in this litigation "shall serve as Interim Counsel of Record until such time that the Court appoints Liaison Counsel and Lead Counsel." Doc. No. 4 at ¶ 7. It also provides that all Interim Counsel are required to meet and confer regarding settlement efforts, among other topics, before the initial September 22, 2020 status

conference. *Id.* at ¶ 9(d)(v). Despite these clear directives, and despite Defendants' and the Settling Plaintiffs' representation in an August 16, 2020 Status Report that the parties have reached a "settlement in principle, subject to certain conditions" that purportedly resolves "all of the claims asserted in the MDL," Doc. No. 1 at ¶ 4, Defendants refuse to meet and confer with all MDL Interim Counsel (including undersigned Interim Counsel) regarding the purported settlement, and the Settling Plaintiffs have taken shifting positions on that question. Rhow Decl. at ¶¶ 11–24.

In particular, the Litigating Plaintiffs have asked both Defendants and the Settling Plaintiffs numerous times to disclose the nature, scope, and terms of the purported settlement to all MDL Interim Counsel, but both Defendants and the Settling Plaintiffs refused to do so. Rhow Decl. at ¶¶ 11–17. Indeed, Defendants and the Settling Plaintiffs reiterated their refusal to meet and confer with all MDL Interim Counsel about the status of the purported settlement in a Proposed Case Management Order filed on August 21, 2020. Doc. No. 6. That Proposed Case Management Order fails to address the CMO's directive that MDL Interim Counsel meet and confer about settlement and merely states: "A Settlement in principle subject to certain conditions has been reached." *Id.* at ¶ 6(e). While the Settling Plaintiffs reversed their prior stance in an August 25 email, Defendants have not, and thus the violation of the CMO continues. Rhow Decl. at ¶¶ 22–23.

> **1. Defendants' refusal to disclose the terms and conditions of the purported settlement is part of an ongoing strategy to exclude counsel for the Litigating Plaintiffs that is particularly problematic in view of the impending September 20 deadline.**

Defendants' refusal to meet and confer about the purported settlement is troubling both because it is a direct violation of this Court's CMO and also because it reveals Defendants' ongoing strategy to detrimentally exclude the Litigating Plaintiffs from the settlement process.

First, Defendants negotiated the purported settlement with only certain plaintiffs' counsel, hand-selected by Defendants themselves, at an August 13, 2020 mediation conducted before this Court has considered leadership applications or issued a Rule 23(g) leadership order – and after

attorney Katrina Carroll's administrative appointment in the N.D. Ill. actions as temporary interim lead counsel for the JPML proceedings had expired.[6] That is, Defendants negotiated the purported settlement in a leadership vacuum with no clarity as to who had ultimate authority on the plaintiffs' side to consummate a settlement on behalf of the entire Class – a structurally-flawed arrangement that created the wrong incentives for plaintiffs' counsel who participated in the mediation. Ms. Carroll only had authority to resolve individual claims on behalf of her own clients, not the Class.

Further, Defendants effectively chose counsel for their adversaries, the Class, at mediation by barring counsel for the Litigating Plaintiffs from participating even though such counsel: (1) had the longest history in the litigation; (2) possessed the most knowledge about the case and filed the most factually and legally researched complaint and amended complaint; (3) had previously mediated with Defendants in April 2020; and, significantly, (4) unlike any counsel for the Settling Plaintiffs, had been appointed Rule 23(g) lead counsel in another jurisdiction after a competitive application process and, at the time, were the only court-appointed counsel for the Class.[7] As a result of this improper bar, not only were the Litigating Plaintiffs unable to present their new VPPA claim at mediation, but they also were precluded from presenting the factual and legal support for other claims brought against Defendants (some of which only they had named and served), including California causes of action not found in other TikTok class action complaints and BIPA factual

---

[6] *E.R. v. TikTok, Inc. et al.*, Case No. 20-cv-02810 (N.D. Ill.), Doc. No. 12 ("6. Plaintiffs' Counsel in the N.D. Ill. Related Actions have met and conferred and have agreed to designate Katrina Carroll of Carlson Lynch LLP as **Temporary** Interim Lead Counsel for Plaintiffs, responsible for communicating with counsel for the Common Defendants and this Court **until a decision is made in the MDL**. 7. Ms. Carroll's appointment in the role of Temporary Interim Lead Counsel **is solely for the limited purpose of assisting the parties and the Court and in no way prejudices the rights of any counsel in the N.D. Ill. Related Actions or subsequently-filed or transferred related cases to seek a leadership appointment** from this Court at the appropriate time.") (emphasis added); Doc. No. 18 ("The motion to designate Katrina Carroll … as lead Plaintiffs' counsel **during the pendency of the MDL petition** is also granted.") (emphasis added).
[7] The history surrounding this inappropriate bar has been set forth in detail in an earlier Status Report and need not be repeated here. Doc. No. 5.

allegations unique to undersigned Interim Counsel's complaint based on their extensive domestic and foreign investigations. Only counsel for the Litigating Plaintiffs had a Court-ordered appointment that allowed representation of the Class at the time of the August 13 mediation. Settling Counsel did not.

