*AMENDED*

EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| IN RE: TIKTOK, INC., CONSUMER PRIVACY LITIGATION | ) ) ) ) ) ) ) ) ) ) ) |

**MDL No. 2948**

**Master Docket No. 20 C 4699**

**Judge John Z. Lee**

**Magistrate Judge Sunil R. Harjani**

## DECLARATION OF JAMES B. ZOURAS IN SUPPORT OF APPLICATION TO SERVE AS A MEMBER OF THE STEERING COMMITTEE

Under penalties as provided by law pursuant to 28 U.S.C. § 1746, the undersigned certifies

that the statements set forth in this instrument are true and correct:

1.      As counsel for Plaintiff H.S., a minor, through her guardian, J.S., I submit this Declaration

in support of my application to serve as a member of the Steering Committee, pursuant to Case

Management Order No. 2, ECF No. 24.  I make these statements based on personal knowledge

and if called to testify, I could and would competently testify consistently with all matters set forth

herein.

2.      I am a member in good standing of the Illinois State Bar and one of the two founders and

principals of the Chicago-based law firm of Stephan Zouras, LLP.  After graduating from DePaul

University College of Law, where I was ranked in the top 10% of my class and served as Editor

of the Law Review, I was admitted to practice law in Illinois in 1995.  Following a one-year judicial

clerkship, I have worked my entire professional career as a plaintiffs' trial lawyer and class action

litigator.

3.      For approximately 24 years, I have been admitted to the Trial Bar of the of the United States District Court for the Northern District of Illinois, and have been admitted or admitted *pro hac vice* to various federal and state courts throughout the United States for the purpose of prosecuting class and collective actions, including the Central District of Illinois, the Southern and Eastern Districts of New York, the Superior Court for the State of California, the Eastern District of Missouri, the District of Maryland, the Southern District of Ohio, the Northern, Middle and Southern Districts of Florida, the District of Massachusetts, the Eastern District of Michigan, the District of New Jersey, the District of Minnesota, the First Judicial District of Pennsylvania, the Middle District of Pennsylvania, the Western District of Washington, the Southern and Northern Districts of Iowa, the Western District of North Carolina, the District of Arizona, and the District of New Mexico.  I have also argued before various federal and state appellate courts as lead appellate counsel on at least 14 occasions and served as lead trial counsel on at least 12 major civil jury trials which have gone to verdict.  I am also a member of the bar of the Supreme Court of the United States.

4.      Since 2002, my practice has been highly concentrated in representing employees in cases arising under federal and state wage and hour laws, and other statutes, including the Fair Labor Standards Act (FLSA), the Illinois Minimum Wage Law (IMWL) and comparable state wage and hour laws, and other statutes, across the United States. The vast majority of these cases proceeded as class and/or collective actions.  Since early 2017, my firm and I have also concentrated on representing plaintiffs in class actions arising under the Illinois Biometric Information Privacy Act ("BIPA").

5.      I am frequently invited as a speaker at seminars on class actions, employment litigation, and trial practice with national and local organizations such as the Illinois Trial Lawyers

Association (ITLA). Most recently, in May 2020, I spoke at a seminar sponsored by the Illinois Institute for Continuing Legal Education on how the COVID-19 crisis is affecting workers, including issues related to BIPA. I have also testified before committees of the Illinois Senate and Illinois House of Representatives on issues relating to plaintiff's rights, including arbitration agreements, which are directly at issue in this case.

6.      The accomplishments of Stephan Zouras, LLP are set forth in the Firm Resume attached as Exhibit 1. As described therein, Stephan Zouras, LLP, has extensive experience in successfully representing plaintiffs as lead counsel in hundreds of class actions nationwide. Since founding our firm in 2007, I, along with my partner Ryan Stephan, have secured a significant number of seven and eight-figure jury verdicts and settlements on behalf of aggrieved employees and victims of corporate negligence and abuse. Both of us have been named an Illinois class action "Super Lawyer" in every consecutive year since 2009. As recently observed by Judge Matthew F. Kennelly, "[Stephan Zouras] have substantial class action experience, and they have secured multi-million dollar class recoveries in the past." *Bhattacharya v. Capgemini North America, Inc*., 324 F.R.D. 353, 363 (N.D. Ill. 2018).

7.      Our firm has nine attorneys, seven of whom, along with extensive support staff, are committed to the firm's dedicated BIPA practice. We anticipate adding at least one more attorney to our staff in the next six months.

8.      In early 2017, my firm filed one of the first BIPA class actions in the employment context. *Doporcyk v. Roundy's Supermarkets, Inc. and Kronos, Inc.*, 17-CH-08092 (Cook Cty. Cir. Ct. Jun. 09, 2017). Since then, Stephan Zouras has filed and is actively prosecuting over 150 BIPA class actions in federal and state court, in both employment and consumer context. As a result of extensive discovery practice in these actions, including depositions of defendants and their

representatives, our firm is well-versed on biometric technology, including how biometric information is collected, maintained and disseminated, particularly as it relates to the requirements of BIPA. The firm has also retained consultants to assist with our investigation and understanding of biometric technology and the defenses asserted by Defendants, including experts to review source code, evaluate network and device configurations, analyze network traffic, and test various hardware and software (mobile, desktop, server, embedded devices, web applications, etc.) to determine functionality as well as uncover potential security and privacy issues. Stephan Zouras, LLP is uniquely experienced and qualified to handle any difficult technological questions that arise.

9.     Stephan Zouras, LLP actively tracks all BIPA filings in federal and state court, including the 750+ BIPA actions currently pending, and stores any significant rulings and settlements generated in these cases in a dedicated database maintained by our firm. As a result, our firm possesses a vast repository of knowledge and information on BIPA-related litigation, which we routinely share with members of the plaintiffs' bar who are actively prosecuting BIPA cases.

10.    Our firm's BIPA advocacy has included substantial legislative efforts to prevent the law from being curtailed through amendments or repealed outright, as advocated by the Chamber of Commerce and many other corporate interest groups which are spending incredible sums trying to gut the law in Springfield.

11.    Stephan Zouras, LLP is actively engaged, on a daily basis, with extensive court, discovery and motion practice on their BIPA actions. The firm has secured at least 30 favorable decisions[1] for plaintiffs, many on issues of first impression, at both the appellate and trial court levels on

---

[1] Because of their voluminous nature, copies of these decisions are not included as exhibits but are readily available upon request.

novel issues and defenses asserted under BIPA, including that BIPA claims are not subject to arbitration as "wage and hour" claims, *Liu v. Four Seasons Hotel, Ltd.*, 2019 IL App (1st) 182645, the Constitutionality of BIPA, *Bruhn v. New Albertson's*, 2018-CH-01737 (Cir. Ct. Cook Cty. Jan. 30, 2020) (J. Loftus) (Exhibit 2),[2] the inapplicability of BIPA's "HIPAA exemption" to employees, *e.g., Bruhn v. New Albertson's Inc., et al.*, No. 18-CH-01737 (Cir. Ct. Cook Cty. July 2, 2019) (J. Loftus) (Exhibit 3), and most recently, the first federal decision on when BIPA claims accrue; specifically, that an aggrieved plaintiff's claims accrue *each time* an entity collects or disseminates biometric information without securing prior informed consent and a release. *Cothron v. White Castle System, Inc.*, 2020 WL 4569694 (Aug. 7, 2020) (J. Tharp). Also, my firm secured the first decision holding that the statute of limitations under BIPA is five years, rather than one or two years. *Robertson v. Hostmark Hospitality Grp., et al.*, No. 18-CH-05194 (Cir. Ct. Cook Cty. July 31, 2019) (J. Cohen) (Exhibit 4). We are currently defending the ruling of another trial court, which held consistent with *Roberston* on the statute of limitations question, at the Illinois Appellate Court, which is expected to be the first appellate court decision on this critical issue. *See Tims v. Black Horse Carriers*, No. 1-20-0563 (Ill. App. Ct. 1st Dist.).

12.     Courts have appointed me and Stephan Zouras, LLP as class counsel in dozens of BIPA cases. For example, I was appointed, in contested proceedings, as co-lead interim class counsel in the two largest BIPA class actions filed on behalf of employees, including one before this court. *See* Exhibit 5, September 19, 2019 order in *Figueroa, et al v. Kronos Incorporated*, 19 cv 1306 (N.D.Ill.) (J. Feinerman); Exhibit 6, November 19, 2019 order in *Henderson, et al. v. ADP, LLC*,

---

[2] In *Bruhn*, the trial court recently granted the defendant's request to certify the Constitutional question for interlocutory appeal. If accepted for review, Stephan Zouras, LLP will defend the Constitutionality of BIPA on this issue of first impression before the Illinois Appellate Court.

18 CH 7139 (Circuit Court of Cook County) (J. Atkins). Both actions, which are comprised of several hundred thousand putative class members, are being actively litigated by my firm.

13.     My firm and I have achieved, and continue to achieve, outstanding and benchmark-setting results for class wide settlements in 11 finally-approved BIPA cases, which have resulted in actual monetary recoveries for almost 22,000 individuals and counting. *See, e.g.,* Exhibit 7, August 20, 2019 order in *Dixon v. The Wash. & Jane Smith Home, et al.*, 17-cv-08033 (N.D. Ill.) (J. Kennelly) (approving BIPA settlement awarding $1,000 per class member); Exhibit 8, May 12, 2020 order in *Jackson v. A. Finkl & Sons, Co.*, 2018-CH-07424 (Circuit Court of Cook County) (J. Tailor) (approving BIPA settlement awarding $1,180 per class member); Exhibit 9, November 13, 2019 order in *Watts v. Aurora Chicago Lakeshore Hosp., LLC*, No. 17-CH-12756 (Circuit Court of Cook County) (J. Reilly) (approving BIPA settlement awarding $1,000 per class member); Exhibit 10, November 18, 2019 order in *Edmond v. DPI Specialty Foods, Inc., et al.*, 2018-CH-09573 (Circuit Court Cook County) (J. Tailor) (approving BIPA settlement awarding $1,000 per class member); Exhibit 11, June 2, 2020 order in *Goings v. AEP NVH OPCO, LLC d/b/a Applied Acoustics, et al.*, 2017-CH-14954 (Circuit Court Cook County) (J. Tailor) (approving BIPA settlement awarding $1,200 per class member); Exhibit 12, August 14, 2020 order in *Kane v. Conservation Technology of Illinois, LLC d/b/a Con-Tech Lighting, et al.*, 2018-CH-12194 (Circuit Court Cook County) (J. Reilly) (approving BIPA settlement awarding $1,200 per class member). Excluding a handful of cases where we verified that the defendant lacked the financial ability to pay full value, the average payout is nearly $900.00 per-person and as a result of our efforts, is trending up. In almost every case, we have insisted on a settlement structure that distributes funds via direct checks to the class members without a claims structure, which means

every one of these nearly 22,000 individuals received a check without the need to submit a claim form.

14.     From the beginning of BIPA litigation, I and my firm have established and maintained regular contact and collaborative working relationships with the limited number of mostly-Illinois plaintiffs' attorneys with practices focused on BIPA actions, including proposed lead counsel Katrina Carroll, so the cases could be monitored, coordinated and advanced in the best interests of all aggrieved class members.  Even before the onset of BIPA litigation, I and my firm had established collegial and working relationships with many of these firms and attorneys.  Virtually every firm was receptive and has been working collaboratively on BIPA litigation.  These efforts have succeeded in identifying and developing underlying legal theories, strategies and responses to the various defenses asserted in BIPA cases.  In addition to helping to ensure the efficient and effective prosecution of BIPA cases, these steps have enabled us to continue to improve outcomes for BIPA plaintiffs.  The firm's litigation approach, which I and Ryan have instilled in our attorneys and other legal staff since we founded Stephan Zouras, LLP in 2007, has not gone unnoticed by the judiciary.  For example, just three weeks ago, Judge Jeffrey Cole stated, "I would be remiss if I failed to note not only the extremely capable written presentations on behalf of the parties, but also to note the cooperative and collegial efforts of all counsel in the case. The plaintiff was represented by Ryan Stephan and Haley Jenkins of Stephan Zouras LLP in Chicago. … They displayed an extraordinary measure of excellence and courtesy that is unfortunately all too rare in today's fractious and overly competitive atmosphere. They brought conspicuous skills to this case, and their conduct is proof that lawyers can act civilly and courteously in their dealings with each other without sacrificing in the slightest the obligations they owe to their clients."  *Bello v. The Parc at Joliet, LLC*, 18 cv 8196 (Aug. 18, 2020) (Exhibit 13).

15.     Our investigation into TikTok's collection of biometric information and potential BIPA violations began in January 2020.  Among other things, this investigation included enlisting the services of individuals in both China and Taiwan to download and examine the Chinese equivalent of TikTok, Douyin, which is also owned by Defendant Bytedance, to compare the functionality and features of the two applications, including their use of filters and facial landmarks, and to determine the extent to which user biometric information, such as voiceprints and facial recognition, is shared between the two entities and the parent company (and third parties) – a critical determination to establish Section 15(d) claims under BIPA.  *See* 740 ILCS 14/15(d).

16.     Prior to and immediately upon filing this action, we brought our firm's expertise and experience to bare, working with the attorneys Settling Plaintiffs are nominating for Co-Lead Counsel and other leadership positions, who themselves are well-respected members of the plaintiffs' bar, to thoroughly investigate and advance the class's claims.  In addition to our collaborative work with these plaintiffs' attorneys to help formulate strategy, our firm took the lead in drafting the amended consolidated complaint, written discovery and preservation letter propounded on Defendants.  Our unique expertise also helped inform preparation for the mediation and the draft term sheet, with special emphasis on the realistic range on the value of the BIPA claims given the liability posture, and the need for non-monetary relief and confirmatory discovery.

17.     Stephan Zouras, LLP has dedicated—and will continue to dedicate—substantial resources to investigating the facts underlying this action, and developing the legal bases for liability. This investigation is informed by our unparalleled experience in BIPA litigation, and has included (1) ongoing investigation of defendants' practices, including expert consultation; (2) detailed

examination of the technology implicated in this action, and (3) substantial factual and legal research—and development of the law in the area—to determine how best to prosecute the case.

18.     Stephan Zouras, LLP has the financial resources necessary to prosecute this case, has stood ready, and remains able and willing to advance necessary expenses and devote significant attorney time from our roster of highly-qualified attorneys and staff to all aspects of this case.

19.     Should the Court appoint me to the Steering Committee, I am fully prepared and committed to continue devoting, to the fullest extent of my ability, all the time, expertise and other resources necessary to assist Lead Counsel in their efforts to represent the interests of the class.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 8, 2020                    FURTHER DECLARANT SAYETH NOT.

                                            /s/ James B. Zouras
                                            James B. Zouras
                                            STEPHAN ZOURAS, LLP
                                            100 North Riverside Plaza, Suite 2150
                                            Chicago, Illinois 60606
                                            (312) 233-1550

# EXHIBIT  A-1



100 North Riverside Plaza, Suite 2150
Chicago, Illinois 60606
P 312-233-1550 | F 312-233-1560
stephanzouras.com

ATTORNEYS AT LAW

## FIRM PROFILE

**STEPHAN ZOURAS, LLP** is a national law firm which concentrates on helping clients in complex class and individual litigation. The firm is widely recognized for its vigorous advocacy, skill, integrity and experience litigating wage and hour and other employment disputes, mass torts and catastrophic personal injury, consumer protection, privacy, cybersecurity, products liability and other complex litigation. Courts routinely appoint us as lead counsel in high-stakes, groundbreaking, rapidly-developing areas with far-reaching impact. Our attorneys have testified before legislative bodies and worked on legislation designed to protect worker's rights.

Our Chicago-based firm is recognized for its leadership, its zealous, thorough and efficient prosecution of class actions, and for achieving outstanding results at both the trial and appellate levels throughout the United States. The firm's two founding partners, James B. Zouras and Ryan F. Stephan, have successfully prosecuted claims ranging from individual wrongful death and other catastrophic injury cases to complex, multi-district class and collective actions which have collectively resulted in a recovery of more than $150,000,000 for hundreds of thousands of individuals. Stephan Zouras, LLP has "substantial class action experience [and] have secured multi-million-dollar class recoveries...." *Bhattacharya v. Capgemini North America, Inc*., 324 F.R.D. 353, 363 (N.D. Ill. 2018) (Kennelly, J.)

## PRINCIPAL ATTORNEYS

**JAMES B. ZOURAS** is a founding principal of Stephan Zouras, LLP. Dedicating his entire professional career to combating corporate abuse and injustice, Jim has helped thousands of people recover tens of millions of dollars in damages in individual and class actions arising under federal wage and hour laws including the Fair Labor Standards Act ("FLSA") and comparable state wage laws, other complex litigation and catastrophic personal injury. Jim has been appointed lead or co-lead counsel on dozens of contested class actions throughout the United States. He has successfully tried over a dozen jury trials and argued over 14 appeals as lead appellate counsel before the federal and state appellate courts. In 2000, Jim was named among the *Chicago Daily Law Bulletin's* "Top 40 Lawyers Under Age 40," one of the youngest lawyers ever bestowed that honor. Jim and his cases have been profiled by numerous media outlets including the Chicago Tribune, the Chicago Sun-Times, Bloomberg BNA, Billboard Magazine and TMZ. Jim has also been interviewed by CBS Consumer Watch. Jim is frequently invited as a speaker at national class action litigation seminars. Jim is a 1995 graduate of DePaul University College of Law, where he served as Editor of the Law Review and graduated in the top 10% of his class.

**RYAN F. STEPHAN** is a founding principal of Stephan Zouras, LLP. Throughout his career, Ryan has been a passionate advocate for employee rights, and has helped thousands of clients recover damages in unpaid overtime, employment disputes, business litigation, products liability and personal injury cases. Ryan has successfully tried cases to verdict including obtaining a $9,000,000 verdict on behalf of 200 employees who were misclassified and denied overtime pay. Ryan has also served as lead or co-lead counsel on dozens of complex class and collective action cases involving wage and hour matters and has helped recover damages for tens of thousands of wronged employees. In these cases, Ryan has helped establish precedent in wage and hour law, forced major corporations to change unlawful employment practices and helped recover tens of millions of dollars in unpaid wages for his clients. Ryan and his cases have been profiled by numerous media outlets including Good Morning America, Fortune, ESPN, Fox News, The Guardian, The New York Times, Think Progress, USA Today and Vice Sports. Ryan is a 2000 graduate from Chicago Kent College of Law.

**STEPHANZOURAS, LLP**
ATTORNEYS AT LAW

100 North Riverside Plaza, Suite 2150
Chicago, Illinois 60606
P 312-233-1550 | F 312-233-1560
stephanzouras.com

Ryan and Jim are admitted to the Supreme Court of the United States, the Seventh Circuit Court of Appeals, the First Circuit Court of Appeals, and the Trial Bar of the United States District Court for the Northern District of Illinois. In addition, they have been admitted *pro hac vice* to prosecute class actions in the District of Alaska, the District of Arizona, the District of Columbia, the Northern and Southern Districts of California, the Southern and Eastern Districts of New York, the District of New Jersey, the Eastern and Middle Districts of Pennsylvania, the Northern and Western Districts of North Carolina, the Superior Court for the State of California, the Central District of Illinois, the Southern District of Indiana, the District of Minnesota, the Eastern District of Michigan, the Eastern and Western Districts of Missouri, the District of Maryland, the Southern District of Ohio, the Northern, Middle and Southern Districts of Florida, the Northern District of Georgia, the Western District of Kentucky, the District of Maryland, the Northern District of Texas, the District of Massachusetts, the District of Minnesota, the First Judicial District of Pennsylvania, the Western District of Washington and the Southern and Northern Districts of Iowa.

In every consecutive year since 2009, *Chicago Magazine's* Super Lawyer Section selected both Jim and Ryan as two of the top attorneys in Illinois, a distinction given to no more than 5% of the lawyers in the state.

## PARTNERS

**ANDREW C. FICZKO** is a partner of Stephan Zouras, LLP. A tireless fighter for working people, Andy has spent his entire professional career litigating on behalf of employees in class and collective actions nationwide. Andy has helped thousands of clients recover damages in cases involving unpaid minimum and overtime wages and other benefits. Andy served as the second chair in two major federal jury trials to verdict on behalf of Plaintiffs in wage and hour matters and one state jury trial to verdict on behalf of Plaintiffs in a breach of contract matter. A 2009 graduate from Drake University Law School in 2009, Andy is admitted to the Trial Bar of the United States District Court for the Northern District of Illinois has been admitted *pro hac vice* to the District of Alaska, the Central and Northern Districts of California, the District of Columbia, the Northern District of Georgia, the Southern District of Indiana, the Southern District of New York, the Southern and Northern Districts of Iowa, the District of Massachusetts, the Western District of Missouri, the Middle and Western Districts of North Carolina, the Southern District of Ohio, the Eastern and Middle Districts of Pennsylvania, the Northern and Southern Districts of Texas, and the Western District of Washington. In every consecutive year since 2014, Andy has been recognized by Chicago Magazine's Super Lawyer section as a Rising Star, a distinction given to no more than 2.5% of Illinois lawyers.

**TERESA M. BECVAR** is a partner of Stephan Zouras, LLP. A steadfast advocate for individual rights, Teresa has helped thousands of clients hold corporations accountable in employment and consumer protection cases. Teresa has extensive experience in a wide range of employment cases, including wage and hour class and collective actions and employment discrimination. Teresa is a 2013 graduate of Chicago-Kent College of Law, where she served as Editor of the Law Review and graduated in the top 15% of her class. Teresa is admitted to practice in Illinois and has been admitted *pro hac vice* to the Eastern and Southern Districts of New York, the Western District of Washington, the Middle District of Florida and the Central District of California, the District of Arizona, the Middle District of Pennsylvania, the District of Colorado, the District of New Mexico, the Western District of North Carolina, and the Middle District of Tennessee. In every consecutive year since 2016, Teresa has been recognized by Chicago Magazine's Super Lawyer section as a Rising Star, a distinction given to no more than 2.5% of Illinois lawyers.



STEPHANZOURAS, LLP
ATTORNEYS AT LAW

100 North Riverside Plaza, Suite 2150
Chicago, Illinois 60606
P 312-233-1550 | F 312-233-1560
stephanzouras.com

**CATHERINE T. MITCHELL** is a partner of Stephan Zouras, LLP who graduated from UIC John Marshall Law School in 2015. Katie litigates on behalf of Stephan Zouras, LLP's clients in both class action and individual litigation, representing people in a wide-range of legal disputes, including unpaid wages, employee misclassification, mass torts, antitrust, and consumer fraud. Catherine is an active member of the Women's Bar Association of Illinois and the Young Lawyers Society of the Chicago Bar Association, and served as a Chapter Editor for the Second Edition of BNA's Age Discrimination in Employment Act Treatise. Katie is admitted to practice in Illinois, the District of Colorado, the Eastern District of Wisconsin and has been admitted *pro hac vice* to the Southern and Eastern Districts of New York, the Middle District of Florida, the Southern District of Iowa, the Northern District of California, the District of Arizona, the District of New Mexico, the Eastern District of Pennsylvania, and the Eastern and Western Districts of North Carolina. Katie earned her Bachelor's Degree from Saint Mary's College where she was a member of the Dean's list and served as a Member Counselor in the Business Enterprise Law Clinic. Katie is currently an active member of the Women's Bar Association as well as a Director on UIC John Marshall Law School Alumni Association's Board of Directors.

## ASSOCIATE ATTORNEYS

**HALEY R. JENKINS** graduated *cum laude* from Chicago-Kent College of Law in 2016. Haley litigates on behalf of Stephan Zouras, LLP's clients in both class action and individual litigation. A spirited advocate, Haley represents clients in legal disputes involving unpaid wages, employee misclassification, antitrust, consumer fraud, whistleblower actions, and *qui tam* cases. She is currently a member of the legal team advocating for clients' biometric privacy rights in cutting-edge cases against employers and biometric device manufacturers that unlawfully collect, store, use and disseminate employees' and consumers' biometrics data. Haley is admitted to the Trial Bar of the United States District Court for the Northern District of Illinois and the District of Colorado. She has also been admitted *pro hac vice* to the Middle and Eastern Districts of Pennsylvania, and the Eastern District of New York. Haley graduated from the University of Illinois at Urbana-Champaign in 2013 where she majored in English.

**ANNA M. CERAGIOLI** earned her Juris Doctor from Chicago-Kent College of Law where she was named to the Dean's List and elected President of the Moot Court Honor Society. She was one of only twelve graduating students inducted into the Chicago-Kent Bar & Gavel Society. Anna is a skilled and dedicated advocate for individuals and groups of people who have been injured, deprived of earned wages or otherwise mistreated by employers. She has worked tirelessly on an array of individual and class actions lawsuits involving unpaid wages, employee misclassification, unlawful credit checks and consumer fraud. Anna received her undergraduate degree from Marquette University where she double-majored in Writing Intensive English and Politics in Law.

**MEGAN E. SHANNON** graduated *magna cum laude* from Chicago-Kent College of Law in 2019, where she focused her studies on employment law. She received a Certificate in Workplace Litigation and Alternative Dispute Resolution and served as a Student Editor of the Employee Rights and Employment Policy journal published by Chicago-Kent and the Institute for Law and the Workplace. Megan is a fierce advocate for employees and consumers and has fought vigorously against employee misclassification, unlawful credit checks and unpaid wages. Megan earned her undergraduate degree from Loyola University Chicago, where she graduated *magna cum laude* with degrees in Political Science and International Studies. She also spent a year after college teaching high-school English in Vigo, Spain.

**STEPHANZOURAS, LLP**
ATTORNEYS AT LAW

100 North Riverside Plaza, Suite 2150
Chicago, Illinois 60606
P 312-233-1550 | F 312-233-1560
stephanzouras.com

## OF COUNSEL

**DAVID J. COHEN,** a highly skilled and successful class-action attorney, joined Stephan Zouras, LLP in April 2016 and manages our Philadelphia office. Dave has spent his entire career fighting to protect the rights of thousands of employees, consumers, shareholders, and union members. Before joining Stephan Zouras, Dave worked on, and ran, dozens of significant antitrust, consumer, employment and securities matters for four highly-regarded Philadelphia firms. Before joining the private sector, Dave completed a unique clerkship with the Hon. Stephen E. Levin in the Philadelphia Court of Common Pleas, during which he not only helped to develop a respected and efficient system for the resolution of the Court's class action cases, but also contributed to several well-regarded works on class actions. Dave earned a J.D. from the Temple University School of Law in 1994. While attending law school, Dave was awarded the Barristers Award for excellence in trial advocacy and worked as a teaching assistant for Hon. Legrome Davis (E.D. Pa.) as part of Temple's award-winning Integrated Trial Advocacy program. Dave graduated with honors from the University of Chicago in 1991.

Dave is admitted to practice in the United States Court of Appeals for the Third Circuit, the United States Court of Appeals for the Sixth Circuit, the United States District Court for the Eastern District of Pennsylvania, the United States District Court for the Middle District of Pennsylvania, the United States District Court for the Western District of Pennsylvania, the United States District Court for the District of New Jersey and the state courts of Pennsylvania and New Jersey. He is a member of the American and Philadelphia Bar Associations.

