UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE TIKTOK, INC., CONSUMER PRIVACY LITIGATION<br><br>This Document Relates To All Cases | MDL No. 2948<br>Master Docket No. 20-cv-4699<br><br>Hon. John Z. Lee, presiding<br><br>Hon. Magistrate Sunil R. Harjani, referral |

**TINA WOLFSON'S APPLICATION FOR APPOINTMENT TO THE PLAINTIFFS' STEERING COMMITTEE AND NOMINATION OF KATRINA CARROLL AND JONATHAN JAGHER AS CO-LEAD INTERIM CLASS COUNSEL**

In accordance with Federal Rule of Civil Procedure 23(g) and the Court's CMO 1 and CMO 2, Plaintiff S.A., a minor, by and through his mother and guardian, Maritza A., hereby requests entry of an order appointing Tina Wolfson of Ahdoot & Wolfson, PC ("AW") to the Plaintiffs' Steering Committee ("PSC"). Plaintiff S.A. and his counsel nominate and wholeheartedly support the appointment of Katrina Carroll of Carlson Lynch LLP and Jonathan Jagher of Freed Kanner London & Millen LLC as Co-Lead Interim Class Counsel and the other attorneys they nominate to the PSC. Plaintiff S.A. and his counsel also fully support the Settlement reached by the Settling Plaintiffs.[1]

**I.     MS. WOLFSON HAS ALREADY INVESTED SIGNIFICANT RESOURCES TO PROSECUTE THE CLASS CLAIMS AND HAS WORKED COOPERATIVELY WITH ALL PLAINTIFFS' COUNSEL AND DEFENSE COUNSEL, AND SHE WILL CONTINUE TO DO SO.**

Ms. Wolfson and AW have invested significant resources investigating the potential BIPA[2] and numerous other privacy claims prior to filing Plaintiff S.A.'s case, including reviewing voluminous publicly available information and in-depth consultation with a technical expert. (Wolfson Decl. ¶ 4.)[3] After filing, Ms. Wolfson met and conferred on numerous occasions with plaintiffs' counsel whose

---

[1] As defined in the proposed case management schedule filed August 21, 2020. *See* Dkt. 6.
[2] Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.*
[3] Declaration of Tina Wolfson, filed concurrently herewith.

1

cases were pending in California and Illinois courts to explore coordination, both in one-on-one calls and in larger group conference calls. During these discussions with various plaintiffs' attorneys, the vast majority of whom she knows from previous work during her 26-year career as a plaintiffs' class action attorney, Ms. Wolfson was able to voice her opinions frankly and respectfully to all counsel, and she attempted to seek common ground where possible. (*Id.*)

When, on June 3, 2020, Ms. Carroll and Mr. Jagher disclosed that defense counsel had reached out to schedule a mediation with the Honorable Layn Phillips (Ret.), and members of the Litigating Plaintiffs' counsel[4] refused to attend citing efficiency and the specter of a reverse auction, Ms. Wolfson carefully considered all the facts and all counsel's positions to decide on a course of action that was in the best interests of the class. She ultimately concluded that it was in the best interests of the class to seize the opportunity to mediate and agreed to attend on August 13, 2020. (*Id.* ¶ 5.)

Since then, Ms. Wolfson has worked tirelessly under the inclusive, cooperative, and efficient leadership of Ms. Carroll and Mr. Jagher to prepare for and attend the mediation with Judge Phillips, and to document and prepare the Settlement for the Court's preliminary approval. Furthermore, she has continued to meet and confer with members of the Litigating Plaintiffs' counsel to explore ways to reach consensus and to convince Defendant to disclose the terms to all counsel. Those efforts are ongoing. Ms. Wolfson continues to believe that the Settlement is in the best interests of the class and urges the Court to review its terms at the earliest opportunity and prior to appointing lead counsel, so that it can make the most informed decisions going forward to preserve the Settlement should it agree that the Settlement is fair, adequate, and reasonable. (*Id.* ¶¶ 5-10.)

