**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE TIKTOK, INC., CONSUMER PRIVACY LITIGATION<br><br><br>This Document Relates To All Cases | MDL No. 2948<br>Master Docket No. 20-cv-4699<br><br>Hon. John Z. Lee, presiding<br><br>Hon. Magistrate Sunil R. Harjani, referral |

**DECLARATION OF TINA WOLFSON IN SUPPORT OF HER APPLICATION FOR APPOINTMENT TO THE PLAINTIFFS' STEERING COMMITTEE**

I, Tina Wolfson, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. I am a member in good standing of the California and New York State Bars, as well as the District of Columbia Bar, and a founding partner in the law firm of Ahdoot & Wolfson, PC ("AW"), counsel for Plaintiff S.A., a minor, by and through his mother and guardian, Maritza A., in this action. I have personal knowledge of the matters set forth herein and could and would testify competently thereto if called upon to do so.

2. I attest that the statements about my extensive relevant experience and expertise serving on leadership teams in complex class action cases contained in my application to be appointed as a member of the Plaintiffs' Steering Committee ("PSC") in this action (the "Motion") are true and accurate.

3. Attached hereto as **Exhibit 1** is a true and correct copy of my *curriculum vitae*, which demonstrates my and my firm's experience and qualifications for appointment to the PSC in this action. AW has extensive experience litigating BIPA cases involving facial recognition technology and is familiar with the many issues that are likely to arise in this litigation. I attest that the statements in my CV are true and correct.

1

4. AW has already invested significant resources investigating the potential BIPA and numerous other potential privacy claims prior to filing the case, including reviewing voluminous publicly available information and in-depth consultation with a technical forensic expert. Since filing the *S.A.* case, I have met and conferred on numerous occasions with plaintiffs' counsel whose cases were pending in California and Illinois courts to explore coordination, both in one-on-one calls and in larger group conference calls. During these discussions with various plaintiffs' attorneys, the vast majority of whom I know from previous work during my 26-year career as a plaintiffs' class action attorney, I was able to voice my opinions frankly and respectfully to all counsel, and I attempted to seek common ground where possible.

5. The cases pending in the Northern District of Illinois were consolidated and this Court appointed Katrina Carroll of Carlson Lynch as Interim Lead Counsel during the pendency of the JPML proceedings on May 29, 2020. *E.R. v. TikTok Inc., et al*, No. 20-cv-2810 (N.D. Ill.) (Dkt. 18). On June 3, 2020, Ms. Carroll and Jonathan Jagher reached out to all plaintiffs' counsel stating that Defendants expressed an interest in mediation and that they and other counsel secured the mediation date of August 13, 2020, with the Hon. Layn Phillips (Ret.), and inviting plaintiffs' counsel to the mediation. On June 8, 2020, after meeting and conferring with many plaintiffs' counsel, and carefully considering all the positions expressed by them, I responded that I would attend the mediation.

6. I carefully considered but ultimately rejected some of the Litigating Plaintiffs' (as defined in my concurrently filed application, at 2 n.4) concerns that there might be a reverse auction if mediation proceeded prior to the appointment of lead counsel in the MDL. First, through the meet and confer process, I ascertained that none of the members of the Litigating Plaintiffs' counsel had any ongoing settlement negotiations. This factor weighed against the possibility of a reverse auction, which occurs when defendants pit one group of plaintiffs' counsel against another during simultaneous or proximate negotiations in a race to see who will agree to take the least.

7. Second, Ms. Carroll and Mr. Jagher were transparent and invited all counsel to attend the mediation. Thus, I was perplexed: if members of the Litigating Plaintiffs' counsel were concerned about a reverse auction, why would they not attend the mediation to make sure a reverse auction did not occur? There appeared to be an inconsistency there.

8. Furthermore, the fact that the mediation would be presided over by Judge Phillips, one of the most revered and experienced class action mediators, gave me assurance that nothing improper would occur during the mediation.

