**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **IN RE: TIKTOK, INC.,** | ) | |
| **CONSUMER PRIVACY** | ) | **MDL No. 2948** |
| **LITIGATION** | ) | |
| | ) | **Master Docket No. 20 C 4699** |
| | ) | |
| | ) | **Judge John Z. Lee** |
| | ) | |
| | ) | **Magistrate Judge Sunil R. Harjani** |
| **This Document Relates to All Cases** | ) | |

**<u>EKWAN E. RHOW'S APPLICATION FOR CO-LEAD COUNSEL AND NOMINATION OF MEGAN JONES AS CO-LEAD COUNSEL, KARA WOLKE, DAVID GIVEN, AND AMANDA KLEVORN AS MEMBERS OF THE PLAINTIFFS' STEERING COMMITTEE, AND SHANNON MCNULTY AS LIAISON COUNSEL</u>**

## I.    __INTRODUCTION__

**Our Proposal**: While committed to working cooperatively with any plaintiffs' counsel, Bird Marella, Glancy Prongay, Phillips Erlewine, Hausfeld, and Burns Charest (collectively, the "Litigating Firms") propose the following leadership structure: Ekwan Rhow (Bird Marella) and Megan Jones (Hausfeld) as Co-Lead Counsel; a PSC of Kara Wolke (Glancy Prongay), David Given (Phillips Erlewine), Amanda Klevorn (Burns Charest), and two slots filled by the Court from the remaining applicants; and Shannon McNulty of Clifford Law Offices as Liaison Counsel.[1] As explained below, these attorneys best satisfy the Court's criteria of "(a) counsel's willingness and availability to commit to a time-consuming project; (b) counsel's ability to work cooperatively with others; and (c) counsel's professional experience in this type of litigation, including any prior appointments as lead counsel or liaison counsel in multi-party litigation." Doc. No. 4. At the Court's direction, this brief also addresses "other relevant matters" supporting Our Proposal. *Id.*

**Responsibilities and Efficiencies Under Our Proposal**: Co-Leads Mr. Rhow and Ms. Jones possess extensive plaintiff and defense-side class action litigation experience and blend complex trial experience and settlement knowledge that has been evaluated by courts, juries, and counsel. Co-Leads propose that Ms. Wolke would oversee offensive discovery (including e-discovery and China-related discovery); Mr. Given would oversee expert work and analysis; and Ms. Klevorn would oversee research, pleadings, and motions. The two open PSC slots would oversee: (i) settlement, mediation, and government issues; and (ii) plaintiff management and defensive discovery. Based in Chicago, Ms. McNulty would satisfy the obligations of Liaison Counsel.

---

[1] During the Court-ordered meet and confer among plaintiffs' counsel, the Litigating Firms proposed a compromise leadership structure that equitably blended different groups: Mr. Rhow and an attorney from the Settling Firms as Co-Lead Counsel; and a PSC of two attorneys from the Litigating Firms, two attorneys from the Settling Firms, and one attorney from other plaintiffs' counsel. The Settling Firms declined and sought both Co-Lead positions and three PSC slots.

**Flaws In The Settling Plaintiffs' Proposal**: The problems in the Settling Firms' proposal include: (1) their two Co-Leads each filed complaints limited to *Illinois plaintiffs* with only *Illinois* BIPA claims; (2) they prematurely scheduled an August 13 mediation shortly after filing their complaints and then participated in it despite defendants excluding the only Court-appointed lead counsel authorized to represent the class at the time, thus empowering defendants to select who they negotiated against (Doc. Nos. 5, 11, 11-1, 12, 17); (3) they are focused only on court-approval of their purported settlement without having shared it with the Litigating Firms or even all of the Settling Firms or others who support it without knowing its terms; (4) they purport to have settled claims brought only by the Litigating Firms; and (5) they claim the litigation issues in Case Management Order No. 1 ("CMO 1") are "not relevant" (Doc. No. 6). Given real-time global events altering the landscape, and the possibility the parties may not execute or the Court may not approve the "settlement in principle," a broader view of this lawsuit is in the class's best interest.

**Our Proposal Cures These Flaws**: Our Proposal ensures the two Co-Leads represent all putative classes and claims because Mr. Rhow brought California and Federal claims on behalf of California plaintiffs, a putative nationwide class, and a putative California subclass, and Ms. Jones brought BIPA claims on behalf of Illinois plaintiffs and a putative Illinois subclass. Also, Our Proposal includes two Co-Leads and three PSC members with the first-filed TikTok complaint, the first-filed BIPA claim, and years of technical, factual, and legal investigation in the U.S. and China. Not only would the leadership of the Litigating Firms offer the best chance to cure the structural problems underlying the August 13 mediation, but for the reasons below, the Litigating Firms also best satisfy the Court's three-factor leadership test while still leaving room for counsel who already have voiced support for the purported settlement to have a significant role.

