UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: TIKTOK, INC., | ) | |
| CONSUMER PRIVACY | ) | MDL No. 2948 |
| LITIGATION, | ) | |
| | ) | Master Docket No. 20 C 4699 |
| | ) | |
| | ) | Judge John Z. Lee |
| | ) | |
| | ) | Magistrate Judge Sunil R. Harjani |
| This Document Relates to All Cases | ) | |

**MEGAN JONES' APPLICATION FOR CO-LEAD COUNSEL;
NOMINATION OF EKWAN RHOW AS CO-LEAD COUNSEL,
DAVID GIVEN, KARA WOLKE AND AMANDA KLEVORN
TO PLAINTIFFS' STEERING COMMITTEE,
AND SHANNON MCNULTY AS PLAINTIFFS' LIAISON COUNSEL**

This is a complicated case that will require steady, experienced, and collaborative leadership – as well as a leader with subject-matter expertise, who will treat all counsel fairly and respectfully, and who is committed to the best interests of the class. Moreover, counsel with extensive data security, trial, and settlement experience with large corporate entities will be able to assist the class in obtaining a fair, reasonable, and adequate resolution. Megan Jones and Hausfeld LLP – along with a formidable leadership team -- are best-suited to lead the class. Heralded in court as one of "the nation's best lawyers in an MDL" and a "professional problem solver," Megan Jones and Hausfeld LLP are "best able to represent the interests of the class" under Federal Rule of Civil Procedure 23(g)(2), and should be "[c]harged with formulating (in consultation with other counsel) and presenting positions on substantive and procedural issues during the litigation." MANUAL FOR COMPLEX LITIGATION (Fourth) ("MCL") § 10.221.

### I. MS. JONES HAS COOPERATIVELY LED LARGE, DIVERSE GROUPS OF PLAINTIFFS' FIRMS TO SUCCESSFUL OUTCOMES.

When it comes to organizing the work of Plaintiffs' firms, experience matters. Ms. Jones lead the work of over eighty plaintiffs' firms against thirty-five Defendants in one recent class action with a massive document production of over fifteen million pages. Despite all of those counsel (and their varied opinions), the Court never had to rule upon a single dispute amongst plaintiffs' counsel (in a case that spanned many years). Ms. Jones has repeatedly designed, executed and created consensus about litigation strategy in large class action cases, and can bring that same experience to bear here. Because the "ability to work cooperatively to create a decision-making framework among plaintiffs' counsel" is "indispensable" for interim lead counsel, Ms. Jones' cooperative and professional approach makes her an appropriate choice to lead this litigation along with Mr. Rhow. *Deangelis v. Corzine*, 286 F.R.D. 220, 225 (S.D.N.Y. 2012).

This experience is further demonstrated with proactive leadership. With two recent Executive Orders threatening access to defendants' data, the Litigating Firms identified and were the

1

first to raise preservation of evidence required by the class and subclasses to prove their claims. *See* Doc. Nos. 5, 11, 11-1, 12, 17. Rather than merely identifying the problem, the Litigating Firms have identified, vetted and cleared conflicts with former federal judge Hon. Shira Scheindlin, who has expertise in data preservation, to possibly serve as a special master to assist the parties and the Court. The Rhow/Jones slate's ability to identify solutions (for what may become time-sensitive problems) will streamline issues[1] for this Court's evaluation and decision.

Ms. Jones' experience also has shown that a collaborative approach best serves the class. She has seen, time and time again, that including other well-qualified firms adds value for the class. Inclusion, not exclusion, serves the interests of the class. No firms will be sidelined if not chosen for leadership by this Court. Rather, the Rhow/Jones slate will readily include any plaintiffs' firm that wants to work hard and commit to the case. Additionally, Ms. Jones' and Mr. Rhow's leadership proposal actually leaves leadership positions open for others, recognizing that the class can always be served by additional points of view. Thus, their proposed leadership slate demonstrates, rather than discusses, their inclusive approach to leading this complex class action.

