**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **IN RE: TIKTOK, INC.,**<br>**CONSUMER PRIVACY**<br>**LITIGATION**<br><br><br><br>**This Document Relates to All Cases** | **MDL No. 2948**<br><br>**Master Docket No. 20-cv-4699**<br><br>**Judge John Z. Lee**<br><br>**Magistrate Judge Sunil R. Harjani** |

**APPLICATION OF D.M. PLAINTIFFS FOR APPOINTMENT OF GIRARD SHARP LLP
TO PLAINTIFFS' STEERING COMMITTEE**

## I.    INTRODUCTION

This case lies at the center of a national controversy about privacy rights, the collection of sensitive information from minors, and the acquisition of private information about U.S. citizens by potentially malign foreign actors. The decision before the Court—appointment of Plaintiffs' leadership—falls entirely within the Court's discretion.  The Court must exercise that discretion against the backdrop of competing groups of counsel and early settlement proceedings conducted without the benefit of extensive factual development or judicial oversight.  The Court will again be called upon to make a largely discretionary ruling—whether a settlement is "fair, reasonable and adequate"—if the settlement developed through pre-appointment mediation proceedings is presented to this Court.  We respectfully submit that our firm, Girard Sharp LLP, is uniquely qualified to contribute to these proceedings, based on the extent and depth of our experience in contested class action proceedings in federal courts, and our capacity to provide the Court with an objective view on the fairness of any settlement.[1]

On August 4, the Judicial Panel on Multidistrict Litigation centralized in this Court several cases alleging that Defendants, through the popular social media application TikTok, commit privacy violations, including harvesting of biometric identifiers in violation of the Illinois Biometric Information Privacy Act ("BIPA").  Two groups of attorneys have sought to lead this MDL: (1) the "N.D. Ill. Group" led by Katrina Carroll of the Carlton Lynch firm—appointed interim lead by this Court; and (2) the "N.D. Cal. Group" led by Ekwan Rhow of the Bird Marella firm—appointed interim lead by Judge Lucy Koh of the Northern District of California.  Both the N.D. Ill. and N.D. Cal. Groups separately participated in mediations in an effort to reach a settlement in this matter.

---

[1] Girard Sharp is counsel for Plaintiffs D.M and A.M., minors, by and through their guardian Porchia Heidelberg, A.O, a minor, by and through his guardian Jasmin Beverley, and M.P., a minor, by and through her guardian Requeenis Gilder (the "D.M. Plaintiffs").  Girard Sharp seeks appointment as a Steering Committee member or in such other capacity as the Court may order.

The N.D. Cal. Group did not reach a settlement, but on August 16, the N.D. Ill. Group reported that it had reached a settlement in principle, the terms of which remain undisclosed (and unknown to Girard Sharp and other counsel who elected not to participate in the August mediation).

The N.D. Cal. Group has since accused the Defendants of engaging in a reverse auction and demanded disclosure of the settlement terms. While both plaintiffs' counsel groups have advocated disclosure of the terms, Defendants have refused. After receiving dueling status reports from the two factions, as well as an emergency motion to compel disclosure of the putative settlement terms, the Court entered CMO No. 2, clarifying in part that no plaintiff's counsel has authority to act on behalf of a putative class until the Court makes its appointments, and noting that a class often benefits when attorneys who represent plaintiffs in other venues make contributions to a settlement process that are taken seriously.

Complicating matters, centralization and the N.D. Ill. Group's settlement came amid two Presidential Executive Orders issued in August and directed at Defendants. These Executive Orders, the ongoing talks to acquire TikTok, and the highly publicized controversy around its data gathering practices may well create uniquely favorable conditions to explore settlement. We credit the N.D. Ill. Group—led by Katrina Carroll and Jon Jagher—for their success in building considerable consensus among a wide array of plaintiffs' attorneys, and believe the class would benefit from their appointment to leadership positions. We also support the appointment of Elizabeth A. Fegan as liaison counsel. And we acknowledge the skill and dedication the N.D. Cal. Group attorneys have shown in advocating their position. The competition between these two groups over the past few months has taken a toll, however, and in choosing counsel, the Court should consider the need for an independent and experienced voice, with the capacity and willingness to objectively evaluate the settlement and assist in bringing these proceedings to a

favorable conclusion.

## II.    BACKGROUND

Between April 30 and June 9, seventeen class actions were filed against Defendants in four federal districts for violations of BIPA and other privacy laws. Plaintiffs' complaints allege TikTok surreptitiously invades the privacy of users—including minors—without their consent, and shares the extracted information with the Chinese government.

During and after these case filings, controversy over TikTok's practices intensified. On August 6, the President issued the first of two Executive Orders prohibiting any transaction between U.S. citizens and TikTok or ByteDance beginning 45 days after the date of the Order.[2] The President's second Order, issued on August 14, requires ByteDance to "divest all interests and rights" in TikTok, including data and all other assets or property, within 90 days.[3] Microsoft Corporation has reportedly been in talks to purchase TikTok,[4] and on August 27 TikTok's CEO resigned.[5] On August 24, TikTok and ByteDance sued the Trump Administration, claiming the Executive Orders violate its due process rights, exceed the President's lawful authority, and constitute an unlawful taking. *TikTok Inc. et al. v. Trump et al.*, No. 2:20-cv-7672 (C.D. Cal.).

