UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: TIKTOK, INC., CONSUMER PRIVACY LITIGATION  )<br>)<br>)<br>) | MDL No. 2948 |
| ) | Master Docket No. 20 C 4699 |
| This Document Relates to All Cases  ) | |
| ) | Judge John Z. Lee |
| )<br>) | Magistrate Judge Sunil R. Harjani |
| ) | |

# KARA M. WOLKE'S APPLICATION FOR PLAINTIFFS' STEERING COMMITTEE, NOMINATION OF EKWAN RHOW AND MEGAN JONES AS CO-LEAD COUNSEL, DAVID GIVEN AND AMANDA KLEVORN TO THE PLAINTIFFS' STEERING COMMITTEE, AND SHANNON MCNULTY AS LIAISON COUNSEL

## I. INTRODUCTION

Kara M. Wolke of Glancy Prongay & Murray LLP, counsel for Plaintiffs Misty Hong, minor A.S., through her mother and legal guardian Laurel Slothower, and minor A.R., through her mother and legal guardian Gilda Avila, respectfully submits this application for the Plaintiffs' Steering Committee, and nomination of Ekwan Rhow of Bird Marella Boxer Wolpert Nessim Drooks Lincenberg & Rhow, P.C. and Megan Jones of Hausfeld LLP as co-lead counsel, David Given of Phillips, Erlewine, Given & Carlin LLP, and Amanda Klevorn of Burns Charest LLP to the Plaintiffs' Steering Committee, and Shannon McNulty of Clifford Law Offices the as liaison counsel (collectively, the "Litigating Plaintiffs").

I was previously appointed by Judge Koh to serve along with Mr. Rhow, Ms. Jones, Mr. Given, and Ms. Klevorn on the executive committee of *In re: TikTok, Inc. Privacy Litigation*, Case No. 1:20-cv-04723 (N.D. Ill.), the consolidated Northern District of California case that is now before this Court in MDL No. 2948. These counsel are each submitting their own application detailing their suitability for the proposed appointments, and the undersigned supports the rationale for appointing the abovementioned attorneys as set forth in Mr. Rhow's application and nomination.

## II. ARGUMENT

In appointing class counsel, the court must consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions . . . ; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). Here, the Court specified that it will consider "(a) counsel's willingness and availability to commit to a time-consuming project; (b) counsel's ability to work cooperatively with others; and (c) counsel's professional experience in this type of litigation,

including any prior appointments as lead counsel or liaison counsel in multi-party litigation," CMO 1 at 6-7, and relatedly, "what efforts, if any, that a particular plaintiff's attorney has made (in this case and other cases) to canvas, coordinate, compile, and incorporate the thoughts and input of other plaintiff's counsel in the MDL." CMO 2 at 2-3.

Those factors are addressed below, but I first offer the following observation. The structure contemplated by the Court provides for eight lawyers, and is proportional for a case to be placed in a litigation posture, as the undersigned proposes. It makes no sense—as the Settling Plaintiffs propose—to fill such a structure largely with lawyers who believe, as the Settling Plaintiffs suggest, that the only thing that remains to be done is to obtain Court approval of their purported settlement. Indeed, the Litigating Plaintiffs believe that unless and until a settlement is publicly filed and approved by this Court, any leadership committee should vigorously prosecute this Action on behalf of the proposed classes. By contrast, advocating for approval of an existing settlement can be done with a single slot on the Steering Committee, which individual can work with the appointed Co-Lead attorneys and other Steering Committee members to assess the purported settlement in light of *all* experienced counsel's knowledge of the strengths and weaknesses of the Action, and to then submit it to the Court if there is consensus that it is in the best interests of the classes.

### A. Factor One: Counsel's Willingness And Availability To Commit To A Time-Consuming Project.

Glancy Prongay has done a substantial amount of work on this case, and that investment is reflected in the quality of the Complaints we have filed, which we invite the Court to compare to any other complaints in the MDL. Our depth of research alone demonstrates our willingness and availability to commit to a time consuming project, and we remain committed to maintaining that same depth of effort throughout the case. More generally, as detailed in the attached declaration, Glancy Prongay regularly invests many years and millions in out-of-pocket costs to pursue litigation.

**B.     Factor Two: Counsel's Ability To Work Cooperatively With Others.**

Our ability to work cooperatively with others is shown by the fact that we began the case in collaboration with the Bird Marella firm, expanded the team to include the Phillips Erlewine firm to pursue the BIPA claim, and then teamed up with the Hausfeld and Burns Charest firms, the first to file a BIPA claim. As detailed in the attached declaration, we regularly work cooperatively with other lawyers. We have had professional disagreements with other plaintiffs' counsel in this case, but we remain able to work with anyone. I have been personally involved in conducting meet and confer efforts with all Plaintiffs' counsel and Defense counsel, and have worked collaboratively to compile the list of related cases, develop a litigation schedule as an alternative to the Settling Plaintiffs' proposal of setting no dates other than for preliminary approval, and have discussed strategy with all Plaintiffs' counsel willing to entertain the idea of litigating this case.

**C.     Factor Three: Counsel's Professional Experience In This Type Of Litigation.**

As demonstrated in the attached declaration, Glancy Prongay has extensive experience representing plaintiffs in class litigation, including data breach and privacy issues. Most saliently, I was appointed to the executive committee by Judge Koh in one of the underlying actions, the consolidated Northern District of California action captioned *In re: TikTok, Inc. Privacy Litigation*, with particular responsibility for offensive discovery, including e-discovery and China-related discovery. Since that time, I and other Glancy Prongay attorneys have continued to focus on those issues, including working with expert consultants regarding the unique discovery issues in play as a result of the Executive Orders, leading to our current proposal that the Court appoint a special master to address those issues.

**III.     CONCLUSION**

For the foregoing reasons, I respectfully request appointment to the Steering Committee.

|  |  |
|---|---|
| Dated: September 8, 2020 | Respectfully submitted,<br><br>**GLANCY PRONGAY & MURRAY LLP**<br><br>By: /s/ Kara M. Wolke<br>Kara M. Wolke<br>1925 Century Park East, Suite 2100<br>Los Angeles, CA 90067<br>Telephone: (310) 201-9150<br>Email: kwolke@glancylaw.com<br><br>*MDL Interim Counsel Attorneys for Plaintiffs Misty Hong, minor A.S., through her mother and legal guardian Laurel Slothower, and minor A.R., through her mother and legal guardian Gilda Avila* |

### CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2020, the foregoing document was filed electronically through the Court's Electronic Case Filing System. Service of this document is being made upon all counsel of record in this case by the Notice of Electronic Filing issues through the Court's Electronic Case Filing System on this date.

/s/ Kara M. Wolke
Kara M. Wolke