UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: TIKTOK, INC., CONSUMER PRIVACY LITIGATION, <br><br> This Document Relates to All Cases | MDL No. 2948 <br><br> Master Docket No. 20 C 4699 <br><br> Judge John Z. Lee <br><br> Magistrate Judge Sunil R. Harjani |

**APPLICATION OF ERIC H. GIBBS
FOR PLAINTIFFS' STEERING COMMITTEE**

## INTRODUCTION

Plaintiff M.E. is one of more than twenty plaintiffs who have filed class actions against TikTok for unlawfully capturing their biometrics and other private data. If these claims are successful, TikTok could be required to pay thousands of dollars per user—an imposing figure that while affordable for a company with TikTok's wealth, would make even the largest company think twice before violating its users' privacy.

A deal is already on the table, and that proposed settlement may very well provide just the sort of imposing penalty that consumers want to see. It's too early to say, however; so far, only TikTok and a few of the plaintiffs know the terms of the deal—a state of affairs that has frustrated other plaintiffs and led to a fair amount of internal discord. The Court is thus faced with the prospect of choosing a leadership slate from a group of attorneys who, while all highly qualified, are openly at odds with one another.

Gibbs Law Group and its founding partner, Eric Gibbs, have experience working cooperatively with competing factions in similar situations. In the *Hyundai & Kia Fuel Economy Litigation*, MDL. No. 2424 (C.D. Cal.), a small group of plaintiffs announced an early settlement that was met with a mix of skepticism and outright hostility from some twenty other plaintiffs' firms who had been left out of the settlement discussions. The stakes were high, as Hyundai's inflated mileage claims had drawn national attention and consumers were looking for meaningful relief and effective deterrence. Judge George H. Wu appointed Mr. Gibbs to serve as a liaison between the various factions, and in that capacity, Mr. Gibbs worked for two years to build consensus when possible, present the various viewpoints to Judge Wu for resolution in an orderly and respectful fashion when not, and ultimately, gain final approval for a revised settlement valued at more than $210 million. At the conclusion of the process, Judge Wu singled out Mr. Gibbs for praise, approved Mr. Gibbs and his firm's fee application in its entirety, and joked he would have awarded more. Counsel from the competing factions were likewise complimentary, as was Hyundai's counsel who observed that "Eric was critical

in helping preserve order" during the "lengthy and sometimes contentious process."

Plaintiff M.E. respectfully submits that Mr. Gibbs' even-handed approach, consensus-building skills, and ability to make tough decisions in a respectful and considerate manner could be a real asset to the Plaintiffs' Steering Committee—just as it was in the *Hyundai Fuel Economy Litigation*.

## ARGUMENT

When appointing interim lead counsel in a class case, the Federal Rules require courts to consider each applicant's experience, knowledge of the law, resources, and work already performed in the case. Fed. R. Civ. P. 23(g). The ultimate aim is to appoint the counsel "best able to represent the interest of the class," and the Court is vested with considerable discretion over how best to achieve that goal. Fed. R. Civ. P. 23(g)(2) & Adv. Comm. Note to 2003 Amendment.

Here, the Court has announced that it intends to appoint two Lead Counsel, Liaison Counsel, and a five-member Steering Committee. Plaintiff M.E. believes the Steering Committee would benefit from the inclusion of Eric Gibbs and his team at Gibbs Law Group. This past year, Mr. Gibbs was one of ten lawyers in the country named to *Law360*'s Titans of the Plaintiffs Bar and Gibbs Law Group was one of four plaintiffs' firms named to *Law360*'s Class Action Groups of the Year. Mr. Gibbs was also recognized as one of the Top Plaintiffs Lawyers in California by the *Daily Journal* and a Leading Plaintiff Consumer Lawyer by *Lawdragon*, and was one of three lawyers honored with a California Lawyer Attorney of the Year (CLAY) award for their work in the *Anthem Data Breach Litigation*.

### I. Gibbs Law Group Is Skilled at Building Consensus

Like the *Hyundai Fuel Economy Litigation*, this multidistrict litigation is beginning in a promising but precarious fashion: the defendant has agreed to a proposed settlement that has the potential to resolve issues of national importance for millions of consumers, but the settlement lacks the support of all plaintiffs.

Plaintiff M.E. expects the Court will want to craft a leadership team that includes both attorneys from both the Litigating Plaintiffs and Settling Plaintiffs—i.e., attorneys from both the bloc that negotiated the proposed settlement and the bloc that wishes to continue litigating. Plaintiff would urge the Court to consider appointing Mr. Gibbs as a neutral attorney who has not seen the settlement or pre-judged its merits, and who has a history of successfully navigating the many issues that can and should be resolved before a finalized settlement can be presented to the Court (or the case returned to a litigation track).

