# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **IN RE: TIKTOK, INC.,** | ) | **MDL No. 2948** |
| **CONSUMER PRIVACY** | ) | |
| **LITIGATION** | ) | **Master Docket No. 20 C 4699** |
| | ) | |
| | ) | **Judge John Z. Lee** |
| | ) | |
| **This Document Relates to All Cases** | ) | **Magistrate Judge Sunil R. Harjani** |

## APPLICATION FOR APPOINTMENT OF
## AMY KELLER AND LESLEY WEAVER
## AS EITHER CO-LEAD COUNSEL OR
## TO THE PLAINTIFFS' STEERING COMMITTEE

Plaintiffs R.S. and J.S., by their guardian, and Aparna Iyer, Brandy Johnson, Katherine Czajka, and Karina Quinteiro respectfully seek appointment of Amy Keller of DiCello Levitt Gutzler LLC ("DLG") and Lesley Weaver of Bleichmar Fonti & Auld LLP ("BFA") to the leadership team in this action. We are cooperative, hands-on lawyers with complementary but not copycat skills who have each been appointed previously to lead significant privacy actions, developing the sophistication and nuance required to navigate this case, even in its complex posture. We have already "paid it forward" by adding significant value to class claims, by retaining multiple separate consulting experts, incorporating their work in our Amended Complaint.[1] That complaint alleges new facts critical to the key Illinois Biometric Privacy Act ("BIPA") claim, augments our first-filed Video Privacy Protection Act ("VPPA") claim, and addresses the latest security issue relating to the theft of unique device identifiers—all issues that need to be considered and addressed whether this case proceeds to full blown litigation or is resolved through a Court-approved settlement represented by lawyers with Court-appointed authority and standing to represent those claims in such discussions. Critically, we have strong relationships with lawyers in both the "litigating" group and the "settling" group, and the professionalism necessary to bridge and deflect conflict. We hope to add valuable experience and insight as either Co-Lead counsel or members of the Plaintiffs' Steering Committee ("PSC").

These consolidated proceedings seek relief against TikTok and affiliated entities not only under the BIPA statute, but also for violations of state consumer statutes and privacy laws affecting users of TikTok (the "App"). Because of the App's popularity with children and younger people, and the App's unsettling vulnerability to the Chinese government, TikTok's permanent collection of users' biometric information (as well as other data such as device

---

[1] ECF No. 17, Case No. 1:20-cv-04728 (filed Aug. 13, 2020) (the "Amended Complaint"). Attached to the Joint Declaration of Amy Keller and Lesley Weaver ("Joint Decl.") as Ex. B.

identifiers not covered by BIPA) have deeply concerning implications. Notably, only three operative complaints before this Court allege *any* claims other than BIPA: our clients' Amended Complaint, the amended *Hong* complaint, which incorporated some of our work with our permission, including the expert research and analysis necessary for the VPPA claim, and the *G.R.* complaint.[2] We have demonstrated our commitment to the case by crafting claims that others recognize as valuable as well as our ability to work collegially. Further, unlike many other applicants, we represent minors as well as individuals from the States of Illinois and California.

Despite the challenges posed by this litigation—a sale mandated by a Presidential Executive Order, a proposed settlement that only some plaintiffs' counsel have been able to review or vet, and competing views on the trajectory this case will take—we believe that counsel can still proceed in a collaborative fashion after this Court's order appointing leadership. Subject to further developments, we propose a two-track process, whereby settlement terms are vetted by counsel with expertise and clients covering all pending claims; and a separate, targeted litigation track harmonious with critical elements of discovery necessary in the event a satisfactory settlement is approved. These two tracks can be overseen by two co-lead counsel appointed by this Court. We would be honored to participate in any role the Court deems appropriate.

A.    **BFA and DLG's commitment to the Case is expressed in part through the work they have already done.**[3]

On May 11, 2020, after initial consultation with technical experts, BFA and DLG filed a complaint on behalf of minors R.S. and J.S., asserting two causes of action for violations of

---

[2] *G.R. v. TikTok, Inc.*, No. 20-cv-05212 (N.D. Ill), does not contain a VPPA claim. Only our Amended Complaint (including clients Iyer and Johnson, transferred to this Court under case No. 20-cv-05217), and the Consolidated Amended Complaint by Interim Lead Counsel for the Northern District of California, ECF No. 89, No. 1:20-cv-04723, do.

