IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: TIKTOK, INC., | ) | MDL No. 2948 |
| CONSUMER PRIVACY | ) | |
| LITIGATION | ) | Master Docket No. 20 C 4699 |
| | ) | |
| | ) | Judge John Z. Lee |
| | ) | |
| This Document Relates to All Cases | ) | Magistrate Judge Sunil R. Harjani |

**JOINT DECLARATION OF AMY KELLER AND LESLEY WEAVER
IN SUPPORT OF THEIR JOINT APPLICATION FOR APPOINTMENT**

**JOINT DECLARATION**

Amy E. Keller of DiCello Levitt Gutzler LLC ("DiCello Levitt" and Lesley E. Weaver of Bleichmar Fonti & Auld LLP ("BFA") declare as follows:

1. We make this declaration in support of our joint application for appointment to the leadership team in the pending multidistrict litigation captioned *In re TikTok, Inc. Privacy Litigation*, MDL No. 2948 (N.D. Ill.). We represent Plaintiffs R.S. and J.S., through their guardian E.S., as well as Plaintiffs Katherine Czajka, Brandy Johnson, Karina Quinteiro, and Aparna Iyer. We represent minors and adults from the States of California and Illinois.

2. On May 11, 2020, BFA and DiCello Levitt filed a complaint on behalf of minors R.S. and J.S., asserting two causes of action for violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq.* ("BIPA"), in the United States District Court for the Northern District of California (the "*R.S.* Action"). *R.S., et al. v. TikTok, Inc.*, No. 20-cv-03212 (N.D. Cal.), *transferred* No. 20-cv-04728 (N.D. Ill.).

3. The *R.S.* Action contained allegations based upon our initial research concerning certain violations of state privacy laws affecting users of TikTok (the "App") on behalf of Illinois residents—allegations and causes of action that were not contained in the first-filed action, *Hong v. ByteDance, Inc.*, No. 19-cv-07792 (N.D. Cal.), but first filed in *P.S., et al. v. TikTok, Inc.*, No. 20-cv-02992 (N.D. Cal.), filed by Hausfeld LLP. Given the scope and complexity of the potential privacy violations at issue, we continued our investigation, consulting with five experts who specialize in the fields of deceptive user experience, dark patterns, and web privacy as well as biometric data collection, and retaining most in June. Without waiving any applicable privileges, in consultation with these experts, we carefully analyzed the factual bases for additional claims to assert in this litigation, which was quickly evolving into large-scale consolidated proceedings.

4. With the benefit of extensive insights of these subject matter experts, we strategically pled additional theories of liability, including a key cause of action for violation of the Video Privacy Protection Act, 18 U.S.C. §§ 2710, *et seq.* ("VPPA"), on behalf of Plaintiffs Brandy Johnson and Aparna Iyer, an Illinois resident and California resident, respectively, in the

Northern District of California (the "*Iyer* Action"). *Iyer, et al. v. TikTok Inc., et al.*, No. 20-cv-03795 (N.D. Cal.), *transferred* No. 20-cv-05217 (N.D. Ill.). No other counsel filed this claim at the time we filed; however, we worked cooperatively with counsel in the *Hong* action, providing them with research and work product to augment their work, and assist them in bringing their own VPPA claim.

5. We also anticipated defendants' challenges to Plaintiffs' claims, including the likely possibility that they will seek to move to compel Plaintiffs' claims to arbitration. We have made extensive allegations about TikTok's deliberate app design decisions, as informed by the expertise of a retained expert who is prepared to opine on whether TikTok's design decisions increased the likelihood that users would not notice the provision seeking to bind them to arbitrating their claims. *Iyer* Compl., ¶¶ 87-94.

6. After filing the *Iyer* Action, and before the Judicial Panel on Multidistrict Litigation transferred all pending cases to this Court, counsel for the Settling Plaintiffs (as that term has been defined in the Joint Case Management Statement, filed today) had scheduled a mediation with the Defendants. We previously expressed our hesitancy to engage in settlement discussions prior to the Panel's transfer order and prior to appointment of counsel.

7. After the Panel decided that the case should be transferred to the Northern District of Illinois, and following the unusual and unanticipated Executive Order requiring divestment of TikTok within 90 days, we requested to be included at the mediation. Settling Plaintiffs' counsel declined our request. Exhibit A.

