# EXHIBIT D

```
         BEFORE THE UNITED STATES JUDICIAL PANEL
                ON MULTIDISTRICT LITIGATION


IN RE TIKTOK, INC., CONSUMER .    MDL Number 2948
PRIVACY LITIGATION           .    July 30, 2020
- - - - - - - - - - - - - - -    1:20 p.m.


                 TRANSCRIPT OF ORAL ARGUMENT


BEFORE:    HONORABLE KAREN K. CALDWELL, CHAIR
           United States District Court
           Eastern District of Kentucky

           HONORABLE ELLEN SEGAL HUVELLE
           United States District Court
           District of Columbia

           HONORABLE R. DAVID PROCTOR
           United States District Court
           Northern District of Alabama

           HONORABLE CATHERINE D. PERRY
           United States District Court
           Eastern District of Missouri

           HONORABLE NATHANIEL M. GORTON
           United States District Court
           District of Massachusetts

           HONORABLE DAVID C. NORTON
           United States District Court
           District of South Carolina

           HONORABLE MATTHEW F. KENNELLY
           United States District Court
           Northern District of Illinois


Official Court Reporter:    SARA A. WICK, RPR, CRR
                            U.S. Courthouse, Room 4704-B
                            333 Constitution Avenue Northwest
                            Washington, D.C. 20001
                            202-354-3284

Proceedings recorded by stenotype shorthand.
Transcript produced by computer-aided transcription.
```

```
 1    APPEARANCES:

 2    For Plaintiff A.S.:         ELIZABETH A. FEGAN, ESQ.
                                  Fegan Scott, LLC
 3                                150 South Wacker Drive, 24th Floor
                                  Chicago, Illinois 60606
 4
      For Plaintiff E.R.:         KATRINA CARROLL, ESQ.
 5                                Carlson Lynch LLP
                                  111 West Washington Street
 6                                Suite 1240
                                  Chicago, Illinois 60602
 7
      For Plaintiffs Misty Hong,
 8    et al.:                     EKWHAN E. RHOW, ESQ.
                                  Bird, Marella, Boxer, Wolpert,
 9                                Nessim, Drooks, Lincenberg &
                                     Rhow, P.C.
10                                1875 Century Park East, 23rd Floor
                                  Los Angeles, California 90067
11
      For Plaintiff C.H.:         MICHAEL GERVAIS, ESQ.
12                                Susman Godfrey L.L.P.
                                  1900 Avenue of the Stars, Suite 1400
13                                Los Angeles, California 90067

14    For Defendants TikTok,
      Inc., et al.:               ANTHONY J. WEIBELL, ESQ.
15                                Wilson Sonsini Goodrich & Rosati
                                  650 Page Mill Road
16                                Palo Alto, California 94304

17

18

19

20

21

22

23

24

25
```

```
 1                      P R O C E E D I N G S
 2          (All participants present via video conference.)
 3              JUDGE CALDWELL:  The panel will now hear MDL Number
 4   2948, TikTok Consumer Privacy Litigation.
 5              MS. FEGAN:  Good afternoon, Your Honors.  Good
 6   afternoon, Judge Huvelle.  It's nice to see you.
 7          I am speaking today on behalf of the movant, A.S., in the
 8   Southern District of Illinois.  We also have a case pending in
 9   the Northern District of Illinois on behalf of Darcy Tellone and
10   her minor children.
11          Your Honor, these cases are about a popular social media
12   app. largely used by minors to post dances and other videos.  18
13   of the 19 cases pending allege a violation of the Illinois
14   Biometric Info Privacy Act.  This particular act was enacted in
15   2008 and is the only one of its kind in the nation that provides
16   for a private right of action.  All but three of the pending
17   cases allege a BIPA violation, and 31 of the 36 plaintiffs in
18   the cases across the country are Illinois plaintiffs.
19           No party opposes consolidation or centralization, and the
20   question, therefore, is where these cases will go.  I'm
21   advocating today for the Southern District of Illinois.  The
22   case there is pending before Chief Judge Rosenstengel.
23          The Hong plaintiffs in California moved to intervene in
24   this case and moved to dismiss it.  Judge Rosenstengel rejected
25   that attempt, and she specifically said a number of things which
```

