# EXHIBIT 3

```
            IN THE UNITED STATES DISTRICT COURT
               NORTHERN DISTRICT OF ILLINOIS
                      EASTERN DIVISION

T.K. THROUGH HER MOTHER, SHERRI   )
LESHORE, and A.S., THROUGH HER    )
MOTHER, LAURA LOPEZ,              )
individually and on behalf of     )  No. 19 CV 7915
all others similarly situated,    )
                                  )  Chicago, Illinois
               Plaintiffs,        )  August 7, 2020
                                  )  11:00 o'clock a.m.
          -vs-                    )
                                  )
BYTEDANCE TECHNOLOGY CO., LTD.,   )
MUSICAL.LY, INC., MUSICAL.LY THE  )
CAYMAN ISLANDS CORPORATION, AND   )
TIKTOK, INC.,                     )
                                  )
               Defendants,        )


       TRANSCRIPT OF TELEPHONIC PROCEEDINGS - Motion
           BEFORE THE HONORABLE JOHN R. BLAKEY

APPEARANCES:

For the Plaintiffs:    MASON LIETZ & KLINGER LLP
                       BY:  MR. GARY M. KLINGER
                       227 West Monroe Street
                       Suite 2100
                       Chicago, Illinois  60606


For the Plaintiffs:    MASON LIETZ & KLINGER LLP
                       BY:  MR. DAVID K. LIETZ
                       5101 Wisconsin Avenue NW
                       Suite 305
                       Washington, DC  20016



          LAURA LACIEN, CSR, RMR, FCRR, CRR
                OFFICIAL COURT REPORTER
              219 South Dearborn Street
                     Room 1212
              Chicago, Illinois  60604
                   (312) 408-5032
```

11:25AM

for the Objector raised, one was the absence of injunctive relief within the settlement and the other thing was what he characterized as a lack of clarity regarding which claims would be covered or not covered because that would cause confusion in other litigation. Do you want to address either or both of those points?

11:26AM

MR. LIETZ: Yes, your Honor. With regard to the second point, your Honor, there doesn't seem to be any confusion among other claims. The BIPA, you know, MDL, consolidated complaint seems perfectly clear and comfortable in what claims that it's asserting and it doesn't seem to be having any issues with there being a suggestion that that claim or the claims raised there are somehow released or obviated by this settlement. So that was counsel's --

11:26AM

Objector's counsel's sole example of how there is being alleged confusion created.

And, your Honor, the facts and the records in the MDL proceeding -- which again are now before this court and are totally available to the court are -- speak volumes about

11:26AM

the absence of confusion. So that argument, your Honor, is just not one that is supported by the facts.

THE COURT: Well, is it your position that the release could not be amended to have more clarity on that because it's a pretty general -- it's a pretty broad release,

11:27AM

right?

|  |  |
|---|---|
| 11:27AM | 1   MR. LIETZ: It could be construed, your Honor, as a |
|  | 2   very broad release. We believe that the release is bounded |
|  | 3   by the facts that are alleged in the complaint and that that |
|  | 4   is what limits it. However, your Honor, if the sole sticking |
|  | 5   point to final approval of this settlement is to go back and |
|  | 6   rework the release to make it more clear and to make sure |
|  | 7   that there's a clear understanding of what the limitations |
|  | 8   are, we're certainly happy to caucus with defense counsel and |
|  | 9   to -- and to work something out that would make it clear to |
| 11:27AM | 10  the world, although we think it already is clear to the |
|  | 11  world, what's being released here so we're not -- |
|  | 12    THE COURT: I interrupted you. With respect to |
|  | 13  injunctive relief, did you want to address that? |
|  | 14    MR. LIETZ: No. I actually was saving that for a |
| 11:28AM | 15  second, your Honor. Very briefly, we just think that |
|  | 16  the -- all the injunctive relief that was fit to be obtained |
|  | 17  here was obtained by the FTC. You know, there's this -- the |
|  | 18  privacy advocates, the child privacy advocates case to get |
|  | 19  the FTC to go back and enforce its consent order, I mean, |
| 11:28AM | 20  that action is not saying that the injunctive relief that the |
|  | 21  FTC obtained was insufficient. It's basically just saying |
|  | 22  that TikTok is violating it. And so, your Honor, that makes |
|  | 23  our point that all the injunctive relief that could have been |
|  | 24  obtained in this case was obtained already by the FTC. And |
| 11:28AM | 25  the only missing piece of the puzzle here, your Honor, was a |


