# EXHIBIT 6

BEFORE THE UNITED STATES JOINT PANEL
ON MULTIDISTRICT LITIGATION

| | ) | |
|---|---|---|
| IN RE: TIKTOK, INC., CONSUMER | ) | |
| PRIVACY LITIGATION | ) | MDL No. 2948 |
| | ) | |

NORTHERN DISTRICT OF ILLINOIS PLAINTIFFS' RESPONSE IN SUPPORT OF
TRANSFER TO THE NORTHERN DISTRICT OF ILLINOIS FOR
COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS

Plaintiffs[1] in five now-consolidated class actions pending in the Northern District of Illinois ("ND Ill. Plaintiffs") submit this brief in support of the Motion for Transfer and Coordination of Actions Pursuant to 28 U.S.C. § 1407, but believe that, rather than transfer to the Southern District of Illinois, all related actions should be transferred to the Northern District of Illinois for consolidated pretrial proceedings before the Honorable John Z. Lee.

I. INTRODUCTION

The ND Ill. Plaintiffs are Illinois resident minors in five separate lawsuits filed in federal court in Illinois asserting Illinois-based claims on behalf of a putative class composed exclusively of other Illinois resident minors. They seek relief for Defendants TikTok, Inc.'s and ByteDance, Inc.'s (collectively, "Defendants") violations of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 15/1, *et seq*. Specifically, the ND Ill. Plaintiffs allege Defendants' ubiquitous smartphone application, "TikTok," scans users' facial geometry, and thereafter (without consent) captures, retains and disseminates their biometric identifiers and information in violation of BIPA.

---

[1] Plaintiffs swiftly organized their individual actions by relating them before the Honorable John Z. Lee, and agreeing to consolidation with *E.R. v. TikTok, Inc. et al*, No. 1:20-cv-2810 (N.D. Ill.) (filed May 8, 2020), the first-filed action in the Northern District of Illinois. The four other actions originally were styled as follows: *K.M. v. TikTok, Inc. et al.*, No. 1:20-cv-2883 (N.D. Ill.) (filed May 13, 2020); *D.H. v. TikTok, Inc. et al.*, No. 1:20-cv-2884 (N.D. Ill.) (filed May 13, 2020); *L.B. v. TikTok, Inc. et al.*, No: 1:20-cv-2889 (N.D. Ill.) (filed May 13, 2020); *H.S. v. ByteDance, Inc. et al.*, No. 1:20-cv-3007 (N.D. Ill.) (filed May 20, 2020) (collectively, the "ND Ill. Action").

As of the date of this filing, sixteen similar—though not identical—actions are currently pending in four different judicial districts: the Northern District of Illinois, the Southern District of Illinois, the Northern District of California, and the Central District of California (hereinafter, the "Related Actions").[2]

The ND Ill. Plaintiffs initially believed these cases could be coordinated informally to obviate any need for centralization. To that end, the ND Ill. Plaintiffs proceeded as this Panel suggested: they self-organized their actions before Judge Lee and immediately attempted to coordinate their consolidated case with all counsel for plaintiffs in the Related Actions and counsel for Defendants. During these communications, counsel for Defendants expressed an interest in pursuing mediation and the ND Ill. Plaintiffs agreed. The mediation is currently scheduled to take place on August 13, 2020 before the Honorable Layn R. Phillips (Ret.). Judge Phillips has already mediated this case once with Defendants and counsel in the *Hong* litigation (the first filed action in California). Thus, ND Ill. Plaintiffs believe that a second mediation with the same judge allows the parties to capitalize on these prior efforts.

Recognizing their fiduciary duty to explore the possibility of settlement for the class, counsel for the ND Ill. Plaintiffs *immediately notified all plaintiffs' counsel and invited them to participate in mediation*. Plaintiffs' counsel in actions pending in the Southern District of Illinois and Central District of California agreed to coordinate with the ND Ill. Plaintiffs and participate in mediation.[3] Counsel for plaintiffs in some of the Northern District of California cases have also

---

[2] All actions, except one action filed in the Central District of California, allege BIPA violations. That action is based on violations of California law.

