# EXHIBIT 7

# BEFORE THE UNITED STATES JUDICIAL PANEL
# ON MULTIDISTRICT LITIGATION

|  |  |  |
|---|---|---|
|  | ) |  |
|  | ) | MDL DOCKET NO. _____ |
| **IN RE TIKTOK INC. DATA PRIVACY** | ) |  |
| **LITIGATION** | ) |  |
|  | ) |  |
|  | ) |  |
|  | ) |  |
|  | ) |  |
|  | ) |  |
|  | ) |  |
|  | ) |  |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR THE TRANSFER OF RELATED ACTIONS TO THE SOUTHERN DISTRICT OF ILLINOIS, OR, IN THE ALTERNATIVE TO THE NORTHERN DISTRICT OF ILLINOIS, FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS PURSUANT TO 28 U.S.C. § 1407

# TABLE OF CONTENTS

INTRODUCTION AND BACKGROUND ................................................................... 1

ARGUMENT ............................................................................................................... 3

I.    Transfer and Consolidation in One District is Appropriate .................................. 3

    A.    The Related Actions Share Common Questions of Law and Fact ............. 4

    B.    Transfer Will Promote Convenient, Just, and Efficient Litigation of the
          Related Actions ........................................................................................... 7

II.   The Southern District of Illinois is the Most Appropriate Forum ......................... 8

III.  In the Alternative, the Northern District of Illinois is a Suitable Forum .............. 10

CONCLUSION ............................................................................................................ 11

# TABLE OF AUTHORITIES

**Cases**

*In re Aimster Copyright Litig.*,
 177 F. Supp. 2d 1380 (J.P.M.L. 2001) ................................................................. 11
*In re Aircrash Disaster Near Roselawn, Ind. on Oct. 31, 1994,*
 948 F. Supp. 747 (N.D. Ill. 1996) .......................................................................... 9
*In re Am. Family Mut. Ins. Co. Overtime Pay Litig.*,
 416 F. Supp. 2d 1346 (J.P.M.L. 2006) ................................................................... 8
*In re Ameriquest Mortg. Co. Mortg. Lending Practices Litig.*,
 408 F. Supp. 2d 1354 (J.P.M.L. 2005) ................................................................. 11
*In re Auto Body Shop*,
 2014 WL 3908000 (J.P.M.L. 2014) ....................................................................... 7
*In re Capital One Tel. Consumer Prot. Act Litig.*,
 908 F. Supp. 2d 1366 (J.P.M.L. 2012) ................................................................. 11
*In re Caterpillar, Inc., C13 & C15 Engine Prod. Liab. Litig.*,
 26 F. Supp. 3d 1394 (J.P.M.L. 2014) ..................................................................... 8
*In re: Chrysler LLC 2.7 Liter V–6 Engine Oil Sludge Prods. Liab. Litig.*,
 598 F.Supp.2d 1372 (J.P.M.L.2009) ...................................................................... 6
*In re: Darvocet, Darvon & Propoxyphene Prod. Liab. Litig.*,
 780 F. Supp. 2d 1379 (J.P.M.L. 2011) ................................................................... 6
*In re Fresh & Processed Potatoes Antitrust Litig.*,
 744 F. Supp. 2d 1381 (J.P.M.L. 2010) ................................................................... 8
*In re Gen. Motors Corp. Dex-Cool Prod. Liab. Litig.*,
 293 F. Supp. 2d 1381 (J.P.M.L. 2003) ................................................................... 9
*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
 24 F. Supp. 3d 1361 (J.P.M.L. 2014) ..................................................................... 4
*In re Local TV Advertising Antitrust Litig.*,
 338 F. Supp. 3d 1341 (J.P.M.L. 2018) ................................................................... 6
*In re McDonald's Corp. Promotional Games Litig.*,
 192 F. Supp. 2d 1381 (J.P.M.L. 2002) ................................................................. 11
*In re Multidistrict Private Civil Treble Damage Litigation Involving Library Editions of*
 *Children's Books*, MDL Nos. 2, 5, 6 & 7,
 297 F. Supp. 385 (J.P.M.L. 1968) ........................................................................ 11
*In re: N. Sea Brent Crude Oil Futures Litig.*,
 978 F. Supp. 2d 1384 (J.P.M.L. 2013) ................................................................... 6
*In re Park W. Galleries, Inc., Litig.*,
 887 F. Supp. 2d 1385 (J.P.M.L. 2012) ............................................................... 4, 7
*In re Pharm. Indus. Average Wholesale Price Litig.*,
 237 F. Supp. 2d 1377 (J.P.M.L. 2002) ................................................................... 6
*In re Philadelphia Life Ins. Co. Sales Practices Litig.*,
 149 F. Supp. 2d 937 (J.P.M.L 2001) ...................................................................... 3
*In re Pilot Flying J Fuel Rebate Contract Litig. (No. II,*
 11 F. Supp. 3d 1351 (J.P.M.L. 2014) ..................................................................... 7

