UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: TIKTOK, INC., ) <br> CONSUMER PRIVACY ) <br> LITIGATION ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> This Document Relates to All Cases ) | MDL No. 2948 <br><br> Master Docket No. 20 C 4699 <br><br> Judge John Z. Lee <br><br> Magistrate Judge Sunil R. Harjani |

**EKWAN RHOW AND MEGAN JONES' JOINT OPPOSITION TO THE SETTLING**

**FIRMS' PROPOSED EXCLUSIONARY SLATE**

**I.       The Litigating Firms' Cooperative Approach Is Best For The Class.**

During the meet and confer process and in their applications, the Litigating Firms presented a leadership proposal that allows for inclusion of the Settling Firms' different viewpoints. In contrast to the Litigating Firms who are open to cooperatively working with *any* plaintiffs' counsel, the Settling Firms are opposed to what they describe as a "forced marriage" and seek to limit leadership to those aligned with their views. Doc. No. 52 at ¶¶ 28, 76. Only days earlier, however, and in response to the Litigating Firms' proposal of an equally-balanced slate (Doc. No. 40 at fn. 1), the Settling Firms offered two slots on their proposed PSC to the Litigating Firms. Supp. Rhow Decl. at ¶ 4. This is in sharp contrast with their all-or-nothing approach now. Despite differing views on proper case strategy, the Litigating Firms remain willing to work jointly with any counsel this Court appoints in order to ensure leadership represents a variety of viewpoints.

The Settling Firms' newly invented rationale for refusing to cooperate is that their undisclosed settlement would be lost in a "forced marriage." But the Litigating Firms have, consistent with their duty to the class, *not taken a position* on the *terms* of a purported and non-finalized settlement they have not seen or evaluated. For that reason, the Litigating Firms believe it is critical to appoint them so the class can be represented by: (1) counsel who are not wedded to the undisclosed settlement as their primary selling point for leadership, and who will look at it through an objective lens; and (2) counsel who have the longest history in the case, the deepest grasp of all the claims, and the broadest putative class. It would not serve the class to adopt the Settling Firms' exclusionary slate just because, in coordination with defendants and under pressure to gain tactical advantage in the leadership contest, they reached a settlement nobody has seen or evaluated other than seven lawyers hand-picked by defendants to attend a structurally-flawed mediation. Doc. No. 52 at fn. 3, 5.

The Litigating Firms believe leadership must be prepared to litigate, as any settlement might

Page 1 of 9

not be finalized or approved, and must be focused on all claims and class members, rather than just BIPA and minors. The Settling Firms apparently believe otherwise. They focus exclusively on their undisclosed settlement, rather than preparing for litigation, and claim the litigation issues in CMO 1 are "not relevant." Doc. No. 6. They filed numerous copycat suits, with little or no independent work product, on behalf of a putative class that excluded tens of millions of adult TikTok users.

What if defendants pull out of this unexecuted, conditional "settlement in principle" due to U.S.-China tensions or the new Oracle deal that reportedly does not involve a sale after all? Or what if this Court rejects it? Our proposal ensures the two Co-Leads represent all putative classes and claims and the entire leadership group is able to objectively evaluate the purported settlement while also being well prepared for litigation with the first-filed TikTok complaint, the first-filed BIPA claims, and years of technical, factual, and legal investigation in the U.S. and China. Our proposal also offers the best chance to cure the structural flaws undermining the August 13 mediation and discourages free riders whose actions deter pioneering work and place the class at risk.[1]

## II.     The Litigating Firms' Viewpoints Should Be Represented In Leadership.

One of the Settling Firms' proposed Co-Leads, Katrina Carroll, filed a 28-page accusatory declaration, but it cannot change one absolute fact: had defendants not excluded the Litigating Firms from the August 13 mediation, none of the disagreements Ms. Carroll uses as pretext for her inability to work with the Litigating Firms would have occurred. Equally significant, the only people who could have stopped defendants from dividing plaintiffs' counsel were Ms. Carroll and Jon Jagher, but they chose to proceed with an exclusionary mediation prior to leadership being resolved to bolster their leadership applications. They even adopted defendants' tactics and excluded other

---

[1] Rewarding the Settling Firms with their exclusionary slate would encourage plaintiffs' counsel around the country to jump into cases late, misappropriate pre-existing work product, orchestrate early mediations excluding original counsel, ask for leadership based primarily if not exclusively on a settlement, and place the class at risk of a reverse auction while discouraging plaintiffs' counsel from investing in original work needed to bring strong cases on behalf of vulnerable classes of victims.

plaintiffs' counsel (below). These unrebutted facts undermine their ability and qualifications to lead.

