UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: TIKTOK, INC., CONSUMER PRIVACY LITIGATION | ) | MDL No. 2948 |
| | ) | Master Docket No. 20 C 4699 |
| | ) | Judge John Z. Lee |
| | ) | Magistrate Judge Sunil R. Harjani |
| This Document Relates to All Cases | ) | |

**OPPOSITION OF PROPOSED PSC MEMBERS KARA WOLKE, DAVID GIVEN, AND AMANDA KLEVORN TO THE SETTLING FIRMS' PROPOSED LEADERSHIP SLATE**

## I. Rule 23(g), Not Numbers, Should Guide this Court's Appointment of Counsel.

In a significant, high-profile MDL like this one, where multiple submissions confirm a serious difference among plaintiffs' counsel on the subject of leadership, the Court bears the responsibility of creating a leadership structure under Rule 23(g). Tallying who supports whom among attorneys does *not* appear in that Rule, however. And despite what the Settling Firms urge, the Court should not base its leadership decision on attorney headcount—particularly where **first**, those attorneys do *not* represent the majority of class plaintiffs (a far better metric if one is counting), and **second**, half of those in favor of the Settling Firms' leadership slate support a settlement they have never seen.

"Appointment of [leadership in a class action] is not supposed to be a popularity contest." *In re Shop-Vac Mktg. & Sales Practices Litig.*, No. 4:12-md-2380, 2013 WL 183855, at *3 (M.D. Pa. Jan. 17, 2013) (and noting that "the number of attorneys supporting a given candidacy is not included among the factors set forth in Rule 23(g)") (internal quotations and citation omitted). Courts routinely and rightly reject the popularity among lawyers for a given slate as a consideration in determining class action leadership. They do so for a reason. A popularity contest does not promote the objectives of Rule 23(g). Just the opposite: It encourages multiple copycat filings coordinated among lawyers aimed at garnering votes for leadership and control of a given class action, with the risk of secret side deals among counsel. *In re Razorfish Secs. Litig.*, 143 F. Supp.2d 304, 308 (S.D.N.Y. 2001).

The Court should decide leadership in this MDL on the merits of counsel's qualifications as set out in Rule 23(g). Generally, the most important factor is the work counsel have done to identify or investigate potential claims in the action. *See, e.g.*, *Walker v. Discover Fin. Servs.*, No. 10-cv-6994, 2011 WL 2160889, at *3 (N.D. Ill. May 26, 2011) (appointing among competing firms those who "were the first to file putative class-action complaints" and who had "been involved in this litigation

for the longest time period and have performed the most work in identifying and investigating potential claims"); *In re Shop-Vac Mktg.*, 2013 WL 183855, at *3 (same). The undersigned respectfully submit that the Litigating Firms best satisfy this criterion. Doc. No. 40.

## II. The Settling Firms' Actions Caution Against Their Selection as Lead Counsel.

The Settling Firms have proffered a lengthy description of how they obtained their conditional agreement with Defendants to buttress their leadership application. But in all of the many pages devoted to justifying what they have done, the Settling Firms nowhere address this central issue: They purport to have settled this entire MDL (including claims they did not bring) **without court sanction or authorization of any kind**. In this, their actions run contrary to the spirit if not the letter of Judge Koh's July 14th order in the *Hong* case as well as this Court's CMOs #1 and #2. All three of these orders reflect the preference for a well-established practice and procedure: The appointment of leadership in a class action such as this one (and especially an MDL) should *precede* settlement, not the other way around.

In this Circuit, "a person who *unofficially represents* the class during settlement negotiations must be under strong pressure to conform to the defendants' wishes [and] an individual, lacking official status, knows that a negotiating defendant may not like his 'attitude' and may try to reach a settlement with another member of the class." *In re General Motors Engine Interchange Litig.*, 594 F.2d 1106, 1125 (7th Cir. 1979) (emphasis added). "Settlement negotiations with less than all counsel *weaken* the class' tactical position even if the attorney who enters into the negotiations attempts to represent the class' interests vigorously." *Id.* (emphasis added). *See also Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 284 (7th Cir. 2002) (to same effect); *Atlantic Mutual Ins. v. Northwest Airlines*, 24 F.3d 958, 960-61 (7th Cir. 1994) (to same effect).

