UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: TIKTOK, INC., CONSUMER PRIVACY LITIGATION, | MDL No. 2948 |
| | Master Docket No. 20 C 4699 |
| | Judge John Z. Lee |
| This Document Relates to All Cases | Magistrate Judge Sunil R. Harjani |

**PLAINTIFF M.E.'S OBJECTION TO
PROPOSED LEADERSHIP SLATES**

I. **Plaintiffs' Leadership Team Should Include Multiple Viewpoints**

At least nineteen attorneys have applied to serve on Plaintiffs' leadership team. In many instances, those attorneys are seeking appointment as part of a slate of like-minded lawyers. The "Settling Plaintiffs" favor a slate consisting of Katrina Carroll, Jonathan Jagher, Robert Foote, Michael Gervais, Joseph Guglielmo, Tina Wolfson, James Zouras, and Beth Fegan, while the "Litigating Plaintiffs" favor a slate consisting of Ekwan Rhow, Megan Jones, Kara Wolke, David Given, Amanda Klevorn, and Shannon McNulty (with two slots to be filled by the Court from the remaining applicants).

Each of these attorneys are highly qualified and capable of making meaningful contributions to Plaintiffs' leadership team. But in Plaintiff M.E.'s view, it would be a mistake to appoint either of the proposed slates in its entirety. Both the Litigating Plaintiffs and the Settling Plaintiffs have performed valuable work on behalf of the class: the Litigating Plaintiffs initiated this litigation nearly a year ago and held the first mediation with TikTok, while the Settling Plaintiffs then pursued a second mediation that led to a proposed settlement. The class will benefit if both groups' perspectives are represented throughout the settlement approval process and in any renewed litigation.

The alternative is that one important viewpoint will be excluded from internal deliberations—to the detriment of the class and the Court. For example, if the Settling Plaintiffs' proposed slate is adopted, the leadership team would consist almost entirely of attorneys who were in the room when the terms of the proposed settlement were negotiated. The class would not have the benefit of an objective or skeptical eye as the settlement is finalized and works its way through the approval process. Issues that could have been identified and rectified internally will be more likely to later arise and require the Court's attention. Parties who might have supported the settlement if their concerns had been afforded due consideration will be more likely to raise those concerns through formal objections. And dissenting views that could have been presented to the Court through an efficient and coordinated process will be more likely

voiced through a number of overlapping, piecemeal filings.

Anytime a settlement is reached at the beginning of a highly visible multidistrict proceeding like this one, the parties and the Court can expect the settlement to receive a high degree of scrutiny—from consumers, from the press, and from the objectors' bar. That scrutiny only intensifies if some plaintiffs' counsel are excluded from internal settlement deliberations. It may not be possible to identify and address every legitimate objection before the Court is asked to formally approve or reject the proposed settlement, but by involving dissenting voices at the outset, giving them a seat at the table, and working collaboratively to address their major concerns, it is possible to ensure the settlement ultimately presented to the Court is as good as it can be, that the number of issues requiring the Court's attention are reduced to a minimum, and that those issues are presented in a clear and organized manner.

The collaborative, multi-viewpoint approach worked well under similar circumstances in the *Hyundai & Kia Fuel Economy Litigation*, MDL 2424, discussed in Plaintiff M.E.'s previous filing, and M.E. believes it would work well here as well. M.E. accordingly suggests that the Court consider appointing attorneys from both the Litigating Plaintiffs and the Settling Plaintiffs to the collective leadership team. Ms. Carroll and Mr. Rhow, in particular, have garnered an impressive degree of support from each respective side and would make excellent choices for the two leads.

## II. Plaintiffs' Leadership Team Would Benefit From Neutral Representatives

In her lead-counsel application, Ms. Carroll affirmed that she will work with whomever the Court appoints, but also expressed concern that a "'forced marriage' order could derail the settlement entirely and irreparably harm the class." M.E.'s counsel has worked alongside Ms. Carroll before and believe that, while she raises a fair point, she has the ability to set aside prior hostilities and work with Mr. Rhow and other plaintiffs' counsel to ensure that all viewpoints are given due consideration.

Two factors in particular will ensure that a leadership team with multiple

viewpoints benefits the class and does not cause any irreparable harm. First, the collaborative approach M.E. is advocating would not require the competing sides to marry their views—only to work together to air those views, to address issues when possible, and to present competing views to the Court in an orderly fashion when not. An inclusive process that provides both an internal forum for raising and resolving potential issues, and a streamlined mechanism for presenting unresolved issues to the Court will not hurt the class—it will ensure that the class receives the best possible representation at a crucial juncture in the litigation.

Second, appointing one or more neutral representatives to Plaintiffs' Steering Committee will ensure that the appointed leadership team works together as intended. A neutral representative can offer an objective perspective on issues as they arise, work diplomatically with competing factions to find common ground, and help discourage hostile and counter-productive communications between team members. Plaintiff M.E. has previously suggested Eric Gibbs for that role based on his experience serving a similar role in *Hyundai*, his strong reputation amongst the plaintiffs' bar, and his prior experience in major consumer privacy litigation. Mr. Gibbs has not seen the settlement nor taken a position as to the manner in which it was negotiated. He has not aligned himself with either the Litigating Plaintiffs or the Settling Plaintiffs before this Court or in prior proceedings. He has not made promises to any other attorney in connection with this litigation. And he has neither asked for nor accepted any consideration from other counsel in exchange for his current or future support.

Amy Keller and Leslie Weaver are also strong candidates to add a neutral voice and an objective, even-handed approach to Plaintiffs' leadership team—either alongside Mr. Gibbs or in his stead. Ms. Keller and Ms. Weaver previously supported Mr. Rhow for a lead appointment in the Northern District of California, but appear to have otherwise remained above the fray and conducted themselves with the utmost professionalism in their dealings with other counsel. While Mr. Gibbs would of course

like to be selected as a neutral member of the Plaintiffs' Steering Committee, what's most important is that the Steering Committee include at least one member who has the respect of both sides and can ensure that the leadership team's efforts remain cordial, productive, and focused on the class's interests.

Dated: September 15, 2020                    Respectfully submitted,

By: /s/ Eric H. Gibbs

Eric H. Gibbs (SBN 178658)
David M. Berger (SBN 277526)
GIBBS LAW GROUP LLP
505 14th Street, Suite 1110
Oakland, California 94612
(510) 350-9700 (tel.)
(510) 350-9701 (fax)
ehg@classlawgroup.com
dmb@classlawgroup.com

*Counsel for Plaintiff M.E.*