UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: TIKTOK, INC. CONSUMER PRIVACY LITIGATION<br><br><br>This Document Relates to All Cases | MDL No. 2948<br><br>Master Docket No. 20 C 4699<br><br>Judge John Z. Lee<br><br>Magistrate Judge Sunil R. Harjani |

**DEFENDANTS' JOINT RESPONSE TO**
**THE VARIOUS MOTIONS FOR LEAD PLAINTIFF COUNSEL APPOINTMENT**

Defendant TikTok, Inc., on behalf of all defendants in this MDL No. 2948 (collectively "TikTok"), respectfully submits this response to the twenty-four separate applications and nominations for appointment of lead counsel for plaintiffs and appointment to the plaintiff steering committee (ECF Nos. 27, 28, 29, 30, 31, 33, 35, 36, 37, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 51, 53, 54, and 55). As explained below, TikTok does not take a position on any specific appointment for lead counsel or for the plaintiff steering committee. TikTok does need, however, to correct the record on some inaccuracies and improper submissions in some of the applications.

**I.       TIKTOK TAKES NO POSITION ON ANY SPECIFIC APPOINTMENT**

During the past several months in which TikTok has been working with separate interim plaintiff counsel in separate related cases now consolidated into this MDL, certain plaintiff counsel have differentiated themselves by their demonstrated ability to accomplish results for the putative plaintiff class, to be inclusive of all counsel, and "to command the respect of their colleagues and work cooperatively with opposing counsel and the court." Manual of Complex Litig. § 21.224 (4th

1

ed. 2004); *accord* CMO No. 1 (ECF No. 4) at 6-7 ("The main criteria for appointment will be: … (b) counsel's ability to work cooperatively with others….").

On the other hand, some other plaintiff counsel have needlessly multiplied the litigation with overaggressive and excessive pleadings, emergency motions, and attempts to sabotage the efforts of other parties to resolve the litigation. These motions and other disruptive actions appear to have served no function other than as an attempt to gain personal, exclusive control of the MDL. Such actions are a waste of Court and party resources and are in conflict with the interests of the putative class these attorneys seek to represent. Fed. R. Civ. P. 23(g) Advisory Committee Notes (2003) ("an attorney who acts on behalf of the class before certification must act in the best interests of the class as a whole").

TikTok recognizes that any opinion from a defendant on the appointment of lead plaintiff counsel should rightly be taken with a grain of salt. TikTok also believes the Court has had sufficient exposure to the different plaintiff groups (or will after reviewing their applications) to recognize and determine who has demonstrated the ability "to command the respect of their colleagues and work cooperatively with opposing counsel and the court." And in any event, the anticipated motion for preliminary approval of the class settlement to be filed on October 26, 2020 will seek the appointment of class counsel under Fed. R. Civ. P. 23(g)(1), which class counsel appointment (if granted) will supersede any interim lead counsel appointment. TikTok therefore takes no position at this time on any specific appointment for interim lead counsel for plaintiffs.

## II. TIKTOK SEEKS TO CORRECT THE RECORD WITH RESPECT TO SOME INACCURACIES IN SOME OF THE APPLICATIONS

Notwithstanding the fact that TikTok takes no position on any specific appointment, the selection of lead counsel should be based on accurate information. Some applicants—at the expense of other applicants—have unfortunately exaggerated their experience, their efforts in this

litigation, and their successes to date, and have included inaccurate recitations of facts. There are too many such exaggerations and inaccuracies to address them all. But TikTok does need to correct some inaccuracies in two of the applications and narratives that are prejudicial to TikTok.

Specifically, two of the applications from a small faction of plaintiffs that seek the appointment of Megan Jones and Ekwan Rhow ("the Jones-Rhow Group") (ECF Nos. 40, 45) do not accurately reflect their communications with TikTok's counsel or the procedural history surrounding the August 13, 2020 mediation that culminated in the class settlement that will be presented to the Court on October 26, 2020. Because those inaccurate representations have been submitted to the Court as a basis for the appointment of these counsel to leadership positions, the Court should consider TikTok's position on these facts.

*First*, in nearly every filing with this Court, the Jones-Rhow Group has presented a narrative that materially misstates their purported conversations with TikTok's counsel regarding mediation and settlement. These filings also disclose confidential mediation-related communications that are protected by a statutory mediation privilege and verbal and written confidentiality agreements.[1] Some of these misstatements and mediation-related communications appear in ECF No. 5 at 2, 4-6; ECF No. 5-1; ECF No. 11-1 ¶¶ 5, 20, 23; ECF No. 11-7; ECF No. 12 at 6-7, 11; ECF No. 40-1 ¶¶ 47, 49, 51, 53-54; ECF No. 40-4; ECF No. 45-1 ¶ 19.

