# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: TIKTOK, INC. CONSUMER PRIVACY LITIGATION | MDL No. 2948 <br><br> Master Docket No. 20 C 4699 <br><br> District Judge John Z. Lee <br><br> Magistrate Judge Sunil R. Harjani |
| This Document Relates to All Cases | |

**PLAINTIFF M.G.'S OBJECTIONS TO COMPETING APPLICATIONS
FOR LEAD COUNSEL AND/OR PLAINTIFFS' STEERING COMMITTEE**

Plaintiff M.G. submits this response in opposition to the motions for appointment of counsel filed by the Carlson Lynch-Freed Kanner group, the Bird Marella-Hausfield group, and the Dicello Levitt-Bleichmar Fonti group (the "Competing Firms"). (ECF Nos. 40, 43, 49, 51.)

## I. INTRODUCTION

Plaintiff M.G. is the only plaintiff in this MDL to allege:

(1) Voiceprint claims on behalf of "voiceprint" classes – i.e., claims based on TikTok's illegal collection of "voiceprints" of users whose voices appear in TikTok videos, on behalf of classes distinct from the "scan of face geometry" classes – which no other case pleads (all other cases are limited to faceprint-only claims on behalf of a faceprint class); and

(2) An acquisition-related sale and dissemination claim for injunctive relief to stop TikTok's dissemination and sale of IL class members' "scans of face geometry" and "voiceprint" data to Oracle or any other acquirers, which no other case pleads (all other cases are limited to initial-collection-only claims).

The voiceprint claims are important because voiceprints, like scans of face geometry, are also biologically unique and immutable, also constitute "biometric identifiers" under BIPA, and have also been collected by Defendants; separating the voiceprint class from the scan of face geometry class (as Plaintiff has done) is also important to avoid commonality and predominance problems (based on differences in the underlying technology used by Defendants to collect each type of data) that would otherwise arise at class certification if these classes were consolidated into a single "biometrics"-collection class (as other plaintiffs have done).  Plaintiff also alleges important facts concerning Defendants' use of Illinois-based data centers to store the biometric data in question, which will likely be critical to establishing that the violations occurred in Illinois (and that redressing them would not be an extraterritorial application of the law).  Additionally, the injunctive relief sought in Plaintiff's complaint would stop Defendants from further trafficking class members' biometric data to Oracle (which Oracle in turn could then use for its own independent business purposes). These unique voiceprint and acquisition-related sale and dissemination claims, and the important allegations concerning Defendants' Illinois-based data centers, were totally overlooked by all of the other groups of plaintiffs' counsel involved in this litigation and, consequently, could not have been meaningfully appraised during the negotiations that produced the still-undisclosed proposed settlement between Defendants and certain movants.

1

This Court has seen a similar script before. In the *NCAA Student-Athlete Concussion Injury Litigation*, an overbroad class action settlement was proposed by counsel that released class members' ability to pursue personal injury claims on a class basis without any meaningful relief in return. *See In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*, MDL No. 2492, at *3 (N.D. Ill. Jan. 26, 2016). Upon multiple class members' objections (including those of the original named plaintiff), this Court properly carved out those distinct personal injury class claims from the broader settlement release and created a separate track in the MDL for litigation of those unique claims. *See In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*, MDL No. 2492, at *3 (N.D. Ill. Jan. 26, 2016); *In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*, MDL No. 2492, Case No. 1:16-cv-08727 (N.D. Ill.). The Court then appointed as co-lead counsel on that track those lawyers who had invested the time and resources to identify, work up, and ensure adequate representation of the personal injury class claims. *In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*, MDL No. 2492, Case No. 1:16-cv-08727, ECF No. 90 (N.D. Ill. Nov. 30, 2016).

