**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: TIKTOK, INC., CONSUMER PRIVACY LITIGATION<br><br>This Document Relates to All Cases | MDL No. 2948<br><br>Master Docket No. 20-cv-4699<br><br>Judge John Z. Lee<br><br>Magistrate Judge Sunil R. Harjani |

**REPLY IN SUPPORT OF EMERGENCY MOTION FOR LEAVE TO FILE
MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER
TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

On behalf of himself and all others similarly situated, Plaintiff M.G., a minor child, by and through his father and legal guardian Bartosz Grabowski (collectively, "Plaintiff"), hereby submits this reply in support of his Emergency Motion for Leave to File a Motion for Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue (ECF No. 70 (the "Motion")).

**INTRODUCTION**

In opposing the Motion (ECF No. 86 (the "Opposition" or "Opp.")), Defendants barely address the issue of leave to file, and instead focus almost entirely on the substance of Plaintiff's proposed motion for a temporary restraining order (ECF No. 70-2). Relegating the issue before the Court — that is, whether Plaintiff should be allowed to file his motion — to a single, tacked-on sentence, Defendants argue that the proposed motion is "otherwise unauthorized," but cite neither rule nor order in support. (Opp. at 3.) As argued in Plaintiff's motion for leave, however, the relief sought in Plaintiff's proposed motion violates neither the prohibition on discovery proceedings imposed by CMO-1, ¶ 12, nor the preservation obligations imposed by CMO-1 and CMO-2. In sum, Defendants devote the Opposition to attacking the merits of the proposed motion for temporary restraining order, effectively conceding that the Court should grant Plaintiff's motion for leave.

As discussed below, the Court should grant both the Motion and the proposed motion for temporary restrainer order, and should enjoin Defendants from selling, transferring, or otherwise disseminating any uniquely identifying data in their possession pertaining to the voices and faces of Plaintiff and other TikTok users in Illinois to Oracle Corp. ("Oracle") or any other acquiring entity. (*See* ECF No. 70-2.)

## ARGUMENT

Defendants offer a series of misplaced arguments in opposition to the Motion. First, they argue that the relief sought is unnecessary because they do not possess biometric data and (relatedly) that Plaintiff has provided no evidence of such possession. Second, that because allegations of unlawful biometrics collection have been public knowledge for some time, either no emergency exists, or Plaintiff did not act diligently in seeking to address it. And third, that Plaintiff's proposed motion fails to establish irreparable injury. As detailed more fully below, each argument ignores the substance of Plaintiff's proposed motion.

**I.    Defendants Admit to Possessing the Data that Plaintiff Seeks to Enjoin them from Transferring, and Plaintiff has Adequately Demonstrated that this Data was Collected by Defendants in Violation of BIPA.**

First, Defendants claim that "voiceprints" and "scans of face geometry" — explicitly delineated "biometric identifiers" regulated by BIPA — are "simply not a part of the user data that TikTok collects or maintains for U.S. users." (Opp. at 1.) Thus, "there is no need," or so Defendants' argument goes, "for a Temporary Restraining Order because Defendants do not have the data that Plaintiff M.G. seeks to enjoin from transfer." (*Id.*) But this naturally raises the question: If Plaintiff is seeking to enjoin Defendants from transferring data that they do not have, then why are Defendants opposing the requested injunction?

The truth is that Defendants *do* have the data that Plaintiff seeks to enjoin them from transferring , namely "uniquely identifying data in their possession pertaining to the voices and faces of Plaintiff and the other unnamed Illinois Voice Class and Illinois Face Class members." (ECF No. 70-2 at 1.) Not only have Defendants already admitted in this litigation that they plan to "transfer" all "relevant data" to Oracle, (*see* ECF No. 16 at 2), but it also simply defies common

sense to believe that the Defendants would agree to a substantial settlement, as rumored, with certain of the plaintiffs' counsel if they never actually collected the type of data that could potentially expose them to liability under BIPA in the first place. There is no question that Defendants possess the data that Plaintiff seeks to enjoin them from transferring.

