1

<pre>
 1                    IN THE UNITED STATES DISTRICT COURT
                        NORTHERN DISTRICT OF ILLINOIS
 2                            EASTERN DIVISION

 3
      IN RE:  TIKTOK, INC.,           ) Docket No. 20 C 4699
 4    CONSUMER PRIVACY LITIGATION,    )
                                      ) Chicago, Illinois
 5                                    ) September 24, 2020
                                      ) 2:00 o'clock p.m.
 6

 7              TRANSCRIPT OF PROCEEDINGS - TELEPHONIC STATUS
                     BEFORE THE HONORABLE JOHN Z. LEE
 8

 9    APPEARANCES:

10
      For the Plaintiffs:          CARLSON LYNCH
11                                 BY:  MS. KATRINA CARROLL
                                   111 W. Washington St.,  Suite 1240
12                                 Chicago, Illinois  60602

13                                 BIRD, MARELLA, BOXEWR, WOLPERT,
                                     NESSIM, DROOKS, LINCENBERG & RHOW
14                                 BY:  MR. EKWAN E. RHOW
                                   1875 Century Park East, 23rd Floor
15                                 Los Angeles, California  90067

16                                 FEGAN SCOTT, LLC
                                   BY:  MR. ELIZABETH A. FEGAN
17                                 150 South Wacker Drive, 24th Floor
                                   Chicago, Illinois  60606
18
                                   CLIFFORD LAW OFFICES
19                                 BY:  MS. SHANNON McNULTY
                                   120 N. LaSalle St., Suite 3100
20                                 Chicago, Illinois  60602

21                                 FREED, KANNER, LONDON & MILLEN
                                   BY:  MR. JONATHAN JAGHER
22                                 923 Fayette Street
                                   Conshohocken, Pennsylvania  19428
23
                                   PHILLIPS, ERLEWINE, GIVEN & CARLIN
24                                 BY:  MR. DAVID GIVEN
                                   39 Mesa Street, Suite 209
25                                 San Francisco, California  94129
</pre>

```
 1   APPEARANCES (Cont'd):

 2   For Plaintiffs (Cont'd):    BOTTINI & BOTTINI, INC.
                                 BY:  MR. ALBERT Y. CHANG
 3                               7817 Ivanhoe Avenue, Suite 102
                                 La Jolla, California  92037
 4
                                 COTCHETT, PITRE & McCARTHY
 5                               BY:  MR. MARK C. MOLUMPHY
                                 840 Malcolm Road, Suite 200
 6                               Burlingame, California  94010

 7                               SCOTT & SCOTT
                                 BY:  MR. JOSEPH P. GUGLIELMO
 8                               230 Park Avenue, 17th Floor
                                 New York, New York  10169
 9
                                 BURNS CHAREST, LLP
10                               BY:  MS. AMANDA KLEVORN
                                 365 Canal Street, Suite 1170
11                               New Orleans, Louisiana  70130

12                               GLANCY, PRONGAY & MURRAY, LLP
                                 BY:  MS. KARA WOLKE
13                               1925 Century Park East, Suite 2100
                                 Los Angeles, California  90067
14
                                 DiCELLO LEVITT GUTZLER, LLC
15                               BY:  MS. AMY KELLER
                                 10 N. Dearborn St., 11th Floor
16                               Chicago, Illinois  60602

17                               BLEICHMAR, FONTI & AULD
                                 BY:  MS. LESLEY WEAVER
18                               555 12th Street, Suite 1600
                                 Oakland, California  94607
19
                                 HAUSFELD, LLP
20                               BY:  MS. MEGAN JONES
                                 600 Montgomery St., Suite 3200
21                               San Francisco, California  94111

22                               AHDOOT & WOLFSON
                                 BY:  MS. TINA WOLFSON
23                               10850 Wilshire Boulevard
                                 Los Angeles, California  90024
24

25
```

```
 1   APPEARANCES (Cont'd):

 2   For Plaintiffs (Cont'd):    GIRARD SHARP
                                 BY:  MR. DANIEL GIRARD
 3                                    MR. ADAM POLK
                                 601 California Street, Suite 1400
 4                               San Francisco, California  94108

 5                               GIBBS LAW GROUP
                                 BY:  MR. ERIC GIBBS
 6                               505 14th Street, Suite 1110
                                 Oakland, California  94612
 7
                                 WOOD LAW FIRM
 8                               BY:  MR. E. KIRK WOOD
                                 P.O. BOX 382434
 9                               Birmingham, Alabama  35238

10                               HEDIN HALL LLP
                                 BY:  MR. FRANK S. HEDIN
11                               1395 Brickell Avenue, Suite 900
                                 Miami, Florida  33131
12
                                 BURSOR & FISHER, P.A.
13                               BY:  MR. PHILIP L. FRAIETTA
                                 888 7th Avenue, 3rd Floor
14                               New York, New York  10019

15                               NICK LARRY LAW, LLC
                                 BY:  MR. J. DOMINICK LARRY
16                               55 East Monroe Street, Suite 3800
                                 Chicago, Illinois  60603
17
                                 SUSMAN GODFREY, LLP
18                               BY:  MR. MICHAEL GERVAIS
                                 1900 Avenue of the Stars
19                               Suite 1400
                                 Los Angeles, California  90067
20
                                 STEPHAN ZOURAS, LLP
21                               BY:  MR. JAMES B. ZOURAS
                                 100 North Riverside Plaza
22                               Suite 2150
                                 Chicago, Illinois  60606
23

24

25
```

