# EXHIBIT A

<u>SETTLEMENT AGREEMENT AND RELEASE</u>

1. PREAMBLE

    1.1.    This class action Settlement Agreement and Release ("Agreement") is entered into by and among the individuals and entities defined below as "Class Representatives" and the individuals and entities defined below as "TikTok" where Class Representatives and TikTok are collectively referred to herein as the "Parties."

    1.2.    This Agreement is intended by the Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims (as the term is defined below), upon and subject to the terms and conditions of this Agreement, and subject to preliminary and final approval of the Court.

2. DEFINITIONS

    2.1.    "<u>Agreement</u>" or "<u>Settlement</u>" means this Settlement Agreement and Release, including any exhibits.

    2.2.    "<u>App</u>" means the TikTok - Make Your Day video-sharing application (or its Musical.ly predecessor) distributed in the U.S.

    2.3.    "<u>Civil Actions</u>" mean all of the civil actions that have been, will be, or could be initiated relating to the allegations or subject matter at issue in any pleading filed in any action that is included in or related to In Re: TikTok, Inc., Consumer Privacy Litigation, MDL No. 2948.

    2.4.    "<u>Class</u>" means all persons who are members of the Nationwide Class and/or Illinois Subclass. The parties understand and agree that issues involving collection of data from minors is the subject of a class action settlement that has been preliminarily approved in T.K. v. TikTok, Inc., No. 1:19-cv-07915 (N.D. Ill.). TikTok agrees to waive any res judicata defense for purposes of this settlement only such that no person who is a member of the settlement class in the T.K. action will be precluded from participating in this Settlement.

    2.5.    "<u>Class Counsel</u>" means the attorneys who sign this Agreement as Class Counsel up until such time as the Court appoints counsel to represent the Class in its preliminary approval order; and following such appointment, "Class Counsel" shall mean the counsel so appointed by the Court in its preliminary approval order.

    2.6.    "<u>Class Member</u>" means any person who qualifies under the definition of the Class, excluding: (i) TikTok, its parent, subsidiaries, successors, affiliates, officers, and directors; (ii) the judge(s) to whom the Civil Actions are assigned and any member of the judges' or judges' immediate family; (iii) Persons who have settled with and released TikTok from individual claims substantially similar to those alleged in the Civil Actions; (iv) Persons who submit a valid and timely Request for Exclusion; and (v) all Class Counsel and counsel of record in the Civil Actions.

    2.7.    "<u>Class Representatives</u>" mean: E.R., a minor, and E.R.'s Guardian, L.H.; D.M., a minor, and D.M.'s Guardian, D.H.; A.S., a minor, and A.S.'s Guardian, A.S.; S.A., a minor, and S.A.'s Guardian, Maritza A.; C.H., a minor, and C.H.'s Guardian, Marc Halpin; G.R., a minor, and G.R.'s Guardian, Mayra De La Cruz; and Morgan

Kukovec along with any other Class Representatives who may be appointed by the Court, acting either individually or through Class Counsel.

2.8. "Court" means the United States District Court that has been assigned to preside over In Re: TikTok, Inc., Consumer Privacy Litigation, MDL No. 2948 and any appellate court that may review any orders entered by the District Court related to this Agreement.

2.9. "Day" or "days" refer to calendar days.

2.10. "Defendants' Released Parties" means the current defendants in the Civil Actions, as well as any and all of their current or former directors, officers, members, administrators, agents, representatives, servants, employees, attorneys, parents, subsidiaries, affiliates, divisions, branches, units, shareholders, successors, predecessors, assigns, and all other individuals and entities acting on their behalf.

2.11. "Defendants' Releasing Parties" means the current defendants in the Civil Actions, as well as any and all of their current or former directors, officers, members, administrators, agents, representatives, servants, employees, attorneys, parents, subsidiaries, affiliates, divisions, branches, units, shareholders, successors, predecessors, assigns, and all other individuals and entities acting on their behalf.

2.12. "Effective Date" means the first date after either (i) the time to appeal the Final Order and Judgment has expired with no appeal having been filed or (ii) the Final Order and Judgment is affirmed on appeal by a reviewing court and no longer reviewable by any court.

2.13. "Execution" means the signing of this Agreement by all signatories hereto.

2.14. "Fee Award" means any attorneys' fees, reimbursement of expenses, and other costs awarded by the Court to Class Counsel.

2.15. "Final Approval Hearing" means the hearing before the Court where the Parties request that the Court enter its Final Order and Judgment in accordance with this Agreement.

2.16. "Final Order and Judgment" means the order entered by the Court, in a form that is mutually agreeable to the Parties, approving this Agreement under Fed. R. Civ. P. 23(e) and making such other findings and determinations as the Court deems necessary and appropriate to effectuate the terms of this Agreement, without modifying any terms of this Agreement that either Party deems material.

2.17. "Illinois Subclass" means all persons who reside in the State of Illinois and used the App in the State of Illinois to create videos prior to issuance of the Preliminary Approval Order.

2.18. "Incentive Award" means any amount awarded by the Court to the Class Representatives for serving as Class Representatives.

2.19. "Nationwide Class" means all persons who reside in the United States who used the App prior to issuance of the Preliminary Approval Order.

2.20. "Notice of Proposed Class Action Settlement" means the notice described in the Notice Plan as approved by the Court.

2.21.   "Notice Plan" means the planned method by which notice of this Agreement will be given to the Class.

2.22.   "Opt-Out and Objection Deadline" means the deadline for a Class Member to submit a Request for Exclusion or objection as set forth in the Preliminary Approval Order and which will be no more than sixty (60) days from the date upon which Notice of the Proposed Class Action Settlement is commenced.

2.23.   "Parties" means, collectively, the Class Representatives and TikTok, and "Party" means any one of them.

2.24.   "Person" means an individual or legal entity, including an association, or his, her, or its respective estate, successors, or assigns.

2.25.   "Plaintiffs' Released Parties" means the Class Representatives, Class Counsel, and counsel of record in the Civil Actions.

2.26.   "Plaintiffs' Releasing Parties" means Class Representatives and all Class Members, as well as their present, former, and future heirs, executors, administrators, estates, representatives, predecessors-in-interest, and assigns, and all other individuals and entities acting on their behalf or otherwise asserting the interests of Class Members.

