IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: TIKTOK, INC., CONSUMER PRIVACY LITIGATION, <br><br> This Document Relates to All Cases | MDL No. 2948 <br><br> Master Docket No. 20-cv-4699 <br><br> Judge John Z. Lee <br><br> Magistrate Judge Sunil R. Harjani |

## DECLARATION OF JONATHAN ROTTER
## IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

I, Jonathan Rotter, under oath, declare:

1. I am a partner with the law firm of Glancy Prongay & Murray LLP. I submit this declaration in support of Plaintiffs' motion for preliminary approval of the proposed class action settlement, and specifically, the allocation therein between the Nationwide Class and Illinois Subclass, which allocation is the subject of this declaration. I submit this declaration based on personal knowledge, and if called to do so, could testify to the matters contained herein.

2. I was asked by Lead Counsel to serve as counsel for the Nationwide Class as that Class is defined in the Settlement Agreement for purposes of representing the interests of the Nationwide Class in connection with the proposed settlement that is the subject of this Motion for Preliminary Approval. Specifically, Lead Counsel requested that I negotiate on behalf of the Nationwide Class opposite counsel for the Illinois Subclass, James Zouras, concerning the allocation of the Settlement Fund between claimants who are part of the Nationwide Class or the Illinois Subclass, respectively. In this capacity, I was instructed to, and did, ensure that the allocation of the Settlement Fund was fair to the members of the Nationwide Class. I was qualified to perform this task by virtue both of my background and the role I have played

throughout this litigation.

3. I have been practicing law or clerking for federal judges since my graduation, with honors, from Harvard Law School in 2004, where I served as an editor of the Harvard Journal of Law and Technology and was a Fellow in Law and Economics at the John M. Olin Center for Law, Economics, and Business, and a Fellow in Justice, Welfare, and Economics at the Harvard University Weatherhead Center for International Affairs. My practice has been concentrated in complex cases and technology, and I served as the first law clerk for the Patent Pilot Program for the United States District Court for the Central District of California. I also clerked on the United States Court of Appeals for the Ninth Circuit.

4. I was one of the principal lawyers who researched, prepared, filed, and prosecuted the first of the cases that comprise this Multi-District Litigation, *Hong v. ByteDance, Inc.*, No. 5:19-cv-07792 (N.D. Cal.), which sought to certify a nationwide class. I, and my colleagues at Glancy Prongay & Murray who have worked on this case, both generally and specifically on the instant question of allocation, specialize in class action litigation. My colleagues and I have served as lead counsel, co-lead counsel, or as a member of the leadership team in numerous class actions in state and federal courts throughout the country, and have developed allocation plans for class action settlement funds. I am familiar with the standards governing judicial approval of class action settlements, including allocation plans.

5. My work developing this case included the technical investigation of the operation of the TikTok app and defendants' servers, as well as the legal analysis for all claims. Together with co-counsel, I and my colleagues at Glancy Prongay & Murray conducted the factual investigation, including investigative work in the United States and China, directed and reviewed the work of technical experts, developed the legal theories, and drafted the complaint

2

and amended complaints. Given my role developing and litigating the case, I am intimately familiar with the procedural history of the litigation and claims and defenses common to all class members, as well as the interests of the respective Class and Subclass. In addition to the large amount of work product with which I was already familiar, Lead Counsel provided me with copies of the original Settlement Agreement, the addendum thereto, and extensive confidential work product addressing issues in the litigation, including attorney research on the strength and weaknesses of the Plaintiffs' claims, as well as the settlement values in comparable privacy cases.

6. In addition, I and my colleagues at the firm independently researched relevant caselaw and settlement values in cases raising various causes of action asserted here. We had done so prior to the first mediation held in the *Hong* matter in February 2020, and we updated that research in connection with this assignment. We also discussed internally the various considerations bearing on settlement valuation and allocation.

7. Prepared with our own prior extensive work in the case and research conducted expressly for this purpose, we then engaged in discussions and settlement allocation negotiations with counsel for the Illinois Subclass. I met via Zoom and telephone with Mr. Zouras, counsel for the Illinois Subclass, on at least ten occasions over the period of December 28, 2020, through February 18, 2021, during which we discussed and debated the relative value of the asserted claims in light of the facts of this case and outcomes in other cases. We debated, *inter alia*, the nature of the factual allegations, the relative ease or difficulty in proving each claim, including consideration of procedural defenses available to the defendants, and the damages, statutory and otherwise, available based on the claims. These discussions and negotiations were vigorous and frank. Between those sessions, I and my colleagues conducted additional analysis to ensure that

we took into account points raised by counsel for the Illinois Subclass and that we had gathered and articulated all points and counterpoints relevant to the position of the Nationwide Class.

8. Accordingly, the process employed to reach agreement on the allocation of the Settlement Fund was informed, fair and impartial. I zealously represented the interests of the Nationwide Class concerning the allocation, and Mr. Zouras, counsel for the Illinois Subclass, certainly did likewise on behalf of his clients. The result we reached was a true compromise between two strongly articulated views about the proper allocation.

9. As a result of this process, we reached agreement with counsel for the Illinois Subclass as to the allocation as follows: each member of the Illinois Subclass shall be entitled to a pro rata claim that is six times the amount of the pro rata claim to which each member of only the Nationwide Class is entitled. In other words, each member of the Illinois Subclass will receive $6 for each $1 received by each member of the Nationwide Class who is not a member of the Illinois Subclass.

10. Based on my and my colleagues' extensive knowledge of the facts and circumstances of this case, the relative value of the claims, and experience developing claim methodologies and allocation plans in class actions, I believe the allocation we negotiated as between the Subclasses is fair to the members of the Nationwide Class.

I declare that the foregoing is true and correct.

Dated: February 23, 2021

>*/s/ Jonathan Rotter*
>Jonathan Rotter
>Glancy Prongay & Murray LLP
>1925 Century Park East, Suite 2100
>Los Angeles, California 90035
>(310) 201-9150