# EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


T.K., THROUGH HER MOTHER, SHERRI          )
LESHORE, AND A.S., THROUGH HER            )
MOTHER, LAURA LOPEZ,                      )
individually and on behalf of            )    No. 19 CV 7915
all others similarly situated,           )
                                         )    Chicago, Illinois
            Plaintiffs,                   )    August 4, 2020
                                         )    11:00 o'clock a.m.
       -vs-                               )
                                         )
BYTEDANCE TECHNOLOGY CO., LTD.,           )
MUSICAL.LY, INC., MUSICAL.LY THE          )
CAYMAN ISLANDS CORPORATION, AND           )
TIKTOK, INC.,                             )
                                         )
            Defendants.                   )


         TRANSCRIPT OF TELEPHONIC PROCEEDINGS - Motion
            BEFORE THE HONORABLE JOHN R. BLAKEY

APPEARANCES:

For the Plaintiffs:      MASON LIETZ & KLINGER LLP
                         BY:  MR. GARY M. KLINGER
                         227 West Monroe Street
                         Suite 2100
                         Chicago, Illinois  60606


For the Plaintiffs:      MASON LIETZ & KLINGER LLP
                         BY:  MR. DAVID K. LIETZ
                             MR. GARY E. MASON
                         5101 Wisconsin Avenue NW
                         Suite 305
                         Washington, DC  20016



             LAURA LACIEN, CSR, RMR, FCRR, CRR
                  OFFICIAL COURT REPORTER
                219 South Dearborn Street
                       Room 1212
                Chicago, Illinois  60604
                    (312) 408-5032

APPEARANCES:   (Cont'd)


For the Defendants:          WILSON SONSINI GOODRICH & ROSATI PC
                             BY:  MR. ANTHONY J. WEIBELL
                                  MR. RYAN S. BENYAMIN
                             650 Page Mill Road
                             Palo Alto, California  94304


For the Defendants:          MANDELL MENKES LLC
                             BY:  MR. STEVEN P. MANDELL
                             One North Franklin
                             Suite 3600
                             Chicago, Illinois  60606


For the Intervenor:          LOEVY & LOEVY
I                            BY:  MR. SCOTT R. DRURY
                             311 North Aberdeen
                             3rd Floor
                             Chicago, Illinois  60607

1          Your Honor, this case is about the collection,

2     disclosure, and distribution of Personally Identifiable

3     Information.  That is made clear in multiple filings and,

4     most importantly, it's made clear in the complaint and the

5     various claims that are asserted in the complaint.  The

6     parties, plaintiffs and defendants, brought before your Honor

7     a proposed settlement -- it's a preliminary approval -- which

8     your Honor -- which your Honor granted back in December.

9     After seeing the proposed settlement, Objector timely filed

10    numerous objections because the settlement does not meet the

11    standards of being fair, reasonable, and adequate.  Your

12    Honor, one just needs to look at the facts and figures of

13    this settlement to see why it does not meet those standards

14    by any stretch of the imagination.

15          As the plaintiffs stated in their complaint, the

16    goal of this complaint was to make six million child victims

17    who had their personal information collect -- surreptitiously

18    collected and distributed to make them whole.  That's at

19    Docket 1, Paragraph 57 of the complaint.  After

20    issuing -- after reaching the settlement and distributing the

21    class notice, only 90,953 payable claims were submitted by

22    members of this -- by the six million members of the class;

23    and specifically the six million seventy thousand members of

24    the class.  That's a paltry 1.5 percent of the class that

25    submitted claims which as the Seventh Circuit found in *Redman*

1    indicates that indifference and rejection of the settlement.

2         But more importantly than the small amount of

3    claims, your Honor, is that 59 percent of the settlement

4    fund, the $1.1 million settlement fund, 59 percent of that --

5    exactly $649,082.50 -- go to the three lawyers for the

6    plaintiffs' counsel, one administrator, and the two class

7    representatives leaving only 41 percent to go to the six

8    million child victims.  On a pro rata basis, that's seven

9    cents per victim, your Honor.  If we look at it just on

10   the -- with the claimants, that's just $5 per claim -- per

11   claimant.

