# EXHIBIT 8

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

|  |  |
|---|---|
| IN RE: FACEBOOK BIOMETRIC INFORMATION PRIVACY LITIGATION <br><br> THIS DOCUMENT RELATES TO: <br><br> ALL ACTIONS | : <br> : <br> : <br> : Case No. 15-CV-03747-JD <br> : <br> : <br> : <br> : <br> : <br> : |

**SECOND EXPERT DECLARATION OF
PROFESSOR WILLIAM B. RUBENSTEIN**

1. Class Counsel have informed me that roughly 1.5 million of the approximately 6.9 million class members in this matter – or about 22% – have filed claims and they have asked for my expert opinion as to how this level of claiming compares with claims rates in class actions generally.

2. My credentials are set forth in my initial Declaration herein, ECF No. 499-3 at ¶¶ 3–12. There, I reported that I maintain a database containing information on more than 1,000 class action settlements or judgments. *Id.* at ¶ 9.

3. My database enables me to calculate claims-rate information in more than 300 class action cases.[1] Specifically, for about a third of the cases in the database, I have data points

---

[1] This is likely the largest collection of data on claims rates. Before I had collected this data, I had published a study, with the RAND Corporation, lamenting the absence of available data on claims rates. *See* Nicholas M. Pace & William Rubenstein, *Shedding Light on Outcomes in Class Actions, in* CONFIDENTIALITY, TRANSPARENCY, AND THE U.S. CIVIL JUSTICE SYSTEM 20, 20–22, 28–32 (Joseph W. Doherty, Robert T. Reville & Laura Zakaras eds., 2012). As the Court

1

for (a) the gross amount of the settlement fund; (b) the estimated total class size; and (c) the number of class members who filed claims. These data points enable me to make two pertinent calculations. *First*, by dividing the number of class members filing claims by the total class size, I can calculate a case's "claims rate." Because I have the total class size data, I can then gauge how claims rates change as class size increases. *Second*, because I have the total fund size, I can divide that number by the class size to get the average expected class member recovery for a case, or "claim size." I can then gauge how claims rates change as claim size increases.

4. Applying these two approaches to the expected claims rate in this case enables me to draw two conclusions, both of which strongly support the conclusion that the claims rate in this case is robust.

5. *First*, for a class of nearly 7 million members, a 22% claims rate is at least 4 times – and as high as about 16 times – above what my data would have predicted. Specifically, my data show that claims rates are highest in very small classes and then decrease as class size grows, with large amorphous classes such as this one having the lowest levels of claiming. These data make intuitive sense, as the small-class cases tend to reflect small cohesive groups – such as the workers in a particular employment setting – who each have more investment in the particular case and are more likely to file a claim than a faceless class member in a million-

---

may be aware, this District has adopted a number of the recommendations we made in that study. *Compare, e.g., id.* at 51–56 (recommending mechanisms for increased transparency of claims rates) *with* U.S. District Court for the Northern District of California, *Procedural Guidance for Class Actions Settlements* at ¶ 11 (available at: https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/) (requiring parties seeking approval of proposed class action settlements to file information concerning claims rates in prior comparable settlements). These guidelines will, in time, helpfully enable the development of further data on claims rates and other related class action issues.

person class. Graph 1, below, provides a snapshot of this data, with the red trendline visually demonstrating the manner in which claims rates decrease as class sizes increase.

**GRAPH 1
CLAIMS RATE BY CLASS SIZE**



Table 1 presents the underlying data in 10 equally sized tranches according to class size. It shows that in the 33 cases with the smallest classes (fewer than 184 members) claims rates are over 50% (53.2%), but that in the 33 cases with the largest classes (more than 286,493 members) claims rates are less than 6% (5.7%).

3

**TABLE 1**
**CLAIMS RATE BY CLASS SIZE**

| Class Size Decile | N | Avg. Claims Rate |
|---|---|---|
| Less than 184 | 33 | 53.2% |
| 184 to 494 | 33 | 54.3% |
| 494 to 1,209 | 32 | 46.2% |
| 1,209 to 3,617 | 33 | 28.4% |
| 3,617 to 9,170 | 33 | 14.0% |
| 9,170 to 17,956 | 32 | 14.2% |
| 17,956 to 37,256 | 33 | 12.3% |
| 37,256 to 76,319 | 32 | 12.0% |
| 76,319 to 286,493 | 33 | 6.6% |
| More than 286,493 | 33 | 5.7% |
|  | 327 | 24.67% |

These data show that the average claims rate for the largest sized classes is 5.7%. Thus, the 22% claims rate in this case is nearly four times what the data would have predicted. Since that top tranche begins with classes of 286,493, but this class is close to 7 million, a further breakdown of the top tranche provides data closer in range to this case. Thus, taking those top 33 cases and further dividing them into 5 tranches provides the data points set forth in Table 2, below:

