**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: TIKTOK, INC., CONSUMER PRIVACY LITIGATION, | MDL No. 2948 |
| | Master Docket No. 20 C 4699 |
| | Judge John Z. Lee |
| This document relates to all cases | Magistrate Judge Sunil R. Harjani |

**OBJECTION OF DENNIS LITTEKEN**
**TO PROPOSED CLASS ACTION SETTLEMENT**

## I. Introduction

The Court should deny preliminary approval to this hastily drawn up Settlement

Agreement. The parties' goal of achieving an embarrassingly low 1.5% claims rate is the result

of a proposed notice plan that violates both Rule 23 and Due Process. Indeed, the parties concede

that they will not provide individual direct notice to over 70% of the class (the bare minimum)

and instead try to sell the Court on accepting a flashy-sounding publication media plan to satisfy

due process. But providing the required individual notice here is easy: the class are all users of an

app that can be used to notify them of the Settlement Agreement and the companies that class

members have to download the app from have the entire class's emails and other contact

information. The reason for this inadequate notice plan and low claims estimate is obvious: the

national class would receive a paltry $3 and the Illinois subclass would get less than $20 if

claims rates begin to approach 20%.

And while $92 million is a lot of money, the Plaintiffs' submissions do not justify the

steep discount on the valuable statutory claims possessed by the nearly 90-million-member class.

The process of reaching the settlement also provides evidence that proposed settlement class

counsel paid scant attention to the value of the proposed settlement class's claims, resulting in a proposal that is unfair and unreasonable. This objection applies classwide.

## II.    Required information concerning objector

The Settlement Agreement calls for objectors to provide certain information with their objections. These requirements are obviously not yet binding because the agreement hasn't been approved by the Court. Nevertheless, Objector Dennis Litteken will provide the following requested information, with the exception of the retainer called for by the Settlement. Personal information is redacted per Fed. R. Civ. P. 5.2 but provided in unredacted form to the parties.

Name: Dennis Litteken
Address: █████████████████████████████
Phone Number: ████████████████
TikTok Handle: ████████

Name of Counsel: Jay Edelson, Ryan D. Andrews, and J. Eli Wade-Scott of Edelson PC

Previous actions in which counsel has objected within the last five years:

1. *Prelipceanu v. Junio Corp.*, 2018-CH-15883 (objection overruled)
2. *Remijas v. Neiman Marcus*, No. 14-cv-1735 (N.D. Ill.) (objection sustained, *see* 341 F. Supp. 3d 823 (N.D. Ill. 2018))
3. *Cohen v. Fedex*, No. CIVDS1818604 (Sup. Ct. San Bernardino Cnty.) (objection overruled)
4. *In re NCAA Student-Athlete Concussion Injury Litig.*, No. 13-cv-9116 (N.D. Ill.) (objection sustained in substantial part, *see* dkts. 115, 246)

More relevant than their history of filing objections is that Edelson filed the first-ever class action under BIPA against Facebook, *Licata v. Facebook, Inc.*, No. 2015-CH-05427 (Cir. Ct. Cook Cnty. Apr. 1, 2015), secured the first-ever adversarially certified BIPA class in that case and defended the ruling in the Ninth Circuit, *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1277 (9th Cir. 2019) (upholding adversarial BIPA class certification), *cert. denied Facebook, Inc. v. Patel*, 140 S. Ct. 937 (2020), and recently obtained final approval of the settlement agreement with Facebook to resolve the case for $650 million. *In re Facebook Biometric Info. Privacy Litig.*, No.

15-CV-03747-JD, 2021 WL 757025 (N.D. Cal. Feb. 26, 2021) (granting final settlement approval). The firm is responsible for the first-ever BIPA settlement, *see Sekura v. L.A. Tan Enterprises, Inc.*, 2015-CH-16694, and has paved the way to many of the favorable appellate decisions for BIPA plaintiffs. *Sekura v. Krishna Schaumburg Tan, Inc.*, 2018 IL App (1st) 180175 (pre-*Rosenbach*, holding violation of statute sufficient for plaintiff to be "aggrieved"); *Rottner v. Palm Beach Tan, Inc.*, 2019 IL App (1st) 180691-U (violation of statute sufficient to claim liquidated damages); *McDonald v. Symphony Bronzeville Park LLC*, 2020 IL App (1st) 192398. Edelson was also class counsel in several of the VPPA decisions referenced in the motion for preliminary approval. The *Facebook* settlement, at $650 million, is the largest cash privacy settlement on record, and the firm also obtained the largest jury verdict in a privacy case, *see Wakefield v. ViSalus, Inc.*, No. 15-cv-1857 (D. Or.) ($925 million), and secured the largest Telephone Consumer Privacy Act settlement, *see Birchmeier v. Caribbean Cruise Line, Inc.*, No. 12 C 4069 (N.D. Ill.).[1]

