UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: TIKTOK, INC. CONSUMER PRIVACY LITIGATION<br><br>This Document Relates to All Cases | MDL No. 2948<br><br>Master Docket No. 20 C 4699<br><br>Judge John Z. Lee<br><br>Magistrate Judge Sunil R. Harjani |

**DEFENDANT TIKTOK, INC.'S SUPPLEMENTAL ANSWERS
TO THE COURT'S QUESTIONS ABOUT
PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

Defendant TikTok, Inc. ("TikTok") respectfully submits the following supplemental answers to the questions directed to TikTok by the Court at the March 2, 2021 hearing on Plaintiffs' Motion for Preliminary Approval of Class Action Settlement. Although the Court did not require TikTok to submit supplemental briefing on these questions, out of an abundance of caution, TikTok submits its answers to those questions in writing so that there is a clear and complete record and to provide the Court with additional relevant information.

1. *"Practically speaking, could notice of the settlement be provided to users through the TikTok App?"*

Yes, technically, notice of the settlement could be provided to *some* class members through the TikTok App by placing a notice in the "Inbox" feature, which has an in-app "jewel" notification for friend requests and similar app-related information. A "push" notification alert—an alert that makes a system sound, vibration, and/or notification icon appear even when the app is not open on the device—would also then be automatically pushed to all users whose notification settings are configured to receive a corresponding push notification. But there are several reasons why using this in-app feature was rejected by TikTok and is not "better" than the

1

current plan to send individual notice to the 60+ million email addresses that TikTok has for class members:

- Unlike email addresses, which are commonly used for class settlement notices and which class members have provided to TikTok as a means to communicate with them, class members have not consented to receive "Inbox" and "push" notifications that are not part of the integral features of the App.

- The default setting for Android users, and an elective setting for Apple (iOS) users, is to receive "push" notifications for each Inbox notification; and applicable app store policies purport to prohibit apps from sending push notifications for unsolicited content beyond the "integral features" of the app.[1]

- Unlike email notice, commandeering the in-app Inbox feature to send an extra-app legal notice would be disruptive to the user experience and the relationship between users and the App.

- Unlike the email notice plan, which will provide up to 70% of the class with individual notification, the Inbox feature is estimated to reach significantly fewer class members because only those users who are currently active on the app during the notice period would see the notification. Users who no longer use the App or who do not use it during the notice period would not see the notice.

---

[1] *See, e.g.*, https://support.google.com/googleplay/android-developer/answer/10355942?visit_id=637508625911031450-2997084910&rd=5; https://developer.apple.com/documentation/usernotifications/asking_permission_to_use_notifications; https://developer.apple.com/app-store/review/guidelines/. For the same reason, forcing a push notification to users whose notification settings are not already configured to receive push notifications is not an option here. Moreover, TikTok is prohibited by COPPA from sending push notifications to users under age 13. *See* https://www.ftc.gov/tips-advice/business-center/guidance/complying-coppa-frequently-asked-questions-0.

- Potentially more than two thirds (70%) of class members will receive the individual notice by email.[2] Unlike email addresses, there is no readily accessible data showing whether the Inbox feature of the TikTok App is an effective means of notifying users of this type of information. Likewise, there is no data to show that there will be any significant increase in individual notification by using the in-app Inbox feature in addition to email notice.
- Additional channels of notice are unnecessary because the Settlement Administrator has already put together a plan to reach *95% of the target audience more than five times* through publication notice.

Because, in view of the above, providing supplemental class notice through the Inbox feature of the TikTok App is neither desirable nor required by Rule 23, TikTok did not previously consent to this supplemental form of notice requested by Plaintiffs' counsel. TikTok has, however, consistent with its obligations under Section 17.5 of the Settlement Agreement,[3] agreed to provide this supplemental notice if the Court determines that (1) Fed. R. Civ. P. 23(c)(2)(B) requires use of the Inbox feature to provide the best notice practicable and (2) the benefit to class members in receiving this notice outweighs any detriment they may experience in receiving in-app and system notifications for non-integral features of the App.

