UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: TIKTOK, INC. CONSUMER PRIVACY LITIGATION | MDL No. 2948 |
| | Master Docket No. 20 C 4699 |
| | Judge John Z. Lee |
| This Document Relates to All Cases | Magistrate Judge Sunil R. Harjani |

**OBJECTION OF BRIAN BEHNKEN AND JOSHUA DUGAN
TO PROPOSED CLASS ACTION SETTLEMENT**

**I.     Introduction**

This Court should deny preliminary approval of the Settlement Agreement[1] because its terms and the proposed notice plan violate Rule 23 of the Federal Rules of Civil Procedure (hereinafter "Rule") and Due Process.  In addition to the reasons set forth by previous objectors[2], the proposed settlement is procedurally unfair because its burdensome opt-out requirements violate due process.  Moreover, the proposed settlement ("Proposed Settlement") is invalidated by the Federal Arbitration Act ("FAA")  and Illinois law to the extent it would alter the provisions of the forced mandatory individual arbitration provision TikTok included in its Terms of Service with every user.

---

[1] "Settlement Agreement" refers to the Settlement Agreement and Release filed in connection with Plaintiffs' Motion for Preliminary Approval of Class Action Settlement filed on February 25, 2021. *See* Doc. #122.
[2] Objectors Brian Behnken and Joshua Dugas hereby adopt the objections set forth in the briefs filed by Objectors Dennis Litteken and Mark S., as Parent and Legal Guardian of His Minor Son, A.S., *In Re: TikTok, Inc., Consumer Privacy Litigation*, Case No.: 1:20-cv-04699 Document Nos. 126 and 132.

The objectors, Brian Behnken and Joshua Dugan[3], and 957[4] other individuals ("Arbitration Claimants") are Illinois resident TikTok users who uploaded TikTok's of themselves while, unbeknownst to them, TikTok was surreptitiously collecting and sharing their biometric data in violation of Illinois' Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*. Like all other TikTok users, Arbitration Claimants agreed to a mandatory individual arbitration provision with a class waiver when signing-up for the TikTok app. In accordance with TikTok's Terms of Service[5], the Arbitration Claimants notified TikTok of their claims under BIPA and intention to resolve them in arbitration if a satisfactory resolution cannot be reached.[6] The objectors, and the other Arbitration Claimants, are members of the Proposed Class.

Under the terms of the Proposed Settlement's opt-out procedures, Arbitration Claimants and any other class members who seek to be excluded from the settlement will find it challenging, if not impossible, to opt-out and pursue arbitration. This is because although TikTok is used entirely online – and the proposed notice plan would have class members opt-*in* online – any class member who wishes to opt-*out* must individually mail a handwritten letter signed by the person seeking exclusion."[7] Further, Arbitration Claimants and proposed class members are prohibited from "mass" or "class" opting out through counsel.[8]

---

[3] Objectors Brian Behnken and Joshua Dugan will provide Rule 23 notices on or before final approval should they not be permitted to opt-out in connection with this filing.

[4] Each Arbitration Claimant individually retained Labaton Sucharow LLP, as undersigned counsel, to represent them in connection with their claims. Labaton Sucharow LLP is an experienced class action litigation firm with more than 65 lawyers and offices in New York, Delaware, and Washington D.C. It regularly represents consumers in class actions, including as one of three firms that recently obtained a $650 million settlement on behalf of a class of 1.6 million Illinois residents in *In re Facebook Biometric Information Privacy Litigation*., Case No. 15-cv-03747 (N.D. Cal.).

[5] A copy of TikTok's Terms of Service is attached hereto as Exhibit A.

[6] *See* Redacted Notice of Claims Letter, attached hereto as Exhibit B.

[7] See, e.g., Doc. #122-1 (Exhibit A – Settlement Agreement) ("For a Request for Exclusion to be considered by the Court, it must set forth: (i) the name of the Action; (ii) the person's or entity's full name, address, email address and telephone number; (iii) a specific statement of the person's or entity's intention to be excluded from the Settlement; (iv) the identity of the person's or entity's counsel, if represented; and (v) **the person's or entity's authorized representative's signature and the date on which the request was signed**.") (emphasis added).

