**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE: TIKTOK, INC., CONSUMER PRIVACY LITIGATION,** | **MDL No. 2948** |
| | **Master Docket No. 20-cv-4699** |
| | **Judge John Z. Lee** |
| | **Magistrate Judge Sunil R. Harjani** |
| **This Document Relates to All Cases** | |

**PLAINTIFFS' RESPONSE TO OBJECTION OF BRIAN BEHNKEN**
**AND JOSHUA DUGAN TO PROPOSED CLASS ACTION SETTLEMENT**

**I.      Introduction**

Two objectors represented by the Labaton firm (Edelson's co-counsel in *Facebook BIPA*[1]) indicate their intent to opt-out of the Settlement.  At the same time, however, they object to the Settlement.  Because a class member who excludes themselves from a settlement class does not have standing to object, their objection should be dismissed.

Even were the Court to consider the objection, it is not well-taken.  Labaton's claim that an opt-out procedure that requires a writing and evidence (i.e. a signature) that each individual class member has knowingly exercised his or her right to opt-out is burdensome, is spurious given that it is the exact same procedure used in *Facebook BIPA,* and presumably, in hundreds of other class settlements negotiated by Labaton.  As reflected further below, the objection should be denied and this Court should grant Plaintiffs' motion for preliminary approval.

---

[1] "*Facebook BIPA*" was previously referenced in Plaintiffs' motion for preliminary approval and refers to *Facebook Biometric Info. Privacy Litig.*, No. 15-cv-03747-JD (N.D. Cal.). While Labaton states that they represent 957 other individuals, the individuals are not identified and are not before this Court.

## II.    "Arbitration Claimants" Have No Standing To Object

It is black letter law that class members who opt-out of the class do not have standing to object to a class settlement.  *In re NCAA Student-Athlete Concussion Injury Litig.*, 332 F.R.D. 202, 219 (N.D. Ill. 2019) (Lee, J.).  The general rule is that "a non-settling party does not have standing to object to a settlement between other parties." *Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242, 246 (7th Cir.1992); *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 501 (7th Cir. 2012) (citing *Agretti*); *In re Vioxx Prod. Liab. Litig.*, 388 F. App'x 391, 395 (5th Cir. 2010) ("non-settling parties generally have no standing to challenge the settlement"); *Mayfield v. Barr*, 985 F.2d 1090 (D.C.Cir.1993) (explaining that individuals who opt out have no standing to challenge the court's approval of a settlement agreement).[2]  This is because allowing an opt-out to interfere with the class's right of settlement permits the opt-out to exert undue influence on the rights of others:

> [a] party ought not be able to spoil a settlement by interposing objections and then leave the litigation. Neither does it seem fair and reasonable to allow a party to condition his opt out upon the court's acceptance or rejection of the objections to the settlement. If an absent class member (or even a class representative) desires to affect the settlement by filing objections, then the objector must abide the result and be bound by the consequences. If the settlement is unpalatable, the class member may opt out and avoid the binding effect of the settlement judgment. To allow the class member to have it both ways, however, would countenance the practice of influencing litigation—or attempting to do so—in which the class member really has no stake. That result is unacceptable.

---

[2] The Seventh Circuit recognizes a narrow exception in cases where a settlement agreement strips non-settling parties of their rights and results in "plain legal prejudice." *Agretti,* 982 F.2d at 246-247.   But "[m]ere allegations of injury in fact or tactical disadvantage as a result of a settlement simply do not rise to the level of plain legal prejudice." *Id*. at 247.  Here, the Settlement contains an opt-out mechanism specifically allowing Arbitration Claimants to exercise their rights and they do not show any plain legal prejudice that justifies their attempted interference with the settlement process.

*Olden v. LaFarge Corp.*, 472 F. Supp. 2d 922, 931 (E.D. Mich. 2007) (internal citations omitted).

Influencing this litigation is exactly what Arbitration Claimants seek: they ask the Court to deny preliminary approval, re-write a Settlement in which they will not participate and even attempt to force the settling Plaintiffs into arbitration though they are unwilling to arbitrate and Defendants have relinquished their contractual right to compel them to do so. Because they have no stake in the Settlement, Arbitration Claimants cannot object, whether on their own, by adopting the objections of their co-counsel from *Facebook BIPA,* or in reiterating the objections of any other counsel.

