**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: TIKTOK, INC. CONSUMER PRIVACY LITIGATION | MDL No. 2948 |
| | Master Docket No. 20 C 4699 |
| | Judge John Z. Lee |
| This Document Relates to All Cases | Magistrate Judge Sunil R. Harjani |

**REPLY BRIEF IN SUPPORT OF OBJECTION OF BRIAN BEHNKEN
AND JOSHUA DUGAN TO PROPOSED CLASS ACTION SETTLEMENT**

**I.    Introduction.**

Plaintiffs filed a response ("Response") to the Objection of Brian Behnken and Joshua Dugan, and 957 other individuals ("Arbitration Claimants") indicating that Arbitration Claimants have no standing to object to the settlement. Subsequently, Defendants confirmed that they would not engage in TikTok's Terms of Service ("TOS") dispute resolution process with Arbitration Claimants and refused to exclude them from the Settlement Agreement[1] or permit them to opt-out through counsel. Defendants admitted that they were seeking to use the opt-out requirements to shield themselves from arbitration claims, breaching the very same dispute resolution clause they claim they would enforce to bar this case from proceeding as a class action. The Arbitration Claimants have standing to object to onerous opt-out procedures that would burden their right to arbitration if the Court were to approve them.

---

[1] "Settlement Agreement" refers to the Settlement Agreement and Release filed in connection with Plaintiffs' Motion for Preliminary Approval of Class Action Settlement filed on February 25, 2021. *See* Doc. #122.

As a preliminary matter, if Plaintiffs' and Defendants both believe that the Arbitration Claimants do not have standing and/or are excluded from the Settlement Class then they could agree that the Arbitration Claimants' will be opted-out through counsel. This would not affect the settlement in any material way. In fact, permitting people to opt-out through counsel who have indicated an intent to pursue claims in arbitration would only increase the amount available in the Settlement Fund for class members who want to participate. Instead, Plaintiffs spend thirteen (13) pages explaining that Arbitration Claimants should now *also* be required to comply with a burdensome opt-out procedure of a class action that was **specifically excluded** as a means of recourse in their contract with Defendants. It is unclear why Plaintiffs have such an interest in forcing Arbitration Claimants, and other class members who may wish to opt-out, into the class.

Contrary to the position taken by Plaintiffs, Arbitration Claimants are not seeking to disrupt the settlement for their counsel to encourage people to opt-out. Instead, Arbitration Claimants are protecting their rights to invoke arbitration under TikTok's TOS. The need for this is obvious as Defendants have now confirmed they will not engage in the TOS dispute resolution procedures until Arbitration Claimants comply with the opt-out requirements. The Court should modify these requirements to permit Arbitration Claimants, and anyone else wishing to opt-out and pursue arbitration, to do so through counsel and without providing extraneous information not required by the TOS.

## II. The Arbitration Claimants Have Standing to Object and Are Not Exerting "Undue Influence."

Plaintiffs' incorrectly argue the Arbitration Claimants lack standing because (i) class members who opt-out of the class have no standing, and (ii) "non-settling parties do not have standing to object to a settlement between other parties." *See* Response at p. 2 (relying on *Agretti v. ANR Freight Sys, Inc.*, 982 F.2d 242, 246 (7th Circ. 1992)). However, preliminary approval has

not been granted, and TikTok has refused to exclude Arbitration Claimants from the class. The Arbitration Claimants have standing to object.

*Agretti* is distinguishable. In *Agretti,* a non-settling defendant, ANR, objected to the settlement agreement between the plaintiff and another *defendant*. The district court ruled that ANR lacked standing because it failed to show plain legal prejudice that would affect ANR's legal rights if the settlement was approved. Specifically, the court determined that ANR had all its rights under the contract and could protect those rights through contractual provisions or legal action, and further determined that ANR was not precluded from enforcing any of its rights. The *Agretti* Court explained that a party would, however, show "plain legal prejudice if the settlement strips the party of a legal claim or cause of action . . . " *Id.* at 247.

