**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: TIKTOK, INC., CONSUMER PRIVACY LITIGATION, | MDL No. 2948 |
| | Master Docket No. 20 C 4699 |
| | Judge John Z. Lee |
| This document relates to all cases | Magistrate Judge Sunil R. Harjani |

**CLASS MEMBER EDELSON PC'S MOTION TO VACATE OR MODIFY
PRELIMINARY INJUNCTION**

On September 30, 2021, this Court entered a detailed order granting preliminary approval of the class action settlement in this case and overruled several initial objections to that deal, including one brought by an Edelson PC client. (Dkt. 161.) Later, on October 1, 2021, this Court entered a second, presumably counsel-drafted, order setting the various deadlines as the settlement moves toward final approval. (Dkt. 162.) Buried in that second order is a sweeping preliminary injunction that, among other things, enjoins all class members from "participating as … claimant … in any … arbitration … based on, relating to or arising out of the claims and causes of action or the facts and circumstances giving rise to the Action and/or the Released Claims." (*Id.* at ¶ 21.) Violating the injunction could result in a contempt sanction, as well as mandatory payment of attorneys' fees to, among others, Class Counsel Katrina Carroll. (*Id.*) No basis is given for the entry of the injunction in the order. (*Id.*) Nor was it discussed at either of the preliminary approval hearings held by this Court or in any of the briefing by the settling parties. Not only does this injunction violate Seventh Circuit precedent and Fed. R. Civ. P. 65(d)(1)(A) on its face, *Adkins v. Nestle Purina PetCare Co.*, 779 F.3d 481 (7th Cir. 2015), but it is also highly abnormal in its breadth and inclusion of a fee-shifting provision to Class Counsel.

1

It's the breadth of this injunction, coupled with the lengths Ms. Carroll has gone to protect her anticipated fee in this case, that are the subject of Edelson PC's current motion. As the Court is aware, Edelson PC filed an initial objection in this case on behalf a client. Edelson's filing of this objection so enraged Ms. Carroll that she initiated a multi-front campaign to get Edelson to withdraw its representation of that client, cease prosecuting his objection, and otherwise "take Edelson down" as some form of retaliation. One part of Ms. Carroll's intimidation campaign was ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ proceeded until the entry of the preliminary injunction in this case. Edelson PC was about to ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ when the injunction was issued. In addition to representing a client with objections to this settlement, Edelson PC also falls within the classes certified by this Court as it has used the TikTok app to share videos as part of the firm's social media outreach. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. Edelson now seeks to vacate the injunction for the reasons stated below.

I.   **BACKGROUND**

On March 1, 2021, Edelson PC filed an objection to the settlement in this case for its client. (Dkt. 132.) Then came the threats. To understand the threats, a bit of background. Edelson PC has deep experience with the Illinois Biometric Information Privacy Act, ("BIPA"),[1] and part of its experience has involved defending the statutes against various efforts to gut the act in the Illinois legislature. One of their more recent efforts involved a lobbyist in Springfield and fundraising for a Political Action Committee ("PAC") from other plaintiffs' counsel involved in BIPA litigation to help protect the statute from revisions that would hurt consumers. Ms. Carroll is married to Jonathan Carroll, who represents the 57th District in the Illinois House of Representatives and sits on a committee that considers amendments to BIPA.

On or around March 11, 2021, both Ms. Carroll and Rep. Carroll called objector's counsel's lobbyist in Springfield with messages regarding the objection Edelson filed for its client in this case. Rep. Carroll spoke with Edelson PC and the PAC's lobbyist during discussions about legislation *gutting BIPA* pending before the committee on which he sits. Rep.

