IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: TIKTOK, INC., CONSUMER PRIVACY LITIGATION, | MDL No. 2948 <br><br> Master Docket No. 20-cv-4699 <br><br> Judge John Z. Lee <br><br> Magistrate Judge Sunil R. Harjani |
| This Document Relates to All Cases | |

### DECLARATION OF KATRINA CARROLL

I, KATRINA CARROLL, declare as follows:

1. I am the managing partner of the Chicago, Illinois office of Lynch Carpenter LLP, a nationally recognized litigation boutique specializing in the prosecution of plaintiff-side class actions. I have over twenty years of experience litigating class action matters, have been appointed by the Court as Co-Lead Counsel for Plaintiffs in this case and I have personal knowledge of the facts stated herein. I submit this Declaration on my personal behalf to address the primary false statements contained in Class Member Edelson PC's Motion to Vacate or Modify Preliminary Injunction in this matter.

2. Edelson PC ("Edelson") is counsel of record for objector Dennis Littekin and filed an objection to preliminary approval of the settlement on behalf of its client. The objection was largely denied by the Court. (Dkt. 161).

3. Now, under the pretext that the firm itself is a settlement "class member," Edelson has filed a false, inflammatory and offensive pleading in this Court. This pleading was unaccompanied by even a basic declaration, makes sweeping statements without any factual

support, and contains direct quotations unattributed to any source. Because the pleading is a baseless personal attack on me, I feel compelled to address the various falsehoods that are now in the public domain.

4. I have never communicated with any lawyer at Edelson nor any person acting on behalf of the firm regarding the substance of Edelson's objection.

5. Even if I had, such communications are recognized as proper by the Federal Rules. Class Counsel may negotiate freely with counsel for objectors to compromise or encourage the withdrawal of objections, so long as any payment or other consideration given to objector's counsel is disclosed and approved by the Court pursuant to Federal Rule of Civil Procedure 23(e)(5). I am mindful of these obligations.

6. The unsworn statements made by Edelson appear to relate to a conversation my husband had, and one I subsequently had, with Tiffany Elking, the lobbyist employed by Edelson's Political Action Committee ("PAC"). No one from Edelson participated in those conversations.

7. My husband, Jonathan Carroll, is the current Illinois House Representative for the 57th District. In March 2021, an anti-BIPA bill was pending and set to be heard in one of the committees on which Jonathan sits.

8. In March 2021, in the days following the oral argument on Plaintiffs' preliminary approval motion in this case, Ms. Elking actively solicited my husband's assistance in opposing the anti-BIPA legislation.

9. During their conversation, my husband advised Ms. Elking that he could not vote on the bill, as taking a position on the merits would pose a potential conflict since I am currently actively litigating many BIPA matters.

10. Jonathan's legislative voting history, a matter of public record, demonstrates that whenever a BIPA-related initiative is brought to vote, he opts simply to vote "present."

11. During her conversation with Jonathan, Ms. Elking asked him whether I would be willing to assist in the PAC's legislative efforts. Jonathan was surprised that Ms. Elking was seeking my assistance given Jay Edelson's "live tweets" during the March 2, 2021 preliminary approval proceedings and other Twitter communications that misquoted Class Counsel, lampooned the proceedings in this Court, and spread falsehoods about the settlement. (*See* Dkt. 138).

12. Jonathan told Ms. Elking that I was offended by Mr. Edelson's lack of professionalism and that I deserved an apology.

13. Jonathan did not discuss the merits of Edelson's objection with Ms. Elking. Nor did he request that the objection be withdrawn.

14. At the end of their conversation, Ms. Elking asked Jonathan for my cell phone number and asked him to relay a message to me to call her.

15. Ms. Elking then followed up via text message to me requesting that I call her.

16. Separately, I received phone calls and emails from other members of Edelson's PAC to solicit my assistance in combating the anti-BIPA legislation.

17. In response to Ms. Elking's request and as a courtesy to the requests of the other PAC members who contacted me directly, I called Ms. Elking.

18. When we spoke, Ms. Elking asked me to help Edelson's PAC in discussing the bill with other state legislators. I told Ms. Elking that her request was ill-timed given Mr. Edelson's offensive use of Twitter just days before which I analogized as similar to former President Trump's. I further informed her that I do not have a cordial relationship with Mr. Edelson's firm

due to my own prior business dealings and that I am aware of others who had negative experiences. I then informed Ms. Elking that I do not wish to be associated with Mr. Edelson or his firm.

19. Edelson's baseless accusations that my husband and I somehow orchestrated a campaign calculated to eviscerate BIPA as revenge for Edelson's objection defy common sense. A large part of my law practice is centered around BIPA prosecutions and I have financial interests in the outcome of this litigation.

20. With respect to ▮▮▮▮ arbitration, I am not a party to that proceeding and I am not representing ▮▮▮▮.

21. Edelson's wild speculation that I ▮▮▮▮▮▮▮▮▮▮▮▮ is simply untrue.

I declare under penalty of perjury that the foregoing is true and correct.

Date: December 7, 2021

*[signature]*

_____
Katrina Carroll