Defendants tried to justify the August 13 mediation bar based on a "feeling" that certain counsel for the Litigating Plaintiffs might have a conflict that threatened Defendants. Doc. No. 5 & Ex. A thereto. Ten days after mediation, however, Defendants apparently no longer felt there was a conflict and agreed to a third mediation with Litigating Plaintiffs. Doc. No. 7; Rhow Decl. at ¶ 19. But the next day, counsel for the Settling Plaintiffs apparently raised concerns about the mediation going forward, and Defendants backed out. Doc. No. 8; Rhow Decl. at ¶¶ 20–21. Then, in a dizzying set of reversals, on August 25, the Settling Plaintiffs reversed their position and communicated that they do not object to an additional mediation session involving Defendants and the Litigating Plaintiffs, but *Defendants* reversed course again too and now, once again, refuse to mediate with the Litigating Plaintiffs. Rhow Decl. at ¶¶ 22–24.

### 2. Defendants' violation of the CMO threatens irreparable harm in light of the August 6 and August 14 Executive Orders.

The sale of TikTok must be consummated by September 20 or earlier pursuant to the August 6 Executive Order, at which point the China-based entities may no longer be subject to jurisdiction or collection and the acquiring entity may not be liable to the Class and the Litigating Plaintiffs. Consequently, before it is too late, all Interim Counsel must immediately meet and confer on the terms and conditions of the "settlement in principle" to evaluate whether such terms are fair and reasonable to the Class or whether changes must be made prior to September 20 (or any earlier date of sale). To fail in this regard would threaten to irreparably harm the Class and the Litigating Plaintiffs. It is likewise imperative that all Interim Counsel meet and confer on the settlement terms and conditions to ensure that, prior to September 20 (or any earlier date of sale), there is: (1) a

signed MOU with all material terms; (2) an escrow account holding the funds for the Class; and (3) the transfer of the evidence necessary to prove the Class's claims to a trusted third party.

> **B. Defendants' and the Settling Plaintiffs' refusal to meet and confer with all MDL Interim Counsel regarding other case issues violates the CMO and threatens irreparable harm.**
>
>> **1. Defendants' and the Settling Plaintiffs' refusal to meet and confer on other case issues, including discovery and data preservation, violates the CMO.**

In addition to settlement, the CMO requires that MDL Interim Counsel meet and confer on several other case issues, including fact discovery, depositions, class certification, expert discovery, and dispositive motions. Doc. No. 4 at ¶ 9(d)(i)–(vi). Here again, Defendants and the Settling Plaintiffs have refused to meet and confer with all Interim Counsel about any of those issues on the basis that they are allegedly moot in light of the undisclosed purported settlement. Rhow Decl. at ¶ 24. In their August 21 joint Proposed Case Management Order, Defendants and the Settling Parties assert that the topics are "[n]ot applicable as a result of the Settlement." Doc. No. 6 at ¶ 6(a)–(d), (f). A potential class settlement is no settlement at all until an enforceable settlement agreement is signed by the parties duly authorized to act on behalf of the Class and is approved by the Court as fair and reasonable. Thus, fact discovery is not moot because the Court has not appointed duly authorized Class counsel and has not granted preliminary approval of the purported settlement (which has not been fully executed or presented), and because the purported settlement cannot have resolved the many claims the Settling Plaintiffs did not bring. Defendants' and the Settling Parties' refusal to meet and confer on fact discovery, including, but not limited to, the urgent data preservation issues below, violates the CMO.

>> **2. There is an urgent need for Defendants and all MDL Interim Counsel to meet and confer about fact discovery and data preservation because of the August 14 Executive Order.**

The August 14 Executive Order's directives to divest and destroy data relevant to these

Page 12 of 16

centralized cases pose a serious and imminent threat to the Class's ability to prove its allegations and establish a factual and legal basis for its entitlement to relief. Specifically, the Executive Order provides that within 90 or 120 days, Defendants must "divest all interests and rights in[:]" (1) "any tangible or intangible assets or property" used for operation of the TikTok app in the United States; and (2) "any data obtained or derived from" TikTok users in the United States. Rhow Decl., Ex. 2 at § 2(b)(i)–(ii). Critically, "upon divestment, ByteDance shall certify in writing to CFIUS that ***it has destroyed all data that is required to divest pursuant to section 2(b)(ii), as well as all copies of such data wherever located* . . . ."** *Id.* at § 2(c) (emphasis added).