## REPRESENTATIVE TRIALS, VERDICTS AND JUDGMENTS

**Ray v. DISH Network**
*No. 01-15-0003-4651 (AAA Arbitration)*                    **3/17/2019 – Arbitration Judgment**
Final approval was awarded in the amount of $3,250,000.00 to thousands of Colorado inside sales associates who were not paid minimum wage for all hours worked and were not paid proper overtime compensation for hours worked in excess of 40 hours per week.

**Franco, et al. v. Ideal Mortgage Bankers, d/b/a Lend America**          **12/14/17 – Trial Court Judgment**
*No. 07-cv-3956 (United States District Court for the Eastern District of New York)*
The Court entered a $15.2 million judgment on behalf of several hundred loan officers who were deprived of minimum wages and overtime in violation of federal and state law.

**Frisari v. DISH Network**                    **8/25/16 – Arbitration Judgment**
*No. 18-160-001431-12 (AAA Arbitration)*
The Arbitrator certified and granted final judgment in excess of seven figures for a class of over 1,000 New Jersey inside sales associates who performed work before and/or after their shifts without pay and were not paid the proper overtime rate when they worked in excess of 40 hours a week.

**Huskey v. Ethicon Inc.**                    **9/10/2014 – Jury Verdict**
*No. 2:12-cv-05201 (United States District Court for the Southern District of West Virginia)*
Stephan Zouras, LLP helped secure a $3,270,000.00 jury verdict in one of the bell-weather trial cases in the multi-district

**STEPHANZOURAS, LLP**
ATTORNEYS AT LAW

100 North Riverside Plaza, Suite 2150
Chicago, Illinois 60606
P 312-233-1550 | F 312-233-1560
stephanzouras.com

litigation against Johnson & Johnson's Ethicon unit for defective design, failure to warn and negligence related to transvaginal mesh device.

**Lee v. THR**                                                    **5/22/14 – Trial Court Judgment**
*No. 12-cv-3078 (United States District Court for the Central District of Illinois)*
As a result of the efforts of class counsel Stephan Zouras, LLP, the Court entered a judgment for a class of employees given job titles such as "Buyers," "Auditors" and "Managers" for unpaid overtime in the sum of $12,207,880.84.

**Vilches et al. v. The Travelers Companies, Inc.**              **12/12/12 - Arbitration Judgment**
*No. 11-160-000355-11 (American Arbitration Association)*
Following a contested evidentiary hearing, Stephan Zouras, LLP secured a significant monetary award on behalf of a group of insurance appraiser employees seeking unpaid earned overtime under the FLSA.

**Kyriakoulis, at al. v. DuPage Health Center**                 **11/8/12 - Jury Verdict**
*No. 10-cv-7902 (United States District Court for the Northern District of Illinois)*
Stephan Zouras, LLP achieved a favorable jury verdict on behalf of several medical assistants deprived of minimum and overtime wages in violation of federal and Illinois law.

**Smith v. Safety-Kleen Systems, Inc.**                         **7/11/12 - Jury Verdict**
*No. 10-cv-6574 (United States District Court for the Northern District of Illinois)*
Stephan Zouras, LLP achieved a favorable jury verdict on behalf of a chemical handler deprived of overtime wages in this donning and doffing action brought under the FLSA.

**Wong v. Wice Logistics**                                       **1/30/12 - Jury Verdict**
*No. 08 L 13380 (Circuit Court of Cook County, Illinois)*
Stephan Zouras, LLP recovered unpaid commissions and other damages for Plaintiff based on her claims under the Illinois Wage Payment and Collection Act.

**Daniels et al. v. Premium Capital Financing**                 **10/18/11 - Jury Verdict**
*No. 08-cv-4736 (United States District Court for the Eastern District of New York)*
Stephan Zouras, LLP was appointed lead class and trial counsel and achieved a jury verdict in excess of $9,000,000.00 on behalf of over 200 loan officers who were deprived of minimum wages and overtime pay.

**Ferrand v. Lopas**                                             **5/22/01 - Jury Verdict**
*No. 00 L 2502 (Circuit Court of Cook County, Law Division, State of Illinois)*
Jury verdict in excess of available liability insurance policy limits entered in favor of seriously-injured pedestrian, resulting in liability against insurance carrier for its bad faith refusal to tender the policy limits before trial.

## REPRESENTATIVE RESOLVED CLASS AND COLLECTIVE ACTIONS

**Courts nationwide have appointed the firm as lead or co-lead counsel in numerous class and collective actions in which they have collectively secured over one hundred million dollars in verdicts and settlements including:**

**Bradford, et al. v. Farmington Foods, Inc.**                  **8/17/20 – Final Approval**
*No. 19-CH-12888 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
The Court granted final approval in a six-figure class settlement on behalf of hundreds of employees whose rights were

**STEPHANZOURAS, LLP**
ATTORNEYS AT LAW

100 North Riverside Plaza, Suite 2150
Chicago, Illinois 60606
P 312-233-1550 | F 312-233-1560
stephanzouras.com

violated under the Biometric Information Privacy Act ("BIPA").

**Trottier, et al. v. Summit Staffing**                                    8/04/20 – **Final Approval**
*No. 19-CH-02731 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
Stephan Zouras, LLP settled for approximately $1 million on behalf of thousands of employees based on alleged violations of the Biometric Information Privacy Act ("BIPA").

**Jackson, et al. v. A. Finkl & Sons, Co., et al.**                         7/21/20 – **Final Approval**
*No. 2018-CH-07424 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
Final approval was granted in a six-figure class settlement on behalf of employees whose rights were violated under the Biometric Information Privacy Act ("BIPA").

**Thome, et al. v. Flexicorps. Inc.**                                       7/02/20 – **Final Approval**
*No. 18-CH-01751 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
As co-counsel, Stephan Zouras, LLP settled for approximately $1 million on behalf of employees based on alleged violations of the Biometric Information Privacy Act ("BIPA").

**Goings, et al. v. Applied Acoustics, et al.**                             6/02/20 – **Final Approval**
*No. 17-CH-14954 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
Final approval was granted in a six-figure class settlement on behalf of employees whose rights were violated under the Biometric Information Privacy Act ("BIPA").

**Jones, et al. v. Santa Rosa Consulting, Inc.**                            5/26/20 – **Final Approval**
*No. 18-cv-11005 (United States District Court for the Southern District of New York)*
The Court granted approval of a six-figure settlement on behalf of consultants misclassified as independent contractors who were not paid overtime premium compensation as required by the FLSA and New York Law.

**Jones, et al. v. Encore Health Resources, LLC, et al.**                   2/19/20 – **Final Approval**
*No. 19-cv-03298 (United States District Court for the Southern District of Texas)*
The Court granted approval of a six-figure settlement on behalf of credentialed trainers who worked in excess of 40 hours per week but were not compensated overtime premium rate, as required by the FLSA.

**Potoski, et al. v. Wyoming Valley Health Care System, et al.**            1/14/20 – **Final Approval**
*No. 11-cv-00582 (United States District Court for the Middle District of Pennsylvania)*
As lead co-counsel, Stephan Zouras, LLP helped achieve a six-figure class settlement on behalf of hospital employees who were required to perform uncompensated work "off-the-clock" during meal breaks.

**Stewart, et al. v. First Transit, Inc.**                                  12/30/19 – **Final Approval**
*No. 18-cv-03768 (United States District Court for the Eastern District of Pennsylvania)*
Final approval was granted in a six-figure class settlement achieved by Stephan Zouras, LLP for hundreds of paratransit drivers who were not paid for work during "scheduled gap periods."

**Jordan, et al. v. Meridian Bank, et al.**                                 12/19/19 – **Final Approval**
*No. 17-cv-05251 (United States District Court for the Eastern District of Pennsylvania)*
Stephan Zouras, LLP served as co-counsel and achieved a nearly $1 million class settlement on behalf of thousands of

**STEPHANZOURAS, LLP**

ATTORNEYS AT LAW

100 North Riverside Plaza, Suite 2150
Chicago, Illinois 60606
P 312-233-1550 | F 312-233-1560
stephanzouras.com

misclassified loan officers who were not paid minimum or overtime wages as required by federal and state law.

**George, et al. v. Schulte Hospitality Group, Inc.**                    **12/16/19 – Final Approval**
*No. 18-CH-04413 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
The Court granted final approval of an almost $1 million settlement on behalf of approximately 900 employees whose rights were violated under the Biometric Information Privacy Act ("BIPA").

**Edmond, et al. v. DPI Specialty Foods, Inc.**                    **11/18/2019 – Final Approval**
*No. 18-CH-09573 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
The Court granted final approval of a nearly $500,000 settlement on behalf of hundreds of employees whose rights were violated under the Biometric Information Privacy Act ("BIPA").

**Bey v. Walker HealthCare, et al. & Pierce, et al. v. Encore Health Resources, et al.**   **9/19/2019 – Final Approval**
*No's. 19-cv-00060, 18-cv-04736 (United States District Court for the Southern District of Texas)*
Stephan Zouras, LLP achieved a nearly $2.4 million settlement on behalf of employees identified as "At-The-Elbow" ("ATE") consultants who worked in excess of 40 hours per week and were denied proper overtime compensation.

**Kuck v. Planet Home Lending, LLC, et al.**                    **9/13/19 – Final Approval**
*No. 17-cv-04769 (United States District Court for the Eastern District of New York)*
Stephan Zouras, LLP helped achieve a six-figure class settlement on behalf of Retail Retention Mortgage Loan Officers who were required to perform work off-the-clock and were denied overtime wages.

**Dixon v. The Washington & Jane Smith Home, et al.**                    **8/20/19 – Final Approval**
*No. 17-cv-08033 (United States District Court for the Northern District of Illinois)*
Final approval in a class wide settlement was granted and awarded in the amount of $1,356,000 to approximately 1,300 employees based on alleged violations of the Biometric Information Privacy Act ("BIPA").

**Jones v. Chicago Bridge & Iron Company, et al.**                    **8/06/19 – Final Approval**
*No. 17-cv-00424 (United States District Court for the Western District of North Carolina)*
As co-lead counsel, Stephan Zouras, LLP helped achieve a six-figure class settlement on behalf of employees who worked for defendants under a 9/80 pay plan (A-B Schedule) and were not paid an overtime premium for hours worked in excess of forty in a workweek.

**Sharrieff v. Raymond Management Company, et al.**                    **8/01/2019 – Final Approval**
*No. 18-CH-01496 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
A six-figure class settlement was granted and awarded to hundreds of employees based on alleged violations of the Biometric Information Privacy Act ("BIPA").

**Ostrander v. Customer Engineering Services, LLC**                    **3/25/19 – Final Judgment**
*No. 15-cv-01476 (United States District Court of Colorado)*
Final approval of a six-figure class settlement was granted on behalf of technical service representatives who were misclassified under the federal law and were deprived of earned overtime wages.

**Davis v. Vanguard Home Care, LLC, et al.**                    **3/22/19 – Final Approval**
*No. 16-cv-07277 (United States District Court for the Northern District of Illinois)*

# STEPHANZOURAS, LLP

## ATTORNEYS AT LAW

100 North Riverside Plaza, Suite 2150
Chicago, Illinois 60606
P 312-233-1550 | F 312-233-1560
stephanzouras.com

Stephan Zouras, LLP achieved a six-figure class settlement on behalf of a group of Home Health Clinicians who were misclassified as exempt under federal and state wage laws.

**Goh v. NCR Corporation**                                                    **2/25/19 – Final Approval**
*No. 01-15-0004-0067 (AAA Arbitration)*
In granting class certification and approval of a settlement in excess of six figures for over three-thousand class members employed by NCR who were subjected to improper background checks, the Arbitrator found that the attorneys of Stephan Zouras "rendered exemplary services for [their] clients and acted with great care, diligence, and professionalism."

**Moseman v. U.S. Bank National Association**                                 **1/07/19 – Final Approval**
*No. 17-cv-00481 (United States District Court for the Western District of North Carolina)*
As lead counsel, Stephan Zouras, LLP achieved a class wide settlement on behalf of individuals employed as AML/BSA Preliminary Investigators who worked in excess of 40 hours per week and were not paid proper overtime compensation.

**Ivy v. Adventist Midwest Health**                                           **11/14/18 – Final Approval**
*No. 16-cv-7606 (United States District Court for the Northern District of Illinois)*
Stephan Zouras, LLP achieved a six-figure class settlement on behalf of Home Health Clinicians who worked in excess of 40 hours per week and were not paid overtime.

**Bhattacharya v. Capgemini, et al.**                                         **11/13/18 – Final Approval**
*No. 16-cv-07950 (United States District Court for the Northern District of Illinois)*
Final approval for class settlement in the amount of $990,000.00 was granted and awarded to approximately 900 Indian national participants of Capgemini's Group Health Plan based on alleged violations of the Employee Retirement Income Security Act ("ERISA").

**Carver v. Presence Health Network, et al.**                                 **7/10/18 – Final Approval**
*No. 15-cv-02905 (United States District Court for the Northern District of Illinois)*
Stephan Zouras, LLP helped achieve final approval of a seven-figure class settlement on behalf of participants and beneficiaries of benefit plans sponsored by Presence Health based on alleged violations of the Employee Retirement Income Security Act ("ERISA").

**Lukas v. Advocate Health Care, et al.**                                     **6/27/18 – Final Approval**
*No. 14-cv-01873 (United States District Court for the Northern District of Illinois)*
Stephan Zouras, LLP helped achieve final approval of a seven-figure class settlement on behalf of thousands of participants and beneficiaries to Advocate Health Care Network's Pension Plan based on alleged violations of the Employee Retirement Income Security Act ("ERISA").

**Brown v. Health Resource Solutions, Inc.**                                  **4/20/18 – Final Approval**
*No. 16-cv-10667 (United States District Court for the Northern District of Illinois)*
The Court granted final approval of class settlement for $900,000.00 in unpaid overtime wages on behalf of Home Health Clinicians who were misclassified as exempt under federal and state wage laws.

**Eggleston v. USCC Services, LLC.**                                          **2/16/18 – Final Approval**
*No. 16-cv-06775 (United States District Court for the Northern District of Illinois)*

**STEPHANZOURAS, LLP**

ATTORNEYS AT LAW

100 North Riverside Plaza, Suite 2150
Chicago, Illinois 60606
P 312-233-1550 | F 312-233-1560
stephanzouras.com

As co-lead counsel, Stephan Zouras, LLP helped obtain final approval of a $1,250,000 class settlement for unpaid overtime wages on behalf of misclassified Sales Managers.

**Caison v. Sogeti USA, LLC, et al.**                                     **2/12/18 – Final Approval**
*No. 17-cv-2786 (United States District Court for the Northern District of Illinois)*
As lead counsel, Stephan Zouras, LLP achieved a class wide settlement on behalf of hundreds of Business Analysts who worked in excess of 40 hours per week and were not paid proper overtime compensation.

**Kaminski v. Bank of America, N.A.**                                     **2/15/18 – Final Approval**
*No. 16-cv-10844 (United States District Court for the Northern District of Illinois)*
Final approval for class settlement in the amount of $850,000 in unpaid wages was granted and awarded to a class of approximately 100 employees working as Senior Specialist-Securities and Operation Market Professionals.

**Byrne v. Centegra Health System**                                     **1/29/18 – Final Approval**
*No. 17-cv-00018 (United States District Court for the Northern District of Illinois)*
The Court granted final approval of class settlement for $425,000 in unpaid overtime wages on behalf of registered nurses, physical therapists, occupational therapists, speech therapists and other similarly-designated skilled care positions who were misclassified as exempt under federal and state wage laws.

**Donoghue v. Verizon Communications, Inc.**                                     **11/16/17 – Final Approval**
*No. 16-cv-4742 (United States District Court for the Eastern District of Pennsylvania)*
The Court granted final approval of class settlement for $800,000 in unpaid overtime wages on behalf of wireline workers who were hired to fill in for Verizon employees during a strike. Despite regularly working 65 hours per week, these employees were classified as exempt and denied overtime wages.

**Tompkins v. Farmers Insurance Exchange**                                     **9/27/17 – Final Approval**
*No. 14-cv-3737 (United States District Court for the Eastern District of Pennsylvania)*
The Court granted final approval of a $775,000.00 class settlement on behalf misclassified loan officers seeking unpaid overtime wages.

**In re Sears Holdings Corporation Stockholder and Derivative Litigation**                                     **5/9/17 – Final Approval**
*No. 11081-VCL (Court of Chancery of the State of Delaware)*
Stephan Zouras, LLP represented the Named Plaintiff in a $40 million settlement in connection with a 2015 sale by Sears of 235 properties to Seritage Growth Properties.

**Oaks v. Sears**                                     **4/12/17 – Final Approval**
*No. 1:15-cv-11318 (United States District Court for the Northern District of Illinois)*
Stephan Zouras, LLP settled on behalf of thousands of consumers who own or once owned Sears Kenmore grills in a product defect class action.

**Hauser v. Alexian Brothers Home Health**                                     **4/06/17 – Final Approval**
*No. 15-cv-6462 (United States District Court for the Northern District of Illinois)*
Stephan Zouras, LLP settled for $1 million on behalf of home health care clinicians who were misclassified as "exempt" and deprived of earned overtime wages.

**Leiner v. Johnson & Johnson**                                     **1/31/17 – Final Approval**
*No. 15-cv-5876 (United States District Court for the Northern District of Illinois)*

**STEPHANZOURAS, LLP**

ATTORNEYS AT LAW

100 North Riverside Plaza, Suite 2150
Chicago, Illinois 60606
P 312-233-1550 | F 312-233-1560
stephanzouras.com

The Court granted final approval of a $5 million settlement for consumers nationwide in a consumer fraud class action. Stephan Zouras, LLP represented consumers who were deceived into paying premium prices for Johnson & Johnson baby bedtime products which falsely claimed to help babies sleep better.

**Reed v. Friendly's Ice Cream, LLC, et al.**          1/31/17 – Final Approval
*No. 15-cv-00298 (United States District Court for the Middle District of Pennsylvania)*
Stephan Zouras, LLP served as co-counsel and helped obtain final approval of a $3,500,000 class settlement on behalf of nationwide Servers who were not compensated for off-the-clock worked performed during unpaid meal breaks and after their scheduled shifts.

**McPhearson v. 33 Management**          11/3/16 – Final Approval
*No. 15-ch-17302 (Circuit Court of Cook County, IL)*
The Court granted final approval of class settlement on behalf of tenants of a Chicago apartment building where the landlords violated the City of Chicago Residential Landlord and Tenant Ordinance by collecting and holding tenant security deposits without paying interest earned.

**Cook v. Bank of America**          8/2/16 – Final Approval
*No. 15-cv-07718 (United States District Court for the Northern District of Illinois)*
The Court granted final approval of $3,250,000 settlement for an Illinois Class and FLSA Collective on behalf of individuals who worked as Treasury Services Advisors and who were misclassified as exempt from earned overtime wages.

**Altnor v. Preferred Freezer Services, Inc.**          7/18/16 – Final Approval
*No. 14-cv-7042 (United States District Court for the Eastern District of Pennsylvania)*
The firm's attorneys served as lead counsel in this lawsuit seeking recovery of wages for unpaid meal break work for a class of 80 cold storage warehouse workers.

**Lukas v. Advocate Health Care**          6/29/16 – Final Approval
*No. 14-cv-2740 (United States District Court for the Northern District of Illinois)*
The Court granted final approval of a $4,750,000 settlement for a federal FLSA and Illinois Minimum Wage Law collective class of home health care clinicians who were wrongly classified as "exempt" from federal and state overtime laws.

**Kurgan v. Chiro One Wellness Centers LLC**          4/27/16 – Final Approval
*No. 10-cv-1899 (United States District Court for the Northern District of Illinois)*
The Court granted Plaintiffs' motion for Section 216(b) certification of Plaintiffs' FLSA claim, granted Rule 23 certification of Plaintiffs' claims under the Illinois Minimum Wage Law and appointed Stephan Zouras, LLP as counsel for a class of chiropractic technicians and assistants.

**Heba v. Comcast**          4/6/16 – Final Approval
*No. 12-471 (First Judicial District of Pennsylvania Court of Common Pleas of Philadelphia)*
The Court granted class certification to Customer Account Executives who worked at Comcast's Pennsylvania call centers and were required to work 15 minutes a day before their scheduled start time without pay. As lead counsel, Stephan Zouras, LLP achieved a favorable resolution for over 6,000 class members.

**Johnson v. Casey's General Stores, Inc.**          3/3/16 – Final Approval
*No. 15-cv-3086 (United States District Court for the Western District of Missouri)*
The Court granted final approval on behalf of a certified class of employees of Casey's General Stores, Inc. to redress violations of the Fair Credit Reporting Act (FCRA).

# STEPHANZOURAS, LLP

## ATTORNEYS AT LAW

100 North Riverside Plaza, Suite 2150
Chicago, Illinois 60606
P 312-233-1550 | F 312-233-1560
stephanzouras.com

**Fields v. Bancsource, Inc.**                                          **2/3/16 – Final Approval**
*No. 14-cv-7202 (United States District Court for the Northern District of Illinois)*
The Court entered an order granted Plaintiffs' motion for Section 216(b) certification of a class of field engineers who were deprived of overtime for hours worked in excess of 40 in given workweeks.

**Elder, et al. v. Comcast Corporation**                                **1/11/16 – Final Approval**
*No. 12-cv-1157 (United States District Court for the Northern District of Illinois)*
The Court granted Plaintiffs' motion for conditional certification and appointed Stephan Zouras, LLP as counsel for a class of cable technicians who allege they were deprived of overtime wages in violation of federal law.

**Posada, et al. v. Continental Home Loans, Inc.**                      **1/13/16 - Final Approval**
*15-cv-4203 (United States District Court for the Eastern District of New York)*
Stephan Zouras, LLP was appointed class counsel and achieved a substantial settlement on behalf of a class of loan officers deprived of minimum and overtime wages.

**Struett v. Susquehanna Bank**                                         **10/27/15 – Final Approval**
*No. 15-cv-176 (United States District Court for the Eastern District of Pennsylvania)*
The firm's attorneys served as co-lead counsel in this lawsuit which recovered $300,000 in unpaid overtime wages for 31 misclassified loan officers.

**Faust, et al. v. Comcast Corporation**                                **10/11/15 - Final Approval**
*No. 10-cv-2336 (United States District Court for the Northern District of Maryland)*
The Court granted Plaintiffs' motion for conditional certification and appointed Stephan Zouras, LLP lead counsel for a class of call center employees.

**Butler, et al. v. Direct Sat**                                        **9/3/15 - Final Approval**
*No. 10-cv-08747 DKC (United States District Court for the District of Maryland)*
Stephan Zouras, LLP reached favorable resolution on behalf of a finally-certified collective class of technicians working in DirectSat's Maryland warehouses who were not paid overtime.

**Sosnicki v. Continental Home Loans, Inc.**                            **7/30/15 - Final Approval**
*No. 12-cv-1130 (United States District Court for the Eastern District of New York)*
As lead class counsel, Stephan Zouras, LLP achieved a six-figure settlement on behalf of a collective class of loan officers who were deprived of minimum wages and overtime in violation of federal and state law.

**Bordell v. Geisinger Medical Center**                                 **4/8/15 – Final Approval**
*No. 12-cv-1688 (Northumberland Court of Common Pleas)*
The firm's attorneys served as lead counsel in this lawsuit which challenged Defendant's workweek averaging practices and recovered $499,000 in unpaid overtime wages for hospital workers.

**Harvey, et al. v. AB Electrolux, et al.**                             **3/23/15 – Final Approval**
*No. 11-cv-3036 (United States District Court for the Northern District of Iowa)*
As lead counsel, Stephan Zouras, LLP achieved a six-figure settlement amount on behalf of hundreds of production workers seeking unpaid earned wages.

**Price v. NCR Corporation**                                            **3/18/15 – Final Approval**
*No. 51-610-908-12 (AAA Arbitration)*
As lead class counsel, Stephan Zouras, LLP achieved a seven figure, arbitrator approved settlement on behalf of

**STEPHANZOURAS, LLP**
ATTORNEYS AT LAW

100 North Riverside Plaza, Suite 2150
Chicago, Illinois 60606
P 312-233-1550 | F 312-233-1560
stephanzouras.com

thousands of Customer Engineers nationwide who were deprived overtime wages in violation of federal law.

**Frebes, et al. v. Mask Restaurants, LLC**                 1/15/15 – Final Approval
*No. 13-cv-3473 (United States District Court for the Northern District of Illinois)*
Stephan Zouras, LLP was appointed class counsel and achieved a substantial settlement on behalf of hundreds of servers, bartenders and bussers forced to participate in an illegal "tip pool."

**Jones v. Judge Technical Services Inc.**                 12/15/14 – Final Approval
*No. 11-cv-6910 (United States District Court for the Eastern District of Pennsylvania)*
As lead class counsel, Stephan Zouras, LLP prevailed on summary judgment and subsequently achieved a seven-figure settlement on behalf of IT workers who were designated under the "Professional Day" or "Professional Week" compensation plan, misclassified as exempt from the FLSA and denied overtime pay.

**Howard, et al. v. Securitas Security Services USA, Inc.**                 5/7/14 – Final Approval
*No. 08-cv-2746 (United States District Court for the Northern District of Illinois)*
**and, Hawkins v. Securitas Security Services USA, Inc.**
*No. 09-cv-3633 (United States District Court for the Northern District of Illinois)*
For settlement purposes, the Court certified a class of approximately ten thousand security guards seeking damages for unpaid wages and overtime under the FLSA and Illinois Minimum Wage Law.

**Thomas v. Matrix Corporation Services**                 2/12/14 – Final Approval
*No. 10-cv-5093 (United States District Court for the Northern District of Illinois)*
As lead counsel, Stephan Zouras, LLP achieved a six-figure settlement on behalf of a class of hundreds of technicians who allege they were deprived of overtime wages in violation of federal law.

**Ingram v. World Security Bureau**                 12/17/13 – Final Approval
*No. 11-cv-6566 (United States District Court for the Northern District of Illinois)*
Stephan Zouras secured a class settlement on behalf of several hundred security officers deprived of minimum wages and overtime in violation of federal and state law.

**Sexton v. Franklin First Financial**                 9/30/13 – Final Approval
*No. 08-cv-04950 (United States District Court for the Eastern District of New York)*
Stephan Zouras, LLP achieved a settlement on behalf of a class of approximately 150 loan officers deprived of minimum wages and overtime in violation of the FLSA.

**Outlaw v. Secure Health, L.P.**                 9/24/13 – Final Approval
*No. 11-cv-602 (United States District Court for the Eastern District of Pennsylvania)*
The firm's attorneys served as lead counsel in this lawsuit seeking recovery of wages for unpaid pre-shift, meal break and uniform maintenance work for a class of 35 nursing home workers.

**Robinson v. RCN Telecom Services, Inc.**                 8/5/13 – Final Approval
*No. 10-cv-6841 (United States District Court for the Eastern District of Pennsylvania)*
The firm's attorneys served as co-lead counsel in this lawsuit which recovered $375,000 in unpaid overtime wages for misclassified cable television installers.

**Holland v. Securitas Security Services USA, Inc.**                 7/26/13- Final Approval
*No. BC 394708 (Superior Court of California, County of Los Angeles)*

# STEPHANZOURAS, LLP
## ATTORNEYS AT LAW

100 North Riverside Plaza, Suite 2150
Chicago, Illinois 60606
P 312-233-1550 | F 312-233-1560
stephanzouras.com

As class counsel, Stephan Zouras, LLP achieved a six figure settlement on behalf of thousands of security officers who allege they were deprived of overtime wages in violation of federal law.