At all times during this litigation, Ms. Wolfson thoughtfully considered all plaintiffs' counsel's positions and chose the course that she believed benefited the class, whether or not it served her best

---

[4] This self-identifying term signifies counsel representing the plaintiffs in the August 23, 2020 status report. *See* Dkt. 7. This term is misleading because the Settling Plaintiffs' counsel are prepared to and will vigorously litigate this case if the Settlement is not approved.

interest. For example, although Ms. Wolfson had made arrangements to attend the August 13 mediation in Palo Alto in person, she followed Ms. Carroll's and Mr. Jagher's instructions to cancel those plans at the eleventh hour and attend virtually so as to leave an available spot for counsel from Byrd Marella and Hausfeld. She agreed that consensus was preferable if a settlement was to be reached, even though she had disagreed with many of the Litigating Plaintiffs' litigation tactics. As one of the plaintiff delegates at the mediation, Ms. Wolfson worked tirelessly and cooperatively with the other delegates, some of whom she knew and some of whom she worked with for the first time, during the fast-paced yet thorough mediation preparation, the lengthy and intense mediation, and the many time-sensitive tasks that needed to be completed since then to prepare the Settlement for preliminary approval. She has continued to keep an open dialogue with most counsel who filed in the Northern District of California, including Litigating Plaintiffs' counsel, to seek opportunities for consensus. (*Id.* ¶¶ 5-11.)

Ms. Wolfson is acutely aware of the extensive resources still required to steward this case to a successful conclusion, whether by the proposed Settlement or through protracted litigation, should it become necessary. AW has never used third party funding for any case and has never failed to meet its assessments. AW has the necessary resources required to litigate this action effectively, and Ms. Wolfson is dedicated to doing so. (*Id.* ¶ 12.)

**II. MS. WOLFSON HAS EXTENSIVE EXPERIENCE LITIGATING FACIAL RECOGNITION BIPA CASES AND SHAPING IMPORTANT PRECEDENT.**

Because BIPA applies to Illinois consumers only, offers unique statutory remedies for the collection and storing of biometric information, and presents unique issues for adjudication, it is paramount that counsel with knowledge of BIPA and experience in facial recognition BIPA litigation be appointed to leadership positions to protect the interests of this class. Ms. Wolfson has extensive experience litigating BIPA cases involving facial recognition technology. Her zealous advocacy has

resulted in multiple important decisions on issues of first impression concerning the construction and application of BIPA to facial recognition. In addition to showcasing her familiarity with the many issues that are likely to arise in this litigation, a brief history of these cases illustrates Ms. Wolfson's commitment and staying power to litigate privacy cases involving issues of first impression.

### A. Google Photos

Ms. Wolfson has been litigating BIPA claims against Google since 2016, alleging that Google's facial recognition software created, collected, and stored the face templates—highly detailed scans of face geometry—of millions of users and non-users of Google's cloud-based Google Photos service.

In the course of that ongoing litigation, Ms. Wolfson successfully defended a motion to dismiss based on arguments that are likely to be litigated in this case, including whether application of BIPA to a defendant doing business nationwide would constitute an impermissible extraterritorial enforcement of a state statute and would also violate the Dormant Commerce Clause of the U.S. Constitution. The order, published as *Rivera v. Google Inc.,* 238 F. Supp. 3d 1088 (N.D. Ill. 2017), was the first decision in the country holding that neither the presumption against extraterritoriality nor the Dormant Commerce Clause is violated by applying BIPA to prohibit the collection of scans of face geometry from photographs of Illinois residents uploaded from devices assigned Illinois-based IP addresses. (The order also confirmed that BIPA's exclusion relating to photographs does not apply to scans of faces depicted in photos—the second such ruling in any BIPA case.) (Wolfson Decl. ¶ 13.)