9. I therefore disagreed with the Litigating Plaintiffs' accusations of a reverse auction. Later, when Litigating Plaintiffs reversed course after the JPML ordered the transfer of cases to the Northern District of Illinois and insisted on attending the mediation, it appeared that their purported fear of a reverse auction had not been genuine to begin with. After all, no MDL lead counsel had yet been appointed, and the only change in circumstances was where the cases would end up upon JPML transfer.

10. I also ended up disagreeing with Litigating Plaintiffs' concern of efficiency, another reason they cited in refusing to attend mediation. While it may be more efficient under normal circumstances to wait until MDL lead counsel is appointed, delay could result in drastically changed circumstances and the opportunity for resolution could evaporate. While a delay of a month or two makes no difference in mediation positions in typical circumstances, the particular circumstances surrounding TikTok's operations militated against losing an opportunity to promptly mediate. I concluded that it was in the best interests of the class to vigorously explore all avenues of a prompt and just resolution, and even if mediation did not result in settlement, plaintiffs would learn a lot about Defendants' position. Moreover, Ms. Carroll's and Mr. Jagher's approach to having only five delegates attend the mediation in addition to themselves proved to be extremely efficient and effective.

11. I expended many hours preparing for the mediation with other plaintiffs' counsel and defense counsel, and the expert consultant I retained. Ultimately, I attended and helped successfully negotiate a Settlement at the mediation with Judge Phillips on August 13, 2020. I have worked tirelessly and cooperatively with the other delegates, some of whom I knew and some of whom I worked with for the first time, during the fast-paced yet thorough mediation preparation, the lengthy and intense mediation, and the many time-sensitive tasks that needed to be completed since then to prepare the Settlement for preliminary approval. I have continued to keep an open dialogue with most counsel who filed in the Northern District of California, including Litigating Plaintiffs' counsel, to seek opportunities for consensus.

12. I am acutely aware of the extensive resources still required to steward this case to a successful conclusion, whether by the proposed Settlement or through protracted litigation, should it become necessary. AW has never used third party funding for any case and has never failed to meet its assessments. AW has the necessary resources required to litigate this action effectively, and Ms. Wolfson is dedicated to doing so.

13. I have extensive experience litigating facial recognition BIPA cases and shaping important precedent. I have been litigating BIPA claims against Google since 2016, alleging that Google's facial recognition software created, collected, and stored face templates—highly detailed scans of face geometry—of millions of users and non-users of Google's cloud-based Google Photos service. In the course of that ongoing litigation, I successfully defended a motion to dismiss based on arguments that are likely to be litigated in this case, including whether application of BIPA to a defendant doing business nationwide would constitute an impermissible extraterritorial enforcement of a state statute and would also violate the Dormant Commerce Clause of the U.S. Constitution. The order, published as *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088 (N.D. Ill. 2017), was the first decision in the country holding that neither the presumption against extraterritoriality nor the Dormant

4

Commerce Clause is violated by applying BIPA to prohibit the collection of scans of face geometry from photographs of Illinois residents uploaded from devices assigned Illinois-based IP addresses. The order also confirmed that BIPA's exclusion relating to photographs does not apply to scans of faces depicted in photos—the second such ruling in any BIPA case.

14. AW and I conducted significant written discovery, including motions to compel and other ESI-related motions, after extensive negotiations over an ESI protocol. In addition to defending three plaintiff depositions, our team deposed senior engineers at Google, extensively exploring how facial recognition technology operates, creation of face models, face templates, and grouping of images by face, the use of geolocation and other metadata taken from uploaded images to determine the location where a photo was uploaded and taken, Google's ability to comply with the requirements of BIPA including its ability to refrain from applying its facial recognition technology to photos uploaded or taken in Illinois, and Google's efforts (if any) to obtain the consent of Illinois residents, among other subjects. All of these issues are similar to those at the core of this litigation and I have the roadmap to effective discovery. I have used this extensive knowledge in helping evaluate the BIPA claims here and negotiate the Settlement terms and, if necessary, will do so to litigate the claims, should the Settlement not become final for any reason.