## II.    The Litigating Firms Have Demonstrated Their Willingness And Availability.

The Litigating Firms have done the most work identifying, investigating, and litigating the

claims since early 2019, and constitute the only applicants who: (1) initiated the first-filed TikTok complaint on November 27, 2019; (2) served the China-based defendants driving the misconduct and possessing the financial means to make the class whole; (3) publicly announced in an April 15, 2020 filing, before the filing of any of the other TikTok actions, their intention to include Illinois plaintiffs and a BIPA claim; (4) filed the first BIPA claim on April 30, 2020; (5) filed the first BIPA claim against the China-based defendants, including the most detailed and unique technical allegations, in an 89-page amended complaint on May 11, 2020; and (6) filed a VPPA claim potentially worth billions of dollars in a 112-page consolidated complaint on August 14, 2020, which focuses on the transfer of users' video viewing histories to Facebook and Google. Virtually all the Settling Firms brought copycat, BIPA-only claims with minimal or no new facts and did so after the Litigating Firms led the investigation and drafted/filed the first complaints.

      Bird Marella and Glancy Prongay initiated their investigation in early 2019, and teamed up with Phillips Erlewine in early 2020, to build a comprehensive case by:

- working closely with highly trained source code experts in analyzing multiple versions of the Musical.ly and TikTok apps to uncover (1) the various types of private and personally-identifiable data stolen by defendants and third-party entities whose software development kits and analytic libraries are secretly embedded within the apps, and (2) the domestic and foreign destinations of such misappropriated data;

- collecting and analyzing numerous iterations of the TikTok terms of use and privacy policies upon which defendants will rely for their arbitration and consent defenses, and developing the arguments and evidence necessary to defeat those defenses;

- thoroughly researching the defendant corporations – with the aid of two teams of investigators in California and in China, an ESI expert, and colleagues with Chinese-language skills to translate documents – to better understand defendants' corporate structure, data

collection and retention systems, internal reporting systems, business and advertising models, artificial intelligence and patent development programs, and other relevant foreign and domestic activities, all of which is relevant to establishing the claims at issue;

- consulting with well-credentialed experts who conducted original research into the intersection of data privacy, artificial intelligence, Chinese corporations, and the Chinese government, including Chinese laws requiring data sharing with the government; and

- researching issues such as jurisdiction and venue (including alter ego issues concerning the foreign defendants); various causes of action beyond BIPA; standing, damages, and injunctive relief; notice and consent; and arbitration and class action waivers.

In early 2020, Bird Marella, Glancy Prongay, and Phillips Erlewine made another substantial investment to further develop the factual and legal foundation for a BIPA claim, including hiring another highly trained source code expert and a biometrics expert with notable BIPA litigation experience, both of whom helped to develop the unlawful face geometry scanning allegations. The resulting amended complaint has the most thorough BIPA allegations among the competing suits, focusing not just on the app's Augmented Reality ("AR") features that are the cornerstone of other suits, but also on stronger evidence of BIPA violations (and violations of other laws), such as:

- **The functionality and code of the TikTok app**, including (1) content recommendations based on users' race, ethnicity, and age; (2) face geometry scans to determine users' age; (3) code for deepfake videos; and (4) code for age, race, ethnicity, and emotion recognition;

- **Ongoing work in China**, including (1) the application of facial recognition technology to users' videos by engineers skilled in computer vision, convolutional neural network, and machine learning; (2) patent applications for face, voice, age, race, and emotion recognition technologies; and (3) the functionality of the Chinese version of TikTok (Douyin) that allows its users to perform facial recognition on faces they selected from other users' videos; and

- **Defendants' legal and political obligations to accumulate and share vast troves of data**, including biometrics, in order to assist the Chinese government in achieving world dominance in artificial intelligence, and population surveillance and control.

Prior to the filing of any other TikTok actions, these three firms participated in an April 6, 2020 mediation of the original Federal and California claims and the BIPA claim. Mediation preparation involved more technical expert work, further developing responses to defendants' anticipated motions, and formulating changes to defendants' business practices. Bird Marella and Glancy Prongay served eight sets of discovery prior to mediation, and defendants responded to each. The two firms also negotiated and agreed with defendants on a protective order.

Independently, Hausfeld and Burns Charest filed the first BIPA claim on April 30, 2020. Leading up to that filing, attorneys at the two firms put in substantial work over several months investigating and researching key factual and legal issues. This work included reviewing defendants' corporate structure; reviewing pertinent patent applications; collecting and reviewing TikTok's terms of service and privacy policy; collecting and reviewing news articles and other publicly available information about the functionality of the TikTok app; researching TikTok's investigation by the FTC; reviewing prior BIPA litigation and case law; and researching causes of action, arbitration, class action waivers, and standing. Their complaint was the first to plead claims related to TikTok's AR service utilizing user biometrics in violation of BIPA. It was only after they filed their detailed complaint and disclosed their work that numerous other law firms filed similar cases.