Lastly, the Litigating Firms already have experience collating diverse views in this case. For example, we circulated our proposed case schedule to *all plaintiffs' counsel* for input. We also drafted a proposed list of cases, which we circulated for comment *to all*. We coordinated input from all sides (including defense counsel) and, as a result, this Court does not have dueling sets of papers.[2] This

---

[1] In one of her cases, Ms. Jones created a novel approach to privilege review in a case where defendants had a combined 700,000+ privilege log entries. She suggested, and the Court instituted, a sampling process by which Plaintiffs selected samples of privilege log entries for review for each defendant and Special Master issued rulings on those samples that were then used to de-designate similar documents on the logs. Through that process, Plaintiffs succeeded in de-designating nearly half of the privilege log entries – over 300,000 -- without burdening the court with repetitive and lengthy motions to compel.

[2] "The just and efficient resolution of this case may depend in large part upon the way the attorneys comport themselves and how they overcome conflicts." ANNOTATED MANUAL FOR COMPLEX LITIGATION §10.23 (4th ed. 2009), quoting Northern Indiana Public Service Co. v. Certain Underwriters at Lloyd's London, 1996 WL 115466 (N.D.Ind. 1996). Of note, the Litigating Plaintiffs compiled and filed the document addressing each of the issues set forth in Case Management No. 2.

kind of calm, coordinated leadership will continue if the Rhow/Jones slate is selected to represent the class.

## II. THE RHOW/JONES LEADERSHIP SLATE COMBINES TRIAL AND SETTLEMENT EXPERTISE.

Rarely have the resources of firms like Hausfeld and Bird Marella been combined to field a united, formidable team. The class will benefit from the combined expertise of Mr. Rhow's trial experience, and Ms. Jones' national reputation for being a skilled negotiator for class action settlements. Combining the power of these complimentary skillsets will benefit the class *regardless* of the course of the litigation.

Using her almost two decades of negotiation experience from being at Hausfeld LLP, Ms. Jones is able to craft settlement strategy and terms in even the most difficult cases. She has secured final approval from courts for hundreds of millions of dollars for classes of plaintiffs in a variety of industries, from rubber chemicals to polyester staple to municipal bonds. Ms. Jones was pleased to share her experience on class action settlements in several speaking engagements. *See* JPML Judges' Conference, "MDL Settlements: Common Pitfalls and Helpful Practices," October 29, 2019. *See also* American Bar Association's *Our Curious Amalgam* podcast, "Getting to Yes: The Art and Science of Settling Antitrust Class Actions" (February 2020).

An example of her diverse settlement experience is that in one of her cases, Ms. Jones worked with and joined over twenty Select State Attorneys General to jointly co-negotiate, settle, and administer a class claim on behalf of certain states *as well as* the civil litigation class. As Co-Lead Counsel, Ms. Jones worked hand in glove with the counsel for multiple Select State Attorneys General, was able to generate consensus on a joint settlement strategy for multiple settlement agreements, and used that public/private partnership to obtain the maximum results for the class.[3]

---

[3] The American Antitrust Institute recognized this and awarded Ms. Jones' team the "Outstanding Antitrust Litigation Achievement in Private Law Practice" in 2016.

Ms. Jones was able to present the result of that joint settlement negotiation to the Court for final approval, based on a settlement record that met all factors for approval in that Circuit. This same consensus building can be brought to bear here.

### III. HAUSFELD LLP HAS SUBJECT MATTER EXPERTISE.

From our locations in Boston, Berlin, Brussels, Düsseldorf, London, New York, Paris, Philadelphia, San Francisco, and Washington, D.C., Hausfeld LLP attorneys have routinely studied the global integration of markets and the intersection of global causes of action. Recently, Hausfeld obtained a unanimous 9-0 Supreme Court decision in our client's favor against Chinese producers of Vitamin C. *See Animal Sci. Prods., Inc. v. Hebei Welcome Pharm. Co.*, 138 S. Ct. 1865 (2018). We also tried to verdict a class action on behalf of purchasers of Korean ramen noodles in the U.S. *In re Korean Noodles Antitrust Litigation*, Case No. 3:13-CV-4115-WHO-DMR (N.D. Cal.). Given the scope of our international litigation experience, Hausfeld and its attorneys have participated in foreign discovery and are adept at obtaining discovery through the Hague Convention and the Letters Rogatory process. We have also been involved in numerous cases involving unique and challenging translation issues and taking depositions of entities in foreign language and under local customs and practices.