TikTok and ByteDance have arranged two mediations with attorneys representing class plaintiffs. The first, conducted with the N.D. Cal. Group on April 6, failed to produce a resolution. *In re TikTok, Inc. Privacy Litig.*, No. 5:19-cv-07792-LHK (N.D. Cal. June 30, 2020), ECF No. 64 at p. 9 of 16. The second, conducted with the N.D. Ill. Group on August 13, resulted in an agreement

---

[2]  https://www.whitehouse.gov/presidential-actions/executive-order-addressing-threat-posed-tiktok/.  This Order finds that—as Plaintiffs uniformly allege—"TikTok automatically captures vast swaths of information from its users" and "[t]his data collection threatens to allow the Chinese Communist Party access to Americans' personal and proprietary information."

[3] https://www.whitehouse.gov/presidential-actions/order-regarding-acquisition-musical-ly-bytedance-ltd/.

[4] https://www.wsj.com/articles/microsoft-aims-for-a-deal-to-buy-tiktoks-u-s-business-11596418842.

[5] https://www.wsj.com/articles/tiktok-ceo-kevin-mayer-quits-as-trump-pushes-chinese-app-to-sell-u-s-business-11598505535.

in principle, the terms of which remain confidential. ECF No. 1 at p. 2 of 7 & No. 16 at p. 3 of 4.

Leadership of the consumer class has been contested. The N.D. Cal. Group argued, for example, in the Southern District of Illinois that counsel for the plaintiff had been "[c]aught red-handed wholesale copying another counsel's complaint," while the plaintiff argued that the N.D. Cal. Group's motion was "disingenuous" and that it was "not at all interested in benefitting the class." *A.S.*, No. 3:20-CV-00457-NJR (S.D. Ill. June 10, 2020), ECF No. 35 at pp. 1, 3 of 15 & No. 38 at p. 3 of 9. After the JPML centralized the related actions, counsel submitted dueling status reports (ECF Nos. 1, 5), with the N.D. Cal. Group accusing the Defendants of "hand-select[ing] counsel to represent *their own adversaries*" and "suddenly changing their position after the JPML order" to exclude the N.D. Cal. Group from the August mediation. ECF No. 5 at 2, 6. On August 27, the N.D. Cal. Group filed an "emergency motion to compel" compliance with CMO No. 1, asking the Court to order, in part, disclosure of the terms of the agreement in principle reached between Defendants and the N.D. Ill. Group. ECF No. 12. The N.D. Cal. Group characterized the mediation as "a structurally-flawed arrangement that created the wrong incentives for plaintiffs' counsel" who allegedly were "hand-picked" by Defendants. *Id*. at 5, 9-10. The Court then issued CMO No. 2, observing that although the N.D. Cal. Group "take[s] umbrage" with how settlement negotiations occurred, ultimately Rule 23 requires the Court to assure itself of a class settlement's fairness and adequacy before giving its approval. ECF No. 24.

As the Court recognized, under Rule 23(e) this Court will decide the fairness of any settlement. While courts and commentators have complained of a lack of adversary process that often characterizes settlement approval proceedings under Rule 23, here the number of interested counsel and the competition to serve as lead counsel suggest any settlement will meet with some degree of opposition. Girard Sharp has over 30 years of class action practice experience, often in contested

settings.  While we have served primarily as class counsel, we have also, when necessary, objected to inadequate class action settlements.  We are uniquely positioned to provide independent, credible advocacy in a case where partisanship threatens to complicate further proceedings.

## III.  GIRARD SHARP BRINGS AN EXPERIENCED AND OBJECTIVE PERSPECTIVE TO THESE PROCEEDINGS.

Girard Sharp sued on behalf of the D.M. Plaintiffs on May 8.[6]  *D.M.* was filed the same day as the first BIPA action against Defendants in Illinois federal court.[7] Girard Sharp attorneys have maintained an open line of communication with other plaintiffs' counsel throughout the organizational phase of this litigation.  *See* Declaration of Daniel C. Girard, ¶ 6 ("Girard Decl."). Given the pending briefing on leadership appointments in the N.D. Cal. litigation, we elected not to participate in the N.D. Ill. mediation, but commend Illinois counsel for inviting all plaintiffs' counsel to participate.  *Id.*, ¶ 7.

Girard Sharp, of all the applicants here, has the most—and most relevant—experience with class action rules and practice.  The firm's lead attorney on this matter, Daniel Girard, has specialized in class actions since 1988 and served as lead counsel in class actions involving a wide range of subject matter.  In the past few years he has been appointed sole lead counsel by Judge Amy Berman Jackson in the *Office of Personnel Management Data Breach Litigation* in the District of Columbia (No. 15-1394), sole lead counsel by Judge Dolly Gee in the *Woodbridge Investments Litigation* in the Central District of California (No. 18-103), and co-lead counsel by Judge Charles R. Breyer in the *Intuit Free File Litigation* in the Northern District of California (No. 19-2546).  He has repeatedly been recognized by the federal judiciary as an expert on class action practice.  In 2004, the Chief Justice appointed Mr. Girard to the United States Judicial

---

[6] *See D.M. et al. v. TikTok, Inc. et al.*, No. 20-03185 (N.D. Cal. filed May 8, 2020).
[7] *See E.R. v. TikTok, Inc. et al.*, No. 20-02810 (N.D. Ill. filed May 8, 2020).