If appointed to the Steering Committee, Mr. Gibbs intends to work with the competing factions, much in the same way he did in *Hyundai*, to build consensus, avoid wasteful sideshows, and keep the core interests of the class in focus. He and others at Gibbs Law Group have long-standing relationships with several of the law firms on each side of the proposed settlement. For example, Mr. Gibbs and Gibbs Law Group served as co-lead counsel with Katrina Carroll (now with Carlson Lynch) in *Bishop v. Behr Process Corporation*, No. 17-cv-4464 (N.D. Ill.), worked with Glancy Prongay in *O'Brien v. PopSugar,* No. 18-cv-329645 (Cal. Super. Ct. Santa Clara Cty.), and is currently co-counsel with Hausfeld LLP and DiCello Levitt in *John v. Clearview AI*, No. 1:20-cv-03481 (S.D.N.Y.). Those relationships, along with Mr. Gibbs's strong reputation in the plaintiffs' bar, could be a significant asset to Plaintiffs' leadership team.

This is an important case with a lot at stake for the class and for the future of consumer privacy. Any settlement ultimately presented to the Court is likely to receive a great deal of scrutiny—from consumers, from the press, and potentially from the 7th Circuit. By appointing a neutral to Plaintiffs' leadership team, the Court could ensure divergent viewpoints are fostered, refined, and addressed *before* the formal settlement approval process begins. Any objections that remain at that point can then be presented in a clear, orderly, and respectful fashion, and will have the benefit of a more fully developed record. Judge Wu took that very approach in *Hyundai* and the process

worked well. In affirming Judge Wu's final approval order and judgment, the Ninth Circuit wrote:

> Over the course of several years, the district court performed an admirable job of managing this complex litigation. After the settlement was announced, the district court held multiple status conferences and requested several rounds of briefing to ensure that all of the litigants' concerns were heard and addressed. It made careful findings, which the objectors here largely do not challenge, and which more than support the judgment.

*In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 572 (9th Cir. 2019). Plaintiff M.E. believes a similar process is warranted here and respectfully submits that Mr. Gibbs could again play a vital role in that process. In addition, if the Court is curious about the finer details of how Judge Wu approached the early *Hyundai* settlement and how Mr. Gibbs assisted in that process, Judge Wu has expressed his willingness to answer any questions the Court might have. He may be contacted through his Courtroom Deputy Clerk, Javier Gonzalez, at 213-894-0191.

## II. Gibbs Law Group Has A Wealth of Experience in Consumer Privacy Litigation

Whatever route this litigation may ultimately take to resolution, experience in consumer privacy litigation will prove vital. Plaintiffs' leadership team will need a nuanced understanding of the privacy interests that consumers care about, the threats posed to those interests by TikTok and similar data-mining operations, and the various technological and legal means available to safeguard those interests.

Consumer privacy litigation has occupied a central role in Mr. Gibbs's practice for over a decade. In the *Anthem Data Breach Litigation,* Mr. Gibbs was part of the four-firm leadership team that obtained a $115 million cash settlement for consumers—the largest data breach settlement in history at the time. And before that, Mr. Gibbs served as lead counsel in the *Adobe Systems Privacy Litigation*, 66 F. Supp. 3d 1197 (N.D. Cal. Sept. 4, 2014), which has become one of the touchstones for Article III standing in consumer privacy cases. *See, e.g., Remijas v. Neiman Marcus Grp., LLC,* 794 F.3d 688, 693 (7th Cir.

2015) (quoting from *Adobe*'s standing analysis and finding that, "[l]ike the *Adobe* plaintiffs, the Neiman Marcus customers should not have to wait until hackers commit identity theft or credit-card fraud in order to give the class standing").

Other examples where Mr. Gibbs and his team have successfully fought to vindicate consumer privacy rights include:

➢ *In re Equifax, Inc. Customer Data Security Breach Litig.*, MDL No. 2800, No. 1:17-md-2800 (N.D. Ga.), where plaintiffs' counsel obtained a $380.5 million settlement fund for victims of the massive 2017 breach of Equifax's consumer records. Mr. Gibbs served on the Plaintiffs' Steering Committee, where he deployed the considerable skills and deep technological understanding of David Berger, who led negotiations that led to an overhaul of Equifax's data security practices—an overhaul that will require the company to spend $1 billion to safeguard consumers' private information.