[3] As the attached firm resumes demonstrate, both BFA and DLG have recovered billions of dollars for their clients, and are more than able to fund, staff, and support this litigation, with Ms. Weaver and Ms. Keller's personal, focused attention.

BIPA, 740 ILCS 14/1 *et seq.*—claims not initially alleged in the first-filed action, *Hong v. ByteDance, Inc.*, No. 19-cv-07792 (N.D. Cal.), but which had been first alleged by plaintiffs in *P.S., et al. v. TikTok, Inc.*, No. 20-cv-02992 (N.D. Cal.), filed by Hausfeld LLP. Joint Decl. ¶¶ 2-3. TikTok's exploding popularity due to the COVID-19 pandemic heightened the importance of preventing biometric data collection, something even the U.S. military has noted. However, it soon became apparent-in part because of ongoing media coverage—that while the BIPA claims are critical, they cannot cover all of the violations at issue here. To understand the full scope of the case, in June BFA and DLG retained consulting experts specializing in the fields of dark patterns, web privacy and biometric data collection, as well as deceptive user experience, as the case morphed into a nationwide, multidistrict litigation. *Id.* ¶ 3.[4] Relying in part on subject matter experts, we pleaded additional theories of liability, including a key cause of action for violation of the VPPA, 18 U.S.C. §§ 2710, *et seq.* *Id.* ¶ 4.[5] This was not intended to be a "kitchen sink" approach; each claim was vetted for the relief it could bring the class. For example, collecting and analyzing how children respond to videos to assess how to trigger responses in them is a serious harm separate from the collection of biometric information. We also anticipated defendants' defenses, including the likely possibility that they will seek to compel arbitration. *Id.* ¶ 5.  Informed by the expertise of a retained expert who is prepared to opine on whether TikTok's design decisions increased the likelihood that even adult users would not notice the provision seeking to bind them to arbitrating their claims, we plead specific facts about "dark design."  *Id.*  Most recently, we hired two consulting experts who uncovered TikTok's theft of users' 12-digit "media access control" or MAC addresses, allowing foreign governments and

---

[4] These statements do not waive any applicable privileges and are provided herein to demonstrate BFA and DLG's commitment to the case, not for their merits.
[5] Interim Lead Counsel for the Northern District of California acknowledged that the VPPA claim adds "potentially billions of dollars in statutory damages." ECF No. 12 at 6.

advertisers alike to build detailed dossiers on users who simply *downloaded* the App, even if they did not sign up. *Id.* ¶¶ 8-9. This is a serious issue any proposed settlement must address, particularly as to users who downloaded the App but did not sign up, and thus could not be subject to any arbitration argument whatsoever.[6]

**B. Ms. Keller and Ms. Weaver's work here flows directly from their experience leading and resolving complex litigation.**

**1. Amy Keller of DiCello Levitt Gutzler LLC**

Based in Chicago, Illinois, as DLG's technology practice chair, Ms. Keller primarily focuses on issues of privacy and consumer protection and has a significant amount of experience leading—and resolving—consumer and technology cases. Focusing on class and complex litigation for the twelve years she has been in practice, she has been appointed to lead significant consumer nationwide class actions, including:

- *In re Fairlife Milk Prods. Marketing and Sales Practices Litig.*, MDL No 2909, No. 19-cv-3924 (N.D. Ill.) (appointed by Judge Robert M. Dow, Jr., as co-lead counsel in a multidistrict case against milk manufacturers for misrepresentations concerning the ethical treatment of dairy cows).

- *In re Marriott, Int'l, Inc. Customer Data Security Breach Litig.*, No. 19-md-2879 (D. Md.) (co-lead counsel; achieving significant victory at motion to dismiss stage where the Court largely denied Marriott's motion to dismiss finding that plaintiffs had sufficiently pleaded that personal information has value).