8. Because the case is still in its early stages and class counsel had not yet been appointed, we continued our investigation, filing an amended complaint that incorporated additional claims after discovering that TikTok collected users 12-digit "media access control" or MAC addresses, allowing foreign governments and advertisers alike to build detailed dossiers on individuals who simply downloaded the TikTok App. The Amended Complaint also alleges new facts critical to the BIPA claim, augments the VPPA claim, and addresses the latest security issues

concerning TikTok's collection of MAC addresses. The Amended Complaint is attached hereto as Exhibit B.

9. We filed the Amended Complaint before the Settling Plaintiffs announced that their mediation had been successful. We are uncertain what claims the proposed settlement releases, and whether the Settlement contemplated these causes of action on behalf of those who had simply downloaded the App. We have requested that the terms of the proposed settlement be disclosed, but that request has not yet been honored. We remain uncertain about what claims the settlement releases, and thus are unable to support the proposed settlement at this time without being able to see or vet its terms.

## DECLARATION OF AMY E. KELLER

As it pertains to information within the personal knowledge of Ms. Keller, I, Amy E. Keller, declare as follows:

10. I am a partner at the law firm of DiCello Levitt Gutzler LLC ("DiCello Levitt") in Chicago, Illinois, and am chair of the firm's technology practice. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, could testify competently as to its contents.

11. I am a graduate of the University of Michigan in Ann Arbor, Michigan, and of The John Marshall Law School in Chicago, Illinois (now known as the UIC John Marshall Law School), where I served on the editorial board of *The John Marshall Law Review* and the school's Moot Court team. I have been practicing law for twelve years—primarily focusing on class action litigation given the class vehicle's ability to achieve meaningful relief for the largest amount of people. In my twelve years of practice, I have served as co-lead counsel in a number of nationwide class actions, becoming the youngest woman ever appointed to lead a nationwide, multidistrict class action after a contested leadership hearing.

12. Although I am younger than most applicants seeking leadership positions in cases of this size and magnitude, I have accumulated a great deal of experience litigating against some of the largest law firms in the country, receiving recognition for my professionalism, work product,

3

and—most importantly—results achieved for class members I represent. When appointed to the leadership of any class action case, I personally work on the case, myself, and am committed to playing an active role in the cases in which I seek leadership positions. At the same time, I am committed to providing opportunities to younger associates to assist on my cases while maximizing efficiencies to the class.

### *DiCello Levitt, My Experience, and My Knowledge of the Applicable Law*

13. With offices in Chicago, Cleveland, New York, and St. Louis, DiCello Levitt is a boutique litigation firm with a nationwide practice. Representing institutional investors, individuals, businesses, and public clients, the firm's attorneys have successfully prosecuted and settled numerous complex cases and class actions.

14. Although our firm is fairly young—having opened its doors in April 2017—we have already recovered billions of dollars for the firm's clients and class members. The firm's first class settlement led Mike Bowers, Georgia's former Attorney General, to characterize the litigation on behalf of small business owners against a major credit card processor as a "work of art," and "one of the best pieces of legal work I have ever observed." *Champs Sports Bar & Grill v. Mercury Payment Systems, LLC*, No. 16-cv-00012, ECF No. 82-2 ¶ 19 (N.D. Ga. July 31, 2017). Our experiences and successes are attached hereto as Exhibit C.

15. Since then, partners at the firm have been appointed to numerous leadership positions in courts across the country—including representing state attorneys general and classes of aggrieved consumers. The firm's attorneys have successfully led—and are presently leading—many large class and multidistrict actions—including against industry titans such as Apple, Intel, General Motors, and Equifax, and are also representing businesses, investors, and consumers in arbitrations and litigation in multiple courts and forums throughout the country.

16. I, along with several partners at my firm, presently represent the States of Michigan and New Mexico in several ongoing complex litigations. *See, e.g., Dana Nessel on Behalf of the People of the State of Michigan v. 3M Company, et al.*, No. 20-03366-NZ (Mich. Cir. Ct., Kent County) (appointed to represent the State of Michigan as Special Assistant Attorney General along

with partner Adam Levitt); *State of New Mexico ex. rel. Hector H. Balderas v. Volkswagen Group of America, Inc., et al.*, No. D-101-CV-2016-00131 (N.M. First Judicial Dist. Ct., Santa Fe County) (special commission with other firm attorneys to represent the State of New Mexico); *State of New Mexico ex. rel. Hector H. Balderas v. Takata Corporation, et al.*, No. D-101-CV-2017-00176 (N.M. First Judicial Dist., Santa Fe County) (same).