1    demonstrate that these cases belong in Illinois, either before
2    Judge Lee in Chicago or before her in the Southern District.
3        She said this action was brought by Illinois plaintiffs,
4    under Illinois law, in Illinois, and the Court does not see why
5    a court in California is any better place to adjudicate this
6    action.  She said that this Court's more familiar with BIPA than
7    a court in California and would be significantly less convenient
8    for the majority of the Illinois plaintiffs.  And finally, she
9    concluded that this Court has a strong interest in applying
10   Illinois law to protect Illinois citizens and is not inclined to
11   entertain the proposed motions that would adjudicate these
12   claims in California.
13       We believe that the Southern District of Illinois is an
14   appropriate forum for these cases.  There are not currently any
15   pending MDLs in the Southern District compared to the other
16   districts before the panel.  In the alternative, we would
17   support Northern District of Illinois, but under no circumstance
18   does it make sense to send this Illinois-based matter to
19   California.
20       Thank you.
21            JUDGE CALDWELL:  Thank you.
22       Counsel -- I mean panel members, do you have questions for
23   Ms. Fegan?  Yes, Judge Perry.
24            JUDGE PERRY:  What about the caseload in the Southern
25   District?  I believe there's still two judicial vacancies.

1   There are only -- how many active district judges are there?
2       They have very high numbers.  Do you believe that that
3   district has the bandwidth at the current time to handle this
4   case?
5           MS. FEGAN:  You are correct, Your Honor.  There are
6   only three active judges, I believe.  But Judge Rosenstengel has
7   indicated, I believe, that she has the capacity and that she has
8   a strong interest in applying Illinois law.
9       The alternative would be Judge Lee in Chicago, who we would
10  also support and who we have litigated before.  I do believe
11  that he currently has at least one MDL pending before him.  But
12  either alternative we would be comfortable with.
13          JUDGE CALDWELL:  Any other panel members?
14      Thank you very much, Ms. Fegan, for your argument.
15          MS. FEGAN:  Thank you very much.
16          JUDGE CALDWELL:  The Court will now recognize Katrina
17  Carroll.  Yes, ma'am.
18          MS. CARROLL:  Hello, panel.  Can everybody hear me?
19          JUDGE CALDWELL:  Yes.
20          MS. CARROLL:  Okay.  Great.  I am Katrina Carroll.  I
21  am with the firm Carlson Lynch.  I represent the plaintiff E.R.
22  in the Northern District of Illinois, along with six other
23  plaintiffs in our consolidated action, and I am here making the
24  pitch for the Northern District of Illinois.
25      As Ms. Fegan just said, this case is Illinois centric.  The

1     vast majority of the cases comprising the MDL, 16 of the 19, are
2     exclusively brought as Illinois statutory state law claims.  And
3     I don't need to go any further on what Ms. Fegan just said.
4         What I wanted to tell you is Illinois, the Northern
5     District of Illinois is the natural center of gravity here.
6     There are seven cases pending in this district, more than in the
7     Southern District, but together, there are more Illinois cases
8     than in the Northern District of California.
9         In terms of the natural center of gravity, this case has
10    been very streamlined and has been proceeding on an incredibly
11    organized track and being overseen by Judge Lee.  Judge Lee
12    appointed me as interim lead counsel pending these MDL
13    proceedings.  I have been able to successfully coordinate with
14    counsel in the related cases in my district and also with
15    Ms. Fegan and the other counsel in the Southern District of
16    Illinois and the Central District of California.
17         I think those efforts have been productive, fruitful, and
18    streamlined to date.  And as a result, we are proceeding in a
19    streamlined and organized fashion, as I told the panel in my
20    papers, to a mediation that's scheduled for August 13th.
21        Everybody is working cooperatively.  And in my efforts of
22    coordination, I really tried hard to get everyone on board.
23    Unfortunately, we weren't able to get everyone on board, and the
24    Northern District of California is not willing to participate.
25    Unfortunately, because of that lack of unanimity, we need the