    MR. LIETZ: It could be construed, your Honor, as a
very broad release. We believe that the release is bounded
by the facts that are alleged in the complaint and that that
is what limits it. However, your Honor, if the sole sticking
point to final approval of this settlement is to go back and
rework the release to make it more clear and to make sure
that there's a clear understanding of what the limitations
are, we're certainly happy to caucus with defense counsel and
to -- and to work something out that would make it clear to
the world, although we think it already is clear to the
world, what's being released here so we're not --
    THE COURT: I interrupted you. With respect to
injunctive relief, did you want to address that?
    MR. LIETZ: No. I actually was saving that for a
second, your Honor. Very briefly, we just think that
the -- all the injunctive relief that was fit to be obtained
here was obtained by the FTC. You know, there's this -- the
privacy advocates, the child privacy advocates case to get
the FTC to go back and enforce its consent order, I mean,
that action is not saying that the injunctive relief that the
FTC obtained was insufficient. It's basically just saying
that TikTok is violating it. And so, your Honor, that makes
our point that all the injunctive relief that could have been
obtained in this case was obtained already by the FTC. And
the only missing piece of the puzzle here, your Honor, was a

11:47AM by the attorney general whereas for private plaintiffs like we have here, there is no such exception so that case is completely inapplicable. For those reasons, you know, the plaintiffs here really had an uphill battle and we think they never would have been able to state a claim that could have survived COPPA preemption.

11:48AM The other issues that the Objector has raised deal with the merits of the claims that were -- that the Objector would want to bring to this case but those are hypothetical claims. Those are -- those are claims that plaintiffs' counsel, I'm sure, looked at and examined and chose not to bring for good reason. We think they have no merit.

11:48AM As the plaintiffs' counsel has already represented, there's, you know, a BIPA claim, an Illinois Biometric Information Privacy Act claim that is pending in other litigation. We think it has no merit. In fact, we think it actually violates Rule 11 to assert it because the TikTok app just doesn't collect biometric information and in any way that could be considered in violation of the law. And so for

11:48AM that reason -- that's a hypothetical but just doesn't belong here. And I don't think we need to even get into the question of whether this settlement covers a BIPA claim for that reason, right. It wasn't contemplated by the plaintiffs here. It -- it's certainly not covered by the conduct that

11:49AM was at issue and so we don't think that would be a problem.

 THE COURT: All right. If there's nothing else on behalf of defense counsel, is there anything that any of the parties want to add before we conclude today?

 MR. DRURY: Scott Drury, your Honor, on behalf of the Objector. I would like to respond to some of the issues that were raised by both plaintiffs and defendants with your Honor's permission.

 THE COURT: Yeah, sure. Go ahead.

 MR. DRURY: Your Honor, first of all, I think it's important for the Court to note that none of the claims asserted in this case are direct claims under COPPA. So when the plaintiffs and defendants keep saying these are COPPA claims and this is the first case that's brought under COPPA, that's just inaccurate. There's a statutory claim under the Video Privacy Protection Act, there's statutory claims under Illinois and California law, and there's common law claims; and those are the claims that are asserted and none of them are preempted. The critical statute that plaintiffs and defendants ignore is the Video Privacy Protection Act. That's a federal statute that is in no way preempted by COPPA because it's a federal law.

 The other thing that's important about the Video Privacy Protection Act, your Honor, is that it allows for $2,500 of statutory damages. So when the plaintiffs and defendants cite to data breach cases where there's results

```
 1  where people get $5 per class and the cases that they cite
 2  actually -- there's even -- the settlements are more than
 3  just $5 and I'll get into that in a second.  Here, it's
 4  $2,500 per violation and so the damages here are easily
 5  calculable and are far in excess of the $1.1 million.  A case
 6  that I would respectfully suggest your Honor look at is
 7  Reynolds v. Beneficial National Bank, 288 F.3d, 277.  It's a
 8  Seventh Circuit case from 2002.  As well as Synfuel Tech v.
 9  DHL, 463 F.3d 646 at Page 653; and that's another Seventh
10  Circuit case from 2006.  In there, the Seventh Circuit says
11  that in calculating the strength of the case versus the
12  offer, a court and the parties should try to look at
13  different scenarios and compare the outcomes that would
14  happen under the scenarios.  And in Reynolds, the court
15  specifically said that the court -- that the district court
16  should look at a high option, a medium option, a low option
17  and a zero option in terms of recovery.
18          In applying the numbers here using the $2,500
19  number, assuming that's the only claim that is successful
20  here, $2,500 times six million class members, your Honor, is
21  $15 billion.  And the court there in Reynolds what it did is
22  it said let's assume that there's only .5 chance of success
23  of success of getting $15 billion and it took that into
24  consideration.  It then gave numbers for medium and low.  And
25  using the same ratios that the court used in Reynolds, the
```

44

11:59AM

1 medium number here, your Honor, would be $600 million. And
2 again the court in *Reynolds* then apply a 20 percent value to
3 the possibility of success. And the low rate here, your
4 Honor, would be $30 million and the court in *Reynolds* said
5 let's assume that's a 30 percent chance of success. And then
6 for 49.5 percent, we could assume that there is no chance of
7 success at all.