[3] At the time of these discussions, only one action was pending in the Central District of California, *G.R. v. TikTok, Inc. et al.*, No. 2:20-cv-4357 (C.D. Cal.) (filed May 20, 2020), and counsel in this matter agreed to attend mediation. ND Ill. Plaintiffs' counsel just learned of a new filing in the Central District of California, captioned *C.H. v. TikTok, Inc. et al.*, No. 2:20-cv-

agreed to participate, although plaintiffs' counsel in the *Hong* matter has declined. Because of this unfortunate lack of complete unanimity, transfer and centralization pursuant to 28 U.S.C. § 1407 not only is appropriate, but necessary.

In light of all the facts, the Northern District of Illinois is the most appropriate transferee forum. As detailed below, the plaintiffs in all but *one* Related Action include Illinois residents under the age of 18, all of whom would be greatly inconvenienced if required to litigate their claims in California federal court, which they bring almost exclusively on behalf of an *Illinois* class for violations of an *Illinois* statute. Nor would transfer to the Northern District of Illinois inconvenience Defendants, who have agreed to centralization in the Northern District of Illinois if the Panel so chooses. When these factors are considered alongside the Northern District of Illinois' geographically central location, favorable caseload and nexus to this action, there can be no doubt that centralization and coordination in the Northern District of Illinois will best further Section 1407's twin objectives: promoting convenience and the efficient prosecution of all cases.

## II. BACKGROUND

### A. The TikTok App

Defendants operate TikTok, a widely popular video-sharing social media application. TikTok is especially popular with teenagers and young adults. The app permits users to create and share short videos, and to use filters and other effects therein. To utilize many of the effects, Defendants scan users' faces and "face geometries" to, *inter alia*, superimpose stickers on users' faces, enhance aspects of their facial features, or swap the user's face for an emoji or another individual's face. Defendants also scan users' faces to determine the user's age using an algorithm.

---

5036 (C.D. Cal.), and have not yet had the opportunity to communicate with counsel in that matter.

3

B. The Related Actions

The ND. Ill. Plaintiffs are Illinois-resident minors who, through their guardians, commenced five separate class actions arising from Defendants' alleged violations of Illinois BIPA. The first action *E.R. v. TikTok, Inc. et al*, No. 1:20-cv-2810 (N.D. Ill.), was filed on May 8, 2020, and assigned to the Honorable John Z. Lee. A copy of the docket as of the date of this filing is attached hereto as **Exhibit A**.

To conserve judicial resources, the *E.R.* plaintiff moved to relate and reassign to Judge Lee three later-filed actions, with consent of all counsel. The motion to relate and reassign was granted on May 21, 2020 (Ex. A, at ECF No. 10), and Judge Lee later consolidated those cases with *E.R.* (*Id.*, at ECF No. 14.) On May 29, 2020, Judge Lee ordered consolidation of a subsequent related action, set June 12, 2020 as a deadline for the filing of a consolidated complaint, and appointed Katrina Carroll of Carlson Lynch LLP ("Carroll"), filer of the first BIPA action in the district, as interim lead Plaintiffs' counsel during the pendency of the MDL petition. (*Id.*, at ECF No. 18.) All counsel in the ND Ill. have organized themselves and are diligently and cooperatively working together and intend to file their Consolidated Complaint no later than June 12, 2020, as Judge Lee ordered.

The related litigation in California is much less organized than the proceedings in the Northern District of Illinois and the procedural history is somewhat complicated. The "first filed" of all related cases which are the subject of this MDL is *Hong v. ByteDance, Inc. et al.*, 5:19-cv-07792-LHK, filed in the Northern District of California in November of 2019. *Hong* is *not* the first BIPA case filed against TikTok in California, however. Indeed, as originally pled, *Hong* was not a BIPA case at all, was not brought on behalf of any Illinois plaintiffs, and did not seek to

4

represent a putative class of any Illinois residents - in other words, the case had *no ties* whatsoever to Illinois.