*In re: Pradaxa (dabigatran etexilate) Prod. Liab. Litig.*,
   883 F. Supp. 2d 1355 (J.P.M.L. 2012) ........................................................ 9

*In re Profiler Prod. Liab. Litig.*,
   429 F. Supp. 2d 1381 (J.P.M.L. 2006) ........................................................ 9

*In re Refund Anticipation Loan Litig.*,
   856 F. Supp. 2d 1336 (J.P.M.L. 2012) ...................................................... 11

*In re Roadway Exp., Inc. Employment Practices Litig.*,
   384 F. Supp. 612 (J.P.M.L. 1974) ............................................................... 8

*In re U.S. Foodservice, Inc., Pricing Litig.*,
   528 F. Supp. 2d 1370 (J.P.M.L. 2007) ........................................................ 7

*In re Watson Fentanyl Patch Prods. Liab. Litig.*,
   883 F. Supp. 2d 1350 (J.P.M.L. 2012) ...................................................... 11

*In re Wireless Telephone Replacement Protection Programs Litig.*,
   180 F. Supp. 2d 1381 (J.P.M.L. U.S. 2002) ............................................... 3

*In re: Yasmin, Yaz (Drospirenone) Mktg., Sales Practices & Prod. Liab. Litig.*,
   655 F. Supp. 2d 1343 (J.P.M.L. 2009) ...................................................... 10

*Jurincie v. AG Trucking, Inc.*,
   2005 WL 2663508 (N.D. Ill. Oct. 14, 2005) .............................................. 9

*Promuto v. Waste Mgmt., Inc.*,
   44 F. Supp. 2d 628 (S.D.N.Y. 1999) .......................................................... 9

**Statutes**

28 U.S.C. § 1407 ....................................................................................... 1, Passim
28 U.S.C. § 1407(a) ............................................................................................ 3
740 ILCS §14/1 .................................................................................................. 1
740 ILCS § 14/5(c) ............................................................................................ 9

## INTRODUCTION AND BACKGROUND

Plaintiff (hereinafter "Movant") in the matter *A.S. v. TikTok Inc.,* No. 3:20-cv-00457 (S.D. Ill. 2020) respectfully submits this Memorandum of Law in support of Movant's motion pursuant to 28 U.S.C. § 1407 to transfer and consolidate the related actions in the Southern District of Illinois, the most logical and well-equipped District to address the overlapping class claims in each action, all of which have been brought on behalf of an Illinois class, under Illinois law. In the alternative, Movant suggests that the cases be consolidated in the Northern District of Illinois, where numerous related cases are currently pending.

All of these related actions allege that common defendants – namely TikTok Inc. and ByteDance Technology Inc. (the "Common Defendants") – violated various data privacy laws, and specifically the Illinois Biometric Identification Privacy Act ("BIPA"), 740 ILCS §14/1, *et seq.*, which prohibits, among other things, private entities from collecting, capturing, obtaining, disclosing, redisclosing, disseminating or profiting from the biometric identifiers or information of an individual without providing written notice and without obtaining a written release from the impacted individual or his authorized representative.

As alleged in the pending cases, the Common Defendants accomplished this privacy invasion via the immensely popular TikTok app (the "App"), a video-sharing social networking service used to create short videos, favored by children and teens. Specifically, the App uses proprietary facial recognition technology that scans every video uploaded to the App for faces, extracts geometric data relating to the unique points and contours (*i.e.,* biometric identifiers) of each face, and then uses that data to create and store a template of each face – all without ever informing anyone of this practice.