Defendants acted in their own interests, which are directly opposed to those of the class, when – after previously extending an invitation to participate in mediation – they suddenly excluded the Litigating Firms only *after* the August 4 JPML order centralizing the cases in this district (which they supported even though they are in California).[2] Doc. No. 40-1 at ¶¶ 47-51. Ms. Carroll and Mr. Jagher could have defeated defendants' divide-and-conquer tactics by indicating their intent to cancel or reschedule mediation until all were included or leadership was resolved. But instead they told defendants they would participate even if defendants excluded the Litigating Firms. Supp. Rhow Decl. at ¶ 19. Notably, Ms. Carroll omits this crucial fact in providing this Court with a different narrative under oath. Doc. No. 52 at ¶¶ 68, 70.

Three days after the August 13 mediation, the Settling Firms filed a status report with defendants – and without notice to other Interim Counsel – seeking to keep the settlement terms hidden from other Interim Counsel for months.[3] On August 19, they refused to join the Litigating Firms' demand that defendants reveal the settlement terms to all Interim Counsel and stated full disclosure would not provide any "benefit" to the class.[4] On August 21, the Settling Firms filed a Proposed Case Management Schedule with defendants in which they again sought months-long

---

[2] The basis for this exclusion – their "feeling" that two Litigating Firms supposedly had conflicts that defendants could not identify – coincidentally disappeared just *after* the August 13 mediation, evidenced by defendants signing the August 23 status report with the Litigating Firms indicating their agreement to another mediation (Doc. No. 7) before defendants cancelled it (Doc. No. 8) as a result of Ms. Carroll raising concerns. Doc. No. 40-1 at ¶¶ 53-54.

[3] Doc. No. 1 at ¶¶ 5, 7 ("[I]t is imperative to TikTok to maintain the mediation privilege and strict confidentiality concerning the terms of the settlement until the settlement is disclosed publicly and to this Court, as part of the settlement approval process … The Settling Parties support a stay of the cases comprising the MDL, pending the filing of the motion for preliminary approval ….").

[4] Doc. No. 52-3 at 41 of 54 ("At this point, however, we do not believe it is appropriate for us to join your effort to force Defendant to provide information regarding the settlement terms to you. If you choose to proceed with your demand to defense counsel, we will take no position on it. … [W]e simply see no benefit to be gained for the class in making such a demand of Defendant at this time, which could derail the hard-fought settlement ….").

delay to conceal the purported settlement. Doc. No. 6. And, on August 24, they scuttled a third mediation the Litigating Firms and defendants had scheduled. Doc. Nos. 7-8; 40-1 at ¶¶ 53-54.

To distract from this lack of cooperation, the Settling Firms personalize what are professional disagreements over the following serious questions arising from their own conduct:

- **Should mediation have occurred prior to resolution of class leadership and venue?**

The Litigating Firms think not, but the Settling Firms believe so. The Litigating Firms' position arose from a concern that defendants would exploit divisions among plaintiffs' counsel, including the Settling Firms' desire to use mediation as leverage for leadership, to create a reverse auction to the detriment of the class. The documented disputes among plaintiffs' counsel here are exactly why leadership and venue should be in place prior to mediation.

- **Should mediation have occurred where defendants and the Settling Firms strategically and selectively chose who participated and who did not?**

The Litigating Firms think not, but the Settling Firms believe so. Both defendants and the Settling Firms engaged in this unusual and suspect behavior. First, in denying the Litigating Firms a place at the table, defendants excluded the only Court-appointed lead counsel authorized to act on behalf of the class at the time. *In re TikTok, Inc. Privacy Litig.*, 19-cv-07792 (Doc. No. 82) (the "Koh Order"). The Koh Order had not been modified or set aside at the time of the August 13 mediation as this Court's CMO 1 was not entered until August 17. Doc. No. 4.