As this Circuit's authority makes clear, proper order matters in the settlement of class actions. As it should. Maintaining procedural integrity in a class action (especially early in a case of

this size and scope) assures the fair and adequate representation of the class, bolstering the legitimacy of any voluntary resolution of the matter. This is a constitutional imperative. *Amchem Products v. Windsor*, 521 U.S. 591, 627 (1997). Consistent with that imperative, this Court issued its CMO #1 and later instructed in its CMO #2 that "until the Court makes [leadership] appointments, no counsel of record representing a particular Plaintiff or a putative class of Plaintiffs shall have any more or less authority than another." Doc. No. 24.

The terms and conditions of the agreement the Settling Firms have made with Defendants remain a mystery to the majority of plaintiffs' counsel—including half of the attorneys who say they *support* it. Nor has the Court seen or considered them. As those terms remain secret, the mere fact the Settling Firms negotiated that agreement, whatever it may say, should not weigh in favor of granting them exclusive control of the matter. Rewarding the Settling Firms for acting as they have would place a stamp of approval on a cart-before-the-horse process that the Seventh Circuit has characterized as "improper." *General Motors*, 594 F.2d at 1126.

The issue now before this Court is whether proper order matters. If it does, then the fact that the Settling Firms negotiated an agreement with Defendants before the Court appointed lead counsel pursuant to Rule 23(g) counts as a strike **against (not for) their leadership proposal**.

## III. The Settling Firms' Actions Pose Risk to The Class.

The Settling Firms rely almost exclusively on the fact they negotiated a conditional "settlement in principle" with Defendants to support their leadership applications. But the decision to proceed as they did hardly supports their proposed leadership slate. Their actions have already increased the cost of this matter, precipitating satellite litigation over the propriety of what they have done **in a contested leadership proceeding**. They must know this, which is why they spent as many pages and proffered as many exhibits (including a 53-page email thread) as they did on the subject in support of their applications.

The Settling Firms' action also poses risk to the class. As noted above, they have weakened the class' tactical position in the matter. Moreover, having endorsed the exclusion of other plaintiffs' counsel and, more importantly, those serving as class representatives in other cases against Defendants, the Settling Firms may have left those individuals with an "ultimatum that prevents any effective challenge to the settlement by simply giving class members the choice of accepting its benefits or litigating individually." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 466 (2d Cir. 1974). Finally, as Defendants refuse to disclose the agreement's terms to anyone outside their mediation, the net effect of the Settling Firms' actions has been to empower *Defendants*.

The ultimate question is whether the Settling Firms followed a process justifying their *exclusive* leadership of this MDL. Aside from the horse and cart problem, the other available evidence suggests that they did not. ***First***, they excluded or endorsed the exclusion of multiple sets of plaintiffs' counsel from the August 13th mediation, and proceeded solely with a slate of seven attorneys approved by *Defendants*. ***Second***, they acted counter to the spirit of CMO # 2 when, after its issuance, they and Defendants announced that they were still seeking to consummate an agreement *before* a Rule 23(g) leadership appointment. ***Third***, they did not seek input from *all* potential class representatives about the conditional settlement. These factors all weigh *against* the Settling Firms' exclusive leadership proposal.

## IV. The "Team Of Rivals" Approach Suggested By The Litigating Firms Would Encourage Cooperation And Aid The Court In Its Evaluation Of Any Proposed Settlement.

The Seventh Circuit has warned that "the structure of class actions under Rule 23 [] gives class action lawyers an incentive to negotiate settlements that enrich themselves but give scant reward to class members, while at the same time the burden of responding to class plaintiffs' discovery demands gives defendants an incentive to agree to early settlement that may treat the class action lawyers better than the class." *Thorogood v. Sears, Roebuck and Co.*, 627 F.3d 289, 293 (7th Cir.

2010) (emphasis omitted). The Settling Firms' insistence on leadership for only those who support their secret agreement with Defendants, and that no outside lawyers with a principled disagreement over process should participate in the leadership of this case, raises serious red flags in this connection. *See In re Ivan F. Boesky Sec. Litig.*, 948 F.2d 1358, 1365 (2d Cir. 1991) (stating that failure to communicate and consult with other plaintiffs' counsel can be grounds for rejection of class settlement); *Moore v. Halliburton Co.*, No. 3:02-cv-1152-M, 2004 WL 2092019, at *6 (N.D. Tex. Sep. 9, 2004) (finding that even where duly appointed lead counsel negotiates settlement but does so without notice to other plaintiffs, counsel jeopardizes appointment as lead counsel; such appointment may be modified if other plaintiffs, after receiving appropriate information, determine that secret settlement is unacceptable).