---

[1] The statutory mediation privilege under California Law, which governs here, protects all mediation-related communications, as well as communications with a mediator made "for the purpose of initiating, considering, or reconvening a mediation or retaining the mediator." Cal. Evid. Code § 1115. It provides that "[n]o evidence of anything said … for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation is admissible or subject to discovery," and "[a]ll communications, negotiations, or settlement discussions by and between participants in the course of a mediation or a mediation consultation shall remain confidential." Cal. Evid. Code § 1119. The relevant mediation and confidentiality agreement signed by counsel from the Jones-Rhow Group further instructs that "no statement made during the course of the mediation or any materials generated for the purpose of the mediation may be offered into evidence, disseminated, published in any way, or otherwise publicly disclosed."

TikTok is deeply prejudiced by these misstatements and improper disclosures because it cannot correct the record without itself revealing additional confidential mediation-related communications that would cause TikTok to suffer the injustice that Fed. R. Evid. 408 and the statutory mediation privilege were created to avoid. TikTok is thus unfairly rendered unable to defend itself other than to say that the representations by the Jones-Rhow Group regarding mediation and settlement discussions are incomplete and inaccurate. TikTok therefore respectfully requests that the Court disregard and strike from the record the mediation-related statements and communications submitted by these counsel (cited in the preceding paragraph). It seems impossible for any counsel to effectively serve as lead counsel if they cannot abide by their confidentiality agreements and the mediation statutes; but TikTok will leave that judgment to the Court.

*Second*, the Jones-Rhow Group has repeatedly claimed they were excluded without justification from the August 13 mediation and that this exclusion is evidence of a "reverse auction." *See, e.g.*, ECF No. 40-1 ¶ 44. This is wholly inaccurate. The simple fact is that this group was repeatedly invited to participate in the mediation but instead chose to boycott the mediation in an attempt to discredit those who intended to participate. The subsequent change of heart by these counsel and last-minute request to attend the mediation at the eleventh hour (after their request to transfer the MDL to the N.D. Cal. was denied) was understandably suspect. It rekindled earlier fears by TikTok that certain counsel in the Jones-Rhow Group were not interested in settlement for the class and had some ulterior interest in using the litigation to force TikTok to shut down or sever ties with its parent company and foreign affiliates.

These fears were heightened in the days leading up to the August 13 mediation when (i) the President of the United States announced he would seek to "ban TikTok," (ii) a major

4

competitor that had been instrumental in convincing various politicians to focus their sights on TikTok launched a competing product, and (iii) rumors began to swirl about a potential acquisition of TikTok by various acquirors. Given these unprecedented and perilous circumstances, TikTok was not in a position to subject itself to any additional risk that certain counsel might sabotage the mediation the other parties had been working toward for two months, especially when plaintiffs would be adequately represented at the mediation by an all-star cast of other plaintiffs' firms.

Nevertheless, TikTok invited Megan Jones to represent the Jones-Rhow Group at the mediation because she had previously been appointed by Judge Koh to serve as "Executive Committee Member with oversight of settlement, including mediation, motions for preliminary and final approval, addressing potential objections, and claims administration." TikTok declined to mediate with just two firms in this large group (the Bird and Glancy firms) because of the concerns explained above. But TikTok stated that it "does not object of course to these two firms providing whatever advice and information to their co-counsel they deem helpful to their negotiating position in advance of the mediation, including the briefs and other confidential information exchanged during the April 6, 2020 mediation." ECF No. 40-4 at 4. There is no rational basis why Ms. Jones and her firm could not have adequately represented her own plaintiff group at the mediation under these circumstances.

Yet despite this invitation, Mr. Rhow refused to allow Ms. Jones (or any other firm in their group) to participate in the mediation without him, and she followed that directive—an act that makes no sense unless the joint prosecution agreement between these law firms places Mr. Rhow's attempt to control the litigation above the interests of the class.[2]

---

[2] The Court's analysis would likely benefit from the disclosure and review of these intra-counsel agreements prior to any appointment.

In any event, the settlement will soon be ready for presentment to all counsel (and to the Court no later than October 26, 2020), and all counsel and the Court will be able to see that the settlement is more than fair to the class—the result of the current unprecedented political pressures facing TikTok and not the result of any "reverse auction."

Respectfully submitted,

DATED: September 15, 2020

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By:   /s/Anthony J Weibell
Anthony J Weibell (aweibell@wsgr.com)
David S. Steuer (dsteuer@wsgr.com)
Sara Lai-Ming Rose Tolbert (srose@wsgr.com)
Curtis S. Kowalk (ckowalk@wsgr.com)
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300

Victor Jih (vjih@wsgr.com)
Ryan S. Benyamin (rbenyamin@wsgr.com)
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071-2027
Telephone: (323) 210-2900

*Lead Counsel for all Defendants*

**CERTIFICATE OF SERVICE**

  I hereby certify that on September 15, 2020, the foregoing document was filed electronically through the Court's Electronic Case Filing System. Service of this document is being made upon all counsel of record in this case by the Notice of Electronic Filing issues through the Court's Electronic Case Filing System on this date.

              */s/Anthony J Weibell*
              Anthony J Weibell