The lessons learned in the *NCAA Student-Athlete Concussion Injury Litigation* are particularly apropos to the instant matter – and they need not be relearned to the classes' detriment. All of the competing motions for appointment of counsel submitted in this matter share the same deficiencies. All of the Competing Firms initiated actions against Defendants following widespread public reporting of TikTok's data-collection and biometrics practices, and each of their complaints focuses on Defendants' collection of "scans of face geometry." Before any adversarial discovery or litigation occurred, certain competing counsel negotiated a confidential class-wide settlement that would resolve all claims against Defendants arising under BIPA. However, after the filing of these competing actions and after the proposed settlement was negotiated, additional highly relevant information has been released by the news media and other outlets (including concerning Defendants' voiceprint collection practices and their agreement to sell certain of TikTok's assets (including TikTok's U.S.-based users' data) to Oracle). Consequently, none of the other plaintiffs' groups have sought to redress Defendants' practices of collecting the classes'

"voiceprints" or alleged the locations in Illinois where the classes' biometric data is stored and processed, nor do any of them seek to enjoin Defendants from selling and disseminating the classes' biometric data to TikTok's acquirer.

Plaintiff M.G. and his counsel, on the other hand, have done all of these things. Rather than rushing to the courthouse with yet another copycat complaint, Plaintiff and his counsel waited for important information to be revealed, thoroughly researched and assessed its impact on the classes' claims, and prepared and initiated an action that seeks all of the relief needed to adequately redress the classes' injuries (including by bringing "voiceprint" claims on behalf of a separate class) and protect their interests going forward (including by seeking to temporarily restrain and enjoin Defendants' imminent dissemination and sale of the classes' biometrics to TikTok's acquiring entity, revealed just yesterday to be Oracle). In so doing, Plaintiff M.G.'s counsel have demonstrated that they are the best equipped to represent the classes in this litigation.

Accordingly, the Court should appoint Frank S. Hedin of Hedin Hall LLP ("Hedin Hall") and/or Philip L. Fraietta of Bursor & Fisher, P.A. ("Bursor & Fisher") as Lead Counsel and as Steering Committee members, and/or appoint J. Dominick Larry of Nick Larry Law LLC ("Nick Larry Law") as Steering Committee member.

**II.     ARGUMENT**

Several firms are currently vying for the lead counsel spot in this consolidated litigation: Frank S. Hedin of Hedin Hall, Philip L. Fraietta of Bursor & Fisher, and Nick Larry of Nick Larry Law (the "*M.G.* Coalition") and the Competing Firms comprised of the Carlson Lynch-Freed Kanner, Bird Marella-Hausfeld, and Dicello Levitt-Bleichmar Fonti groups. ECF Nos. 40, 43, 49, 51. Notwithstanding the credentials of the Competing Firms, the *M.G.* Coalition is best suited to represent the interests of all affected individuals in this litigation.

For one thing, none of the Competing Firms can adequately represent the interests of the proposed Illinois Voice Class members because none of these firms alleged voiceprint claims. Likewise, none of the Competing Firms can adequately represent the interests of Illinois Voice Class or Illinois Face Class members in stopping the imminent sale and dissemination of their

3

biometrics because none of these firms have sought (or even appreciated the need to seek) this important relief. As explained in Plaintiff M.G.'s proposed Motion for Temporary Restraining Order (Master Docket, ECF No. 70-2), BIPA not just protects consumers from the collection of their biometrics in the first instance, but also the sale and subsequent downstream dissemination of their biometrics. 740 ILCS § 15(c) -(d).

The Carlson Lynch-Freed Kanner group is particularly ill-equipped to represent the interests of the Illinois Face Class or Illinois Voice Class members because they jumped the gun and negotiated a settlement in principal without appraising or otherwise considering the significance of these important claims, and without the benefit of *any* adversarial discovery or motion practice. Notably, while BIPA prohibits both the non-consensual collection and the non-consensual sale or dissemination of biometrics, *see* 740 ILCS § 15(b)-(d), none of the Competing Firms have taken steps to prevent an imminent sale or disclosure of the classes' biometrics – which would "not adequately protect the interests of the class." *Lusby v. Gamestop Inc.*, 297 F.R.D. 400, 414 (N.D. Cal. 2013).[1]