Rather than admitting they possess and are on the verge of transferring this data to Oracle, Defendants recast the proposed motion as seeking to enjoin their sale, transfer, or dissemination of "voiceprints" and "face templates" (i.e., "biometric identifiers" or "biometric information" within the meaning of BIPA) and then, through linguistic sleight of hand, assert (based on their own self-serving legal interpretations of those statutory terms) that they "do not have the data that Plaintiff M.G. seeks to enjoin from transfer." (Opp. at 1.) Tellingly, the Opposition never states that the "uniquely identifying data pertaining to faces and voices" — the data Plaintiff seeks to restrain from transfer — is "not a part of the user data that TikTok collects or maintains for U.S. users" (as they have stated with respect to "voiceprints and face templates"). (Opp. at 1.) So while Defendants deny having collected any "voiceprints" and/or "face templates" to transfer to Oracle, the statement is based on their own subjective belief that the data actually sought to be enjoined from transfer — which they do not deny having — does not constitute "voiceprints" or "face templates" (i.e., "scans of face geometry") within the meaning of BIPA. This is remarkably disingenuous.

Whether or not the data sought to be enjoined from transfer is regulated by BIPA is a complex question of both law and fact that cannot be resolved on defense counsel's say-so alone at the outset of the case. Rather, in evaluating the merits of Plaintiff's proposed motion for temporary restraining order, the relevant question is whether Plaintiff has a "better than a negligible chance of success" in demonstrating that the "relevant data" in Defendants' possession (ECF No. 16 at 2) — namely, the uniquely identifying data that Defendants possess pertaining to his and other Illinoisans' voices and faces — constitute "voiceprints" or "scans of face geometry" within the meaning of those terms in the statute. For all the reasons set forth in the proposed motion

for temporary restraining order (none of which the Opposition responds to), Plaintiff has a strong likelihood of successfully doing so and thus readily satisfies this factor.

Defendants nonetheless contend that the Motion should be denied because it is not accompanied by *admissible evidence* showing that Plaintiff is likely to succeed on the merits of his claims, (Opp. at 3), and cite in support a number of cases where Plaintiffs have failed to present any evidence beyond "conclusory allegations made on 'information and belief.'" (Opp. at 3.) In reality, Plaintiff does no such thing here. True enough, he cannot offer personal testimony identifying the who, what, where, when, why, and how of Defendants' covert data-collection activities. But his complaint and proposed motion do not rest on mere supposition. Instead, he cites admissions by Defendants' corporate affiliates, (*see M.G.* Docket, Case No. 20-cv-5305, ECF No. 1, ¶¶ 21 n.8, 57, 63, 74), findings from third-party security researchers, (*id.* ¶¶ 64 – 71), and statements from United States government officials, (*id.* ¶ 75), which all demonstrate that Defendants do in fact collect biometric identifiers and information from their U.S. users, including Plaintiff

In the end, Plaintiff substantiates his motion with multiple sources, while Defendants offer only the conclusory, unsupported assertions of counsel in opposition. Given that disparity, Plaintiff certainly "has a better than negligible chance of succeeding on the merits." *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 897 (7th Cir. 2001).[1]

---

[1] Defendants contend that the proposed motion for temporary restraining order is without merit because the TikTok Privacy Policy "authorizes" their dissemination of users' biometrics to Oracle. This argument fails for several reasons. For one thing, Plaintiff's complaint alleges that he never agreed to such a document, (M.G. Docket, ECF No. 1, ¶ 40), and Defendants have presented no evidence that he did. But even if Defendants had obtained Plaintiff's and the Classes' assent to the Privacy Policy, that document has never said anything about biometric data – nothing whatsoever about Defendants' collection or storage of their users' biometrics, and plainly nothing about their plans to transfer their undisclosed trove of users' biometrics to any acquiring entity. *See Privacy Policy*, TikTok (Jan. 1, 2020), https://www.tiktok.com/legal/privacy-policy?lang=en#privacy-us; *Privacy Policy*, TikTok (Aug. 2018). http://www.tiktok.com/i18n/privacy [https://web.archive.org/web/20180829183230/http://www.tiktok.com/i18n/privacy]; *Privacy Policy*, TikTok (Jan. 2019), http://www.tiktok.com/i18n/privacy, [https://web.archive.org/web/20190130204425/http://www.tiktok.com/i18n/privacy/]; *Privacy Policy*, TikTok (Feb. 2019), https://www.tiktok.com/en/privacy-policy [https://web.archive.org/web/20190515014632mp_/https://www.tiktok.com/en/privacy-policy]. Thus, Defendants' assertion

## II. Defendants' Planned Biometrics Fire Sale is an Emergency Situation that Plaintiff has Diligently Sought to Prevent Since its Existence Became Known

Defendants next contend that there is no emergency, and that even if there were, Plaintiff failed to diligently seek the requested TRO because privacy class actions have been pending against Defendants for over a year and one of Plaintiff's attorneys spoke to defense counsel about them in May of this year. (Opp. at 2.) That argument distorts both the record and the basis for Plaintiff's request for emergency relief.