4

```
 1   APPEARANCES (Cont'd):

 2   For Plaintiffs (Cont'd):    GORDON LAW OFFICES, LTD.
                                 BY:  MR. RICHARD R. GORDON
 3                               111 W. Washington St., Suite 1240
                                 Chicago, Illinois  60602
 4
     For Mark S., Objector       LOEVY & LOEVY
 5   in T.K. v. Bytedance:       BY:  MR. SCOTT R. DRURY
                                 311 North Aberdeen, 3rd Floor
 6                               Chicago, Illinois  60607

 7   For Defendants:             WILSON, SONSINI, GOODRICH & ROSATI
                                 BY:  MR. ANTHONY J. WEIBELL
 8                               650 Page Mill Road
                                 Palo Alto, California  94304
 9
     Court Reporter:             MR. JOSEPH RICKHOFF
10                               Official Court Reporter
                                 219 S. Dearborn St., Suite 2128
11                               Chicago, Illinois  60604
                                 (312) 435-5562
12

13              * * * * * * * * * * * * * * * * *

14                    PROCEEDINGS RECORDED BY
                      MECHANICAL STENOGRAPHY
15              TRANSCRIPT PRODUCED BY COMPUTER

16

17

18

19

20

21

22

23

24

25
```

```
 1              THE CLERK:  Case 20 CV 4699, TikTok, Inc. vs.
 2    Consumer privacy litigation.
 3              THE COURT:  Good afternoon, everyone.
 4              We have a lot of people on the phone with us today.
 5    I think the best thing to do is for me to read off the list of
 6    attorneys who had previously sent e-mails to my courtroom
 7    deputy, Ms. Acevedo, indicating that they were going to be
 8    calling into this status hearing on behalf of various
 9    plaintiffs.
10              I will then, after I go through these names, see if
11    there's anyone else who is an attorney representing any of the
12    plaintiffs in the member cases or the transferred cases that
13    would like to be recognized today.
14              And, then, I have some issues that I would like to
15    address today.  Primarily, I'm going to address the
16    appointments of various plaintiffs' counsel to various
17    positions in what I call the leadership group, which consists
18    of the co-lead counsel, liaison counsel and members of the
19    steering committee.
20              After that, I'll talk a bit about my expectations for
21    how that group would function and the current status of
22    things.  And after that, I will address the pending motion by
23    plaintiff M.G. for leave to file a motion for temporary
24    restraining order.
25              So, finally, we will close today -- at least with the
```

 1    items on my agenda -- by setting another date for a status

 2    hearing and, also, by asking counsel for defendants for a

 3    summary of the status of the TikTok sale/acquisition, to the

 4    extent that that information can be made publicly available

 5    here before this Court.