2.27.   "Plan of Allocation" means the plan for allocating the Settlement Fund described in this Agreement, or other such plan for allocating the Settlement Fund as may be approved by the Court.

2.28.   "Preliminary Approval Order" means the order issued by the Court provisionally (i) granting preliminary approval of this Agreement; (ii) certifying the Class for settlement purposes; (iii) appointing Class Representatives and Class Counsel; (iv) approving the form and manner of the Notice Plan and appointing a Settlement Administrator; (v) establishing deadlines for Requests for Exclusion and the filing of objections to the proposed settlement contemplated by this Agreement; (vi) finding that the Parties have complied with 28 U.S.C. § 1715; and (vii) scheduling the Final Approval Hearing.

2.29.   "QSF" means a court-approved Qualified Settlement Fund for federal tax purposes pursuant to Treas. Reg. § 1.468B-1 in which will be deposited the Settlement Fund.

2.30.   "Released Claims" means any and all claims, complaints, actions, proceedings, or remedies of any kind, whether known or unknown (including, without limitation, claims for attorneys' fees and expenses and costs), arising from or related to the Civil Actions or the collection and use of any user data, including biometric data, whether in law or in equity, under contract, tort or any other subject area, or under any statute, rule, regulation, order, or law, whether federal, state, or local, on any grounds whatsoever, arising from the beginning of time through the Effective Date, that were, could have been, or could be asserted by the Releasing Parties. Notwithstanding the foregoing, the released claims shall not be deemed to release, remise, waive, acquit, affect, or discharge any claims that are not releasable under the law or any claims or defenses arising from enforcement of this agreement.

2.31.   "Request for Exclusion" means the form that must be completed and returned in the manner and within the time period specified in this Agreement for a Class Member to request exclusion from the Class.

3

2.32.   "Settlement Administrator" means a third-party class action settlement administrator who will implement the designated aspects of this Agreement.

2.33.   "Settlement Fund" means the non-reversionary cash fund that shall be funded by TikTok in the total amount of $92,000,000.00. The Settlement Fund is the total sum that TikTok will pay in connection with this Agreement, deposited into a common fund for payment of (i) distributions to Class Members, (ii) the Fee Award, (iii) the Incentive Awards, and (iv) all settlement administration and notice costs.

2.34.   "TikTok" means TikTok Inc., acting on behalf of Defendant's Released Parties, and its successors or assigns of the rights and obligations of TikTok under this Agreement, including any entity that acquires TikTok's obligations under this agreement through merger or acquisition.

## 3.   RESTRICTIONS ON USE OF THIS AGREEMENT

3.1.   This Agreement is for settlement purposes only and is entered into as a compromise to avoid the inherent risks and expenses posed by continued litigation of the claims in the Civil Actions. Neither the fact nor content of this Agreement, nor any action based on it, will constitute, be construed as, or be admissible in evidence as an admission of the validity of any claim, of any fact alleged in the Civil Actions or in any other pending or subsequently filed action, or of any wrongdoing, fault, violation of law, or liability or non-liability, wrongdoing, fault, or violation of law or fact alleged in the Civil Actions.

3.2.   The Parties agree that, in consideration for the undertakings, promises, and payments set forth in this Agreement and upon the entry by the Court of a Final Order and Judgment approving and directing the implementation of the terms and conditions of this Agreement, the Civil Actions will be settled and compromised upon the terms and conditions set forth in this Agreement.

3.3.   The Parties have agreed to enter into this Agreement as an appropriate compromise of the claims in the Civil Actions to put to rest all controversy and to avoid the uncertainty, risk, expense, and burdensome, protracted, and costly litigation that would be involved in prosecuting and defending the Civil Actions.

3.4.   TikTok has denied and continues to deny each allegation and all charges of wrongdoing or liability of any kind whatsoever asserted or that could have been asserted in the Civil Actions.

3.5.   Plaintiffs' Released Parties deny any wrongdoing, liabilities, claims, and causes of action of any kind whatsoever that TikTok has asserted or could have been asserted against them.

3.6.   Subject to approval by the Court, TikTok conditionally agrees and consents to jurisdiction, venue, and certification of the Class for settlement purposes only and within the context of this Agreement only.

3.7.   If this Agreement, for any reason, is not approved or is otherwise terminated, the Parties expressly reserve all rights, claims, objections and defenses. TikTok reserves the right to assert any and all objections and defenses to jurisdiction, venue, certification of a litigation class, or other defenses; and neither this Agreement nor any order or other action relating to this Agreement may be offered as evidence in support of jurisdiction, venue, or class certification for a purpose other than

DocuSign Envelope ID: 8ED7697E-4477-422E-B169-F304505157C2

settlement pursuant to this Agreement. Class Representatives, individually and on behalf of the Class, reserve their rights to pursue their claims in the Civil Actions on any available factual, procedural, equitable or legal grounds.

4. **SETTLEMENT FUND**

4.1.   Within 90 days after entry of the Preliminary Approval Order, TikTok shall cause to be deposited the sum of Ninety-Two Million Dollars ($92,000,000) into an escrow account established by the Settlement Administrator to create the Settlement Fund.

4.2.   The Settlement Fund shall be a court-approved Qualified Settlement Fund (QSF) for federal tax purposes pursuant to Treas. Reg. § 1.468B-1. TikTok shall be the "transferor" to the QSF within the meaning of Section 1.468B-1(d)(1) of the Treasury Regulations with respect to the Settlement Fund or any other amount Transferred to the QSF pursuant to this Settlement Agreement. The Settlement Administrator shall be the "administrator" of the QSF within the meaning of Section 1.468B-2(k)(3) of the Treasury Regulations, responsible for causing the filing of all tax returns required to be filed by or with respect to the QSF, paying from the QSF any taxes owed by or with respect to the QSF, and complying with any applicable information reporting or tax withholding requirements imposed by Section 1.468B-2(l)(2) of the Treasury Regulations or any other applicable law on or with respect to the QSF. TikTok shall provide to the Settlement Administrator any documentation required for the Settlement Administrator to facilitate obtaining QFS status for the Settlement Fund pursuant to Treas. Reg. §1.468B-l.  All taxes on income or interest generated by the Settlement Fund, if any, shall be paid out of the Settlement Fund.