12        The settlement doesn't provide for any injunctive

13   relief.  It doesn't require the deletion of all the

14   information of all of the children under 13 whose data the

15   defendant has collected.  It doesn't require the defendant to

16   claw back the data that it improperly collected and disclosed

17   and it doesn't even require the defendant to disclose who it

18   gave the data to.

19        Now the plaintiffs and the defendants have

20   indicated that the settlement -- injunctive relief is not

21   appropriate in this case because there's a different

22   injunction that has been entered by the FTC.  And, your

23   Honor, I want to make clear that the Objector in no way is

24   trying to assert the claims of the FTC.  We're not trying to

25   enforce the FTC settlement.  But the fact is, is that there

1  is a gap in the injunctive relief that the FTC settlement

2  reached that could be part of this settlement that would

3  provide these six million victims the relief they need to be

4  made whole.  And as the Objector -- as the plaintiffs cited

11:34AM  5  in one of their cases, in *Fraley*, a settlement allows for any

6  relief the parties want so certainly there could be

7  injunctive relief in this case.

8          And as I'll address a little bit later, there is

9  other litigation going on related to TikTok in front of Judge

11:34AM  10  Lee that is set for a settlement conference.  And in that

11  case, the defendant who is represented by the same counsel

12  has represented to Judge Lee that they intend to offer

13  injunctive relief at that settlement conference directly in

14  contradiction to what they're telling you in their briefs

11:34AM  15  here.

16          So just again, from the facts and figures, this

17  settlement is not fair, reasonable, or adequate.  When we

18  look at it under the factors of Federal Rule of Civil

19  Procedure 23(e)(2), we can see that the claim -- that the

11:34AM  20  relief is not adequate.  The alleged claims that the

21  plaintiffs make in their complaint are strong despite the

22  fact that they now try to downplay their own claims; and

23  they're worth well in excess of the $1.1 million settlement

24  fund.

11:35AM  25          They bring claims under the Video Privacy

1    Protection Act which allow --

2              COURT REPORTER:  I'm sorry.

3              THE COURT:  Counsel, try that again.

4              MR. DRURY:  Yes, your Honor.

5              THE COURT:  Louder and slower.

6              MR. DRURY:  Okay.  They bring claims -- the

7    plaintiffs bring claims, your Honor, under the Video Privacy

8    Protection Act which allow for statutory damages of $2,500

9    per violation.  The requisite elements under the Video

10   Privacy Protection Act is that the defendant is a video

11   service provider, which it clearly is, that the plaintiffs

12   are subscribers, which they clearly are by registering and

13   signing up for this service, and that the information is

14   Personally Identifiable Information, which it is.

15             The information at issue here, your Honor, are

16   first and last names, biographical information, pictures,

17   videos, user names.  And as we cited in our reply brief in *In*

18   *re Vizio*, the courts have found that conduct almost identical

19   to the conduct here is a violation of the Video Privacy

20   Protection Act so that is a very strong claim.

21             The common law privacy claims, intrusion upon

22   seclusion, and under the California constitution are also

23   very strong claims.  There certainly is an expectation of

24   privacy that children have and parents of children have in

25   their child's viewing habits and it's been found in the case

1    that we cited *Kiloo v. McDonald* -- the *Kiloo* case that

2    the -- the conduct of taking children's data is highly

3    offensive.  Here the conduct was luring kids to using a video

4    app while claiming that they weren't trying to -- while

11:36AM    5    claiming that this app was not directed at children in direct

6    violation of a federal statute that did not allow them to do

7    this.

8          The remaining claims under the Consumer Legal

9    Remedies Act under California law and the Illinois Consumer

11:37AM    10    Fraud and Deceptive Business Practices Act are equally

11    strong.  As here, the defendants engaged in -- engaged in

12    deceptive practices again in luring children into signing up

13    and registering for this service and using this sort of

14    service while knowing that they were going to be collecting

11:37AM    15    their data, distributing their data and not giving them

16    any -- without any consent.