**TABLE 2**
**CLAIMS RATE BY CLASS SIZE**

| Top Class Size Decile Breakdown | N | Avg. Claims Rate |
|---|---|---|
| 286,493 to 437,457 | 6 | 12.8% |
| 437,457 to 664,840 | 7 | 3.0% |
| 664,840 to 1,116,059 | 6 | 3.4% |
| 1,116,059 to 2,682,347 | 7 | 7.7% |
| 2,682,347 to 12,000,000 | 7 | 1.4% |
|  | 33 |  |

4

Though the "n" is small (7 cases) these data show that the average claims rate in a class with more than 2.7 million members is 1.4%. By that metric, the 22% claims rate here is nearly 16 times what the data would have predicted.

6.  *Second*, for a claim of about $94, a 22% claims rate is about 2.5 times above what my data would have predicted. I use $94 as the claim value here although class members are likely to receive far more – the class notice estimates $200-$400. I use $94 however because the definition of "claim value" for these empirical purposes is simply the product of dividing the total fund by the total class size. Using that metric enables simple cross-case comparisons. Moreover, it is impossible to ascertain the average of what class members actually received in any given case because that data is not known until the class size is fixed and fees and costs are extracted. Finally, since the inquiry seeks to determine whether claim filing varies with claim size, the pre-distribution claim level is a more pertinent fact than the final (post *pro rata* distribution) net recovery. Using this specific definition of "claim value," my data show that claiming rates are lowest when the claim value is low and then increase as the claim value increases. Again, there is an intuitive logic to this effect: individuals are more likely to make the effort to file a claim the larger their expected recovery. Graph 2, below, provides a snapshot of this data, with the red trendline visually demonstrating the manner in which claims rates increase as claim sizes increase.

**GRAPH 2**
**CLAIMS RATE BY CLAIM SIZE**



Table 3 presents the underlying data in 10 equally sized tranches according to claim size. It shows that in the 31 cases with the smallest claim size (less than $33) claims rates are under 4% (3.3%), but that in the 29 cases with the largest claim size (more than $8,115) claims rates are over 67% (67.8%).

6

**TABLE 3**
**CLAIMS RATE BY CLAIM SIZE[2]**

| Claim Size Decile | N | Avg. Claim Rate |
|---|---|---|
| < $33 | 31 | 3.3% |
| $33 to $69 | 30 | 8.8% |
| $69 to $137 | 30 | 8.7% |
| $137 to $266 | 30 | 12.2% |
| $266 to $387 | 30 | 12.9% |
| $387 to $658 | 30 | 14.2% |
| $658 to $1,322 | 30 | 29.3% |
| $1,322 to $3,690 | 29 | 37.7% |
| $3,690 to $8,115 | 31 | 64.3% |
| More than $8,115 | 29 | 67.8% |
| | 300 | 25.9% |

These data show that the average claims rate for a claim of this size ($94) is 8.7%. Thus, the 22% claims rate in this case is more than 2.5 times what the data would have predicted. Notably, even at the class members' likely recovery here of $200-$400, the 22% claims rate is still nearly twice the 12.2%/12.9% rates associated with recoveries at that level in Table 3. But as explained above, using $200-$400 for this case and comparing it to the numbers in Table 3 is not an apples-to-apples comparison because all of the comparative numbers in the Table are simply a function of dividing the total fund size by the total class size. Put differently, all of the cases in the band of Table 3 I employ as the comparison ($69-$137) also likely returned amounts in the $200-$400 range to class members at the end of the claims period.

\* \* \*

---

[2] There are 27 fewer cases in Table 2 than Table 1 as we lacked information on the size of the settlement fund in these cases and could not, therefore, calculate the average claim size.

7. Since December 1, 2018, Rule 23(e)(2)(C) has required a court assessing a proposed settlement to ensure that the "relief provided for the class is adequate," Fed. R. Civ. P. 23(e)(2)(C), and directed that in making that assessment, the court consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," Fed. R. Civ. P. 23(e)(2)(C)(ii). Similarly, one of the eight factors that courts in the Ninth Circuit consider in assessing a proposed settlement is "the reaction of the class members to the proposed settlement." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

8. The empirical evidence I have presented provides strong support for the conclusions (a) that the class notice and fund distribution methods are robust and working well and (b) that the class members' reaction to the proposed settlement is very favorable: class members have filed claims at rates far (anywhere from 4-16 times) above the average for a class of this size and significantly (2.5 times) above the average for a settlement of this value. These data argue strongly in support of final approval of the proposed settlement.

December 3, 2020                                     William B. Rubenstein

8