## III.     Specific Objections

In amending Rule 23(e) in 2018, the Rules Committee noted that "[t]he decision to give notice of a proposed settlement to the class is an important event. It should be based on a solid record supporting the conclusion that the proposed settlement will likely earn final approval." The amended rule therefore requires front-loaded scrutiny of potential class action settlements to identify deficiencies that should be addressed before notice is disseminated.

---

[1]     Edelson PC's co-counsel in the *Birchmeier* action is Loevy & Loevy. Edelson PC did not coordinate with Loevy & Loevy regarding the objection they filed in this matter, and in fact were unaware that a Loevy & Loevy client intended to object to the instant settlement before that objection was filed on March 1.

There are at least two shortcomings in Plaintiffs' current presentation that require the denial of preliminary approval. Objector reserves his rights to make further objections later in the approval process should it proceed.

**A.      Because it relies on publication notice when direct notice is feasible, the Notice Plan is deficient.**

When a class action is settled, the Court must direct notice to be given to all members of the class or proposed settlement class. Fed. R. Civ. P. 23(e). This includes "individual notice to all members who can be identified with reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "[I]ndividual notice to identifiable class members is not a discretionary consideration to be waived in a particular case. It is, rather, an unambiguous requirement of Rule 23." *Eisen & Carlisle v. Jacquelin*, 417 U.S. 156, 176 (1974). Here, counsel reports that they will only *attempt* direct notice to about one-third of the class. (Dkt. 122-12, ¶ 18.) That is insufficient.

The best notice practicable here is obvious: Notice through the TikTok app. TikTok users already have an "inbox" within the app through which TikTok communicates with users. This function can easily be used to send notice to settlement class members. Alternatively, notice could be disseminated via a pop-up displayed when TikTok users open the app. TikTok itself frequently uses pop-ups when the app is opened to display ads or to make announcements. Either form of notice could reach all or substantially all of the proposed settlement class. There is no excuse for not using this type of notice in this type of case, unless, of course, the goal is to keep the claims rate down.

In their Motion for Preliminary Approval, Class Counsel highlight the settlement in *In re Facebook Biometric Information Privacy Litigation*, in which the class claimed at a 22% rate. (Dkt. 122, at 24.) The principal method of notice there was through channels of communication established by Facebook through which Facebook ordinarily communicated with its users. *See In*

4

*re Facebook Biometric Info. Privacy Litig.*, No. 15-cv-03747-JD, 2020 WL 4818608, at *4 (N.D. Cal. Aug. 19, 2020). The court in that case approved such notice over objections by the defendant concerning First Amendment or reputational harms, noting that "many cases have held that a defendant's online channels constitute the best practicable notice to individual class members." No. 15-cv-3747, dkt. 404, at 3 (N.D. Cal. May 29, 2018). There is no reason to settle for anything short of this type of notice here: TikTok likewise has established channels through which it communicates with its users. *See* Fed. R. Civ. P. 23 – Committee Notes on 2018 Amendments (describing changes to Rule to encourage notice to be disseminated through methods that align with "contemporary communication realities"). The parties provide no reason why these channels cannot be used to reach this class.

And even with respect to the claimed direct notice by email, the Plaintiffs' proposal falls woefully short of what the Rule requires. The Motion for Preliminary Approval states, without elaboration, that the proposed notice plan "provides individual direct email notice to all reasonably identifiable Class Members." (Dkt. 122, at 46.) But the motion never says who those class members are, or what portion of the proposed class they make up. The Weisbrot Declaration reports than the settlement administrator expects to receive email addresses for about one-third of the class. (Dkt. 122-12, ¶ 18.) But the parties never attempt to explain why this small portion of the proposed class is all that is "readily identifiable."