---

[2] Because it is unknown exactly how many TikTok accounts with email addresses are "duplicate" accounts created by the same user using different email addresses, the Parties conservatively estimated that the email notice will provide at least one third of class members and potentially more than two thirds (70%) of class members with the best practicable individual notice under the circumstances.

[3] Section 17.5 of the Settlement Agreement provides that "The Parties agree to cooperate in good faith fully and to take all additional action that may be necessary or appropriate to give full force and effect to the basic terms and intent of this Agreement."

2. *"Does the release that is proposed as part of this settlement encompass the claims in the T.K. case?"*

As lead counsel for Defendants stated at the March 2, 2021 hearing in response to this question, "Yes, it does, your Honor, certainly." Tr. at 31:21-24. But "[t]his [MDL] settlement will not wipe out the *T.K.* settlement. They will recover twice in both cases." Tr. at 33:17-19. Plaintiffs' counsel in the MDL specifically negotiated to make sure the class members in the action filed in *T.K., et al v. Bytedance Technology Co., Ltd, et al*, No. 1:19-cv-07915 (N.D. Ill.) (the "*TK*" action) were included in the MDL Settlement so that they can claim the benefits of both the MDL settlement and the *TK* Settlement. With that additional benefit, of course, comes the same release that binds all class members in the MDL Settlement, which release would cover the claims asserted in the *TK* action. Thus, approval of either settlement will release the *TK* claims while maintaining the right of the *TK* class to claim the benefits of both settlements if both settlements are approved.

For background, the *TK* action asserted claims on behalf of a putative class of users under the age of 13. The *TK* plaintiffs alleged that the TikTok App was subject to the Children's Online Privacy Protection Act (COPPA), that COPPA required TikTok to obtain parental consent before collecting user data from users under the age of 13, and that TikTok invaded these users' privacy and violated other privacy statutes by failing to obtain this parental consent when it collected their user data. *See TK* ECF No. 1 ¶ 1. TikTok denied these allegations and has shown that no private right of action could be sustained on these allegations. *See TK* ECF No. 34.

A class settlement was reached in the *TK* action on October 22, 2019 that contained a release of all claims "arising out of or relating to the [*TK* action] or the subject matter of the Complaint." *TK* ECF No. 5-1 at 24. That settlement was preliminarily approved by the court on December 19, 2019 in an order that also enjoined *TK* class members "from bringing any new

alleged class actions asserting any Released Claim or attempting to amend an existing action to assert any Released Claim." *TK* ECF No. 13 ¶ 16. Following this preliminary approval order, the settlement funds were deposited, notice to the class was given, objections were filed, and a final approval hearing was set for May 6, 2020. Unfortunately, due to the court's COVID-19 orders, that final approval hearing was long delayed but ultimately conducted on August 4 and August 7, 2020, following which the court's minute order stated that it would "take all pending motions under advisement and issue a written order in due course." *TK* ECF No. 46. For reasons unknown, the *TK* court has not yet ruled on the motion for final approval of the *TK* settlement.

Prior to the August 13, 2020 mediation that resulted in the MDL Settlement Agreement now before the Court, TikTok's position was that there could be no overlap between this MDL and the *TK* action because both the preliminary approval order in the *TK* action and the *TK* settlement release precluded participation by *TK* class members in the MDL. In response to this position, Ms. Carroll and Mr. Jagher, who were conducting the settlement negotiations on the plaintiffs' side, negotiated heavily with TikTok to get TikTok to agree to allow the *TK* class members to also participate in the MDL Settlement. TikTok resisted because adding the *TK* class members to the MDL Settlement would significantly boost the total MDL Settlement amount.