[8] *Id*. ("***So called 'mass' or 'class' opt-outs shall not be allowed***.") (emphasis added).

Arbitration Claimants respectfully request this Court deny preliminary approval of the Settlement Agreement or, in the alternative, either modify the proposed class definitions to exclude Arbitration Claimants or allow the Arbitration Claimants to opt-out through counsel and other class members seeking to be excluded to do so online.

**II.     TikTok's Terms of Service Require Arbitration of Individual Claims**

TikTok's relationship with its users is governed by its Terms of Service.[9] All TikTok users who create a TikTok account (and all members of the Proposed Settlement Classes) agree to the Terms of Service.[10] The Terms of Service are binding on the user and TikTok.  It is undisputed that the Arbitration Claimants are bound by TikTok's arbitration agreement, the very avenue that they intend to use to pursue their claims.  As TikTok has repeatedly argued in putative class actions filed throughout the United States, all users (including all members of the Proposed Settlement Classes) who create an account with the video sharing app, TikTok, agree to TikTok's Terms of Service.

The Terms of Service contain a mandatory, individual arbitration clause with a class action waiver:

> ARBITRATION NOTICE FOR USERS IN THE UNITED STATES: THESE TERMS CONTAIN AN ARBITRATION CLAUSE AND A WAIVER OF RIGHTS TO BRING A CLASS ACTION AGAINST US. EXCEPT FOR CERTAIN TYPES OF DISPUTES MENTIONED IN THAT ARBITRATION CLAUSE, YOU AND TIKTOK AGREE THAT DISPUTES BETWEEN US WILL BE RESOLVED BY MANDATORY BINDING ARBITRATION, AND YOU AND TIKTOK WAIVE ANY RIGHT TO PARTICIPATE IN A CLASS-ACTION LAWSUIT OR CLASS-WIDE ARBITRATION.  *Id.*

The arbitration clause, which is expressly subject to the Federal Arbitration Act, 9 U.S.C. §2 (hereinafter "FAA")[11], applies to *all* disputes, except claims brought in small claims court or

---

[9] *See* Exhibit A.
[10] *Id.*
[11] *Id.*

claims made by TikTok related to infringement of its intellectual property or unauthorized access to its services, including "any dispute relating to the interpretation, applicability, unconscionability, arbitrability, enforceability, or formation of this arbitration agreement, including any claim that all or any part of this arbitration agreement is void or voidable." [12] Only claims that are not subject to binding individual arbitration grant exclusive jurisdiction to this Court. [13]

As instructed by TikTok's Terms of Service, before initiating arbitration, either party must first attempt to resolve the claim informally. If no resolution is reached, either party can initiate arbitration before the American Arbitration Association ("AAA"), one of the nation's largest arbitration providers. Customers can notify TikTok of their intention to commence arbitration by sending an email to legal@tiktok.com. The Arbitration Claimants have complied with TikTok's Terms of Service by notifying TikTok via email on March 31, 2021 of their claims under BIPA and intention to initiate arbitration should TikTok decline to resolve their disputes. [14]

The Terms of Service incorporate AAA's Supplementary Procedures for Consumer-Related Disputes. [15] While AAA consumer arbitration ordinarily requires each individual consumer to pay a $100 filing fee (or less depending on how many claimants are filing individual arbitrations [16]), TikTok will "reimburse those fees for claims where the amount in dispute is less than $10,000." *Id.* at Section 11. TikTok also pays any additional filing, case management, and arbitrator fees, totaling at least $3,200 per claimant. *Id.; see also* Exhibit C.

---

[12] *Id.* at Section 11.
[13] *Id.*
[14] *See* Exhibit B.
[15] *See* Exhibit A. at Section 11.
[16] Recently, AAA has reduced the filing fee for individual claimants in cases where hundreds of claimants are filing individual arbitrations against the same defendant. *See* https://www.adr.org/sites/default/files/Consumer_Fee_Schedule_2.pdf attached hereto as Exhibit C.

AAA arbitrations have due process protocols, including a right to be represented by counsel, discovery procedures, the right to an in-person hearing and to have any proceeding conducted at a location convenient to the consumer, and a neutral arbitrator selected jointly by the parties. *See* Exhibit C.