In claiming that the proposed Settlement violates the Federal Arbitration Act, Arbitration Claimants take great liberties in summarizing the holding in *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1047 (7th Cir. 2020). Their reliance is misplaced. In *Bigger*, the Seventh Circuit considered the *defendant's* challenge to a court-ordered notice based on the argument that the recipients "entered [into] arbitration agreements waiving the right to participate in the action." *Id*. As such, the defendant (not some unrelated "Arbitration Claimant" asserting an individual right to arbitrate) was attempting to exercise its right to enforce its own agreements to arbitrate. Here, Arbitration Claimants have no right to thwart a class action settlement by compelling other plaintiffs, with whom they have no contractual relationship, to arbitrate. They are not parties to any purported agreement to arbitrate between the settling Plaintiffs and Defendants (if this case were to proceed, the existence of any agreement would be challenged) and they have no standing to enforce any such agreement. *Bigger* simply does not apply to the facts of this case.

3

In any event, since Arbitration Claimants wish to proceed as opt-outs, they have no standing to interfere with the class settlement and the Court should deny their objections out of hand.

### III. Requiring Individual Class Members To Manifest Their Intent To Opt-Out Is Standard Operating Procedure To Ensure Settlement Class Members Are Not Induced Unknowingly To Forego Settlement Benefits.

Apart from lacking standing, Arbitration Claimants' protestations are not ripe: until the Court preliminary approves the Settlement, there is nothing to opt-out of and the right to opt-out has not manifested. If the Settlement is approved, the Court preliminarily certifies a settlement class, notice is disseminated and the opt-out procedure put in place, then class members may appropriately exercise their rights in keeping with that procedure. And after the opt-outs submit their requests, this Court can consider their validity at an appropriate future time (as opposed to now, where the Court does not even have basic information about 957 of Labaton's "Arbitration Claimants"). What these unidentified opt-outs ask the Court to do, in effect, is to impose a mechanism in the Settlement Agreement that would permit them to solicit mass or class opt-outs for purposes of filing individual arbitrations. This contravenes Rule 23, public policy favoring settlement of class actions, and worst of all, threatens the administration of justice.

Labaton and Edelson are keenly aware of the dangers posed by mass solicitation like this. In fact, in *Facebook BIPA*, they filed an Emergency Motion for a Temporary Restraining Order against the law firm Levi & Korsinsky LLP ("Levi") when Levi solicited absent class members to opt out of their settlement. *Facebook BIPA*, No. 15-cv-03747, ECF No. 477 (attached hereto as **Exhibit A**). Levi, which had not been involved as counsel in the litigation, ran ads on Facebook and established its own website to solicit class members to "sign up" for a claim, after preliminary approval had been granted. *Id.* at ¶ 2. Labaton and Edelson complained to Judge

Donato of the "urgent need" to protect absent class members from Levi's misleading solicitations. They even cited caselaw concerning the ability of courts to correct any communication "that is misleading, coercive, or *discourages participation in the lawsuit*." *Id.* at ¶¶ 5, 7 (citing *Cruz v. Redfin Corp.*, No. 14-CV-05234-TEH, 2016 WL 2621966, at *1 (N.D. Cal. May 9, 2016)). Labaton and Edelson specifically argued that Levi's ads were designed to discourage participation because class members were not advised of their rights or informed that the request for them to sign-up to file a claim meant that they were actually opting out of the lawsuit. *Id.* at ¶¶ 8-12. To address class member confusion, Judge Donato ordered Levi to disseminate a curative notice. *Facebook BIPA*, No. 15-cv-03747, ECF No. 494 (attached hereto as **Exhibit B**).

Labaton now resurrects the playbook Levi used against it and Edelson. The fact that Labaton has signed up, in addition to the 2 named opt-outs, 957 "other individuals" raises questions. The manner in which Labaton signed so many people in such a compressed period of time, while at the same time refusing to properly identify them for the Court, may give rise to future areas of inquiry. *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*, 910 F. Supp. 2d 891, 939 (E.D. La. 2012), *aff'd sub nom., In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014) ("counsel for such mass opt-outs may have breached their fiduciary and ethical duties to their clients; at the very least, the mass unsigned opt outs are highly indicative of a conclusion that such counsel did not spend very much time evaluating the merits of whether or not to opt-out in light of the individual circumstances of each of their clients and in consultation with them"); *Georgine v. Amchem Prod., Inc.,* 160 F.R.D. 478, 505 (E.D. Pa. 1995) (invalidating improperly obtained exclusion requests based misleading solicitations, ordering curative notice and second opt-out period to permit class members to make an informed

decision); *Masonek v. Wells Fargo Bank*, No. SACV091048DOCRNBX, 2009 WL 10672345, at *4 (C.D. Cal. Dec. 21, 2009) (ordering curative notice to address misleading communications with absent class members).