Here, the Arbitration Claimants have standing to object because the opt-out procedures the parties are seeking to impose would require them to comply with requirements that are not a part of their contract with TikTok before they can bring claims in arbitration. Objection at 11. If Arbitration Claimants do not opt-out, they would be bound by the release, as currently drafted, which encompasses "all claims, complaints, actions, proceedings, or remedies of any kind, whether known or unknown…arising from or related to the Civil Actions or the collection and use of any user data…that were, could have been, or could be asserted by" class members. Dkt. 122-1 § 2.30. Plainly, the Arbitration Claimants have standing to object because approval of this settlement affects their ability to bring their claim or cause of action in their chosen forum.

Further, the Arbitration Claimants are not exerting "undue influence" on the rights of others as Plaintiffs' argue. *See* Response at pp. 2-3. Arbitration Claimants are simply seeking confirmation that their right to pursue individual arbitration against Defendants is unaffected by the Settlement Agreement, if approved by this Court. If Plaintiffs and Defendants agree that the

3

class members wishing to pursue their cases in arbitration can opt-out through counsel, which they do not, then Arbitration Claimants would withdraw their objection.

**III.     The Arbitration Claimants' Reliance on the *Bigger* Case is Not Misplaced.**

Plaintiffs do not meaningfully respond to the Arbitration Claimants' argument that this Court cannot approve a settlement that would invalidate their arbitration rights.  Objection at 9-10.  Instead, they argue that Arbitration Claimants' reliance on *Bigger v. Facebook, Inc.*, 947 F.3d 1043 (7th Cir. 2020), is misplaced because in *Bigger* it was a defendant, not a class member, who sought to enforce an arbitration provision.  *See* Response at p. 3.  However, the fact that the Arbitration Claimants, and not TikTok, seek to enforce their right to arbitrate their claims does not alter the analysis of *Bigger*.  Under controlling Supreme Court precedent, Defendants' TOS containing a mandatory arbitration clause is an enforceable contract requiring TikTok users to pursue all claims in arbitration.  *See* Arbitration Claimants' Objection at pp. 2-7, 9-13.  These obligations are mutual.  Under the TOS, with limited exceptions, "[t]his mandatory arbitration agreement applies equally to you and TikTok."  *See* TOS § 11.

In *Bigger*, the Seventh Circuit expressly recognized that it was the liberal federal policy favoring all arbitration agreements, not just those included in employment agreements, which precluded notice to anyone bound by an arbitration clause.  *Bigger*, 947 F.3d at 1047.  There is no dispute that a valid arbitration agreement exists between Defendant and the Arbitration Claimants.  *See* Arbitration Claimants' Objection at pp. 3-7.  In fact, neither Plaintiffs nor Defendants have challenged the existence, enforceability, or validity of Arbitration Claimants' arbitration agreements.  This Court is bound by *Bigger* to conclude that the existence of a valid arbitration agreement between the Arbitration Claimants and Defendants prohibits notice to the Arbitration Claimants and requires their exclusion from the Settlement Agreement.

4

**IV.   The *Intuit* Decision, Not *CenturyLink*, Is Instructive.**

Plaintiffs completely ignore the recent decision in *Intuit*[2] and focus exclusively on the District of Minnesota's decision in *CenturyLink*.[3]  *CenturyLink*, however, is inapposite because it arose after preliminary approval and because it involved different opt-out procedures.  In *CenturyLink*, the court declined the request by arbitration counsel to opt-out their clients through a single mass opt-out letter.  This single letter opt-out request was modeled after a letter granted and endorsed by the Eighth Circuit in *In re Piper Fund*s, F.3d 298, 304 (8th Cir. 1995).  While the District of Minnesota denied the request and directed all opt-out requests be accompanied by an individual signature, Plaintiffs conveniently leave out the most important distinguishing fact: the court in *CenturyLink* permitted electronic signatures, ***not*** a "wet-ink" signature, as this Court is being asked to approve in the Settlement Agreement. *See CenturyLink*, 2020 WL 3512807, at 5.  Additionally, unlike this case, the defendant requested additional information needed to evaluate and resolve each claim, including the account numbers for all claimants identified in the correspondence.  Because counsel did not provide this information, the *CenturyLink* court refused to permit submission of a single, mass opt-out letter. *Id.*, at *5-6.