---

[1] The firm filed the first-ever class action under BIPA, *Licata v. Facebook, Inc.*, No. 2015-CH-05427 (Cir. Ct. Cook Cnty. Apr. 1, 2015), secured the first-ever adversarially-certified BIPA class in that case and defended the ruling in the Ninth Circuit, *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1277 (9th Cir. 2019) (upholding adversarial BIPA class certification), *cert. denied Facebook, Inc. v. Patel*, 140 S. Ct. 937 (2020), and obtained final approval of a settlement agreement with Facebook to resolve the case for $650 million. *In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d 617, 621 (N.D. Cal. 2021) ("Overall, the settlement is a major win for consumers in the hotly contested area of digital privacy."). The firm is responsible for the first-ever BIPA settlement, too, *see Sekura v. L.A. Tan Enters., Inc.*, No. 2015-CH-16694 (Cir. Ct. Cook Cnty.), and has paved the way to many of the favorable appellate decisions for BIPA plaintiffs. *Sekura v. Krishna Schaumburg Tan, Inc.*, 115 N.E. 3d 1080 (pre-*Rosenbach*, holding violation of statute sufficient for plaintiff to be "aggrieved"); *Rottner v. Palm Beach Tan, Inc.*, 2019 IL App (1st) 180691-U (violation of statute sufficient to claim liquidated damages); *McDonald v. Symphony Bronzeville Park LLC*, 174 N.E. 578, *appeal allowed,* 163 N.E.3d 746 (Ill. 2021) (holding that the exclusivity provisions of the Illinois Workers' Compensation Act ("IWCA") do not bar employee BIPA claims against employers); *Sosa v. Onfido, Inc.*, 8 F. 4th 631 (7th Cir. 2021) (affirming district court's denial of motion to compel arbitration).

Carroll specifically brought up Edelson's objection for its client in this case, noted that his wife was class counsel, and explained that she had worked hard on the case. He then specifically asked the lobbyist to pass on a request to Mr. Edelson: withdraw the objection for his firm's client and apologize to Ms. Carroll to avoid any issues moving forward.

Ms. Carroll also had a conversation about the TikTok objection with the same lobbyist and stated that the call was at the suggestion of Rep. Carroll. Ms. Carroll was angry and centered the conversation on Edelson PC's founder, Jay Edelson, and the firm's objection for its client in this case. Ms. Carroll repeatedly made disparaging statements about Mr. Edelson such as comparing him to Donald Trump, falsely stating that Mr. Edelson owes her, her friend Richard Gordon, as well as several other attorneys and vendors money, and falsely stating that he acts unethically. Ms. Carroll also made clear that she would never donate to any PAC affiliated with Edelson PC and has actively attempted to get others to withdraw their support regardless of the impact it would have on BIPA and the consumers it protects.

Mr. Edelson received the Carrolls' message to him loud and clear: that continuing to pursue this objection on behalf of his client will negatively affect his firm's ability to pursue their legislative agenda and result in the further dissemination of inaccurate and disparaging statements about him.[2] As the Court knows, Edelson PC did not cow to these threats and withdraw its client's objection. It turns out that decision had consequences.

On March 25, 2021, in apparent retaliation for not withdrawing its client's objection in this case and as part of Ms. Carroll's stated goal to "take down" Edelson PC, Carroll ▮▮▮▮▮

---

[2] The Court should consider whether this conduct, far out of the bounds of a vigorous and healthy debate about what kinds of settlements benefit class members and are deserving of judicial approval, calls Ms. Carroll's adequacy as class counsel into question. *See Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 919 (7th Cir. 2011).

4



Upon confirmation that the broadly-worded injunction could be read to enjoin Edelson PC (as class member) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ requested that Edelson PC seek relief from the Court, and it now does so.

## II. THE INJUNCTION VIOLATES RULE 65 AND SEVENTH CIRCUIT PRECEDENT

Class Counsel and Defendants filed multiple briefs supporting their request for preliminary approval of their settlement. (Dkts. 122, 137, 138, 139, 143, 145.) Not one of those briefs discussed the need for the entry of the issuance of a nationwide injunction of all proceedings even conceivably related to the issues in this case. This Court held two lengthy

preliminary approval hearings during which the Court asked several questions of Class Counsel, of defense counsel, and of objector's counsel. During those hearings not a word was mentioned about the need for or possibility of the issuance of a nationwide injunction of all proceedings even conceivably related to the issues in this case. There were certainly no findings issued by the Court supporting the issuance of such an injunction in this case at either hearing.

The only discussions involving the issuance of an injunction related to TikTok's future collection of data as part of the settlement's class relief, allegations by an objector that Class Counsel violated an injunction issued by Judge Blakey in *T.K.*, and as part of the Court's rejection of the Arbitration Claimants' opt-out procedure objections. On this last point, the Court stated that the Eighth Circuit "held that it was a violation of the Federal Arbitration Act to *enjoin* a class member, who had sought to opt out, from arbitrating its claim before the settlement was finally approved." (Dkt. 161 at 32) (citing *In re Piper Funds, Inc., Institutional Gov't Income Portfolio Litig.*, 71 F.3d 298, 302-03 (8th Cir. 1995)).[3] The Court found the case unhelpful because "[n]o such injunction is requested here." (*Id.*)