With the September 20 sale deadline and the November 12 data destruction deadline looming, and with the potential of such deadlines to cause Defendants to embark on an earlier course of data destruction at any time, it is imperative that Defendants immediately comply with the Court's CMO. To avoid irreparable harm to the Litigating Plaintiffs and the Class, Defendants must meet and confer with all MDL Interim Counsel pursuant to the CMO to discuss discovery and, in particular, data preservation. The potential adversity caused by non-compliance with the CMO necessitates that the parties act quickly to place crucial TikTok user data in the hands of a trusted third party within the United States in order to protect the Class's ability to prove and recover on all of its claims. The purported settlement does not moot this issue since Defendants and the Settling Plaintiffs propose withholding the terms and conditions from public scrutiny until October 26, 2020, Doc. No. 6 at ¶ 5(a), at which point the data in question may have been destroyed pursuant to the two Executive Orders.

### V.     CONCLUSION

Accordingly, to prevent irreparable harm to their ability to litigate their claims and those of the Class against Defendants and to ultimately recover monetary damages to make the Class whole should any settlement fail to materialize or not be approved, the Litigating Plaintiffs respectfully

request that the Court order Defendants and the Settling Plaintiffs to immediately comply with the CMO, in particular by: (1) disclosing to all Interim Counsel, and meeting and conferring with them concerning, the terms and conditions of the purported settlement; (2) including all Interim Counsel in ongoing settlement discussions; and (3) meeting and conferring with all Interim Counsel on the other specific items required by the CMO.

Respectfully submitted,

DATED: August 27, 2020  **BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.**

By: _____/s/ Ekwan E. Rhow_____
Ekwan E. Rhow
BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Telephone: (310) 201-2100
Email: erhow@birdmarella.com

MDL Interim Counsel
Attorneys for Plaintiffs Misty Hong, minor A.S., through her mother and legal guardian Laurel Slothower, and minor A.R., through her mother and legal guardian Gilda Avila

DATED:  August 27, 2020       **GLANCY PRONGAY & MURRAY LLP**

By:  /s/ *Kara M. Wolke*
Kara M. Wolke
1925 Century Park East, Suite 2100
Los Angeles, California  90067-2561
Telephone: (310) 201-9150
Los Angeles, California 90067-2561
Email: info@glancylaw.com

MDL Interim Counsel
Attorneys for Plaintiffs Misty Hong, minor A.S., through her mother and legal guardian Laurel Slothower, and minor A.R., through her mother and legal guardian Gilda Avila

DATED:  August 27, 2020       **PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP**

By:  /s/ *David M. Given*
David M. Given
39 Mesa Street, Suite 201, The Presidio
San Francisco, CA 94129
Telephone: (415) 398-0900
Email: dmg@phillaw.com

MDL Interim Counsel
Attorneys for Plaintiffs Meghan Smith, minors C.W. and I.W., through their mother and legal guardian Mikhaila Woodall, and minor R.P., through her mother and legal guardian Lynn Pavalon

DATED:  August 27, 2020       **HAUSFELD LLP**

By:  /s/ *Megan E. Jones*
Megan E. Jones
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Telephone: (415) 633-1908
Email: mjones@hausfeld.com

MDL Interim Counsel
Attorneys for Plaintiffs minor P.S., through her legal guardian Cherise Slate, and minor M.T.W., through her legal guardian, Brenda Washington

| | |
|---|---|
| DATED: August 27, 2020 | **BURNS CHAREST LLP** |

By:    */s/ Amanda Klevorn*
Amanda Klevorn
365 Canal Street, Suite 1170
New Orleans, Louisiana 70115
Telephone: (504) 779-2845
Email: aklevorn@burnscharest.com

MDL Interim Counsel
Attorneys for Plaintiffs minor P.S., through her legal guardian Cherise Slate, and minor M.T.W., through her legal guardian, Brenda Washington

| | |
|---|---|
| DATED: August 27, 2020 | **LAWRENCE KAMIN, LLP** |

By:    */s/ Peter E. Cooper*
Peter E. Cooper
300 S. Wacker Dr., Ste. 500
Chicago, IL 60606
Telephone: (312) 372-1947
Email: pcooper@lawrencekamin.com

MDL Interim Counsel
Attorneys for Plaintiffs Misty Hong, minor A.S., through her mother and legal guardian Laurel Slothower, and minor A.R., through her mother and legal guardian Gilda Avila, Meghan Smith, minors C.W. and I.W., through their mother and legal guardian Mikhaila Woodall, and minor R.P., through her mother and legal guardian Lynn Pavalon, P.S., through her legal guardian Cherise Slate, and minor M.T.W., through her legal guardian, Brenda Washington

## CERTIFICATE OF SERVICE

I hereby certify that on August 27, 2020, the foregoing document was filed electronically through the Court's Electronic Case Filing System. Service of this document is being made upon all counsel of record in this case by the Notice of Electronic Filing issues through the Court's Electronic Case Filing System on this date.

*/s/ Ekwan R. Rhow*
Ekwan E. Rhow