**Jankuski v. Heath Consultants, Inc.**                               7/2/13 - Final Approval
*No. 12-cv-04549 (United States District Court for the Northern District of Illinois)*
Stephan Zouras, LLP was appointed lead counsel and achieved a settlement on behalf of gas management technicians deprived of minimum wages and overtime in violation of the FLSA.

**Ord v. First National Bank of Pennsylvania**                        6/21/13 – Final Approval
*No. 12-cv-766 (United States District Court for the Western District of Pennsylvania)*
The firm's attorneys served as co-lead counsel in this consumer fraud lawsuit which recovered $3,000,000 for consumers who had been made to pay improper overdraft fees.

**Holley v. Erickson Living Management, LLC**                         6/13/13 – Final Approval
*No. 11-cv-2444 (United States District Court for the Eastern District of Pennsylvania)*
The firm's attorneys served as lead counsel in this lawsuit seeking recovery of wages for unpaid pre-shift and meal break work for a class of 63 nursing home workers.

**Hansen, et al. v. Per Mar Security Services**                       5/15/13 - Final Approval
*No. 09-cv-459 (United States District Court for the Southern District of Iowa)*
Stephan Zouras, LLP was appointed class counsel and secured a settlement for hundreds of security guards deprived of minimum wages and overtime in violation of federal and state law.

**Pomphrett v. American Home Bank**                                   3/14/13 – Final Approval
*No. 12-cv-2511 (United States District Court for the Eastern District of Pennsylvania)*
The firm's attorneys served as co-lead counsel in this lawsuit which recovered $2,400,000 in unpaid overtime wages for misclassified loan officers.

**Murphy v. Rayan Brothers, et al.**                                  2/22/13 - Final Approval
*No. 11 CH 03949 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
Stephan Zouras, LLP achieved class wide recovery on behalf of a class of tenants for violations of the Chicago Residential Landlord and Tenant Ordinance (RLTO).

**Glatts v. Crozer-Keystone Health System**                          2/6/13 – Final Approval
*No. 0904-1314 (Philadelphia Court of Common Pleas)*
The firm's attorneys served as co-lead counsel in this lawsuit which challenged Defendant's workweek averaging practices and recovered $1,200,000 in unpaid overtime wages for hospital workers.

**Chambers v. Front Range Environmental, LLC**                       1/23/13 - Final Approval
*No. 12-cv-891 (United States District Court for the Northern District of Illinois)*
Stephan Zouras, LLP was appointed as class counsel and resolved this action on behalf of a class of maintenance workers.

**Piehl v. Baytree National Bank**                                    1/3/13 - Final Approval
*No. 12-cv-1364 (United States District Court for the Northern District of Illinois)*
Stephan Zouras, LLP was appointed class counsel and resolved this action on behalf of a class of Indiana loan officers who were paid on a commission-only basis and deprived of earned minimum wage and overtime in violation of the

# STEPHANZOURAS, LLP
## ATTORNEYS AT LAW

100 North Riverside Plaza, Suite 2150
Chicago, Illinois 60606
P 312-233-1550 | F 312-233-1560
stephanzouras.com

FLSA.

**Searson v. Concord Mortgage Corporation**        11/19/12 - Final Approval
*No. 07-cv-3909 (United States District Court for the Eastern District of New York)*
Stephan Zouras, LLP achieved a settlement on behalf of a class of 80 loan officers deprived of minimum wages and overtime in violation of the FLSA.

**Ellenbecker, et al. v. North Star Cable Construction, Inc., et al.**        11/14/12 - Final Approval
*No. 09-cv-7293 (United States District Court for the Northern District of Illinois)*
Stephan Zouras, LLP obtained Rule 23 certification, were appointed lead counsel, and achieved a significant monetary resolution for a class of several hundred cable technicians seeking unpaid overtime wages and the recovery of improper deductions from their pay.

**Williams, et al. v. Securitas Security Services USA, Inc.**        11/8/12 - Final Approval
*No. 10-cv-7181 (United States District Court for the Eastern District of Pennsylvania)*
As lead class counsel, Stephan Zouras, LLP achieved a settlement on behalf of a class of Pennsylvania security guards who were not paid for all time spent in training and orientation.

**Lacy, et al. v. The University of Chicago Medical Center**        11/6/12 – Final Approval
*No. 11-cv-5268 (United States District Court for the Northern District of Illinois)*
As lead class counsel, Stephan Zouras, LLP achieved a FLSA settlement for a collective class of hospital respiratory therapists.

**Molyneux, et al. v. Securitas Security Services USA, Inc.**        11/5/12 - Final Approval
*No. 10-cv-588 (United States District Court for the Southern District of Iowa)*
As lead class counsel, Stephan Zouras achieved a settlement on behalf of a class of Iowa and Wisconsin security guards who were not paid for all time spent in training and orientation.

**Davis v. TPI Iowa, LLC**        9/6/12 - Final Approval
*No. 11-cv-233 (United States District Court for the Southern District of Iowa)*
As class counsel, Stephan Zouras, LLP achieved a settlement on behalf of a collective class of production employees.

**Kernats, et al. v. Comcast Corporation**        5/28/12 - Final Approval
*No. 09-cv-3368 (United States District Court for the Northern District of Illinois)*
As lead class counsel, Stephan Zouras, LLP achieved a seven-figure settlement on behalf of over 7,500 Customer Account Representatives (CAEs) for unpaid wages in a Rule 23 class action brought under Illinois wage law.

**Garcia, et al. v. Loffredo Fresh Produce Co., Inc.**        5/24/12 - Final Approval
*No. 11-cv-249 (United States District Court for the Southern District of Iowa)*
As class counsel, Stephan Zouras, LLP achieved a settlement on behalf of a collective class of produce processing employees.

**Larsen, et al. v. Clearchoice Mobility, Inc., et al.**        3/21/12 - Final Approval
*No. 11-cv-1701 (United States District Court for the Northern District of Illinois)*
Stephan Zouras, LLP achieved an FLSA settlement on behalf of a collective class of retail sales consultants.

**Etter v. Trinity Structural Towers**        1/26/12 - Final Approval
*No. 11-cv-249 (United States District Court for the Southern District of Iowa)*

**STEPHANZOURAS**, LLP

ATTORNEYS AT LAW

100 North Riverside Plaza, Suite 2150
Chicago, Illinois 60606
P 312-233-1550 | F 312-233-1560
stephanzouras.com

As class counsel, Stephan Zouras, LLP achieved a settlement on behalf of a collective class of production employees.

**Petersen, et al v. Marsh USA, Inc. et al.**                    9/21/11 - Final Approval
*No. 10-cv-1506 (United States District Court for the Northern District of Illinois)*
Stephan Zouras, LLP achieved a six-figure settlement on behalf of over 30 analysts who claimed they were misclassified under the FLSA.

**Thompson v. World Alliance Financial Corp.**                    8/5/11 - Final Approval
*No. 08-cv-4951 (United States District Court for the Eastern District of New York)*
Stephan Zouras, LLP were appointed lead counsel and achieved a settlement on behalf of a class of over one hundred loan officers deprived of minimum wages and overtime in violation of federal and state law.

**Vaughan v. Mortgage Source LLC, et al.**                    6/16/11 - Final Approval
*No. 08-cv-4737 (United States District Court for the Eastern District of New York)*
Stephan Zouras, LLP were appointed lead counsel and achieved a settlement on behalf of a class of loan officers deprived of minimum wages and overtime in violation of federal and state law.

**Harris, et al. v. Cheddar's Casual Cafe, Inc.**                    6/1/11 - Final Approval
*No. 51 460 00557 10 (AAA Arbitration)*
Stephan Zouras served as lead counsel in six-figure class settlement on behalf of over 100 restaurant workers deprived of minimum wages and overtime.

**Turner v. Mercy Health System**                    4/20/11 – Final Approval
*No. 0801-3670 (Philadelphia Court of Common Pleas)*
The firm's attorneys served as co-lead counsel in this lawsuit which challenged Defendant's workweek averaging practices and, in a case of first impression, recovered $2,750,000 in unpaid overtime wages for hospital workers.

**Brown et al. v. Vision Works, et al.**                    3/4/11 - Final Approval
*No. 10-cv-01130 (United States District Court for the Northern District of Illinois)*
As lead class counsel, Stephan Zouras, LLP achieved a settlement on behalf of retail store managers improperly classified as exempt from overtime.

**Havard v. Osceola Foods, Inc., et al.**                    2/28/11 - Final Approval
*No. LA CV 0111290 (Iowa District for Clarke County, Iowa)*
As lead class counsel, Stephan Zouras, LLP achieved a class settlement on behalf of meat processing plant employees who were not properly paid for donning and doffing activities performed before their shifts, during meal breaks and after their shifts.

**Lagunas v. Cargill Meat Solutions Corp.**                    1/27/11 - Final Approval
*No. 10-cv-00220 (United States District Court for the Southern District of Iowa)*
Stephan Zouras, LLP served as co-lead counsel in class settlement on behalf of meat processing plant employees who were not properly paid for donning and doffing activities performed before their shifts, during meal breaks and after their shifts.

**Anderson v. JCG Industries, Inc.**                    9/2/10 - Final Approval
*No. 09-cv-1733 (United States District Court for the Northern District of Illinois)*
As lead class counsel, Stephan Zouras, LLP achieved a six-figure settlement on behalf of meat processing plant employees who were not properly paid for time worked before their shifts, during meal breaks and after their shifts.

# STEPHANZOURAS, LLP

### ATTORNEYS AT LAW

100 North Riverside Plaza, Suite 2150
Chicago, Illinois 60606
P 312-233-1550 | F 312-233-1560
stephanzouras.com

**Cedeno, et al. v. Home Mortgage Desk, Corp., et al.**                                         **6/15/10 - Final Approval**
*No. 08-cv-1168 (United States District Court for the Eastern District of New York)*
Stephan Zouras, LLP along with co-counsel was appointed lead counsel and achieved a six-figure settlement on behalf of a Section 216(b) collective class of loan officers deprived of overtime wages.

**Perkins, et al. v. Specialty Construction Brands, Inc.**                                         **11/15/09 - Final Approval**
*No. 09-cv-1678 (United States District Court for the Northern District of Illinois)*
As lead class counsel, Stephan Zouras, LLP achieved a six-figure wage and hour settlement on behalf of a collective class of plant employees for claims of unpaid overtime, including time worked before the start of their shifts, during breaks and after the end of their shifts.

**Wineland, et al. v. Casey's General Stores, Inc.**                                         **10/22/09 - Final Approval**
*No. 08-cv-00020 (United States District Court for the Southern District of Iowa)*
Stephan Zouras, LLP along with co-counsel was appointed lead counsel and achieved a seven-figure settlement on behalf of a Section 216(b) collective class and Rule 23 class of over 10,000 cooks and cashiers for unpaid wages, including time worked before and after their scheduled shifts and while off-the-clock.

**Jones, et al. v. Casey's General Stores, Inc.**                                         **10/22/09 - Final Approval**
*No. 07-cv-400 (United States District Court for the Southern District of Iowa)*
Stephan Zouras, LLP along with co-counsel was appointed lead counsel and achieved a seven-figure settlement on behalf of a Section 2 I 6(b) collective class and Rule 23 class of assistant store managers for unpaid wages, including time worked before and after their scheduled shifts and while off-the-clock.

**Stuart, et al. v. College Park, et al.**                                         **12/11/07 - Final Approval**
*No. 05 CH 09699 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
The firm's partners served as co-lead counsel in this case brought on behalf of a class of tenants who were seeking the refund of their security deposits. As a result of their efforts, Mr. Stephan and Mr. Zouras helped achieve a six-figure settlement on behalf of a class of over 100 tenants.

**Huebner et al. v. Graham C Stores**                                         **11/15/07 - Final Approval**
*No. 06 CH 09695 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
Ryan Stephan of Stephan Zouras, LLP served as co-lead counsel in this wage and hour case involving claims for unpaid wages by a class of gas station employees. Mr. Stephan helped achieve a six-figure settlement for over 100 employees.

**Perez, et al. v. RadioShack Corporation**                                         **9/14/07 - Final Approval**
*No. 02-cv-7884 (United States District Court for Northern District of Illinois)*
The firm's partners served as co-lead counsel in this nationwide Fair Labor Standards Act ("FLSA") overtime action brought on behalf of 4,000 retail store managers. Plaintiffs claimed they were improperly classified as exempt from the FLSA and owed overtime compensation for all hours worked in excess of 40 each week. In a case of first impression, the Court granted summary judgment in favor of a sub-class of Plaintiffs who did not "regularly and customarily" supervise at least 80 hours of subordinate time per week at least 80% of the time as required by the executive exemption of the FLSA. The reported decision is *Perez v. RadioShack Corp.*, 386 F. Supp. 979 (N.D. Ill. 2005). As a result of the efforts of Plaintiffs' counsel, Plaintiffs obtained a nearly $9 million settlement on the eve of trial.



100 North Riverside Plaza, Suite 2150
Chicago, Illinois 60606
P 312-233-1550 | F 312-233-1560
stephanzouras.com

**Reinsmith, et al. v. Castlepoint Mortgage**                                    **4/3/07 - Final Approval**
*No. 05-cv-01168 (United States District Court, Eastern District of Massachusetts)*
The firm's partners served as co-lead counsel in this action brought on behalf of a collective class of loan officers seeking to recover unpaid overtime. Mr. Stephan and Mr. Zouras helped achieve a seven-figure settlement on behalf of over 100 loan officers in this case.

**Kutcher, et al. v. B&A Associates**                                    **11/20/06 - Final Approval**
*No. 03 CH 07610 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
The firm's partners served as co-lead counsel in this case brought on behalf of a class of tenants who were seeking damages based on alleged security deposit violations. As a result of their efforts, Mr. Stephan and Mr. Zouras helped achieve a six-figure settlement on behalf of a class of over 100 tenants.

**Ciesla, et al. v. Lucent Technologies, Inc**.                                    **7/31/06 - Final Approval**
*No. 05-cv-1641 (United States District Court for the Northern District of Illinois)*
The firm's partners served as co-lead counsel in this breach of contract class action against a high-tech communications company. Mr. Stephan and Mr. Zouras helped obtain a seven-figure settlement on behalf of the class.

**Casale, et al. v. Provident Bank**                                    **7/25/05 - Final Approval**
*No. 04-cv-2009 (United States District Court for the District of New Jersey)*
The firm's partners served as co-lead counsel in this case brought on behalf of a collective class of over 100 loan officers who were seeking damages based on wage and hour violations of the FLSA. As a result of their efforts, Mr. Stephan and Mr. Zouras helped achieve a seven-figure settlement on behalf of the Plaintiffs.

**Corbin, et al. v. Barry Realty**                                    **3/22/05 - Final Approval**
*No. 02 CH 16003 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
The firm's partners served as co-lead counsel in this case brought on behalf of a class of tenants who were seeking the refund and interest on their security deposits as called for by the Chicago Residential Landlord Tenant Ordinance. As a result of their efforts, Mr. Stephan and Mr. Zouras helped achieve a six-figure settlement on behalf of a class of over 100 tenants.

## BIOMETRIC INFORMATION PRIVACY CLASS ACTION LAWSUITS

**Our firm is at the forefront of BIPA litigation to protect the biometric data and privacy of employees and consumers.  We have brought numerous class action lawsuits against employers and other retail businesses who have collected biometric data without consent and without instituting the proper safeguards including;**

- **Alquero, et al. v. Grand Victoria Riverboat Casino, et al.**
  *No. 19-CH-09603 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Ayala, et al. v. American Louver Company**
  *No. 19-CH-04163 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Battles, et al v. Southwest Airlines Co., et al.**
  *No. 01-19-0000-0715 (American Arbitration Association)*
- **Bedford, et al. v. Lifespace Communities, Inc.**
  *No. 20-cv-04574 (United States District Court for the Northern District of Illinois)*

**STEPHAN**ZOURAS**, LLP**

ATTORNEYS AT LAW

100 North Riverside Plaza, Suite 2150
Chicago, Illinois 60606
P 312-233-1550 | F 312-233-1560
stephanzouras.com

- **Bello, et al. v. The Parc at Joliet, LLC**
  *No. 18-CH-1888 (Circuit Court of Will County, State of Illinois)*
- **Bounds, et al. v. TM Healthcare Management, LLC**
  *No. 19-CH-11580 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Boyd, et al. v. Lazer Spot, Inc.**
  *No. 19-CH-12511 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Brammer, et al. v. Ava Inc., et al.**
  *No. 19-CH-07379 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Bray, et al. v. Hixson Lumber Sales of Illinois, Inc.**
  *No. 2019L9 (Circuit Court of Montgomery County, State of Illinois)*
- **Bray, et al. v. Lathem Time Co.,**
  *No. 2019L8 (Circuit Court of Montgomery County, State of Illinois)*
- **Brewton, et al. v. First Student, Inc.**
  *No. 20-CH-04840 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Bronson, et al. v. Intercontinental Hotels Group. Inc. et al.**
  *No. 2019-CH-09294 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Brown, et al. v. Weathertech**
  *No. 19-CH-00503 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Bryant, et al. v. Loews Chicago Hotel, Inc., et al.**
  *No. 18-CH-09477 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Bryant, et al v. Norwood Life Society, et al.**
  *No. 19-CH-10984 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Bryski, et al. v. Nemera Buffalo Grove, LLC, et al.**
  *No. 18-CH-07264 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Buford, et al. v. GDI Services, Inc.**
  *No 20-CH-05007 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Burt, et al. v. Anixter Inc, et al.**
  *No. 19-CH-04569 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Cacy, et al. v. Ceridian HCM, Inc.**
  *No. 18-CH-09968 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Cameron, et al. v. Polar Tech Industries, Inc., et al.**
  *No. 19-CH-000013 (Circuit Court of DeKalb County, Chancery Division, State of Illinois)*
- **Campos, et al. v. City View Multicare Center, LLC**
  *No. 19-CH-07082 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Campos, et al. v. Midwest Time Recorder, Inc.**
  *No. 19-CH-07229 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Chatman, et al. v. Crate and Barrel**
  *No. 18-CH-09277 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Collier, et al. v. Pete's Fresh Market**
  *No. 19-CH-05125 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Cosenza v. DiNico's Pizza, et al.**
  *No. 20-CH-00614 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Cothron v. White Castle, et al.**
  *No. 19-cv-00382 (United States District Court for the Northern District of Illinois)*
- **Currie, et al. v. McDonald's**
  *20-CH-0467 (Circuit Court of Lake County, Chancery Division, State of Illinois)*

**STEPHANZOURAS, LLP**

ATTORNEYS AT LAW

100 North Riverside Plaza, Suite 2150
Chicago, Illinois 60606
P 312-233-1550 | F 312-233-1560
stephanzouras.com

- **Delgado, et al. v. America's Auto Auction Chicago, Inc.**
  *No. 19-CH-04164 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Diaz, et al. v. Silver Cross Hospital**
  *No. 18-CH-1327 (Circuit Court of Will County, State of Illinois)*
- **Doporcyk, et al. v. Mariano's**
  *No. 17-CH-08092 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Edwards, et al. v. The Parc at Joliet, LLC**
  *No. 20-CH-66 (Circuit Court of Will County, State of Illinois)*
- **Ervin, et al. v. Jernberg Industries, LLC, et al.**
  *20-CH-05318 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Fields, et al. v. Abra Auto Body & Glass**
  *No. 17-CH-12271 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Figueroa, et al. v. Kronos, Inc.**
  *No. 19-cv-01306 (United States District Court for the Northern District of Illinois)*
- **Figueroa, et al. v. Tony's Fresh Market, et al.**
  *No. 18-CH-15728 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Fisher, et al. v. HP Property Management, LLC, et al.**
  *No. 19-CH-14082 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Flores, et al. v. Juul Labs, Inc.**
  *No. 19-CH-12935 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Fox, et al. v. Dakkota Integrated Systems, Inc.**
  *No. 19-CH-03620 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Fuentes, et al. v. Focal Point Exports, LTD., et al.**
  *No. 19-CH-03890 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Fulton, et al. v. SCR Medical Transport, Inc.**
  *No. 20-CH-00927 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Gates, et al. v. Eagle Family Foods Group, LLC**
  *20-CH-00478 (Circuit Court of Lake County, Chancery Division, State of Illinois)*
- **Gates, et al. v. Thermoflex, et al.**
  *20-CH-00479 (Circuit Court of Lake County, Chancery Division, State of Illinois)*
- **George, et al. v. Bricton 191 Associates, LLC, et al.**
  *No. 19-CH-04014 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Gil, et al. v. True World Foods Chicago, LLC**
  *20-cv-02362 (United States District Court for the Northern District Court of Illinois)*
- **Gray, et al. v. The University of Chicago Medical Center, Inc.**
  *No. 19-cv-04229 (United States District Court for the Northern District of Illinois)*
- **Gresham, et al. v. The Austin Oasis, LLC, et al.**
  *No. 20-CH-01910 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Gresham, et al. v. Clayton Residential Home, Inc.**
  *No. 20-CH-01912 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Guy, et al. v. Barton Healthcare, LLC**
  *No. 19-CH-04264 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Harris, et al. v. United Facilities, Inc.**
  *No. 19-L-904 (Circuit Court of Will County, Chancery Division, State of Illinois)*
- **Heard, et al v. Becton, Dickinson & Company**
  *No. 19-cv-4158 (United States District Court for the Northern District of Illinois)*

**STEPHAN**ZOURAS, LLP

ATTORNEYS AT LAW

100 North Riverside Plaza, Suite 2150
Chicago, Illinois 60606
P 312-233-1550 | F 312-233-1560
stephanzouras.com

- **Heard, et al. v. Omnicell, Inc.**
  *No. 19-CH-06817 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Heard, et al. v. St. Bernard Hospital, et al.**
  *No. 17-CH-16828 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Heard, et al v. THC-North Shore, Inc.**
  *No. 17-CH-16918 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Heard, et al. v. Weiss Memorial Hospital Foundation**
  *No. 19-CH-06763 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Henderson, et al. v. ADP, LLC, et al.**
  *No. 18-CH-07139 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Johns, et al. v. Club Fitness of Alton, LLC**
  *No. 18-L-000080 (Circuit Court of Madison County, Law Division, State of Illinois)*
- **Johns, et al. v. Paycor, Inc.**
  *No. 20-L-000114 (Circuit Court of Madison County, Chancery Division, State of Illinois)*
- **Johnson, et al. v. OM Joliet Wings, Inc., et al.**
  *No 19-CH-14014 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Johnson, et al. v. Gold Standard Baking, Inc., et al.**
  *No. 18-CH-09011 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Johnson, et al. v. Fieldwork, Inc.**
  *No. 19-CH-11092 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Jones, et al. v. Hooters Management Corporation, et al.**
  *No. 18-Ch-00908 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Kane, et al. v. Con-Tech Lighting, et al.**
  *No. 18-CH-12194 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Kardos, et al. v. ABT Electronics, Inc.**
  *No. 19-CH-01235 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Keene, et al. v. Plymouth Place, Inc., et al.**
  *No. 19-CH-01953 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Kelley, et al. v. Chicago Behavioral Hospital, et al.**
  *No. 20-CH-03302 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Kelley, et al. v. Hartgrove Hospital**
  *No. 20-CH-01380 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **King, et al. v. Garfield Park Hospital, LLC**
  *No. 20-CH-00056 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Krause, et al. v. Caputo's New Farm Produce, et al.**
  *No. 18-Ch-11660 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Landa, et al. v. Menasha Packaging Co., LLC**
  *20-CH-05251 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Landa, et al. v. MJ Holding Company, LLC**
  *20-CH-05247 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Littleton, et al. v. Lydia Healthcare I, LLC**
  *No. 19-CH-12142 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Liu, et al. v. Four Seasons**
  *No. 17-CH-14949 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Lopez, et al. v. Metraflex**
  *No-CH-05354 (Circuit Court of Cook County, Chancery Division, State of Illinois)*

**STEPHAN**ZOURAS**, LLP**

ATTORNEYS AT LAW

100 North Riverside Plaza, Suite 2150
Chicago, Illinois 60606
P 312-233-1550 | F 312-233-1560
stephanzouras.com

- **Marshall, et al. v. Jumio Corporation**
  *No. 19-CH-07095 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Martinez, et al. v. Springhill Suites, et al.**
  *No. 19-CH-06848 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Mazya, et al. v. Northwestern Lake Forest Hospital, et al.**
  *No. 18-CH-07161 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **McGraw, et al. v. Lakeshore Beverage, et al.**
  *No. 20-CH-00343 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Measaw, et al. v. Heritage Operations Group, LLC**
  *No. 19-CH-08321 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Meegan, et al. v. NFI Industries, Inc.**
  *No. 19-CH-14479 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Mendenhall, et al. v. Burger King**
  *No. 19-CH-10636 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Mendez, et al. v. United Dental Partners, LLC, et al.**
  *No. 20-CH-01581 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Mitchell, et al. v. Bottled Blonde Chicago, LLC**
  *No. 20-CH-02454 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Morris, et al. v. Wow Bao**
  *No. 17-CH-12029 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Mosby, et al. v. The Ingalls Memorial Hospital, et al.**
  *No. 18-CH-05031 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Nelson, et al. v. Kid's Castle Learning Center**
  *No. 20-L-000068 (Circuit Court of Sangamon County, Law Division State of Illinois)*
- **Nordstrom, et al. v. Dial Senior Management, Inc.**
  *No. 19-CH-11108 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Osborne, et al. v. WeWork Companies, Inc., et al.**
  *No. 19-CH-12856 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **O'Sullivan, et al. v. All-Star, Inc.**
  *No. 19-CH-11575 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Parsons, et al. v. Personnel Staffing Group, LLC**
  *No. 20-CH-00473 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Peaks-Smith, et al. v. Saint Anthony Hospital, et al.**
  *No. 18-CH-07077 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Peatry, et al. v. Bimbo Bakeries USA, Inc.**
  *No. 19-cv-02942 (United States District Court for the Northern District of Illinois)*
- **Quentere, et al. v. G.H. Cretors**
  *No. 20-CH-00000484 (Circuit Court of Lake County, Chancery Division, State of Illinois)*
- **Quentere, et al. v. Tablecraft Product Company, Inc.**
  *No 20-CH-00000493 (Circuit Court of Lake County, Chancery Division, State of Illinois)*
- **Ramsey, et al. v. Daley's Medical Transportation, Inc.**
  *No. 18-CH-01935 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Robertson, et al. v. Hostmark Hospitality Group, Inc., et al.**
  *No. 18-CH-05194 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Sanchez, et al v. Elite Labor Services**
  *No. 18-CH-02651 (Circuit Court of Cook County, Chancery Division, State of Illinois)*