Ms. Wolfson and her team conducted significant written discovery, including motions to compel and other ESI-related motions, after extensive negotiations over an ESI protocol. In addition to defending three plaintiff depositions, Ms. Wolfson's team deposed senior engineers at Google, extensively exploring how facial recognition technology operates, creation of face models, face templates, and grouping of images by face, the use of geolocation and other metadata taken from uploaded images to determine the location where a photo was uploaded and taken, Google's ability to

4

comply with the requirements of BIPA including its ability to refrain from applying its facial recognition technology to photos uploaded or taken in Illinois, and Google's efforts (if any) to obtain the consent of Illinois residents, among other subjects. All of these issues are similar to those at the core of this litigation and Ms. Wolfson has the roadmap to effective discovery. She has used this extensive knowledge in helping evaluate the BIPA claims here and negotiate the Settlement terms and, if necessary, will do so to litigate the claims, should the Settlement not become final for any reason. (*Id.* ¶ 14.)

Ms. Wolfson also briefed the opposition to Google's motion for summary judgment, raising an Article III standing challenge on the ground that the plaintiffs had not suffered concrete injuries and were not "aggrieved," and then appealed Judge Chang's order granting that motion. *Rivera v. Google, Inc.*, 366 F. Supp. 3d 998 (N.D. Ill. 2018) (the "*Rivera* MSJ Order").[5] Because Judge Chang had dismissed the *Rivera* Action without prejudice based on the Article III standing doctrine, which is not applicable to state court filings in Illinois, Ms. Wolfson filed additional cases in the Illinois Circuit Court of Cook County, as well as in the Northern District of California. (Wolfson Decl. ¶ 15.)

In addition to extensive litigation efforts, Ms. Wolfson has been in ongoing settlement discussions with Google since May 2018, with mediations before Judge Phillips and then Seventh Circuit Mediator, Jillisa Brittan. After two years of in-depth negotiations, Ms. Wolfson has become

---

[5] When Judge Chang issued his summary judgment opinion, he had neither the benefit of the Ninth Circuit's subsequent holding in *Patel v. Facebook*, 932 F.3d 1264 (9th Cir. 2019) affirming Judge Donato's decisions, nor of the Illinois' Supreme Court's subsequent holding in *Rosenbach v. Six Flags Entertainment Corporation*, 2019 IL 123186, 129 N.E.3d 1197, 1204 (2019), which definitively speaks to the Illinois "legislature's intent" underlying BIPA (an issue that, as Judge Chang observed, is critical, given that the Supreme Court "does instruct courts to respect legislative judgments in identifying intangible harms" for purposes of Article III standing). *See Rivera* MSJ Order, 366 F. Supp. 3d at 1009 (citing *Spokeo v. Robins*, 136 S. Ct. 1540 (2016)). The Illinois Supreme Court issued its *Rosenbach* decision a month after Judge Chang issued the *Rivera* MSJ Order and, seven months later, the Ninth Circuit issued its decision unanimously affirming Judge Donato's orders finding Article III standing and granting class certification in the *Facebook* BIPA action. *See generally Patel*, 932 F.3d at 1276-77. The Ninth Circuit denied *en banc* review, and the U.S. Supreme Court denied Facebook's petition for certiorari. *Facebook, Inc. v. Patel*, No. 19-706, 2020 WL 283288 (9th Cir. Jan. 21, 2020). Recently, in May of this year, the Seventh Circuit ruled that plaintiffs have standing to enforce BIPA's informed consent requirements in federal court under BIPA Section 15(b). *Bryant v. Compass Group USA, Inc.*, 958 F.3d 617, 626-27 (7th Cir. 2020).

intimately familiar with the myriad of issues that will come up in the instant case, both on the litigation and settlement front. (*Id.* ¶ 16.)

### B. Vimeo

Ms. Wolfson also is prosecuting a BIPA class action against Vimeo alleging that it has created, collected, and stored face templates on its cloud-based video editing service Magisto. *Acaley v. Vimeo, Inc.*, No. 1:19-cv-07164 (N.D. Ill.). She successfully opposed a motion to compel arbitration and will be defending the decision (Dkt. 41) on Vimeo's appeal to the Seventh Circuit. (Wolfson Decl. ¶ 17.)