15. I also briefed the opposition to Google's motion for summary judgment, raising an Article III standing challenge on the ground that the plaintiffs had not suffered concrete injuries and were not "aggrieved," and then appealed Judge Chang's order granting that motion. *Rivera v. Google, Inc.*, 366 F. Supp. 3d 998 (N.D. Ill. 2018) (the "*Rivera* MSJ Order"). Because Judge Chang had dismissed the *Rivera* Action without prejudice based on the Article III standing doctrine, which is not applicable to state court filings in Illinois, I filed additional cases in the Illinois Circuit Court of Cook County, as well as in the Northern District of California.

16. In addition to extensive litigation efforts, I have been in ongoing settlement discussions with Google since May 2018, with mediations before Judge Phillips and the Circuit Mediator for the U.S. Court of Appeals for the Seventh Circuit, Jillisa Brittan. During the two years of these in-depth negotiations, I have become intimately familiar with the myriad of issues that will come up in this case, both on the litigation and settlement front.

17. AW is also prosecuting a BIPA class action against Vimeo alleging that it has created, collected and stored thousands of face templates in conjunction with its cloud-based video editing service Magisto. *Acaley v. Vimeo*, Inc., No. 1:19-cv-07164 (N.D. Ill.). AW recently successfully opposed a motion to compel arbitration, and will be defending the decision (Dkt. 41) on Vimeo's appeal to the Seventh Circuit.

18. In prosecuting class actions against Shutterfly based on BIPA violations connected to its online photo printing services, AW's work resulted in the first decision holding that the nonconsensual collection of scans of face geometry invades the victim's privacy and thus constitutes a concrete and particularized injury sufficient to confer Article III standing. *Monroy v. Shutterfly, Inc.*, No. 16-cv-10984, 2017 WL 4099846, at *8 n.5 (N.D. Ill. Sept. 15, 2017). In *Miracle-Pond v. Shutterfly, Inc.*, No. 1:19-cv-4722 (N.D. Ill.), after the court granted Shutterfly's motion to compel arbitration, AW began serving individual arbitration demands on behalf of dozens of individuals and continues to serve more.

19. On behalf of Plaintiff S.A. and in my best judgment, I nominate and wholeheartedly support the appointment of Ms. Carroll and Mr. Jagher as Co-Lead Interim Class Counsel. During their work on this case, they have proven to be two of the most knowledgeable, diligent, inclusive, efficient, and effective leaders that I have encountered in my long career. They have made every decision with the best interests of the class in mind, despite *ad hominem* attacks and other misguided litigation tactics from members of the Litigating Plaintiffs' team. They have spent countless hours coordinating other counsel

6

and achieving an excellent Settlement for the class under extremely trying circumstance on all fronts, without any guarantee that their work would eventually be remunerated. Ms. Carroll and Mr. Jagher are model leaders and more than meet every requirement under Rule 23(g) and the criteria set forth by the Court in CMO 1 and 2.

    I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 8th day of September, 2020 in Los Angeles, California.

_____
Tina Wolfson

# EXHIBIT 1



# AHDOOT & WOLFSON, PC
## ATTORNEYS



### Tina Wolfson, Founding Partner

Ms. Wolfson was born in the former Soviet Union and her family escaped when she was eleven years old. Seven years after arriving to the United States as an indigent political refugee, without speaking any English, she attended Columbia College and then Harvard Law School (class of 1994), graduating both *cum laude*.

Ms. Wolfson began her civil litigation career at the Los Angeles office of Morrison & Foerster, LLP, where she defended major corporations in complex actions and represented indigent individuals in immigration and deportation trials as part of the firm's *pro bono* practice. She then gained further invaluable litigation and trial experience at a boutique firm, focusing on representing plaintiffs on a contingency basis in civil rights and employee rights cases.