Lesley Weaver and Amy Keller filed the first VPPA claim in these actions. The Litigating Firms then performed additional expert work and pled a VPPA claim based on new evidence they developed revealing defendants illicitly transfer users' video viewing histories to Facebook and Google. None of the Settling Firms have brought a VPPA claim, nor have they brought all of the Litigating Firms' multiple Federal and California claims. Also, the Litigating Firms were the first to

identify and raise concerns about the Executive Orders relating to preservation of evidence required by the class to prove its claims (Doc. Nos. 5, 11, 11-1, 12, 17), and have cleared conflicts with a former federal judge with expertise in data preservation to possibly serve as a special master.

## III.    **The Litigating Firms Have Worked Cooperatively Together And With Others.**

As the firms with the first two filed actions, the Litigating Firms came together to work cohesively as detailed above. This was not done as part of a leadership battle or to position any firm for any particular role; rather, the Litigating Firms realized the complementary skills they each added. The development of this team has always had a singular purpose: to build a comprehensive group to protect the class. Judge Lucy H. Koh appointed Mr. Rhow as Lead Counsel and the other Litigating Firms to the PSC to manage the consolidated California actions prior to the MDL transfer.

The Litigating Firms made their original leadership proposal (fn. 1) in a cooperative spirit and to ensure protection of the class through equal consideration of viewpoints that may be contrary to those held by the Settling Firms. The Litigating Firms have further demonstrated their willingness and ability to work with firms outside their group by collaborating with other plaintiffs' counsel on preservation issues. The Litigating Firms also organized a series of discussions among all plaintiffs' counsel regarding the CMO 1 topics, culminating in the filing of a Joint Proposed Case Management Schedule today. Finally, despite having been excluded from the August 13 mediation, the Litigating Firms worked to schedule a third mediation with defendants before it was scuttled by others.

## IV.    **Mr. Rhow Has Significant Experience In This Type Of Litigation.**

As set forth in his declaration, Mr. Rhow has been recognized nationally for his experience in managing and winning high-stakes complex cases and as one of the top trial lawyers in America. As a Fellow of the American College of Trial Lawyers and a veteran of over 40 trials and arbitrations, Chambers has recognized him as a "trial expert" who specializes in "high-profile work" and "bet-the-firm litigation," and has described him as "articulate, brilliant in court and very hard-

working." Benchmark Litigation has named him one of the top 20 California trial lawyers and one of the top 100 U.S. trial lawyers. Mr. Rhow is currently an appointed ICC arbitrator in a dispute involving Asian companies.

Mr. Rhow has litigated and resolved numerous class actions involving the automotive, electronics, telecommunications, financial services, and apparel industries with potential liabilities ranging from $100 million to $1 billion, and he has served as lead counsel in a plaintiff-side class action where the class prevailed at trial. Mr. Rhow also has strong experience with high-profile China-related litigation, including successfully negotiating with the Chinese government and a major Chinese electronics company for the release of an imprisoned American executive. That case was the subject of a *New York Times* Pulitzer Prize winning investigative report. Mr. Rhow is also lead counsel in the Jho Low litigation, one of the highest profile matters in Asia. As a result of these and other representations, Mr. Rhow has expertise in the interplay between Chinese politics, U.S. politics, and large China-based companies such as defendants. And his Bird Marella team includes other attorneys with Chinese language skills and experience working in China.

Mr. Rhow and his colleague Marc Masters began this investigation after having developed expertise in data privacy and source code issues, such as those in play here. Their experience began in 2010 when they tried to a jury a dispute between a Korean security software company and a Japanese internet security company. The relationships developed during that case with technical experts generated almost a decade of litigations and internal investigations in this area. Long before the Congressional investigations and Executive Orders concerning TikTok became news, Mr. Rhow and Mr. Masters initiated original research into the technical and legal issues now being litigated here. Their organic interest in privacy issues led to the initial filing against defendants and the subsequent collaborations that have culminated in the current MDL before this Court, all of which positions Mr. Rhow to serve as Co-Lead Counsel on this important litigation.

Respectfully submitted,

DATED: September 8, 2020      **BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.**

By:    */s/ Ekwan E. Rhow*

Ekwan E. Rhow
BIRD, MARELLA, BOXER, WOLPERT,
NESSIM, DROOKS, LINCENBERG
& RHOW, P.C.
1875 Century Park East, 23rd Floor
Telephone: (310) 201-2100
Email: erhow@birdmarella.com

MDL Interim Counsel
Attorneys for Plaintiffs Misty Hong, minor A.S.,
through her mother and legal guardian Laurel
Slothower, and minor A.R., through her mother and
legal guardian Gilda Avila

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2020, the foregoing document was filed electronically through the Court's Electronic Case Filing System. Service of this document is being made upon all counsel of record in this case by the Notice of Electronic Filing issues through the Court's Electronic Case Filing System on this date.

*/s/ Ekwan E. Rhow*
Ekwan E. Rhow