Further, Hausfeld LLP served as one of the court-appointed Steering Committee Members in *In re Target Corporation Customer Data Security Breach Litigation,* MDL No. 14-2522 (PAM) (D. Minn.). After the court granted class certification to a nationwide class of financial institutions, we obtained a groundbreaking $60 million settlement that covered class members' out-of-pocket costs sustained as a result of the breach. The settlement, the first of its kind, also required *Target* to implement numerous data security changes going forward. Other Hausfeld LLP experience includes, among others:

- *In re Equifax, Inc. Customer Data Security Breach Litigation*, 1:17-md-02800 (N.D. Ga.)

- Hausfeld serves on the Plaintiffs' Steering Committee for the Consumer Track, where over 145 million U.S. consumers had their personal information compromised as a result of one of the largest cyberattacks and data breaches in history. In February of 2018, Chief Judge Thrash appointed Hausfeld to serve on the Plaintiffs' Steering Committee for the Consumer Track. Hausfeld and the other attorneys for the Consumer Track obtained a settlement which establishes a non-reversionary settlement fund of $380.5 million, plus another $125 million available for out-of-pocket claims, for a total settlement of $505 million. The settlement includes at least another $1 billion for improved data security and related technology; and as much as $2 billion more, depending on the number of credit monitoring claims. Hausfeld and its co-counsel were also successful in obtaining binding commitments from Equifax to implement expert-recommended security measures directed at securing sensitive information, monitored by an independent third-party and enforceable in Court, with Equifax committing to spend $1 billion on data security.

- *In re Premera Blue Cross Customer Data Breach Litigation*, 3:15-md-02633 (D. Or.)
Hausfeld serves on the Plaintiffs' Executive Leadership Committee representing Premera health insurance customers whose confidential medical information was accessed during an extended breach. In 2019, the court granted preliminary approval to a $74 million settlement which includes a $32 million settlement fund—the total settlement is the largest per capita recovery for any medical data breach. The company also agreed to invest at least $42 million into bolstering its information security practices over the next three years.

- *First Choice Federal Credit Union v. Wendy's*, 2:16-cv-00506 (W.D. Pa.)
Hausfeld has served on the Executive Committee in this case. In February 2019, Wendy's agreed to settle the litigation for $50 million, which the Court approved in November 2019. In addition to monetary relief to the financial institutions, Wendy's also agreed as part of the settlement to put in place reasonable safeguards to manage its data and security risks.

- *In re Marriott International Inc., Customer Data Security Breach Litig.*, MDL 19-md-2879 (D. Md.)
In January 2019, Hausfeld filed the first Marriott Data Breach complaint. Hausfeld LLP is Co-Lead Counsel (James Pizzirusso) and on the Plaintiffs' Steering Committee (Megan Jones). The case is pending.

This will not be Hausfeld LLP's first privacy case, nor will it be its first privacy-related class action settlement. Such experience can assist the class in obtaining a just resolution of its claims and result in a settlement that will be upheld.

IV. **HAUSFELD LLP ATTORNEYS HAVE BEEN TRUSTED TO LEAD NUMEROUS CLASS ACTION CASES.**

One of the LawDragon's *500 Leading Lawyers in America* and an inductee to the *Legal 500's*

Hall of Fame[4], Ms. Jones has led numerous class actions including *In re Diisocyanates Antitrust*

---

[4] https://www.legal500.com/c/united-states/antitrust/civil-litigationclass-actions-plaintiff/.

5

*Litigation*, MDL No. 2862 (W.D. Pa.) (J. Ambrose) and *In re Marriott International Inc., Customer Data Security Breach Litig.*, No. 19-md-2879 (S.D. Md.) (J. Grimm). In this district, Judge Kendall selected Ms. Jones as sole lead counsel from ten applicants in *In Re Local Television Advertising Litigation*, MDL No. 2867 (E.D. Ill.). Assisting Ms. Jones in this case will be her partner, James Pizzirusso, whom this Court appointed as Co-Lead Counsel in *Greater Chautauqua Federal Credit Union v. Kmart Corp.*, No. 1:15-cv-02228 (N.D. Ill.) (One of three Co- Leads). Recognized by the NATIONAL LAW JOURNAL as a "Cybersecurity Trailblazer," Mr. Pizzirusso was appointed by Judge Gottschal in a disputed leadership decision, who noted the "deep experience" at Hausfeld, that they "have substantial experience handling class-action litigation," and that Hausfeld was "better equipped to address the complex class-certification issues involved in this litigation." *See In re Honey Transshipping Litigation*, No. 1:13-cv-02905 (Dkt. 57, Order at *3) (N.D. Ill., August 9, 2013). *See also* Attachment A (personal and firm biographies).