Conference Advisory Committee on Civil Rules, on which he served through 2010. Girard Decl., ¶ 11. In 2015, the Chief Justice appointed Mr. Girard to the Standing Committee on the Rules of Practice and Procedure, which oversees the work of the federal procedural rulemaking committees, and reappointed him to a second term in 2018. *Id*. Mr. Girard also currently serves on the Council of the American Law Institute. *Id*.

Girard Sharp's track record in prudently choosing its battles in class action litigation is evident from the results the firm has achieved in complex approval proceedings.[8] Most recently, Girard Sharp served as co-lead counsel in litigation against Wells Fargo under the Telephone Consumer Protection Act. With a sharply contested class certification motion days away from hearing in the firm's Northern District of California case, *Pieterson v. Wells Fargo Bank*, No. 17-2306, Wells Fargo announced a settlement in an overlapping case, *Prather v. Wells Fargo Bank, N.A.*, No. 17-481, pending in this district. Rather than object to the use of a competing case as a settlement vehicle, Girard Sharp worked with all plaintiffs' counsel to reach a global settlement for $17.85 million, providing recoveries of over $400 per claimant for consumers who received unsolicited robocalls. On December 10, 2019, the Honorable Manish S. Shah granted final approval, commenting favorably on the contributions of Girard Sharp and its California co-counsel. *Prather*, ECF No. 131; Girard Decl., ¶ 12. The Seventh Circuit then granted the plaintiffs' motion to dismiss the lone objector's appeal. No. 20-1080 (7th Cir. Feb. 25, 2020).

In *In re High-Tech Employee Antitrust Litigation*, Mr. Girard represented a dissident class representative who objected to a proposed $325 million settlement. The court denied preliminary approval, No. 11-CV-02509-LHK, 2014 WL 3917126 (N.D. Cal. Aug. 8, 2014), and Mr. Girard then worked with lead counsel to reach a revised $415 million settlement, 2015 WL 12991307

---

[8] In addition to the cases described in this Application, see Girard Sharp's Firm Resume, attached as Exhibit A to the Girard Declaration, for further relevant experience.

(N.D. Cal. Mar. 3, 2015). In *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234 (9th Cir. 1998), the court approved a renegotiated class action settlement after we successfully objected to a prior settlement proposal. In *In re Hyundai & Kia Horsepower Litigation*, No. BS084308 (Cal. Super. Ct., Orange Cty.), Girard Sharp secured approval of a settlement valued at more than $100 million after the defendant attempted a reverse-auction settlement in Texas state court. In *Billitteri v. Securities America, Inc.*, No. 3:09-cv-01568-F (N.D. Tex.), Mr. Girard served as lead counsel for a class of investors. Following rejection of a disputed class action settlement, he coordinated settlement talks among defendants and hundreds of private arbitration claimants, resulting in a recovery of $150 million, a favorable outcome for all investors. Concerning the firm's performance, the District Court judge wrote, "Class counsel in this case possess great competence and experience, and the result reached in this case perfectly exemplifies their abilities. The Court has been extremely impressed with the conduct, skill, and accomplishment of class counsel throughout this litigation." 2011 WL 3585983, at *8 (N.D. Tex. Aug. 4, 2011).

In appointing counsel, this Court will need to choose from a capable and dedicated group. The Court's choice should promote public confidence in the fairness and impartiality of the proceedings. The leadership appointed by the Court should include counsel with the experience and objectivity to evaluate the proposed settlement and assist in structuring further proceedings to achieve the greatest possible consensus and provide the Court with a sound record upon which to evaluate the fairness of the settlement. Girard Sharp has shown, over several decades of principled advocacy, that it has the judgment, experience, and advocacy skills to achieve these objectives. Girard Sharp stands ready to commit the time and resources needed to achieve the best possible outcome for the class in this case, and respectfully requests it be appointed to serve on the Steering Committee, or in such other capacity as the Court may order. Girard Decl., ¶¶ 3, 14.

Dated: September 8, 2020

Respectfully submitted,

By*:     /s/ Daniel C. Girard*

Daniel C. Girard (*pro hac vice* forthcoming)
Jordan Elias (*pro hac vice* forthcoming)
Adam E. Polk (*pro hac vice* forthcoming)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Tel: (415) 981-4800
Fax: (415) 981-4846
dgirard@girardsharp.com
jelias@girardsharp.com
apolk@girardsharp.com

*Attorneys for Plaintiffs D.M and A.M., minors, by and through their guardian, Porchia Heidelberg, A.O, a minor, by and through his guardian, Jasmin Beverley, and M.P., a minor, by and through her guardian, Requeenis Gilder*

8