➢ *In re Vizio, Inc. Consumer Privacy Litigation*, MDL No. 2963, No. 8:16-ml-02963 (C.D. Cal.), which involved allegations that Vizio secretly tracked the *viewing* habits of its consumers. Appointed co-lead counsel, Mr. Gibbs and his team successfully argued the Video Privacy Protection Act should be extended to television manufacturers, recouped more for class members (in the form of a $17 million settlement fund) than Vizio made from the practice, stopped Vizio from collecting viewing data without its customers' consent, and required the company to delete all the data it had already collected.

➢ *In re Lenovo Adware Litigation*, MDL No. 2624, No. 5:15-cv-00807 (N.D. Cal.), which involved allegations that Lenovo pre-installed adware on laptops that caused performance, privacy, and security issues for consumers. Gibbs Law Group, working alongside lead counsel, briefed and argued two motions to dismiss as well as class certification. Judge Ronald Whyte certified a nationwide indirect purchaser class and Lenovo and its co-defendant ultimately agreed to a $8.3 million class settlement that was approved last April.

Additional examples of Gibbs Law Group's experience in complex litigation, including numerous consumer protection matters the firm has led outside of the privacy context, can be found on the firm's website. *See* https://classlawgroup.com.

### III. Gibbs Law Group Has the Knowledge and Resources to Advance This Case

Gibbs Law Group consists of 18 attorneys and a full team of non-lawyer professionals. The firm has the capacity to successfully prosecute this litigation, having repeatedly demonstrated its ability to match the resource commitment and focus of much larger firms. In *Skold v. Intel*, No. 1-05-cv-039231 (Cal. Super. Ct. Santa Clara Cty.), for example, Mr. Gibbs oversaw litigation that lasted more than a decade, entailed some 130 depositions across the country, and required the advancement of millions of dollars in expenses. After the case settled on the eve of trial, Judge Peter Kirwan wrote that it was "abundantly clear that Class Counsel invested an incredible amount of time and costs in a case which lasted approximately 10 years with no guarantee that they would prevail…. Simply put, Class Counsel earned their fees in this case."

Gibbs Law Group attorneys also have deep familiarity with industry privacy norms, and have worked with top-flight technologists, privacy experts, and economists in a number of prior consumer privacy cases. David Berger, one of the attorneys working with Mr. Gibbs on this case, is a Certified Information Privacy Technologist, the Chair of AAJ's Consumer Privacy & Data Breach Litigation Group, and one of only two plaintiffs' attorneys selected to serve on the Sedona Conference's Biometric Privacy Laws Brainstorming Group. His technical understanding allows him to communicate directly with company witnesses, without the need for expert translation, and has proven instrumental in negotiating effective reforms to defendants' privacy and security practices—including $1 billion in data security measures that Equifax agreed to implement as part of the Equifax Data Breach Settlement. Mr. Gibbs, Mr. Berger, and Gibbs Law Group stand ready to leverage their knowledge and connections for consumers in this case as well.

## CONCLUSION

Mr. Gibbs and Gibbs Law Group recognize that others have already performed substantial work in this litigation. In particular, the Bird Marella and Glancy Prongay firms filed their privacy claims against TikTok last November and have already spent a great deal of time investigating and litigating those claims. The remainder of the cases were filed more recently, but over the past few months, Carlson Lynch devoted considerable resources toward case management, coordinating a mediation before Judge Layn Phillips (Ret.), and ultimately negotiating a settlement with TikTok.

Gibbs Law Group has invested time and resources into the litigation as well, including through an objective evaluation of TikTok's potential liability under various legal theories and working to prepare a complaint that presents the underlying facts in a simple and straightforward manner. But most of all, Mr. Gibbs and Gibbs Law Group have endeavored to work respectfully with the other plaintiffs' counsel involved in the case, to appreciate that this case is an important one that brings out strong opinions, and to withhold judgment on the propriety or value of the proposed settlement until its terms are disclosed and a full factual record is developed. They hope to bring the same approach to further proceedings and would appreciate the Court's consideration of Mr. Gibbs for a position on Plaintiffs' Steering Committee.

Dated: September 8, 2020

Respectfully submitted,

By: /s/ Eric H. Gibbs

Eric H. Gibbs (SBN 178658)
David M. Berger (SBN 277526)
GIBBS LAW GROUP LLP
505 14th Street, Suite 1110
Oakland, California 94612
(510) 350-9700 (tel.)
(510) 350-9701 (fax)
ehg@classlawgroup.com
dmb@classlawgroup.com

*Counsel for Plaintiff M.E.*