- *In re Equifax Inc. Customer Data Security Breach Litig.*, No. 17-md-2800-TWT (N.D. Ga.) (co-lead counsel; $1.5 billion nationwide settlement achieved

---

[6] Before cases were consolidated and the JPML had assigned a Court to oversee the litigation, and based on previous experience, BFA and DLG held back rather engage in settlement negotiations, out of deference to the ultimately-presiding Judge. *See* ECF No. 72, No. 19-cv-07792 (N.D. Cal.) ("BFA and DiCello Levitt were also informed of proposed settlement talks in August 2020, but have not engaged out of deference to the belief that decisions regarding case resolution are best addressed after it is determined who will be chosen to lead the litigation"). After the JPML transferred the pending actions to this Court, and the subsequent urgency given the newly-issued Executive Order, BFA and DLG called litigation counsel, settling counsel, and defense counsel asking to participate. Settling counsel declined the request. *See* Ex. A to Joint Decl. BFA and DLG have asked that the terms of the purported settlement be shared with them. Because that request has not yet been honored, we are unaware whether the proposed settlement addresses these facts and claims. This is one way in which we believe our participation would add value.

supported by FTC, CFPB, and attorneys general from 48 states, Puerto Rico, and the District of Columbia).

- *In re Apple Inc. Device Performance Litig.*, No. 18-md-2827 (N.D. Cal.) (plaintiffs' executive committee, chair of law and briefing; resulted in settlement of up to $500 million).

- *In re American Medical Collection Agency, Inc. Customer Data Security Breach Litig.*, No. 19-md-2904 (D.N.J.) (co-lead counsel of one of the tracks in a multidistrict case involving the compromise of personal health information).

Joint Decl. ¶¶ 17-21, Ex. C. Ms. Keller has worked with a number of the applicants on these matters. Ms. Keller's expertise focuses on forward-looking theories of liability and novel damages modeling, resulting in her having been named a *National Law Journal* Plaintiff Trailblazer for her work on privacy and technology litigation. Ms. Keller also assisted in drafting the Electronic Privacy Information Center's *amicus* brief before the Illinois Supreme Court concerning the seminal case on standing as it related to the Illinois Biometric Information Privacy Act—issues directly applicable to this litigation. *Rosenbach v. Six Flags Entm't Corp.*, 129 N.E.3d 1197 (Ill. 2019). Ms. Keller also serves on the Sedona Conference's Working Group 11 on Data Security and Privacy, where she is also a member of several model law drafting teams. She is also an elected member of the American Law Institute. Joint Decl. ¶¶ 23-24.

### 2. Lesley Weaver of Bleichmar Fonti & Auld LLP

As head of BFA's Antitrust and Consumer litigation department and BFA's California office, Ms. Weaver brings over twenty years of law practice dedicated to litigating significant cases protecting consumers, including public entities from harmful, fraudulent conduct. She was honored as a California Lawyer of the Year in 2017 and a *National Law Journal* Plaintiffs' Trailblazer. Joint Decl. ¶ 42, Ex. D. She has substantial leadership experience prosecuting complex class actions in general and extensive experience representing consumers seeking redress for privacy violations, including delivering the opening and closing statements in one of

the few successful privacy trials in the country. *Id.* ¶ 39. She leads and has helped resolve some

of the largest and most impactful class actions in the country, including:

- *In re Facebook, Inc. Consumer Privacy User Profile Litigation*, No. 18-md-02843-VC (N.D. Cal.) (co-lead counsel; consolidated action arising out the Cambridge Analytica scandal alleging that Facebook violated consumer fraud and privacy laws, including the VPPA, by enabling millions of third parties to access to Facebook users' private content and information without users' knowledge or consent).

- *Calhoun v. Google LLC*, No. 5:20-cv-05146-LHK (N.D. Cal.) (co-lead counsel in nationwide data privacy class action based on extensive expert analysis showing that Chrome sends users' personal information, including their browsing history, to Google regardless of whether a user elects to Sync or even has a Google account, despite Google's promise that the "personal information that Chrome stores won't be sent to Google" unless the user turns on Sync).