17. I have also been appointed to leadership positions in several consumer cases since joining the firm, including cases involving data breach and privacy litigation. *See, e.g., In re Fairlife Milk Products Litig.*, No. 19-cv-3924 (N.D. Ill.) (appointed co-lead counsel by Judge Robert M. Dow, Jr.); *In re Marriott International, Inc. Customer Data Security Breach Litig.*, No. 19-md-2879 (D. Md.) (appointed co-lead counsel); *In re American Medical Collection Agency, Inc. Customer Data Security Breach Litig.*, No. 19-md-2904 (D.N.J.) (appointed co-lead counsel of one track of the litigation); *In re Equifax, Inc. Customer Data Security Breach Litig.*, No. 17-md-2800 (N.D. Ga.) (appointed co-lead counsel; settlement valued at $1.5 billion); *In re Apple Inc. Device Performance Litig.*, No. 18-md-2827 (N.D. Cal.) (appointed to plaintiffs' executive committee, serving as co-chair of law and briefing; settlement of up to $500 million to consumers).

18. When I was appointed co-lead counsel of the *Equifax* litigation, I became the youngest woman to be selected as a lead counsel in a multidistrict, nationwide class action at 34 years old. Along with my co-lead counsel, I oversaw a plaintiffs' steering committee, liaison counsel, and state coordinating counsel; directed litigation strategy; and worked to achieve "the largest and most comprehensive recovery in a data breach case in U.S. history by several orders of magnitude." No. 17-md-2800-TWT, 2020 WL 256132, at *6 (N.D. Ga. Mar. 17, 2020).

19. In the *Marriott* litigation, represent approximately 300 million Starwood customers as co-lead counsel, and achieved a significant victory with my team when the court largely denied Marriott's motion to dismiss, finding—among other things—that plaintiffs had pleaded sufficient information to assert that personal information has value. No. 19-md-2879, 2020 WL 869241, at *8 (D. Md. Feb. 21, 2020). We also secured another significant victory when the court later denied Marriott's request for an interlocutory appeal.

5

20. I also served in the role of co-chair of law and briefing in the international *Apple Device Performance Litigation*, helping to secure significant rulings—including on a motion to dismiss—where the court found that plaintiffs' computer fraud and abuse act claims could be sustained where the company failed to make adequate disclosures about program code before software updates are installed. 387 F. Supp. 3d 434, 452 (N.D. Cal. 2018). The case recently settled for up to $500 million in compensation to class members.

21. I have worked with a number of the individuals who are either seeking appointment as co-lead counsel or as members of the plaintiffs' steering committee in this action in the cases listed above, and would welcome the opportunity to work collaboratively with them again.

22. I have additional experience in the issues being litigated in this action through my work with the Sedona Conference (as detailed below), and having assisted in drafting the amicus brief in *Rosenbach v. Six Flags Entm't Corp.*, 129 N.E.3d 1197 (Ill. 2019), concerning the Illinois Biometric Information Privacy Act.

23. The firm's partners are nationally-recognized leaders in technology, privacy, and data breach litigation. In 2020, *The National Law Journal* recognized DiCello Levitt with the award of Privacy and Data Breach Practice Group of the Year, and recognized me as an Elite Woman of the Plaintiffs' Bar. I have been recognized as a Plaintiffs' Trailblazer for privacy and technology litigation and Top 40 Under 40 by *National Trial Lawyers*, and have been selected as a *SuperLawyers* "Rising Star" every year since 2016. Other partners in my firm are also recognized leaders—acknowledged by *SuperLawyers* and Leading Lawyers by Law Dragon, and AV-rated by Martindale-Hubbell. Additionally, I, like my partner Adam Levitt, am an elected member of the American Law Institute. I am a two-time chair of the Chicago Bar Association's Class Action Committee and continue to serve as a member of both the Class Action Committee and the Cyber Law and Data Privacy Committee.

24. DiCello Levitt's successes and settlements have been profiled in a variety of national and international media—including *The New York Times*, *The Wall Street Journal*, *Law.com*, *The National Law Journal*, *Bloomberg Law*, *BBC News*, *CNBC*, and *CBC News*. We are

6

frequently asked to comment on new developments in the law, including providing testimony to the Illinois Supreme Court Rules Committee, and serving as panelists at conferences as well as collaborative roundtables with defense firms. This collaboration to advance the law extends to my membership in the Sedona Conference's Working Group 11, which focuses on litigation issues surrounding technology, privacy, artificial intelligence, and data security, and I have served on a number of drafting teams for model statutes and the calculation of statutory damages through the Sedona Conference.