1    panel's intervention, and that's why we are requesting
2    centralization.
3         Everybody is proceeding to mediation.  We're on track in
4    working collaboratively.  And we would like that process to
5    continue.  As you all should know, this case does involve a
6    matter of crucial importance.  It involves the privacy interests
7    of minors, and we feel like our progress made thus far in this
8    litigation should continue, and we feel that centralization
9    would allow us to do that.
10              JUDGE CALDWELL:  Thank you.
11        Do we have questions from panel members?
12        Thank you very much, Ms. Carroll.  That concludes your
13   argument.
14              MS. CARROLL:  Thank you, Judges.
15              JUDGE CALDWELL:  The Court will now recognize
16   Ms. Rhow -- or Mr. Rhow.  I'm sorry.
17              MR. RHOW:  Good afternoon, Your Honors.  My name is
18   Ekwhan Rhow.  I am interim lead counsel in the Northern District
19   of California, and we support centralization in that district.
20        It is in the Northern District of California where the two
21   primary U.S.-based defendants, in fact the only two U.S.-based
22   defendants are located.  ByteDance, which is the focal point of
23   this entire case, has its headquarters in Palo Alto.  TikTok,
24   which is the other important defendant, has its engineering
25   offices in Palo Alto and Mountain View, which again is in the

1  Northern District.  The Northern District is the location of the
2  source code, both current and former employees, as well as the
3  documents, the relevant communications with the other two
4  Chinese-based defendants that occurred within the district, and
5  the theft of the private data that is at issue was orchestrated
6  from the district.
7  Judge Koh has been managing the case.  She is clearly an
8  experienced jurist who just recently completed the Yahoo! data
9  privacy MDL.  She has no MDLs pending except one on appeal and
10 is available to take the case.  That has been established by how
11 she managed it.  She managed it efficiently, effectively, such
12 that the case has progressed more than the others.
13 The Hong case was filed five to six months before any of
14 the other cases, which means the attorneys, the investigators,
15 the experts have been working on this case for many months
16 before that.  In the Hong case, importantly, the Chinese
17 defendants, who are not named in every other case and who are
18 crucial to the conspiracy, have appeared and have responded to
19 discovery, and that has not occurred in any other case.  In
20 fact, in March and April, there was discovery responses that
21 were received.
22 In April, a full-day mediation did occur.  After that
23 mediation, Judge Koh set a trial date, a full case schedule,
24 ruled on competing Rule 23(g) motions, and appointed interim
25 lead counsel.  Pursuant to her order, we will be filing a

1  consolidated amended complaint next week.  So this case will
2  progress more than any other.
3      In closing, I would like to say, this is not just a BIPA
4  case.  This is not a case just about minors.  It has California
5  and federal claims that go beyond BIPA, class members that go
6  beyond Illinois, and relief that goes beyond simply statutory
7  penalties.
8      In terms of the case itself, it also goes beyond factually
9  biometrics.  It goes into user ID, device ID, and private user
10 videos.  All of them have common facts requiring centralization
11 that should be heard in the Northern District of California.
12     JUDGE CALDWELL:  Thank you.
13 Panel members, do you have any questions?  Yes, Judge
14 Huvelle.  Judge Huvelle, you're muted.
15     JUDGE HUVELLE:  Counsel, what do you make of the
16 argument from your prior colleagues that this belongs in
17 Illinois, especially because of the Illinois Biometric
18 Information Privacy Act?
19     MR. RHOW:  Well, a couple points.  First of all, in
20 terms of TikTok, TikTok did not direct any specific conduct to
21 Illinois.  This is an app. that's provided to people throughout
22 the country.  It's not provided just to minors.  It's clearly
23 college students, my wife.  A lot of people use this app. for a
24 variety of reasons.  So the notion that somehow some conduct was
25 directed to Illinois is not true.  Yes, that statute, the BIPA