12:00PM

8 If we use those ratios, your Honor, the net
9 expected value of this case is $204 million. I'm not talking
10 about punitive damages. I'm just talking about statutory
11 relief. And neither the plaintiffs nor the defendants tried
12 to explain anywhere, in their briefs or in their arguments,
13 how their $1.1 million settlement relates remotely to the net
14 expected value of the case that the Seventh Circuit laid out

12:00PM

15 in *Reynolds v. Beneficial*.
16 Now I don't want to get bogged down in BIPA because
17 this case is not about BIPA and I want to make that clear for
18 the Court. But when looking at the value of the settlement
19 and is this a good settlement, I think a more apt analogy is

12:00PM

20 to BIPA cases because in BIPA cases there are statutory
21 damages of $1,000 to $5,000. And as we set forth in our
22 brief in a recent case in the Northern District of California
23 involving Facebook -- and we discussed that at Docket Number
24 38 at ECF Page 9, the district court there rejected a $550

12:00PM

25 million settlement that would have returned $150 to $300 to

|        |    |                                                                      |
|--------|----|----------------------------------------------------------------------|
|        | 1  | Identifiable Information in the VPPA is totally different             |
|        | 2  | than in data privacy litigation and it, quote, includes               |
|        | 3  | information which identifies a person as having requested or          |
|        | 4  | obtained specific video materials or services from a                  |
| 12:13PM| 5  | videotape service provider.                                           |
|        | 6  | You know, the plaintiffs here shoehorn that into                      |
|        | 7  | the facts of this case.  But to say that this is a Video              |
|        | 8  | Privacy Protection Act claim that warrants any sort of                |
|        | 9  | damages calculation based upon maximum statutory values, it's         |
| 12:13PM| 10 | just -- it's just incorrect, your Honor.                              |
|        | 11 | And last, your Honor, in terms of us providing                        |
|        | 12 | discovery to the Objector/Intervenor, they're not entitled to         |
|        | 13 | that under the rules.  So if they get in a case by the                |
|        | 14 | Court's order, we will happily provide discovery but the case         |
| 12:13PM| 15 | law is clear there's no entitlement to discovery at this              |
|        | 16 | stage.  Thank you, your Honor.                                        |
|        | 17 | THE COURT:  Anybody else?                                             |
|        | 18 | MR. WEIBELL:  Yes, your Honor.  Tony Weibell for                      |
|        | 19 | the defendants.  Just to add to what plaintiffs' counsel              |
| 12:14PM| 20 | mentioned about the Video Privacy Protection Act claim, the           |
|        | 21 | Objector's counsel pointed out that that claim has statutory          |
|        | 22 | damages and it's not based on COPPA.  There's two issues with         |
|        | 23 | that.  One is to the extent this case goes beyond the                 |
|        | 24 | allegation of the collection of information from children             |
| 12:14PM| 25 | about parental consent, those claims would get captured and           |

53

54

|   |   |
|---|---|
| | 1  be related to the MDL that's pending now before Judge Lee in |
| | 2  the Northern District of Illinois. We don't think it does |
| | 3  and my understanding is that plaintiffs' counsel also doesn't |
| | 4  think it does. |
| 12:14PM | 5  And with respect specifically to the Video Privacy |
| | 6  Protection Act claim, I think all the parties involved -- not |
| | 7  the Objector but the plaintiffs and defendants -- recognize |
| | 8  after that claim was asserted there really -- there was |
| | 9  nothing there. There was no merit to it because there's no |
| 12:15PM | 10 facts that TikTok actually disclosed to a third party for |
| | 11 non-business operational purposes both the actual name and |
| | 12 the videos that a particular user was watching, right, and |
| | 13 that's what you need to state a claim under VPPA. So I think |
| | 14 we all recognize that that claim just wasn't going anywhere |
| 12:15PM | 15 in this litigation and it shouldn't factor into whether the |
| | 16 settlement is fair except to the extent that the Seventh |
| | 17 Circuit has said the most important factor is the weakness of |
| | 18 the case and so that's all I wanted to add, your Honor. |
| | 19 THE COURT: Okay. Anyone else? |
| 12:15PM | 20 MR. DRURY: Your Honor, Scott Drury. Just very |
| | 21 briefly. I just wanted to make note that in the settlement, |
| | 22 there's no indication that the Video Privacy Protection Act |
| | 23 was dismissed and so for the plaintiffs and the defendants to |
| | 24 now claim that that -- that the Court shouldn't really |
| 12:15PM | 25 consider Count One of the complaint, it's just inaccurate and |