After unsuccessfully mediating their action with Judge Phillips, *Hong* counsel amended their complaint to add Illinois plaintiffs and a BIPA claim on May 11, 2020 - *after E.R.* was filed in the Northern District of Illinois and a separate, BIPA-only case was filed in California.[4] Thereafter, five new BIPA cases were filed in the Northern District of California and all of the related actions were consolidated with *Hong*.[5]

While *Hong* now includes a BIPA claim, that action still includes all claims initially pled (a broad panoply of California causes of action), the plaintiffs seek to represent the broadest class conceivable (all TikTok users in the United States) and the case is not tailored as a BIPA case. Thus, *Hong* is an outlier. All other related actions (except one) filed in all districts are BIPA-exclusive, Illinois-based cases brought on behalf of Illinois classes by Illinois residents under Illinois law.[6] Illinois is the obvious nexus and tie that binds all of the actions together and is thus the most logical place for the cases to proceed.

This makes sense, in fact, because the Illinois cases are organized and the proceedings are more advanced that those in California. Despite the fact that the non-BIPA *Hong* complaint was

---

[4] The first filed BIPA case in California is *P.S. v. TikTok, Inc.*, No. 3:20-cv-2992 (filed Apr. 30, 2020), filed within days of *E.R.* in the Northern District of Illinois.
[5] *See* Schedule of Actions, MDL No. 2948 (ECF No. 1-2); Notices of Related Actions, (ECF Nos. 13, 24, 27, 28).
[6] As previously noted, there is one action pending in the Central District of California (*G.R. v. TikTok, Inc. et al.*, No. 2:20-cv-4357 (C.D. Cal.) alleging violations of the California Consumer Privacy Act and another BIPA case, *C.H. v. TikTok, Inc. et al.*, No. 2:20-cv-5036 (C.D. Cal.). There are two BIPA cases pending in the Southern District of Illinois (*A.S. v. TikTok, Inc. et al.*, No. 3:20-cv-457 (S.D. Ill.) (filed May 15, 2020); *L.M. v. TikTok, Inc. et al*, No. 3:-20-498 (S.D. Ill.) (filed May 29, 2020)). Through their coordination efforts, ND. Ill. Plaintiffs understand that counsel in the *G.R.* action and both S.D. Ill. actions are not opposed to centralization in the Northern District of Illinois for the reasons stated herein.

filed in November 2019, no dispositive motions have been filed, no discovery has been exchanged, and no leadership structure has been proposed to Judge Koh, who is overseeing the consolidated actions in the Northern District of California. Defendants have not responded to the original *Hong* complaint, the amended *Hong* complaint, nor any of the recently-filed BIPA complaints. In fact, leadership for the ND. Cal. cases is not scheduled to be addressed until a hearing scheduled for July 23, 2020, and a consolidated amended complaint is not due until 21 days after leadership is appointed for the ND. Cal. plaintiffs.

Contrast the progression (or lack thereof) of the ND. Cal. actions with that of the ND. Ill. Action. The ND. Ill. Plaintiffs agreed upon leadership within days of the first four cases being filed. Within 21 days of the filing of the first ND. Ill. action, Judge Lee appointed Carroll as interim lead Plaintiffs' counsel during the pendency of the MDL petition and ordered that a Consolidated Complaint be filed on June 12, 2020. (Ex. A, at ECF No. 18).[7] Within five days of Judge Lee's scheduling order, Carroll notified Judge Lee and all counsel for all related actions of the mediation opportunity that Defendants presented to her. In just over a month since the first-filed ND. Ill. action, the ND. Ill. Plaintiffs have self-organized with Judge Lee's assistance, will have filed their Consolidated Complaint and scheduled a mediation which will be attended by counsel for all districts involved. The ND. Ill. Plaintiffs have advanced their litigation well beyond that of the ND. Cal. actions.

### C. The ND. Ill. Plaintiffs Attempted to Coordinate Prosecution of the Related Actions

As the Panel requested, the ND. Ill. Plaintiffs took every conceivable step "to pursue alternatives to centralization (including, but not limited to, engaging in informal coordination of

---

[7] At Carroll's own suggestion and by agreement of all counsel for the ND. Ill. actions on file at the time of the submitted proposed order, the ND. Ill. Plaintiffs proposed that the leadership appointment be temporary until the panel rules on the pending Motion.