Because the App is largely targeted toward minors, with users in their teens making up nearly 40% of the App's total users, most of the related actions assert claims for violation of the Illinois BIPA on behalf of a class of Illinois resident minors.

Movant filed Movant's Complaint in the Southern District of Illinois on May 15, 2020. In addition to Movant's action, four related cases have been filed in the Northern District of Illinois[1] and five cases have been filed in in the Northern District of California.[2] Thus, as of the date of this filing, an equal number of cases are pending in Illinois and California.

Given the extensive overlap of the factual and legal issues involved, Movant respectfully suggests that the Related Actions should be centralized before one court pursuant to 28 U.S.C. §1407, and that the United States District Court for the Southern District of Illinois is the most appropriate transferee forum. The BIPA is an Illinois law with no extraterritorial application to non-Illinois users of the App. Accordingly, in every Related Action, the Illinois statutory claims are designed to protect Illinois residents, and Illinois courts have by far the greatest interest in the adjudication of these claims, whereas the only connection to California is the fact that the Common Defendants maintain a principal place of business there. Compared to Illinois, the Northern District of California has a negligible interest in adjudicating the claims of foreign residents under foreign law. While the California Actions also raise claims under California law, these claims are

---

[1] As set forth in the attached Schedule of Related Actions, the Illinois actions are: *A.S. v. TikTok, Inc.*, No. 3:20-cv-00457 (S.D. Ill.); *E.R. v. TikTok, Inc.*, No. 1:20-cv-2810 (N.D. Ill.); *Marks v. TikTok, Inc.*, No. 1:20-cv-2883 (N.D. Ill.); *D.H. v. TikTok, Inc.*, No. 1:20-cv-2884 (N.D. Ill.); *L.B. v. TikTok, Inc., et al.*, No. 1:20-cv-2889 (N.D. Ill.) (collectively the "Illinois Actions").

[2] As set forth in the attached Schedule of Related Actions, the California actions are: *Hong v. ByteDance, Inc.*, No. 5:19-cv-7792 (N.D. Cal.); *R.S. et al. v. TikTok, Inc. et al.*, No. 5:20-CV-3212 (N.D. Cal*.); S.A. v. TikTok, Inc. et al.*, No. 5:20-cv-3294 (N.D. Cal.); *P.S. et al v. TikTok, Inc. et al.*, No. 3:20-cv-2992 (N.D. Cal.); *D.M. et al v. TikTok, Inc., at al.*, No. 3:20-CV-03185 (N.D. Cal.) (collectively the "California Actions"). All ten of the related cases, whether filed in Illinois or California, will be referenced as the "Related Actions."

premised on the same invasive conduct that gives rise to the BIPA claims, and *all* of the Related Actions allege BIPA violations (often the sole claim).

Moreover, none of the California Actions has advanced to the point that concerns of judicial economy would outweigh that State's inherent lack of interest in the class claims in dispute. The first-filed case in the Northern District of California, *Misty Hong v. ByteDance, Inc., et al.*, 5:19-cv-07792 (N.D. Cal. 2019), has advanced little, if at all, since inception in late November 2019, with the defendants' deadline to file a responsive pleading still more than a month away. *See Misty Hong* Docket, ECF Doc. No. 32 (Case Management Order, setting "Deadline to File Motion to Compel Arbitration and Motion(s) to Dismiss" for June 25, 2020).

Because Illinois is undoubtedly the center of gravity of this litigation, and because all Related Actions are in a similar state of procedural advancement, the Related Actions should be consolidated in the Southern District of Illinois. In the alternative, the Northern District of Illinois is also a suitable venue for consolidation and transfer.