Also, Ms. Carroll chose Tina Wolfson to participate at mediation on behalf of the N.D. Cal. cases while excluding Lesley Weaver and Amy Keller. As revealed for the first time in the Settling Firms' leadership papers, Ms. Wolfson participated in the August 13 mediation at Ms. Carroll's invitation. Doc. Nos. 52 at fn. 3; 33-1 at ¶ 11. Further, using Ms. Wolfson' attendance as an excuse, Ms. Carroll barred Ms. Weaver and Ms. Keller from attending, stating in an August 11 email other "highly qualified counsel from the N.D. Cal. cases" would be participating instead. Doc. No. 51-2.

In trying to justify her exclusion of Ms. Weaver and Ms. Keller to this Court, Ms. Carroll asserts in her sworn declaration she did so because of the Koh Order prohibiting counsel other than those appointed to leadership from working on the case. Doc. No. 52 at fn. 10. But if that were her true rationale, then Ms. Carroll could not have included Ms. Wolfson either. Taking another opportunity to place the blame elsewhere, Ms. Carroll tells this Court she excluded Ms. Weaver and Ms. Keller in deference to Mr. Rhow's August 12 email (Doc. No. 52 at fn. 10), but she *already* had excluded the pair on August 11. Doc. No. 51-2. Ms. Carroll excluded them entirely on her own and without Mr. Rhow's influence – despite Ms. Carroll's statements under oath to the contrary.

- **Did the Settling Firms protect the class against an improper reverse auction?**

The Settling Firms claim they "acted specifically to *prevent* a 'reverse auction' *by immediately involving all counsel* …." Doc. No. 52 at ¶ 42 (emphasis in original). Not so. As a result of defendants' and the Settling Firms' tactics above, the August 13 mediation did *not* involve "all counsel" and it fails to satisfy the Settling Firms' own standard for avoiding a reverse auction.

- **Should counsel not appointed to represent the class negotiate and settle claims brought by other plaintiffs' counsel excluded from mediation?**

The Litigating Firms think not, but the Settling Firms believe so. The Settling Firms claim to have "reached a settlement in principle … which will resolve *all of the claims asserted in the MDL*, on a *class-wide* basis." Doc. No. 1 at ¶ 4 (emphasis added). That includes both claims on behalf of adults and various non-BIPA claims *never* asserted in their complaints. That is so even though the Settling Firms clarified their belief that this is a BIPA-only case; interpreted this Court's intervention order as endorsing their view; and even denigrated the Litigating Firms' additional Federal and California claims. Doc. No. 52 at ¶¶ 29, 79-80. If that is their view, the Settling Firms should have moved to sever and transfer back to N.D. Cal. the Federal and California claims instead of purporting to settle them without the Litigating Firms. What value could they have obtained for the Litigating Firms'

Federal and California claims with their myopic view of this broad privacy case as a BIPA-only case?

- **Should counsel purposely elect not to raise a claim at mediation and then release it?**

The Litigating Firms think not, but the Settling Firms believe so. The Settling Firms claim not to have been informed of the Litigating Firms' Video Privacy Protect Act ("VPPA") claim prior to mediation (Doc. No. 52 at ¶¶ 77, 81), which calls into question how they could have settled that claim as they assert. Doc. No. 1. In fact, Mr. Rhow informed Ms. Carroll of this claim, including its potential value, during their pre-mediation talks when it appeared Mr. Rhow would be attending, at which point Ms. Carroll cautioned against raising the claim at mediation. Supp. Rhow Decl. at ¶ 22. Ms. Carroll's pre-mediation statement suggests she consciously chose not to push for value for the VPPA claim. And, in her sworn declaration, Ms. Carroll is intentionally vague as to whether the claim was negotiated and whether the class received value for it. Doc. No. 52 at ¶ 82.[5]

- **Should the Settling Firms have supported defendants' post-mediation efforts to conceal the settlement terms from other Interim Counsel?**

The Litigating Firms think not, but the Settling Firms believe so. The Settling Firms told this Court under oath their "position is and *always* has been that … the terms should be disclosed to all litigants" and that, "[s]ince reaching the settlement," they "have continually advocated to Defendants that the settlement terms be shared." Doc. No. 52 at ¶¶ 23, 75 (emphasis in original). This is clearly inaccurate. An express condition of their August 13 mediation was non-disclosure to