Unlike the duly-appointed lead counsel in *Moore v. Halliburton Co.*, the Settling Firms were not appointed to any position at the time they negotiated their conditional agreement with Defendants. At a time when they were in competition with multiple other counsel for leadership appointment in this matter, the Settling Firms made their conditional agreement with Defendants and are now using that fact as their primary argument for why they should be appointed to that leadership role. In short, they have put their agreement with Defendants in service of their proposed leadership structure. Selection of the Litigating Firms' proposed blended leadership slate, where the Settling Firms have a voice but do not drown out those who are not invested in what they have done, rights the ship, solving any potential issues raised by their unorthodox and unauthorized actions and "creating order out of what [might] otherwise be chaos." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 528 (E.D. Mich. 2003).

A balanced slate of attorneys in leadership ensures a balanced and objective take on whatever arrangement the Settling Firms have made with Defendants, good, bad or ugly. In any event, the fact of that arrangement should not serve as a basis for appointment to the exclusion of *all* others.

## CONCLUSION

Defendants (with the assistance of certain interim plaintiffs' counsel) have attempted to pre-empt this Court's Rule 23(g) leadership decision by finding counsel willing to negotiate and settle this matter in advance of that decision. The Settling Firms, by choosing to participate, short-circuited the process contemplated by the Federal Rules of Civil Procedure, the Manual for Complex Litigation, and this Court's own case management orders. The Litigating Firms respectfully submit that this Court appoint a leadership slate that includes the undersigned and recognizes the firms who did the most work to investigate and identify the claims and have (as evidenced by the operative pleadings) the broadest and most deeply researched claims.

Respectfully submitted,

DATED: September 15, 2020

**PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP**

By: */s/ David M. Given*

David M. Given
39 Mesa Street, Suite 201, The Presidio
San Francisco, CA 94129
Telephone: (415) 398-0900
Email: dmg@phillaw.com

MDL Interim Counsel
Attorneys for Plaintiffs Meghan Smith, minors C.W. and I.W., through their mother and legal guardian Mikhaila Woodall, and minor R.P., through her mother and legal guardian Lynn Pavalon

DATED: September 15, 2020

**GLANCY PRONGAY & MURRAY LLP**

By: */s/ Kara M. Wolke*

Kara M. Wolke
1925 Century Park East, Suite 2100
Los Angeles, California 90067-2561
Telephone: (310) 201-9150
Los Angeles, California 90067-2561
Email: info@glancylaw.com

MDL Interim Counsel
Attorneys for Plaintiffs Misty Hong, minor A.S., through her mother and legal guardian Laurel Slothower, and minor A.R., through her mother and legal guardian Gilda Avila

DATED: September 15, 2020

**BURNS CHAREST LLP**

By: */s/ Amanda Klevorn*

Amanda Klevorn
365 Canal Street, Suite 1170
New Orleans, Louisiana 70115
Telephone: (504) 779-2845
Email: aklevorn@burnscharest.com

MDL Interim Counsel
Attorneys for Plaintiffs minor P.S., through her legal guardian Cherise Slate, and minor M.T.W., through her legal guardian, Brenda Washington

DATED: September 15, 2020

**LAWRENCE KAMIN, LLP**

By: */s/ Peter E. Cooper*

Peter E. Cooper
300 S. Wacker Dr., Ste. 500
Chicago, IL 60606
Telephone: (312) 372-1947
Email: pcooper@lawrencekamin.com

MDL Interim Counsel
Attorneys for Plaintiffs Misty Hong, minor A.S., through her mother and legal guardian Laurel Slothower, and minor A.R., through her mother and legal guardian Gilda Avila, Meghan Smith, minors C.W. and I.W., through their mother and legal guardian Mikhaila Woodall, and minor R.P., through her mother and legal guardian Lynn Pavalon, P.S., through her legal guardian Cherise Slate, and minor M.T.W., through her legal guardian, Brenda Washington

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2020, the foregoing document was filed electronically through the Court's Electronic Case Filing System. Service of this document is being made upon all counsel of record in this case by the Notice of Electronic Filing issues through the Court's Electronic Case Filing System on this date.

*/s/ David M. Given*
David M. Given