The *M.G.* Coalition recognized these deficiencies and sought to remedy them for the classes' benefit and protection. Together with the filing of Plaintiff M.G.'s complaint, the *M.G.* Coalition moved to temporarily restrain and enjoin Defendants from selling, disseminating, or otherwise transferring the biometric data pertaining to the Illinois Voice Class and Illinois Face Class members to Oracle or any other entity (and on September 14, 2020 moved for leave to seek the same relief in the master docket). *See M.G.*, Case No. 1:20-cv-05305, ECF No. 3. Surprisingly, *none* of the Competing Firms identified the importance of avoiding the scenario in which the classes' biometrics are sold and transferred to TikTok's acquirer – especially given that this is essentially the same set of circumstances that spurred BIPA's enactment in the first place. By

---

[1] Given the opportunity to join in the relief sought by Plaintiff M.G. and prevent further unlawful disclosure of the classes' biometrics, on September 14, 2020, the Carlson Lynch-Freed Kanner group informed the *M.G.* Coalition that, given their settlement posture, they did not believe it would be in their interest to join in Plaintiff M.G.'s request for a TRO, which in their view could interfere with TikTok's business operations.

4

recognizing the need to seek this important relief, the *M.G.* Coalition demonstrated that they are the most qualified to represent the interests of the classes going forward. By that same token, the across-the-board failure of the Competing Firms to seek this critical relief is inexcusable, and it suggests that these firms lack meaningful litigation experience in similar matters and will be unable to adequately represent the classes as the litigation progresses.

Additionally, the inability of the Carlson Lynch-Freed Kanner and Bird Marella-Hausfeld groups to cooperate to date does not bode well for their ability to reach consensus agreements going forward in a litigation that will surely involve many competing interests. *See*, *e.g.*, ECF Nos. 11, 12, 16, 17 (detailing, among other things, disagreements among these Competing Groups and Defendants regarding preservation, discovery, and participation in and knowledge of settlement process). Thus, to foster future cooperation by and between Lead Counsel and the members of the Steering Committee, and with the Defendants and other parties involved, the Court should at the very least appoint one or more attorneys outside of the Carlson Lynch-Freed Kanner and Bird Marella-Hausfeld groups to serve both as Lead Counsel and as member(s) of the Steering Committee.

If appointed, the attorneys comprising the *M.G.* Coalition would work to ensure that that all litigation decisions are made in classes' best interest and through a collaborative, coalition-based process. The *M.G.* coalition has already diligently attempted to further these objectives, having sought consensus and support for their efforts to obtain a temporary restraining order, and to coordinate telephone conferences with all of the Competing Firms to engage in dialogue regarding the preservation and disclosure issues that are at the intersection of the classes' claims, the President's executive orders, and the Carlson Lynch-Freed Kanner group's proposed settlement in principal.

And while the Competing Firms each have experience with class actions generally, Counsel for Plaintiff M.G.'s BIPA experience will offer the most value to the class. Attorney Frank S. Hedin of Hedin Hall originated, developed, and prepared the complaints and all substantive briefing (and made all strategic litigation decisions) in the BIPA litigations against

5

*Google* and *Shutterfly* that resulted in seminal, precedent-setting decisions on three issues of first impression under the statute. *Norberg v. Shutterfly, Inc.*, 152 F. Supp. 3d 1103 (N.D. Ill. 2015) (first decision in the country holding that scans of face geometry collected from digital photographs constitute "biometric identifiers" within the meaning of BIPA); *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088 (N.D. Ill. 2017) (first decision in the country holding that BIPA's prohibition on the extraction of scans of face geometry from digital depictions of Illinois residents that originate from within Illinois is neither an extraterritorial application of the statute nor violative of the dormant commerce clause); *Monroy v. Shutterfly, Inc.*, 2017 WL 4099846, at *8 n.5 (N.D. Ill. Sept. 15, 2017) (first decision in the country holding that the nonconsensual collection of a scan of face geometry, a bare violation of BIPA, is invasive of privacy and thus manifests, in and of itself, a concrete and particularized injury sufficient to confer Article III standing). Two competing movants grossly overstate their roles in those same cases; in reality, both of these attorneys passively observed the work Mr. Hedin performed to achieve these precedent-setting wins. Tellingly, as soon as Mr. Hedin left his prior firm and his involvement in the *Google* matter ended, the wins ceased and the case was dismissed for lack of Article III standing at summary judgment.