As the proposed motion makes clear, the unlawful conduct Plaintiff seeks to enjoin — the transfer of his and the Classes' personally identifying data pertaining to their faces and voices to an acquiring party — was not imminent (or even contemplated) in 2019, nor in May 2020 when one of Plaintiff's lawyers spoke with Defense counsel, nor even after the President's executive orders issued in early August. (ECF No. 70-2 at 7 – 8.) Rather, the basis for seeking the requested temporary restraining order did not arise until (at the very earliest) August 28, 2020, when Defendants filed a memorandum of law on the docket advising the parties and the Court that they intended to transfer all of the data "relevant" to this BIPA litigation to TikTok's then-undisclosed acquirer (ECF No. 16 at 2); indeed, this was when Defendants first "indicate[d] that instead of simply selling TikTok, Inc. as a turnkey operation, ByteDance intend[ed] on transferring TikTok user data to the winning bidder." (ECF No. 70-2 at 7 (citing ECF No. 16 at 2).) Prior to then, Plaintiff had no reason to believe, and there was nothing in the public record to indicate, that Defendants would actually disseminate all of TikTok's data pertaining to American children, including the "relevant data" pertaining to Plaintiff's and millions of other children's voices and faces), to TikTok's acquirer. Upon learning of Defendants' planned transfer, Plaintiff and his

---

that a transfer of their users' biometric data to Oracle (or any other acquiring entity) would be "in accordance with the terms of the privacy policy" makes no sense.

Moreover, unlike the Video Privacy Protection Act, BIPA lacks an exception for transfers incident to a transfer of ownership. *See* 18 U.S.C. §§ 2710(a)(2), (b)(2)(e). In fact, as discussed in Plaintiff's complaint (*M.G.* Docket, ECF No. 1, ¶¶ 1 – 2) and his motions for temporary restraining order (*M.G.* Docket, ECF Nos. 3 – 4; Master Docket, ECF No. 70-2 at 4 – 5, 9 – 10), BIPA's enactment was spurred by a transfer of biometric data incident to a corporate bankruptcy sale. Plaintiff is thus seeking to enjoin the very conduct that the Illinois legislature specifically gave the statute teeth to prevent against.

counsel immediately began preparing the Class Action Complaint and initial Emergency Motion for Temporary Restraining Order, both of which were ultimately filed on September 8, 2020 (*M.G. Docket*, ECF Nos. 1, 3), just 11 calendar days (or six non-holiday business days) after the need to seek this relief first arose.

Moreover, it was not until September 13, 2020 that Oracle was revealed as the winning bidder of TikTok's U.S. user data and thus the proposed purchaser and transferee of the "relevant data" referenced in Defendants' August 28 filing (ECF No. 16 at 2). In response, Plaintiff and his counsel once again acted with remarkable diligence: by the next day, September 14, 2020, Plaintiff and his counsel had prepared and filed the Motion and a proposed Motion for Temporary Restraining Order that would enjoin Defendants from selling, transferring, or otherwise disseminating the "relevant data" — again, the uniquely identifying data pertaining to his and the Classes' faces and voices — to Oracle. Here too, the timeline demonstrates that Plaintiff and his counsel proceeded with extreme diligence.[2]

Any reasonable application of Rule 16's "good cause" standard to the relevant timeline confirms that Plaintiff is entitled to leave to file his proposed motion for temporary restraining order (ECF No. 70-2). *See NeuroGrafix v. Brainlab, Inc.*, No. 12 C 6075, 2020 WL 3453551, at

---

[2] Incidentally, the situation today is more pressing than ever before: as revealed in Defendants' own filings and public reporting over the past ten days, it has become increasingly clear that Defendants do intend to disclose all U.S. TikTok user data to Oracle and potentially other partners. (Opp. at 1 – 2.) *See also* Echo Wang, Greg Roumeliotis, *ByteDance picks Oracle as partner to try to save TikTok U.S.*, Reuters (Sept. 13, 2020), https://www.reuters.com/article/us-china-bytedance-tiktok-oracle-idUKKBN265000. In fact, it now appears that the crux of the proposed transaction is for Defendants to transfer TikTok's entire database of U.S. user data to Oracle – in other words, exactly what Plaintiff seeks to enjoin from happening. *See* Raymond Zhong, *TikTok Owner's Big Reason to Strike a U.S. Deal: China Is Slowing*, N.Y. Times (Sept. 14, 2020), *available at* https://www.nytimes.com/2020/09/14/technology/china-bytedance-tiktok-sale.html ("TikTok's parent company, ByteDance, has chosen the software giant to be its U.S. technology partner, an arrangement that would most likely give Oracle oversight over data on American users."); *see also U.S. lawmakers raise questions about proposed Bytedance-Oracle deal*, Reuters, Sept. 15, 2020, *available at* https://www.reuters.com/article/idUSKBN266338 ("'Making Oracle a middleman won't protect Americans against Chinese government influence, and to make matters worse, Oracle has an awful record of harvesting and selling Americans' private data to anyone with a credit card,' Democratic Senator Ron Wyden said in a statement.").