 6          And, so, that's how I want to proceed.  And, then, at

 7    the end, I'll see if there's anything else that needs to be

 8    addressed.

 9          So, on my list of attorneys who are representing

10    plaintiffs in the various transferred cases, in no particular

11    order, I recognize Katrina Carroll, Shannon McNulty, Jonathan

12    Jagher --

13          Is that how you pronounce it, Mr. Jagher?

14          MR. JAGHER:  It's Jagher, your Honor.

15          THE COURT:  Jagher.

16          MR. JAGHER:  Thank you.

17          THE COURT:  -- David Given, Albert Chang, Mark

18    Molumphy, Ekwan Rhow, Joseph Guglielmo --

19          I'm sure, Mr. Guglielmo, I probably got that wrong.

20    Do you want to go ahead and just pronounce it for me.

21          MR. GUGLIELMO:  It was correct, your Honor.  Joseph

22    Guglielmo.  You were correct.

23          THE COURT:  All right.  That's a good start.

24          -- Amanda Klevorn, Kara Wolke, Amy Keller, Lesley

25    Weaver, Elizabeth Fegan, Megan Jones, Tina Wolfson, Scott

1  Drury, David Girard, Adam Polk, Eric Gibbs and E. Kirk Wood.

2          So, those are the names that I have on my list.  If

3  there are other counsel representing any of the other

4  plaintiffs in this case that would like to state their name

5  and enter their appearance, you may do so at this time.  Just

6  give a pause.  Invariably there will be some overlap, but

7  let's do the best we can and it will be easier after today.

8          If you are not speaking during this call, please mute

9  your phones or computers or whatever you're using to dial into

10  this call.

11          All right.  So, is there anyone else who wishes to

12  enter their appearance on behalf of a plaintiff?  If so, can

13  you identify yourself, as well as the plaintiff that you are

14  representing.

15          MR. HEDIN:  Good afternoon, your Honor, Frank Hedin

16  on behalf of plaintiff M.G.

17          THE COURT REPORTER:  Please repeat, counsel.  I did

18  not hear that.

19          Someone is in the background with some reverberation.

20  If you could mute your phone, please.

21          THE COURT:  If you're on speakerphone, please make

22  sure you mute the speakerphone.  Thank you.

23          Go ahead.

24          MR. HEDIN:  Good afternoon, your Honor, Frank Hedin

25  on behalf of plaintiff M.G.

1      MR. FRAIETTA:  Good afternoon, your Honor, Philip

2  Fraietta also on behalf of plaintiff M.G.

3      MR. LARRY:  Good afternoon, your Honor, James

4  Dominick Larry also on behalf of plaintiff M.G.

5      MR. DRURY:  Good afternoon, your Honor, this is Scott

6  Drury.  You read my name off.  Just to make the record clear,

7  I wanted to let the Court and the parties know I'm here as

8  counsel for an objector in the matter of T.K. vs. Bytedance

9  Technology Company, that's currently pending before Judge

10  Blakey.  But I do have an appearance on file in this case

11  related to a notice of filing that I filed previously.

12      MR. GERVAIS:  Good afternoon, your Honor, Michael

13  Gervais on behalf of C.H.

14      MR. ZOURAS:  Good afternoon, your Honor, James Zouras

15  for plaintiff H.S.

16      MR. GORDON:  Good afternoon, your Honor, Richard

17  Gordon on behalf of plaintiff Charlene Marks.

18      THE COURT:  Anyone else that is representing a

19  plaintiff in this case that wishes to be recognized on the

20  record?

21    (No response.)

22      THE COURT:  Okay.  And, now, who is appearing on

23  behalf of the defendants?

24      MR. WEIBELL:  Good afternoon, your Honor, this is

25  Tony Weibell of Wilson, Sonsini, Goodrich, & Rosati on behalf

1    of defendants.

2        THE COURT:  Okay.  So, let's go through the

3    appointment of counsel in this case.

4        I reviewed all of the numerous submissions that were

5    made, both the nomination forms, as well as the objections and

6    responses, as well as all the attachments to those documents.

7        Let's start with the easy one first.  With regard to

8    defendants' counsel, I hereby appoint Anthony Weibell as lead

9    counsel for defendants.