4.3.   Class Counsel shall select the Settlement Fund escrow account and the Settlement Fund escrow bank. The Settlement Fund escrow bank shall invest the Settlement Fund exclusively in an interest-bearing account or accounts where the principal will not decrease and is fully insured by the United States Government or an agency thereof, including certificates of deposit, a U.S. Treasury Fund or a bank account that is either (a) fully insured by the Federal Deposit Insurance Corporation ("FDIC") or (b) secured by instruments backed by the full faith and credit of the United States Government. The Settlement Fund escrow bank shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates. All interest earned on the investment of the Settlement Fund shall be added to the Settlement Fund, for distribution as set forth herein.

4.4.   Other than the Settlement Fund, TikTok will have no financial obligations to Class Representatives, Class Members, Class Counsel, any other attorney representing any Class Member, or the Settlement Administrator with respect to the Defendants' Released Claims. The Settlement Fund represents the total extent of TikTok's monetary obligations under this Agreement. In no event shall TikTok's total monetary obligations with respect to this Agreement exceed the amount stated above.

4.5.   The Settlement Administrator will draw from the Settlement Fund to cover all obligations with respect to costs related to this Agreement, including the expenses of the Settlement Administrator, the Notice Plan, payments to Class Members, any Incentive Awards, any Fee Award, and any other administrative fees and expenses in connection with this Agreement; provided, however, that the Parties must approve any payments to the Settlement Administrator prior to the Settlement Administrator incurring such expenses. The Parties intend that, after the foregoing payments and disbursements are made, there will be no funds remaining.  Nonetheless, to the extent any funds remain, no portion of the Settlement Fund will be returned to TikTok.

4.6.  If this Agreement is terminated, the Settlement Administrator will return all funds to TikTok within ten (10) days of the termination date; provided, however, that the Settlement Administrator need not return any funds already spent on notice and on reasonable Settlement Administrator expenses before the termination date. Notwithstanding any provision herein, in the event this Agreement is not approved by any court, or terminated for any reason, or the Settlement set forth in this Agreement is declared null and void, or in the event that the Effective Date does not occur, Settlement Class Members, Class Representatives, and Class Counsel shall not in any way be responsible or liable for any administration expenses, taxes with respect to the Settlement Fund, or any expenses, including costs of notice and administration associated with this Settlement or this Agreement, except that each Party shall bear its own attorneys' fees and costs and Defendants' future payment obligations shall cease.

4.7.  Defendants' Released Parties, TikTok's Counsel, Plaintiffs' Released Parties and Class Members shall have no liability, obligation or responsibility with respect to the investment, disbursement, or other administration or oversight of the Settlement Fund or QSF and shall have no liability, obligation or responsibility with respect to any liability, obligation or responsibility of the Settlement Administrator, including but not limited to, liabilities, obligations or responsibilities arising in connection with the investment, disbursement or other administration of the Settlement Fund and QSF.

4.8.  Once deposited by TikTok, the Settlement Fund shall be deemed and considered to be in custodia legis of the Court, and shall remain subject to the jurisdiction of the Court until such time as such funds shall be distributed pursuant to the Agreement and/or further order(s) of the Court.

4.9.  Notwithstanding any effort, or failure, of the Settlement Administrator or the Parties to treat the Settlement Fund as a QSF, any tax liability, together with any interest or penalties imposed thereon, incurred by TikTok or any Releasees resulting from income earned on the Settlement Fund or the payments made from the Settlement Fund (or the receipt of any payment under this paragraph) shall be reimbursed from the Settlement Fund in the amount of such tax liability, interest or penalties promptly upon and in no event later than five (5) days after TikTok's or any Defendants' Released Party's written request to the Settlement Administrator.

4.10.  For avoidance of doubt, neither TikTok nor any of Defendants' Released Parties shall have any liability, obligation, or responsibility whatsoever for tax obligations arising from payments to any Class Member or based on the activities and income of the QSF. In addition, neither TikTok nor any of Defendants' Released Parties shall have any liability, obligation, or responsibility whatsoever for tax obligations arising from payments to Class Counsel. The QSF will be solely responsible for its tax obligations. Each Class Member will be solely responsible for his or her tax obligations. Each Class Counsel or other attorney or firm receiving a distribution from the Settlement Fund will be solely responsible for his, her, or its tax obligations.

4.11.  Class Counsel are not providing legal advice regarding the taxability of any amount paid hereunder and nothing contained herein shall be interpreted as constituting legal advice regarding the taxability of any amount paid hereunder, nor shall it be relied upon as such. Any tax issues raised by this Agreement may be unique as to each Party and Class Member, and each Party and Class Member is advised to obtain tax advice from his or her own tax advisor with respect to any payments resulting from this Agreement. Each Party and Class Member will be responsible for paying their own respective share of all applicable state, local, and federal taxes on all amounts the received or paid pursuant to this Agreement.

6

4.12. TikTok shall have no liability whatsoever with respect to (i) any act, omission, or determination by Class Counsel or the Settlement Administrator, or any of their respective designees or agents, in connection with the administration of the settlement or otherwise; (ii) the management, investment, or distribution of the Settlement Fund; (iii) the Plan of Allocation; (iv) the determination, administration, or calculation of claims to be paid to Class Members from the Settlement Fund; or (v) the payment or withholding of taxes or related expenses, or any expenses or losses incurred in connection therewith. The Plaintiffs' Releasing Parties and Class Counsel release TikTok from any and all liability and claims arising from or with respect to the administration, investment or distribution of the Settlement Fund.

4.13. No person shall have any claim against Class Representatives, Class Counsel, counsel of record for any party in the Civil Actions, the Settlement Administrator, or any other person designated by Class Counsel, based on determinations or distributions made substantially in accordance with this Agreement and the settlement contained herein, the Plan of Allocation, administration of the Settlement Fund and the QSF, or further order(s) of the Court.

5. PLAN OF ALLOCATION

5.1. Class Counsel shall prepare and submit a Plan of Allocation to the Court for approval in connection with a motion for preliminary approval of the Settlement, which Plan of Allocation shall propose the allocation of distributions from the Settlement Fund among Class Members, Class Representatives, Class Counsel, and any other person to receive a distribution from the Settlement Fund.