17          Your Honor, if the Court were just to look at the

18    91,000 victims that submitted claims in this case under the

19    Video Privacy Protection Act and say that there was a single

11:37AM    20    violation for just each one of those victims, which again is

21    only 1.5 percent of the class, the total value of those

22    claims is $225 million.  Under the California Consumer Legal

23    Remedies Act, there's $1,000 per violation statutory damages

24    clause.  Again, looking at that with just the 90,000 or so

11:38AM    25    victims that submitted claims, that would equal $90 million.

13

 1    This does not even get into the punitive damages award that a
 2    jury would likely give in this case given the fact that the
 3    defendant engaged in this conduct both before and after a
 4    federal injunction was entered preventing them from doing
11:38AM  5    this and the fact that the defendants have not been deterred
 6    by a -- deterred by a $5.7 million penalty that was entered
 7    against them.
 8         On the other side when looking at the defenses to
 9    these claims, they're very weak, Judge.  The defendants claim
11:38AM 10    that these claims are subject to arbitration; but under both
11    California and Illinois law, a minor can disaffirm any
12    agreement even past the age of 18.  And under those laws, a
13    plaintiff or a child can disaffirm that contract even if
14    they've received some benefits from the contract.
11:39AM 15         The other claim that the defendant largely relies
16    on is preemption.  They say that the claims are preempted
17    under the Children's Online Privacy Protection Act, COPPA,
18    but COPPA doesn't preempt federal claims and Count One of
19    this complaint is a federal claim under the Video Privacy
11:39AM 20    Protection Act.  But even looking at the state claims, those
21    claims are not premised on the collection of data without
22    parental consent.  They're just premised on the fact that the
23    defendants collected this data without consent at all so
24    they're outside of the COPPA rule.
11:39AM 25         And to the extent that the Court were to find that

4

1   they're not wholly outside of the COPPA rule, the claims are

2   consistent with COPPA because the liability that they're

3   claiming is based on the defendant's actual knowledge that

4   kids are using the app, which is wholly consistent with

11:39AM   5   COPPA.  And again for that, your Honor, we cited the *New*

6   *Mexico versus Tiny Lab* case which found to be the same

7   finding.

8           COURT REPORTER:  I'm sorry.

9           THE COURT:  Go ahead, counsel.  If you could repeat

11:40AM   10   that last statement.  Go ahead.

11           MR. DRURY:  We cited -- your Honor, we cited to the

12   case *New Mexico versus Tiny Lab* which is a case that asserts

13   claims on behalf of child victims and on behalf of -- against

14   advertisers and app makers that were collecting child data

11:40AM   15   and there was a claim by the defendant in that case -- and I

16   believe defense counsel is one of the lawyers in that case.

17   There was a claim by them that COPPA preempted the case and

18   the federal judge in New Mexico found that that is not the

19   case, that COPPA did not preempt those claims.

11:40AM   20           There's also a case pending, your Honor, in the --

21   (telephone interruption) and to COPPA claims brought by on

22   behalf of children.  And, your Honor, we've cited that case

23   and that's the -- I believe it's the *Kiloo* case but I can get

24   your Honor and the Court the exact cite after the hearing if

11:41AM   25   it needs it.  But in that case, the Court has also allowed

15

1    the case to go on beyond a motion to dismiss.  So this case

2    is not preempted by COPPA, which is the main defense.

3           The defendants also argue that this case is not a

4    good case for class action because there's not common

5    questions of law in fact.  But, your Honor, there's many

6    common questions of law in fact in this case that make it

7    ideal for a class action and certainly at this early stage,

8    that is not sufficient to determine that this case should

9    settle, not even for pennies on the dollar, your Honor, but

10   it seems like half pennies on the dollar.