There is also nothing in any of the papers filed by the Plaintiffs that suggests that they have done or intend to do any work to identify class members. That is unacceptable. Obtaining the emails of at least a substantial number of class members would require essentially three subpoenas—one to each of the platforms on which the TikTok app can be downloaded (Apple,

Google, and Amazon). These platforms have contact information for every member of the proposed class.

Rather than do the work that is required by Rule 23 and Due Process, the preliminary approval papers concede that counsel is focused almost exclusively on publication notice, which if done at all, should be a backstop to the direct in-app and fulsome email campaign. Counsel targets a claims rate of 1.5%–which just so happens to be the claims rate that was achieved using exclusively a "state of the art" publication notice campaign in the related matter of *T.K. v. ByteDance, Inc.*, No. 19 C 7915 (N.D. Ill.). Rule 23 demands more. This is a case in which most or all class members can be easily identified through reasonable effort. Counsel *must* attempt to provide these class members with direct notice. The Court should withhold preliminary approval of the settlement until Co-Lead Counsel comes up with a plan to do just that.

**B.      The Plaintiffs fail to provide sufficient basis to determine whether the settlement provides fair and reasonable relief to class members.**

A second, equally problematic issue is that the Settlement appears to have been reached without any discovery into the strength of the various claims that are alleged in the operative complaint, and Co-Lead Counsel provides little information to justify the steep discount proposed settlement class members are forced to accept in exchange for a virtually limitless release.

The process by which the settlement was reached raises a number of red flags. First, the settlement was negotiated at a mediation which occurred after the JPML's order centralizing the cases in this Court, but before this Court had appointed any leadership structure. And, alarmingly, it appears from the reports filed by counsel that Defendants chose which lawyers they wanted to negotiate with and excluded the others. (Dkt. 5; *see also* dkt. 12, at 3.) It is beyond doubt that the Defendants did not have the putative class's best interests at heart when it

6

took that step. *See Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 282-83 (7th Cir. 2002)

(discussing "a 'reverse auction,' the practice whereby the defendant in a series of class actions

picks the most ineffectual class lawyers to negotiate a settlement with in the hope that the district

court will approve a weak settlement that will preclude other claims against the defendant.").

Also troubling is that the Motion for Preliminary Approval makes clear that the proposed

settlement is intended to compromise class members' claims under the Video Privacy Protection

Act, 18 U.S.C. § 2710, a statute that permits plaintiffs to recover $2,500 in statutory damages

(Dkt. 122, at 22-23), and a series of claims under California law, which the Plaintiffs contend

would apply classwide (*id.*, at 3). But at the time of the August 13, 2020, mediation, only one of

the complaints filed against the TikTok defendants included a VPPA claim. *See* No. 20-cv-

03795, dkt. 1 (N.D. Cal.). Moreover, the lawyer who drafted that complaint is not among the

leadership in the MDL. The then-non-settling plaintiffs added a VPPA claim to their complaint

the day *after* the mediation. *See* No. 20 C 4723, dkt. 89 (N.D. Ill.). But the operative complaint in

*E.R.*, the action litigated by the attorney who, according to the Motion for Preliminary Approval,

spearheaded negotiations for the putative settlement class, included *only* claims under Illinois's

Biometric Information Privacy Act. *See* No. 20 C 2810, dkt. 32. What inquiry into the federal

and California claims was performed before agreeing to a $92 million fund? None, so far as

appears from the papers submitted to date. In fact, the impetus for settling the VPPA claim might

well have been an August 7 status hearing in the *T.K.* matter, in which an objector in that case

protested that the settlement there sacrificed that valuable claim for no money at all. *See* No. 19

C 7915, dkt. 50, at 1. In other words, Co-Lead Counsel evaluated the VPPA claim in less than a

week without the benefit of any discovery.

Efforts following the decision to create a $92 million fund appear to have been directed largely to determining how to divide the pot between class members from Illinois and class members not from Illinois. In the end, counsel decided that claiming Illinois class members would receive $6 for every dollar received by claiming non-Illinois class members. The basis for this division is not explained. The Zouras and Rotter declarations offer the boilerplate line that the negotiation process was "informed, fair, and impartial," but that's about it. Dkt. 122-11, ¶ 13; dkt. 122-10, ¶ 8.