TikTok ultimately yielded on this point, thereby resolving potential litigation over the scope of the release in the *TK* Settlement. In exchange for the right to participate in the MDL Settlement, the *TK* class members are also subject to the same release that would bind every other class member in the MDL Settlement, a release that also precludes future litigation of the claims in the *TK* action (regardless of whether the *TK* Settlement is ever approved). But *TK* class members get the added benefit of also participating in the *TK* Settlement. Specifically, Section 2.4 of the MDL Settlement states that "TikTok agrees to waive any res judicata defense for

5

purposes of this settlement only such that no person who is a member of the settlement class in the T.K. action will be precluded from participating in this Settlement." And the proposed Preliminary Approval Order agreed to by TikTok expressly allows *TK* class members to participate in both settlements: "This injunction does not apply to participation in the class settlement preliminarily approved on December 19, 2019 in *T.K., et al v. Bytedance Technology Co., Ltd, et al*, No. 1:19-cv-07915 (N.D. Ill.)."

The MDL Settlement is thus designed to resolve all privacy-related claims of all class members, including the *TK* class. In the unlikely event—which but for COVID-19 delays should not have happened at all—the MDL Settlement is finally approved before the *TK* Settlement is finally approved, the *TK* Settlement would then simply be a double bonus monetary benefit for the *TK* class, whose claims would have been released by the MDL Settlement at that point.

3. ***What is TikTok's Position on Plaintiffs' Motion for Preliminary Approval of the Settlement?***

Although this specific question has not yet been directed to TikTok, the record should reflect that this is not a case where the defendant is anxious to see the settlement approved. TikTok is contractually obligated to support approval of the settlement deal that it struck back in August of 2020. *See* Agmt. § 17.5. But if TikTok were given the opportunity to renegotiate that deal today, there is no reason TikTok should agree to pay anything close to the $92 million settlement by which TikTok is currently bound.

The current deal was struck on August 13, 2020, days after the then-President of the United States issued an executive order on August 6 purporting to ban the TikTok App from operating within the United States.[4] To say that this unprecedented political pressure placed

---

[4] *See* https://www.npr.org/2020/08/06/900019185/trump-signs-executive-order-that-will-effectively-ban-use-of-tiktok-in-the-u-s

TikTok in an unfairly-disadvantaged bargaining position to negotiate the MDL Settlement would be an understatement. Since that time, however, TikTok and certain TikTok users obtained preliminary injunctions preventing that executive order's prohibitions from going into effect, and the Government's appeals of those injunctions are currently stayed due to the change of presidential administrations.[5] If given the opportunity to renegotiate the Settlement today, TikTok would seek a lower settlement amount that more accurately reflects the merits of the case independent of outside political pressures.

As the warranty provided by TikTok in the Settlement Agreement reflects, the concerns about biometric data alleged by Plaintiffs were unfounded. Unlike Facebook, which last year agreed to pay $650 million to settle a BIPA class action brought by Illinois residents that arose from Facebook's face-tagging features, the TikTok App has no such face-tagging feature in the United States, and TikTok does not otherwise use U.S. user data to create face templates or biometric identifiers for users. Similarly, the Video Privacy Protection Act (VPPA) claim and other claims asserted by Plaintiffs were doomed to fail on their merits even if they could survive a motion to dismiss because the conjectural allegations upon which they were based are simply not true. These deficiencies were exhaustively briefed and discussed during mediation and have been summarized in Plaintiffs' submissions in support of settlement approval.

Respectfully submitted,

DATED: March 23, 2021

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: */s/Anthony J Weibell*
Anthony J Weibell

*Lead Counsel for all Defendants*

---

[5] *See* https://www.courthousenews.com/biden-pauses-appeals-on-chinese-app-bans/

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 23, 2021, the foregoing document was filed electronically through the Court's Electronic Case Filing System. Service of this document is being made upon all counsel of record in this case by the Notice of Electronic Filing issues through the Court's Electronic Case Filing System on this date.

*/s/Anthony J Weibell*
Anthony J Weibell