TikTok has repeatedly told courts, ***including this Court***, that it intends to enforce the arbitration provision against class action litigation:[17]

> ***Even if Plaintiffs could state a claim, those claims are subject to an arbitration and class action waiver agreement that would preclude this class action***. The Objector incorrectly argues that minors are not bound by arbitration agreements and class action waivers. While minors may have the right under some state laws to disaffirm contracts made before the age of majority, those contracts are valid and binding until actual disaffirmance takes place. *See, e.g.*, Cal. Fam. Code § 6700 ("a minor may make a contract in the same manner as an adult, subject to the power of disaffirmance"); *G.G. v. Valve Corp.*, No. 16-1941, 2017 WL 1210220, at *3 (W.D. Wash. Apr. 3, 2017) (granting motion to compel arbitration because minors were bound by arbitration agreement with defendant); *C.M.D. ex rel. De Young v. Facebook, Inc.*, 621 F. App'x 488, 489 (9th Cir. 2015) ("By continuing to use facebook.com after bringing their action, Plaintiffs manifested an intention not to disaffirm the contract."). And, "[i]f a minor cannot return the benefits obtained … then she is effectively precluded from disaffirming the contract in order to get back the consideration she has given." *I.C. ex rel. Solovsky v. Delta Galil USA*, 135 F. Supp. 3d 196, 210 (S.D.N.Y. 2015) (minor plaintiff was "precluded from disaffirming the contract" where disaffirmance would "put her in a superior position than she would have occupied had she never entered the [contract]"); *E.K.D. ex rel. Dawes v. Facebook, Inc.*, 885 F. Supp. 2d 894, 900 (S.D. Ill. 2012) (minor plaintiffs could not disaffirm the forum-selection clause in Facebook's terms because they "have used and continue to use facebook.com"); *Sheller ex rel. Sheller v. Frank's Nursery & Crafts, Inc.*, 957 F. Supp. 150, 153 (N.D. Ill. 1997) (enforcing arbitration provision in contract against minors where minors had received the benefits of the contract).[18]

***

---

[17] After the Supreme Court's decision in *AT&T Mobility v. Concepcion*, arbitration clauses in consumer contracts are widely enforced, except in limited circumstances. 563 U.S. 333 (2011). Courts in this District routinely enforce arbitration clauses contained in electronic agreements. *See, e.g., Miracle-Pond v. Shutterfly, Inc.*, No. 19-cv 04722, 2020 U.S. Dist. LEXIS 86083, at *2 (N.D. Ill. May 15, 2020) (granting motion to compel arbitration and staying class action where contract was formed with hyperlinked policies near a sign-in button); *Johnson v. Uber Techs., Inc.*, No. 16-cv-5468, 2018 U.S. Dist. LEXIS 161155, at *3-4 (N.D. Ill. Sep. 20, 2018) (same).

[18] *See* TikTok's Statement in Support of Final Approval of Class Settlement and Opposition to Motion to Intervene dated June 20, 2020 (ECF Doc. #34) filed in *T.K., et al v. Bytedance Technology Co., Ltd, et al*, Case No.: 1:19-CV-07915 (N.D. IL), and attached hereto as Exhibit D at pp. 8-9.

> "***Defendant TikTok, Inc., the operator of the TikTok—Make Your Day app ("the App") intends to file a motion to compel arbitration***, as it believes Plaintiff agreed to arbitrate any claims arising from her use of the App. If any part of this action is not referred to arbitration, foreign defendants Beijing Bytedance Technology Co., Ltd. and Musical.ly ("the Foreign Defendants") will move to dismiss for lack of personal jurisdiction as the Foreign Defendants are not subject to personal jurisdiction in California because they are not incorporated here, they do not have their principal place of business here, and they do not operate the TikTok App. Similarly, while defendant Bytedance Inc. does have its headquarters in this District, this defendant is not a proper defendant in this action because it plays no role in the operation of the App. Plaintiff appears to have simply named every entity it could find with any corporate relationship to defendant TikTok, Inc. At a minimum, Plaintiff should drop all defendants but TikTok, Inc. from the amended complaint Plaintiff intends to file on May 11, 2020 to avoid wasting the Court's and the parties' resources on needless motion practice to resolve these issues."[19]