As the Court is already aware, Plaintiffs raised concerns with Mr. Edelson's dissemination of misleading information concerning the settlement and these proceedings to potential class members and the public at large. *See* Declaration of Katrina Carroll, ECF 138. At this point, Plaintiffs do not have information concerning the solicitation efforts of Mr. Edelson's co-counsel to sufficiently permit them to assess whether misleading information is being conveyed, but Plaintiffs reserve their right to pursue future discovery into such matters. For now, however, these inquiries need not derail preliminary approval, especially since Labaton's clients seek to exclude themselves and have no standing to object.

## IV.    The Opt-Out Provision Is Not Burdensome

Even if the Court is to independently consider the opt-out procedure proposed in the Settlement Agreement, it should find that there is nothing improper or burdensome about it. The procedure is standard in class action settlements, and consistent with Rule 23's policy that the right to opt-out must be exercised individually. Prohibiting mass opt-outs and requiring class members to submit signed requests in writing are mechanisms regularly endorsed by courts as designed to ensure that class members understand their rights and are voluntarily exercising them.

Despite their feigned ignorance, Labaton and Edelson included a nearly identical opt-out provision in their *Facebook BIPA* settlement agreement. Like here, the *Facebook BIPA* provision contains the same prohibition on mass opt-outs, requires opt-out requests to be signed and asks class members to supply identifying details concerning the litigation. In fact, the only

distinguishing feature is that *Facebook BIPA* required the settlement administrator to accept

exclusion requests by email "[i]n light of the COVID-19 pandemic," although each class member

was still required to submit the exclusion request in writing, with a *personal* signature along with

relevant identifying information (requirements that Labaton now conveniently claims are unduly

burdensome):

> A Class Member may request to be excluded from the Class by sending a
> **written request** that is received on or before the Objection/Exclusion Deadline
> approved by the Court and specified in the Notice. **To exercise the right to be
> excluded, a Class Member must timely send a written request for exclusion
> to the Settlement Administrator providing his/her name, address and email;
> a signature, the name and number of the Action, and a statement that he or
> she wishes to be excluded from the Class for purposes of this Settlement.** In
> light of the COVID-19 pandemic, the Settlement Administrator shall create a
> dedicated e-mail address to receive exclusion requests electronically. **A request
> to be excluded that does not include all of this information, or that is sent to
> an address other than that designated in the Notice, or that is not
> postmarked within the time specified, shall be invalid**, and the person(s)
> serving such a request remain a member(s) of the Class and shall be bound as a
> Class Member by this Agreement, if approved. Any member of the Class who
> validly elects to be excluded from this Agreement shall not: (i) be bound by any
> orders or the Final Judgment; (ii) be entitled to relief under this Settlement
> Agreement; (iii) gain any rights by virtue of this Agreement; or (iv) be entitled to
> object to any aspect of this Agreement. **The request for exclusion must be
> personally signed by the person requesting exclusion. <u>So-called "mass" or
> "class" opt-outs shall not be allowed</u>.** To be valid, a request for exclusion must
> be postmarked or received by the date specified in the Notice.

*Facebook BIPA*, No. 15-cv-03747, ECF No. 468 at §4.5 (pp.23) (emphasis added) (attached

hereto as **<u>Exhibit C</u>**). In fact, Labaton has participated as class counsel in hundreds, if not

thousands, of settlements requiring class members to individually sign exclusion requests.[3]

---

[3] *See, e.g.,* Stipulation and Agreement of Settlement, ¶ 15 (in class settlement agreement signed
by Labaton: "Such request for exclusion … must be signed by such Person."), available at
https://www.liventsecuritiessettlement.com/Content/Documents/Stipulation%20and%20Settleme
nt%20Agreement.pdf (last accessed April 3, 2021); Stipulation and Agreement of Settlement, ¶
15 ("Such request for exclusion … must be signed by such Person."), available at
https://www.drreddyssecuritiessettlement.com/Content/Documents/Stipulation%20and%20Agre