The decision in *Intuit* and the well-reasoned explanation by Judge Breyer in declining to follow *CenturyLink* makes this distinction:

> ***Plaintiffs and Intuit rely heavily on In re CenturyLink Sales Practice Litig. See 2020 WL 869980 (D. Minn. Feb. 21, 2020); 2020 WL 3512807 (D. Minn. June 29, 2020). That out-of-district case does not persuade the Court to approve this settlement. There, the opt out procedure did not require a wet-ink signature*** or a case number for parallel proceedings like arbitrations. See Order Preliminarily Approving Class Settlement at 5, *In re CenturyLink Sales Practice Litig.* No. 17 md-02795-MJD-KKM (Jan. 24, 2020), ECF No. 528.

---

[2] *Arena v. Intuit*, 2021 WL 83425 (N.D. Cal. March 5, 2021) (hereinafter "*Intuit*").
[3] *In re Centurylink Sales Practices & Sec. Litig.,* No. CV 17-2832, 2020 WL 3512807, at *3 (D. Minn. June 29, 2020) (hereinafter *"CenturyLink"*).

*Arena v. Intuit*, 2021 WL 83425, at *10 (N.D. Cal. March 5, 2021) (emphasis added). Like the instant matter, in *Intuit,* thousands of consumers attempted to enforce their right to arbitrate. Intuit reached a class action settlement with the same class plaintiffs it had previously compelled to arbitration. This settlement included an injunction against arbitrations and a requirement that class members comply with burdensome opt-out procedures. The court refused to grant preliminary approval, finding the settlement did not meet basic standards of fairness, reasonableness, or adequacy. With respect to the opt-out requirements:

> The Court concludes that the opt out requirements in the proposed settlement are unduly burdensome given the unique circumstances of this litigation . . . ***requiring these class members to opt out by mailing a hard copy letter with a "wet-ink" signature serves little purpose but to burden those who wish to opt out***. In a world where Intuit can not only administer settlement claims electronically, but also facilitate safe, legal tax-filing electronically, Intuit can assuredly process opt outs electronically. ***If electronic signatures are enough for Intuit and the IRS during tax season, they should be enough for Intuit here***. Id.

*Id.* (emphasis added). The court further justified its decision by explaining:

> Other class action settlements featuring wet-ink signature and mail-in requirements show why such requirements are inappropriate here. For example, this Court approved an opt out procedure requiring class members to mail "a signed, written request" during the Volkswagen clean diesel litigation. *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2017 WL 672727, at *10 (N.D. Cal. Feb. 16, 2017). Those class members, however, would be opting out of a settlement that awarded claimants consistent with their full "possible recovery" if they proceeded to litigate—typically at least thousands of dollars. Id. at *19. Similarly, another Northern District of California court approved opt out procedures requiring class members to "personally sign" their opt out statements "in ink." *del Toro Lopez v. Uber Techs., Inc.*, No. 17-CV-06255-YGR, 2018 WL 5982506, at *21 (N.D. Cal. Nov. 14, 2018). Those class members would be opting out of a settlement that awarded roughly $23,800 per class member. *del Toro Lopez v. Uber Techs., Inc.*, No. 17-CV-06255-YGR Mot. For Preliminary Approval (dkt. 33) at 19. In both instances, opting out would be financially risky at best and economically irrational at worst. And in those circumstances, relatively burdensome procedures would promote careful deliberation before class members made a choice that could haunt them financially.
>
> Here the inverse is true.

6

*Id.* Like *Intuit*, the "wet-ink" signature requirement in the Proposed Settlement Agreement serves little purpose but to burden the Arbitration Claimants who seek to opt-out. And, while the prospect of recovering $1,000 or $5,000 per claim in arbitration may not be significant to counsel, it is a much better deal than the low amount class members are likely to receive under the Settlement Agreement. At the very least, class members should be entitled to make this decision unimpeded by burdensome requirements to provide wet-ink signatures or other information not required by the TOS.

Conspicuously missing from Plaintiffs' Response and their 47-page Motion for Preliminary Approval of the Settlement Agreement is an explanation for why it is in the best interests of the class to impose burdensome opt-out requirements. There is no justified reason for the onerous requirement of submitting a wet-ink opt-out request by U.S. mail.[4]

V.  **Counsel Has Not Engaged in Mass Solicitation of Opt-Outs or Misleading, Coercive, or Inappropriate Communications.**

Plaintiffs attempt to rationalize the burdensome opt-out requirements by attacking counsel and citing to settlements in which counsel have previously been involved, such *Facebook BIPA*. Plaintiffs admit that Facebook did not have an arbitration clause to enforce, and the underlying factual contentions of the *Facebook BIPA* settlement agreement are completely different than the circumstances in this case. *See* Motion for Preliminary Approval at pp. 24-28 [Dkt. 122 at ECF 34]. While there may be good reasons in some class action cases to impose more stringent opt-out requirements, the differences between this case and *Intuit* on the one hand, and *Facebook BIPA* on the other, show why there is no one-size-fits-all approach to opt-out requirements.