Nevertheless, the counsel-prepared order entered by the Court did in fact contain an extremely broad injunction. Specifically, that injunction provides in relevant part that:

> Pending final determination of whether the Settlement should be approved, all Settlement Class Members are preliminarily enjoined unless and until they have timely and properly excluded themselves from the Settlement Class from (i) filing, commencing, prosecuting, intervening in or participating as plaintiff, claimant or class member in any other lawsuit or administrative, regulatory, arbitration or other

---

[3]   The injunction being reviewed by the Eighth Circuit was similarly entered "at the request of the class action parties … conditionally certifying a settlement class, and enjoining arbitration by any class member until after the court distributes a class notice and then rules on requests to opt out of the class." *Piper*, 71 F.3d at 300. That same opt-out procedure is being employed in this case: the settlement administrator is compiling a list of requests for exclusion after the deadline to submit them, which is only being presented to the Court for ruling on their validity 14 days prior to the final approval hearing. (Dkt. 162 ¶¶ 17-18.) The list of validly excluded class members will presumably be included in any order approving this settlement.

6

>
> proceeding in any jurisdiction based on, relating to or arising out of the claims and causes of action or the facts and circumstances giving rise to the Action and/or the Released Claims[.] … Any Person who knowingly violates such injunction shall pay the attorneys' fees and costs incurred by Defendants, any other Released Person and Class Counsel as a result of the violation.

(Dkt. 162 ¶ 21.)

Although a relatively common feature in class action settlements in other circuits, in this Circuit gone are the days where the settling parties can include a broad injunction barring all related litigation whatsoever without meeting a fairly high bar. Even as part of approving a class action settlement, "Rule 65(d)(1)(A) of the Federal Rules of Civil Procedure provides that every order issuing an injunction must 'state the reasons why it issued.'" *Adkins*, 779 F.3d at 483 (quoting the rule). Indeed, a court issuing a preliminary injunction must identify the appropriate legal standard and make the findings of law and fact required by that standard, which relatedly requires the party seeking that injunction to "establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 483 (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). A party's desire to halt litigation in other forms or lower its cost, which appears to the goal here, is insufficient. *Id.* at 483-85.

Here, none of that happened. The settling parties' briefs never once mention they are seeking a preliminary injunction and the Court's written orders and oral statements don't make the required findings. The Court should vacate the preliminary injunction.

### III.    ANY INJUNCTION SHOULD BE MODIFIED TO CLARIFY ITS SCOPE

If the settling parties can somehow justify the re-issuing of an injunction by making the showing that *Adkins* requires (doubtful, on many fronts), any such injunction should be radically modified from its current scope so that it doesn't encompass ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7

███████████████ or provide fees to the settling parties and their counsel. Here, the current injunction's sweep is exceptionally broad, covering participating in any type of conceivable proceeding, anywhere, "based on, relating to or arising out of the claims and causes of action or the facts and circumstances giving rise to the Action and/or the Released Claims." (Dkt. 162 ¶ 21.)

The current injunction, as drafted, violates Rule 65 for a host of reasons. Starting with the obvious, the rule requires the injunction define its scope without reference to defined terms contained in a separate document. *See* Fed. R. Civ. P. 65(d)(1)(C) (requiring an injunction to "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required"). Further, ███████████ disagreed about exactly what this Court's injunction covered. ████████████████████████████████████████ ████████████████████████████████████████████████████ But the language used encompasses an unknown set of issues "based on, relating to, or arising out of" not just the claims against TikTok in this case, but the "Released Claims" as well.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████ Edelson was not willing to risk being held in contempt of Court, nor was it willing to risk the mandatory sanction that the Court's injunction provides for violations: payment of Ms. Carroll's attorneys' fees for ████████████████████████ ████████████████████████████████████████ Accordingly, should the parties attempt to justify the issuance of this injunction and define it properly, and the Court makes the required findings, Edelson requests that any revised injunction make clear it does not apply to ██████████████████████.

8

## IV. CONCLUSION

The Court should vacate the preliminary injunction.

                                          Respectfully submitted,

                                          **EDELSON PC**,

Date: November 26, 2021                 /s/Ryan D. Andrews

                                          Jay Edelson
                                          jedelson@edelson.com
                                          Ryan D. Andrews
                                          randrews@edelson.com
                                          EDELSON PC
                                          350 North LaSalle Street, 14th Floor
                                          Chicago, Illinois 60654
                                          Tel: 312.589.6370
                                          Fax: 312.589.6378