**STEPHANZOURAS, LLP**

ATTORNEYS AT LAW

100 North Riverside Plaza, Suite 2150
Chicago, Illinois 60606
P 312-233-1550 | F 312-233-1560
stephanzouras.com

- **Sanchez, et al. v. Tide Cleaners**
  *No. 20-CH-02640 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Stokes, et al. v. Gate Gourmet, Inc.**
  *No. 19-CH-13755 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Tellado, et al. v. Rich Products Corporation, et al.**
  *No. 2018-CH-07627 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Terry, et al. v. Griffith Foods Group, Inc.**
  *No. 19-CH-12910 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Thomas, et al. v. Kik Custom Products**
  *No. 19-CH-02471 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Thome, et al. v. Novatime Technology, Inc.**
  *No. 19-CH-09380 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Thurman, et al. v. Northshore University HealthSystem**
  *No. 18-CH-03544 (Circuit Court of Cook County, Chancery Division)*
- **Tims, et al. v. Black Horse Carriers, Inc.**
  *No. 19-CH-03522 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Toor, et al. v. CoreCentric Solutions, Inc.**
  *No. 19-CH-05914 (Circuit Court of DuPage County, Chancery Division, State of Illinois)*
- **Townsend, et al. v. The Estates of Hyde Park, LLC**
  *No. 19-CH-11849 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Trayes, et al. v. Mid-Con Hospitality Group, LLC, et al.**
  *No. 19-CH-11117 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Treadwell, et al. v. Power Solutions International, Inc., et al.**
  *No. 18-cv-08212 (United States District Court for the Northern District of Illinois)*
- **Trottier, et al. v. Attendance Demand, Inc.**
  *No. 19-CH-13230 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Van Jacobs, et al. v. New World Van Lines, Inc.**
  *No. 19-CH-02619 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Wallace, et al. v. PersonalizationMall.com, LLC**
  *No 20-CH-669 (Circuit Court of Will County, Chancery Division, State of Illinois)*
- **Walton, et al. v. Roosevelt University**
  *No. 19-CH-04176 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Watts, et al. v. Chicago Lakeshore Hospital**
  *No. 17-CH-12756 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Webster, et al. v. Mercy Hospital & Medical Center Chicago, et al.**
  *No. 19-CH-12362 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Webster, et al. v. South Holland Home, LLC, et al.**
  *No. 19-CH-12365 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Webster, et al. v. Triad Senior Living, Inc.**
  *No. 19-CH-10787 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Webster, et al. v. Windsor Estates Nursing and Rehab Centre, LLC**
  *No. 19-CH-11441 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Wheeler, et al. v. Ridgeview Rehab & Nursing Center, LLC, et al.**
  *No. 19-CH-14577 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **White, et al. v. Art Van Furniture, Inc.**
  *No. 19-CH-04671 (Circuit Court of Cook County, Chancery Division, State of Illinois)*



100 North Riverside Plaza, Suite 2150
Chicago, Illinois 60606
P 312-233-1550 | F 312-233-1560
stephanzouras.com

ATTORNEYS AT LAW

- **White v. East Side Child Development Center, et al.**
  *No. 18-CH-09599 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Williams, et al. v. Jackson Park Supportive Living, LLC**
  *No. 19-CH-09286 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Williams, et al. v. Morgan Services, Inc.**
  *No. 19-CH-11860 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Wilson, et al. v. Magna Exteriors Belvidere, et al.**
  *No. 20-CH-01698 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Young, et al. v. International Precision Components Corp.**
  *No. 20-CH-00000521 (Circuit Court of Lake County, Chancery Division, State of Illinois)*
- **Young, et al. v. Taylor Farms Illinois, Inc.**
  *No. 20-CH-05284 (Circuit Court of Cook County, Chancery Division, State of Illinois)*

EXHIBIT A-2

Page 1

1  STATE OF ILLINOIS   )
                        ) SS.

2  COUNTY OF C O O K   )

3           IN THE CIRCUIT COURT OF COOK COUNTY
            COUNTY DEPARTMENT-CHANCERY DIVISION

4

5  GREGG BRUHN,           )
                        )

6      Plaintiff,     )
                        )

7      -vs-          )  Case No. 18 CH 1737
                        )

8  AB ACQUISITIONS, LLC;   )
  ALBERTSONS COMPANIES,    )

9  LLC, et. al.,        )
                        )

10     Defendants.    )

11

12

13

14

15

16

17       REPORT OF PROCEEDINGS in the above-entitled

18  cause before the Honorable ANNA M. LOFTUS, taken by

19  Thomas A. Manno, a C.S.R. within and for the State of

20  Illinois, pursuant to the provisions of the Code of Civil

21  Procedure of the State of Illinois and the Rules of the

22  Supreme Court thereof, at the Richard J. Daley Center,

23  Chicago, Illinois 60602, Room 2410, commencing at

24  10:30 a.m. on January 30th, 2020.

Page 2

1  APPEARANCES:
2    STEPHAN ZOURAS, LLP
     100 North Riverside, Suite 2150
3    Chicago, Illinois 60606
     BY:  MR. JAMES B. ZOURAS
4    312-233-1550
     Jzouras@stephanzouras.com
5        Appeared on behalf of the Plaintiff;
6    BENESCH, FRIEDLANDER, COPLAN & ARONOFF, LLC
     71 South Wacker Drive, Suite 1600
7    Chicago, Illinois 60606
     BY:  MR. MARK EISEN
8    312-212-4940
     Meisen@beneschlaw.com
9        Appeared on behalf of the Defendant,
         Albertsons Companies, LLC.
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

Page 3

1        THE CLERK:  18 CH 1737, Bruhn versus New
2  Albertson's.
3        MR. ZOURAS:  Good morning, your Honor.
4  Jim Zouras for the plaintiff.
5        MR. EISEN:  Good morning, your Honor.
6  Mark Eisen for Albertson's.
7        THE COURT:  All right.  We are here on
8  defendant New Albertsons, Inc., Motion to Dismiss.   I
9  previously heard argument on the motion and I am now
10 ready to rule.
11       And for everybody's notice, I am going to be
12 speaking a little slower for the court reporter.  So I
13 don't know if you all want to sit down.  It will get a
14 little lengthy, but you certainly can stand, and you can
15 change your mind halfway through.
16       All right.  Albertsons contends that the
17 Biometric Information Privacy Act, or BIPA, constitutes
18 special legislation, in violation of the Illinois
19 constitution, which prohibits granting a special benefit
20 for exclusive privilege to the exclusion of others
21 similarly situated.
22       The Special Legislation clause prohibits the
23 General Assembly from conferring a special benefit, or
24 privilege, upon one person or a group, and excluding

Page 4

1  others that are similarly situated.  The clause prevents
2  the Legislature from making classifications that
3  arbitrarily discriminate in favor of a select group.
4        To determine whether a law constitutes special
5  legislation, a two-part test is applied.
6        First, whether the statutory classification at
7  issue discriminates in favor of a select group and
8  against a similarly-situated group.
9        Here, the select groups identified by defendant
10 as being treated more favorably, i.e., they do not have
11 to comply with BIPA and its disclosure requirements, are
12 financial institutions and their affiliates, government
13 contractors, and the Government.
14       The second part of the test is if the
15 classification does so discriminate, the Court must
16 determine whether the classification is arbitrary.
17 Whereas here, a statute does not affect fundamental
18 rights, the Court uses the Rational Basis Test to assess
19 whether it is arbitrary.
20       Under this test, the question of whether the
21 statutory classification is rationally related to a
22 legitimate State interest, and the rational basis
23 inquiry, is two-fold.
24       First, to determine whether there is a

Page 5

1  legitimate State interest behind the legislation, and if
2  so, number two, to determine whether there is a
3  reasonable relationship between that interest and the
4  means the Legislature has chosen to pursue it.
5        The parties don't appear to dispute the second
6  prong, but I will address it near the end.
7        The classification does not need to be
8  supported by evidence or empirical data.  In determining
9  whether a statute satisfies the Rational Basis Test, the
10 Court may hypothesize reasons for the legislation, even
11 if the reasoning advanced did not motivate the
12 legislative actions.
13       The Rational Basis Test is highly deferential.
14 Its focus is not on the wisdom of the statute.  If there
15 is any conceivable set of facts to show a rational basis
16 for the statute, it will be upheld.
17       Focusing on the first prong, which is to
18 determine whether there is a legitimate State interest
19 behind the legislation, again the defendant identifies
20 the three categories of financial institutions and their
21 affiliates, government employees, and government
22 contractors, and the Court performed an analysis with
23 respect to each.
24       As to the financial institutions, the rational

2 (Pages 2 - 5)

Page 6

1 basis is to avoid conflict with Federal law, specifically
2 the Gramm-Leach-Bliley Act, or GLBA.
3     The defendant argues there's no specter of
4 preemption because there is no conflict between GLBA and
5 BIPA.  Specifically, defendant argues GLBA does not apply
6 to employees, and BIPA does.
7     However, defendants' argument is based upon the
8 premise that BIPA solely applies to employees.
9     BIPA is not limited to the protection of
10 employees.  Instead, BIPA was designed to protect the
11 confidentiality of personal biometric markers collected
12 from members of the general public, which does include
13 employees, but it does not limit it to employees, as
14 established or shown in the Rosenbach case, which did not
15 involve an employee's biometric data.
16     And GLBA requires financial institutions to
17 ensure the security and confidentiality of personal
18 information collected from their customers.
19     Here a State law, BIPA, carved out the category
20 of financial institutions to make sure there is no
21 conflict with Federal law -- in parens, GLBA -- when the
22 GLBA's purpose is to ensure the confidentiality of
23 personal information collected by financial institutions
24 from customers.

Page 7

1     So, whether the GLBA applies to employees is
2 not the question.  GLBA and BIPA both address consumer
3 privacy.  There is a conflict.
4     With the BIPA exclusion, employees of financial
5 institutions may not get the benefit of BIPA, but that
6 does not mean that there is not a conflict which provides
7 the rational basis to exclude financial institutions.
8     Moving on to the second category of government
9 employees, BIPA's intent, set forth in the statute and
10 legislative history, is to cover private institutions.
11 Rosenbach reiterated that the purpose of BIPA is to
12 protect person from, "risks posed by the growing use of
13 biometrics by businesses," Paragraph 35.
14     Also, there are potential tort immunity issues
15 which is a rational basis for the carve-out.  And
16 finally, the Government can regulate itself directly
17 without a need for a consumer protection statute.
18     With respect to the third category of
19 government contractors, a rational basis to exclude
20 government contractors, along with government employees,
21 is to prevent the need for different disclosure
22 procedures, depending upon whether the worker is a
23 contractor or an employee of the government.
24     If the Government requires biometric

Page 8

1 information, it would have to put in place a separate
2 process for contractors to comply with BIPA that would
3 not apply to employees working side-by-side with the
4 contractors.
5     The exclusion allows the Government to treat
6 employees and contractors the same.  This is a sufficient
7 basis to discriminate under the Rational Basis Test.
8     Defendant reiterates that there's no
9 legislative history to know why the General Assembly
10 included these exclusions or classifications in BIPA.
11 However, the Legislature need not have identified the
12 bases for these exclusions for a rational basis to exist.
13     Again, under the Rational Basis Test, the Court
14 can identify reasons for the exclusions, even if the
15 Legislature did not base its decision to include the
16 exclusions on that particular reason.
17     A finding of rational basis is not eliminated
18 just because an exclusion is not written perfectly, or is
19 overbroad, or problematic in other ways.
20     As to the second prong of the rational basis
21 inquiry, which is whether there's a reasonable
22 relationship between the interest and the means the
23 Legislature has chosen to pursue it, the government
24 objective, in including the classifications in BIPA, is

Page 9

1 the exclusion of certain categories to avoid, or certain
2 classifications, to avoid conflict, and the means used in
3 the statute is the exclusion of those categories.
4     And again, the parties did not appear to
5 dispute the second prong in their briefs and in the
6 motion.
7     So as I just set forth, there is a rational
8 basis for the inclusion of the BIPA, what I'm calling
9 BIPA exclusions, or the classifications of financial
10 institutions and their affiliates, government employees,
11 and government contractors.
12     Defendant next contends that the HIPAA
13 exception in BIPA is vague and violates defendant's due
14 process rights under the 14th Amendment and Illinois
15 Constitution identified in the motion as due process
16 arguments, and it's also considered by the Court as an
17 as-applied challenge.
18     Plaintiff first argues that defendant's
19 as-applied challenge is premature, as no evidentiary
20 hearing has been conducted, and the Court has made no
21 findings of fact.
22     However, plaintiff has not identified any
23 factual dispute that is applicable to defendant's
24 challenge, or that would be required to be addressed

3 (Pages 6 - 9)

Page 10

1 prior to the Court addressing defendant's challenge.
2      The question is whether the HIPAA exception to
3 BIPA is vague as applied whether, when measured by common
4 understanding and practices, a person of ordinary
5 intelligence is given fair warning as to what conduct is
6 prohibited.
7      The parties do not dispute that Albertsons'
8 employees, pharmacists, that those pharmacists use their
9 fingerprints to access the pharmacy computer which
10 contains prescriptions, patient information.
11      Defendant argues that HIPAA exceptions to BIPA,
12 that the HIPAA exception to BIPA, is vague as applied to
13 Albertson's, and that portion of the exception is,
14 "information captured a patient in a health care setting,
15 or information collected, used, or stored for health care
16 treatment, payment or operations under HIPAA."
17      No findings of fact are necessary for
18 analyzing whether the exception is vague.
19      I've already mentioned that the Court must look
20 to whether, when measured by common understanding and
21 practices, a person of ordinary intelligence is given
22 fair warning as to what conduct is prohibited.
23      What is relevant is whether the statute
24 prohibitions are sufficiently definite when measured by

Page 11

1 common understanding and practices to give a person of
2 ordinary intelligence -- again, fair warning -- as to
3 what conduct is prohibited.
4      Defendant argues that the provision is
5 ambiguous, and therefore it is vague, besides no support
6 for its conclusion that the terms "ambiguous and vague"
7 are one and the same.
8      Second, it's ambiguous if its meaning cannot be
9 interpreted from its plain language or if it's capable of
10 being understood by reasonably well-informed persons in
11 more than one manner.
12      The parties demonstrated that the provision
13 could be understood in more than one manner in prior
14 motion practice.
15      This Court concluded the provision was
16 ambiguous and looked to the tools of statutory
17 construction to determine the intent of the General
18 Assembly.
19      The fact that another judge disagrees with this
20 Court's analysis does not establish the vagueness of the
21 provision. The Court's acknowledgement that the
22 defendant's proposed interpretation was plausible is also
23 not dispositive on the issue of vagueness.
24      Again, the Court looked at two principles of

Page 12

1 statutory interpretation and construction to determine
2 the intent of the General Assembly.
3      The Court did not analyze, in the separate
4 motion practice, whether a person or ordinary
5 intelligence was given fair warning as to the HIPAA
6 exception to BIPA.
7      Also not relevant to this analysis is a lack of
8 legislative history or court interpretation regarding the
9 provision.
10      The question is whether the statute on its face
11 is vague, not whether the statutory language, and all
12 available information about the creation of the statute,
13 were available to the defendant in this case, as to the
14 parties making it, which would make it difficult to
15 understand whether the statute applies to defendants.
16      What is relevant is whether the statute
17 prohibitions are sufficiently definite, when measured by
18 common understanding and practices, to give a person of
19 ordinary intelligence fair warning as to what conduct is
20 prohibited.
21      The language of the provision itself,
22 "information collected, used, or stored" -- and then I
23 have ellipses -- "under HIPAA," puts a reasonable person
24 on notice that the information collected as required by

Page 13

1 HIPAA is not subject to BIPA.
2      This gives fair warning that information not
3 protected by HIPAA may be subject to BIPA, and that
4 information protected by HIPAA is not subject to BIPA.
5      Fair warning does not mean knowledge with
6 certainty that the statute applies or does not apply.
7 Again, it means that a person of ordinary intelligence is
8 given fair warning as to what conduct is prohibited.
9      Defendant mentioned in the briefing a desire to
10 have a question certified. I don't have a motion at this
11 time, and certainly if you'd like to bring one, we will
12 address it at that time.
13      And I'm not sure if the reference was to the
14 prior motion practice in my decision in the original
15 Motion to Dismiss, or this one, but you need to set that
16 forth in a motion, and then we would have it briefed, if
17 counsel would like to brief it, as well.
18      So, the Motion to Dismiss is denied. We'll set
19 a deadline to answer.
20      MR. EISEN: Sure. We would expect to request
21 leave to certify the question.
22      I realize it doesn't stop the answer, but if we
23 do, I suppose, 28 days to answer, and then I think we
24 would move to certify inside of that time period.

4 (Pages 10 - 13)

Page 14

1      THE COURT: Okay.  And then when we come back,
2  maybe in 45 days, you can present that, the motion to
3  certify--
4      MR. EISEN:  Sure.
5      THE COURT:  --to the Court.
6      MR. EISEN:  Yes.
7      THE COURT:  So you wouldn't need a separate --
8  we'd spindle it and set a date now.
9      MR. EISEN:  Yes.  Sounds good.
10     THE COURT:  Okay.  And at that time, you can
11  let me know if you want to respond in writing.
12     MR. ZOURAS:  Certainly, your Honor.
13     THE COURT:  Okay.  Thank you.
14     MR. EISEN:  Thank you.
15     MR. ZOURAS:  Thank you, Judge.
16        (The hearing ended at 10:50 a.m.)
17
18
19
20
21
22
23
24

Page 15

1  STATE OF ILLINOIS   )
                    ) SS.
2  COUNTY OF C O O K   )
3
4      I, THOMAS A. MANNO, C.S.R., do hereby certify
5  that I reported in machine shorthand the hearing taken in
6  the above-entitled cause before JUDGE ANNA M. LOFTUS on
7  January 30th, 2020, and that this transcript is a true
8  and accurate transcription of my machine shorthand notes
9  so taken to the best of my ability, and contains all of
10  the proceedings given at said hearing.
11
12
            THOMAS A. MANNO, C.S.R.
13            License No. 84-001174
14
15
16
17
18
19
20
21
22
23
24

5 (Pages 14 - 15)

**[& - classifications]**

| & |
| --- |
| **&** 2:6 |

| 1 |
| --- |
| **100** 2:2 |
| **10:30** 1:24 |
| **10:50** 14:16 |
| **11526** 15:12 |
| **14th** 9:14 |
| **1600** 2:6 |
| **1737** 1:7 3:1 |
| **18** 1:7 3:1 |

| 2 |
| --- |
| **2020** 1:24 15:7 |
| **2150** 2:2 |
| **2410** 1:23 |
| **28** 13:23 |

| 3 |
| --- |
| **30th** 1:24 15:7 |
| **312-212-4940** 2:8 |
| **312-233-1550** 2:4 |
| **35** 7:13 |

| 4 |
| --- |
| **45** 14:2 |

| 6 |
| --- |
| **60602** 1:23 |
| **60606** 2:3,7 |

| 7 |
| --- |
| **71** 2:6 |

| 8 |
| --- |
| **84-001174** 15:13 |

| a |
| --- |
| **a.m.** 1:24 14:16 |
| **ab** 1:8 |
| **ability** 15:9 |
| **access** 10:9 |
| **accurate** 15:8 |

**acknowledgement** 11:21
**acquisitions** 1:8
**act** 3:17 6:2
**actions** 5:12
**address** 5:6 7:2 13:12
**addressed** 9:24
**addressing** 10:1
**advanced** 5:11
**affect** 4:17
**affiliates** 4:12 5:21 9:10
**al** 1:9
**albertson's** 3:2,6 10:13
**albertsons** 1:8 2:9 3:8,16 10:7
**allows** 8:5
**ambiguous** 11:5,6 11:8,16
**amendment** 9:14
**analysis** 5:22 11:20 12:7
**analyze** 12:3
**analyzing** 10:18
**anna** 1:18 15:6
**answer** 13:19,22 13:23
**appear** 5:5 9:4
**appearances** 2:1
**appeared** 2:5,9
**applicable** 9:23
**applied** 4:5 9:17 9:19 10:3,12
**applies** 6:8 7:1 12:15 13:6
**apply** 6:5 8:3 13:6
**arbitrarily** 4:3
**arbitrary** 4:16,19

**argues** 6:3,5 9:18 10:11 11:4
**argument** 3:9 6:7
**arguments** 9:16
**aronoff** 2:6
**assembly** 3:23 8:9 11:18 12:2
**assess** 4:18
**available** 12:12,13
**avoid** 6:1 9:1,2

| b |
| --- |
| **b** 2:3 |
| **back** 14:1 |
| **base** 8:15 |
| **based** 6:7 |
| **bases** 8:12 |
| **basis** 4:18,22 5:9 5:13,15 6:1 7:7,15 7:19 8:7,7,12,13 8:17,20 9:8 |
| **behalf** 2:5,9 |
| **benefit** 3:19,23 7:5 |
| **benesch** 2:6 |
| **beneschlaw.com** 2:8 |
| **best** 15:9 |
| **biometric** 3:17 6:11,15 7:24 |
| **biometrics** 7:13 |
| **bipa** 3:17 4:11 6:5 6:6,8,9,10,19 7:2,4 7:5,11 8:2,10,24 9:8,9,13 10:3,11 10:12 12:6 13:1,3 13:4 |
| **bipa's** 7:9 |
| **bliley** 6:2 |
| **brief** 13:17 |
| **briefed** 13:16 |
| **briefing** 13:9 |

**briefs** 9:5
**bring** 13:11
**bruhn** 1:5 3:1
**businesses** 7:13

| c |
| --- |
| **c** 1:2 15:2 |
| **c.s.r.** 1:19 15:4,12 |
| **calling** 9:8 |
| **capable** 11:9 |
| **captured** 10:14 |
| **care** 10:14,15 |
| **carve** 7:15 |
| **carved** 6:19 |
| **case** 1:7 6:14 12:13 |
| **categories** 5:20 9:1,3 |
| **category** 6:19 7:8 7:18 |
| **cause** 1:18 15:6 |
| **center** 1:22 |
| **certain** 9:1,1 |
| **certainly** 3:14 13:11 14:12 |
| **certainty** 13:6 |
| **certified** 13:10 |
| **certify** 13:21,24 14:3 15:4 |
| **ch** 1:7 3:1 |
| **challenge** 9:17,19 9:24 10:1 |
| **chancery** 1:3 |
| **change** 3:15 |
| **chicago** 1:23 2:3,7 |
| **chosen** 5:4 8:23 |
| **circuit** 1:3 |
| **civil** 1:20 |
| **classification** 4:6 4:15,16,21 5:7 |
| **classifications** 4:2 8:10,24 9:2,9 |

clause 3:22 4:1
clerk 3:1
code 1:20
collected 6:11,18
 6:23 10:15 12:22
 12:24
come 14:1
commencing 1:23
common 10:3,20
 11:1 12:18
companies 1:8 2:9
comply 4:11 8:2
computer 10:9
conceivable 5:15
concluded 11:15
conclusion 11:6
conduct 10:5,22
 11:3 12:19 13:8
conducted 9:20
conferring 3:23
confidentiality
 6:11,17,22
conflict 6:1,4,21
 7:3,6 9:2
considered 9:16
constitutes 3:17
 4:4
constitution 3:19
 9:15
construction
 11:17 12:1
consumer 7:2,17
contains 10:10
 15:9
contends 3:16
 9:12
contractor 7:23
contractors 4:13
 5:22 7:19,20 8:2,4
 8:6 9:11

cook 1:3
coplan 2:6
counsel 13:17
county 1:2,3,3
 15:2
court 1:3,22 3:7
 3:12 4:15,18 5:10
 5:22 8:13 9:16,20
 10:1,19 11:15,24
 12:3,8 14:1,5,5,7
 14:10,13
court's 11:20,21
cover 7:10
creation 12:12
customers 6:18,24

d

daley 1:22
data 5:8 6:15
date 14:8
days 13:23 14:2
deadline 13:19
decision 8:15
 13:14
defendant 2:9 3:8
 4:9 5:19 6:3,5 8:8
 9:12 10:11 11:4
 12:13 13:9
defendant's 9:13
 9:18,23 10:1
 11:22
defendants 1:10
 6:7 12:15
deferential 5:13
definite 10:24
 12:17
demonstrated
 11:12
denied 13:18
department 1:3
depending 7:22

designed 6:10
desire 13:9
determine 4:4,16
 4:24 5:2,18 11:17
 12:1
determining 5:8
different 7:21
difficult 12:14
directly 7:16
disagrees 11:19
disclosure 4:11
 7:21
discriminate 4:3
 4:15 8:7
discriminates 4:7
dismiss 3:8 13:15
 13:18
dispositive 11:23
dispute 5:5 9:5,23
 10:7
division 1:3
drive 2:6
due 9:13,15

e

eisen 2:7 3:5,6
 13:20 14:4,6,9,14
eliminated 8:17
ellipses 12:23
empirical 5:8
employee 7:23
employee's 6:15
employees 5:21
 6:6,8,10,13,13 7:1
 7:4,9,20 8:3,6
 9:10 10:8
ended 14:16
ensure 6:17,22
entitled 1:17 15:6
establish 11:20
established 6:14

et 1:9
everybody's 3:11
evidence 5:8
evidentiary 9:19
exception 9:13
 10:2,12,13,18 12:6
exceptions 10:11
exclude 7:7,19
excluding 3:24
exclusion 3:20 7:4
 8:5,18 9:1,3
exclusions 8:10,12
 8:14,16 9:9
exclusive 3:20
exist 8:12
expect 13:20

f

face 12:10
fact 9:21 10:17
 11:19
facts 5:15
factual 9:23
fair 10:5,22 11:2
 12:5,19 13:2,5,8
favor 4:3,7
favorably 4:10
federal 6:1,21
finally 7:16
financial 4:12 5:20
 5:24 6:16,20,23
 7:4,7 9:9
finding 8:17
findings 9:21
 10:17
fingerprints 10:9
first 4:6,24 5:17
 9:18
focus 5:14
focusing 5:17
fold 4:23

| | | | |
|---|---|---|---|
| **forth** 7:9 9:7 13:16 | **honorable** 1:18 | **j** | **m** |
| **friedlander** 2:6 | **hypothesize** 5:10 | | |
| **fundamental** 4:17 | | **j** 1:22 | **m** 1:18 15:6 |

**forth** 7:9 9:7 13:16
**friedlander** 2:6
**fundamental** 4:17

**g**

**general** 3:23 6:12
8:9 11:17 12:2
**give** 11:1 12:18
**given** 10:5,21 12:5
13:8 15:10
**gives** 13:2
**glba** 6:2,4,5,16,21
7:1,2
**glba's** 6:22
**going** 3:11
**good** 3:3,5 14:9
**government** 4:12
4:13 5:21,21 7:8
7:16,19,20,20,23
7:24 8:5,23 9:10
9:11
**gramm** 6:2
**granting** 3:19
**gregg** 1:5
**group** 3:24 4:3,7,8
**groups** 4:9
**growing** 7:12

**h**

**halfway** 3:15
**health** 10:14,15
**heard** 3:9
**hearing** 9:20
14:16 15:5,10
**highly** 5:13
**hipaa** 9:12 10:2,11
10:12,16 12:5,23
13:1,3,4
**history** 7:10 8:9
12:8
**honor** 3:3,5 14:12

**honorable** 1:18
**hypothesize** 5:10

**i**

**i.e.** 4:10
**identified** 4:9 8:11
9:15,22
**identifies** 5:19
**identify** 8:14
**illinois** 1:1,20,21
1:23 2:3,7 3:18
9:14 15:1
**immunity** 7:14
**include** 6:12 8:15
**included** 8:10
**including** 8:24
**inclusion** 9:8
**information** 3:17
6:18,23 8:1 10:10
10:14,15 12:12,22
12:24 13:2,4
**informed** 11:10
**inquiry** 4:23 8:21
**inside** 13:24
**institutions** 4:12
5:20,24 6:16,20,23
7:5,7,10 9:10
**intelligence** 10:5
10:21 11:2 12:5
12:19 13:7
**intent** 7:9 11:17
12:2
**interest** 4:22 5:1,3
5:18 8:22
**interpretation**
11:22 12:1,8
**interpreted** 11:9
**involve** 6:15
**issue** 4:7 11:23
**issues** 7:14