### C. Shutterfly

In prosecuting class actions against Shutterfly based on BIPA violations connected to its online photo printing services, Ms. Wolfson's work resulted in the first decision holding that the nonconsensual collection of scans of face geometry invades the victim's privacy and thus constitutes a concrete and particularized injury sufficient to confer Article III standing. *Monroy v. Shutterfly, Inc.*, No. 16-cv-10984, 2017 WL 4099846, at *8 n.5 (N.D. Ill. Sept. 15, 2017). In *Miracle-Pond v. Shutterfly, Inc.*, No. 1:19-cv-4722 (N.D. Ill.), after the court granted Shutterfly's motion to compel arbitration, Ms. Wolfson has been serving individual arbitration demands on behalf of dozens of individuals. (Wolfson Decl. ¶ 18.)

### III. MS. WOLFSON HAS EXTENSIVE EXPERIENCE IN LEADING OTHER PRIVACY-RELATED CONSUMER CLASS ACTIONS AND CLASS ACTIONS IN GENERAL.

Ms. Wolfson is one of the few female founding members of a national class action firm and has been appointed to numerous leadership positions during her 26-year career as a plaintiffs' class action litigator. AW is renowned for the high quality of its work product, its zealous advocacy, and its staunch commitment to ethics and collegial cooperation with co-counsel and opposing counsel, and the firm has conferred billions of dollars in relief to plaintiffs and affecting meaningful change in corporate behavior. In the late 1990's, AW was among the first law firms to successfully litigate the

6

privacy rights of millions of consumers against major banks and credit card companies based on the compilation and sale of detailed personal financial data to third party telemarketers without the consumers' consent. While such practices later became the subject of Gramm-Leach-Bliley Act regulation, at the time AW prosecuted these cases, such practices were hidden from public scrutiny.

As set forth in her attached *curriculum vitae*, Ms. Wolfson's efforts have shaped privacy law precedent. *See, e.g.*, *Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688 (7th Cir. 2015); *U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42 (D.C. Cir. 2019). She has achieved numerous successes in leading consolidated privacy class actions (*see, e.g.*, *In re Experian Data Breach Litig.*; *In re Premera Blue Cross Customer Data Sec. Breach Litig.*; *In re Google Location History Litig.*, ), as well as other types of class actions (*see, e.g.*, *In re Apple Inc. Device Performance Litig.*, ($310-$500 million settlement); *Eck v. City of Los Angeles*, ($295 million class settlement); *Alvarez v. Sirius XM Radio Inc.*, ($96 million settlement)). She has more than the requisite experience to lead this important case as a member of the PSC.

### IV. MS. CARROLL AND MR. JAGHER ARE BEST QUALIFIED TO LEAD THIS MDL.

Plaintiff S.A. and Ms. Wolfson nominate and wholeheartedly support the appointment of Ms. Carroll and Mr. Jagher as Co-Lead Interim Class Counsel. During their work on this case, they have proven to be two of the most knowledgeable, diligent, inclusive, efficient, and effective leaders that Ms. Wolfson has encountered in her long career. They have made every decision with the best interests of the class in mind, despite *ad hominem* attacks and other misguided litigation tactics from members of the Litigating Plaintiffs' team. They have spent countless hours coordinating other counsel and achieving an excellent Settlement for the class under extremely trying circumstance on all fronts, without any guarantee that their work would eventually be remunerated. Ms. Carroll and Mr. Jagher are model leaders and more than meet every requirement under Rule 23(g) and the criteria set forth by the Court in CMO 1 and 2. (Wolfson Decl. ¶ 19.)

## V. CONCLUSION

For all the reasons discussed above, Plaintiff S.A. respectfully requests that the Court appoint Tina Wolfson to the PSC, and Katrina Carroll and Jonathan Jagher as Co-Lead Interim Class Counsel.

Respectfully submitted,

Dated:  September 8, 2020

*/s/ Tina Wolfson*
Tina Wolfson
*twolfson@ahdootwolfson.com*
Theodore W. Maya
*tmaya@ahdootwolfson.com*
Bradley K. King
*bking@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
10728 Lindbrook Drive
Los Angeles, CA 90024
Tel: (310) 474-9111
Fax: (310) 474-8585

*Counsel for Plaintiff S.A. and the Proposed Class*