In March 1998, Ms. Wolfson and Robert Ahdoot founded Ahdoot & Wolfson, PC ("AW"), now a nationally recognized law firm that specializes in complex and class action litigation, with a focus on privacy rights, consumer fraud, anti-competitive business practices, employee rights, defective products, civil rights, and taxpayer rights. The attorneys at AW are experienced litigators who have often been appointed by state and federal courts as lead class counsel, including in multidistrict litigation. In over two decades of its successful existence, AW has successfully vindicated the rights of millions of class members in protracted, complex litigation, conferring billions of dollars to the victims, and affecting real change in corporate behavior.

**Privacy Class Actions**

Ms. Wolfson has been prosecuting cutting edge privacy cases since the late 1990s, when she successfully advocated for the privacy rights of millions of consumers against major financial institutions based on the unlawful compilation and sale of detailed personal financial data to third-party telemarketers without consumers' consent, in San Francisco Superior Court (Hon. Richard R. Kramer, Ret.). While such practices later became the subject of Gramm-Leach-Bliley Act regulation, they were novel and hidden from public scrutiny at the time Ms. Wolfson was prosecuting them. Her work shed light on how corporations and institutions collect, store, and monetize mass data, leading to governmental regulation. Ms. Wolfson has been at the forefront of privacy-related litigation since then.

As co-lead counsel in the *Experian Data Breach Litigation*, No. 8:15-cv-01592-AG-DFM (C.D. Cal.) (Hon. Andrew J. Guilford), which affected nearly 15 million class members, Ms. Wolfson achieved a

settlement conservatively valued at over $150 million. Each class member is entitled to two years of additional premium credit monitoring and ID theft insurance (to begin whenever their current credit monitoring product, if any, expires) plus monetary relief (in the form of either documented losses or a default payment for non-documented claims). Experian is also providing robust injunctive relief. Judge Guilford praised counsel's efforts and efficiency in achieving the settlement, commenting "You folks have truly done a great job, both sides. I commend you."

As an invaluable member of a five-firm Plaintiffs' Steering Committee ("PSC") in the *Premera Blue Cross Customer Data Sec. Breach Litigation*, No. 3:15-cv-2633-SI (D. Or.) (Hon. Michael H. Simon), arising from a data breach disclosing the sensitive personal and medical information of 11 million Premera Blue Cross members, Ms. Wolfson was instrumental in litigating the case through class certification and achieving a nationwide class settlement valued at $74 million.

In *The Home Depot, Inc., Customer Data Sec. Breach Litigation*, No. 1:14-md-02583-TWT (N D. Ga.) (Hon. Thomas W. Thrash Jr.), Ms. Wolfson served on the consumer PSC and was instrumental in achieving a $29 million settlement fund and robust injunctive relief for the consumer class. As co-lead counsel in *Gordon v. Chipotle Mexican Grill, Inc.*, No. 1:17-cv-01415-CMA-MLC (D. Colo.) (Hon. Christine M. Arguello), Ms. Wolfson secured a settlement for the nationwide class that provides for up to $250 in claimed damages or $10,000 in extraordinary damages.

She currently serves on the PSC in *Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litigation*, No. 2:19-md-2904-MCA-MAH (D N.J.) (Hon. Madeline Cox Arleo), a class action arising out of a medical data breach that disclosed the personal and financial information of over 20 million patients, as well as many other data breach class actions.

Ms. Wolfson's efforts have shaped privacy law precedent. As lead counsel in *Remijas v. Neiman Marcus Group, LLC*, No. 14-cv-1735 (N.D. Ill.) (Hon. Sharon Johnson Coleman), Ms. Wolfson successfully appealed the trial court's order granting a motion to dismiss based on lack of Article III standing. The Seventh Circuit's groundbreaking opinion, now cited in every standing brief, was the first appellate decision to consider the issue of Article III standing in data breach cases in light of the Supreme Court's decision in *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013) and concluded that data breach victims have standing to pursue claims based on the increased risk of identity theft and fraud, even before that theft or fraud materializes in out-of-pocket damages. *Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688 (7th Cir. 2015) (reversed and remanded).

Similarly, in the *U.S. Office of Personnel Management Data Security Breach Litigation*, No. 1:15-mc-1394-ABJ (D D.C.) (Hon. Amy Berman Jackson), Ms. Wolfson briefed and argued, in part, the granted motions to dismiss based on standing, and briefed in part the successful appeal to the D.C. Circuit.