## V. HAUSFELD LLP HAS A LONGSTANDING COMMITMENT TO DIVERSE AND INCLUSIVE TEAMS.

Hausfeld's lawyers actively promote diversity in the legal community through, among other things, Duke Law Judicial Studies Center conferences (including authoring proposed best practices for increasing MDL leadership diversity) and the WAPA, which was a conference that Ms. Jones created and founded. For over a decade, WAPA has hosted national conferences for women plaintiffs' attorneys to exchange best practices on managing class action litigation, providing substantive class action training by women litigators for women litigators.[5] Based on her commitment to diversity in the legal profession, Ms. Jones recently joined a presiding judge, experienced litigators, and in-house counsel to discuss how to navigate issues in the legal profession and help grow the next generation of trial lawyers. *See* ABA's "Chair at the Table: Diversity in

---

[5] In 2016, based in part on this work with WAPA, Ms. Jones attended the White House's U.S. State of Women Summit.

Litigation" (March 2020). If appointed, Ms. Jones will continue that commitment and efficiently utilize diverse attorneys (from all law firms) to best serve the interests of the class.

## VI. THE PROPOSED PSC FIRMS HAVE DEMONSTRATED PROACTIVE LEADERSHIP.

Hausfeld supports the nomination of Ms. Wolke to oversee offensive discovery (including e-discovery and China-related discovery); Mr. Given to oversee expert work and analysis; and Ms. Klevorn would oversee research, pleadings, and motions; and Shannon McNulty as Liaison Counsel. Their accomplishments, set forth in their applications, corroborate what has been seen here. The Proposed PSC Firms and Ms. McNulty already have been sharing resources, evidence and strategy without attribution with one goal in mind: benefitting the class. These firms will form a nimble, focused structure that will prosecute this case efficiently and creatively. This Court can trust this team to be consistently professional. Selection of this team will ensure best-in-class, indefatigable and focused leadership. We are well-versed in working together[6] to create a unified front against defendants, and can be counted on to smooth over any differences amongst plaintiffs.

## VII. CONCLUSION

Hausfeld LLP and Bird Marella not only each have a long resume of successes, but also have the essential day-to-day management skills to most efficiently lead this case. The Proposed PSC Firms and Liaison Counsel will provide focused leadership. In short, our firms, if appointed, will: (i) work efficiently with a problem-solving, get-the-job-done approach; (ii) involve the Court or Court-appointed special master(s) to resolve disputes only when necessary; and (iii) utilize the deep bench of talent from all plaintiffs' firms to zealously protect the interests of the class.

---

[6] Public Justice honored Hausfeld and its co-counsel Clifford Law Office with its 2019 *Trial Lawyer of the Year Award* for the legal team's work on the ground-breaking *Hale v. State Farm* class action in the United States District Court for the Southern District of Illinois.

DATED: September 8, 2020 **HAUSFELD LLP**

By: */s/ Megan E. Jones*
Megan E. Jones
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Telephone: (415) 633-1908
Email: mjones@hausfeld.com

James J. Pizzirusso
HAUSFELD LLP
1700 K Street, NW
Suite 650
Washington, DC 20006
Telephone: (202) 540-7200
Email: jpizzirusso@hausfeld.com

MDL Interim Counsel
Attorneys for Plaintiffs minor P.S., through her legal guardian Cherise Slate, and minor M.T.W., through her legal guardian, Brenda Washington

8

**CERTIFICATE OF SERVICE**

I hereby certify that on September 8, 2020, the foregoing document was filed electronically through the Court's Electronic Case Filing System. Service of this document is being made upon all counsel of record in this case by the Notice of Electronic Filing issued through the Court's Electronic Case Filing System on this date.

*/s/ Megan E Jones*
Megan E. Jones