- *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, No. 15-md-02672-CRB (N.D. Cal.) (plaintiffs' steering committee; appointed from over 150 attorneys from across the country and directly participated in complex settlement negotiations yielding more than $17 billion for consumers and the environment).

- *In re Chrysler-Dodge-Jeep EcoDiesel Marketing, Sales Practices, and Products Liability Litigation*, No. 3:17-md-02777-EMC (N.D. Cal.) (plaintiffs' steering committee; worked closely with technical experts, proposed settlement totals nearly $800 million, and consumers will recover roughly $3,000 per vehicle).

- *In re Inductors Antitrust Litigation*, No. 18-cv-00198-EJD (N.D. Cal.) (Interim Co-Lead Counsel; represents a class of small businesses that directly purchased a key electronic component of electronic circuits found in smart phones, laptops, and computers, from largely foreign manufacturers).

- *In re: German Automotive Manufacturers Antitrust Litigation*, No. 17-md-02796-CRB (N.D. Cal) (plaintiffs' steering committee; litigation involving alleged 20-year cartel with German automakers—the single largest known automobile cartel in U.S. and European history—to suppress the development of technology in their automobiles).

- *In re ZF-TRW Airbag Control Units Products Liability Litigation*, No. 19-ml-02905 (C.D. Cal.) (plaintiffs' steering committee; case concerns over 12 million cars sold with allegedly defective airbag control units).

*Id.* ¶ 38. Prior to serving as Co-Lead Counsel in *In re Facebook, Inc. Consumer Privacy User*

*Profile Litigation*, in October 2014, Ms. Weaver tried an internet privacy case against a Chinese-

owned, California-based internet site. Plaintiffs recovered 100% of economic damages and won

a $15 million punitive damages jury verdict, as well as significant injunctive relief. *Id.* ¶ 39. Ms. Weaver is a member of the Sedona Conference Working Groups 6 and 11, a SuperLawyer for many years running, and a recurring participant in panels at the Duke Law Conference and the Practising Law Institute, and has testified before House Committees on antitrust matters. She is regularly invited to speak on privacy-related topics, including the upcoming Sedona Conference and the last Northern District of California Judicial Conference. *Id.* ¶ 42.

### C. Both Ms. Keller and Ms. Weaver have demonstrated that they are able to work cooperatively with the counsel who have filed these cases.

We are mindful of the deep talents of many of the lawyers in both the "settling" and "litigating" groups and believe that the class will benefit when counsel work together. We know this is possible because we have worked collaboratively with nearly all of the attorneys who have filed cases in this MDL—including actions involving Facebook, Apple, Volkswagen, Equifax, and Marriott—among others. At the same time, we have not entered into any agreements to support counsel in these applications. We trust in the Court's discretion and would welcome the opportunity to work with any of them on this very important and interesting case.

### CONCLUSION

Based on this foregoing, Plaintiffs R.S. and J.S., by their guardian, and Aparna Iyer, Brandy Johnson, Katherine Czajka, and Karina Quintero respectfully request that the Court appoint Amy Keller and Lesley Weaver to the leadership team in this consolidated action.

Dated: September 8, 2020                          Respectfully submitted by:

                                                                        */s/ Amy E. Keller*
                                                                        Amy E. Keller
                                                                        **DiCELLO LEVITT GUTZLER LLC**
                                                                        Ten North Dearborn Street
                                                                        Sixth Floor
                                                                        Chicago, IL 60602
                                                                        Telephone: (312) 214-7900
                                                                        akeller@dicellolevitt.com

*/s/ Lesley E. Weaver (w/ permission)*

Lesley E. Weaver
**BLEICHMAR FONTI & AULD LLP**
555 12th Street, Suite 1600
Oakland, CA 94607
Telephone: (415) 445-4003
Facsimile: (415) 445-4020
lweaver@bfalaw.com

*Counsel for Plaintiffs R.S. and J.S., by their guardian, and Aparna Iyer, Brandy Johnson, Katherine Czajka, and Karina Quinteiro*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served via this Court's CM/ECF service, which will send notification of such filing to all counsel of record who have registered to receive CM/ECF notifications in this action this 8th day of September 2020.

*/s/ Amy E. Keller*
Amy E. Keller