25. Our firm is well-staffed and resourced, and during a time when many firms were laying off or reducing the salaries of attorneys and support staff due to the SARS CoV-2 epidemic, we hired seven additional employees—including four support staff members, three associates, and two partners. Consistent with the firm's newly-developed Strategic Planning Committee, our hiring process focused on, and was successful in, hiring diverse candidates.

26. The firm's excellent financial health also ensures that we do not need to take advantage of third-party litigation financing.

27. Our firm's success is based, in part, on our diverse practice areas—representing individual consumers, patients, and employees; institutional investors; small businesses; and public clients. Our firm is also discerning in its case-selection process, bringing not only challenging cases and impact litigation that will advance the law, but also those cases that have strong legal theories and facts to ensure success. When partners at the firm decide to bring any litigation, we focus on ensuring that the cases are "trial-ready" through the choices we make from the pleading stage, through discovery, and after summary judgment via the use of our own in-house focus-group practice led by firm partner Bobby DiCello. By using focus groups to fine tune legal theories before they are presented to a jury, we can ensure that the class is receiving the best representation possible.

28. If selected to a leadership position, I will be assisted in this litigation by associate Adam Prom, who will be returning from paternity leave in three weeks. Mr. Prom primarily focuses on consumer protection litigation, including in class actions and arbitrations. Mr. Prom

also represents whistleblowers and other governmental entities in false claims act, securities, and environmental litigation. He was recognized as a SuperLawyers Illinois "Rising Star" in 2019 and 2020. With respect to his class action work, Mr. Prom has a significant amount of experience in noteworthy roles in consumer multidistrict litigations, including *Navistar Maxxforce Engines Marketing, Sales Practices and Products Liability Litigation*, No. 1:14-cv-10318 (N.D. Ill.), *In re Fairlife Milk Products Marketing and Sales Practices Litigation*, MDL No. 2909 (N.D. Ill.), and *In re Ford Motor Co. F-150 and Ranger Truck Fuel Economy Marketing and Sales Practices Litigation*, No. 19-md-2901 (E.D. Mich.). He also has contributed in meaningful ways to numerous other ongoing and resolved consumer class actions, including *T.S. Kao, Inc. v. N. Am. Bancard, LLC*, No. 16-cv-04219 (N.D. Ga.) (nationwide, $15 million settlement related to credit card processor overcharging merchants), *In re ConAgra Foods, Inc.*, No. CV 11-05379-CJC(AGRx) (C.D. Cal.) (settlement after eight years of hard-fought litigation, resulting in consumers receiving 35% more than they could have achieved at trial), and *Catalano v. BMW of N. Am., LLC, et al.*, No. 15-cv-04889 (S.D.N.Y.) (nationwide settlement providing repair and replacement of certain electrical parts in automobiles). Regarding Mr. Prom's arbitration work, he has assisted with arbitrations before JAMS and the AAA from initial filing of the demand through post-hearing briefing and entry of awards. Relevant for purposes of this litigation, Mr. Prom helped lead a mass consumer arbitration (over 3,000 individual claims) before the AAA. Of those claims, several of them proceeded to full evidentiary hearings and post-hearing briefing in which Mr. Prom was co-lead counsel, and he has secured awards in favor of consumers.

***Willingness to Commit Necessary Resources and Collaborative Working Relationship***

29. DiCello Levitt is prepared to dedicate all resources necessary to advance the litigation and litigate the consolidated class action to a successful resolution. Having had significant success in the past with some of the largest corporate entities, represented by the largest and most well-resourced law firms, we anticipate no difficulties in litigating this case to a successful resolution.

30. Ms. Weaver and I have a collaborative relationship, and members of my firm have enjoyed working with BFA's attorneys and support staff. If selected to the leadership team of this litigation, BFA and DiCello Levitt would work collaboratively with any leadership structure to ensure the efficient litigation of the consolidated class action cases, committing to review time and expenses, and submit them for *in camera* review throughout the pendency of the litigation. If selected, Lesley Weaver and I—along with a small number of attorneys and support staff from our firms—will continue our personal and active involvement in the litigation.