1     statute is in play, but if you look at our complaint, so are a
2     host of California statutes, so are federal statutes, so are
3     common law claims.
4          And in addition, perhaps most importantly, in terms of our
5     class action, the most effective and importantly is not going to
6     be statutory penalties; it's going to be the injunctive relief
7     that must apply not just to the U.S. domestic defendants but
8     also to the Chinese defendants.  That injunctive relief is
9     available in our complaint and needs to be imposed to protect
10    not just Illinois residents, but the entire nation.
11               JUDGE CALDWELL:  Other questions from the panel?  Yes,
12    Judge Proctor.
13               JUDGE PROCTOR:  You had a mediation in April that was
14    unsuccessful?
15               MR. RHOW:  That's correct.
16               JUDGE PROCTOR:  And there was a mediation scheduled
17    for next week.  Were you one of the ones that opted not to
18    participate in that?
19               MR. RHOW:  That's correct.
20               JUDGE PROCTOR:  Why?
21               MR. RHOW:  We had the benefit of having mediated, by
22    the way, before the very same judge, Judge Layn Phillips, in
23    April.  Very clearly back then -- and I don't know if I am at
24    liberty to go into the actual discussions.  But based on what we
25    know from back then, nothing has changed between then and now.

1  So the notion that this successive mediation, which TikTok would
2  like to do, would be productive, we think is not in the best
3  interest of the class. We have every intention and would like
4  to cooperate based on the request, but our duty is really to the
5  class members. Based on what was said at that mediation, we do
6  not believe it would be an effective mediation.
7     In addition, centralization is key here, because if there
8  is no centralization prior to that mediation, this becomes a
9  reverse auction where TikTok, sitting as a single-party
10 defendant, can take the lowest bid from a variety of people who
11 don't all represent the same folks. The Illinois plaintiffs are
12 minors, 14 to 17. There's a whole set of class members around
13 the country whose voices need to be heard in a centralized
14 fashion.
15    And so for that reason, again in the best interest of the
16 class, we have declined to participate. Of course, knowing that
17 after we take further discovery, after we litigate, after we
18 prove the claims we need to prove, that may be a better time and
19 a more ripe time for a mediation.
20        JUDGE CALDWELL: Any other panel members have
21 questions for Mr. Rhow?
22    Thank you, sir.
23        MR. RHOW: Thank you.
24        JUDGE CALDWELL: The panel will now recognize Michael
25 Gervais.

1                MR. GERVAIS:  Good afternoon, panel.  Michael Gervais
2       with the law firm Susman Godfrey on behalf of plaintiff C.H., a
3       minor.  We filed in the Central District of California.
4           As I say in my papers, we are in favor of centralization in
5       the Central District of California, in the alternative the
6       Northern District of California, and I would also add a
7       modification, which is that we are also fine with centralization
8       in the Illinois districts as well.
9           I would respectfully submit that the Central District of
10      California is most well-suited for centralization of these
11      cases.  First, the Central District of California is where the
12      primary defendant TikTok maintains its headquarters in the
13      United States.  It's where its executive works from -- well,
14      maintains offices in the Northern District of California.  It's
15      principal place of business is here in Los Angeles.
16          In addition, Musical.ly, which is a predecessor app. that
17      TikTok acquired and merged -- acquired its users and merged
18      data, we believe, was based here in Los Angeles as well.  Given
19      the location of TikTok and Musical.ly here in the Central
20      District of California, I anticipate a substantial number of
21      witnesses and documents will be located here.
22          Second, Los Angeles is an easily accessible district.  LAX
23      is an international airport with many flights, and it would be
24      very easy for overseas witnesses from China to fly into.
25          Third, the Central District of California is very capable