6

discovery and scheduling, and seeking Section 1404 transfer of one or more of the subject cases.).)" (ECF No. 4). Indeed, since before these MDL proceedings, the ND. Ill. Plaintiffs have maintained a constant dialogue with plaintiffs' counsel in the Related Actions in order to explore alternatives to centralization. Those efforts continued following the filing of the Transfer Motion, during which time the Related Actions pending in the Northern District of Illinois and California were consolidated before Judges Lee and Koh, respectively.

Because the Related Actions have largely been consolidated in their respective fora—as well as the fact the Illinois actions seek relief exclusively for Illinois minors under a single Illinois statute—the ND. Ill. Plaintiffs proposed to all counsel in all of the actions that the parties continue to informally coordinate amongst themselves, rather than engage in a four-way, Section 1404 motion practice. Under this approach, each action would pursue its own discrete legal theories and claims while coordinating their discovery efforts to ensure the Related Actions proceed efficiently. To that end, the ND. Ill. Plaintiffs and Defendants agreed to proceed to mediation with the assistance of the Honorable Layn Phillips (Ret.), and on June 3, 2020, the ND. Ill. Plaintiffs immediately invited all plaintiffs' counsel to participate. *See* **Exhibit B**, attached hereto.

Certain counsel from each district accepted this invitation and agreed to participate in the mediation. Unfortunately, ND Ill. Plaintiffs have been unable to obtain the cooperation of all counsel for the ND. Cal. actions. Rather than try to coordinate with the ND. Ill. Plaintiffs, the *Hong* plaintiffs did just the opposite. They flatly refused to participate in any mediation alongside other counsel and instead have chosen to pursue intervention in the related ND. Ill. Action for the purpose of seeking *dismissal* of the ND. Ill. Action.

### D. The *Hong* Plaintiffs-Intervenors' Attempts to Intervene In Every Illinois Action Come At the Expense of the Class

Rather than engage in productive coordination as this Panel asked, the *Hong* plaintiffs opted to intervene in the ND. Ill. Action and the SD. Ill. Actions. Incredibly, they pursue intervention at the Illinois class's peril through jurisdictional and venue arguments belonging to Defendants that Defendants themselves have never raised. The papers are also peppered with *ad hominem* attacks on counsel. Personal attacks aside, the *Hong* plaintiffs' decision to appear in related cases and take unasserted defense positions is hardly the type of cooperation and informal coordination this Panel envisioned, let alone designed to advance the best interests of the putative class. Moreover, as Defendants have advised the Panel, they are not opposed to centralization in the Northern District of Illinois, showing that jurisdiction and venue are non-issues.

In any event, when the *Hong* plaintiffs moved to intervene in the ND. Ill. Action, Carroll, as court-appointed interim lead counsel pending this MDL proceeding, conferred with Defendants and immediately advised Judge Lee that, given the pendency of the MDL, duplicative motions to transfer are not necessary or appropriate here. Counsel for the parties in the ND. Ill. Action immediately filed a joint status report to apprise the court that they oppose intervention and transfer. Their joint response is due to Judge Lee on June 17, 2020.

For reasons that will soon become apparent in response, the *Hong* plaintiffs' motions to intervene are both procedurally and substantively defective. They cannot meet the requirements for intervention as of right or permissive intervention. Nor can they meet the standard for intervention by making a showing that they have some interest in this litigation that is particular to intervenor and not the existing Plaintiffs.

8

Suffice it to say, the *Hong* plaintiffs' motions, which ND. Ill. Plaintiffs will ask Judge Lee to promptly deny, and their refusal to informally coordinate the Related Actions for the benefit of the putative classes, confirms that the Panel's intervention is necessary.