## ARGUMENT

## I. Transfer and Consolidation in One District is Appropriate

28 U.S.C. § 1407 provides that "[w]hen civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407(a). This Panel shall order such transfer "upon its determination that transfers for such proceedings will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of such actions." *Id.* The Panel has previously ordered centralization of three or fewer cases. *See In re Wireless Telephone Replacement Protection Programs Litig.*, 180 F. Supp. 2d 1381, 1382 (J.P.M.L. 2002) (granting transfer and centralization of three consumer protection cases and determining that pending motions can be presented to and decided by the transferee judge); *In re*

*Philadelphia Life Ins. Co. Sales Practices Litig.*, 149 F. Supp. 2d 937, 938 (J.P.M.L 2001) (granting transfer of two deceptive insurance sales cases and finding that such transfer would promote the just and efficient conduct of the litigation).

Here, there are a multitude of cases with overlapping questions of law and fact among them, and the convenience of the parties and witnesses and considerations of judicial efficiency, all strongly favor transferring the Related Actions to the Southern District of Illinois for coordinated or consolidated pretrial proceedings.

**A. The Related Actions Share Common Questions of Law and Fact.**

In assessing the appropriateness of consolidation under Section 1407, the Panel looks to the pleadings to determine the extent to which common questions of fact are present. Here, the Related Actions share common questions of law and fact since they allege comparable core allegations against primarily the same defendants based on common transactions and events. "Section 1407 does not," however, "required a complete identity or even a majority of common factual issues as a prerequisite to centralization." *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 24 F. Supp. 3d 1361, 1363 (J.P.M.L. 2014) (quoting *In re Park W. Galleries, Inc., Litig.*, 887 F. Supp. 2d 1385, 1385 (J.P.M.L. 2012)).

The individual complaints in the Related Actions involve many common questions of fact. In the Related Actions, the complaints largely focus on the same invasions of privacy, by the same defendants, through the same use of the App to capture, collect, and store scans of facial geometry from the same class. In comparing the allegations of the Related Actions, common questions abound, including, but not limited to:

a. Whether Defendants collected, captured and otherwise obtained the biometric identifiers and/or biometric information of Plaintiffs and Class Members;

b. Whether Defendants possessed the biometric identifiers and/or biometric information of Plaintiffs and Class Members;

c. Whether Defendants disclosed, redisclosed and otherwise disseminated the biometric identifiers and/or biometric information of Plaintiffs and Class Members;

d. Whether Defendants profited from the biometric identifiers and/or biometric information of Plaintiffs and Class Members;

e. Whether Defendants provided the notice required by BIPA before collecting, capturing, obtaining, disclosing, redisclosing and otherwise disseminating the biometric identifiers and/or biometric information of Plaintiffs and Class Members;

f. Whether Defendants obtained enforceable written releases from Plaintiff and Class Members or their authorized representatives before collecting, capturing, obtaining, disclosing, redisclosing and otherwise disseminating the biometric identifiers and/or biometric information or Plaintiffs and Class Members;

g. Whether Defendants had in place – and disclosed to the public – the written retention and destruction policies required by BIPA while in possession of Plaintiff's and Class Members' biometric identifiers and/or biometric information;

h. Whether Defendants protected Plaintiffs' and Class Members' biometric identifiers and/or biometric information from disclosure using the reasonable standard of care within Defendants' industry and in a manner

5

that was the same as or more protective than the manner in which

Defendants protects other confidential and sensitive information;

 i. Whether Plaintiffs and Class Members suffered damages as a proximate

result of Defendants; and

 j. Whether Plaintiffs and Class Members are entitled to damages, equitable

relief and other relief.

The overlap here is sufficient to merit transfer and coordination pursuant to Section 1407. *See, e.g., In re Local TV Advertising Antitrust Litig.*, 338 F. Supp. 3d 1341 (J.P.M.L. 2018) (transfer was appropriate where actions commonly alleged that a conspiracy was effectuated by sharing competitively sensitive information); *In re Pharm. Indus. Average Wholesale Price Litig.*, 237 F. Supp. 2d 1377, 1379 (J.P.M.L. 2002) (to the extent non-common issues arise, transfer can have the "salutary effect of placing all actions in this docket before a single judge who can formulate a pretrial program that [] allows discovery with respect to any non-common issues to proceed concurrently with discovery on common issues").