---

[5] The Settling Firms also try to minimize our VPPA claim by asserting it was previously filed in another unrelated TikTok case in N.D. Illinois (Doc. No. 52 at fn. 11), but that complaint has none of the factual allegations found in ours concerning the unlawful transmission of users' video viewing histories to Facebook and Google, and even counsel for the parties in that action do not regard it as overlapping with our VPPA claim. Supp. Rhow Decl. at ¶¶ 32-33. Nor is our VPPA claim merely a copy of Ms. Weaver and Ms. Keller's, whose work on the VPPA claim we acknowledged in our original papers. Whereas theirs focuses on the internal transmission of users' video viewing histories *among defendants*, our VPPA claim is focused on new facts we developed through independent technical expert work revealing the transmission of such data *to third-parties* Facebook and Google, which greatly strengthens and elevates our VPPA claim. Case No. 20-cv-04723 (Doc. No. 89).

anyone except the seven plaintiffs' counsel in attendance. Also, as discussed above, between August 16 and August 24, the Settling Firms made multiple filings with defendants seeking to keep the settlement terms hidden for months from all Interim Counsel (Doc. Nos. 1, 6); rejected the Litigating Firms' attempt to force defendants to reveal the secret terms (Doc. No. 52-3 at 41 of 54); and undermined the third scheduled mediation with defendants. Doc. Nos. 7-8; 40-1 at ¶¶ 53-54.

- **Should the Settling Firms have continued acting on behalf of the class in post-mediation settlement talks despite this Court's order to the contrary?**

The Litigating Firms think not, but the Settling Firms believe so. On September 1, this Court entered CMO 2 stating: "[N]o counsel of record … shall have any more or less authority than another. Nor will counsel of record for a particular Plaintiff or a putative class of Plaintiffs have the authority to *act on behalf of* or bind another Plaintiff or another putative class of Plaintiffs absent further order of the Court." Doc. No. 24 at 2 of 3 (emphasis added). Nonetheless, the Settling Firms and defendants concede the Settling Firms, even after CMO 2, are continuing to work toward finalizing a settlement on behalf of the class. Doc. No. 52 at ¶ 18; Doc. No. 38 at 2 of 16.

### III. Conclusion.

The Settling Firms' tactics and proposal raise significant concerns and exclude all viewpoints other than their own. This is not cooperative, nor is it best for the class. Given the clearly defined differences of opinion on how these cases should be litigated, those views should be represented in leadership. Unlike the Settling Firms, the Litigating Firms are pleased to include varying views in leadership, including from those who believe a purported settlement should proceed. The Litigating Firms respectfully submit this Court should appoint the attorneys best suited to represent the class, including those who: (1) did the most work investigating the claims; (2) filed the first cases; and (3) are prepared to litigate *and* objectively evaluate settlement *after* leadership is resolved – rather than use a purported settlement from a structurally-flawed mediation as their *primary* claim to leadership.

                                                                    Respectfully submitted,

DATED: September 15, 2020        **BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.**

By: */s/ Ekwan E. Rhow*
Ekwan E. Rhow
BIRD, MARELLA, BOXER, WOLPERT,
NESSIM, DROOKS, LINCENBERG
& RHOW, P.C.
1875 Century Park East, 23rd Floor
Telephone: (310) 201-2100
Email: erhow@birdmarella.com

MDL Interim Counsel
Attorneys for Plaintiffs Misty Hong, minor A.S., through her mother and legal guardian Laurel Slothower, and minor A.R., through her mother and legal guardian Gilda Avila

DATED: September 15, 2020        **HAUSFELD LLP**

By: */s/ Megan E. Jones*
Megan E. Jones
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Telephone: (415) 633-1908
Email: mjones@hausfeld.com

MDL Interim Counsel
Attorneys for Plaintiffs minor P.S., through her legal guardian Cherise Slate, and minor M.T.W., through her legal guardian, Brenda Washington

DATED:  September 15, 2020			**CLIFFORD LAW OFFICES, P.C.**

By:  /s/ *Shannon M. McNulty*
Shannon M. McNulty
120 N. LaSalle Street, Suite 3100
Chicago, Illinois 60602
Telephone: (312) 899-9090
Email: rac@cliffordlaw.com

MDL Interim Counsel
Attorneys for Plaintiffs minor P.S., through her legal guardian Cherise Slate, and minor M.T.W., through her legal guardian, Brenda Washington

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2020, the foregoing document was filed electronically through the Court's Electronic Case Filing System. Service of this document is being made upon all counsel of record in this case by the Notice of Electronic Filing issues through the Court's Electronic Case Filing System on this date.

*/s/ Ekwan E. Rhow*
Ekwan E. Rhow