      Attorneys Nick Larry of Nick Larry Law and David W. Hall of Hedin Hall also bring unrivalled BIPA experience. They are two of the principal attorneys responsible for the Facebook BIPA litigation that recently settled for $650 million. *See In re Facebook Biometric Information Privacy Litig.*, No. 15-CV-03747-JD, 2020 WL 4818608, at *1 (N.D. Cal. Aug. 19, 2020). Their role in that seminal case was integral from the outset: As the senior associates on the case at their respective firms, their roles were integral from the outset. As a result, the first-of-their-kind pleadings in *Facebook* have served as the model for all future BIPA faceprint cases, and the decisions obtained on issues of first impression — e.g., Article III standing, choice of law, online contract formation, the statutory definitions of "biometric identifier" and "biometric information," the so-called "photo exclusion," extraterritoriality, statutory standing, and the dormant Commerce Clause, and class certification — have created much of the value upon which the class now relies. Their experience is extremely pertinent and unique. Among the many movants here, only the *M.G.*

6

Coalition has first-hand experience litigating the very case to which the undisclosed settlement in this matter is supposedly anchored.

The classes here deserve representation by the very lawyers whose creatively and diligence genuinely laid the successful groundwork for this case. Those lawyers represent Plaintiff M.G.

Finally, the *M.G.* Coalition's proposed appointees are not repeat players in the MDL realm, and their appointment would inject "new blood" and thus new ideas into the process for the classes' benefit. Judges presiding over today's MDL's have recognized the value of giving major roles to newer players in the MDL sphere. For instance, in selecting the leadership structure in *In re Zantac (Ranitidine) Prods. Liab. Litig.*, Case No. 9:20-md-02924 (S.D. Fla.), Judge Rosenberg emphasized her desire to appoint younger attorneys. *In re Zantac*, Case No. 9:20-md-02924ECF No. 685 at 2-3 (S.D. Fla. May 8, 2020).

Here, while each of the attorneys in the *M.G.* Coalition is well-versed in the nuances of BIPA and consumer data-privacy litigation generally, none of them has served on the executive committee of an MDL proceeding. Thus, appointing the attorneys of the *M.G.* Coalition as Lead Counsel or to the Steering Committee presents opportunity for "new approaches and ideas" in the MDL process. And in fact, these attorneys have already brought new approaches and ideas to bear for the classes' benefit in this litigation, having asserted the only voiceprint and acquisition-related sale and dissemination claims.

### III. CONCLUSION

For the foregoing reasons, the Court should decline to adopt the Competing Firms' proposed leadership structures and should instead appoint one or more of the attorneys of the *M.G* Coalition to serve as Lead Counsel or Steering Committee member.

Dated: September 15, 2020          Respectfully submitted,

By: /s/ Frank S. Hedin

**HEDIN HALL LLP**
Frank S. Hedin
David W. Hall
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131

Tel: (305) 357-2107
Fax: (305) 200-8801
E-mail: fhedin@hedinhall.com
        dhall@hedinhall.com

**NICK LARRY LAW LLC**
J. Dominick Larry
55 E Monroe St, Suite 3800
Chicago, IL 60603
Tel: (773) 694-4669
Fax: (773) 694-4691
Email: nick@nicklarry.law

**BURSOR & FISHER, P.A.**
Scott A. Bursor
Joseph I. Marchese
Philip L. Fraietta
888 Seventh Avenue
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
E-Mail: scott@bursor.com
        jmarchese@bursor.com
        pfraietta@bursor.com

*Counsel for Plaintiff, by and through his father and legal guardian Bartosz Grabowski, and the Putative Class*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on September 15, 2020, I served the above and foregoing by causing a true and accurate copy of such paper to be filed and served on all counsel of record via the Court's CM/ECF electronic filing system.

                                         By: /s/ Frank S. Hedin