*1 (N.D. Ill. June 23, 2020) ("In the Seventh Circuit, courts applying this good cause standard 'primarily' consider 'the diligence of the party seeking' to modify the schedule.") (quoting *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 832 (7th Cir. 2016)); *see also Alioto v. Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011).

### III. Plaintiff and the Members of the Classes Would Suffer Irreparable Harm if their Immutable Biometric Data is Sold and Disseminated Without their Consent

Finally, Defendants halfheartedly contend that Plaintiff fails to establish that irreparable harm will result from its intended transfer to Oracle. (Opp. at 3 – 4.) As he details in the proposed motion and memorandum, however, fundamental public policy of the state "'vest[s] in Illinois residents the right to control their biometric information by requiring notice before collection [or dissemination] and giving residents the power to say no by withholding consent.'" (ECF No. 70-2 at 9 (quoting *Patel v. Facebook Inc.*, 290 F. Supp. 3d 948, 953 – 54 (N.D. Cal. 2018).). And while Defendants may disagree that violation of that right creates an irreparable harm, the legislature has already put the issue to rest, finding that because "[b]iometrics … are biologically unique to the individual …, **once compromised, the individual has no recourse**." 740 ILCS 14/5(c) (emphasis added). To put a bow on the matter, the legislature took the extra step of allowing a prevailing plaintiff to obtain injunctive relief *in addition to* statutory damages, 740 ILCS 14/20(4), in recognition of the irreparable nature of the harms to individuals posed by noncompliance.

### CONCLUSION

Defendants' opposition to Plaintiff's emergency motion for leave to file his TRO motion ignores the issue of leave, and instead relies on a series of easily debunked challenges to the merits of his proposed motion. Defendant cannot obscure the basic facts, however: (1) public documents, including its own affiliates' admissions, show that it collects biometrics from its U.S. users; (2) Defendants have only recently disclosed their intent to unlawfully transfer biometric data to an acquiring entity; and (3) the Illinois legislature made clear over a decade ago that if Defendants are allowed to proceed, Plaintiff and the proposed Classes will be irreparably harmed.

7

Accordingly, the Court should grant Plaintiff's emergency motion for leave to file, and, because Defendant has already briefed the issue, grant Plaintiff's proposed TRO motion and restrain Defendants from selling, transferring, or otherwise disseminating any "uniquely identifying data in their possession pertaining to the voices and faces of Plaintiff and the other unnamed Illinois Voice Class and Illinois Face Class members" to Oracle or any other entity. If Defendants do not have this data, then the Court's order will restrain nothing and thus work no possible prejudice to Defendants. But if Defendants do possess this data, the Court's order would allow Plaintiff and the members of the Classes to rest easy knowing that their immutable biometric data will not be further proliferated pending resolution of this action, without causing any identified or discernable prejudice to Defendants.

Dated: September 19, 2020

Respectfully submitted,

s/ J. Dominick Larry

**NICK LARRY LAW LLC**
J. Dominick Larry
55 E Monroe St, Suite 3800
Chicago, IL 60603
Tel: (773) 694-4669
Fax: (773) 694-4691
Email: nick@nicklarry.law

**HEDIN HALL LLP**
Frank S. Hedin
David W. Hall
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Tel: (305) 357-2107
Fax: (305) 200-8801
E-mail: fhedin@hedinhall.com
       dhall@hedinhall.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor
Joseph I. Marchese
Joshua D. Arisohn
Philip L. Fraietta
888 Seventh Avenue
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
E-Mail: scott@bursor.com

           jmarchese@bursor.com
           jarisohn@bursor.com
           pfraietta@bursor.com

        *Counsel for Plaintiff, by and through his father and legal guardian Bartosz Grabowski, and the Putative Classes*

**CERTIFICATE OF SERVICE**

    I hereby certify that on September 19, 2020, I served the above and foregoing by causing a true and accurate copy of such paper to be filed and served on all counsel of record via the Court's CM/ECF electronic filing system.

                                                              s/ J. Dominick Larry