10        Now, let's turn to plaintiffs' counsel assignments.

11    Again, I have reviewed all of the nominations and submissions

12    regarding the appointment of co-lead counsel, liaison counsel

13    and members of the steering committee, which I will refer to

14    collectively as the leadership group, for the plaintiffs in

15    all of the transferred cases.

16        As I noted previously, the primary criteria that I

17    considered in appointing individuals to these positions are:

18    Counsel's willingness and availability to commit to a

19    time-consuming project; counsel's ability to work

20    cooperatively with others; and, counsel's professional

21    experience in this type of litigation, including any prior

22    appointments as lead counsel or liaison counsel in multi-party

23    litigation.

24        Because all of the transferred cases are putative

25    class actions under Rule 23, I also considered as guidance the

1   factors set forth in Rule 23(g) regarding the appointment of

2   class counsel, including the work counsel has done in

3   identifying and investigating potential claims; counsel's

4   experience in handling class actions, other complex litigation

5   and the types of claims asserted in this action; counsel's

6   knowledge of the applicable law; the resources that counsel

7   will commit to representing the class, as well as the ability

8   of appointed counsel to fairly and adequately represent the

9   interests of the class.

10          Here, in light of the questions raised in the briefs

11  regarding the manner in which prior settlement negotiations

12  have taken place between counsel for certain of the named

13  plaintiffs and the defendants, and the need to ensure as much

14  as possible that the different voices from the various

15  plaintiffs in the transferred cases are included and taken

16  into account during any settlement discussions and also in the

17  prosecution of this action, I find that it is necessary that

18  the leadership group include attorneys from the plaintiff

19  group who may not necessarily agree in lockstep in the way

20  that the settlement negotiations have taken place to date.

21          Furthermore, it is my experience that to the extent

22  that counsel for various plaintiffs may have differing views

23  regarding the value of any potential settlement, it is more

24  efficient for those differences to be discussed and hashed

25  out, to the extent possible, prior to the finalization of any

settlement agreement, and prior to the filing of a motion requesting preliminary approval of a settlement on a class-wide basis.

If such differences of opinion are not raised and discussed during the settlement process, in my experience, those differences only fester; and, the likely result will be unnecessary objections, endless motion practice, and posturing before the Court during the preliminary and final settlement approval process, and sometimes may even lead to avoidable appeals. Such a situation would likely result in further delays and inefficient use of counsel's resources, which, in the end, might also mean less money available for any settlement class as a whole.

It is for these reasons that I believe it is necessary that the leadership group consist of plaintiffs' counsel who may have different views as to what has happened in this case to date and perhaps different views of how this case should best proceed.

Some in their briefs suggest that the Court need not go this route and characterized such an approach as a "forced marriage." Others referred to this as "a team of rivals." I, myself, rather than referring to it in those terms, would like to think of it as an all-star team of sorts or an Olympic team, made up of individuals from perhaps different individual teams, but who are asked to come together to pursue the

1    interests of all of the plaintiffs as a whole in this

2    litigation.

3           Turning then to the leadership group in this case,

4    all of the attorneys that I've decided to appoint to the

5    leadership group have a tremendous amount of experience in

6    privacy cases; large, complicated class actions; as well as

7    multi-district litigation actions like this one.  They also

8    have the necessary resources to zealously pursue this case on

9    behalf of all plaintiffs and have already expended a

10    substantial amount of time and effort in pre-filing research

11    and discovery, as well as efforts to coordinate with other

12    plaintiffs' counsel prior to pretrial consolidation of these

13    actions by the JPMDL before this Court.  And I believe that

14    the leadership group, as composed, will fairly and adequately

15    represent the interests of the putative plaintiffs' classes as

16    a whole.

17           So, first, as to co-lead counsel, I am appointing

18    Katrina Carroll, as well as Ekwan Rhow.  Furthermore, I'm

19    going to amend my prior order and add a third co-lead counsel,

20    making this a triumvirate.  I would like to appoint Elizabeth

21    Fegan as the third co-lead counsel, if she is willing to serve

22    in this capacity.  Ms. Fegan demonstrated to me during her

23    work in the NCAA Student-Athlete Concussion MDL that she is

24    very astute, hard-working and, perhaps most important of all

25    in this circumstance, fair and level-headed.