5.2. The Plan of Allocation shall include a provision for distribution of the Settlement Fund according to the following preferential order:

5.2.1. Payment of all expenses incurred by the Settlement Administrator for the Notice Plan and settlement administration;

5.2.2. Payment of any taxes associated with the Settlement Fund;

5.2.3. Payment of any Fee Award plus any interest or income earned on the Fee Award portion of the Settlement Fund and Incentive Awards within 14 days of the Effective Date;

5.2.4. Payment of the remaining unallocated portion of the Settlement Fund to Class Members in accordance with the Final Approval Order or any subsequent order of the Court within 14 days of the Effective Date; and

5.2.5. Payment of any residue of the Settlement Fund as set forth in this Agreement, subject to a reduction for any associated administrative costs.

5.3. Settlement Payments to Class Members

5.3.1. Class Members may submit one claim per Class Member to receive a distribution from the Settlement Fund according to the Plan of Allocation.

5.3.2. The Plan of Allocation will divide the portion of the Settlement Fund to be distributed to Class Members into a total number of pro rata shares equal to the sum of the number of Nationwide Class Members who submit a valid claim and a multiple between three (3) and ten (10) of the number of Illinois

Subclass Members who submit a valid claim. Individual counsel representing the Illinois Subclass Members and individual counsel for the Nationwide Class Members will mediate the allocation multiplier before the Hon. Layn Phillips (Ret.) after confirmatory discovery is completed and before the Plan of Allocation is submitted to the Court. It is not a condition of the Agreement that any particular multiplier be approved by the Court. Class Representatives and Class Counsel may not terminate this Agreement based on the Court's modification of the allocation multiplier.

5.3.3.   For feasibility and fraud-prevention reasons, distributions to Class Members will be made by electronic payment. If any Class Member cannot receive an electronic payment, the Settlement Administrator will provide an alternative form of payment.

5.3.4.   The method for submitting a claim and for receiving a distribution will be described and provided in the Notice Plan after consultation with the Settlement Administrator. Class Members will be required to prove eligibility by means reasonably resistant to fraud to be mutually agreed upon by the parties after consultation with the Settlement Administrator.

5.3.5.   To submit a claim, Class Members must provide to the Settlement Administrator at least (i) the Class Member's full name, address, email address, mobile telephone number(s) for the Class Member's device(s) used to access the App, and any and all TikTok user names used by the Class Member; (ii) an attestation confirming they meet the eligibility requirements to be a Class Member; (iii) information sufficient for the Settlement Administrator to make a distribution to the Class Member by the electronic means described in the Notice Plan (unless the Class Member opts for an alternative for of payment); and (iv) a statement under penalty of perjury that the Class Member has not submitted more than one claim and that the information they submit is correct.

5.3.6.   Class Members with valid claims who fail to provide sufficient or correct information or fail to submit a valid claim within the time period identified in the Notice Plan waive any right to any payment from the Settlement Fund.

5.3.7.   The Settlement Administrator shall review all claims to determine their validity. The Settlement Administrator may reject any claim that does not comply in any material respect with the instructions in the Notice Plan; is not submitted by a Class Member; is a duplicate of another claim; is reasonably suspected to be fraudulent; or is submitted after the deadline for claims. The decision of the Settlement Administrator shall be final as to the determination of a claim's validity.

5.3.8.   Late claims may be considered if deemed appropriate by the Settlement Administrator in consultation with Class Counsel, or if ordered by the Court.

5.3.9.   Claims of Class Members that are deemed valid will be paid out to Class Members by the Settlement Administrator beginning 14 days after the Effective Date, or as soon thereafter as is reasonably practical.

5.4.   Residue

5.4.1. Within one year plus 30 days after the date the Settlement Administrator distributes the first Settlement Fund Payments, any funds remaining in the Settlement Fund shall be redistributed on a pro rata basis to Settlement Class Members who previously received payment, to the extent feasible and practical in light of the costs of administering such subsequent payments, unless the amounts involved are too small to make individual distributions economically viable or other specific reasons exist that would make such further distributions impossible or unfair.

5.4.2. If the Settlement Administrator determines that any residue of the Settlement Fund cannot be distributed on a pro rata basis to Class Members who submitted a claim, the Court may determine an appropriate alternative plan for distribution of the residue.

5.4.3. All costs associated with the disposition of residual funds – whether through additional distributions to Settlement Class Members and/or through an alternative plan approved by the Court – shall be borne solely by the Settlement Fund.

6. **INJUNCTIVE RELIEF**

6.1. TikTok will not do the following unless disclosed expressly in its Privacy Policy and in compliance with all applicable laws (such as where applicable law requires express written consent):

6.1.1. Use the App to collect or store a user's biometric information or identifiers (as defined by applicable law);

6.1.2. Use the App to collect geolocation or GPS data;

6.1.3. Use the App to collect information in user's clipboards;

6.1.4. Use the App to transmit U.S. user data outside of the U.S.;

6.1.5. Store U.S. user data in databases outside of the U.S.; or

6.1.6. Pre-upload U.S. user-generated content.

6.2. TikTok will delete all pre-uploaded user-generated content collected from users who did not "save" or "post" the content.

6.3. TikTok will require newly designed training on compliance with data privacy laws and company procedures for all relevant incoming employees and contractors, and annual training thereafter.

6.4. TikTok will provide a written verification under oath of compliance with the foregoing within 90 days of the Effective Date.

7. **CONFIRMATORY DISCOVERY**

7.1. Warranty. TikTok warrants that it has not used the App to collect biometric identifiers or biometric information as defined by the Illinois Biometric Information Privacy Act and TikTok will provide the following confirmatory discovery to confirm this warranty, subject to the terms of a mutually-agreeable confidentiality agreement.

7.2. Source Code Inspection. As soon as possible and within 30 days after execution of the Settlement Agreement, TikTok will make the source code of the App available for inspection for a period of 30 days to a third-party expert retained by Class Counsel who has signed the required confidentiality agreement. Class Counsel and TikTok will meet and confer should the expert reasonably require additional time to review the source code.

7.3. Interrogatories. TikTok will respond under oath to a supplemental interrogatory designed to elicit an explanation of the function and purpose of up to 20 specific terms in the source code that the third-party expert believes in good faith to be potentially related to the collection of biometric data from users. The supplemental interrogatory must be in the following form: "Explain the function and purpose of the following terms in the source code of the App: [list of terms]." The parties will meet and confer as necessary to increase the number of terms that may be the subject of this interrogatory if the third-party expert discovers more than 20 terms that the expert reasonably believes in good faith are potentially related to the collection of biometric data from users.