11          Furthermore, your Honor, there's no support for

12   this settlement.  As I said, there's a 1.5 percent claim rate

13   which the Seventh Circuit has found indicates indifference

14   and rejection of the settlement.  And even if the Court were

15   to look at the low opt-out rate which the plaintiffs and

16   defendants cite to, that does not indicate that the

17   settlement is fair or that the Court should accept it.  And

18   the Seventh Circuit found that in the *Eubank* case,

19   E-u-b-a-n-k, which again is cited in our brief.

20          And finally with respect to support for the

21   settlement, I want to point out that the plaintiffs relied

22   heavily in their opposition to the objection to the position

23   of the child advocates.  And, your Honor, I submit that the

24   child's advocates and the advocacy groups, some that are

25   represented by Professor Campbell, are a good proxy for

1  whether -- a good proxy for the child victims and the

2  positions of the victims as they're keeping up with these

3  issues and were aware of the settlement.  And as Professor

4  Campbell made clear, the child advocates from day one did not

11:43AM  5  support and do not support this settlement --

6          THE COURT:  Counsel, counsel, let me interrupt you.

7          MR. DRURY:  Yes?

8          THE COURT:  Professor Campbell has not made a

9  Motion to Intervene, has not made an appearance, correct?

11:43AM  10          MR. DRURY:  She has not, your Honor.  And as she

11  said in her letter, she did not believe because she herself

12  is not a child victim and the organization she represents are

13  not child victims that the position -- as I believe she put

14  in her letter -- was that they didn't have standing to be

11:43AM  15  present in these proceedings.

16          Certainly, your Honor, if your Honor wanted to hear

17  from them, my guess is -- and I don't represent them -- that

18  that could be arranged.  But no, you're correct, they have

19  not filed an appearance before your Honor or before this

11:43AM  20  Court.

21          THE COURT:  Okay.  Go ahead, counsel.  I

22  interrupted you.

23          MR. DRURY:  But my point is, is that they submitted

24  in the record because we submitted the letter as part of our

11:44AM  25  reply that the representations that have been made by

1    plaintiffs that the child advocacy groups support this

2    settlement is not -- is inaccurate at best.

3         So, again, when looking at the strength of the

4    claims versus what's been offered, there's just -- there's a

5    complete disconnect, your Honor.  The strength of the claims

6    are strong.  They're worth far in excess of $1.1 million and

7    the $1.1 million settlement fund is totally disattached from

8    the actual worth and strength of the claims.

9         The next factor that the Court, I believe, should

10   look at in its analysis is whether or not class counsel and

11   the class representatives have adequately represented the

12   class.  And here we have a settlement that principally served

13   to induce the defendant to -- we have a case that principally

14   served to induce the defendant to pay money to class counsel

15   to make them go away.  And, in fact, the plaintiffs indicated

16   that that's what they think all settlements are is just an

17   amount of money to make plaintiffs go away.  Well, the

18   Seventh Circuit has expressly said that that is not the case

19   in *In re Subway*.

20        And beyond that, your Honor, the fees that the

21   class counsel are seeking here of $363,000 are completely

22   unsupported.  They want to do a percentage of the funds fee

23   but here it's unclear what work they did to earn that fee and

24   at minimum Objector believes that the calculus should be a

25   lodestar or at least a lodestar cross-check.

14

1       When looking at where the substantive allegations

2   of this complaint came from, which is important because it

3   indicates the investigation that went into these claims, the

4   plaintiffs in this case wholly copied them from a previously

5   filed complaint in the FTC matter and we set forth those --

6   the copied allegations in our initial objection.  So when the

7   plaintiffs come forth and say they should get $363,000 plus

8   expenses, which is a third of the small settlement already,

9   the fact is, is that the investigation that went into this

10  case was done by government attorneys; not done by

11  plaintiffs' counsel.