It seems almost inconceivable that this division can be explained by reference to the facts. The proposed nationwide class's VPPA claim is potentially 2.5x as valuable as the proposed subclass's BIPA claim. The Motion for Preliminary Approval highlights a division of authority over whether persistent device identifiers are protected by the VPPA (Dkt. 122, at 22-23), but that arguably places the claim on equal or stronger footing than the BIPA claim. In fact, the court in the *Facebook Biometric* matter discussed a *dearth* of authority under BIPA regarding arguments very similar to those which counsel reports TikTok would make about the information it collects. *See* 2020 WL 4818608, at *3.

And the Motion for Preliminary Approval contains almost no discussion at all about the California claims that could be litigated by the proposed class. California is unique in that its Unfair Competition Law and permits restitution of profits earned through violations of other laws. *See Le v. Kohl's Dep't Stores, Inc.*, 160 F. Supp. 3d 1096, 1102 (E.D. Wis. 2016). The Plaintiffs cite several ways in which TikTok appears to violate the law in order to collect vast amounts of information about its users, information it likely then uses to enhance the quality of its advertising. Plaintiffs specifically allege violations of the federal Computer Fraud and Abuse Act, California's Comprehensive Data Access and Fraud Act, and California's False Advertising

8

Law. (Dkt. 114, ¶¶ 338-347, 379-385.) Profits derived from these violations are available as restitution in an action under the UCL, as the operative complaint recognizes (*e.g.*, *id.*, ¶ 377), and these profits potentially run into the billions. Yet this possible recovery is ignored in counsel's rush to have this settlement approved. Again, it is inconceivable that counsel had sufficient information necessary to settle this case when they did, and for the amount they did. Or, if they somehow did have sufficient information, that information is not being presented to class members.

Instead of analyzing the strength of their own case, counsel appear to have settled on an allocation plan merely by looking at other settlements under the same laws. But this case is not other cases. And rather than determining how valuable the claims here were, counsel first settled on a $92 million fund and then decided how it would be divided amongst class members. Finally, to return to the issues with notice, it appears counsel has retroactively determined that the fund is too small and has decided to justify its size by positing class member recoveries with minimal claims rates and without deducting fees or administration costs. (*See* dkt. 122, at 24.) With a robust direct notice plan, achieving over a 20% claim rate like the *Facebook* settlement is achievable from an active userbase of a popular app. But as the Motion for Preliminary Approval acknowledges, if the proposed class here takes at a rate close to the class in *Facebook Biometric*, class members will receive around $19 (for Illinois subclass members) or $3 (for other class members). These amounts represent enormous discounts from available damages, which deserve much more thorough explanation than they currently receive in the Plaintiffs' papers. Certainly, Plaintiffs' attempt to paper over this flaw by proposing a deficient notice plan and hoping for minimal class participation cannot substitute for an actual analysis of the risks and potential benefits of proceeding with the litigation.

Case: 1:20-cv-04699 Document #: 132 Filed: 03/01/21 Page 10 of 10 PageID #:2386


In short, the notice plan here is woefully deficient, and counsel hasn't provided enough information to create the type of record that would merit sending notice anyway. The Court should deny preliminary approval until the parties pledge to provide direct notice to the proposed class and further explain how the present proposed fund is fair and reasonable.

Date: March 1, 2021                                    By: Dennis Litteken

                                                       *Dennis Litteken*

                                                       _____
                                                       A member of the proposed class


                                                        /s/ Jay Edelson
                                                        One of Mr.Litteken's Attorneys

                                                       Jay Edelson
                                                       jedelson@edelson.com
                                                       Ryan D. Andrews
                                                       randrews@edelson.com
                                                       J. Eli Wade-Scott
                                                       ewadescott@edelson.com
                                                       Edelson PC
                                                       350 North LaSalle Street, 14th Floor
                                                       Chicago, Illinois 60654
                                                       Tel: 312.589.6370
                                                       Fax: 312.589.6378

                                                       *Counsel for Objector*