On the very first page of their preliminary approval motion, Plaintiffs' admit that they faced "material risks" that this Court will grant TikTok's anticipated motion to compel arbitration with respect to non-minor users.[20] As Plaintiffs go on to state, the enforcement of the arbitration clause is a significant risk for the class:

> **First, TikTok has repeatedly asserted that Plaintiffs' claims are subject to an arbitration and class action waiver agreement. According to TikTok, at all relevant times, every TikTok user agreed to an arbitration and class-waiver provision in the App's Terms of Service ("Terms").** When users create their accounts in the App, they encounter a sign-in screen with hyperlinks to the Terms that read: "By continuing, you agree to TikTok's Terms of Use and confirm that you have read TikTok's Privacy Policy." While Plaintiffs believe TikTok's policies were not adequately presented or otherwise disclosed to its users, and that class members should not be bound by their provisions, Plaintiffs acknowledge that courts have consistently held that users were on notice of—and thus had agreed to—virtually identical disclosures. *See, e.g., Miracle-Pond v. Shutterfly, Inc.*, No. 19-cv 04722, 2020 U.S. Dist. LEXIS 86083, at *2 (N.D. Ill. May 15, 2020) (granting motion to compel arbitration and staying class action where contract was formed with hyperlinked policies near a sign-in button); *Peter v. DoorDash, Inc.*, No. 19-CV-06098-JST, --- F. Supp. 3d ---, 2020 WL 1967568, at *4 (N.D. Cal.

---

[19] *See* TikTok's position asserted in the Joint Case Management Conference Statement dated April 22, 2020, (ECF Doc. #30) filed in *Hong v. ByteDance, Inc.*, *A Corporation, et al*, Case No.: MDL 2948) (N.D. Cal.), and attached hereto as **Exhibit E** at pp. 2-3.
[20] *See* Plaintiffs' Motion for Preliminary Approval of a Class Action Settlement in *In Re: TikTok, Inc., Consumer Privacy Litigation*, Case No.: 1:2020-cv-04699 (N.D. IL), Document No. 122 ("Preliminary Approval Motion").

Apr. 23, 2020) (same); *Johnson v. Uber Techs., Inc.,* No. 16-cv-5468, 2018 U.S. Dist. LEXIS 161155, at *3-4 (N.D. Ill. Sep. 20, 2018) (same)*; Dohrmann v. Intuit, Inc.*, 823 F. App'x 482 (9th Cir. 2020) (reversing denial of motion to compel arbitration where website required acknowledgment of agreement before proceeding).[21]

### III. TikTok Suddenly Reverses Course, Seeking A Class-Wide Release To Bar Enforcement Of The Same Mandatory Arbitration Clause It Imposed On Consumers.

TikTok is now willing to waive its mandate to arbitration under the Settlement Agreement (for purposes of settlement only, of course). But TikTok cannot avoid its obligations to arbitrate or waive the Arbitration Claimants' right to avoid the burdens of a class proceeding in court. It is "the irony upon irony" that TikTok now "wishes to resort to a class-wide lawsuit, the very device it denied to the [claimants], to avoid its duty to arbitrate." *Abernathy v. DoorDash, Inc.*, 438 F. Supp. 3d 1062, 1068 (N.D. Cal. 2020).

TikTok's Terms of Service unequivocally state that ***all disputes must be resolved by binding arbitration*** rather than in court. *See* Exhibit A (emphasis added). The only exceptions are claims brought in small claims court or claims made by TikTok related to infringement of its intellectual property or unauthorized access to its services. *Id.* In stark contrast to TikTok's prior assertions about the enforceability of its arbitration clause, TikTok now seeks to create a new "settlement" exception that gives it the right to resolve disputes currently noticed to be arbitrated through a class-wide settlement. No such exception exists. The Arbitration Claimants respectfully request that this Court require TikTok to honor its Terms of Service and allow the Arbitration Claimants to arbitrate their claims.

---

[21] Preliminary Approval Motion, at 4-5.