Contrary to Labaton's flawed protestations, courts do not "routinely" invalidate opt-out provisions like this. To the contrary, courts recognize that "[o]pting out is an individual right [that] must be exercised individually." *In re Diet Drugs*, 282 F.3d 220, 241 (3d Cir. 2002); *In re Nat'l Football League Players' Concussion Inj. Litig.*, No. 14-1995 (MDL No. 2323), 2019 WL 95917, at *5 (E.D. Pa. Jan. 3, 2019) ("[t]he right to opt out of a class action is one that must be exercised individually"); *Wai Hoe Liew v. Cohen & Slamowitz, LLP*, 265 F. Supp. 3d 260, 275 (E.D.N.Y. 2017) ("[i]f opt-out plaintiffs wish to pursue their individual claims, they must do so individually, and not as a resurrected class"); *see also* William Rubenstein et al., Newberg on Class Actions § 9:49 (5th ed. 2013) ("The right to opt out in a Rule 23(b)(3) class action is considered an individual right.").

And actually, what courts "routinely" reject are attempts by lawyers to "effect mass opt outs of all of their clients with the filing of a single notice." *Diet Drugs*, 282 F.3d at 241 (referring to district court ruling). This is apparently the approach Labaton asks this Court to endorse by permitting mass opt-outs to be submitted electronically and without individual

---

ement%20of%20Settlement.pdf (last accessed April 3, 2021); Stipulation of Settlement, ¶ B.2("The Request for Exclusion must comply with the Preliminary Approval Order and include the Settlement Class Member's … signature,…"), available at http://www.devrysecuritiessettlement.com/media/2323598/stipulation_of_settlement.pdf (last accessed April 3, 2021). *See also, e.g.,* Order Granting Preliminary Approval of Class Action Settlement, Approving Form and Manner of Notice, and Setting Date for Hearing on Final Approval of Settlement, ¶ 18 (granting preliminarily approval of settlement, preliminarily appointing Labaton as Class Counsel, and stating that any "request for exclusion must state the name, address, and telephone number of the Person seeking exclusion, must state that the sender requests to be "excluded from the Settlement Class in *Steamfitters Local 449 Pension Plan vs. Molina Healthcare, Inc., et al.*, Case No. 2:18-cv-03579 AB (JCx) (C.D. Cal.)" and must be signed by such Person."), available at https://angeion-public.s3.amazonaws.com/www.MolinaHealthcareSecuritiesSettlement.com/docs/Molina+-+Entered+Preliminary+Approval+Order++(2404392_1).PDF (last accessed April 3, 2021).

signatures.  The Court should reject Labaton's invitation to re-write the settlement agreement to suit its purposes.

District courts overseeing complex class actions have discretion to require that opt-out requests be signed by each class member and reject requests signed by an attorney.  *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 355 (6th Cir. 2009) (observing that there is no case "that requires district courts to accept opt-out forms signed by attorneys," because "[t]o impose such an unbending rule would unduly interfere with the district court's broad authority to manage class actions by governing the conduct of counsel and the parties") (citation omitted); *In re Centurylink Sales Practices & Sec. Litig.* ("*Centurylink*"), No. CV 17-2832, 2020 WL 3512807, at *3 (D. Minn. June 29, 2020) (citing *Moulton*).  It is also "commonplace" and not "unduly burdensome" for courts to require that opt-outs "provide some proof of class membership."  *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 118 (D.N.J. 2012) (rejecting attempt by an opt-out to seek exclusion on behalf of a class of opt-outs).

The Honorable Michael Davis, presiding over the *Centurylink* MDL, recently conducted an exhaustive analysis of opt-out procedures as they relate to mass solicitation of class members to file individual arbitrations.  That case involved a consumer settlement involving 17 million class members, including approximately 16,000 class members represented by the firm Keller Lenkner who, like Labaton, solicited arbitration opt-outs.  At the preliminary approval stage, Judge Davis had approved the following procedure for opting out:

> Settlement Class Members may elect to not be part of the Class and to not be bound by this Settlement Agreement. To make this election, Class Members must send a **written notification** to the Settlement Administrator that (a) clearly identifies the case name and number; (b) includes the full name and either the unique identification number for the Settlement Class Member assigned by the Settlement Administrator, or the Settlement Class Member's account number with CenturyLink; (c) includes the address, telephone number (optional), and email address (optional) of the Settlement Class Member seeking exclusion; (d) **is**

9

**signed by the Settlement Class Member;** and (e) contains a statement that the requestor does not wish to participate in the Settlement. A request for exclusion must be submitted no later than one hundred and fifty-one (151) calendar days after entry of this Order**. Settlement Class Members who are opting out must each separately and individually comply with the requirements of this paragraph**.