---

[4] Illinois law recognizes that electronic signatures are just as reliable and valid as a wet-ink signature. *See* 5 ILCS 175/5-120 ("Where a rule of law requires a signature, or provides for certain consequences if a document is not signed, an electronic signature satisfies that rule of law.").

Plaintiffs' suggestion that Labaton may have breached ethical duties and/or obtained exclusion requests based on misleading solicitations is unfounded and without merit. Labaton did not engage in "mass solicitation" of opt-outs, since the settlement has not been preliminarily approved yet. *See* Response at 4. Labaton began advertising and retaining clients interested in pursuing arbitration claims in early **January**. Plaintiffs' Motion for Preliminary Approval of Class Action Settlement was filed on February 25, 2021. Dkt. 122. Before clients retain Labaton's services, they are informed of the differences between pursuing their claims through individual arbitration and as part of a class action. Clients also received information about the pending class actions against Defendants. Moreover, if the Proposed Settlement Agreement is approved, Labaton intends to inform clients about the settlement and they will be asked to make an affirmative decision as to whether they wish to opt out.

Thus, Plaintiffs' suggestion that Labaton is "resurrect[ing] the playbook Levi used against it and Edelson" is wrong. Response at 5. In *Facebook BIPA*, Levi & Korsinsky ("Levi") began advertising to sign up potential claimants *after* the class was certified and the class settlement had been preliminarily approved. Response Ex. B at p. 4. Labaton and Class Counsel met-and-conferred with Levi requesting they remove the advertisements, which provided no indication of the entity they were referring to or that they were opting out of the class settlement. Response Ex. A at p. 2. Levi refused. Here, Labaton began advertising *before* a settlement agreement was filed and long before class certification, the advertisements specifically referenced TikTok, and Plaintiffs have never met and conferred with Labaton regarding any of the advertisements.

Finally, *Facebook BIPA* did not involve an arbitration clause. Similarly, public company securities litigation cases in which Labaton has been involved do not involve arbitration clauses. Response at 7 n.3. This distinction goes to the heart of this Objection. Plaintiffs admit that a

threshold issue in this case was the likelihood that TikTok would be able to enforce its mandatory arbitration clause. TikTok should not be permitted to impose a sweeping, binding arbitration clause with a class action waiver, and then use the class action device to eliminate or burden any attempts by individuals to assert their rights to arbitration. *Arena*, 2021 WL 834253, at *10; *Abernathy v. DoorDash, Inc*., 438 F. Supp. 3d 1062, 1068 (N.D. Cal. 2020) ("No doubt, DoorDash never expected that so many would actually seek arbitration. Instead, in irony upon irony, DoorDash now wishes to resort to a classwide lawsuit, the very device it denied to the workers, to avoid its duty to arbitrate. This hypocrisy will not be blessed, at least by this order.").

## CONCLUSION

If this Court grants Preliminary Approval of the Settlement, it should exclude the Arbitration Claimants and permit other class members to opt-out, including through counsel, and pursue their rights under Section 11 of the TikTok Terms of Service.

Dated: April 15, 2021

/s/ *Michael D. Smith*
Michael D. Smith (6210109)
**Law Office of Michael D. Smith, P.C.**
231 South LaSalle Street
Suite 2100
Chicago, Il 60604
Tel: (312) 546-6138
msmith@smithlawchicago.com

Jonathan Gardner (*pro hac vice*)
Melissa H. Nafash (*pro hac vice*)
Jonathan D. Waisnor (pending *pro hac vice*)
**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005
Tel: (212) 907-0700
Fax: (212) 818-0477
jgardner@labaton.com
mnafash@labaton.com
jwaisnor@labaton.com

*Attorneys for Objectors and the Arbitration Claimants*