**j**

**j** 1:22
**james** 2:3
**january** 1:24 15:7
**jim** 3:4
**judge** 11:19 14:15
15:6
**jzouras** 2:4

**k**

**k** 1:2 15:2
**know** 3:13 8:9
14:11
**knowledge** 13:5

**l**

**lack** 12:7
**language** 11:9
12:11,21
**law** 4:4 6:1,19,21
**leach** 6:2
**leave** 13:21
**legislation** 3:18,22
4:5 5:1,10,19
**legislative** 5:12
7:10 8:9 12:8
**legislature** 4:2 5:4
8:11,15,23
**legitimate** 4:22 5:1
5:18
**lengthy** 3:14
**license** 15:13
**limit** 6:13
**limited** 6:9
**little** 3:12,14
**llc** 1:8,9 2:6,9
**llp** 2:2
**loftus** 1:18 15:6
**look** 10:19
**looked** 11:16,24

**m**

**m** 1:18 15:6
**machine** 15:5,8
**making** 4:2 12:14
**manner** 11:11,13
**manno** 1:19 15:4
15:12
**mark** 2:7 3:6
**markers** 6:11
**mean** 7:6 13:5
**meaning** 11:8
**means** 5:4 8:22 9:2
13:7
**measured** 10:3,20
10:24 12:17
**meisen** 2:8
**members** 6:12
**mentioned** 10:19
13:9
**mind** 3:15
**morning** 3:3,5
**motion** 3:8,9 9:6
9:15 11:14 12:4
13:10,14,15,16,18
14:2
**motivate** 5:11
**move** 13:24
**moving** 7:8

**n**

**near** 5:6
**necessary** 10:17
**need** 5:7 7:17,21
8:11 13:15 14:7
**new** 3:1,8
**north** 2:2
**notes** 15:8
**notice** 3:11 12:24
**number** 5:2

**o**

**o** 1:2,2 15:2,2
**objective** 8:24
**okay** 14:1,10,13
**operations** 10:16
**ordinary** 10:4,21
  11:2 12:4,19 13:7
**original** 13:14
**overbroad** 8:19

**p**

**paragraph** 7:13
**parens** 6:21
**part** 4:5,14
**particular** 8:16
**parties** 5:5 9:4
  10:7 11:12 12:14
**patient** 10:10,14
**payment** 10:16
**perfectly** 8:18
**performed** 5:22
**period** 13:24
**person** 3:24 7:12
  10:4,21 11:1 12:4
  12:18,23 13:7
**personal** 6:11,17
  6:23
**persons** 11:10
**pharmacists** 10:8
  10:8
**pharmacy** 10:9
**place** 8:1
**plain** 11:9
**plaintiff** 1:6 2:5
  3:4 9:18,22
**plausible** 11:22
**portion** 10:13
**posed** 7:12
**potential** 7:14
**practice** 11:14
  12:4 13:14

**practices** 10:4,21
  11:1 12:18
**preemption** 6:4
**premature** 9:19
**premise** 6:8
**prescriptions**
  10:10
**present** 14:2
**prevent** 7:21
**prevents** 4:1
**previously** 3:9
**principles** 11:24
**prior** 10:1,17
  11:13 13:14
**privacy** 3:17 7:3
**private** 7:10
**privilege** 3:20,24
**problematic** 8:19
**procedure** 1:21
**procedures** 7:22
**proceedings** 1:17
  15:10
**process** 8:2 9:14
  9:15
**prohibited** 10:6,22
  11:3 12:20 13:8
**prohibitions** 10:24
  12:17
**prohibits** 3:19,22
**prong** 5:6,17 8:20
  9:5
**proposed** 11:22
**protect** 6:10 7:12
**protected** 13:3,4
**protection** 6:9
  7:17
**provides** 7:6
**provision** 11:4,12
  11:15,21 12:9,21
**provisions** 1:20

**public** 6:12
**purpose** 6:22 7:11
**pursuant** 1:20
**pursue** 5:4 8:23
**put** 8:1
**puts** 12:23

**q**

**question** 4:20 7:2
  10:2 12:10 13:10
  13:21

**r**

**rational** 4:18,22
  5:9,13,15,24 7:7
  7:15,19 8:7,12,13
  8:17,20 9:7
**rationally** 4:21
**ready** 3:10
**realize** 13:22
**reason** 8:16
**reasonable** 5:3
  8:21 12:23
**reasonably** 11:10
**reasoning** 5:11
**reasons** 5:10 8:14
**reference** 13:13
**regarding** 12:8
**regulate** 7:16
**reiterated** 7:11
**reiterates** 8:8
**related** 4:21
**relationship** 5:3
  8:22
**relevant** 10:23
  12:7,16
**report** 1:17
**reported** 15:5
**reporter** 3:12
**request** 13:20
**required** 9:24
  12:24

**requirements** 4:11
**requires** 6:16 7:24
**respect** 5:23 7:18
**respond** 14:11
**richard** 1:22
**right** 3:7,16
**rights** 4:18 9:14
**risks** 7:12
**riverside** 2:2
**room** 1:23
**rosenbach** 6:14
  7:11
**rule** 3:10
**rules** 1:21

**s**

**satisfies** 5:9
**second** 4:14 5:5
  7:8 8:20 9:5 11:8
**security** 6:17
**select** 4:3,7,9
**separate** 8:1 12:3
  14:7
**set** 5:15 7:9 9:7
  13:15,18 14:8
**setting** 10:14
**shorthand** 15:5,8
**show** 5:15
**shown** 6:14
**side** 8:3,3
**signature** 15:12
**similarly** 3:21 4:1
  4:8
**sit** 3:13
**situated** 3:21 4:1,8
**slower** 3:12
**solely** 6:8
**sounds** 14:9
**south** 2:6
**speaking** 3:12
**special** 3:18,19,22
  3:23 4:4

**specifically** 6:1,5
**specter** 6:3
**spindle** 14:8
**ss** 1:1 15:1
**stand** 3:14
**state** 1:1,19,21
  4:22 5:1,18 6:19
  15:1
**statute** 4:17 5:9,14
  5:16 7:9,17 9:3
  10:23 12:10,12,15
  12:16 13:6
**statutory** 4:6,21
  11:16 12:1,11
**stephan** 2:2
**stephanzouras.c...**
  2:4
**stop** 13:22
**stored** 10:15 12:22
**subject** 13:1,3,4
**sufficient** 8:6
**sufficiently** 10:24
  12:17
**suite** 2:2,6
**support** 11:5
**supported** 5:8
**suppose** 13:23
**supreme** 1:22
**sure** 6:20 13:13,20
  14:4

**t**

**taken** 1:18 15:5,9
**terms** 11:6
**test** 4:5,14,18,20
  5:9,13 8:7,13
**thank** 14:13,14,15
**thereof** 1:22
**think** 13:23
**third** 7:18
**thomas** 1:19 15:4
  15:12

**three** 5:20
**time** 13:11,12,24
  14:10
**tools** 11:16
**tort** 7:14
**transcript** 15:7
**transcription** 15:8
**treat** 8:5
**treated** 4:10
**treatment** 10:16
**true** 15:7
**two** 4:5,23 5:2
  11:24

**u**

**understand** 12:15
**understanding**
  10:4,20 11:1
  12:18
**understood** 11:10
  11:13
**upheld** 5:16
**use** 7:12 10:8
**uses** 4:18

**v**

**vague** 9:13 10:3,12
  10:18 11:5,6
  12:11
**vagueness** 11:20
  11:23
**versus** 3:1
**violates** 9:13
**violation** 3:18
**vs** 1:7

**w**

**wacker** 2:6
**want** 3:13 14:11
**warning** 10:5,22
  11:2 12:5,19 13:2
  13:5,8

**ways** 8:19
**wisdom** 5:14
**worker** 7:22
**working** 8:3
**writing** 14:11
**written** 8:18

**z**

**zouras** 2:2,3 3:3,4
  14:12,15

# EXHIBIT A-3

```
STATE OF ILLINOIS    )
                     )  SS:
COUNTY OF C O O K    )
```

        IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

           COUNTY DEPARTMENT - CHANCERY DIVISION

```
GREGG BRUHN, individually and    )
on behalf of all others          )
similarly situated,              )
                                 )
            Plaintiffs,          )
                                 )
       vs.                       )  No. 2018 CH 01737
                                 )
NEW ALBERTSON'S, INC.,           )
CERBERUS CAPITAL MANAGEMENT,     )
L.P., AB ACQUISITIONS, LLC,      )
ALBERTSONS COMPANIES, LLC,       )
and AMERICAN DRUG STORES,        )
LLC,                             )
                                 )
            Defendants.          )
```

            TRANSCRIPT OF PROCEEDINGS at the motion

in the above-entitled cause before THE HONORABLE

ANNA M. LOFTUS, Judge of said Court, in Room 2410

of the Richard J. Daley Center, Chicago, Illinois,

on Tuesday, July 2, 2019, at the hour of 10:30 a.m.

                    REPORTED BY:
            ANDREW R. PITTS, CSR, RPR
             LICENSE NO.:  084-4575

```
 1   APPEARANCES:

 2             STEPHAN ZOURAS, LLP, by
             MR. JAMES B. ZOURAS
 3             MR. ANDREW C. FIZCKO
             205 North Michigan Avenue
 4             Suite 2560
             Chicago, Illinois  60601
 5             312.233.1550
             jzouras@stephanzouras.com
 6             afizcko@@stephanzouras.com

 7                  Appeared on behalf of the
                  Plaintiffs;
 8

 9             BENESCH, FRIEDLANDER,
             COPLAN & ARONOFF LLP, by
10             MR. MARK S. EISEN
             333 West Wacker Drive
11             Suite 1900
             Chicago, Illinois  60606
12             312.212.4949
             meisen@beneschlaw.com
13
                  Appeared on behalf of the
14                Defendants.

15

16

17

18

19

20

21

22

23

24
```

```
 1                    (WHEREUPON, the following

 2                    proceedings were had in open

 3                    court.)

 4         THE CLERK:  10:30 status hearing.  18 CH 1737,

 5    Bruhn v. Albertson's, Inc.

 6         THE COURT:  Good morning -- afternoon -- yes,

 7    we are still on morning.

 8         MR. ZOURAS:  Good morning, your Honor.  Jim

 9    Zouras for the Plaintiff.

10         MR. FICZKO:  Good morning, your Honor.  Andy

11    Fizcko on behalf of Plaintiff.

12         THE COURT:  Okay.

13         MR. EISEN:  Mark Eisen on behalf of Defendants.

14         THE COURT:  All right.  This is Defendants'

15    2-619.1 combined motion to dismiss.  If you would

16    like to begin.

17         MR. EISEN:  Thank you, your Honor.  As I think

18    the Court indicated in the last hearing we had, this

19    is simply a matter of statutory interpretation, and

20    that is whether the BIPA's exemption for information

21    collected from the patient or information collected,

22    used, and stored for health care treatment, payment,

23    and operations means what it says, and that is that

24    the statute creates two exceptions:  One for patient
```

1    information and the second for information captured

2    collected, used, for treatment, payment, and

3    operations.

4           This is a very straightforward question,

5    and this question can be addressed on the basis of

6    the complaint alone.  Plaintiff admits that he used

7    the biometric authentication to access the pharmacy

8    computer system.  That is the only thing Plaintiff

9    used the biometric identification to do.

10          And it is undisputed that a pharmacy like

11   Jewel-Osco is a covered entity under HIPAA, that

12   patient data is protected health information under

13   HIPAA and that, as Plaintiff admits in their

14   opposition brief, biometric authentication is a

15   means of complying with the HIPAA's requirement for

16   a technical safeguard to access pharmacy --

17       THE COURT:  So HIPAA doesn't protect the

18   pharmacist's biometric information.

19       MR. EISEN:  I'm sorry.

20       THE COURT:  HIPAA doesn't protect the biometric

21   information of the pharmacist.

22       MR. EISEN:  HIPAA speaks to --

23       THE COURT:  It just addresses the patient

24   records that are within that system.

1     MR. EISEN:  Correct.  And I think that in a

2  very pertinent way, it does also speak to the

3  records of an employee like a pharmacist or a

4  doctor.

5     THE COURT:  How so?

6     MR. EISEN:  HIPAA speaks to protecting patient

7  information.

8     THE COURT:  Patient.

9     MR. EISEN:  Right.  Right, but I think the key

10  focus is also on what HIPAA is intended to do is to

11  protect.  And in order to protect, HIPAA requires

12  technical safeguards to access protected health

13  information.

14     THE COURT:  But are there provisions within

15  HIPAA that state a provider's, in this case a

16  pharmacist's, biometric information that is used in

17  the fashion of securing the protected HIPAA

18  information is also safeguarded under HIPAA?

19     MR. EISEN:  HIPAA itself does not speak to that

20  in those words, but BIPA doesn't require it.

21     THE COURT:  I am not saying that it did.

22     MR. EISEN:  Sure.

23     THE COURT:  I am just making that point.  Okay.

24     MR. EISEN:  Right.  And I appreciate that point

1   because I think it is important to recognize that

2   what BIPA speaks to in this context is information

3   collected, used, and stored for health care

4   treatment, payment, and operations, and it is,

5   I think, inconceivable to think that patient

6   biometric information could ever been collected,

7   used, or stored, for example, for payment.

8        THE COURT:  I'm sorry?

9        MR. EISEN:  So the statute exempts information

10  collected, used, and stored for health care

11  treatment, payment, or operations under HIPAA, and

12  I think it is difficult to envision a scenario in

13  which a patient's biometric information would be

14  collected for payment.  And the most common

15  reading --

16       THE COURT:  It might be used or stored for

17  payment because there might be a -- what is the

18  code, the CPT code or the code that they have to use

19  for payment?  They have to confirm that a scan was

20  done, for instance.

21       MR. EISEN:  That may be, but I think the

22  definitions that HIPAA uses for payment, treatment,

23  and operations are all focused on the covered

24  entity.  These aren't patient-focused definitions,

1    those definitions which we recited in our reply.

2         THE COURT:  Well, it's the health care

3    treatment of the patient, the payment for the health

4    care treatment that the patient obtained, and then

5    operations of the health care facility is what I got

6    from your brief.

7         MR. EISEN:  Right.  And those definitions --

8    I think, treatment is the provision, coordination,

9    or management of health care and related services by

10   a health care provider.  That is a

11   covered-entity-focused definition.  Health care

12   operations, as the Department of Health and Human

13   Services effectively says, is activities necessary

14   to supported the core functions of the covered

15   entity of treatment and payment.

16              And these are definitions that are

17   focused on what the covered entity needs to do.  And

18   since at least 2003, HIPAA has specifically required

19   a technical safeguard in order to access patient

20   information, protected patient information.  And

21   one --

22        THE COURT:  So are you saying that if the

23   pharmacy in this case chose biometric information,

24   then that information somehow brings everything

1    under HIPAA but not BIPA?

2         MR. EISEN:  I'm sorry.  I am missing that.

3         THE COURT:  So you said that HIPAA requires

4    technical safeguards.

5         MR. EISEN:  Correct.

6         THE COURT:  Okay.  And one of those, the

7    options, is biometric information.

8         MR. EISEN:  Correct.

9         THE COURT:  So how is that relevant to this

10   argument?

11        MR. EISEN:  The BIPA-exempt biometric

12   information collected, used, and stored for

13   treatment, payment, or operations under HIPAA, this

14   is biometric information collected, used, or stored

15   for both treatment and in order to access the

16   pharmacy database to prescribe medication, to access

17   the pharmacy database to effectuate payment.  To

18   allow for health care operations, the fundamental

19   goal of HIPAA to protect that health care

20   information, that is the only purpose this

21   authentication safeguard has been enacted.

22              I think it is beyond question that HIPAA

23   would require, does require, a technical safeguard

24   on the pharmacy database, and that is undisputed.

1    The only real dispute Plaintiff's counsel seems to

2    have is the methods chosen.

3         THE COURT:  So I see you are saying that

4    because it requires a technical safeguard, one of

5    which is biometric identifiers, that that means that

6    Section 14-4/10, the second phrase in the first

7    sentence applies to that.

8         MR. EISEN:  Correct.  Correct.  And that --

9         THE COURT:  And that is based on just the fact

10   that there is a provision in HIPAA that says you

11   need to have a technical safeguard, and then this

12   sentence, you are arguing, applies because they

13   collect, use, and store the biometric information of

14   the pharmacist?

15        MR. EISEN:  Correct.  This section -- and

16   I think read in conjunction also with the statute of

17   exemptions, which is at Section 25 of the statute,

18   that says nothing in this statute should be read to

19   conflict with HIPAA.  And, again, the fundamental

20   purpose of HIPAA is to protect patient information,

21   and the means used to secure that patient

22   information falls well within the structures of

23   HIPAA.

24        THE COURT:  Patient information, yes, but we

1   are still talking about a pharmacist's fingerprint,

2   which is not part of the patient record.  It is not

3   the patient information that is obtained on the

4   computer system.  You are lumping them all in as

5   one, I see, and I see your argument as to how they

6   do that.  And I think counsel is going to state the

7   opposite, obviously.

8        MR. EISEN:  Right.

9        THE COURT:  How does the Plaintiff's positions

10  conflict with HIPAA?

11       MR. EISEN:  Well, at first, to answer the

12  Plaintiff's --

13       THE COURT:  If you are arguing it does.

14       MR. EISEN:  Right.  Well, Plaintiff's, I think,

15  first argument conflicts with the plain language of

16  the statute itself, which exempts patient

17  information or information collected, used, and

18  stored for health care treatment, payment, or

19  operation.

20       THE COURT:  So it is your position that

21  Section 10 is ambiguous?

22       MR. EISEN:  It is not ambiguous.  Our position

23  is that it is not ambiguous.  It protects patient

24  information, one, or, two, information collected

1   used, and stored for treatment, payment, or

2   operations.

3           The first speaks only to patient

4   information, and if the second were also to be

5   limited solely to patient information and the second

6   aspect of that sentence would be superfluous.

7       THE COURT:  Well, now, you recently said that

8   patient information isn't necessarily needed for

9   payment or operations or something to that effect.

10  So wouldn't that go against your argument then, that

11  that second piece -- I think you previously said, if

12  I'm not mistaken, that the second portion of this

13  sentence, information collected, used, or stored for

14  health care treatment, payment, or operations did

15  not have much to do with patient information, and

16  that is why it is reasonable to have two different

17  exclusions in that one sentence.

18      MR. EISEN:  Correct.

19      THE COURT:  Correct?  Okay.

20      MR. EISEN:  Because if, as Plaintiff's counsel

21  suggests, that second clause should also only

22  pertain to patient information, well, that's already

23  covered by the first clause.  There would be no need

24  for the second clause if it was only to apply to

1  patient information.

2          And I think a clear example for why this

3  language must be read to include the health care

4  provider in this context, the pharmacist as well, is

5  as Plaintiff suggested in their opposition, 'Well,

6  this language is really only intended for,' let's

7  say, 'an optometrist needing to do a retinal scan.

8  Well, the patient shouldn't be able to sue the

9  optomotrist.'

10          But it would be, I think, anomalous to

11  say that while the patient can't sue the

12  optometrist, the optometrist which then goes and

13  stores the scan on a computer can sue the computer

14  provider because it didn't obtain biometric

15  authorization, BIPA consent, to access the data.

16      THE COURT:  From the patient?

17      MR. EISEN:  From the physician.

18      THE COURT:  For his fingerprint, for instance?

19      MR. EISEN:  Right.  Right.  And HIPAA requires

20  a technical safeguard to access patient information.

21  And to say that the patient can't sue over the scan,

22  but then the physician can then sue --

23      THE COURT:  For the separately -- I think we

24  have already established that HIPAA doesn't protect

Page 13

1    his biometric information specifically.

2         MR. EISEN:  Right, but it --

3         THE COURT:  So that is where BIPA comes in and

4    would say, 'Hey, we are going to also provide some

5    protection for this.  He needs to be told' -- a

6    physician or an optometrist needs to be told that

7    his fingerprint is being used and all of these other

8    things.

9         MR. EISEN:  The way the exception is phrased is

10   to avoid the BIPA imposing extra requirements or

11   running head on to HIPAA.  And so the two statutes

12   need to be read, I think, in unison, that while

13   HIPAA does speak to patient information, the key

14   aspect of HIPAA is in protecting the patient

15   information.

16            So whatever is done, the Department of

17   Health and Human Services has a long record of using

18   biometric authentication.  That is information

19   collected, used, or stored to comply with HIPAA.

20            And the focal point, I think, the

21   take-away from HIPAA is in protection.  And in order

22   to effectuate that purpose, a pharmacy needs to be

23   able to implement a biometric authentication if it

24   so chooses.  And there are, I think, various other

Page 14

1    types of authentication which have historically

2    proven not to work as well, and we have had data

3    breaches and the like, but the --

4         THE COURT:  So if a pharmacy chose a different

5    security method that didn't involve biometric

6    information, it could still comply with HIPAA, but

7    BIPA doesn't come into play?

8         MR. EISEN:  Correct.  The language of the

9    security rule does not require a biometric

10   authentication, but, as Plaintiff's counsel,

11   I think, accepted in their opposition brief, it is

12   an acceptable means to comply with HIPAA.

13             And what the BIPA, by this exception

14   exemption and by the exemption located in Section 25

15   about not being read to conflict with HIPAA, well,

16   I think the two statutes need to be read together

17   such that if a health care provider, whether it be a

18   pharmacy, a hospital, doctor, if they choose, this

19   is how we are going to comply with HIPAA, and this

20   is a requirement.  We have to implement a technical

21   safeguard.  We cannot be punished for the safeguard

22   we implemented, nor should we look to -- it would

23   be --

24        THE COURT:  How are they punished for the

Page 15

1  safeguard that they choose in that scenario?

2      MR. EISEN:  This statute or any other state

3  statute would require extra measures on top of what

4  the pharmacy has chosen to implement or on top of

5  what the hospital has chosen to implement as their

6  best means of complying with HIPAA and protecting

7  that patient information, that I think tend to be --

8  you could certainly envision a scenario where if a

9  pharmacist were to opt out and say, 'I don't want to

10 do that; I want to use some other perhaps less safe

11 mechanism to comply,' this is something that puts

12 patient information at risk.

13         And if a pharmacist or a hospital or a

14 physician's group determines this is the best way to

15 protect patient information, that is all that the

16 statute requires.

17     THE COURT:  Which statute?

18     MR. EISEN:  BIPA.  BIPA simply says if you

19 collect, use, or store information to comply with

20 HIPAA, that is the end of the inquiry.  And I think

21 that -- I understand Plaintiffs or Plaintiff wants

22 to bring into play various elements of HIPAA that

23 are patient-information-focused.  It can't be

24 ignored that HIPAA fundamentally is a statute for

1   protecting information.

2        THE COURT:  So, again, HIPAA doesn't protect

3   the biometric information of the pharmacist putting

4   his fingerprint down to open the computer system.

5   So what you are arguing is that BIPA takes a whole

6   swath of people, anybody who is subject to HIPAA,

7   doctors, physicians, assistants, nurses, CNA's,

8   social workers who work with patients, anyone who is

9   accessing a hospital system, for instance, with a

10  fingerprint, they are out of luck.  They have no

11  protection for their biometric information.  They

12  don't need to be told where it is being stored.

13  They don't need to be told the retention policy.

14  All medical providers and ancillary medical people

15  who are subject to HIPAA are just exempt from BIPA?

16       MR. EISEN:  I don't think that it --

17       THE COURT:  Those who use biometric measures

18  identifiers, I should say.

19       MR. EISEN:  The limited subset -- and I think

20  it is a -- this is not a wide, wholesale exemption

21  of the health care industry; this is in a limited

22  context of using a biometric authentication to

23  access patient information.  That is exempted under

24  the statute because it is, I think, under the plain

1   language of the statute information that is

2   collected, used, or stored for treatment, payment,

3   or operations.

4            And then fundamentally, the use of a

5   biometric authentication governing access to the

6   health care database or to the pharmacy database in

7   order to prescribe medication to have access to

8   millions of patient records, that --

9       THE COURT:  What is the purpose of this

10  exemption?

11      MR. EISEN:  The purpose of this exemption is to

12  avoid any potential conflict, as I think is later

13  detailed in the section, to avoid any potential

14  conflict with HIPAA.  And going back to what I

15  mentioned earlier, HIPAA does require a technical

16  safeguard.  And in this instance --

17      THE COURT:  It -- go on.

18      MR. EISEN:  Because in this instance, the BIPA

19  is saying if HIPAA speaks to a requirement for a

20  health care provider, we are just not going to touch

21  it, because the language of the exemption itself --

22      THE COURT:  What is the purpose of the statute?

23  You have explained that, but what was the underlying

24  concern that was raised such that the legislature

1   decided this was an important exemption?

2      MR. EISEN:  Unfortunately, there isn't a lot of

3   legislative history to go along with this.  What we

4   have is the analogous statute in Washington state

5   which also includes similar language, avoiding any

6   potential conflict with HIPAA.  And we have here,

7   I think, in two different locations a clear

8   indication from the legislature that if HIPAA

9   requires something, we aren't going to touch it, we

10  aren't going to -- I mean not just required, but if

11  HIPAA speaks to this issue, this statute doesn't.

12     THE COURT:  Well, you are saying to avoid

13  conflict.  What is the potential -- if we didn't

14  have this exemption, what would be the conflict with

15  HIPAA?

16     MR. EISEN:  Well, and I should say that the

17  language in the exemption itself doesn't speak to

18  conflict.  That shows up later on in section 25

19  speaking to avoiding conflict with HIPAA.  But --

20     THE COURT:  And how does this prevent a

21  conflict with HIPAA?

22     MR. EISEN:  This, I think, speaks more

23  appropriately to if HIPAA speaks to a given issue,

24  this statute does not.

1      THE COURT:  And you are saying HIPAA speaks to

2  this issue because it says biometric identifiers are

3  an appropriate way to safeguard your HIPAA

4  information.

5      MR. EISEN:  Correct.

6      THE COURT:  But it doesn't explicitly say that

7  those biometric identifiers obtained by caregivers

8  to access patient information are exempt; it says

9  this second half of that sentence, which you believe

10  means that, right?

11      MR. EISEN:  Correct.  The second half of this

12  sentence, yeah, I think it is important to look at

13  how the sentence is drafted as a whole.  The first

14  part applies to patient information.  If the second

15  half only governed the patient information, then it

16  wouldn't have any function.  It would be rendered

17  totally moot.  The statute would simply just say

18  patient information, full stop, but it doesn't.

19          So the second half must mean something.

20  The second half must mean that if information is

21  collected to comply with HIPAA, that is covered by

22  this exemption as well, because it doesn't say

23  'Patient information or patient information

24  collected, used, or stored'; it says, "Patient

1  information or information collected, used, or

2  stored."

3           And I don't think there is any dispute

4  that the Plaintiffs's information was collected,

5  used, or stored for treatment, payment, and

6  operations under HIPAA.