Recently, Ms. Wolfson was selected to serve as interim co-lead class counsel in the *ZOOM Video Communications, Inc. Privacy Litigation*, No. 5:20-cv-02155-LHK (N D. Cal.) (Hon. Lucy H. Koh), a class action alleging Zoom's failure to implement adequate security protocols for its video-conferencing platform that breached millions of consumers' privacy, fell well short of its promises, and diminished the value of the products and services it provided.

Ms. Wolfson also serves as co-lead interim class counsel in the *Google Location History Litigation*, No. 5:18-cv-5062-EJD (N.D. Cal.) (Hon. Edward J. Davila), which alleged Google's unlawful collection and use of mobile device location information on all Android and iPhone devices. Plaintiffs filed a

motion for reconsideration of the Court's dismissal order in light of the Ninth Circuit's opinion in the *Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020).

Ms. Wolfson and AW also are serving as plaintiffs' counsel in consumer privacy rights cases involving the right to control the collection and use of biometric information, successfully opposing motions to dismiss based on lack of standing. *See, e.g.*, *Rivera v. Google LLC*, No. 19-1182 (7th Cir.) (order granting summary judgment currently on appeal to the Seventh Circuit); *Azzano v. Google LLC*, No. 2019-CH-11153 (Ill. Cir. Ct.) (Hon. Anna M. Loftus); *Molander v. Google LLC*, No. 5:20-cv-00918-SVK (N.D. Cal.) (Hon. Susan van Keulen); *Miracle-Pond v. Shutterfly, Inc.*, No. 1:19-cv-4722 (N.D. Ill.) (Hon. Mary M. Rowland); *Acaley v. Vimeo, Inc.*, No. 1:19-cv-7164 (N.D. Ill.) (Hon. Matthew F. Kennelly) (order denying motion to compel arbitration currently on appeal to the Seventh Circuit).

In addition, Ms. Wolfson and AW have served and are serving as plaintiffs' counsel in class actions enforcing consumer rights under the Telephone Consumer Protection Act of 1991 ("TCPA"), such as *Chimeno-Buzzi v. Hollister Co.*, No. 1:14-cv-23120-MGC (S.D. Fla.) (Hon. Marcia G. Cooke) (class counsel in $10 million nationwide settlement) and *Melito v. American Eagle Outfitters, Inc.*, No. 1:14-cv-02440-VEC (S.D.N.Y.) (Hon. Valerie E. Caproni) ($14.5 million nationwide settlement).

### Other Notable Class Actions

In *Eck v. City of Los Angeles*, No. BC577028 (Cal. Super. Ct.) (Hon. Ann I. Jones), AW achieved a $295 million class settlement in a case alleging that an 8% surcharge on Los Angeles electricity rates was an illegal tax. Final settlement approval was affirmed on appeal in October 2019.

In *Kirby v. McAfee, Inc.*, No. 5:14-cv-02475-EJD (N.D. Cal.) (Hon. Edward J. Davila), a case arising from McAfee's auto renewal and discount practices, AW and co-counsel achieved a settlement that made $80 million available to the class and required McAfee to notify customers regarding auto-renewals at an undiscounted subscription price and change its policy regarding the past pricing it lists as a reference to any current discount.

In *Lavinsky v. City of Los Angeles*, No. BC542245 (Cal. Super. Ct.) (Hon. Ann I. Jones), a class action alleging the city unlawfully overcharged residents for utility taxes, Ms. Wolfson and AW certified the plaintiff class in litigation and then achieved a $51 million class settlement.

As co-lead counsel in *Berman v. General Motors, LLC*, No. 2:18-cv-14371-RLR (S.D. Fla.) (Hon. Robin L. Rosenberg) (vehicle oil consumption defect class action), AW achieved a $40 million settlement. In *McKnight v. Uber Technologies, Inc.*, No. 4:14-cv-05615-JST (N.D. Cal.) (Hon. Jon S. Tigar), AW achieved a $32.5 million settlement for the passenger plaintiff class alleging that Uber falsely advertised and illegally charged a "safe rides fee."