**DECLARATION OF LESLEY E. WEAVER**

As it pertains to information within the personal knowledge of Ms. Weaver, I, Lesley E. Weaver, declare as follows:

31. I am the Partner-in-Charge of the California office of Bleichmar Fonti & Auld LLP ("BFA") and head of its Antitrust and Consumer litigation department. I am counsel of record for Plaintiffs in *R.S., et al., v. TikTok, Inc., et al.,* No. 20-cv-04728, and *Iyer, et al., v. TikTok, Inc., et al.,* No. 20-cv-05217. I have personal knowledge of the facts set forth in this declaration. If called as a witness, I could and would competently testify thereto under oath.

32. I am a graduate of Harvard/Radcliffe College, *magna cum laude*, and the University of Virginia School of Law. I co-founded the Domestic Violence Project at the University of Virginia and was an active and one of the few out women at the Lambda Law group. After a brief stint at firms focused primarily on defense litigation, I turned to plaintiffs' practice. My experience at some of the country's largest and successful plaintiffs' firms was meaningful and extensive. My current firm is equally successful in its short tenure and is founded upon principles of transparency, high ethical standards and the concept of case selection: identifying important cases, researching them, and crafting the best claims available so that litigation is efficient, aggressive and meaningful. We also give significant opportunity to younger attorneys and demonstrate our commitment to diversity with more than lip service: in hiring, assignments, training and compensation.

33. For more than twenty years, my practice has focused on impact litigation – bringing cases that are not only legally correct, but of legal or social significance. Recently, I have been a significant contributor in the Volkswagen "Clean Diesel" litigation, including direct involvement in the complexities of that settlement, including negotiating with foreign agencies with interests in the outcome and acting as a collegial bridge with certain U.S. regulators so that we were all pulling in the same direction. I am co-lead counsel in the action against Facebook arising out of the Cambridge Analytica scandal. If I have specialized, it is less in subject matter and more in pursuing cases that matter and will create important precedent. My work has been primarily in the context of class actions, because these have greater reach and impact.

34. I am committed to playing an active role in the cases in which I seek a lead role. If I cannot commit to the work required, I either do not move, or I step aside and let others seek the role. We do not have figurehead litigators at our firm and we offer opportunity and recognition to the talented lawyers working our cases.

***Experience in handling class actions and other complex litigation involving the types of claims asserted in the action***

35. BFA was founded in 2014 and has with offices in New York City, Oakland, California, and Toronto, Canada. The firm's strength is in plaintiff-side complex litigation, including the prosecution of consumer, antitrust, and securities actions on behalf of consumers, governmental entities, and institutional investors. A resume that more fully details the firm's experience and successes is attached hereto as Exhibit D.

36. Since 2014, BFA has secured settlements totaling over $19 billion for its clients. This remarkable achievement is due in part to the extensive experience of the firm's partners in the last two decades prosecuting complex class actions. Indeed, while BFA is relatively new, our collective experience rivals that of older peer firms, as evidenced by our recognition as a top-ten firm measured by amount recovered in securities litigation in 2015 (ISS Securities Class Action Services' Top 50 Report for 2015) and a top 15 firm in 2016 (ISS Securities Class Action Services' Top 50 Report for 2016).

37. Our attorneys are nationally recognized as leading litigators in the field of privacy, consumer, and securities litigation, and our achievements have been profiled in a variety of national and international media, including *The Wall Street Journal*, *The New York Times*, *Law 360*, Law.com, the *National Law Journal's* Plaintiffs' Hot List, the *Legal 500*, ZDF Today, and Deutsche Welle TV. We are also frequently asked to comment on breaking developments in antitrust, consumer, financial fraud, securities, and other investment-related issues.

38. As head of BFA's Antitrust and Consumer litigation department, I bring over twenty years of law practice dedicated to litigating significant cases that protect the public interest, public entities and consumers from harmful, fraudulent conduct. I have substantial leadership experience prosecuting complex class litigation on behalf of plaintiffs and have been appointed to leadership positions in some of the largest and most impactful class actions in the country, including:

- Judge Chhabria of the Northern District of California appointed me Co-Lead Counsel for plaintiffs in *In re Facebook, Inc. Consumer Privacy User Profile Litigation*, No. 18-md-02843-VC. The litigation consolidates numerous cases filed around the country alleging that Facebook violated consumer fraud and privacy laws by enabling hundreds of thousands of third parties, including Cambridge Analytica, to bundle and sell access to Facebook users' private content and information without users' knowledge or consent.

- Judge Charles R. Breyer selected me from a field of 150 lawyers around the country to join the Plaintiffs' Steering Committee in *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, No. 15-md-02672-CRB. That case resulted in settlements totaling more than $17 billion on behalf of consumers and the environment. I was involved in settlement negotiations in that matter and played a key role in litigating claims against defendant Bosch. I also led the prosecution of claims against Audi relating to a defeat device found in gas vehicles, which I discovered working closely with experts.