1    of efficiently handling large consolidated proceedings.  I
2    understand the panel takes into account the needed time to
3    disposition.  And the Central District of California, the last
4    statistics I saw show that it has the shortest time to
5    disposition.  Of course, the world has significantly changed
6    since those statistics came out, but I don't believe that those
7    changes mean that the time to disposition has quickened.
8         Fourth, Judge Birotte is an experienced jurist.  He's
9    handled MDLs before.  And I think he will be well-suited to
10   handle this one.
11        If -- well, with that, I will yield my time.
12             JUDGE CALDWELL:  Very well.  Any questions from the
13   panel?
14        Hearing none, that concludes your argument.  We will now
15   hear the argument of Mr. Weibell for TikTok.
16             MR. WEIBELL:  Good afternoon, Your Honors.  Anthony
17   Weibell for the defendant TikTok and all defendants in these
18   actions from the law firm of Wilson Sonsini Goodrich & Rosati in
19   Palo Alto, California.
20        All of the defendants support centralization of the actions
21   in either the Northern District of Illinois with Judge Lee or,
22   alternatively, in the Northern District of California with Judge
23   Koh.
24        All parties to these cases agree that centralization is
25   appropriate.  All of the cases involve the same product.  It's

1   the TikTok mobile app.  All of the cases turn on the predicate
2   allegation that the app. is collecting information from users
3   without adequate disclosures and consent.  So as far as
4   overlapping facts, we think the factors are very well met here
5   in these cases, and really, the issue is where to centralize the
6   actions.
7         In our view, we are not opposed to centralization either at
8   the Northern District of California or the Northern District of
9   Illinois.  We think both of the judges in those districts that
10  have the bulk of the cases pending before them are very well
11  equipped to handle the MDL.  They have prior experience in those
12  districts.  They have the current capacity that makes them a
13  more favorable venue than some of the alternatives.
14        In our view, you know, even though California is my home
15  court and we usually prefer to be there, I think in fairness, it
16  does seem like the Illinois courts would be a more appropriate
17  forum for this, given the BIPA claim, the Illinois Biometric
18  Information Privacy Act claim.  I know some of the other counsel
19  have spoken to that.
20        Really, the BIPA claim is the big gorilla here.  The
21  statutory damages that are available under BIPA make that claim
22  far more important than any other claim in this case.  It just
23  dwarfs everything else, given the very high statutory damages
24  and the fact that the other claims really don't have any meat to
25  them.  And so it will be very important for that claim to be

1 decided and adjudicated properly, as well as the very novel
2 issues that are presented in this case which make this case
3 different than other BIPA cases that have come before it.  And
4 out of fairness, it probably makes sense for the Illinois judges
5 to decide that issue.
6     Thank you.
7         JUDGE PERRY:  We seem to have lost the chair
8 momentarily.  Judge Huvelle, do you want to ask -- I mean, I
9 guess, are any of the judges going to ask questions?
10         JUDGE HUVELLE:  Does anybody have questions for the
11 litigant?
12     Well, not hearing any, we thank you very much.  I think
13 that concludes this case, if I'm not mistaken.  Yes.  Thank you,
14 sir.
15         MR. WEIBELL:  Thank you, Your Honor.
16     (Proceedings in MDL 2948 concluded at 1:39 p.m.)

```
 1              CERTIFICATE OF OFFICIAL COURT REPORTER

 2

 3         I, Sara A. Wick, certify that the foregoing is a

 4    correct transcript from the record of proceedings in the

 5    above-entitled matter.

 6

 7         Please Note:  This hearing occurred during the

 8    COVID-19 pandemic and is, therefore, subject to the

 9    technological limitations of court reporting remotely.

10

11

12    /s/ Sara A. Wick                  August 8, 2020

13    SIGNATURE OF COURT REPORTER       DATE
```