### III.   ARGUMENT

#### A.  Legal standard

"When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for . . . the convenience of parties and witnesses and [promotion of] just and efficient conduct of such actions." 28 U.S.C.A. § 1407. Pursuant to 28 U.S.C. § 1407(a), transfer and centralization is appropriate where (1) the pending actions involve one or more common questions of fact; (2) transfer will aid the convenience of parties and witnesses; and (3) transfer will promote the just and efficient conduct of such actions. In these instances, transfer and centralization streamlines discovery, avoids conflicting rulings and scheduling issues, minimizes costs, and conserves the time and resources of the parties, witnesses and the courts. *See Manual for Complex Litigation* § 20.131 (4th ed. 2016). As discussed below, these factors weigh heavily in favor of transfer and centralization in the Northern District of Illinois.

#### B.  The Actions Share Common Factual Questions

The Related Actions undoubtedly meet the threshold requirement for centralization under 28 U.S.C. § 1407(a) because they share common factual questions. *See In re Fed. Election Campaign Act Litig.*, 511 F. Supp. 821, 823 (J.P.M.L. 1979) (transfer was appropriate in cases sharing common factual issues in order to avoid duplication of discovery efforts and prevent inconsistent rulings). It matters not that the plaintiffs in each Related Action bring varying state law claims; "the applicability of different legal principles will not prevent the transfer of an action

9

under section 1407 if the requisite common questions of fact exist." *In re Antibiotic Drugs*, 309 F. Supp. 155, 156 (J.P.M.L. 1970).

Because the bulk of the Actions arise from the same operative facts—Defendants' alleged collection and dissemination of users' private data without their consent—and seek to recover under similar legal theories, transfer and centralization is appropriate. *In re Zyprexa Prod. Liab. Litig.*, 314 F. Supp. 2d 1380, 1381 (J.P.M.L. 2004) ("transfer under Section 1407 does not require a complete identity or even majority of common factual issues as a prerequisite to transfer"). Moreover, because the Actions seek to certify overlapping classes, transfer and centralization will guard against inconsistent rulings and class determinations. *See In re U. S. Fin. Sec. Litig.*, 375 F. Supp. 1403, 1404 (J.P.M.L. 1974) ("the prevalence of common factual issues and similar class allegations necessitates transfer of all actions to a single district for coordinated or consolidated pretrial proceedings under Section 1407 in order to prevent duplication of discovery and eliminate the possibility of inconsistent or overlapping class determinations").

The ND. Ill. Plaintiffs recognize that transfer "under Section 1407 should be the last solution after considered review of all other options." *In re Best Buy Co., Inc., California Song-Beverly Credit Card Act Litig.* 804 F.Supp.2d 1376, 1378 (J.P.M.L. 2011) (denying transfer under Section 1407 due to the limited number of cases and the possibility of informal coordination). And, for their part, ND Ill. Plaintiffs made a good faith effort to pursue "informal cooperation among counsel" in lieu of centralization. *In re: Crest Sensitivity Treatment & Protection Toothpaste Marketing and Sales Practices Litig.*, 857 F. Supp. 2d 1348 (J.P.M.L. 2012) (denying centralization under Section 1407). Unfortunately, the failure of their efforts has only crystallized the need for transfer and centralization pursuant to Section 1407.

### C. The Panel Should Centralize the Related Actions in the Northern District of Illinois Before Judge Lee

10

In selecting a transferee forum, the Panel typically considers "the site of the occurrence of the common facts, where the cost and inconvenience will be minimized, and the experience, skill, and caseloads of available judges." *Manual for Complex Litigation* § 20.131 (4th ed. 2016). Each of these factors weighs in favor of transfer to and centralization in the Northern District of Illinois.

### 1. The Northern District of Illinois Bears the Strongest Nexus to this Litigation.

The Northern District of Illinois undoubtedly possesses the strongest connection to this litigation. It matters not that the Defendants reside in California—*all but one* of the Related Actions brings claims pursuant to BIPA (an Illinois statute) on behalf of a class of Illinois residents harmed while they used the TikTok app in Illinois. And Defendants have indicated that centralization is proper in the Northern District of Illinois.