Nor are the additional, non-BIPA class claims asserted in the California Actions grounds to reject the benefits consolidation will provide. As noted above, while only some of the Related Actions raise these additional claims, every single one of the Illinois *and* California Actions raises a claim under BIPA, and "[m]any MDLs [ ] encompass non-overlapping classes." *In re: N. Sea Brent Crude Oil Futures Litig.*, 978 F. Supp. 2d 1384 (J.P.M.L. 2013); *see also In re: Chrysler LLC 2.7 Liter V–6 Engine Oil Sludge Prods. Liab. Litig.,* 598 F.Supp.2d 1372 (J.P.M.L.2009) (centralizing five non-overlapping putative statewide class actions); *In re: Darvocet, Darvon & Propoxyphene Prod. Liab. Litig.*, 780 F. Supp. 2d 1379, 1381 (J.P.M.L. 2011) ("Transferee judges can accommodate common and individual discovery tracks, gaining the benefits of centralization

6

without delaying or compromising consideration of claims on their individual merits"). The BIPA violations are the ties that bind this litigation and give rise to the need for consolidation. *In re: Park West Galleries, Inc., Litig.,* 887 F.Supp.2d 1385, 1385 (J.P.M.L.2012) ("Section 1407 does not require a complete identity or even a majority of common factual issues as a prerequisite to centralization"). Here, the "common factual issues" are not simply a majority but an overwhelming majority of the issues in play, notwithstanding the additional causes of action asserted in the California Actions. *In re Park W. Galleries, Inc., Litig.*, 887 F. Supp. 2d 1385 (J.P.M.L. 2012) ("Discovery and other pretrial proceedings will focus on the same series of events. Pretrial motions likely will be similar in these actions").

## B. Transfer Will Promote Convenient, Just, and Efficient Litigation of the Related Actions

The Panel will order transfer where it would "eliminate duplicative discovery; prevent inconsistent pre-trial rulings (particularly with respect to the issue of class certification); and conserve the resources of the parties, their counsel and the judiciary." *In re U.S. Foodservice, Inc., Pricing Litig.*, 528 F. Supp. 2d 1370, 1371 (J.P.M.L. 2007). Because each action is based upon similar facts, plaintiffs in each of the Actions are, in turn, likely to seek overlapping discovery. *See In re Auto Body Shop*, 2014 WL 3908000, at *1-2 (J.P.M.L. 2014) (noting that transfer was appropriate to eliminate duplicative discovery when the actions shared a common factual core). Plaintiffs in the Related Actions necessarily will seek similar discovery from the Common Defendants to develop their common allegations and legal theories. The benefits to the Common Defendants are obvious as well, as they would not need to submit to repetitive and duplicative depositions, document discovery, discovery-related motion practice, and class certification briefing. *See, e.g., In re Pilot Flying J Fuel Rebate Contract Litig. (No. II)*, 11 F. Supp. 3d 1351,

1352 (J.P.M.L. 2014); *In re Fresh & Processed Potatoes Antitrust Litig.*, 744 F. Supp. 2d 1381, 1382 (J.P.M.L. 2010).

That the Related Actions are putative class actions only strengthens the argument for transferring them for coordination or consolidation in a single forum. "The need to eliminate" the risk of inconsistent class certification rulings "presents a highly persuasive reason favoring transfer under Section 1407." *In re Roadway Exp., Inc. Employment Practices Litig.*, 384 F. Supp. 612, 613 (J.P.M.L. 1974). *See also In re Caterpillar, Inc., C13 & C15 Engine Prod. Liab. Litig.*, 26 F. Supp. 3d 1394, 1395 (J.P.M.L. 2014) ("Centralization will . . . prevent inconsistent pretrial rulings (particularly as to class certification) . . ."); *In re Am. Family Mut. Ins. Co. Overtime Pay Litig.*, 416 F. Supp. 2d 1346, 1347 (J.P.M.L. 2006) (ordering transfer "in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings, particularly with respect to class certification . . ."). In short, this is an ideal circumstance for a transfer order pursuant to Section 1407.

## II.    The Southern District of Illinois is the Most Appropriate Forum

A review of the factors considered by the Panel in determining the most appropriate transferee court demonstrates that the Southern District of Illinois has several attributes which make that Court particularly appropriate here.