1          Ms. Fegan, are you willing to serve in this capacity

2     for this case?

3          MS. FEGAN:  Your Honor, I would be honored.  Thank

4     you very much.

5          THE COURT:  As for liaison counsel for plaintiff, I

6     appoint Shannon McNulty.  She, too, worked on the NCAA MDL and

7     has demonstrated her ability to perform this role in a very

8     high manner.

9          As for the steering committee, I appoint Jonathan

10    Jagher, Megan Jones, Michael Gervais, Amanda Klevorn, and

11    Albert Chang.

12         As for the respective roles and the responsibility of

13    those roles, I will clarify that further in a written order.

14    But as a general matter, co-lead counsel will be responsible

15    for overseeing all as aspects of this case on behalf of all of

16    the plaintiffs and the putative plaintiff classes.  In that

17    capacity, co-lead counsel will have a duty to make sure, to

18    the extent possible, that the interests of all of the

19    plaintiffs are represented in this case and presented to this

20    Court.

21         Co-lead counsel will also have the responsibility to

22    lead the leadership group, confer with all members of the

23    leadership group, and formulate strategy and delegate tasks.

24         It is my hope that the leadership group will work by

25    consensus, and that the co-lead counsel will do everything

1   within their power to facilitate a consensus decision-making

2   process.

3           Ms. Carroll, I take it you are on the line?

4           MS. CARROLL:  Yes, Judge.

5           THE COURT:  Mr. Rhow?

6           MR. RHOW:  Yes, your Honor.

7           THE COURT:  And, Ms. Fegan?

8           MS. FEGAN:  Yes, your Honor.  Thank you.

9           THE COURT:  So, Ms. Carroll, Mr. Rhow and Ms. Fegan

10  have appeared before me or I have experience working with them

11  in a variety of other professional contexts.

12          I'm counting on the three of you, as co-lead counsel,

13  to utilize all of your consensus-building and professional

14  skills to represent all the plaintiffs in this litigation

15  fairly and equitably, and to demonstrate the utmost

16  professional civility and courtesy to one another and all

17  other counsel in this litigation.

18          Ms. Carroll, do you understand my directives?

19          MS. CARROLL:  Yes, Judge, absolutely.

20          THE COURT:  Mr. Rhow?

21          MR. RHOW:  Yes, your Honor.

22          THE COURT:  Ms. Fegan?

23          MS. FEGAN:  Yes, your Honor.

24          THE COURT:  Very good.

25          As for how the leadership group will be administered

1   on a day-to-day basis, I would like co-lead counsel to confer

2   with members of the leadership group and submit a proposal to

3   me within 14 days.

4          Now, with regard to the settlement process, it is my

5   understanding that Ms. Carroll and other counsel have

6   negotiated a preliminary settlement with defendants, but that

7   certain members of the leadership group that I've appointed

8   have not been privy to its terms.

9          Now, I want to be clear.  I will not consider any

10  settlement proposal unless and until the members of the

11  leadership group have had a chance to fully digest and discuss

12  the terms of any possible settlement agreement.

13         If that means that further work needs to be done with

14  regard to any proposed settlement, then that is what needs to

15  take place.

16         If there are unresolvable differences between and

17  among members of the leadership group -- and I really hope

18  that there will not be any, but to the extent there are --

19  co-lead counsel can let my courtroom deputy know via e-mail,

20  and I will address it in an appropriate manner.

21         To provide the newly appointed plaintiff leadership

22  group with time to get together and discuss the status of this

23  case and how the case should proceed, I will set another

24  status hearing for November 4th, 2020, at 2:00 p.m.  That

25  conference will be held via video on the Microsoft Teams

 1    platform, which is the platform that we use.  Plaintiffs'

 2    co-lead counsel and members of the leadership group for the

 3    plaintiff, as well as defendants' lead counsel, will be

 4    provided with an e-mail link that they can use to log onto the

 5    Microsoft Teams video conference.  You can use the web-based

 6    feature.  You don't have to download Microsoft Teams if you

 7    don't want to.  But, certainly, you can if that will help

 8    facilitate the process.  All other counsel of record and the

 9    public will be able to call into the conference call using the

10    dial-in numbers that will be placed upon the master docket in

11    this case.