7.4. Class Size. TikTok will provide verification of its internal data by sworn declaration regarding the number of persons in the Nationwide Class and Illinois Subclass.

7.5. Document Requests. TikTok will respond to document requests previously served by Plaintiff E.R. within 14 days after execution of the Settlement Agreement.

7.6. Depositions. TikTok will make available Fed. R. Civ. P. 30(b)(6) witness(es) for depositions by written question to verify the warranty that TikTok has not collected biometric identifiers or biometric information from users of the App.

7.7. Confidentiality. The responses to all confirmatory discovery may be designated for confidentiality protection under the Protective Order where applicable.

8. SUBMISSION FOR PRELIMINARY APPROVAL

8.1. As soon as the required confirmatory discovery has been completed, Class Counsel will submit to the Court a motion for an order conditionally certifying the Class, granting preliminary approval of this Agreement, approving Class Notice and the Notice Plan, setting a briefing schedule for a final approval hearing and a briefing schedule for a motion for an award of Attorneys' Fees and Costs and a Class Representative Incentive Award, and otherwise staying the Civil Actions, in a form mutually agreed to by the Parties and in compliance with all applicable laws, rules, and orders and local guidelines of the Court.

8.2. Class Counsel and TikTok will take any acts reasonably necessary to carry out this Agreement's expressed intent.

9. NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

9.1. The Parties shall agree to the Notice Plan before submission of this Agreement for preliminary approval. The specific text and content of the Notice Plan and Notice of Proposed Class Action Settlement will be mutually agreed upon by the Parties, subject to Court approval.

DocuSign Envelope ID: 8ED7697E-4477-423E-B159-E304505157C2

9.2.    The notice plan shall include the best notice practicable as recommended by a notice expert. TikTok shall provide information in its possession or control concerning contact information for the Class, to be used by the Settlement Administrator only.

9.3.    The Notice Plan shall include procedures for the handling, protection, security and use of Class Representatives and Class Members' personal data and information.

9.4.    Class Representatives will select the Settlement Administrator. Class Representatives will solicit multiple bids and will provide them to TikTok. TikTok will provide feedback and recommendations concerning the bids.

9.5.    All costs of settlement administration and the Notice Plan will come from the Settlement Fund.

9.6.    The Settlement Administrator shall use means to be agreed upon by the parties to detect and mitigate against fraudulent claims.

9.7.    Within 10 days after the filing of this Agreement with the Court, the Settlement Administrator shall notify the appropriate state and federal officials of this Agreement pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715. Within fifteen (15) days after the Notice Date, the Settlement Administrator shall provide declarations to the Court, with a copy to Class Counsel and Defense Counsel, attesting to the measures undertaken to provide notice as directed by CAFA.

## 10. CLASS MEMBERS' RIGHT OF EXCLUSION/INCLUSION

10.1.   A Class Member may request exclusion from the Class up until the Opt-Out and Objection Deadline. To request exclusion, the Class Member must complete, sign, and mail to the Settlement Administrator a Request for Exclusion, using a form to be agreed on by the Parties. The Request for Exclusion must be signed by the Class Member seeking exclusion under penalty of perjury. So-called "mass" or "class" opt-outs shall not be allowed. To be valid, a Request for Exclusion must be postmarked on or before the Opt-Out and Objection Deadline. Any Person who submits a valid and timely Request for Exclusion shall not be entitled to relief under, and shall not be affected by, this Agreement or any relief provided by this Agreement.  For a Request for Exclusion to be considered by the Court, it must set forth: (i) the name of the Action; (ii) the person's or entity's full name, address, email address and telephone number; (iii) a specific statement of the person's or entity's intention to be excluded from the Settlement; (iv) the identity of the person's or entity's counsel, if represented; and (v) the person's or entity's authorized representative's signature and the date on which the request was signed.

10.2.   The Parties shall have the right to challenge the timeliness and validity of any Request for Exclusion. The Court shall determine whether any contested exclusion request is valid.

10.3.   Within 10 days after the Opt-Out and Objection Deadline, the Settlement Administrator will provide the Parties a list of all Persons who opted out by validly requesting exclusion.

## 11. OBJECTIONS

11.1.   Only Class Members shall be eligible to make an objection to this Agreement.

11.2.   Any Class Member who does not submit a valid and timely Request for Exclusion may object to the fairness, reasonableness, or adequacy of this Agreement up until the Opt-Out and Objection Deadline. Class Members may not seek to exclude themselves from the Class and submit an objection to this Agreement. Any Class Member who both objects to this Agreement and opts-out will be deemed to have opted-out and the objection shall be deemed null and void.

11.3.   Any Class Member who wishes to object to any aspect of this Agreement must send to the Settlement Administrator, Class Counsel, and TikTok's counsel, and file with the Court, a written statement of the objection(s) which must include: (i) the name of the Action and a description of the objection(s), including any evidence and applicable legal authority and any supporting evidence the objector wishes to introduce; (ii) the objector's full name, address, email address, telephone number, mobile telephone number(s) for the Class Member's device(s) used to access the App, and any and all TikTok user names used; (iii) whether the objection applies only to the objector, a specific subset of the Settlement Class, or the entire Settlement Class; (iv) the identity of all counsel who represent the objector, including former or current counsel who may be entitled to compensation for any reason related to the objection, along with a statement of the number of times in which that counsel has objected to a class action settlement within five years preceding the submission of the objection, the caption of the case for each prior objection, and a copy of any relevant orders addressing the objection; (v) all agreements that relate to the objection or the process of objecting, between the objector or objector's counsel and any other person or entity; (vi) the objector (and the objector's attorney's) signature on the written objection; and (vii) a declaration under penalty of perjury that the information provided by the objector and objector's counsel is true and correct.

11.4.   Objectors who fail to timely file and serve written objections shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to this Settlement.

11.5.   Class Members may raise an objection either on their own or through an attorney hired at their own expense. If a Class Member hires an attorney other than Class Counsel to represent him or her, the attorney must (i) file a notice of appearance with the Court no later than the Opt-Out and Objection Deadline, and (ii) deliver a copy of the notice of appearance on Class Counsel and TikTok's counsel, no later than the Opt-Out and Objection Deadline. Class Members, or their attorneys, intending to make an appearance at any hearing relating to this Agreement, including the Final Approval Hearing, must deliver to Class Counsel and TikTok's counsel, and file with the Court, no later than 21 days before the date of the hearing at which they plan to appear, or as the Court otherwise may direct, a notice of their intention to appear at that hearing.