12      Moreover, in terms of the inadequate

13  representation, the release in this case, your Honor, is

14  extremely broad.  They seek to release any claims that arise

15  out of or related to -- for all time anything related to the

16  civil actions which are the claims in this case or the

17  subject matter of the complaint and we set forth in our

18  objection and in our response numerous claims that are

19  subject to the release.  And this has already become a

20  problem because as we said in our objection, your Honor, one

21  of the claims that is subject to the release indisputably are

22  claims under the Biometric Information Privacy Act, an act

23  which wholly deals with personal information and taking

24  personal information, namely biometric data, without people's

25  consent; and we raised in our objection that this was subject

1    to the release.

2          And the reason that I highlight this is because the

3    defendants and the plaintiffs have spent some time saying

4    that these claims under the Biometric Information Privacy

5    Act, referred to as BIPA, were not part of the release.  And

6    this is important, your Honor, because the defendants and the

7    plaintiffs at once are trying to have your Honor uphold the

8    settlement and at the same time they're trying to disregard

9    parts of the settlement that they don't like making it

10   impossible for people to know what their rights are even

11   under the settlement.

12         Your Honor, in your order on December 19th, 2019,

13   your preliminary approval order, you entered a preliminary

14   injunction that barred any settlement class members from

15   bringing any new alleged class actions or asserting any

16   released claims in any other action.  Shortly after you did

17   that, a bunch of class actions were filed in the Northern

18   District of Illinois.  They've all been consolidated in front

19   of Judge Lee in matter 20 CV 2810, *E.R. v. TikTok*.

20         Each of those complaints initially tried to abide

21   by your preliminary injunction and they defined the class in

22   those cases, which were all cases -- privacy cases against

23   TikTok based on BIPA.  They limited the class to Illinois

24   residents ages 14 to 17.  That's important because the class

25   here was children under 13.  So those plaintiffs knew at the

20

1    time or at least thought they knew that the release in this

2    case included the BIPA claims and that your Honor's

3    injunction barred anyone from bringing those claims.

4          We filed our objection on May 11th, 2020, where we

11:49AM  5    raised the issue of the broad release.  On June 5th, 2020,

6    both the plaintiffs -- well, the plaintiffs in their

7    opposition explicitly stated that no, the BIPA claims are not

8    released even despite the broad language in those claims.

9    Exactly one week later, the plaintiffs in those cases in the

11:49AM  10   Northern District of Illinois filed a consolidated complaint

11   and they changed the class definition to all children under

12   18.

13         Now why is this important?  Well, it's important,

14   your Honor, because it's unclear to members of the settlement

11:49AM  15   class, including the Objector, whether or not -- what their

16   rights are even under the settlement and what other claims

17   they could be bringing or could not be bringing.  The

18   plaintiffs fault the Objector for not filing his own

19   complaint but doing so would be in direct violation of your

11:50AM  20   Honor's order unless the plaintiffs and defendants say that

21   it wouldn't be.  And there's just no -- right now, there's no

22   certainty as to what the -- what your Honor's order is and

23   the plaintiffs and defendants are seemingly just trying to

24   play games by trying to salvage the settlement where they can

11:50AM  25   and move forward with other litigation where they can all in

1    hopes of having the settlement go forward but not really even

2    looking at their own language that they put forward.  So it's

3    problematic and it demonstrates that the -- that the

4    plaintiffs and the plaintiffs' counsel are not adequately

5    representing the class, which again provides grave problems

6    for the settlement and is a reason that the settlement should

7    not be approved.

8         Finally, your Honor, there's an issue of the

9    defective notice program in this case which we set forth at

10   length in our brief.  There was no direct notice provided to

11   the class members and it's unclear and no one has explained

12   why the defendant simply couldn't have direct messaged

13   through their app to members of TikTok that this settlement

14   had happened and that they could enforce their rights.

15        Further, the fact is that the way TikTok works,

16   it's able to identify people through facial recognition and

17   show them videos and other materials that seemingly based on

18   data that we've seen show people and videos just like the

19   people watching them that they know who is watching these

20   videos and they have the technology to identify children that

21   they believe or believe to be are under 13 and no effort was

22   made.

23        But even if we put that technology aside, the fact

24   is that the targeting in this case was completely wrong.