**IV.     The Opt-Out Procedure Violates Due Process**

In return for the steep discount on the valuable statutory claims possessed by a nearly 90-million-member class, TikTok demanded an onerous set of requirements that burden the Arbitration Claimants' ability to opt-out and proceed with arbitration.  As previously stated, the Proposed Settlement Agreement's provision requires users seeking to exercise their due process right to opt-out to prepare and mail a timely letter to a P.O. Box in Pennsylvania that among other things, identifies the action, provides full name, address email address and telephone number, and includes a signature and the date it was signed – while the opt-*in* claim form is digital and submitted online.[22]  The terms of the opt-out provision specifically exclude "mass" or "class" opt-outs. Courts routinely find these stringent opt-out provisions to be unfair and unduly burdensome.  *See, e.g. Arena v. Intuit Inc.*, 2021 WL 834253, at *11 (N.D. Cal. Mar. 5, 2021).

By inserting a clause that specifically excludes "mass" or "class" opt-outs, TikTok's motives are obvious: the Arbitration Claimants would not object to inclusion in a class settlement if it offered an unimpeded choice to preserve their right to arbitration.  Specifically, the Arbitration Claimants would not object to the settlement if class members who individually retained counsel could communicate their desire to opt out through counsel.  Counsel can advise each client on how to proceed regarding any settlement.  If the Court allows the Arbitration Claimants to communicate their opt-outs through their separately retained counsel, undersigned counsel will ask each Arbitration Claimant to make an individual choice regarding whether to participate in the settlement and then communicate that choice to the Court.  But TikTok will never agree to those

---

[22] See, e.g., Doc. #122-1 (Exhibit A – Settlement Agreement) ("For a Request for Exclusion to be considered by the Court, it must set forth: (i) the name of the Action; (ii) the person's or entity's full name, address, email address and telephone number; (iii) a specific statement of the person's or entity's intention to be excluded from the Settlement; (iv) the identity of the person's or entity's counsel, if represented; and (v) ***the person's or entity's authorized representative's signature and the date on which the request was signed***.") (emphasis added).

terms because it is relying on a burdensome opt-out process to obstruct and confuse the Arbitration Claimants into losing their rights without affirmative consent. That is the very process TikTok promised by contract *not* to use. This Court should not endorse TikTok's efforts to avoid its own contract terms.

## ARGUMENT

### I. The Settlement Is Invalidated By The Federal Arbitration Act Because It Abrogates Section 11 Of TikTok's Terms of Service.

The FAA states that agreements to arbitrate in any "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. "The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). This "liberal federal policy favoring arbitration agreements" applies "notwithstanding any state substantive or procedural policies to the contrary." *Id*. at 346 (quotation marks omitted). It "preempts any state rule discriminating on its face against arbitration," including state law that is facially discriminatory, or "any [state] rule that covertly accomplishes the same objective by disfavoring contracts that (oh so coincidentally) have the same defining features of arbitration agreements." *Kindred Nursing Centers L.P. v. Clark*, 137 S.Ct. 1421, 1426 (2007). The FAA "rests on the authority of Congress to enact substantive rules under the Commerce Clause," *Southland Corp. v. Keating*, 465 U.S. 1, 11 (1984), and the "substantive" rights derived by the FAA are directly enforceable in both federal and state courts. *Perry v. Thomas*, 482 U.S. 483, 489 (1987). The FAA applies to any arbitration agreement that is "written" and in a contract "evidencing a transaction involving commerce." 9 U.S.C. § 2.

The FAA applies to a class action settlement. "[T]he FAA does not authorize a district court to enjoin arbitration" and the claimant's "contractual and statutory right to arbitrate may not

be sacrificed on the altar of efficient class action management." *In re Piper Funds, Inc. Inst. Gov't Income Portfolio Litig*, 71 F.3d 298, 302-03 (8th Cir. 1995). *Piper Funds* is instructive. There, the court reversed a temporary injunction against a pending arbitration entered into in the context of a proposed class action settlement, finding that it "significantly frustrated [claimant's] contractual rights [to arbitrate], as protected by the FAA." *Id*. Courts throughout the country have followed *Piper* in applying the FAA to class action settlements involving claims governed by an arbitration agreement. See *Ahlbrand v. Keeley*, 1998 WL 2001152, at *1 (Mich. App. Jan. 9, 1998) (granting class member opt-out of class to pursue arbitration because "the declaration filed . . . demonstrates a clear intent to choose arbitration over participation in the class action") (citing *Piper*); *Arnold v. DirectTV, Inc.*, 2012 WL 266452, at *2 (E.D. Mo. 2012) (finding that the FAA prohibits courts from enjoining arbitration in class action proceedings) (citing *Piper*); but see *Stott v. Capital Financial Services, Inc.*, 277 F.R.D. 316, 341 (N.D. Tex. 2011) ("If the Court were considering a non-"limited fund" settlement that provided class members the ability to opt out, the Court would not be willing to sacrifice individual class members' contractual right to arbitrate upon the altar of efficient class action management.") (internal quotation omitted).