*Centurylink*, 2020 WL 3512807, at *1 (D. Minn. June 29, 2020) (emphasis added).

Unlike Labaton who failed to supply basic information on its nearly 1,000 opt-out clients, in *Centurylink*, Keller submitted a mass opt-out list to the Court but did not include any individual signatures or the required identifying information. The court held that the signature requirement for an opt-out is "vital, because it ensures that the class member is individually consenting to opt out, and avoids a third party or lawyer representing that they have that class member's authority, without the class member making an informed, individual decision." *Id*. at *3; *see also Hallie v. Wells Fargo Bank, N.A.*, No. 2:12-CV-00235-PPS, 2015 WL 1914864, at *4 (N.D. Ind. Apr. 27, 2015) (noting that signed, individual requests for exclusion increase likelihood that class members will make informed and individualized decisions on whether to opt-out).

Judge Davis further recognized the importance of individualized decision-making by class members given the economic incentives of counsel soliciting opt-outs. In *Centurylink*, there was evidence in the record that the Keller firm gave "generic advice to 22,000 clients that they should all opt out, an act that greatly benefits Keller financially." *Id*. at *4. Judge Davis was troubled that the "sheer number of Keller's clients given the size of the law firm and the strong financial incentive that Keller faces in recommending opt outs raise questions about whether each of its client's opt-out requests were made individually and intelligently." *Id*. This Court could be similarly troubled here if it does not approve an opt-out procedure that contains a

signature requirement and otherwise reflects that class members were apprised of their options

and exercised their right to opt out voluntarily.

Judge Davis also rejected the same argument Labaton makes here under *Piper Funds*-

that denying an opt-out request when a class member asserts his or her right to arbitration

violates the Federal Arbitration Act:

> Here, the vast majority of Keller's clients have not even made an attempt
> to show that they have initiated an arbitration against CenturyLink or that
> they have a contractual right to arbitrate. Only 6 of the more than 16,000
> Keller clients listed in the opt-out lists have filed a motion to intervene
> and compel arbitration, which is hotly contested and will be addressed in
> a separate order. <u>Piper</u> has no applicability to the remaining clients on
> Keller's opt-out lists.

*Centurylink*, 2020 WL 3512807, at \*8.  The circumstances here are even more compelling since

Labaton has not even bothered to give basic identifying information on the individuals who

purportedly wish to arbitrate.

Arbitration Claimants make several references to the ability of class members to "opt-in"

to the settlement electronically while criticizing the proposed opt-out mechanism which requires

some additional steps.  Arbitration Claimants apparently do not understand that this is an "opt-

out" settlement under Rule 23: if the settlement is finally approved, all class members will be

automatically bound.  The settlement does not require anyone to act, electronically or otherwise,

to submit any written consent to be included.  *See McClain v. Leona's Pizzeria, Inc.*, 222 F.R.D.

574, 576 (N.D. Ill. 2004) (explaining opt-out procedure under Rule 23 settlement in contrast to

the "opt-in system for collective actions" under the Fair Labor Standards Act).[4]  Though class

---

[4] In fact, under the FLSA, the requirement to "opt-in" is more onerous than the procedure to opt-
out under the Settlement here since, apart from mailing a letter, "[t]he statute mandates that an
individual must 'opt in' to the representative action by (1) giving written consent and (2) filing
that consent with the court."  *Tate v. Showboat Marina Casino P'ship*, No. 02 C 3432, 2002 WL
31253843, at \*1 (N.D. Ill. Oct. 8, 2002), *amended on reconsideration*, 2002 WL 31443124 (N.D.

members may *file a claim* electronically, filing a claim is not an opt-in mechanism. Nor is there

any requirement that filing a claim should be accomplished in the same manner as submitting a

request to opt-out. Indeed, that would encourage mass-opt outs and circumvent the individual

nature of the request to opt-out under Rule 23. As Judge Thrash overseeing the Equifax data

breach MDL held in granting final approval of the class settlement:

> The Court overrules all objections related to the procedures for how to opt out.
> The exclusion procedure is simple, affords class members a reasonable time in
> which to exercise their option, and is conventional. The individual signature
> requirement on opt-out requests is not burdensome at all. Moreover, it ensures
> that each individual has carefully considered his options and understands that he
> is giving up his right to relief under the settlement. While technology provides an
> avenue for filing claim forms more easily, it also makes it easier for third parties
> and their counsel to file unauthorized "mass opt-outs," which are sometimes
> "highly indicative of a conclusion that such counsel did not spend much time
> evaluating the merits of whether or not to opt-out in light of the individual
> circumstances of each of their clients and in consultation with them. The Court's
> Order Directing Notice clearly did not present insurmountable hurdles to opting
> out of the settlement class.

*In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800-TWT (MDL 2800),

2020 WL 256132, at *26 (N.D. Ga. Mar. 17, 2020) (footnote and quotations omitted).

In *Centurylink*, Judge Davis ultimately rejected Keller's mass opt-out list and ordered

compliance with standard opt-out requirements including requiring class members to supply

basic identifying information (including their account numbers and settlement identification

numbers), information about the litigation, sign opt-out requests and include in their requests a

statement that they do not wish to participate in the settlement. *Centurylink*, at *8.

What is perhaps most telling, however, is that after Judge Davis enforced these standard

opt-out requirements, out of 16,000 Keller represented opt-outs, *only 5 actually pursued*

*arbitration*. One movant "stopped responding to Keller and did not submit a valid opt-out

---

Ill. Oct. 31, 2002). In contrast, the opt-out procedure here requires a simple written request
without requiring class members to make any court filings.

request" and apparently, the vast majority of others "later changed their mind and decided to join in the class settlement." *See Centurylink*, ECF 26 (attached hereto as **Exhibit D**), at pp. 6-7. These results speak for themselves.

In short, there is nothing improper about the exclusion procedure proposed in the Settlement Agreement. That agreement should be preliminary approved and the notice program be allowed to proceed in its normal course.

Dated: April 5, 2021                    Respectfully Submitted,

                                        By: */s/ Katrina Carroll*

                                        Katrina Carroll
                                        CARLSON LYNCH, LLP
                                        111 W. Washington St.
                                        Suite 1240
                                        Chicago IL 60602
                                        312.750.1265
                                        kcarroll@carlsonlynch.com

                                        By: */s/ Elizabeth A. Fegan*
                                        Elizabeth A. Fegan
                                        FEGAN SCOTT LLC
                                        150 S. Wacker Dr., 24th Floor
                                        Chicago, IL 60606
                                        Ph: 312.741.1019
                                        Fax: 312.264.0100
                                        beth@feganscott.com

                                        By: */s/ Ekwan Rhow*
                                        Ekwan Rhow
                                        BIRD, MARELLA, BOXER, WOLPERT,
                                        NESSIM, DROOKS, LINCENBERG &
                                        RHOW, P.C.
                                        1875 Century Park East, 23rd Floor
                                        Los Angeles, CA 90067
                                        (310) 201-2100
                                        erhow@birdmarella.com

                                        *Plaintiffs' Co-Lead Counsel*

                                        Jonathan Jagher

13

Freed Kanner London & Millen LLC
923 Fayette Street
Conshohocken, PA 19428
(610) 234-6487
jjagher@fklmlaw.com

Megan E. Jones
Hausfeld LLP
1700 K Street NW, Suite 650
Washington, D.C. 20006
 (202) 540-7200
mjones@hausfledllp.com

Michael Gervais
Susman Godfrey LLP
1900 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
(310) 789-3100
mgervais@susmangodfrey.com

Amanda K. Klevorn
Burns Charest LLP
365 Canal Street
Suite 1170
New Orleans, LA 70130
(504) 799-2845
aklevorn@burnscharest.com

Albert Y. Chang
Bottini & Bottini, Inc.
7817 Ivanhoe Avenue
Suite 102
La Jolla, CA 92037
(858) 914-2001
achang@bottinilaw.com

*Plaintiffs' Steering Committee*

Shannon Marie McNulty
Clifford Law Offices, P.C.
120 North LaSalle Street, Suite 3100
Chicago, IL 60602
(312) 899-9090
smm@cliffordlaw.com

14

*Plaintiffs' Liaison Counsel*

15