7           The definitions of payment, treatment,

8  and operations, which are provided under the statute

9  itself, are very broad definitions and intentionally

10  so.  There is no way to read the definitions of

11  treatment, payment, and operations under HIPAA

12  without including exactly what is occurring here,

13  and that is the use of an authentication mechanism

14  to comply with a security rule.

15           Conversely, if this were not proper, then

16  there would be a very wide swath of people -- you'd

17  look at providers and say, 'Well, their information

18  is covered, but the patient's, the patient's

19  information isn't covered,' which seems anomalous.

20  It is as if the BIPA is going to say 'Patient

21  information or information collected, used, or

22  stored' that it must mean more than just patient

23  information.

24     THE COURT:  Anything further before I turn it

Page 21

1    over?  We will come back to you for a reply as well,

2    but go ahead if you have more.

3        MR. EISEN:  And I just also wanted to add --

4    and while this is certainly ancillary -- as it

5    relates to the claim of negligence, if the BIPA

6    claim fails as a matter of law, the negligence claim

7    must as well because the only duty in the negligence

8    claim is predicated on the statutory duty.  And if

9    that duty doesn't exist, then there would be no duty

10   here.

11           Likewise, there is no contention of

12   actual damages that the Illinois Supreme Court has

13   spoken to this clearly that potential future harm or

14   potential emotional harm are not present actual

15   damages.  Those may be measures once actual damages

16   have been established, but they are not in and of

17   themselves actual damages.

18           And last, the additional entities named

19   in addition to Jewel-Osco, there are certainly no

20   allegations concerning them in any way, shape, or

21   form.

22       THE COURT:  Okay.  Counsel?

23       MR. ZOURAS:  Thank you, your Honor.  If we

24   start with BIPA, the statute requires the

1    institution of easy-to-follow, straightforward

2    safeguards to protect biometric data, and the

3    default rule is that all Illinois citizens are

4    entitled to that protection.

5              Now, the statute includes some narrow

6    exemptions, which, of course, the Defendant always

7    carries the burden to plead and prove.  A couple of

8    those exemptions are all-encompassing.  So, for

9    example, there is a financial institution exemption,

10   and that is an easy one.  There there are others

11   like the one at issue here which are conflict

12   exemptions, the purpose of which, of course, is to

13   avoid a conflict with other statutes, in this case

14   HIPAA.

15             There is no conflict between BIPA and

16   HIPAA here.  The drafters of HIPAA wanted to ensure

17   that there was no conflict with the patient

18   protections already provided under that very strict

19   statute which has very serious protections and

20   imposes very serious penalties for their violation.

21   So HIPAA --

22        THE COURT:  So I am sorry to interrupt.

23        MR. ZOURAS:  Sure.

24        THE COURT:  But the purpose of HIPAA is to

1  protect patient information.  Now, it involves

2  requirements on behalf of covered entities to do

3  that, but the ultimate purpose of HIPAA is to

4  protect.

5     MR. ZOURAS:  Exactly, your Honor, which would

6  include, in fairness, biometric information of

7  patients, so patient biometric information which is

8  already very strictly protected under HIPAA.  There

9  are criminal penalties for the violation of HIPAA,

10  as your Honor well knows.

11        So the point here is to avoid a conflict,

12  and there is no conflict, because what the drafters

13  did is they specifically excluded from the

14  definition of biometric identifiers the information

15  protected under, "under," HIPAA, and that would

16  include things like information captured from a

17  patient or information for health care treatment,

18  payment, or operations, again, under HIPAA.  And the

19  statute goes on to specify some specific examples,

20  like diagnostic tests for example.

21        So there is no question -- we have

22  already established this -- the medical provider

23  biometric data is not protected under HIPAA.  There

24  are no such protections.  So the Defense is left

1  with trying to say that, 'Well, even though that may

2  be the case, it doesn't matter,' because BIPA,

3  apparently the exemption, for whatever reason -- and

4  we have yet to identify it -- has some

5  all-encompassing exemption for, I guess, just about

6  anybody in the health care field that touches

7  patient data, works with medical records, and so

8  forth.

9           We keep saying, "Well, what would be the

10  underlying purpose of this or policy, the

11  explanation, the legislative intent?"  And we have

12  nothing but silence.

13          The Defendants are hung up on this "or"

14  word in the middle of the exemption.  They say it

15  has to be disjunctive and it has to refer to two

16  different concepts, and if we don't read that way,

17  we have all these redundancies.  What I would say,

18  Judge, is that in this exemption, there are

19  redundancies, there is repetition, and there is

20  overlap.

21          For example, they list specific

22  diagnostic tests, as of all of which is information

23  captured from a patient in the first part of this.

24  So it isn't some big crisis that there may be a

1  number of redundancies, repetition.  They wanted it

2  to be clear.

3          In many ways, it emphasizes our point

4  that we are talking about patient data, which is the

5  common theme.  There are even internal redundancies.

6  For example, they refer to a Roentgen process.

7      THE COURT:  Do you mind spelling that for the

8  court reporter.

9      MR. ZOURAS:  I can, yes, if I'm going to have

10  to.  R-O-E-N-T-G-E-N, and I think it is pronounced

11  "Roentgen."  You know, that is another word for

12  x-ray.  There is already the word x-ray in there,

13  and they say it twice.

14          So what we have here is a situation where

15  we have a very clear exemption which is driven

16  towards patient information, and we know that

17  because if they wanted to exclude something else for

18  whatever reason, provider information, mental health

19  professional information, whatever it was, that it

20  would have been very simple to specifically say

21  that.  The legislature doesn't draft things of that

22  nature.  They could have said, as with a financial

23  institution, that this is an all-encompassing

24  exemption for all, anyone who is employed or has

1    information taken by a covered entity.

2              And they wouldn't have placed it in the

3    middle of a lengthy exemption (indicating), which is

4    driven also entirely for patient data, and then

5    finally we have some rational legislative purpose

6    for it, which we have yet to hear.

7              The reality is that, you know, to the

8    extent we have an "or" in there, the word "or,"

9    which Defendants are hung up on, you know, it is in

10   the conjunctive.  We know that because in its

11   context, in the context in which it appears -- and,

12   of course, context is driven by purpose -- this is

13   driven towards patient information.

14             There is no conflict.  It is very easy to

15   comply.  You can have, by the way, providers, as

16   they did here, use biometric information.  BIPA does

17   not say don't use it.  It doesn't say don't use it

18   in the health care field.  All it says is that if

19   you are going to use it, you just have to follow

20   some very simple and straightforward guidelines, and

21   that is it.  That is not a conflict.

22             And I think Defendants concede, as they

23   have to, that it is not like there is a HIPAA

24   mandate.  There is not some specific requirement

1    that you use biometrics.  It is one of many

2    technical safeguard options, but it isn't --

3         THE COURT:  And BIPA doesn't say if you use

4    biometric safeguards to maintain the confidentiality

5    of the records, then that biometric identifier is

6    subject to HIPAA?

7         MR. ZOURAS:  It does not say that.  So this

8    isn't about, you know, punishing anyone; this is

9    about the statute says what it says.  All entities

10   that collect or maintain this data have to comply

11   unless there is some applicable exception,

12   exemption, whatever it might be.  And that just

13   doesn't exist here.

14              With respect to the two remaining

15   arguments, we have adequately pled the negligence

16   Count because it is based on the BIPA Count.

17        THE COURT:  So what are the damages alleged?

18        MR. ZOURAS:  Well, the damages are statutory,

19   your Honor, and based on the Illinois Supreme

20   Court's opinion in the Rosenbach case decided,

21   I believe, in January, there does not have to be a

22   showing of actual damages.

23        THE COURT:  But this is not a claim under BIPA;

24   this is a negligence action.

1      MR. ZOURAS:  With respect to the negligence

2  Count, Judge, I suppose that is correct.

3      THE COURT:  "These violations have raised" --

4  this is Paragraph 98 -- "a material risk that

5  Plaintiff in the putative class's biometric data

6  will be unlawfully accessed by third parties?"

7      MR. ZOURAS:  Yes.

8      THE COURT:  So that seems to be a potential

9  injury but not a realized injury at this point.

10      MR. ZOURAS:  Admittedly, Judge, I think that's

11  right.  I do think we have some authority that an

12  increased risk of future harm, including things like

13  emotional harm, are recognizable, that is the Dillon

14  case, and I cannot tell the Court at all that

15  Rosenbach supports that.  It just didn't touch upon

16  the issue.

17      THE COURT:  And I think counsel will probably

18  mention this, but Williams v Manchester, I think, is

19  the case --

20      MR. EISEN:  Right.

21      THE COURT:  -- that he mentioned from the

22  Supreme Court says, well, you can plead that future

23  risk of harm as well, but you have to have an

24  initial injury, because this is not like a physician

1    left an instrument in a patient and they don't want

2    to remove it because it will cause more harm, and so

3    they just risk the fact that it might migrate later

4    and so there is an injury, and then that may cause

5    harm later.

6            Here, the injury is itself the failure to

7    disclose, and the harm that may be use caused later

8    is the potential disclosure, I guess.  But I don't

9    see how you can base a negligence claim on the fact

10   that they didn't comply with a statute.  Is there

11   any support for that?

12      MR. ZOURAS:  I don't, and with respect to the

13   named Plaintiff, I cannot say that he has anything

14   other than statutory damages, you know.  I suppose,

15   you know --

16      THE COURT:  So it would be just a, I don't

17   know, double recovery or it is in the alternative to

18   BIPA, but it is reliant on BIPA?

19      MR. ZOURAS:  I think that's right, your Honor.

20      THE COURT:  All right.

21      MR. ZOURAS:  And, you know, with respect to the

22   claim that we named wrong entities because not all

23   of them are strictly Plaintiff's employer is not an

24   employer-driven statute.  It is not that employers

Page 30

1    have to comply; it is any entity which collects or

2    maintains biometric data.  The allegations of the

3    complaint at this point on our motion to dismiss

4    have to be accepted as true.

5         THE COURT:  But you haven't alleged what these

6    other entities' roles were in the complaints.  So

7    I think that is counsel's contention.  And certainly

8    if they were -- if, for instance, AB Acquisitions,

9    LLC was the entity that was collecting the biometric

10   data and retaining it, well, that would be a little

11   closer, but at this point, I don't think there is

12   any allegations, at least that I was able to find,

13   that specifically identified their role in the

14   collection retention of biometric data.  Is that

15   correct?

16        MR. ZOURAS:  That may be correct, your Honor,

17   at this point.

18        THE COURT:  Okay.  Anything further you want to

19   add?

20        MR. ZOURAS:  We would ask that the motion be

21   denied, your Honor.  Thank you.

22        THE COURT:  All right.  Counsel?

23        MR. EISEN:  Thank you, your Honor.  I think to

24   the primary point, which is looking at the terms of

1    the exemption itself, to assume that the Illinois

2    legislature intended to be redundant and worse than

3    redundant, to use superfluous language, would run

4    afoul of the Illinois Supreme Court's rules

5    regarding statutory interpretation.  To assume that

6    the phrase "information collected, used, stored for

7    health care treatment, payment, or operations under

8    HIPAA" literally has no meaning separate and apart

9    from the phrase that precedes it, it would be an

10   improper read of this statute and clearly not how it

11   is drafted.

12            I don't think it can be faulted that

13   there isn't legislative history necessarily to

14   support it, because there really isn't much

15   legislative history, period, as it relates to this

16   statute.

17   THE COURT:  Well, you could see this as

18   information captured from a patient in a health care

19   setting such as blood, for instance, and then

20   information collected, used, or stored for health

21   care treatment and payment, so you would have

22   information such as the report -- well, it guess the

23   report wouldn't be biometric information, but you

24   could see where the information related to the

1   payment for the services would be separate and apart

2   from the actual test.  So would that be a basis to

3   conclude that it is not repetitive, it is not

4   duplicative?

5       MR. EISEN:  I don't know how that would be

6   separate and apart from information collected from a

7   patient in a health care setting in the outset.

8       THE COURT:  Well, you get information collected

9   from them, so it may be their fingerprint, maybe

10  their -- well, let's say that just to have an

11  example.  And then you collect other information for

12  payment.  What biometric identifier would you

13  collect for payment?

14      MR. EISEN:  I -- and that is sort of, I think,

15  our --

16      THE COURT:  Doesn't this seem ambiguous to you?

17      MR. EISEN:  It doesn't insofar as the

18  definitions of -- the legislature used terms that

19  have very specific meaning under the context of

20  HIPAA.  They use treatment, payment, and operations.

21  Health care --

22      THE COURT:  But they haven't qualified

23  information, which I think is where we are at a

24  sticking point here.

1    MR. EISEN:  Right, because I think information,

2  as is required under HIPAA, or I guess as it is

3  envisioned under HIPAA, information collected, used,

4  and stored for treatment, payment, or operations

5  is -- it could include both patient information, it

6  could include provider information as well, because

7  that information is instrumental particularly to

8  treatment and operations.  If -- I mean, it --

9    THE COURT:  And that second portion of the

10  sentence, it could be read as any information as

11  collected pursuant to HIPAA, right?  And then you

12  are saying that because HIPAA allows you to use

13  biometrics, the biometric information of the

14  pharmacist is collected pursuant to HIPAA.

15    MR. EISEN:  Correct.

16    THE COURT:  So I don't see that last

17  connection.  I mean, it is collected because it is

18  one of the options HIPAA gave them, but HIPAA didn't

19  require that it knew that and doesn't separately

20  mention or discuss the protection of the

21  pharmacist's fingerprint, for instance.

22    MR. EISEN:  So what HIPAA does speak to are the

23  duties and the operations of the covered entities.

24    THE COURT:  To protect patient information.

1      MR. EISEN:  Correct, to protect it.

2      THE COURT:  Not to protect caregivers'

3  information.

4      MR. EISEN:  But I might add if the covered

5  entity does not adequately protect it, if, for

6  example, the fingerprint mechanism, the biometric

7  authentication mechanism was implemented improperly

8  or didn't work, HIPAA would punish that covered

9  entity for improperly protecting the patient

10 information.

11         So while, yes, it may not speak exactly

12 to information collected from a treating physician,

13 and in our opinion it would be, I think, odd to read

14 the statute such that if a -- you know, you can

15 envision an emergency room physician accessing the

16 computer to pull up a client file, and if that

17 physician or if that doctor hasn't signed the

18 word-for-word BIPA consent authorization document,

19 so there isn't a publicly available retention

20 policy, that physician can then turn around and sue

21 even though in the emergency situation, it would be

22 a little bit odd to force that physician to sign off

23 before using the database or to punish the entity

24 for not having a publicly available retention

1    schedule before using the database.

2             This system protects millions of patient

3    records throughout the country.  And to put

4    Albertson's in a position where they are facing a

5    minimum of $1,000 per pharmacist, and Plaintiff

6    hasn't yet articulated what they believe a measure

7    of damages would be, but $1,000 per pharmacist

8    simply because they were trying to implement a

9    technical safeguard that HIPAA requires them to

10   implement, it doesn't necessarily speak to it must

11   be biometric; it leaves up to the health care

12   provider, pick the best one that works in your

13   scenario.

14            It doesn't say biometric versus password,

15   and it is in light of recent data breaches,

16   passwords simply aren't the best means to protect.

17   So a biometric authentication was implemented.  To

18   put Albertson's in a position where there are

19   looking at $1,000 minimum per pharmacist, because

20   Plaintiff's counsel is saying there wasn't a

21   publicly available retention schedule, even though

22   this particular pharmacist claims he participated in

23   implementing this very system, seems bizarre.

24            And I don't think it fair to Albertson's

1    to read this language which clearly relates to

2    information collected, used, or stored for

3    treatment, payment, or operations.  This information

4    was collected, used, and stored for treatment,

5    payment, and operations.  I don't think there is any

6    way to read HIPAA and the definitions of treatment,

7    payment, or operations, without encompassing what

8    the covered entity is doing.

9             The term particularly health care

10   operations is a very broad term speaking to what the

11   covered entity must do to facilitate treatment and

12   payment.  This was accessed in order to prescribe

13   medication.  This is not, I think, what the

14   legislature had in mind with people losing control

15   of their biometric information or a company going

16   bankrupt and their records are everywhere now.

17        THE COURT:  Well, and to your point, HIPAA's

18   definition of health care operations includes

19   business management and general administrative

20   activities of the entity.

21        MR. EISEN:  Correct.

22        THE COURT:  So it wouldn't just include

23   accessing a medical record.

24        MR. EISEN:  Correct, but it would include

1    accessing it.  And --

2          THE COURT:  Correct.

3          MR. EISEN:  And by that point, yes, the

4    computer, the health care -- the pharmacy computer

5    can be used to do other things once an authorized

6    person has accessed that computer.

7               And the health care field is heavily

8    regulated.  HIPAA requires technical safeguards that

9    Albertson's chose to implement a biometric

10   authorization mechanism.  It clearly falls within

11   the guidance of this language, and to read that

12   latter phrase is doing no more than modifying the

13   former phrase, it will result in extraordinary

14   liability across the health care sector under this

15   statute, because it is very common, I would say more

16   common than not, for it to use biometric

17   authentication measures in hospitals, in doctors'

18   offices, and in pharmacies.

19         THE COURT:  And you are meaning all of these

20   health care providers without any protection of

21   their privacy because they are not protected under

22   HIPAA and they are not protected under BIPA?

23         MR. EISEN:  They are protected insofar as these

24   mechanisms must be implemented and effectively so,

1    if the biometric authentication mechanism isn't

2    effectively implemented.

3        THE COURT:  But you are saying they can't

4    sue -- their fingerprint is taken, but they can't

5    sue to ensure that whoever is requiring them to

6    comply didn't properly disclose and what not.

7        MR. EISEN:  And I don't think that that is

8    what --

9        THE COURT:  But they are not protected under

10   HIPAA either.  So they are in this doughnut hole,

11   and you think that is what the legislature intended

12   when they put this exclusion in and when they wanted

13   to have BIPA not conflict with HIPAA is to leave all

14   these people in this doughnut hole where they have

15   no protection for their biometric identifiers?  I

16   think that is what you are saying.

17       MR. EISEN:  But frankly I do, because neither

18   the patients -- patients can't sue under HIPAA.  The

19   health care employer might be punished, but patients

20   can't do it.  If the health care provider wanted to

21   take biometric records and throw them in the middle

22   of the street, patients couldn't do anything about

23   it.

24       THE COURT:  But there is a reason for this in

1    that if you specifically if you have an emergency

2    and you are going to be taking blood, you don't want

3    to have to require a consent before you take the

4    blood.  That is a recognized purpose that I think

5    everybody can get on board with.  You don't want to

6    have to stop health care in order to get a consent.

7                I mean, most hospitals give consents to

8    anyone who comes into the hospital and they are

9    awake and they are cognizant, but there are so many

10   situations where that is not the case and they can't

11   get that done, and that would result in a violation

12   of BIPA.  So counsel has put forth that is why this

13   exemption was in place.

14                But if we go by your interpretation, then

15   any physician or nurse or social worker who uses his

16   or her fingerprint to access any records or for the

17   operation of the hospital cannot then sue anybody if

18   it hasn't been disclosed to that person, can't sue

19   if there is no retention policy that has been

20   provided to that person, can't protect their

21   privacy.

22       MR. EISEN:  So I think it is important to point

23   out that I think a very easily articulable purpose

24   in having this section of the statute apply to

Page 40

1    providers is that if a pharmacist, if a doctor were

2    to say, 'No, I'm not signing that,' then the

3    hospital now has to have two different forms of

4    identification:  One for those who did agree, and

5    one for those who didn't.  And that, I think, is

6    going to create a lot of costs in the health care

7    industry if you have two different measures of

8    authentication to implement to adhere to --

9         THE COURT:  I am not following that argument.

10   Can you explain it in more detail?

11        MR. EISEN:  So the consents required under BIPA

12   to use a biometric authentication, which again we

13   submit, should this case proceed, that hasn't been

14   accomplished here.  Plaintiff didn't agree to that

15   consent.  But if a pharmacist were to say no or if a

16   doctor were to say, 'No, I am not going to sign

17   that, I am not going to give you authorization,'

18   then either the health care provider would have to

19   fire the doctor or would have to implement some

20   other means of authentication only for that doctor.

21        THE COURT:  And how does that apply to this

22   case?

23        MR. EISEN:  Because what this section is

24   intended to do is say, 'If HIPAA speaks to it, we're

Page 41

1    not going to touch it,' because if BIPA does speak

2    to this information, then what BIPA would

3    effectively do is require two different means of

4    authentication, would require a hospital or a

5    pharmacy, say, 'You can use biometric authentication

6    for those who agree to it, and you must use some

7    other method for those who do not.'  And that,

8    I think, is in conflict.

9        THE COURT:  So that cannot have been the intent

10   of the legislature?  Is that what you are saying?

11       MR. EISEN:  Correct.  I think the legislature's

12   intent here is to say, 'If HIPAA speaks to this

13   issue, we aren't going to touch it.'

14       THE COURT:  Okay.  But in the alternative, I

15   think we have all talked about this five times,

16   HIPAA doesn't speak to the protection of the privacy

17   of the physicians' biometric information, the

18   fingerprint.

19       MR. EISEN:  That is --

20       THE COURT:  And you said if HIPAA speaks to it,

21   we are not going to touch it.  So here you are

22   saying BIPA says we are not going to touch it, but

23   HIPAA is not touching it either.

24       MR. EISEN:  HIPAA does speak to it to the

1    extent that it requires a technical safeguard.

2        THE COURT:  Right, but it doesn't protect that

3    information.  It requires a technical safeguard to

4    protect patient information, but it doesn't protect

5    the technical safeguard information, unless I am

6    missing something in HIPAA.  But you see what I

7    mean?  There is the doughnut hole, I think.

8        MR. EISEN:  I see what you mean, but I don't

9    think that that is an unintended result.  I think

10   what the legislature is saying if, for example here,

11   because HIPAA -- I don't think that the legislature

12   could have intended a myopic view of HIPAA as, 'We

13   are only going to talk to -- this exemption will

14   only concern protected health information,' because

15   they could have just said it.

16            They could have just said, 'Patient

17   information or protected health information is

18   defined under HIPAA.'  That would have been very

19   easy.  That would have avoided, I think, this motion

20   in its entirety, but it didn't, and instead it chose

21   three words which have very clear meaning and apply

22   almost entirely to only things covered entities do.

23   So I think to --

24       THE COURT:  But you are still not getting to

Page 43

1   how would the legislature -- the legislature didn't

2   care then?  It said, 'Physicians are not protected,

3   and it sucks for them, but we are not going to do

4   it'?  I mean, I understand your arguments, but

5   I still come back to the fact that this leaves them

6   out.

7           And if they were going to leave out

8   medical providers covered, you know, that are

9   required to comply with HIPAA, you would think that

10  they would put that out there and put it directly

11  in.

12  MR. EISEN:  But I don't think that a

13  broad-based exemption is what the legislature had --

14  because there are certainly circumstances and we

15  have seen enough biometric lawsuits over biometric

16  time clocks or clocking in and out of work, hourly

17  employees.  And would those employees be covered

18  here?  I don't think that exemption would cover

19  them.

20          But here we are talking about accessing a

21  pharmacy database, so I think the legislature could

22  say, 'Look, we are not going to try to get into the

23  nitty-gritty of what type of person in the health

24  care field, if the pharmacy janitors are covered or

1  not; what we are going to do is use these terms as

2  defined under HIPAA.'

3        And to be fair, there are fairly wide

4  groups of people that aren't covered.  There is a

5  biometric time clock in the hallway of this

6  courthouse because state employees aren't covered.

7  And there are a whole swath of state employees that

8  simply are not covered.

9        But here, rather than do that, I think

10  the legislature said, 'Well, we aren't going to get

11  into who is and who isn't because there are

12  circumstances of which it would not be appropriate.'

13  But here, if it falls within these three

14  definitions, that means the plain language of the

15  statute.

16     THE COURT:  And then I am reading anyone within

17  the hospital, for instance, who is involved in

18  billing, even repairs, custodial staff, anybody

19  then, because operations, this includes customer

20  service, it includes payment, of course -- I'm

21  sorry.  Payment is separate, then operations, it

22  includes general administrative activities.  I guess

23  that would include custodial possibly.  But you are

24  talking about anyone employed by the hospital that

Page 45

1    is involved with billing or administrative

2    activities?

3        MR. EISEN:  I don't think that is necessarily

4    true.  I don't know that if there are --

5        THE COURT:  Then --

6        MR. EISEN:  Sorry, if they are an hourly

7    employee if a time clock to clock in and out of work

8    is covered, but if they have access --

9        THE COURT:  Well, I am just saying if they have

10   to use their fingerprint to access the medical

11   record to start the payment process --

12       MR. EISEN:  Right.

13       THE COURT:  -- or if they have to access the

14   medical record to address an administrative

15   complaint under operations.

16       MR. EISEN:  I think that would be covered.

17   Again, I don't think we need to go --

18       THE COURT:  That would be an exemption.

19       MR. EISEN:  Right.  I don't think we need to go

20   any further than the language the legislature used,

21   which was collected, used, or stored for health

22   care, treatment, or operations under HIPAA.  And

23   I don't think that could be reasonably disputed that

24   data is collected, used, or stored for health care,

1    treatment, or operations.

2              Moreover, wouldn't we as patients want

3    the best protection?  I don't think that is

4    unreasonable to say -- you know, if my physician has

5    a biometric authentication, I would be happy about

6    it.  I want to make sure that they have best --

7         THE COURT:  But you wouldn't care that their

8    information is not -- you can't protect it?

9         MR. EISEN:  I --

10        THE COURT:  Because that is what you are saying

11   here.  It's like, 'I'm glad they have it for my

12   patient's safety of my records, but too bad that

13   they can't protect their own privacy.'

14        MR. EISEN:  To a certain extent, I suppose

15   that's true.  But I think it is also important to

16   know that BIPA doesn't really have security

17   protections.  So we are not really talking about a

18   statute intended to protect physician information.

19        THE COURT:  So it is a disclosure statute.

20        MR. EISEN:  It is a disclosure statute, period.

21        THE COURT:  But there is a way for someone to

22   stand up and say, 'Yes, you are requiring that I do

23   this, but you then need to follow this, which tells

24   me that it is being protected.'

1    Because if you retain and you store

2    properly and then if you have a retention schedule

3    and if you have those procedures in place, are these

4    the best to protect the biometric information.

5        MR. EISEN:  Right.

6        THE COURT:  So there is an enforcement to

7    confirm the enforcement mechanism and the disclosure

8    mechanism is to say, 'Hey, we are doing all this,'

9    and then the enforcement mechanism is saying, 'Well,

10   you are not doing this, so it is not protecting my

11   information.'

12       MR. EISEN:  I mean, I think to the extent HIPAA

13   has strict security options, BIPA simply doesn't; it

14   is just says protect it like you would protect

15   anything else, which in this context would, you

16   know, protect it as you protect patient information.

17       But the plain language of the statute,

18   I do believe, speaks to this issue.  And to read

19   pharmacists' information out of the language of that

20   statute would be to give that statute, to read that

21   later phrase as having virtually no meaning, I mean,

22   it is difficult to think of a scenario, as we are

23   trying to, where patient information could be

24   covered by Section 1 or not covered by Section 1 but

1  covered by Section 2.