In *Pantelyat v. Bank of America, N.A.*, No. 1:16-cv-08964-AJN (S.D.N.Y.) (Hon. Alison J. Nathan), a class action arising from allegedly improper overdraft fees, AW, serving as sole class counsel for plaintiffs, achieved a $22 million class settlement, representing approximately 80% of total revenues gleaned by the bank's alleged conduct.

In the *Apple Inc. Device Performance Litigation*, No. 5:18-md-2827-EJD (N.D. Cal.) (Hon. Edward J. Davila), Ms. Wolfson is serving on the Plaintiffs' Executive Committee in a class action arising from Apple's alleged practice of deploying software updates to iPhones that deliberately degraded the devices' performance and battery life. Judge Davila preliminarily approved a class action settlement of

3

$310 million minimum and $500 million maximum.

Ms. Wolfson also serves on the Plaintiffs' Executive Committees in the *Allergan Biocell Textured Breast Implant Products Liability Litigation*, No. 2:19-md-2921-BRM-JAD (D.N.J.) (Hon. Brian R. Martinotti), a class action alleging textured breast implants caused a rare type of lymphoma and in the *ZF-TRW Airbag Control Units Products Liability Litigation*, No. 2:19-ml-2905-JAK-FFM (C D. Cal.) (Hon. John A. Kronstadt), a class action alleging a dangerous defect in car airbag component units.

Ms. Wolfson's work on civil rights class actions include achieving class certification in *Novoa v. The Geo Group, Inc.*, No. 5:17-cv-2514-JGB-SHK (C.D. Cal.) (Hon. Jesus G. Bernal) (challenging private prison's alleged practices of forced labor against immigration detainees) and in *Williams v. City of New York*, No. 1:17-cv-2303-RJD-SM (E.D.N.Y.) (Hon. Raymond J. Dearie) (challenging allegedly unconstitutional prison conditions at Rikers Island and other facilities in New York State).

### Speaking Engagements and Public Service

Ms. Wolfson is considered an expert in her field and is frequently invited to lecture on numerous class action topics across the country, including:

- Class Action Mastery Forum at the University of San Diego School of Law, March 2020 ("Consumer Class Actions" Moderator), featuring Hon. Lucy H. Koh, Hon. Edward M. Chen, and Hon. Fernando M. Olguin.
- Class Action Mastery Forum at the University of San Diego School of Law, January 2019, featuring Hon. Edward M. Chen, Hon. Richard G. Seeborg and Hon. Anthony J. Battaglia.
- Association of Business Trial Lawyers: "Navigating Class Action Settlement Negotiations and Court Approval: A Discussion with the Experts," Los Angeles, May 2017, featuring Hon. Philip S. Gutierrez and Hon. Jay C. Gandhi.
- American Conference Institute: "2nd Cross-Industry and Interdisciplinary Summit on Defending and Managing Complex Class Actions," New York, April 2017: Class Action Mock Settlement Exercise featuring the Hon. Anthony J. Mohr.
- Federal Bar Association: N.D. Cal. Chapter "2016 Class Action Symposium," San Francisco, December 2016 (Co-Chair), featuring Hon. Joseph F. Anderson, Jr. and Hon. Susan Y. Illston.
- Federal Bar Association: "The Future of Class Actions: Cutting Edge Topics in Class Action Litigation," San Francisco, November 2015 (Co-Chair & Faculty), featuring Hon. Jon S. Tigar and Hon. Laurel Beeler.

Ms. Wolfson currently serves as a Ninth Circuit Lawyer Representative for the Central District of California, as Vice President of the Federal Litigation Section of the Federal Bar Association, as a member of the American Business Trial Lawyer Association, as a participant at the Duke Law School Conferences and the Institute for the Advancement of the American Legal System, and on the Board of Public Justice. As a full time single parent, she enjoys hiking, camping, and traveling with her 13-year-old daughter.