- Judge Charles R. Breyer also appointed me to the Plaintiffs' Steering Committee in *In re German Automotive Manufacturers Antitrust Litigation*, No. 17-md-02796-CRB. Consumers and suppliers allege that German automakers engaged in a 20-year cartel—the single largest known automobile cartel in U.S. and European history—to suppress the development of technology in their automobiles.

- Judge Edward M. Chen appointed me to the Plaintiffs' Steering Committee in *In re Chrysler-Dodge-Jeep EcoDiesel Marketing, Sales Practices, and Products Liability Litigation*, No. 3:17-md-02777-EMC. I worked closely with technical experts in that matter to determine if proposed fixes to the subject vehicles inflicted additional damages upon class members. The proposed settlement in that action totals nearly $800 million; consumers will recover roughly $3,000 per vehicle.

- Judge Edward J. Davila selected me as interim Co-Lead Counsel in *In re Inductors Antitrust Litigation*, No. 18-cv-00198-EJD. In that matter, I represent a class of small businesses that directly purchased inductors, a key electronic component of electronic circuits found in smart phones, laptops, and computers, from largely foreign manufacturers. There is an ongoing criminal investigation into whether those defendants conspired to fix prices of their products.
- Judge John A. Kronstadt of the U.S. District Court for the Central District of California appointed me to the Plaintiffs' Steering Committee for the multidistrict litigation *In re ZF-TRW Airbag Control Units Products Liability Litigation*, No. 19-ml-02905. The case concerns over 12 million cars sold with allegedly defective airbag control units. The defect, which may prevent airbags from inflating in the event of crash, has been linked to four deaths and six serious injuries.

*Knowledge of the applicable law*

39. I have extensive experience representing consumers seeking redress for privacy violations. Prior to serving as Co-Lead counsel in *In re Facebook, Inc. Consumer Privacy User Profile Litigation*, in October 2014, I tried an internet privacy case against a Chinese-owned, California-based internet site, delivering opening and closing statements. Plaintiffs recovered 100% of economic damages and won a $15 million punitive damages jury verdict, as well as significant injunctive relief.

40. Together with co-counsel, my firm is litigating *Calhoun v. Google LLC*, No. 5:20-cv-05146-LHK (N.D. Cal.), a nationwide data privacy class action based on extensive expert analysis showing that Chrome sends users' personal information, including their browsing history, to Google regardless of whether a user elects to Sync or even has a Google account, despite Google's promise that the "personal information that Chrome stores won't be sent to Google" unless the user turns on Sync.

41. I am regularly invited to speak on privacy-related topics and am a recurring speaker on panels at the Duke Law Conference and the Practising Law Institute. Some of my additional recent speaking engagements include:

- Panelist, *Valuing Non-Economic Damages in Class Actions*, 18th Annual Impact Fund Class Action Litigation Conference (Feb. 21, 2020).

- Moderator, *The Short and Longer Term Privacy Implications of "Solving" Pandemics With Big Data, Contact Tracing, Surveillance and Other Emergency Measures*, Bar Association of San Francisco (June 9, 2020).
- Panelist, *Who Let the Data Out? Data Protection and Privacy Law in the 2020s*, Northern District of California Judicial Conference (April 13, 2019).

42. I am a member of The Sedona Conference Working Group 11 on Data Security and Privacy Litigation and Working Group 6 on International Electronic Information Management, Discovery and Disclosure. I also serve as an Executive Committee Member for the Cybersecurity and Privacy Law Section of Bar Association of San Francisco. I have been recognized as a Super Lawyer by Thomson Reuters for many years, and, in 2018, I received the California Lawyer of the Year (CLAY) Award in 2018 and named a "Plaintiff Trailblazer" by the National Law Journal.

*Willingness to commit significant resources to representing the class*

43. BFA is prepared to dedicate all resources necessary to protect the interests of Plaintiffs and the putative class members and to litigate this consolidated class action to a successful outcome. BFA is self-funded. My firm has successfully litigated matters against some of the largest corporate entities and industry giants. This case will be no different.

We declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed September 8, 2020.


*/s/ Lesley E. Weaver (w/permission)*  
Lesley E. Weaver  
In Traverse City, Michigan

*/s/ Amy E. Keller*  
Amy E. Keller  
In Chicago, Illinois

13