Indeed, no judicial district is more qualified to oversee BIPA litigation. Illinois courts have overseen and adjudicated issues in *hundreds* of BIPA cases during the last three years. *See In re: Helicopter Crash Near Wendle Creek, British Columbia, on Aug. 8, 2002*, 542 F. Supp. 2d 1362, 1363 (J.P.M.L. 2008) ("Indeed, the transferee judge has developed a familiarity with the allegations, issues, parties and counsel involved in this docket, which will further the expeditious resolution of the litigation taken as a whole."). Indeed, there have been nearly 200 BIPA class actions filed in Illinois courts, which has become *the* hub for actions brought pursuant to Illinois' groundbreaking statute. The Northern District of Illinois clearly bears the strongest nexus to this litigation.

### 2. The Northern District of Illinois Is the Most Convenient Forum

The Northern District of Illinois also is a convenient and readily accessible location for all counsel and witnesses. Located in Chicago, the Court is accessible by both Chicago O'Hare International Airport and Chicago Midway Airport. As the Panel has recognized in the past, these

11

factors make the Northern District of Illinois a convenient forum for geographically dispersed parties. *In re McDonald's French Fries Litig.*, 444 F. Supp. 2d 1342, 1343 (J.P.M.L. 2006), adhered to, 545 F. Supp. 2d 1356 (J.P.M.L. 2008) (finding "given the geographic dispersal of the constituent actions, the Northern District of Illinois offers a relatively geographically central and accessible forum for this litigation"); *In re: Fluidmaster, Inc.*, 65 F. Supp. 3d 1397, 1398 (J.P.M.L. 2014) (observing the Northern District of Illinois "offers a geographically accessible forum for this nationwide litigation"); *In re Fairlife Milk Prod. Mktg. & Sales Practices Litig.*, 396 F. Supp. 3d 1370, 1371 (J.P.M.L. 2019) ("The Northern District of Illinois thus presents a convenient and accessible forum for this litigation.").

Moreover, the sweeping majority of the plaintiffs in the Related Actions reside in Illinois. Ensuring the convenience of these plaintiffs—all except one are minors—is paramount. *See, e.g., Sickman v. Asset Recovery Solutions, LLC*, No. 14 C 9748, 2015 WL 1911431, *3 (N.D. Ill. Apr 27, 2015) ("the court is most concerned with the convenience of the putative class members whom plaintiff seeks to represent"). This is particularly true here where Defendants concede that they will not be inconvenienced in the slightest if the cases are transferred to the Northern District of Illinois.

### 3. The Northern District of Illinois Possesses Sufficient Resources and Expertise, and a Favorable Caseload

Docket conditions also favor the Northern District of Illinois over the Northern District of California, one of the proposed transferee courts.[8] As of May 15, 2020, there are twice as many MDLs pending in the Northern District of California than in the Northern District of Illinois. And

---

[8] *MDL Statistics Report – Distribution of Pending MDL Dockets by District*, JPML, https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-May-15-2020.pdf (report date: May 15, 2020).

12

as of 2019, there also was an average of 854 pending cases per judgeship in the Northern District of California, compared to just 722 in the Northern District of Illinois.[9] Judge Koh—the proposed transferee judge in the Northern District of California—currently is presiding over two MDLs comprised of 53 separate actions. Conversely, Judge Lee, the proposed transferee judge in the Northern District of Illinois, currently presides over only one MDL in which a settlement already has been reached and granted final approval. Transfer to Judge Lee will support the efficient resolution of this litigation.

Most importantly, Judge Lee possesses experience presiding over both MDLs and complex consumer class action lawsuits. *See, e.g.*, *In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*, 332 F.R.D. 202, 207 (N.D. Ill. 2019), *aff'd sub nom. Walker v. Nat'l Collegiate Athletic Ass'n*, No. 19-2638, 2019 WL 8058082 (7th Cir. Oct. 25, 2019) (granting final approval in MDL proceeding related to "the way the NCAA handled student-athlete concussions and concussion related risks"); *Craftwood Lumber Co. v. B.E. Atlas Co.*, No. 16-CV-07865, 2018 WL 2077729, at *1 (N.D. Ill. Mar. 30, 2018) (granting final approval to Telephone Consumer Protection Act settlement). Judge Lee is more than qualified to "steer this litigation on an efficient and prudent course." *In re Fairlife Milk Prod. Mktg. & Sales Practices Litig.*, 396 F. Supp. 3d at 1371.