In enacting the BIPA, the Illinois General Assembly primarily concerned itself with the protection of the inherent privacy interests of Illinois residents, noting that: "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, social security numbers, when compromised, can be changed.  Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." 740 ILCS § 14/5(c).  While a handful of other states have begun enacting similar

8

laws, Illinois is "the leader in the biometric privacy arena" and the BIPA is "the first and the oldest biometric regulation in the United States."[3]

Illinois courts thus have a greater interest in seeing Illinois residents compensated for these intrusions, which were targeted at Illinois residents in Illinois, than California courts. *Promuto v. Waste Mgmt., Inc.*, 44 F. Supp. 2d 628, 641 (S.D.N.Y. 1999) ("it is clear that New York has the greater interest in adjudicating a breach of warranty action where a foreign corporation sends representatives to New York in order to acquire a New York family-owned business. New York residents have a greater interest in seeing their fellow residents compensated for their losses") (internal quotation and citation omitted); *Jurincie v. AG Trucking, Inc.*, No. 05 C 4585, 2005 WL 2663508, at *4 (N.D. Ill. Oct. 14, 2005) ("Indiana has a local interested [*sic.*] in adjudicating cases which involve significant bodily harm that occur on its own roadways"); *Cf. In re Aircrash Disaster Near Roselawn, Ind. on Oct. 31, 1994*, 948 F. Supp. 747, 758 (N.D. Ill. 1996) ("Texas has no interest in the compensation granted to any injured person other than its own residents, or in seeing that liberal compensatory damages are imposed upon defendants whose principal place of business is in Texas").

The Panel has on several occasions found that the Southern District of Illinois to be an appropriate transferee forum. *See, e.g., In re Gen. Motors Corp. Dex-Cool Prod. Liab. Litig.*, 293 F. Supp. 2d 1381, 1382 (J.P.M.L. 2003); *In re Profiler Prod. Liab. Litig.*, 429 F. Supp. 2d 1381, 1382 (J.P.M.L. 2006); *In re: Pradaxa (dabigatran etexilate) Prod. Liab. Litig.*, 883 F. Supp. 2d 1355, 1356 (J.P.M.L. 2012) ("We are presented with a number of attractive choices for transferee district, but we are persuaded that the Southern District of Illinois is an appropriate transferee

---

[3] *See* https://www.natlawreview.com/article/anatomy-biometric-laws-what-us-companies-need-to-know-2020 (last visited May 15, 2020).

district for this litigation"); *In re: Yasmin, Yaz (Drospirenone) Mktg., Sales Practices & Prod. Liab. Litig.*, 655 F. Supp. 2d 1343, 1344 (J.P.M.L. 2009) ("We are persuaded that the Southern District of Illinois is an appropriate forum for this docket . . . provid[ing] a geographically central forum for this nationwide litigation in which actions are pending in various districts across the country").

Notably, no judge in the Southern District is currently presiding over any MDL's, compared to the Northern District of Illinois, home to 10 MDLS, and the Northern District of California, home to 20.[4] Moreover, as of December 2019, the Southern District of Illinois has only 2,117 civil cases pending, compared to 13,747 in the Northern District of Illinois and 10,642 in the Northern District of California.[5]  The Southern District of Illinois is thus in the best position to move these consolidated proceedings forward through the pre-trial phase in the most expeditious fashion.

## III.    In the Alternative, the Northern District of Illinois is a Suitable Forum

Absent consolidation in the Southern District of Illinois, transfer of the Related Actions to the Northern District of Illinois is a sensible alternative.  Each of the arguments above as to the center of gravity of this litigation apply to the Northern District of Illinois as well, and its judges are the most experienced in the country at adjudicating BIPA class actions.  The Panel has long-

---

[4] *See* https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-May-15-2020.pdf (last visited May 15, 2020).
[5] *See* https://www.uscourts.gov/statistics/table/c-1/statistical-tables-federal-judiciary/2019/12/31 (last visited May 15, 2020).

recognized both that there is "something to be said for the convenience of a geographically central forum,"[6] and also that the "Northern District of Illinois is a convenient, central forum."[7]

Additionally, while the Northern District of California currently has 20 pending MDLs and only 16 Article III judges, the Northern District of Illinois has 10 pending MDLs and 29 Article III judges,[8] making the Northern District of Illinois a more attractive alternative option than the Northern District of California. For example, Judge Lucy Koh, assigned to the *Misty Hong* action, is already overseeing two active MDLs, one of which is a sprawling antitrust action.[9]