12            Furthermore, by October 30th, I would like the

13    parties to submit a joint status report addressing all of the

14    substantive issues or topics that were raised in CMO 1,

15    including, if necessary, a proposed schedule that provides for

16    the timing for the filing of a consolidated complaint and any

17    answer or responsive pleading, a discovery schedule, as well

18    as a list of any related state court cases, and the other

19    topics that are listed in Case Management Order 1.

20            Now, turning to plaintiff M.G.'s motion, plaintiff

21    M.G. has filed an emergency motion for leave to file a motion

22    for temporary restraining order.  That is Master Docket 60.

23    To the motion plaintiff's counsel attached the proposed

24    motion, as well as the proposed memorandum in support of that

25    motion.

1    Defendants filed an opposition to the motion for

2    leave.

3    Having reviewed both submissions, as well as the

4    related attachments, the Court denies plaintiff M.G.'s motion

5    for the following reasons.

6    First, the Court finds that there is no threat of an

7    imminent harm that plaintiff has identified in its papers.

8    Plaintiff M.G. asks the Court to forbid TikTok from

9    transferring certain user data to any successor in interest or

10   future corporate business partner.  But it is not clear how

11   doing so will mitigate the harm that plaintiff allegedly has

12   already faced; that is, the fact that defendant obtained

13   certain biometric information from plaintiff without

14   plaintiff's authorization.

15   Whether TikTok keeps the data -- to the extent it has

16   it -- or transfers that data to a successor in interest -- who

17   presumably will only use it for the same purpose and in the

18   same manner as TikTok -- plaintiff M.G. will only face the

19   status quo, and no additional harm would result.

20   Furthermore, it is the responsibility of this Court

21   to oversee the pretrial aspects of all of the transferred

22   cases to ensure the fair and effective administration of these

23   cases.  In so doing, the Court has adopted a uniform method of

24   proceeding, as set forth in CMO 1, and will continue to do so

25   in future case management orders.

1       Allowing plaintiffs in the individual transferred

2  cases to file motions whenever they wish and without a showing

3  of good cause would significantly impede the Court's ability

4  to fairly and effectively administer this multi-district

5  litigation.

6       In sum, because plaintiff M.G. has not established

7  good cause to file the proposed motion for preliminary

8  injunctive relief for the reasons I've discussed, that motion

9  is denied.

10      Now, Mr. Weibell, can you provide me with some

11  general -- an overview of the state of the sale or acquisition

12  of TikTok, its overall general structure and, to the extent

13  you can disclose it, what will happen to the user information

14  that TikTok has gathered as part of this transaction.

15      MR. WEIBELL:  This is Tony Weibell for the

16  defendants.

17      Yes, your Honor.  So, what I can say is that, as has

18  been publicly announced, TikTok and its parent company are in

19  negotiations with Oracle and with the United States government

20  to approve a transaction that would see -- the TikTok U.S.

21  entity -- it's TikTok, Inc. -- would still exist and it would

22  still operate the app, and then Oracle would also play a role

23  in that, and particularly the role of ensuring safety of the

24  data and compliance with the user data.

25      So, if that transaction were approved, then the data

1   would be accessible by Oracle.  At the same time, there are

2   negotiations that are still taking place regarding to what

3   extent the U.S. entity, TikTok, Inc., would also have access

4   to that data and what role the ownership of the TikTok, Inc.,

5   company by a foreign parent company would be ongoing and what

6   role they would have.

7           So, it's an extremely sensitive situation because the

8   negotiations are still ongoing.  There is a -- currently

9   there's a lawsuit against the government that has been filed.

10  There's a motion for preliminary injunctive relief that has

11  been filed to stave off the Executive Orders.  The judge in

12  that case has set a date for this Friday -- that's tomorrow --

13  for the government to respond to that motion or extend the

14  deadlines that were imposed by those orders.