11.6.   Any Class Member who fails to comply with the provisions of the preceding subsections shall waive and forfeit any and all rights he or she may have to appear separately and/or object, and shall be bound by all the terms of this Agreement.

11.7.   Any issue not raised with sufficient particularity to give fair notice of the basis for the objection by the Opt-Out and Objection Deadline is waived. Class Members who file an objection may not file any other briefing or similar documents relating to their objection or settlement approval without first obtaining leave of court through a noticed motion.

11.8.  Any Class Member who files an appeal of the Final Order and Judgment shall post a bond in an amount to be determined by the Court.

## 12. RELEASES; EXCLUSIVE REMEDY; DISMISSAL OF ACTIONS

12.1.  Upon entry of the Final Order and Judgment, and regardless of whether any Class Member executes and delivers a written release, each Class Representative and each Class Member shall be deemed to waive, release and forever discharge Defendants' Released Parties from all Released Claims. No Defendants' Released Party will be subject to any liability or expense of any kind to any Plaintiffs' Releasing Party with respect to any Released Claim.

12.2.  Upon entry of the Final Order and Judgment, the Plaintiffs' Releasing Parties and Defendants' Releasing Parties will be deemed to have, and will have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

12.3.  Upon entry of the Final Order and Judgment, the Plaintiffs' Releasing Parties and Defendants' Releasing Parties will be deemed to have, and will have, waived any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, or the law of any jurisdiction outside of the United States, which is similar, comparable or equivalent to Section 1542 of the California Civil Code, except those Claims that are not releasable under the law or any claims or defenses arising from enforcement of this Agreement.  Plaintiffs' Releasing Parties acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of this release, but that it is their intention to finally and forever settle and release the Released Claims, notwithstanding any unknown claims they may have.

12.4.  This Agreement shall be the sole and exclusive remedy for any and all Released Claims. Upon entry of the Final Order and Judgment, each Plaintiffs' Releasing Party shall be barred from initiating, asserting, or prosecuting any Released Claims against the Defendants' Released Parties. Defendants' Releasing Parties shall be barred from initiating, asserting, or prosecuting any liabilities, claims or causes as set forth in ¶12.5.

12.5.  Upon entry of the Final Order and Judgment, Defendants' Releasing Parties shall be deemed to waive, release and forever discharge Plaintiffs' Released Parties from and for any and all liabilities, claims, cross-claims, causes of action, rights, actions, suits, debts, liens, contracts, agreements, damages, costs, attorneys' fees, losses, expenses, obligations, or demands of any kind whatsoever, whether known or unknown, existing or potential, or suspected or unsuspected, whether raised by claim, counterclaim, setoff, or otherwise, including any known or unknown claims, which they have or may claim now or in the future to have, relating to the institution, prosecution, or settlement of the Civil Action, except for claims relating to the enforcement of the Settlement or this Agreement, and for the submission of false or fraudulent claims for Settlement benefits.

DocuSign Envelope ID: 8ED7697E-4477-425E-B159-F304505157C2

12.6.    Upon entry of Final Order and Judgment, the Civil Actions shall be dismissed with prejudice.

## 13. CLASS COUNSEL FEES AND COSTS AND INCENTIVE AWARDS

13.1.    Class Counsel may apply to the Court seeking a reasonable portion of the Settlement Fund as payment of any reasonable attorneys' fees and costs (the Fee Award) and any Incentive Awards in recognition of the Class Representatives' efforts on behalf of the Class for their time and effort expended in serving the Class.

13.2.    Class Counsel intend to file a motion for Court approval of Incentive Awards to Class Representatives to be paid from the Settlement Fund, up to $2,500.00 each. Should the Court award less than this amount, the difference in the amount sought and the amount ultimately awarded shall remain in the Settlement Fund.

13.3.    This Agreement contains no rights and restrictions regarding Class Counsel's application for a Fee Award beyond the right to apply to the Court for a reasonable Fee Award.

13.4.    It is not a condition of this Agreement that any particular amount of attorneys' fees, costs or expenses or incentive awards be approved by the Court, or that such fees, costs, expenses or awards be approved at all. Any order or proceeding relating to the amount of any award of attorneys' fees, costs, or expenses or inventive awards, or any appeal from any order relating thereto, or reversal or modification thereof, shall not operate to modify, terminate or cancel this Agreement, or affect or delay the finality of the Final Order and Judgment, except that any modification, order or judgment cannot result in TikTok's overall obligation exceeding the agreed-upon amount of the Settlement Fund.

13.5.    Except as otherwise provided in this section, each Party will bear its own costs, including attorneys' fees, incurred in connection with the Civil Actions.

## 14. TERMINATION OF THE AGREEMENT

14.1.    The performance of this Agreement is expressly contingent upon achieving the Effective Date. This includes both (i) the entry of the Preliminary Approval Order approving this Agreement, including the Notice Plan, and (ii) the Final Order and Judgment approving this Agreement and the expiration of all appeal periods and appeal rights without modification to the Final Order and Judgment that any Party deems material. If the Court fails to issue either (1) the Preliminary Approval Order or (2) the Final Order and Judgment approving this Agreement without modification that any Party deems material following conclusion of the Final Approval Hearing, this Agreement will be deemed terminated unless otherwise mutually agreed by the Parties.

14.2.    If the Final Order and Judgment is vacated or reversed by a reviewing court in whole or in part in any manner that prohibits subsequent approval of the Agreement without material modification, this Agreement will be deemed terminated (except with respect to rulings on any Fee Award), unless all Parties who are adversely affected thereby, in their sole discretion within thirty (30) days of receipt of such ruling, provide written notice to all other Parties of their intent to proceed with this Agreement as modified.

14.3.    If this Agreement is deemed terminated by refusal of the Court to approve or affirm approval of the Agreement, it will have no force or effect whatsoever, shall be null

14

DocuSign Envelope ID: 8ED7697E-4477-425E-B158-F304505157C2

and void, and will not be admissible as evidence for any purpose in any pending or future litigation in any jurisdiction.