25   They -- they targeted parents of children under 18 where the

1    parents use music apps, use social media, or use video apps

2    and there's no explanation as to why the belief was that

3    someone who has a child under 13 who uses TikTok themselves

4    are heavy app users, be it TikTok or any other app, and why

11:52AM    5    traditional methods of notification weren't used.  And the

6    fact that there's such a small response, 1.5 percent, is

7    indicative of the fact that either this settlement was too

8    small for people to care or the fact that people didn't get

9    notice.

11:52AM    10    Further, the notice program failed to update class

11    members of the changes in the schedule through the COVID

12    orders as has been an issue in this case.  What were the

13    actual dates when objections were due, what were the actual

14    dates of this hearing.  That information was not being

11:53AM    15    updated on the site even though your Honor's order in

16    December specifically required the parties to update the

17    notice on the website.  That's at Paragraph 14 of Docket 13.

18    The notice had the wrong effective date of when

19    people's claims -- the effective date of people's claims.  It

11:53AM    20    cut off the effective date on May 6th even though the

21    effective date has not run even as of this hearing, your

22    Honor.

23    And finally as we raised, the original schedule set

24    forth in the notice program improperly required the

11:53AM    25    objections to be put forth before the motion for approved --

23

1    for final approval on the fee petition.  And, your Honor, I

2    want to make clear that in doing that, there was no attack on

3    the court that the plaintiffs had said.  This was a schedule

4    that the plaintiffs proposed and at no point did anyone make

11:54AM   5    your Honor aware of the issue until it was raised in the

6    objection.  So for all these reasons, your Honor, the

7    Objector submits that this case -- this case should not be

8    approved and, you know, there should be further proceedings.

9              There were a couple of procedural issues that the

11:54AM   10   plaintiffs raised.  One was class membership which we

11   took -- we believe the initial objection satisfied the class

12   membership but certainly through the declaration of the

13   Objector have taken care of any questions whether or not the

14   Objector and his son fit within the broad scope of -- the

11:54AM   15   broad definition of class membership here, that's (telephone

16   interruption) the age of 13 and their parents, who used or

17   registered the TikTok app before the effective date, which

18   again, your Honor, has not yet run.

19             There also was a procedural issue related to

11:55AM   20   the -- related to whether or not the length of the brief --

21   and, your Honor, we submit that given the issues in this

22   case, the brief was succinct as it could be, we know it was

23   lengthy, and ask for leave to have that -- our filing

24   accepted nunc pro tunc to the date on which it was -- on

11:55AM   25   which it was filed.

24

1    Your Honor, do you want me to move right forward in

2    intervention or do you want me to pause here?

3    THE COURT:  I'm going to -- I want you to take a

4    moment, look at your notes regarding intervention.  I'm going

5    to ask you about that in a moment and then I'm going to hear

6    from the plaintiffs and the defendants.  I have a criminal

7    case that -- due to this case running over, I'm going to take

8    a break from this case and I'm going to take up my criminal

9    case and then I'm going to come back with you all so my

10   Courtroom Deputy is going to put you on mute for a while.  Go

11   over your notes and then I would like you to stay on the line

12   and I will expedite things as fast as I can and I thank you

13   in advance for your patience.

14          I do have to have this criminal matter resolved and

15   I believe I can do that in fairly short order.  It's not

16   substantive.  It has to do with some procedural matters

17   regarding a trial that's going to proceed with COVID

18   guidelines so it's not the substantive pretrial conference.

19   So at this point, we're going to take a recess on the civil

20   case and we're going to switch over to the criminal case.

21          Gloria, could you mute this -- the attorneys on the

22   line, please?

23          (The Court turned his attention to other matters on his

24   call, after which the following telephonic hearing was held

25   in open court:)

C E R T I F I C A T E

I hereby certify that the foregoing is a transcript of telephonic proceedings before the Honorable John Robert Blakey on August 4, 2020.

/s/*Laura LaCien*                    August 11, 2020
Official Court Reporter              DATE