Illinois Courts agree with *Piper*. "**A court may not authorize notice to individuals whom the court has been shown entered mutual arbitration agreements waiving their right to join the action**." [23] *Bigger v. Facebook, Inc.,* No. 19-1944 (7th Cir. 2020). *Bigger* is authoritative. In *Bigger*, the United States Court of Appeals for the Seventh Circuit was asked to resolve the issue as to whether employees who signed a valid arbitration provision were required to receive notice of a collective action. Since employees who signed arbitration provisions waived their right to "join the action" – thus becoming ineligible - the Court found that notice to those

---

[23] *Bigger v. Facebook, Inc.,* No. 19-1944 (7th Cir. 2020) attached hereto as Exhibit G.

individuals is not authorized because it would only cause confusion and "prompt futile attempts at joinder." *Id.*

The opt-out procedures contained in the Proposed Settlement are also invalidated by the FAA to the extent they impose burdens on arbitration not found in the Terms of Service. The Terms of Service require customers seeking to arbitrate to first attempt to resolve the claim informally and to then notify TikTok's legal department via email if they wish to commence arbitration. They do not require consumers to individually mail a wet-ink form to a P.O. Box in Pennsylvania, especially when they are represented by counsel. That would be absurd, since TikTok's business is conducted entirely online, and counter-productive, since TikTok wants to make it as easy as possible for customers to resolve disputes with it though the Terms of Service. Having agreed with consumers to resolve disputes informally or through arbitration within the framework established by the FAA, TikTok cannot impose additional requirements not found within the Terms of Service as part of a class action settlement. *Piper Funds*, 71 F.3d at 302-03.

## II. The Onerous Opt-Out Procedure Insulates TikTok from Its Arbitration Provision and Violates Due Process.

Opt-out rights in class settlements are evaluated as a matter of due process. *Philips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 n.3 (1985). Courts routinely find that the class action opt-out provisions that impose the same "wet-ink" signature and mail-in form procedures in the Settlement are unduly burdensome. *See, e.g.*, *Abernathy*, 438 F. Supp. 3d 1062, 1067 (N.D. Cal 2020) (wet ink signature requirement was "an obvious attempt to make it as hard as possible for petitioner to opt out, thus binding them to the settlement"); *In re MyFord Touch Consumer Litigation*, 2018 WL 10539267, at *1 (N.D. Cal. June 7, 2018) (denying preliminary approval of settlement because "[I]s there a reason to require a claimant seeking this relief to submit a physical signature rather than an electronic attestation?"); *Knight v. Concentrix Corp.*, 2019 WL 3503052,

at *6 (N.D. Cal. Aug. 1, 2019) (rejecting argument that purported class member must opt-in via wet ink signature because "documents are routinely sent and signed electronically").

Recently, the United States District Court for the Northern District of California denied preliminary approval of a class action settlement with the very same opt-out requirements in a similar context in the ongoing *Intuit* consumer litigation. *Arena v. Intuit*, 2021 WL 83425, at *10 (N.D. Cal. March 5, 2021). Intuit, a major provider of tax filing software and services, spent years steering consumers towards paid tax filing software that cost approximately $100 per year while failing to adequately disclose the existence of free software for low-income and servicemember customers. Intuit's terms of service with customers contained a mandatory individual arbitration clause, and the company successfully moved to compel arbitration of the class action. *Id., see also Dohrmann v. Intuit, Inc.*, 823 F. App'x 482 (9th Cir. 2020) (reversing denial of motion to compel arbitration). *Intuit* is cited by Plaintiffs' in their motion for preliminary approval as justification for why the arbitration clause presents "material risks" to prosecution of this case as a class action.[24]