2          It's very -- it would be -- jumping

3  through, I think, linguistic hurdles to try to find

4  a scenario where that would occur, and I realize we

5  spent a good deal of time talking about what might

6  happen or if physicians' information, pharmacists'

7  information isn't protected under HIPAA, there would

8  be a wide group of people not protected under HIPAA.

9          But the statute says what it says, and

10 reading the statute to speak only to patient

11 information, I think we would have expected the

12 legislature to say either captured from a patient in

13 the health care setting or patient information

14 collected, used, or stored, or would just have said

15 protected health information under HIPAA, period,

16 but it didn't.

17         And reading pharmacists' information out

18 of this statute, out of this language, would

19 eliminate the second half of that phrase entirely

20 from the statute, because again it is difficult to

21 envision what wouldn't fall under Section 1 but fall

22 under Section 2.

23         And I do think as a -- and I hesitate to

24 make a policy argument, but in this circumstance, if

1   a pharmacy like CVS, if this exemption doesn't

2   apply, then we will, I think, be left with a

3   scenario where all health care providers will need

4   to implement alternative means of complying with the

5   technical safeguard, because if physicians or

6   pharmacists --

7        THE COURT:  No, they would just have to comply

8   with BIPA.

9        MR. EISEN:  But if a pharmacist says, 'No, I am

10  not signing that,' then they do need to implement

11  something in order to have that --

12       THE COURT:  Well, okay.

13       MR. EISEN:  And that is not something, I think,

14  HIPAA -- that HIPAA would require a pharmacy to

15  implement alternative measures if they think one is

16  the best.

17       THE COURT:  No, but if there are going to take

18  the fingerprints, BIPA requires that they follow

19  certain measures.  They choose another option or

20  have to do another option because someone opts out,

21  they can do another option that is not subject to

22  BIPA.

23       MR. EISEN:  Right, but what they would end up

24  doing is they would be implementing a measure that

Page 50

1    the health care provider believes isn't as good.

2         THE COURT:  What if that happens under another

3    scenario.  I know it is not subject to HIPAA, but

4    you have an employer, and you have somebody say,

5    'I want to work here, and I'm working here, and I

6    don't want to use my fingerprint.'  They would have

7    to do the same thing.  If they didn't just fire the

8    person, they would have to come up with an

9    alternative system to clock them in and out.

10        MR. EISEN:  Right.  There is no required --

11   I mean it is not required under HIPAA, but what I

12   think makes it unique is that it requires health

13   care providers to use what they believe is the best

14   method to protect patient information.

15        THE COURT:  But it is not required to use

16   fingerprints biometrics.

17        MR. EISEN:  Correct.

18        THE COURT:  That is one option.

19        MR. EISEN:  But if a health care provider were

20   to say, 'That is the best, but I can't use it here,'

21   they would have to use an option that they deem

22   second best, which would possibly expose them to

23   liability because they are using a means of

24   protecting patient information that they believe

Page 51

1    isn't as secure.

2         THE COURT:  Okay.  I am just going to take a

3    few minutes' recess, and then I will return to rule.

4    Thank you.

5         MR. ZOURAS:  Thank you, your Honor.

6                    (Whereupon, a recess was taken.)

7         THE COURT:  Okay.  As I mentioned before, we

8    are here on Defendants' 619.1 motion to dismiss.

9    I have reviewed the briefs, the motion, as well as

10   heard oral argument today, and I am ready to rule.

11              We will start with the easier rulings

12   first, which is with respect to the negligence Count

13   and the dismissal of the entities besides New

14   Albertson's Inc., d/b/a Jewel-Osco.  I am going to

15   grant the motion to dismiss related to those two

16   arguments.  The negligence Count will be dismissed.

17   There is no actual damages that have been alleged

18   such that counsel could argue future damages may

19   arise.

20              With respect to the other entities that

21   are named, there are no allegations in the complaint

22   addressing their involvement in the disclosure, the

23   use, collection, retention of the biometric

24   information, and therefore there is no indication

1  that they were involved in these activities, so

2  there would need to be some connection.  So those

3  are both dismissed.

4           The parties in the negligence claim are

5  dismissed without prejudice, but there would need to

6  be a showing as to actual damages to alleged

7  negligence, as well as there would need to be a

8  showing that these parties had direct involvement

9  with the requirement to provide biometric

10 information, the collection of that information, the

11 retention of the information, those types of things.

12          So then on to the first argument.  Both

13 sides argued that the exception in BIPA, which is

14 740 ILCS 14-4/10 is unambiguous.  Both parties have

15 argued what they believe are plausible readings.

16 And in looking at the statute itself, without

17 looking at anything else or considering anything

18 else, they are both plausible readings, and

19 therefore because of that, the statute is ambiguous,

20 which is when the court would look to legislative

21 history.

22          And no legislative history has been

23 presented to the court, and it sounds like there is

24 little out there.  With that, then the court must

1    look to the intent of the statute.  And I should

2    also note there are no other cases on point.  This

3    is an issue of first impression.

4             To read the exception as Defendants set

5    forth is nonsensical, in this court's opinion,

6    essentially that Defendants argue a blanket

7    exemption for doctors, nurses, physical therapists,

8    CNA's, ultrasound technicians, anyone subject to

9    HIPAA who uses biometric information to access

10   medical records or billing records or hospital

11   records.  These large categories of workers cannot

12   look to BIPA to protect their privacy.  If the

13   General Assembly intended to exempt BIPA for anyone

14   subject to HIPAA, the legislature would have said

15   so.  That should have been set forth, would have

16   been set forth more clearly.

17            Counsel for Defendants stated that if

18   HIPAA speaks to it, then BIPA is not going to touch

19   it.  Well, HIPAA does not protect the privacy of

20   caregivers' biometric information.  So it is, again,

21   in a doughnut hole, which is not what I believe the

22   legislature intended.

23            Counsel mentioned that it is statutory

24   construction, we can't look to a statute and read in

1   redundancies, which is true; however, the statute,

2   if you look to the other definitions, has some very

3   clear redundancies, especially with respect to

4   private entity, which I guess I will just read into

5   the record for clarity.

6           This is, again, 14-4/10:  "'Private

7   entity,'" quote/unquote, "means individual

8   partnership, corporation, limited liability company,

9   association, or other group however organized.

10  A private entity does not include a state or local

11  government agency.  A private entity does not

12  include any court of Illinois, a clerk of court, or

13  a judge or justice thereof."

14          There are redundancies in that

15  definition.  Understanding that we are not to read

16  redundancies in, but it is clear that there are

17  additional redundancies in other definitions, a

18  point to make.

19          And, again, under Defendants' reading,

20  BIPA would provide a private right of action for

21  everyone except for health care providers to protect

22  their biometric information.  Again, that is a

23  doughnut hole that I can't fathom that the

24  legislature intended.

Page 55

1          And reading BIPA to cover pharmacists in

2     this case is not in conflict with HIPAA.  BIPA is a

3     disclosure statute with respect to biometric

4     information, and HIPAA protects patient information.

5          Finally, Rosenbach, obviously not

6     directly on point to the issues here, but Rosenbach

7     did point out, the Supreme Court pointed out, that

8     biometric privacy is important and that protection

9     should be broadly applied.  To interpret the

10    exclusion to include all HIPAA providers does not

11    comport with Rosenbach's broader application.

12          So the motion to dismiss based upon the

13    exception is going to be denied.  That's it.

14    MR. ZOURAS:  Your Honor, do you want to set a

15    time frame for an answer and a follow-up status on

16    any one of those points?

17    MR. EISEN:  Yes, and that would depend in large

18    part on what you want to do as it relates to the

19    negligence and the other entities.  If things are

20    going to stay as they are, then I suppose that there

21    is going to be an amended complaint.  I assume we

22    should figure days out of that.

23    MR. ZOURAS:  Sure.  So we will stand upon our

24    current complaint in light of the court's order.  So

1   with that, we can set time frame.

2        THE COURT:  Okay.  28 days?

3        MR. EISEN:  That would be one way out of this

4   at the time, especially in light of the holiday, if

5   you want to do that.

6        THE COURT:  Sure.  If you want 35, I can give

7   you that.

8        MR. EISEN:  Sure.  Why not.  We will take it.

9        THE COURT:  That is to be 35, and then we will

10  come back maybe in 60 days, assuming it is going to

11  be an answer.  That way typically if I find out

12  there is going to be a motion, I will bring you back

13  earlier so we can set a briefing schedule.  So why

14  don't we just do a 60-day status date.

15       MR. EISEN:  Sounds good.

16                    (Which were all proceedings had in

17                    the above-entitled cause on this

18                    date.)

19

20

21

22

23

24

Page 57

1    STATE OF ILLINOIS    )

2                         )    SS:

3    COUNTY OF C O O K    )

4

5         I, ANDREW ROBERT PITTS, C.S.R., a Certified

6    Shorthand Reporter within and for the County of

7    Cook and State of Illinois, do hereby certify that

8    I reported in shorthand the proceedings had at the

9    taking of said hearing and that the foregoing is a

10   true, complete, and correct transcript of my

11   shorthand notes so taken as aforesaid and contains

12   all the proceedings given at said hearing.

13        IN WITNESS WHEREOF, I do hereunto set my hand

14   and affix my seal of office at Chicago, Illinois

15   this 8th day of July, 2019.

16

17

18        _____

19             Certified Shorthand Reporter

20             Cook County, Illinois

21             My commission expires May 31, 2021

22

23   C.S.R. Certificate No. 84-4575.

24

# EXHIBIT A-4

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

THOMAS ROBERTSON,           )
individually, and on behalf of all     )
others similarly situated,         )
                Plaintiff,   )
                      )    Case No. 18-CH-5194
      v.               )
HOSTMARK HOSPITALITY     )
GROUP, INC., et al,         )
                      )
         Defendants,   )

## MEMORANDUM AND ORDER

Defendants Hostmark Hospitality Group, Inc. and Raintree Enterprises Mart Plaza, Inc. have filed a motion to dismiss Plaintiff, Thomas Robertson's complaint pursuant to 735 ILCS 5/2-619.1.

### I.   Background

The Biometric Information Privacy Act ("BIPA") requires private entities in possession of biometric information to develop a publicly available written policy establishing a retention schedule and guidelines for permanently destroying biometric information. 740 ILCS 14/15(a). BIPA also requires a private entity to obtain written consent from the individual before it can collect the individual's biometric information. 740 ILCS 14/15(b). Significantly, BIPA prevents a private entity from disseminating an individual's biometric information unless it has received the individual's consent. 740 ILCS 14/15(d).

Section 14/20 of BIPA grants any person aggrieved by a violation of BIPA a right of action. 740 ILCS 14/20. A prevailing party may recover actual damages or a statutory penalty whichever is greater for each violation. 740 ILCS 14/20 (1) and (2).

### A. Plaintiff Thomas Robertson

Plaintiff Thomas Robertson ("Robertson") filed a Class Action Complaint (the "Complaint"). Robertson alleges that he worked as a food and beverage manager for Defendants Hostmark Hospitality Group, Inc. ("Hostmark") and Raintree Enterprises Mart Plaza, Inc. ("Raintree") (collectively "Defendants") from 2010 to January 2016. (Compl. at ¶41). Robertson alleges that beginning in 2010, as a condition of his employment, he was required to scan his fingerprint so Defendants could authenticate and track his time. (Id. at ¶42). Robertson alleges that Defendants stored his fingerprint data in their employee database. (Id. at ¶43).

Robertson alleges that Defendants violated BIPA because: (1) he was never informed of the specific limited purposes or length of time for which Defendants collected, stored, and disseminated his biometric information; (2) he was never informed of any biometric data retention and deletion policy; (3) he never signed a written release allowing Defendants to

1

collect, store, use, or disseminate his biometric data; and (4) upon information and belief, Defendants have disclosed his fingerprint data to at least one out-of-state third-party vender. (Compl. at ¶¶33, 45-47, 71, 76-77, 81, 86-88, 92, 97-98).

## II.    Motion to Dismiss

Defendants are seeking to dismiss the Complaint pursuant to 735 ILCS 5/2-619.1. Section 2-619.1 allows a party to bring a combined motion to dismiss under Sections 2-615 and 2-619. 735 ILCS 5/2-619.1.

"A section 2-615 motion to dismiss challenges the legal sufficiency of the complaint. Yoon Ja Kim v. Jh Song, 2016 IL App (1st) 150614-B, ¶41. "Such a motion does not raise affirmative factual defenses but alleges only defects on the face of the complaint." Id. "All well-pleaded facts and all reasonable inferences from those facts are taken as true. Where unsupported by allegations of fact, legal and factual conclusions may be disregarded." Kagan v. Waldheim Cemetery Co., 2016 IL App (1st) 131274, ¶29. "In determining whether the allegations of the complaint are sufficient to state a cause of action, the court views the allegations of the complaint in the light most favorable to the plaintiff. Unless it is clearly apparent that the plaintiff could prove no set of facts that would entitle him to relief, a complaint should not be dismissed." Id.

A section 2-619 motion to dismiss "admits the legal sufficiency of the complaint and affirms all well-pled facts and their reasonable inferences, but raises defects or other matters either internal or external from the complaint that would defeat the cause of action." Cohen v. Compact Powers Sys., LLC, 382 Ill. App. 3d 104, 107 (1st Dist. 2008). A dismissal under §2-619 permits "the disposal of issues of law or easily proved facts early in the litigation process." Id. Section 2-619(a)(5) authorizes dismissal where "the action was not commenced within the time limited by law." 735 ILCS 5/2-619(a)(5).

### A.    Section 2-619

Defendants argue that the Complaint should be dismissed pursuant to section 2-619 because (1) his claim is preempted by the Illinois Workers' Compensation Act (the "IWCA"); and (2) his claims are time barred by any applicable statute of limitations.

#### 1. Preemption

Defendants argue that the IWCA preempts Robertson's claims because his injury falls into the types of injuries covered by the IWCA. (Memo at 11). The court disagrees.

Section 305/5(a) of the IWCA (the "exclusivity provision") provides:

[. . .] no common law or statutory right to recover damages from the employer [...] for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act [. . .].

820 ILCS 305/5(a).

In order to avoid the exclusivity provision an employee must establish "that the injury (1) was not accidental; (2) did not arise from his employment; (3) was not received during the course of employment; or (4) was not compensable under the [IWCA]." Folta v. Ferro Engineering, 2015 IL 118070, ¶ 14.

The Illinois Supreme Court has held that "whether an injury is compensable is related to whether the type of injury categorically fits within the purview of the Act." Folta, 2015 IL 118070, ¶ 23.

Robertson's alleged injury is not compensable under the IWCA because it is not a type of injury which categorically fits within the purview of the IWCA.

"The purpose of the [IWCA] is to protect employees against risks and hazards which are peculiar to the nature of the work they are employed to do." Mytnik v. Illinois Workers' Compensation Comm'n, 2016 IL App (1st) 152116WC, ¶ 36. Defendants offer no explanation as to how Robertson's statutory right to maintain his privacy in his biometric data is a risk or hazard peculiar to his employment as a food and beverage manager.

Further, the court finds persuasive Judge Raymond W. Mitchell's well-considered opinion in McDonald v. Symphony Bronzeville Park, LLC, et al., No. 2017-CH-11311 (Cir. Ct. Cook Cty. June 17, 2019). In McDonald, Judge Mitchell held that the plaintiff's loss of her ability to maintain her privacy rights under BIPA was neither a psychological nor a physical injury and thus was not compensable under the IWCA.

Therefore, the court finds that the IWCA does not preempt Robertson's claim.

## 2. Statute of Limitations

Section 14/20 of BIPA does not include a statute of limitations. Defendants have identified three different statutes of limitation which they think are applicable. The court will address each in turn.

Initially, Defendants have argued that public policy favors the application of the shortest possible statute of limitations.

The Illinois Supreme Court has held that "[t]he determination of the applicable statute of limitations is governed by the type of injury at issue, irrespective of the pleader's designation of the nature of the action." Travelers Casualty & Surety Co. v. Bowman, 229 Ill. 2d 461, 466 (2008) (quoting Armstrong v. Guigler, 174 Ill. 2d 281, 286 (1996)). "[I]t is the nature of the plaintiff's injury rather than the nature of the facts from which the claim arises which should determine what limitations period should apply." Travelers, 229 Ill. 2d at 466. "To determine the true character of a plaintiff's cause of action, [Armstrong] emphasized that '[t]he focus of the inquiry is on the nature of the liability and not on the nature of the relief sought.' " Travelers, 229 Ill. 2d at 467 (quoting Armstrong, 174 Ill. 2d at 291).

Defendants have cited no case law which indicates that a court may apply any statute of limitations on a public policy basis. The court rejects Defendants' argument.

### a. 1-Year (Privacy Actions)

Section 13-201 provides that "[a]ctions for slander, libel or for publication of matter violating the right of privacy, shall be commenced within one year next after the cause of action accrued." 735 ILCS 5/13-201.

Defendants argue that because Robertson is alleging a violation of his right to privacy in his biometric data, Section 13-201 applies. Robertson argues that Section 13-201 applies only to privacy claims involving a publication element. The court agrees with Robertson.

Section 14/20 of BIPA grants any person aggrieved by a violation of BIPA (a statute) a right of action. 740 ILCS 14/20. The fact that Robertson alleges his privacy rights were violated does not change the fact that the true nature of any potential liability stems from alleged violations of the BIPA statute. The Travelers' court makes clear that regardless of Robertson's allegation that his privacy rights were violated; we are dealing with an action for a violation of the BIPA statute and not an action for slander, libel, or for the publication of matter violating the right to privacy. Travelers, 229 Ill. 2d at 466; 735 ILCS 5/13-201.

Even assuming that Section 14/20 of BIPA created an action for violating a right of privacy in one's biometric data, the plain and unambiguous language of Section 13-201 is clear that it applies to actions *for publication* of matter violating the right of privacy. 735 ILCS 5/13-201. Nothing in the plain and unambiguous language of Section 14/20 indicates that publication is a necessary element for a person to be aggrieved by a violation of the BIPA statute. 740 ILCS 14/20.

While Defendants point out that Robertson has alleged that his biometric data has been disseminated (published) to at least one out-of-state third-party vendor and disclosed (published) to other, currently unknown, third-parties in violation of Section 15/15(d) of BIPA, Defendants have not cited any legal authority to justify the application of Section 13-201 to the alleged violations of the other sections of BIPA. (Compl. at ¶33); 740 ILCS 14/15(d); 735 ILCS 5/13-201.

Therefore, the court finds that Section 13-201 does not apply to Robertson's claims.

### b. 2-Year (Penal Statues)

Section 13-202 provides that "Actions for [. . .] a statutory penalty [. . .] shall be commenced within 2 years next after the cause of action accrued [. . .]. 735 ILCS 5/13-202.

Defendants argue that because Section 14/20 of BIPA is penal in nature Section 13-202 applies. Robertson argues that because Section 14/20 of BIPA is remedial in nature Section 13-202 does not apply. The court agrees with Robertson.

A statutory penalty is penal in nature if it "(1) impose[s] automatic liability for a violation of its terms; (2) set[s] forth a predetermined amount of damages; and (3) impose[s] damages without regard to the actual damages suffered by the plaintiff." Landis v. Marc Realty, L.L.C., 235 Ill. 2d 1, 13 (2009) (citing McDonald's Corp. v. Levine, 108 Ill. App. 3d 732, 738 (1982)).

Here, it is clear that Section 14/20 does not impose damages without regard to the actual damages suffered by a plaintiff because it allows a plaintiff to recover the greater of his actual damages or the applicable liquidated damages amount. 740 ILCS 14/20. The fact that a plaintiff

may be awarded or seeks only liquidated damages does not mean Section 14/20 is penal in nature.

The Illinois Supreme Court's decision in Standard Mutual Insurance Co. v. Lay, 2013 IL 114617 instructive. In Standard Mutual, the Supreme Court held that the statutory penalty of the Telephone Consumer Protection Act (the "TCPA") was remedial and not penal. Standard Mutual, 2013 IL 114617, ¶ 33. The TCPA allows a person to bring an action to recover their actual monetary loss or $500 for each violation, whichever was greater. Id. at ¶29. In reaching its holding the Supreme Court noted that the TCPA was "clearly within the class of remedial statutes which are designed to grant remedies for the protection of rights, introduce regulation conducive to the public good, or cure public evils." Id. at ¶ 31 (quoting Scott v. Association for Childbirth at Home, International, 88 Ill. 2d 279, 288 (1981)). "Whether we view the $500 statutory award as a liquidated sum for actual harm, or as an incentive for aggrieved parties to enforce the statute, or both, the $500 fixed amount clearly serves more than purely punitive or deterrent goals." Id. at ¶ 32.

Like the TCPA, Section 14/20 of BIPA allows a plaintiff to recover either their actual damages or a liquidated amount. Standard Mutual, 2013 IL 114617, ¶ 29; 740 ILCS 14/20. Also like the TCPA, BIPA is clearly "within the class of remedial statutes which are designed to grant remedies for the protection of rights, introduce regulation conducive to the public good or cure public evils." Standard Mutual, 2013 IL 114617, ¶ 31.

As the Illinois Supreme Court pointed out in Rosenbach v. Six Flags Entertainment Corp., 2019 IL 123186, ¶ 37, by allowing private entities to face liability for violating BIPA, without requiring an individual to show more than a violation of their statutory rights, "those entities have the strongest possible incentive to conform to the law and prevent problems before they occur and cannot be undone." Whether this court views Section 14/20's liquidated damages provisions "as a liquidated sum for actual harm, or as an incentive for aggrieved parties to enforce the statute, or both, the [liquidated damages] amount clearly serves more than purely punitive or deterrent goals." Standard Mutual, 2013 IL 114617, ¶ 32.

Therefore, the court finds that Section 13-202 does not apply to Robertson's claims.

### c. 5-Year (Catchall 5-Year)

Section 13-205 provides "[. . .] all civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued." 735 ILCS 5/13-205.

Because, Section 14/20 does not contain a limiting provision and neither Section 13-201 nor Section 13-202 applies, the court finds that Section 13-205 provides the applicable statute of limitation for Section 14/20.

### 3. Whether Robertson's Claims are barred by the 5-Year Statute of Limitations

Robertson filed his complaint on April 1, 2019. Defendants argue that Robertson's claims are barred under Section 13-205 because management position employees, like Robertson, are not hourly employees and have not used timekeeping devices since January 16, 2013. (Memo Ex. 2, ¶ 6). Robertson argues his claims are not barred by Section 13-205 because he continued

to use the fingerprint scanning method of authentication periodically through 2014. (Response Ex. 1, ¶ 7). The parties have supported their arguments with affidavits.

In deciding the merits of a Section 2-619 motion, "a trial court cannot determine disputed factual issues solely upon affidavits and counter-affidavits." Vaughn v. Blue Cross Blue Shield of Illinois, 403 Ill. App. 3d 830, 836 (1st Dist. 2010). Because the parties have presented conflicting affidavits, the court cannot resolve this disputed factual issue on a Section 2-619 motion and denies Defendants' motion without prejudice. 735 ILCS 5/2-619(c).

**B. Section 2-615**

Defendants argue that Robertson's complaint must be dismissed because he has failed to identify who his employer was, in violation of the Illinois fact pleading requirements. The court disagrees.

Illinois is a fact pleading jurisdiction. Simpkins v. CSX Transportation, Inc., 2012 IL 110662, ¶ 26. Fact pleading does not require a plaintiff to set forth evidence but does require a "plaintiff allege facts sufficient to bring a claim within a legally recognized cause of action." Simpkins, 2012 IL 110662, ¶ 26. "A plaintiff may not rely on conclusions of law or fact unsupported by specific factual allegations." Id.

Here, Robertson's complaint does allege the ultimate facts which if proven would bring his claim within the legally recognized cause of action for a violation of the BIPA statute. While Defendants are correct that throughout Robertson's complaint he generally refers to both Defendants, Defendants have cited[1] no persuasive or binding case law which indicates this practice violates Illinois fact pleading requirements. Robertson's complaint it is clear that he is alleging that both defendants employed him and engaged in conduct violating BIPA. (Compl. at ¶¶33, 41-47, 71, 76-77, 81, 86-88, 92, 97-98).

**III. Conclusion**

Defendants' motion to dismiss pursuant to 735 ILCS 5/2-619 is denied without prejudice.

Defendants' motion to dismiss pursuant to 735 ILCS 5/2-615 is denied without prejudice.

The status date of August 2, 2019 is stricken. Status is set for August 22, 2019

Entered:

```
ENTERED
Judge Neil H. Cohen-2021
JUL 31 2019
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK
```

Cohen

---

[1] The court notes that Defendants have cited Carter v. Dolan, No. 08 C 7464, 2009 U.S. Dist. LEXIS 53735, a non-binding opinion from the Northern District of Illinois, and Elder v. Cook Count Department of Corrections., 2016 IL App (1st) 153428-U, an unpublished opinion. Although a circuit court may look to federal court orders for guidance or persuasive authority they are not binding authority. Reichert v. Board of Fire & Police Commr's of Collinsville, 388 Ill. App. 3d 834, 845 (5th Dist. 2009). Similarly, unpublished opinions are not binding authority and may not be cited as persuasive authority. Ill. Sup. Ct., R 23(e).

# EXHIBIT A-5

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLENE FIGUEROA and JERMAINE BURTON, individually and on behalf of all others similarly situated, | ) ) ) | 19 C 1306 |
| | ) | |
| Plaintiffs, | ) | Judge Gary Feinerman |
| | ) | |
| vs. | ) ) | |
| | ) | |
| KRONOS INCORPORATED, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| QUATISHA MARSHALL and ART ARCANGELO, individually and on behalf of similarly situated individuals, | ) ) ) | 19 C 1511 |
| | ) | |
| | ) | Judge Gary Feinerman |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) ) | |
| | ) | |
| KRONOS INCORPORATED, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

To the extent it has not already been ruled upon, Plaintiffs Figueroa and Burton's motion to consolidate and appoint interim counsel [37] (in No. 19 C 1306) is granted. Pursuant to Civil Rule 42(a), the *Figueroa* case (19 C 1306) is consolidated for all purposes with the *Marshall* case (19 C 1511). Pursuant to Civil Rule 23(g)(3), Attorneys Jay Edelson of Edelson PC and James B. Zouras of Stephan Zouras LLP are appointed to serve as interim class counsel.

**STATEMENT**

The *Figueroa* counsel group and the *Marshall* counsel group both have the experience required by Rules 23(g)(1)(A) and (g)(4) to serve as adequate class counsel. The *Marshall* group made the court's Rule 23(g)(2) choice between the two easy when it filed its surreply brief. Doc. 87. (All case citations are to the docket in the *Figueroa* case, 19 C 1306.) While the *Figueroa* group's reply brief was frank and tough, addressing what it viewed as flaws in the *Marshall* group's approach to BIPA class action litigation, the brief was professional and adhered strictly to the merits of which group would better represent the class. Doc. 82. The *Marshall* group's surreply, by contrast, reflected extremely poor judgment by airing and getting

1

into matters from the divorce case involving one of the two lead members of the *Figueroa* group. Doc. 87 at 6-7. That was gratuitous—the information from the divorce case did nothing to support the *Marshall* group's argument that the *Figueroa* group lacks the financial resources to vigorously prosecute this putative class action—and highly inappropriate. Exacerbating matters is the carelessness the *Marshall* group exhibited by attaching to its surreply three court documents from the divorce case that identified the names and birthdates or birth years of the divorcing couple's minor children. Docs. 87-7, 87-8, 87-10. (The court sealed those documents, Doc. 93, on the *Figueroa* group's motion, Doc. 90.)