---

[9] *United States District Courts – National Judicial Caseload Profile*, UNITED STATES COURTS, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2019.pdf (last visited June 3, 2020).

13

## IV. CONCLUSION

For the foregoing reasons, the ND. Ill. Plaintiffs respectfully request that the Panel transfer the Related Actions to the Northern District of Illinois for coordinated pretrial proceedings.

Respectfully submitted,

Date: June 9, 2020          **CARLSON LYNCH LLP**

*/s/ Katrina Carroll*
Katrina Carroll
*kcarroll@carlsonlynch.com*
Kyle A. Shamberg
*kshamberg@ carlsonlynch.com*
Nicholas R. Lange
*nlange@carlsonlynch.com*
111 W. Washington Street, Suite 1240
Chicago, IL 60602
Telephone: (312) 750-1265

**Plaintiff's Counsel in E.R. v. TikTok, Inc., No. 1:20-cv-2810 (N.D. Ill.)**

Douglas A. Millen
Brian M. Hogan
FREED KANNER LONDON &
   MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, Illinois 60015
Tel.: (224) 632-4500
Fax: (224) 632-4521
dmillen@fklmlaw.com
bhogan@fklmlaw.com

Jonathan M. Jagher
Kimberly A. Justice
FREED KANNER LONDON &
   MILLEN LLC
923 Fayette St.
Conshohocken, PA 19428
Tel.: (610) 234-6487
Fax: (224) 632-4521
jjagher@fklmlaw.com
kjustice@fklmlaw.com

**Plaintiffs' Counsel in *D.H. v. TikTok, Inc.*, No. 1:20-cv-2884 (N.D. Ill.)**

14

Jennifer W. Sprengel
Daniel O. Herrera
Nickolas J. Hagman
CAFFERTY CLOBES MERIWETHER
& SPRENGEL LLP
150 S. Wacker, Suite 3000
Chicago, Illinois 60606
Telephone: 312-782-4880
Facsimile: 318-782-4485
jsprengel@caffertyclobes.com
dherrera@caffertyclobes.com
nhagman@caffertyclobes.com

**Plaintiffs' Counsel in** *L.B. v. TikTok, Inc., et al.***, No. 1:20-cv-2889 (N.D. Ill.)**

Joseph G. Sauder
Joseph B. Kenney
SAUDER SCHELKOPF LLC
1109 Lancaster Avenue
Berwyn, PA 19312
Telephone: (610) 200-0580
Fax: (610) 421-1326
jgs@sstriallawyers.com
jbk@sstriallawyers.com

Richard R. Gordon
Gordon Law Offices, Ltd.
111 West Washington Street
Suite 1240
Chicago, Illinois 60602
Tel: (312) 332-5200
Fax: (312) 242-4966
rrg@gordonlawchicago.com

**Plaintiffs' Counsel in** *Marks v. TikTok, Inc.***, No. 1:20-cv-2883 (N.D. Ill.)**

James B. Zouras
Ryan F. Stephan
Andrew C. Ficzko
Megan E. Shannon
STEPHAN ZOURAS, LLP
100 N. Riverside Plaza,
Suite 2150

15

Chicago, Illinois 60606
312.233.1550
312.233.1560 f
rstephan@stephanzouras.com
jzouras@stephanzouras.com
aficzko@stephanzouras.com
mshannon@stephanzouras.com

Erik H. Langeland
733 Third Avenue, 15th Floor
New York, N.Y. 10017
(212) 354-6270
elangeland@langelandlaw.com

Jon A. Tostrud
TOSTRUD LAW GROUP, P.C.
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
(310) 278-2600
jtostrud@tostrudlaw.com

**Plaintiffs' Counsel in *H.S. v. Bytedance, Inc. et al.*, No. 1:20-cv-3007 (N.D. Ill.)**