## CONCLUSION

For the forgoing reasons, Movant respectfully requests that the Panel centralize the Related Actions as well as any tag-along actions or other cases, such as may be subsequently filed in federal court asserting related or similar claims, in the United Stated District Court for the Southern

---

[6] *In re Multidistrict Private Civil Treble Damage Litigation Involving Library Editions of Children's Books*, MDL Nos. 2, 5, 6 & 7, 297 F. Supp. 385, 387 (J.P.M.L. 1968) (MDL transfer to Northern District of Illinois).

[7] *In re Aimster Copyright Litig.*, 177 F. Supp. 2d 1380, 1382 (J.P.M.L. 2001) (MDL transfer to Northern District of Illinois). *See also In re Refund Anticipation Loan Litig.*, 856 F. Supp. 2d 1336, 1337 (J.P.M.L. 2012) (Northern District of Illinois is "convenient and centrally located"); *In re Capital One Tel. Consumer Prot. Act Litig.*, 908 F. Supp. 2d 1366, 1368 (J.P.M.L. 2012) ("Northern District of Illinois offers a relatively central and convenient forum for the involved parties and counsel"); *In re Watson Fentanyl Patch Prods. Liab. Litig.*, 883 F. Supp. 2d 1350, 1352 (J.P.M.L. 2012) (Northern District of Illinois "provides a convenient and accessible forum for this litigation in which actions have been filed throughout the country regarding a product marketed nationwide"); *In re Ameriquest Mortg. Co. Mortg. Lending Practices Litig.*, 408 F. Supp. 2d 1354, 1355 (J.P.M.L. 2005) (Northern District of Illinois a "geographically central district will be a convenient location for a litigation already nationwide in scope"); *In re McDonald's Corp. Promotional Games Litig.*, 192 F. Supp. 2d 1381, 1382 (J.P.M.L. 2002) (Northern District of Illinois is a "geographically central district [and] will be a convenient location for a litigation already nationwide in scope").

[8] https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2019.pdf (last visited May 15, 2020).

[9] MDL No. 2752 *In Re: Yahoo! Inc. Customer Data Security Breach Litigation*; MDL-2773 *In Re: Qualcomm Antitrust Litigation*.

District of Illinois.  In the alternative, Movant requests that the Actions be consolidated in the

Northern District of Illinois before one of the four judges assigned to a Related Action there.

DATED: May 15, 2020                           Respectfully submitted,


                                    _/s/  Francis J. "Casey" Flynn, Jr._
                                    Francis J. "Casey" Flynn, Jr.
                                    Law Office of Francis J. Flynn, Jr.
                                    3518A Arsenal Street
                                    Saint Louis, Missouri 63118
                                    Email: casey@lawofficeflynn.com
                                            francisflynn@gmail.com

                                    Tiffany M. Yiatras
                                    CONSUMER PROTECTION LEGAL, LLC
                                    8235 Forsyth Boulevard, Suite 1100
                                    Saint Louis, MO 63105-1643
                                    Email: tyiatras@gmail.com


                                    **Plaintiffs' Counsel in *A.S. v. TikTok Inc*.,
                                    No. 3:20-cv-00457 (S.D. Ill.)**

**Before the Judicial Panel on Multidistrict Litigation**

**MDL - _____**

**In re: IN RE TIKTOK INC. DATA PRIVACY LITIGATION**


**SCHEDULE OF ACTIONS**

| Case Name | District Court and Division | Civil Action No. | Assigned Judge |
|---|---|---|---|
| *ILLINOIS ACTIONS* | | | |
| *A.S. v. Tiktok Inc., et al.*<br><br>**Plaintiff:**<br><br>A.S., a Minor, through Guardian, A.S.<br><br>**Defendants:**<br><br>TikTok Inc.<br><br>ByteDance Inc. | Southern District of Illinois (East St. Louis) | 3:20-cv-00457 | |
| *E.R. v. TikTok, Inc., et al.*<br><br>**Plaintiff:**<br><br>E.R., a Minor, through her Guardian, L.H.<br><br>**Defendant:**<br><br>TikTok, Inc.<br><br>ByteDance, Inc. | Northern District of Illinois (Chicago) | 1:20-cv-2810 | Judge John Z. Lee |
| *K.M. v. TikTok Inc., et al.*<br><br>**Plaintiff:** | Northern District of Illinois (Chicago) | 1:20-cv-2883 | Judge Charles P. Kocoras |