15          So, that's what's going on there.

16          In our view, however, as far as the U.S. user data

17  goes, that will always exist.  There's no risk that that would

18  be destroyed.  It's always going to be preserved regardless of

19  whether it's -- you know, the TikTok U.S., Inc., entity that

20  has it or whether it's Oracle acquires that through this

21  transaction that's being negotiated.

22          THE COURT:  Okay.

23          To your knowledge, Mr. Weibell, are there any state

24  court cases against your clients with regard -- or alleging

25  the same claims as those asserted by the plaintiffs in this

1    case?

2           MR. WEIBELL:  Yes, your Honor, there is one.  There

3    is an action that was filed in Cook County just this past week

4    or within the past two weeks -- it's been filed; it has not

5    been served -- that alleges, essentially, a BIPA claim, but

6    it's just a subset -- one of the subsections of BIPA.

7           THE COURT:  Okay.

8           And do you know if a judge has been assigned to that

9    case?

10           MR. WEIBELL:  I do not yet know that.

11           THE COURT:  Other than that case in Cook County, to

12    your knowledge, have there been any other state court cases

13    filed alleging the claims that the plaintiffs are bringing in

14    this case?

15           MR. WEIBELL:  I am not aware of any other state court

16    cases.

17           THE COURT:  Thank you.

18           Ms. Carroll, Mr. Rhow, Ms. Fegan, is there anything

19    else that I can address for you today that you would like to

20    discuss?

21           MS. CARROLL:  Hi, Judge, it's Katrina Carroll.

22           Not on my end.

23           MR. RHOW:  Your Honor, this is Ekwan Rhow.

24           I think what you indicated before gives us the right

25    road map.  So, nothing further for me.

1      MS. FEGAN:  And this is Beth Fegan.  Nothing for me.

2  Thank you.  And thank you again for the appointment.

3      THE COURT:  Let me open it up to any other

4  plaintiffs' counsel that have noted their attendance here.

5      Is there anyone that wishes to raise any other issues

6  that I have not addressed today that you believe I should

7  raise today?

8      MR. DRURY:  Your Honor, this is Scott Drury on behalf

9  of the objector Mark S. in the other federal matter, T.K. vs.

10  Bytedance.  The only thing I'd like to raise, your Honor, is

11  you asked if there were any other state court cases alleging

12  similar or related claims.  And I just wanted to let the Court

13  know that there is another federal case, in front of Judge

14  Blakey, Case No. 19 C 7915, that was the first filed case that

15  alleges related claims, and specifically it alleges violation

16  of the Video Privacy Protection Act.

17      There is a preliminary settlement in that case.

18  There's been a hearing on the motion for approval.  As I've

19  noted, we've objected to that.  And that -- and Judge Blakey

20  currently has that matter under consideration.

21      The reason for raising this is:  One, it's another

22  related matter that wasn't brought to the attention of the

23  panel; and, also, the settlement or the purported settlement

24  that has taken place in this case -- which I know your Honor

25  has instructed the lead counsel to go back and discuss -- it

1   seeks to settle the same claims that are part of the

2   preliminary settlement that is being considered by Judge

3   Blakey.

4         So, I just wanted to make sure that your Honor was

5   aware of those facts.

6         THE COURT:  I'm certainly aware of that case,

7   Mr. Drury.  And whether or not and what impact and what

8   relationship that case has to this case, I am sure that I will

9   be hearing from the leadership group in this case about that

10  issue.  But I recognize that that case is there.

11        MR. DRURY:  Thank you, your Honor.

12        THE COURT:  Anything else from any other plaintiffs'

13  counsel?

14     (No response.)

15        THE COURT:  Mr. Weibell, anything else from the

16  defendants that I could address today?

17        MR. WEIBELL:  Your Honor, yes.  This is Tony Weibell.

18        Only with respect to your Honor's instruction that

19  any settlement, before it is submitted to your Honor, also be

20  submitted to the entire leadership group so they can review

21  it.  And we certainly understand your Honor's position on

22  that.