14.4. The performance of this Agreement is expressly contingent upon the terms and execution thereof being compliant with applicable law and government orders. Should any party's performance be in conflict with applicable law or government orders, the Parties will negotiate in good faith to modify the Agreement to avoid the conflict prior to termination of the Settlement.

## 15. CONFIDENTIALITY

15.1. Other than as necessary to comply with legal processes and federal and state tax and securities laws or with the terms of this Agreement or unless otherwise agreed and/or pursuant to Court Order, the Parties will maintain the confidentiality of all terms of the Settlement until the Settlement is presented to the Court for preliminary approval.

15.2. Unless required by Court Order, the Parties and their counsel will not disclose the terms of the Agreement to any other parties or counsel in the Civil Actions without written agreement from all Parties hereto until the Settlement is presented to the Court for preliminary approval.

15.3. Unless and until all Parties execute this Agreement and present it to the Court in a motion seeking the Preliminary Approval Order, unless required by Court Order, or unless otherwise agreed, the Parties agree that all terms of this Agreement will remain confidential and subject to Federal Rule of Evidence 408.

## 16. ENFORCEMENT OF THE AGREEMENT

16.1. The Court will retain jurisdiction to enforce the terms of this Agreement, and all Parties hereto submit to the jurisdiction of the Court for and only for purposes of implementing and enforcing the settlement embodied in this Agreement. As part of its continuing jurisdiction, the Court may amend, modify or clarify orders issued in connection with this settlement upon good cause shown by a party. No other court or tribunal will have any jurisdiction over claims or causes of action arising under this Agreement.

16.2. This Agreement will be governed by and construed in accordance with the internal laws of the State of California without regard to conflicts of law principles that would direct the application of the laws of another jurisdiction.

16.3. The prevailing party in any action or proceeding in which is asserted a claim or cause of action for breach of this Agreement will be entitled to recover all reasonable costs and attorneys' fees incurred in connection with the action or proceeding.

16.4. The release in this Agreement may be enforced by any of the Defendants' Released Parties.

## 17. MISCELLANEOUS

17.1. This Agreement, including all attached exhibits, shall constitute the entire agreement among the Parties (and covering the Parties and the Class) with regard to the subject matter of this Agreement and shall supersede any previous agreements and understandings between the Parties.

17.2. This Agreement may not be changed, modified or amended except in writing signed by Class Counsel and TikTok's counsel, subject to Court approval if required.

17.3. Each Party represents and warrants that it enters into this Agreement of that Party's own free will. Each Party is relying solely on its own judgment and knowledge and is not relying on any representation made by any other Party or any other Party's agents or attorneys concerning the subject matter, basis, or effect of this Agreement.

17.4. This Agreement has been negotiated at arm's length by Class Counsel and TikTok's counsel with the assistance of Hon. Layn Phillips (Ret.). In the event of any dispute arising out of this Agreement, or in any proceeding to enforce any of the terms of this Agreement, no Party shall be deemed to be the drafter of this Agreement or of any particular provision or provisions, and no part of this Agreement shall be construed against any Party on the basis of that Party's identity as the drafter of any part of this Agreement.

17.5. The Parties agree to cooperate in good faith fully and to take all additional action that may be necessary or appropriate to give full force and effect to the basic terms and intent of this Agreement.

17.6. This Agreement shall be binding upon and inure to the benefit of all the Parties and Class Members, and their respective representatives, heirs, successors, and assigns.

17.7. The headings of the sections of this Agreement are included for convenience only and shall not be deemed to constitute part of this Agreement or to affect its construction.

17.8. The Parties have cooperated in the drafting and preparation of this Agreement. This Agreement will not be construed against any party on the basis that the party was the drafter or participated in the drafting.

17.9. Prior to pursuing relief or submitting any dispute relating to this Agreement or the Civil Actions to the Court, the Parties and Class Counsel agree to mediate the dispute before Hon. Layn Phillips (Ret.) in Palo Alto, California.

17.10. Any notice, instruction, court filing, or other document to be given by any Party to any other Party shall be in writing and delivered personally or sent by registered or certified mail, postage prepaid, or overnight delivery service to the respective representatives identified below or to other recipients as the Court may specify. As of the date of this Agreement, these respective representatives are as follows:

For the Class:

Katrina Carroll
CARLSON LYNCH LLP
111 West Washington Street,
Suite 1240
Chicago, Illinois 60602
kcarroll@carlsonlynch.com

Jonathan M. Jagher
FREED KANNER LONDON &
MILLEN LLC
923 Fayette Street
Conshohocken, PA 19428
jjagher@fklmlaw.com

For TikTok:

Anthony J Weibell
WILSON SONSINI GOODRICH &
ROSATI, P.C.
650 Page Mill Road
Palo Alto, CA 94304-1050
aweibell@wsgr.com

17.11.  The Parties each represent and warrant that they have not sold, assigned, transferred, conveyed, subrogated, or otherwise disposed of any claim or demand covered by this Agreement. If a Class Member has sold, assigned, transferred, conveyed, subrogated or otherwise disposed of any claim or demand, the Person that acquired such claim or demand is bound by the terms of this Agreement to the same extent as the Class Member would have been but for the sale, assignment, transfer, conveyance, or other disposition.

17.12.  The respective signatories to this Agreement each represent that they are fully authorized to enter into this Agreement on behalf of the respective Parties.

17.13.  The waiver by one Party of any breach of this Agreement by any other Party will not be deemed as a waiver of any other prior or subsequent breaches of this Agreement.

17.14.  Any Exhibits to this Agreement are material and integral parts thereof and are fully incorporated herein by this reference.

17.15.  This Agreement may be executed in one or more counterparts, and may be executed by facsimile or electronic signature. All executed counterparts and each of them will be deemed to be one and the same instrument.

17.16.  This Agreement will be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto and the Defendants' Released Parties and Plaintiffs' Released Parties.

[SIGNATURES ON FOLLOWING PAGE]

DocuSign Envelope ID: 8ED7697E-4477-422F-B159-E304505157C2

THIS SETTLEMENT AGREEMENT AND RELEASE IS AGREED TO AND APPROVED BY:

<u>Class Counsel on behalf of below referenced Class Representatives</u>

*Katrina Carroll*
Date: 9/4/2020
Katrina Carroll
CARLSON LYNCH, LLP
On Behalf of E.R., a minor, and E.R.'s Guardian, L.H.