When thousands of consumers attempted to enforce their right to arbitrate, Intuit reached a class action settlement with the same class plaintiffs it had previously compelled to arbitration. This settlement included an injunction against arbitrations and a requirement that class members comply with burdensome opt-out procedures. The judge refused to grant preliminary approval, finding the settlement did not meet basic standards of fairness, reasonableness, or adequacy. With respect to the opt-out requirements, Judge Charles R. Breyer stated:

> The Court concludes that the opt out requirements in the proposed settlement are unduly burdensome given the unique circumstances of this litigation . . . requiring these class members to opt out by mailing a hard copy letter with a "wet-ink" signature serves little purpose but to burden those who wish to opt out. In a world where Intuit can not only administer settlement claims electronically, but also

---

[24] Motion for Preliminary Approval, at 1.

facilitate safe, legal tax-filing electronically, Intuit can assuredly process opt outs electronically. If electronic signatures are enough for Intuit and the IRS during tax season, they should be enough for Intuit here. *Id.*

Like in *Intuit*, TikTok has no problem with users downloading and using TikTok, accepting the Terms of Service, or accepting claims electronically.[25] To require class members to opt-out using a "wet-ink" signature on a mail-in form that is not even provided to them "serve[s] little purpose but to burden those who wish to opt out." *Intuit*, 2021 WL 834253, at *10; see also Exhibit F at Section 9. It is likely that many Illinois resident class members would otherwise decide to opt-out of a settlement that provides them with just $19 based on expected claims rates in other major data privacy class action settlements (Litteken Obj. at 9) and proceed to individual arbitration. These individuals would be deterred by both the low amount provided in the Proposed Settlement and its burdensome opt-out requirements.

Burdensome opt-out requirements like these are sufficient basis to deny a class action settlement even at preliminary approval. *See Intuit,* 2021 WL 834253, at *10; *Hadley v. Kellogg Sales Co.*, 2020 WL 836673, at *8 (N.D. Cal. Feb. 20, 2020) (denying preliminary approval of settlement in part based on opt-out procedure that was "needlessly burdensome for class members" where class members who wish to opt-out must download a form from the website, complete it, and mail back to the administrator); *Newman v. AmeriCredit Fin. Servs. Inc.*, 2014 WL 12789177, at *6 (S.D. Cal. Feb. 3, 2014) (denying preliminary approval because of opt-out mailing requirement and limitation on ability for class members to opt-out as a group). At a minimum, the Court should modify the Proposed Notice to permit the Arbitration Claimants to opt-out through counsel, and to require TikTok to provide the rest of the class an electronic means to opt-out that is functionally equivalent to the opt-in procedures. This procedure would guarantee that those

---

[25] See the Proposed Settlement Notice, Exhibit F at Section 8 (stating a claimant can "submit … a Claim Form Online").

class members that wish to participate in the Proposed Settlement may do so, while those who wish to opt-out and exercise their rights under the Terms of Service to proceed in individual arbitration may also do so with minimal burden.

## CONCLUSION

This Court should deny preliminary approval of the Proposed Settlement because it is invalidated by the FAA, is not fair, reasonable, or adequate for the Settlement Class, and violates Due Process. If the Court prefers to modify the Proposed Settlement, it should exclude the Arbitration Claimants or permit them to opt-out, through counsel, and pursue their rights under Section 11 of the TikTok Terms of Service. Should the Preliminary Approval Order contain any injunction against arbitrations, the Court should also decline to enter that order without explicitly carving out arbitrations from its scope.

Dated: April 2, 2021

/s/ *Michael D. Smith*
Michael D. Smith (6210109)
**Law Office of Michael D. Smith, P.C.**
231 South LaSalle Street
Suite 2100
Chicago, Il 60604
Tel: (312) 546-6138
msmith@smithlawchicago.com

Jonathan Gardner (pending *pro hac vice*)
Melissa H. Nafash (pending *pro hac vice*)
Jonathan D. Waisnor (pending *pro hac vice*)
**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005
Tel: (212) 907-0700
Fax: (212) 818-0477
jgardner@labaton.com
mnafash@labaton.com
jwaisnor@labaton.com

*Attorneys for Objectors and the Arbitration Claimants*