Given the poor judgment and carelessness exhibited in their surreply brief, the *Marshall* group will not be appointed as interim class counsel. *See* Fed. R. Civ. P. 23(g)(1)(B) (providing that the court "may consider any other matter [other than those set forth in Rule 23(g)(1)(A)] pertinent to counsel's ability to fairly and adequately represent the interests of the class"). The *Figueroa* group is selected as interim class counsel.

Before concluding, the court notes that, as of the close of business on September 17, 2019, it was seriously contemplating the possibility of appointing one of the two lead members of the *Marshall* group as co-lead counsel in light of that attorney's apparent disavowal of the surreply brief, which he neither signed and filed. Doc. 88-1 at 12. That possibility evaporated when that attorney filed a declaration after the close of business endorsing the surreply, Doc. 92, and when, on the record at the September 18, 2019 hearing, Doc. 93, he endorsed in particular the surreply's use of the divorce case as an appropriate tactic to advance the *Marshall* group's efforts to prevail on this motion.

September 19, 2019

_____
United States District Judge

2

# EXHIBIT A-6

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

FELIPE BERNAL, individually and
on behalf of all others similarly sit-
uated,

          Plaintiff,

          v.

ADP, LLC,
          Defendant.

No. 2017-CH-12364
(Cons. w/ 18-CH-07139 and
19-CH-01612)

Calendar 16

Judge David B. Atkins

### ORDER

THIS CASE COMING TO BE HEARD on the Henderson Plaintiffs' Mo-
tion to Appoint Lead Counsel and opposition to Bernal and Zepeda Plaintiffs'
Motion to Appoint Interim Lead Counsel, the court having considered the
briefs submitted and being fully advised in the premises,

THE COURT HEREBY FINDS AND ORDERS:

1. Both firms are highly experienced and qualified to pursue BIPA class
   actions, having settled or tried many such cases in recent years.

2. Both the Edelson and McGuire firms have committed resources and staff
   sufficient to identify, investigate, and pursue potential claims. Both
   have solicited the involvement of proposed supporting counsel.

3. The consolidation of multiple important cases filed by different counsel
   before this court necessitates collaboration between counsel and is in the
   best interest of the parties.

4. For these reasons, the court hereby appoints both Edelson PC, along
   with attorney James B. Zouras and McGuire Law P.C. as interim co-
   lead counsel in these consolidated matters.

JUDGE DAVID B. ATKINS

ENTERED:
NOV 19 2019

Circuit Court-1879

_____
Judge David B. Atkins

The court.

# EXHIBIT  A-7

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

CYNTHIA DIXON, individually, and on behalf )
of all others similarly situated, )
                        )
            Plaintiff, )
                        )     **Case No. 1:17-cv-08033**
     v. )
                        )     **Hon. Matthew F. Kennelly**
THE WASHINGTON & JANE SMITH HOME, )
*et al.*, )
                        )
           Defendants. )

## FINAL APPROVAL ORDER AND FINAL JUDGMENT

On August 20, 2019, the Court heard Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement. The Court has considered the Motion and other related materials submitted by the Parties, as well as the Parties' presentation at the hearing on Final Approval, and otherwise being fully informed on the premises, hereby finds and orders as follows:

1. Unless otherwise defined herein, all capitalized terms used herein will have the same meaning as defined in the Amended Settlement Agreement and Release.

2. This Court has jurisdiction over the subject matter of this action and over all Parties to this action pursuant to 28 U.S.C. § 1332(d) and § 216(b) of the Fair Labor Standards Act ("FLSA"), including jurisdiction over all members of the Settlement Class.

3. The Court finds that there is a bona fide legal dispute between the Parties as to whether Defendants violated the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.*

4. The Court grants Final Approval of the Settlement memorialized in the Amended Settlement Agreement previously filed with the Court.

5.     The Court finds that the Settlement is fair, reasonable, adequate, and in the best interests of the Class Members. The Court finds that: (a) the strength of Plaintiffs' case on the merits compared to the terms of the Settlement, and the complexity, length, and expense of further litigation support approval of the Settlement; (b) the Settlement Fund of $1,356,000.00 as set forth in the Amended Settlement Agreement is a fair, reasonable, and adequate settlement of the claims; (c) the Settlement was reached pursuant to arm's-length negotiations between the Parties; (d) the support for the Settlement expressed by Counsel for the Parties, all of whom have significant experience representing parties in complex class actions, including those involving BIPA claims, weighs in favor of approval of the Settlement; (e) the absence of any objections to the Settlement by Class Members supports approval of the Settlement; and (f) the litigation has progressed to a stage where the Court and the Parties could evaluate the merits of the case, potential damages, and the probable course of future litigation, and thus warrants approval of the Settlement.

6.     The Court approves the Settlement as a final, fair, reasonable, adequate, and binding release of the claims of the Named Plaintiff and the Class Members as provided in the Amended Settlement Agreement.

7.     The Notice of Proposed Settlement of Class Action Lawsuit ("Class Notice") sent to the Class Members via first class mail adequately informed the Class Members of the terms of the Amended Settlement Agreement, their estimated recovery, their right to request exclusion from the Settlement and pursue their own remedies, and their opportunity to file written objections and appear and be heard at the Final Approval Hearing. The Class Notice also adequately informed the Class Members of the address to contact Class Counsel. Thus, the Court finds that the Class Notice provided to the Class satisfied the requirements of Rule 23(c)(2)(B).

8.     This Court hereby dismisses the case in its entirety with prejudice, without awarding costs to the Parties except as provided in the Amended Settlement Agreement, and approves the Settlement and Released Claims set forth in the Amended Settlement Agreement.

9.     The Court shall retain jurisdiction solely for the purpose of administering and enforcing the terms of the Amended Settlement Agreement.

10.     This Order constitute a final judgment under Rule 58 of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.

Dated: August 20,     2019

_____
Hon. Matthew F. Kennelly
United States District Court Judge

# EXHIBIT A-8

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| **SHAWN JACKSON, individually,** | ) | |
| **and on behalf of all others similarly situated,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 2018-CH-07424** |
| **v.** | ) | |
| | ) | **Honorable Judge Sanjay Tailor** |
| **A. FINKL & SONS, CO., and ADP, LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## ORDER

On May 12, 2020, the Court heard by video-conference the Parties' Joint Motion for Final Approval of Class Action Settlement as well as Plaintiff's Unopposed Petition for Approval of Attorneys' Fees and Costs, Settlement Administration Expenses and a Service Award to Named Plaintiff. The Court has considered the Joint Motion, Plaintiff's Petition, and other related materials submitted by the Parties, as well as the Parties' presentation at the hearing on final approval, and otherwise being fully informed on the premises, hereby finds and orders as follows:

1.      The Court grants final approval of the settlement memorialized in the Class Action Settlement Agreement and Addendum ("Settlement Agreement") and filed with the Court.

2.      The Court finds that the settlement is fair, reasonable and adequate, and in the best interests of the Class Members. The Court finds that: (a) the strength of Plaintiff's case on the merits weighed against Defendants' defenses, and the complexity, length and expense of further litigation, support approval of the settlement; (b) the Settlement Amount of $684,400.00

1

as set forth in the Settlement Agreement and Addendum is a fair, reasonable and adequate settlement of the claims; (c) the settlement was reached pursuant to arm's-length negotiations between the Parties; (d) the support for the settlement expressed by Class Counsel and counsel for A. Finkl & Sons Co. ("Finkl"), all of whom have significant experience representing parties in complex class actions, weighs in favor of approval of the settlement; (e) the absence of any objections to the settlement by Class Members supports approval of the settlement; and (f) the litigation has progressed to a stage where the Court and the Parties could evaluate the merits of the case, potential damages, and the probable course of future litigation, and thus warrants approval of the settlement.

3.      The Court approves the settlement as a final, fair, reasonable, adequate, and binding release of the claims of the Named Plaintiff and the Class Members as provided in the Settlement Agreement.

4.      The Notice of Proposed Settlement of Class and Collective Action Lawsuit ("Class Notice") and related materials (collectively, "Notice Materials"), sent to the Class Members by the Settlement Administrator via first class mail adequately informed the Class Members of the terms of the Settlement Agreement, their estimated recovery if the settlement was approved, their right to request exclusion from the settlement and pursue their own remedies, and their opportunity to file written objections and appear and be heard at the Final Approval Hearing.

5.      RG/2 Claims Administration LLC ("RG/2") is administering the settlement pursuant to the Settlement Agreement, with the assistance of Class Counsel and Finkl's counsel. RG/2 shall make a Settlement Payment to each member of the Settlement Class who did not

timely opt out of the settlement, as well as to the Named Plaintiff, in accordance with the provisions of the Settlement Agreement and Addendum.

      6.      RG/2 is awarded settlement administration expenses in the amount of $9,477.00.

      7.      The Court finds that Named Plaintiff and Class Representative Shawn Jackson, in prosecuting this case on behalf of the Class, made a substantial contribution to its outcome, and is therefore deserving of a service award in recognition of his efforts. A Service Award in the amount of $10,000.00 is therefore approved for the Named Plaintiff, in addition to any share of the Settlement Fund to which he is entitled.

      8.      The foregoing awards shall be paid from the Settlement Fund of $684,400.00.

      9.      Plaintiff's Petition for Approval of Attorneys' Fees and Costs is hereby entered and continued. The Parties are to advise the Court as to the dollar amount and percentage of cashed Settlement Payments on or before the void date, which is 120 days from issuance, and Defendant shall advise the Court on the number of current and former employees in the Settlement Class on that date.

      10.     The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of the Settlement Agreement, to the extent permitted by law.

**IT IS SO ORDERED.**

ENTERED
Judge Sanjay Tailor
MAY 12 2020
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

/s/ Sanjay T. Tailor
Judge Sanjay T. Tailor

3

# EXHIBIT A-9

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| WYESHA WATTS, individually, and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>AURORA CHICAGO LAKESHORE HOSPITAL, LLC, d/b/a CHICAGO LAKESHORE HOSPITAL; SIGNATURE HEALTHCARE SERVICES, LLC; and KRONOS, INC.,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 17-CH-12756 |

## [PROPOSED] FINAL APPROVAL ORDER AND FINAL JUDGMENT

On November 13, 2019, the Court heard Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement. The Court has considered the Motion and other related materials submitted by the Parties, as well as the Parties' presentation at the hearing on final approval, and otherwise being fully informed on the premises, hereby finds and orders as follows:

1.     The Court finds that there is a bona fide legal dispute between the Parties as to whether Defendants violated the Illinois Biometric Information Privacy Act ("BIPA"), 720 ILCS 14/1, *et seq.* by: (1) failing to inform individuals in writing that they will be capturing, collecting, storing, using, and disseminating biometric data (*i.e.*, statutorily-defined biometric identifiers and/or information) prior to doing so; (2) failing to obtain a written release for the capture of biometric data prior to such capture; (3) failing to inform individuals in writing of the specific purpose and length of time for which biometric data is captured; and (4) failing to publish a publicly available retention schedule and guidelines for permanently destroying biometric data.

2.      The Court grants final approval of the settlement memorialized in the Class Action Settlement Agreement ("Settlement Agreement") and filed with the Court.

3.      The Court finds that the settlement is fair, reasonable and adequate, and in the best interests of the Class Members. The Court finds that: (a) the strength of Plaintiff's case on the merits weighed against Defendant's defenses, and the complexity, length and expense of further litigation, support approval of the settlement; (b) the Settlement Amount of $858,000.00 as set forth in the Settlement Agreement is a fair, reasonable and adequate settlement of the claims; (c) the settlement was reached pursuant to arm's-length negotiations between the Parties; (d) the support for the settlement expressed by Class Counsel and counsel for Defendants, all of whom have significant experience representing parties in complex class actions, weighs in favor of approval of the settlement; (e) the absence of any objections to the settlement by Class Members supports approval of the settlement; and (f) the litigation has progressed to a stage where the Court and the Parties could evaluate the merits of the case, potential damages, and the probable course of future litigation, and thus warrants approval of the settlement.

4.      The Court approves the settlement as a final, fair, reasonable, adequate, and binding release of the claims of the Named Plaintiff and the Class Members as provided in the Settlement Agreement.

5.      The Notice of Proposed Settlement of Class and Collective Action Lawsuit ("Class Notice") and related materials (collectively, "Notice Materials"), sent to the Class Members by the Settlement Administrator via first class mail adequately informed the Class Members of the terms of the Settlement Agreement, their estimated recovery if the settlement was approved, their right to request exclusion from the settlement and pursue their own remedies, and their opportunity to file written objections and appear and be heard at the Final Approval Hearing.

6.     Rust Consulting ("Rust") is administering the settlement pursuant to the Settlement Agreement, with the assistance of Class Counsel and Defendants' counsel. Rust shall make a Settlement Payment to each member of the Settlement Classes who submitted a valid and timely Claim Form as well as to the Named Plaintiff, in accordance with the provisions of the Settlement Agreement.

7.     This Court hereby dismisses the case in its entirety with prejudice, without awarding costs to the Parties except as provided in the Settlement Agreement, and approves the settlement and releases set forth in the Settlement Agreement. The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of the Settlement Agreement, to the extent permitted by law.

8.     The Clerk is directed to enter judgment consistent with this Order.

IT IS SO ORDERED.

Date: _____, 2019

_____
The Honorable Eve M. Reilly

Judge Eve M. Reilly

NOV 1 3 2019

Circuit Court - 2122

# EXHIBIT A-10

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

FONTAINE EDMOND, individually, )
and on behalf of all others similarly situated, )
                        )
          Plaintiff, )
                        )      Case No. 2018-CH-09573
     v. )
                        )
DPI SPECIALTY FOODS, INC., DPI )
SPECIALTY FOODS MIDWEST, INC., DPI )
DEDICATED LOGISTICS, INC., DAYFORCE, )
INC., CERIDIAN HCM, INC., and CERIDIAN )
HCM HOLDING, INC. )
                        )
         Defendants. )

## [PROPOSED] FINAL APPROVAL ORDER AND FINAL JUDGMENT

On November 18, 2019, the Court heard Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement. The Court has considered the Motion and other related materials submitted by the Parties, as well as the Parties' presentation at the hearing on final approval, and otherwise being fully informed on the premises, hereby finds and orders as follows:

1.        The Court finds that there is a bona fide legal dispute between the Parties as to whether Defendants violated the Illinois Biometric Information Privacy Act ("BIPA"), 720 ILCS 14/1, *et seq.* by: (1) failing to inform individuals in writing that they will be capturing, collecting, storing, using, and disseminating biometric data (*i.e.,* statutorily-defined biometric identifiers and/or information) prior to doing so; (2) failing to obtain a written release for the capture of biometric data prior to such capture; (3) failing to inform individuals in writing of the specific purpose and length of time for which biometric data is captured; and (4) failing to publish a publicly available retention schedule and guidelines for permanently destroying biometric data.

2.     The Court grants final approval of the settlement memorialized in the Class Action Settlement Agreement ("Settlement Agreement") and filed with the Court, as amended by agreement of the Parties.

3.     The Court finds that the settlement is fair, reasonable and adequate, and in the best interests of the Class Members.  The Court finds that: (a) the strength of Plaintiff's case on the merits weighed against Defendants' defenses, and the complexity, length and expense of further litigation, support approval of the settlement; (b) the Settlement Amount of $505,000.00 as set forth in the Settlement Agreement is a fair, reasonable and adequate settlement of the claims; (c) the settlement was reached pursuant to arm's-length negotiations between the Parties; (d) the support for the settlement expressed by Class Counsel and counsel for Defendants, all of whom have significant experience representing parties in complex class actions, weighs in favor of approval of the settlement; (e) the absence of any objections to the settlement by Class Members supports approval of the settlement; and (f) the litigation has progressed to a stage where the Court and the Parties could evaluate the merits of the case, potential damages, and the probable course of future litigation, and thus warrants approval of the settlement.

4.     The Court approves the settlement as a final, fair, reasonable, adequate, and binding release of the claims of the Named Plaintiff and the Class Members as provided in the Settlement Agreement.

5.     The Notice of Proposed Settlement of Class and Collective Action Lawsuit ("Class Notice"), sent to the Class Members by the Settlement Administrator via first class mail and email adequately informed the Class Members of the terms of the Settlement Agreement, their estimated recovery if the settlement was approved, their right to request exclusion from the settlement and

2

pursue their own remedies, and their opportunity to file written objections and appear and be heard at the Final Approval Hearing.

6.     Rust Consulting ("Rust") is administering the settlement pursuant to the Settlement Agreement, with the assistance of Class Counsel and Defendants' counsel. Rust shall make a Settlement Payment to each member of the Settlement Classes who did not timely exclude themselves from the settlement, as well as to the Named Plaintiff, in accordance with the provisions of the Settlement Agreement.

7.     This Court hereby dismisses the case in its entirety with prejudice, without awarding costs to the Parties except as provided in the Settlement Agreement, and approves the settlement and releases set forth in the Settlement Agreement. The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of the Settlement Agreement, to the extent permitted by law.

8.     The Clerk is directed to enter judgment consistent with this Order.

IT IS SO ORDERED.

Date: _____, 2019

Hon. Sanjay T. Tailor

ENTERED
JUDGE SANJAY TAILOR-1870

NOV 18 2019

DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

3

# EXHIBIT A-11

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| GEORGE GOINGS, individually, and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 2017-CH-14954 |
| v. | ) ) ) | |
| AEP NVH OPCO, LLC d/b/a APPLIED ACOUSTICS, INTERNATIONAL, and UGN, INC., f/k/a UNITED GLOBE NIPPON, INC., | ) ) ) ) | |
| Defendants. | ) | |

## FINAL APPROVAL ORDER AND FINAL JUDGMENT

On June 1, 2020, the Court heard by video-conference Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement. The Court has considered the Motion and other related materials submitted by the Parties, as well as the Parties' presentation at the hearing on final approval, and otherwise being fully informed on the premises, hereby finds and orders as follows:

1.     The Court finds that there is a bona fide legal dispute between the Parties as to whether Defendants violated the Illinois Biometric Information Privacy Act ("BIPA"), 720 ILCS 14/1, *et seq.* by: (1) failing to inform individuals in writing that they will be capturing, collecting, storing, using, and disseminating biometric data (*i.e.*, statutorily-defined biometric identifiers and/or information) prior to doing so; (2) failing to obtain a written release for the capture of biometric data prior to such capture; (3) failing to inform individuals in writing of the specific purpose and length of time for which biometric data is captured; and (4) failing to develop and

adhere to a publicly available retention schedule and guidelines for permanently destroying biometric data.

2. The Court grants final approval of the settlement memorialized in the Class Action Settlement Agreement ("Settlement Agreement") and filed with the Court.

3. The Court finds that the settlement is fair, reasonable and adequate, and in the best interests of the Class Members. The Court finds that: (a) the strength of Plaintiff's case on the merits weighed against Defendants' defenses, and the complexity, length and expense of further litigation, support approval of the settlement; (b) the Settlement Amount of $180,000.00 as set forth in the Settlement Agreement is a fair, reasonable and adequate settlement of the claims; (c) the settlement was reached pursuant to arm's-length negotiations between the Parties; (d) the support for the settlement expressed by Class Counsel and counsel for Defendants, all of whom have significant experience representing parties in complex class actions, weighs in favor of approval of the settlement; (e) the absence of any objections to the settlement by Class Members supports approval of the settlement; and (f) the litigation has progressed to a stage where the Court and the Parties could evaluate the merits of the case, potential damages, and the probable course of future litigation, and thus warrants approval of the settlement.

4. The Court approves the settlement as a final, fair, reasonable, adequate, and binding release of the claims of the Named Plaintiff and the Class Members as provided in the Settlement Agreement.

5. The Notice of Proposed Settlement of Class and Collective Action Lawsuit ("Class Notice") and related materials (collectively, "Notice Materials"), sent to the Class Members by the Settlement Administrator via first class mail and email adequately informed the Class Members of the terms of the Settlement Agreement, their estimated recovery if the

settlement was approved, their right to request exclusion from the settlement and pursue their own remedies, and their opportunity to file written objections and appear and be heard at the Final Approval Hearing.

6.     Rust Consulting ("Rust") is administering the settlement pursuant to the Settlement Agreement, with the assistance of Class Counsel and Defendants' counsel. Rust shall make a Settlement Payment to each member of the Settlement Classes who did not timely opt out of the settlement, as well as to the Named Plaintiff, in accordance with the provisions of the Settlement Agreement.

7.     Counsel for the Parties will advise the Court within ten days after the settlement check void date of the following:

a.     The number and percentage of uncashed checks;

b.     The percentage of Settlement Class Members that are current employees of one or both Defendants; and

c.     The number and percentage of current employees who do not cash their checks.

8.     The Parties agree that Defendants will have fourteen (14) days from the date of entry of this Order to fund the Settlement, notwithstanding the time period set by paragraph 40 of the Settlement Agreement.

9.     This Court hereby dismisses the case with prejudice as to the claims of the Settlement Class Members, as that term is defined in the Settlement Agreement, without awarding costs to the Parties except as provided in the Settlement Agreement, and approves the settlement and releases set forth in the Settlement Agreement. The Court shall retain jurisdiction

with respect to the implementation and enforcement of the terms of the Settlement Agreement, to the extent permitted by law.

      10.    The Clerk is directed to enter judgment consistent with this Order.


IT IS SO ORDERED.

                    ENTER:

                    */s/ Sanjay T. Tailor*
                    Judge



# EXHIBIT A-12

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| LINDA KANE, individually, ) | |
| and on behalf of all others similarly situated, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 2018-CH-12194 |
| v. ) | |
| ) | |
| CONSERVATION TECHNOLOGY OF ) | |
| ILLINOIS, LLC d/b/a CON-TECH LIGHTING, ) | |
| LEVITON MANUFACTURING CO., INC., ) | |
| ADP, LLC, and KRONOS, INC., ) | |
| ) | |
| Defendants. ) | |

**[PROPOSED] FINAL APPROVAL ORDER AND FINAL JUDGMENT**

On August 14, 2020, the Court heard Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement. The Court has considered the Motion and other related materials submitted by the Parties, as well as the Parties' presentation at the hearing on final approval, and otherwise being fully informed on the premises, hereby finds and orders as follows:

1.      The Court finds that there is a bona fide legal dispute between the Parties as to whether Defendants violated the Illinois Biometric Information Privacy Act ("BIPA"), 720 ILCS 14/1, *et seq.* by: (1) failing to inform individuals in writing that they will be capturing, collecting, storing, using, and disseminating biometric data (*i.e.*, statutorily-defined biometric identifiers and/or information) prior to doing so; (2) failing to obtain a written release for the capture of biometric data prior to such capture; (3) failing to inform individuals in writing of the specific purpose and length of time for which biometric data is captured; and (4) failing to develop and adhere to a publicly available retention schedule and guidelines for permanently destroying biometric data.

2.      The Court grants final approval of the settlement memorialized in the Class Action Settlement Agreement ("Settlement Agreement") and filed with the Court as Amended Exhibit 1 to Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement.

3.      The Court finds that the settlement is fair, reasonable and adequate, and in the best interests of the Class Members.  The Court finds that: (a) the strength of Plaintiff's case on the merits weighed against Defendants' defenses, and the complexity, length and expense of further litigation, support approval of the settlement; (b) the Settlement Amount of $164,400.00 as set forth in the Settlement Agreement is a fair, reasonable and adequate settlement of the claims; (c) the settlement was reached pursuant to arm's-length negotiations between the Parties; (d) the support for the settlement expressed by Class Counsel and counsel for the settling Defendants Conservation Technology of Illinois, LLC, and Leviton Manufacturing Co., Inc., all of whom have significant experience representing parties in complex class actions, weighs in favor of approval of the settlement; (e) the absence of any objections to the settlement by Class Members supports approval of the settlement; and (f) the litigation has progressed to a stage where the Court and the Parties could evaluate the merits of the case, potential damages, and the probable course of future litigation, and thus warrants approval of the settlement.

4.      The Court approves the settlement as a final, fair, reasonable, adequate, and binding release of the claims of the Named Plaintiff and the Class Members as provided in the Settlement Agreement.

5.      The Notice of Proposed Settlement of Class and Collective Action Lawsuit ("Class Notice") and related materials (collectively, "Notice Materials"), sent to the Class Members by the Settlement Administrator via first class mail and email adequately informed the Class Members of the terms of the Settlement Agreement, their estimated recovery if the settlement was approved,

3

their right to request exclusion from the settlement and pursue their own remedies, and their opportunity to file written objections and appear and be heard at the Final Approval Hearing.

6. Rust Consulting ("Rust") is administering the settlement pursuant to the Settlement Agreement, with the assistance of Class Counsel and Defendants' counsel. Rust shall make a Settlement Payment to each member of the Settlement Class who did not timely opt out of the settlement, as well as to the Named Plaintiff, in accordance with the provisions of the Settlement Agreement.

7. The Court approves inclusion of self-identifying Class Member Alaine Krakowski in the Class. Ms. Krakowski will take the place of the single Class Member that excluded themselves, and each participating Class Member will receive an equal 1/137 share of the Settlement Fund, less Administrative Expenses, attorneys' fees and costs, and the Service Award to the Named Plaintiff. Thus, Alaine Krakowski is deemed a Settlement Class Member within the meaning of the Settlement Agreement. As such, upon the entry of this Order, she will release the Released Claims against the Releasees like the other Releasors in the Action.

8. This Court hereby dismisses the case in its entirety with prejudice, without awarding costs to the Parties except as provided in the Settlement Agreement, and approves the settlement and releases set forth in the Settlement Agreement. The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of the Settlement Agreement, to the extent permitted by law.

        9.      The Clerk is directed to enter judgment consistent with this Order.

IT IS SO ORDERED.

Date: _____, 2020                  _____

                                                 Honorable Eve M. Reilly



Judge Eve M. Reilly
AUG 14 2020
Circuit Court-2122

# EXHIBIT A-13

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 6.3.3
### Eastern Division

Adebisi Bello

                    Plaintiff,

v.                                  Case No.: 1:18−cv−08196
                                     Honorable Matthew F. Kennelly

The Parc at Joliet, LLC.

                    Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Tuesday, August 18, 2020:

      MINUTE entry before the Honorable Jeffrey Cole:Settlement conference held on 8/18/20. The case is settled. I would be remiss if I failed to note not only the extremely capable written presentations on behalf of the parties, but also to note the cooperative and collegial efforts of all counsel in the case. The plaintiff was represented by Ryan Stephan and Haley Jenkins of Stephan Zouras LLP in Chicago. The defendant was represented by Jason Kim and David Weldon of Neal, Gerber & Eisenberg in Chicago. They displayed an extraordinary measure of excellence and courtesy that is unfortunately all too rare in today's fractious and overly competitive atmosphere. They brought conspicuous skills to this case, and their conduct is proof that lawyers can act civilly and courteously in their dealings with each other without sacrificing in the slightest the obligations they owe to their clients. In addition to the exemplary conduct of the lawyers, those who attended the conference and were the ultimate decision makers likewise deserve special recognition. All matters relating to the referral of this case having been completed, the referral is closed and the case returned to Judge Kennelly. Mailed notice (yt)

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.