| | | | |
|---|---|---|---|
| K.M., a Minor, through her Guardian, C.M.<br><br>**Defendants:**<br><br>TikTok, Inc.<br><br>ByteDance, Inc. | | | |
| *D.H. v. TikTok, Inc.*<br><br>**Plaintiff:**<br><br>D.M., a minor, through her Guardian, D.H.<br><br>**Defendants:**<br><br>TikTok, Inc.<br><br>ByteDance, Inc. | Northern District of Illinois (Chicago) | 1:20-cv-2884 | Judge John F. Kness |
| *L.B. v. TikTok, Inc., et al.*<br><br>**Plaintiff:**<br><br>L.B., a minor, by and through his or her legal guardian, MOLLY JANIK<br><br>**Defendants:**<br><br>TikTok, Inc.<br><br>ByteDance, Inc. | Northern District of Illinois (Chicago) | 1:20-cv-2889 | Judge Steven C. Seeger |
| *CALIFORNIA ACTIONS* | | | |
| *Hong v. ByteDance, Inc., et al.*<br><br>**Plaintiff:**<br><br>MISTY HONG,<br><br>Minor A.S., through her | Northern District of California (San Jose) | 5:19-cv-7792 | Judge Lucy H. Koh |

| | | | |
|---|---|---|---|
| mother and legal guardian LAUREL SLOTHOWER, | | | |
| Minor A.R., through her mother and legal guardian GILDA AVILA, | | | |
| MEGHAN SMITH, | | | |
| Minors C.W. and I.W., through their mother and legal guardian MIKHAILA WOODALL, | | | |
| Minor R.P., through her mother and legal guardian LYNN PAVALON | | | |
| **Defendants:** | | | |
| *ByteDance, Inc.,* | | | |
| *TikTok, Inc.* | | | |
| *Beijing ByteDance Technology Co., Td.* | | | |
| MUSICAL.LY | | | |
| *R.S. et al. v. TikTok, Inc. et al.* <br><br> **Plaintiffs:** <br><br> R.S. and J.S., through their guardian <br><br> **Defendants:** <br><br> TikTok Inc. <br><br> ByteDance, Inc. | Northern District of California (San Jose) | 5:20-CV-3212 | Magistrate Judge Susan van Keulen |

| | | | |
|---|---|---|---|
| *S.A. v. TikTok, Inc. et al.*<br><br>**Plaintiff:**<br><br>S.A., a minor, by and through his mother and guardian, Maritza A.<br><br>**Defendants:**<br><br>TikTok, Inc. and<br><br>ByteDance, Inc. | Northern District of California (San Jose) | 5:20-cv-3294 | Judge Nathanael M. Cousins |
| *P.S. et al v. TikTok, Inc. et al.*<br><br>**Plaintiffs:**<br><br>P. S., a minor, by and through her Guardian, Cherise Slate<br><br>M. T. W., a minor, by and through her Guardian, Brenda Washington<br><br>**Defendant:**<br><br>*TikTok, Inc. and*<br><br>*ByteDance, Inc.* | Northern District of California (San Francisco) | 3:20-cv-2992 | Judge William H. Orrick |
| *D.M. et al v. TikTok, Inc., at al.*<br><br>**Plaintiffs:**<br><br>D.M. And A.M., Minors, By and Through Their Guardian, Porchia Heidelberg,<br><br>A.O., A Minor, By and Through His Guardian, Jasmin Beverly, | Northern District of California (San Francisco) | 3:20-CV-03185 | Magistrate Judge Laurel Beeler |

| M.P., A Minor, By And Through Her Guardian, Requeenis Gilder | | | |
|---|---|---|---|
| **Defendants:** | | | |
| TikTok, Inc. | | | |
| ByteDance, Inc. | | | |