23        One of the issues, given the sensitivity of the

24  ongoing negotiations involving TikTok and a potential

25  acquisition, is we may not be at a point where we can do that

1   for a few more weeks.  Our goal, and what we have stated to

2   the Court, is that we should be able to present that -- we

3   were going to present it to the Court on October 26th, but if

4   you'd like us to first present it to the entire leadership

5   group, we could do that, as well.  But it would probably still

6   be within that same time frame, as we're waiting for certain

7   things to transpire between now and then.

8          THE COURT:  Okay.  But Ms. Carroll has that

9   information, doesn't she?

10          MR. WEIBELL:  Yes, she does, your Honor.

11          THE COURT:  And, so, I don't understand.  There's

12   nothing in the papers that indicated to me that there's any

13   reason why the other members of the leadership group should

14   not also have access to that information if some of the

15   plaintiffs' counsel already has access to that information.

16          MR. WEIBELL:  Yes, your Honor.  I certainly do

17   understand the puzzlement there.

18          The issue was, because of the timing and certain

19   coincidence of events and what transpired at an earlier

20   mediation in April, that TikTok felt there was too much risk

21   in disclosing the settlement and the settlement terms to

22   certain counsel because there was a belief that there may be a

23   conflict there.  Obviously, not to the extent that we would

24   have moved to disqualify or anything like that, but that was

25   the concern.

1        And for that reason, so much of this has been on a

2   very strict, need-to-know basis.  In other words, not all the

3   plaintiffs' counsel, even some of those who are, you know, in

4   support of the settlement, have been able to have access to

5   all of that just for that reason.

6        The fear is that it could be used to disrupt a

7   potential acquisition or use potential disruption as leverage

8   to adversely affect TikTok.  That was the concern there.

9        We think that those should all be out of the way,

10  though, in a few weeks.

11       THE COURT:  All right.

12       So, when do you think that -- because it's part of

13  the settlement, it's not like I can order TikTok to provide

14  that information, because neither side has proposed a

15  settlement and there's nothing for me to approve.  But this

16  litigation is going to go forward until any settlement, if

17  any, is actually agreed to, is finalized between the parties.

18       So, at this point in time, you say a couple of weeks.

19  Are you talking 14 days, 21 days?  What is it?

20       MR. WEIBELL:  I -- well, we were planning that we

21  should be done within a week before the motion for preliminary

22  approval would have been filed on October 26th.  So, I guess

23  that would be October 19th, would be the date that we would be

24  looking at.

25       THE COURT:  Okay.

1              MR. RHOW:  Your Honor, this is Ekwan Rhow.

2              THE COURT:  Mr. Rhow, I don't need any argument.  I

3  think that that's fair.

4              MR. RHOW:  Understood.

5              THE COURT:  And I don't think it's a big deal.

6  You'll get a chance to -- you and the other people in the

7  leadership group who haven't had a chance to look at that

8  information will get a chance to look at it as we proceed in

9  this case.  Okay?

10             MR. RHOW:  Understood, your Honor.

11             THE COURT:  All right.

12             Mr. Weibell, anything else to address for defendants?

13             MR. WEIBELL:  Your Honor, that's it, other than in

14  that, we may be able to do it sooner and we'll work to do it

15  as soon as we can, understanding your Honor's concerns.  So,

16  it's not like we're going to wait until the last minute if we

17  can give it to them sooner.

18             THE COURT:  Okay.  Very good.

19             All right.  Thanks to everyone for calling in.  And I

20  look forward to seeing the status report and actually seeing

21  the leadership group and defense counsel on video and hearing

22  from everyone else at the next status hearing.

23             If there's anything else that comes up between now

24  and then that anyone in the leadership group believes, or

25  defense counsel believes, needs to be addressed, you can reach

1    out to Ms. Acevedo, my courtroom deputy, and I'll try to

2    address it as soon as I can.

3          Thank you very much.

4         UNIDENTIFIED SPEAKER:  Thank you, your Honor.

5         UNIDENTIFIED SPEAKER:  Thank you, your Honor.

6         MS. CARROLL:  Thank you, Judge.

7              *    *    *    *    *

8

9    I certify that the foregoing is a correct transcript from the
record of proceedings in the above-entitled matter.

10

11

/s/ Joseph Rickhoff               September 25, 2020

12    Official Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25