*Jonathan Jagher*
Date: 9/4/2020
Jonathan M. Jagher
FREED KANNER LONDON & MILLEN LLC
On Behalf of D.M., a minor, and D.M.'s Guardian, D.H.

*Robert Foote*
Date: 9/4/2020
Robert M. Foote
FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC
On Behalf of Morgan Kukovec

*Tiffany Yiatras*
Date: 9/4/2020
Tiffany M. Yiatras
CONSUMER PROTECTION LEGAL, LLC
On Behalf of A.S., a minor, and A.S.'s Guardian, A.S.

*T Wolfson*
Date: 9/4/2020
Tina Wolfson
AHDOOT & WOLFSON, PC.
On Behalf of S.A., a minor, and S.A.'s Guardian, Maritza A.

*Michael Gervais*
Date: 9/4/2020
Michael Gervais
SUSMAN GODFREY L.L.P.
On Behalf of C.H., a minor, and C.H.'s Guardian, Marc Halpin

*Joseph Guglielmo*
Date: 9/4/2020
Joseph P. Guglielmo
SCOTT+SCOTT ATTORNEYS AT LAW LLP
On Behalf of G.R., a minor, and G.R.'s Guardian, Mayra De La Cruz

**<u>TikTok</u>**

DocuSigned by:

Vanessa Pappas

DA74A6BABC754A1...

9/3/2020

_____          _____

Vanessa Pappas                                           Date
TIKTOK, INC.
Interim Head of TikTok Global

## ADDENDUM NO. 1 TO SETTLEMENT AGREEMENT AND RELEASE

1. PURPOSE

    1.1. This Addendum No. 1 to Settlement Agreement and Release is intended only to clarify and not to modify the class action Settlement Agreement and Release ("Agreement") executed September 4, 2020 by certain parties in the civil action captioned *In Re: TikTok, Inc., Consumer Privacy Litigation*, MDL No. 2948. The clarifications herein represent the intent of the signatories to the Agreement at the time of execution of the Agreement.

2. CLARIFICATION OF DEFINITIONS

    2.1. "App" means the TikTok video-sharing application (or its Musical.ly predecessor) distributed in the U.S., including its device-side and server-side operations.

    2.2. "Class Counsel" means the plaintiffs' attorneys who have signed the Agreement and/or this Addendum as Class Counsel up until such time as the Court appoints counsel to represent the Class in its preliminary approval of the Settlement; and following such appointment, "Class Counsel" shall mean the counsel so appointed by the Court.

    2.3. "Class Representatives" means those individuals who are proposed as Class Representatives by Class Counsel in their motion for preliminary approval of the Settlement.

    2.4. "Pre-Upload(ed) User-Generated Content" means videos created with the App that are uploaded to TikTok's servers prior to the user selecting whether to "save" or "post" the content and where no such selection was subsequently made by the user.

    2.5. "TikTok" means TikTok Inc., acting on behalf of Defendants' Released Parties, and its successors or assigns of the rights and obligations of TikTok under this Agreement, including any entity that acquires TikTok's obligations under this Agreement through merger or acquisition. With respect to the Injunctive Relief in Section 6 of the Agreement, "TikTok" means any of Defendants' Released Parties to the extent they are engaged in the operation of the App or involved in receiving or accessing user data obtained through the App.

3. CLARIFICATION OF PLAN OF ALLOCATION

    3.1. The method for determining the allocation of benefits to Illinois Subclass Members described in section 5.3.2 of the Agreement is entirely within the discretion of Class Counsel and may, at Class Counsel's discretion, be determined with or without mediation between counsel for Class Members so long as the interests of the Nationwide Class and the Illinois Subclass are both adequately represented in the determination.

4. CLARIFICATION OF INJUNCTIVE RELIEF

    4.1. As part of the conduct listed in Section 6.1 of the Agreement, TikTok will not do the following unless disclosed in its Privacy Policy and in compliance with all applicable laws (such as where applicable law requires express written consent):

DocuSign Envelope ID: 5ECD3BF2-218C-40A9-91B7-0F92AF1ABF86

4.1.1. Disclose to any third party the "personally identifiable information" of a "consumer" who uses the App, as those terms are defined by the Video Privacy Protection Act (18 U.S.C. § 2710), except to the extent such disclosure is not prohibited by the Video Privacy Protection Act.

4.1.2. Share user data collected through the App with third parties without disclosing in its Privacy Policy the categories of third parties with whom user data is shared.

4.2. The Parties jointly reviewed multiple categories of user data potentially in TikTok's possession that should be deleted from TikTok's servers consistent with the intent of the injunctive relief in Section 6 of the Agreement. Following confirmation from TikTok as to what categories existed and should be deleted, TikTok has agreed to delete any Pre-Uploaded User-Generated Content, as identified in Section 6.2 of the Agreement.

4.3. Pursuant to Section 6.3 of the Agreement, TikTok will, at its own expense, hire a third party to review the data privacy law compliance training for a period of three years and to provide a written verification of this review along with the verification required by Section 6.4 of the Agreement to Class Counsel.

5. CLARIFICATION OF TIKTOK'S WARRANTY REGARDING BIOMETRIC DATA

5.1. The warranty in Section 7.1 of the Agreement is not intended to cover features and operations of the App that are not used to identify an individual, such as image landmarking operations used for special effects and demographic classification, speech-to-text operations used to generate text of words spoken in a video, and similar non-identifying operations. The warranty is only meant to cover the use of the App to collect biometric data to identify individual App users—whether that biometric data is collected directly upon being uploaded to TikTok's servers through the App or whether that biometric data is later collected after being extracted from other user content that has been uploaded through the App to TikTok's servers.

APPROVED BY:

*For Class Counsel and the Class Representatives:*

Katrina Carroll
Date: 2/16/2021
Katrina Carroll
CARLSON LYNCH, LLP

Elizabeth Fegan
Date: 2/16/2021
Elizabeth A. Fegan
FEGAN SCOTT LLC

Ekwan Rhow
Date: 2/17/2021
Ekwan Rhow
BIRD, MARELLA, BOXER, WOLPERT,
NESSIM, DROOKS, LINCENBERG & RHOW, P.C.

*For TikTok:*

_____

Anthony Weibell

WILSON SONSINI GOODRICH & ROSATI, P.C.

Date: 2/16/2021
     _____