UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: TIKTOK INC. CONSUMER PRIVACY LITIGATION | MDL No. 2948 |
| | Master Docket No. 20 C 4699 |
| This Document Relates to: | Judge Rebecca R. Pallmeyer |
| *Bravo v. TikTok, Inc.* 23 C 225 | Magistrate Judge Sunil R. Harjani |

This Document Relates to:

*Bravo v. TikTok, Inc.* 23 C 225
*Murphy v. TikTok, Inc.* 23 C 504
*Buckley v. TikTok, Inc.* 23 C 841
*Tado v. TikTok, Inc.* 23 C 1430
*Recht v. TikTok Inc.* 23 C 2248
*Fleming v. TikTok, Inc.* 23 C 2260
*E.K. v. TikTok Inc.* 23 C 2262
*Androshchuk v. TikTok, Inc.* 23 C 2462
*Albaran v. TikTok, Inc.* 23 C 2463
*G.R. v. TikTok, Inc.* 23 C 2464
*Moody v. TikTok, Inc.* 23 C 2465
*Schulte v. TikTok, Inc.* 23 C 2466
*Fugok v. TikTok, Inc.* 23 C 2467

**DEFENDANT TIKTOK INC.'S**
**RESPONSE TO THE COURT'S JULY 12, 2023 ORDER (ECF NO. 306)**
**REGARDING IN-APP BROWSER CASES**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 2

    A.     The Court Entered Final Judgment and Enjoined Lawsuits Arising from the Collection of Data from Users of the TikTok App. ......................................... 2

    B.     The IAB Cases Are Based on the Collection of Data from Users of the TikTok App............................................................................................................ 4

ARGUMENT ..................................................................................................................... 5

    A.     The Settlement Agreement Release Bars the IAB Cases........................................ 6

    B.     Res Judicata Bars the IAB Cases .......................................................................... 9

    C.     The IAB Actions Violate the Court-Ordered Injunction against Further Litigation of Released Claims.............................................................................. 14

CONCLUSION................................................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. City of Indianapolis*,
   742 F.3d 720 (7th Cir. 2014) ....................................................................10, 11, 12

*Barr v. Bd. of Trs. of W. Illinois Univ.*,
   796 F.3d 837 (7th Cir. 2015) .................................................................................10

*Breslow v. Prudential-Bache Props., Inc.*,
   No. 91-1230, 1993 WL 150052 (N.D. Ill. May 7, 1993).......................................14

*Brooks-Ngwenya v. Indianapolis Pub. Schs.*,
   564 F.3d 804 (7th Cir. 2009) .................................................................................11

*Brzostowski v. Laidlaw Waste Sys., Inc.*,
   49 F.3d 337 (7th Cir. 1995) ...................................................................................13

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) .................................................................................7

*Crosby v. City of Chicago*,
   No. 18-04094, 2018 WL 6198483 (N.D. Ill. Nov. 28, 2018) ...........................11, 12

*Czarniecki v. City of Chicago*,
   633 F.3d 545 (7th Cir. 2011) .................................................................................13

*Daniels v. Rivers*,
   No. 14-01533, 2014 WL 6910492 (N.D. Ill. Dec. 9, 2014)..............................11, 12

*Daza v. State of Indiana*,
   2 F.4th 681 (7th Cir. 2021) ...................................................................................10

*Gen. Motors Corp. v. Superior Court of California*,
   15 Cal. Rptr. 2d 622 (Cal. Ct. App. 1993).............................................................6

*Hernandez v. Multi-Servicios Latino, Inc.*,
   No. 16-10747, 2019 WL 5634201 (N.D. Ill. Oct. 31, 2019) ..................................10

*Howard v. Am. Online Inc.*,
   208 F.3d 741 (9th Cir. 2000) .............................................................................6, 7

*Jefferson v. Cal. Dep't of Youth Auth.*,
   48 P.3d 423 (Cal. 2002) .........................................................................................6

*Kilburn-Winnie v. Town of Fortville*,
891 F.3d 330 (7th Cir. 2018) ...................................................................10, 11

*Lesnik v. Eisenmann SE*,
374 F. Supp. 3d 923 (N.D. Cal. 2019) .................................................................7

*Matrix IV, Inc. v. Am. Nat'l Bank & Tr. Co. of Chicago*,
649 F.3d 539 (7th Cir. 2011) ...................................................................11, 12

*Montgomery v. Brennan*,
No. 16-00533, 2017 WL 951352
(N.D. Ill. Mar. 8, 2017)...............................................................................11

*Nichols v. Citibank, N.A.*,
715 F. App'x 681 (9th Cir. 2018) .......................................................................8

*Nichols v. Citibank, N.A.*,
No. 16-01215, 2016 WL 9211661
(C.D. Cal. July 12, 2016) ...............................................................................9

*Norfolk S. Corp. v. Chevron, U.S.A., Inc.*,
371 F.3d 1285 (11th Cir. 2004) .......................................................................11

*Nottingham Partners v. Trans-Lux Corp.*,
925 F.2d 29 (1st Cir. 1991)...............................................................................5

*Nwoke v. Univ. of Chi. Med. Ctr.*,
No. 19-00358, 2020 WL 3000285
(N.D. Ill. June 4, 2020) .................................................................................13

*Osumi v. Sutton*,
60 Cal. Rptr. 3d 693 (Cal. Ct. App. 2007) ...........................................................6

*Palka v. City of Chicago*,
662 F.3d 428 (7th Cir. 2011) ..........................................................................10

*Platinum Supplemental Ins., Inc. v. Guarantee Tr. Life Ins. Co.*,
989 F.3d 556 (7th Cir. 2021) ............................................................................9

*Quincy Mall, Inc. v. Parisian, Inc.*,
27 F. App'x 631 (7th Cir. 2001) .......................................................................13

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
442 F.3d 741 (9th Cir. 2006) ....................................................................5, 7, 8

*Scandia Down Corp. v. Euroquilt, Inc.*,
772 F.2d 1423 (7th Cir. 1985) .........................................................................14

*Skilstaf, Inc. v. CVS Caremark Corp.*,
  669 F.3d 1005 (9th Cir. 2012) ................................................................7

*Skrbina v. Fleming Cos.*,
  53 Cal. Rptr. 2d 481 (Cal. Ct. App. 1996) ..........................................6

*Taylor v. Sturgell*,
  553 U.S. 880 (2008).................................................................................9

*Toscano v. Connecticut Gen. Life Ins. Co.*,
  288 F. App'x 36 (3rd Cir. 2008).........................................................11

*Villacres v. ABM Indus. Inc.*,
  117 Cal. Rptr. 3d 398 (Cal. Ct. App. 2010) .......................................6

*Williams v. Gen. Elec. Cap. Auto Lease, Inc.*,
  159 F.3d 266 (7th Cir. 1998) ................................................................7

**Statutes**

Cal. Civ. Code § 1638.....................................................................................6

**Other Authorities**

6 Newberg and Rubenstein on Class Actions § 18:21 (6th ed.) .......................8

18A Fed. Prac. & Proc. Juris. § 4443 (3d ed.) ...............................................12

Felix Krause, *iOS Privacy: Announcing InAppBrowser.com - See What
  JavaScript Commands Get Injected Through an In-App Browser*, KrauseFX
  Blog (Aug. 18, 2022), https:// krausefx.com/blog/announcing-
  inappbrowsercom-see-what-javascript-commands-get-executed-in-an-in-app-
  browser .....................................................................................................5

Richard Nieva & Thomas Brewster, *Lawmakers Press Apple and Google Over
  TikTok's Keystroke Tracking Ability*, Forbes, Nov. 4, 2022, https://
  www.forbes.com/sites/richardnieva/2022/11/04/lawmakers-letter-apple-
  google-tiktok-keystroke-tracking/?sh=62e88f6c41a6 .......................1, 5

As instructed by the Court's Order dated July 12, 2023, Defendant TikTok Inc. ("TikTok") respectfully submits this brief to explain that the above-captioned "in-app browser" cases (collectively, "the IAB Cases"), all of which assert claims relating to the collection of TikTok user data through the TikTok in-app browser ("IAB"), should be dismissed pursuant to the class settlement and final judgment approved and entered by the Court on August 22, 2022. *See* Mot. Prelim. Approval Ex. A, Proposed Settlement Agreement & Release § 2.30, ECF No. 122-1 (the "Settlement" or "Settlement Agreement"); Mem. Op. & Order, July 28, 2022, ECF No. 261 ("Final Approval Order") (explaining final approval); Order & Final J., Aug. 22, 2022, ECF No. 264.

## INTRODUCTION

The IAB Cases have no merit. They arise from blog posts published by a purported expert and covered by *Forbes*, but even *Forbes* later admitted: "there is no evidence TikTok is actually [collecting the data at issue]."[1] But even without reaching the merits, these cases must be dismissed because they arise from alleged conduct that (i) predates the Effective Date of the Settlement (October 13, 2022); (ii) was expressly alleged in the MDL prior to the Settlement; and (iii) was expressly covered by the release in the Settlement. Consequently, whether considered under the lens of release or res judicata, the result is the same: the Settlement Agreement in this action bars the IAB Cases. Moreover, the filing of these cases by the plaintiffs and counsel constitutes a breach of the Settlement and a violation of the Court's express injunction against further litigation on the released claims. TikTok therefore respectfully requests that this Court dismiss the IAB Cases.

---

[1] *See* Richard Nieva & Thomas Brewster, *Lawmakers Press Apple and Google Over TikTok's Keystroke Tracking Ability*, Forbes, Nov. 4, 2022, https://www.forbes.com/sites/richardnieva/2022/11/04/lawmakers-letter-apple-google-tiktok-keystroke-tracking/?sh=62e88f6c41a6.

## BACKGROUND

### A.     The Court Entered Final Judgment and Enjoined Lawsuits Arising from the Collection of Data from Users of the TikTok App.

From its beginning, this MDL was a kitchen sink of all data-privacy claims that could be asserted against TikTok regarding the alleged collection of user data without sufficient notice and consent. *See* Consolidated Am. Class Action Compl. ¶ 7, Dec. 18, 2020, ECF No. 114 ("CAC"). Indeed, the wide-ranging CAC listed over eighteen different categories of data that TikTok allegedly collected from users. *Id.* ¶ 156. Throughout the CAC, Plaintiffs emphasized that their broad allegations included *all* user data collected by TikTok: "unknown to TikTok users is that the seemingly innocuous TikTok app infiltrates their mobile devices and extracts a remarkably *broad array* of private and personally identifiable data and content that Defendants use *to track and profile TikTok users*." *Id.* ¶ 153 (emphasis added); *see also generally id.* ¶¶ 164-176. Plaintiffs further alleged that TikTok's tracking "is not limited to the scope of the TikTok app" but also covered "private user data, created outside of and unrelated to the TikTok app, when the app is not in use." *Id.* ¶¶ 179-180.

Not only did plaintiffs in the MDL seek discovery relating to all categories of user data collected by TikTok, they also worked with multiple experts to examine the app and software code to look for precisely the sort of data-privacy issues asserted in the IAB Cases. *See* Decl. of E. Rhow Supp. Pls.' Pet. Att'ys Fees at 2, ECF No. 200 (plaintiffs' counsel "[w]orked closely with highly trained source code experts in analyzing multiple versions of the Musical.ly and TikTok apps to uncover . . . the various types of private and personally-identifiable data" allegedly collected through the TikTok app). Plaintiffs later "retained a programming expert to conduct a two-week-long, in-person inspection of TikTok's source code, which gave Plaintiffs a more comprehensive understanding of the App's technology and served as a launchpad for further discovery." Final

Approval Order at 55. "Plaintiffs' source code expert" was given "free rein to probe TikTok's relevant technology." Decl. of E. Fegan Supp. Mot. Prelim. Approval of Settlement ¶¶ 18-19, ECF No. 122-7.

The parties drafted the $92 million class settlement in this MDL to clean up the entire kitchen sink of allegations. To that end, the Agreement provided sweeping remedies related to the collection of several categories of data beyond biometrics. Final Approval Order at 14 (listing data subject to injunctive relief: GPS data, clipboard data, pre-uploaded data, etc.); *see also* Settlement Agreement § 6.1. The only reason this list did not specifically include internet-browsing data was that, after discovery, both the parties and the Court recognized that TikTok's privacy policy expressly disclosed the collection of "browsing and search history (including content you have viewed in the [App])." Final Approval Order at 50-51 & n.26.

The Agreement "fully, finally, and forever resolve[d], discharge[d], and settle[d]" whatever claims—known or unknown—may have arisen from the collection of user data by TikTok. Settlement Agreement § 1.2. It states:

> Upon entry of the Final Order and Judgment, and regardless of whether any Class Member executes and delivers a written release, each Class Representative and each Class Member shall be deemed to **waive, release and forever discharge** Defendants' Released Parties from **all** Released Claims. No Defendants' Released Party will be subject to **any liability or expense of any kind** to any Plaintiffs' Releasing Party with respect to any Released Claim.

*Id.* § 12.1 (emphasis added). Critically, the Agreement defined the "Released Claims" to encompass any user data that could have been the subject of the MDL:

> **any and all claims**, complaints, actions, proceedings, or remedies of **any kind**, **whether known or unknown** (including, without limitation, claims for attorneys' fees and expenses and costs), arising from or related to the Civil Actions or **the collection and use of any user data**, including biometric data, whether in law or in equity, under contract, tort or any other subject area, or under any statute, rule, regulation, order, or law, whether federal, state, or local, on any grounds whatsoever, arising **from the beginning of time through the Effective Date**, that were, could have been, or could be asserted by the Releasing Parties.

*Id.* § 2.30 (emphasis added) (hereinafter, "Release").

The class comprised "[a]ll persons who reside in the United States who used the App—the TikTok video sharing application (or its Musical.ly predecessor) distributed in the United States— prior to September 30, 2021." Order & Final J. ¶ 2. And the claims released included those "arising from the beginning of time through the Effective Date," which Effective Date was later determined to be October 13, 2022. Settlement Agreement § 2.30.

Upon final approval of the Settlement, the Court issued an injunction barring future litigation like the IAB Cases that encompass Released Claims:

> <u>No Further Litigation</u>. All members of the Class who did not make a valid request for exclusion in the time and manner provided in the Class Notice, or as otherwise set forth in the Final Approval Order, are barred from commencing or prosecuting any action, suit, proceeding, claim or cause of action in any jurisdiction or court against Defendants' Released Parties based upon, relating to, or arising out of, any of the Released Claims [e.g., those related to the collection and use of any user data].

Order & Final J. ¶ 24 ("Litigation Injunction").

The Plaintiffs in the IAB Cases are TikTok users who did not opt out of the Settlement. They are thus bound by the Release and the Litigation Injunction—and violated both when they filed their claims.[2]

**B.      The IAB Cases Are Based on the Collection of Data from Users of the TikTok App.**

The crux of the IAB Cases is that TikTok allegedly collected data, including keystrokes, from users who browsed third-party websites using the IAB on or before August 2022 when the issue was reported in a news article. IAB Plaintiffs based these allegations entirely on a blog post

---

[2] Only one of the IAB Plaintiffs, Michael Moody, even tries to plead around the Release by amending his complaint to allege that he "downloaded the TikTok App and created an account in May 2022." Am. Class Action Compl. ¶ 6, *Moody v. TikTok Inc.*, No. 23-01075 (C.D. Cal. Feb. 27, 2023), ECF No. 17. But Mr. Moody does not allege that he *never* used the TikTok app prior to September 30, 2021, so the Release also forecloses his action.

covered by *Forbes*, even though *Forbes* later backtracked from its original report, admitting that "there is no evidence [that] TikTok is actually [collecting the data at issue]."[3] And even the author of the original blog post warned the public not to jump to conclusions: "Just because an app injects JavaScript into external websites, doesn't mean the app is doing anything malicious."[4]

Disregarding this warning, and without any other support, the IAB Cases speculate that TikTok *did* collect user browsing data, and in particular keystroke data, in violation of the Federal Wiretap Act and various state privacy laws. *E.g.*, Class Action Compl. ¶ 5, *Recht v. TikTok Inc.*, No. 23-02248 (N.D. Ill. Nov. 25, 2022), ECF No. 1 ("Recht Compl."). The IAB Cases allege that TikTok's IAB allows users to access links to third-party websites that are "opened inside the TikTok app," and "[t]hus, the user views the third-party website without leaving the TikTok app." *Id.* ¶ 91. Because these claims are based on the alleged collection of user data from users through the TikTok app, they fall squarely within the scope of the Settlement.

## ARGUMENT

Release and res judicata are "separate and distinct" doctrines. *Nottingham Partners v. Trans-Lux Corp.*, 925 F.2d 29, 31-32 (1st Cir. 1991) ("It is beyond cavil that a suit can be barred by the earlier settlement of another suit in either of two ways: res judicata or release."); *accord Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir. 2006) ("Even if issue

---

[3] *See* Richard Nieva & Thomas Brewster, *Lawmakers Press Apple and Google Over TikTok's Keystroke Tracking Ability*, Forbes, Nov. 4, 2022, https://www.forbes.com/sites/richardnieva/2022/11/04/lawmakers-letter-apple-google-tiktok-keystroke-tracking/?sh=5ec8859d41a6.

[4] *See* Felix Krause, *iOS Privacy: Announcing InAppBrowser.com - See What JavaScript Commands Get Injected Through an In-App Browser*, KrauseFX Blog (Aug. 18, 2022), https://krausefx.com/blog/announcing-inappbrowsercom-see-what-javascript-commands-get-executed-in-an-in-app-browser.

preclusion were not applicable, we would nonetheless find that Plaintiffs' claims were released."). Here, both doctrines stand as independent bars to the IAB Cases.

### A. The Settlement Agreement Release Bars the IAB Cases

The Settlement Agreement is "governed by and construed in accordance with" California law. Settlement Agreement § 16.2. California has a strong public policy in favor of enforcing settlement agreements. *E.g.*, *Osumi v. Sutton*, 60 Cal. Rptr. 3d 693, 696 (Cal. Ct. App. 2007). "In California, interpretation of a settlement release is governed by contract principles." *Howard v. Am. Online Inc.*, 208 F.3d 741, 747 (9th Cir. 2000) (citing *Gen. Motors Corp. v. Superior Court of California*, 15 Cal. Rptr. 2d 622, 625 (Cal. Ct. App. 1993)). The principles are straightforward: if the contractual language is "clear and explicit," "[t]he language of a contract is to govern its interpretation." Cal. Civ. Code § 1638; *see also Skrbina v. Fleming Cos.*, 53 Cal. Rptr. 2d 481, 490 (Cal. Ct. App. 1996) (releases "are binding on the signatories and enforceable so long as they are clear, explicit and comprehensible in each of their essential details"). "[A] court may release not only those claims alleged in the complaint and before the court, but also claims which '*could have been alleged* by reason of or in connection with any matter or fact set forth or referred to in' the complaint." *Villacres v. ABM Indus. Inc.*, 117 Cal. Rptr. 3d 398, 418 (Cal. Ct. App. 2010). According to the California Supreme Court, "the release of 'all claims and causes of action' must be given a comprehensive scope." *Jefferson v. Cal. Dep't of Youth Auth.*, 48 P.3d 423, 427 (Cal. 2002). "If courts did not follow this rule, 'it would be virtually impossible to create a general release that actually achieved its literal purpose.'" *Id.* (alterations adopted).

Here, the Release is clear as day. *See supra* at 3. As class members in this case, Plaintiffs contracted to "fully, finally, and forever" release their data-privacy claims against TikTok. Settlement Agreement § 1.2. Specifically, they "waive[d], release[d] and forever discharge[d]" TikTok and its related entities from the "Released Claims," which the parties defined to encompass

"all claims . . . whether known or unknown . . . arising from or related to . . . *the collection and use of any user data.*" *Id.* §§ 2.30, 12.1 (emphasis added).

Despite the Release, all the IAB Cases arise from the same core allegation: that TikTok failed to "disclose to Plaintiff and Class Members that TikTok users who access external websites via the TikTok app use an in-app browser." *E.g.*, Recht Compl. ¶ 3. There is no dispute that the IAB Cases are premised on TikTok's alleged collection and use of user data—the very thing that Plaintiffs have already released. As such, the Settlement Agreement "unequivocally bars" the claims in IAB Action. *Howard*, 208 F.3d at 747 (under California law, enforcing settlement release from prior action and affirming dismissal of later action); *see also, e.g.*, *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1018 (9th Cir. 2012) (same); *Lesnik v. Eisenmann SE*, 374 F. Supp. 3d 923, 957 (N.D. Cal. 2019) (Koh, J.) (under California law, dismissing the complaint by enforcing the release in the parties' settlement agreement).

The CAC need not have specifically referenced the Krause report. Though the report had not yet been published when the parties entered into the Settlement Agreement, Ninth Circuit law is clear that "a federal court may release not only those claims alleged in the complaint, but also a claim 'based on the identical factual predicate as that underlying the claims in the settled class action *even though the claim was not presented and might not have been presentable in the class action.*'" *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287 (9th Cir. 1992) (emphasis added); *accord Williams v. Gen. Elec. Cap. Auto Lease, Inc.*, 159 F.3d 266, 273-74 (7th Cir. 1998) (following this rule as articulated by the Ninth Circuit in *Class Plaintiffs*). *Reyn's Pasta Bella* is instructive. 442 F.3d at 748-49. There, the Ninth Circuit held that, despite the later action "positing a different theory" of liability from the prior action, the allegations and injury between the two actions were "identical"—and thus the prior action's release barred the later action. *Id.*; *see also*

*Nichols v. Citibank, N.A.*, 715 F. App'x 681, 682 (9th Cir. 2018) (where release in prior action "covered a broader range of alleged misconduct" than was alleged in later action, the district court properly barred the later action because it was "based on the same factual predicate"); 6 Newberg and Rubenstein on Class Actions § 18:21 (6th ed.) ("The identical factual predicate test permits the release of claims that go beyond the particular claims pleaded in the class's complaint, so long as the claims are transactionally related to those at the heart of the case.").

The use of the TikTok app to collect users' internet activity on third-party websites without sufficient notice and consent, as alleged and as settled here, is the identical factual predicate as the IAB Plaintiffs' theory: the "crux" of which they describe as TikTok collecting "personal activity on third-party websites" through the in-app browser without sufficient notice and consent from class members. Pl. Recht's Mem. Supp. Mot. Vacate Conditional Transfer Order at 3, *In re TikTok Inc. Consumer Priv. Litig.*, No. 2948 (J.P.M.L. Jan. 3, 2023), ECF No. 108-1; *see also* Pl. Arroyo's Mem. Supp. Mot. Vacate Conditional Transfer Order at 2, *In re TikTok Inc. Consumer Priv. Litig.*, No. 2948 (J.P.M.L. Jan. 23, 2023), ECF No. 126-1 (Plaintiff Arroyo characterizing her case as "center[ed] on TikTok's interception of users' communications via its in-app web browser without prior consent of the parties to the communications").

Looking for a way around the Settlement Agreement's complete bar, Plaintiffs argued before the JPML that (i) the Agreement released the claims of TikTok users only if class members shared videos through the TikTok app and (ii) the in-app browser is external to, and separate from, the TikTok app. Those arguments failed before the JPML and, if re-asserted, should fail again here. The first argument relies on a misreading of the Agreement's definition of the Nationwide Class, which includes all those who "used the App—the TikTok video sharing application (or its Musical.ly predecessor) distributed in the United States—prior to September 30, 2021." Order &

Final J. ¶ 2. But this reference to TikTok as a "video sharing application" defines the app, and it does not, as Plaintiffs have contended, limit the class to users who shared videos using the app. The second argument posits that because the in-app browser provides a means of accessing third-party websites, it has nothing to do with collecting and using data from within the TikTok app itself. That is facile; the in-app browser is part and parcel of the TikTok app, and no different from any other functionality within the app, as any TikTok user well knows. Indeed, the first-filed Plaintiff explicitly concedes that the in-app browser "*open[s] inside the TikTok app*." Recht Compl. ¶ 91 (emphasis added). Plaintiffs also ignored the fact that this case involved allegations that TikTok's tracking "is not limited to the scope of the TikTok app" but instead also covered "private user data, created outside of and unrelated to the TikTok app, when the app is not in use." CAC ¶¶ 179-180. In short, the IAB Plaintiffs cannot read exceptions into the Settlement Agreement that do not exist.

By its terms, the Settlement Agreement forecloses the newly filed actions, and the Court should dismiss on that basis. It can end its analysis there and need not reach whether res judicata also bars the IAB Cases. *See Platinum Supplemental Ins., Inc. v. Guarantee Tr. Life Ins. Co.*, 989 F.3d 556, 568 (7th Cir. 2021) (declining to reach res judicata defense where claim at issue was released under settlement agreement); *accord Nichols v. Citibank, N.A.*, No. 16-01215, 2016 WL 9211661, at *2 (C.D. Cal. July 12, 2016) ("The Court need not reach the res judicata issue here because the release is dispositive."), *aff'd*, 715 F. App'x 681 (9th Cir. 2018).

### B.     Res Judicata Bars the IAB Cases

While the Court need not consider res judicata at all, the doctrine nonetheless bars the IAB Cases. Federal common law—here, as interpreted by the Seventh Circuit—governs the preclusive effect of a prior federal court judgment. *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008). Res judicata, or claim preclusion, "promotes predictability in the judicial process, preserves the limited

resources of the judiciary, and protects litigants from the expense and disruption of being haled into court repeatedly." *Adams v. City of Indianapolis*, 742 F.3d 720, 735-36 (7th Cir. 2014) (quoting *Palka v. City of Chicago*, 662 F.3d 428, 437 (7th Cir. 2011)). Res judicata rests "on the pragmatic insight that one fair opportunity to litigate a claim is normally enough," *Daza v. State of Indiana*, 2 F.4th 681, 683 (7th Cir. 2021), and thus "prevents the relitigation of claims already litigated as well as those that could have been litigated but were not," *Palka*, 662 F.3d at 437. It has three elements: (1) an identity of the parties or their privies; (2) a final judgment on the merits; and (3) an identity of the causes of action. *Barr v. Bd. of Trs. of W. Illinois Univ.*, 796 F.3d 837, 840 (7th Cir. 2015). All three are present here.

   *First*, the identity of the parties is the same because the Plaintiffs in the IAB Cases were class members in this case.[5] None of the IAB Plaintiffs alleges that either they or the classes they purport to represent opted out of the prior settlement, and as a consequence, they remain subject to its terms. *See Kilburn-Winnie v. Town of Fortville*, 891 F.3d 330, 333 (7th Cir. 2018) (identity-of-parties element met where the named plaintiff in second action was a putative class member in first action); *Hernandez v. Multi-Servicios Latino, Inc.*, No. 16-10747, 2019 WL 5634201, at *2 (N.D. Ill. Oct. 31, 2019) (same where "[e]ach Plaintiff in the instant case was an unnamed class member in [prior case] and did not opt out of that class or the settlement agreement"). Under binding law, there is a common identity of the parties.

---

[5] *Compare, e.g.*, Class Action Compl. ¶¶ 6, 145, *Recht v. TikTok Inc.*, No. 22-08613 (C.D. Cal. Nov. 25, 2022), ECF No. 1 (alleging that Plaintiff Recht "created his TikTok account in 2019" and defining the nationwide class that he purports to represents as "[a]ll natural persons in the United State[s] who used the TikTok app to visit websites external to the app, via the in-app browser"), *with* Order & Final J. ¶ 2 (defining released nationwide class as "[a]ll persons who reside in the United States who used the App—the TikTok video sharing application (or its Musical.ly predecessor) distributed in the United States—prior to September 30, 2021").

*Second*, a dismissal with prejudice based on a settlement agreement constitutes a final judgment for the purposes of res judicata. *Kilburn-Winnie*, 891 F.3d at 333-34 (holding that "the district court's order dismissing the case with prejudice, which specifically incorporated the release language of the settlement agreement, represented a final judgment on the merits of that claim"); *Brooks-Ngwenya v. Indianapolis Pub. Schs.*, 564 F.3d 804, 809 (7th Cir. 2009) (same). That is exactly what happened here: the Court dismissed the action with prejudice based on the Settlement Agreement. *See* Order & Final J. ¶¶ 8, 20; *see also* Final Approval Order. There is no question that a final judgment on the merits was rendered.

*Third*, for the identity of the causes of action, courts do not require complete identity, but instead analyze "whether the claims comprise the same core of operative facts that give rise to a remedy." *Adams*, 742 F.3d at 736; *see also Montgomery v. Brennan*, No. 16-00533, 2017 WL 951352, at *3 (N.D. Ill. Mar. 8, 2017) (Pallmeyer, J.) ("A claim has 'identity' with a previously litigated matter if it emerges from the same 'core of operative facts' as that earlier action."). "Under well-established claim-preclusion doctrine, this common nucleus of operative facts means the claims are the same even though they involve different legal theories." *Matrix IV, Inc. v. Am. Nat'l Bank & Tr. Co. of Chicago*, 649 F.3d 539, 548 (7th Cir. 2011).

The analysis is modified, however, if the prior action terminated in a settlement agreement. In that scenario, "the express terms of a settlement agreement, not merely the terms of the judgment, determine the bounds of preclusion after a settlement." *Daniels v. Rivers*, No. 14-01533, 2014 WL 6910492, at *7 (N.D. Ill. Dec. 9, 2014) (St. Eve, J.) (quoting *Toscano v. Connecticut Gen. Life Ins. Co.*, 288 F. App'x 36, 38 (3rd Cir. 2008)); *see also Crosby v. City of Chicago*, No. 18-04094, 2018 WL 6198483, at *9 (N.D. Ill. Nov. 28, 2018) (same); *accord Norfolk S. Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1288 (11th Cir. 2004) (when two parties settle a lawsuit,

that lawsuit's res judicata effect is "controlled by the Settlement Agreement into which the parties entered" and not by "the original complaint"); 18A Fed. Prac. & Proc. Juris. § 4443 (3d ed.) ("If it is clear that the parties agreed to settle claims that were not reflected in the original pleadings, preclusion may extend to claims that were not even formally presented.").

The identity-of-claims element is met here. Plaintiffs in the IAB Cases are bound by the Settlement Agreement, and its terms now dictate the res judicata effect on their newly filed actions. *Daniels*, 2014 WL 6910492, at *7. As explained above, Plaintiffs released claims related to TikTok's "collection and use of any user data." Settlement Agreement §§ 2.30, 12.1. Plaintiffs cannot renege on the Agreement and bring new claims on this same issue. *See Daniels*, 2014 WL 6910492, at *7 (even where the earlier and later cases "did not arise from the same core of operative facts," identity-of-claims element satisfied because "the settlement agreement in [the earlier case] covers the [later] claim raised in this case"); *see also Crosby*, 2018 WL 6198483, at *11 (identity-of-claims element satisfied where "the [prior] Settlement Agreement covers the [new] claims raised in this matter. So the dismissal of [prior action] based upon the [prior] Settlement Agreement precludes [plaintiff] from bringing the claims asserted here."). The parties contracted for the Release, which is dispositive of the IAB Cases. Not only that, Plaintiffs in the IAB Cases have violated this Court's injunction against relitigating claims that they already settled and released. *See* Order & Final J. ¶ 24; *infra* at 14.

Regardless, the result would be the same if the Court were to look beyond the Settlement Agreement and, instead, apply the traditional analysis for the identity-of-claims element. For the purposes of that analysis, it matters not at all that the two cases might assert different causes of action. As the Seventh Circuit has explained, "identity of claims for res judicata purposes has nothing to do with legal theories; the key is that the claims arise from the same core of operative

facts." *Matrix*, 649 F.3d at 547-48; *see also Adams*, 742 F.3d at 736 (the test is "whether the claims comprise the same core of operative facts that give rise to a remedy"). A common core of operative facts exists where the two actions "are based on the same, or nearly the same, factual allegations." *Czarniecki v. City of Chicago*, 633 F.3d 545, 550 (7th Cir. 2011).

This is an easy case under that framework. It is obvious that the CAC concerned all user data that TikTok allegedly collected without sufficient notice and consent, given the allegations that "[t]he TikTok App secretly collects data far beyond what Defendants disclose to users," including "internet browsing history . . . which may contain highly sensitive, user-specific information." CAC ¶ 167. The IAB Cases reprise these same allegations. *E.g.*, Class Action Compl. ¶ 7, *E.K. v. TikTok Inc.*, No. 22-10574 (S.D.N.Y. Dec. 14, 2022), ECF No. 1 ("Put simply, TikTok intercepts the data of its users without their consent when those users are unknowingly brought to a website through TikTok's [in-app browser] and TikTok records and stores that data created therefrom."). This case and the IAB Cases share a common identity of the claims because "the central factual issues are identical." *Brzostowski v. Laidlaw Waste Sys., Inc.*, 49 F.3d 337, 339 (7th Cir. 1995); *Quincy Mall, Inc. v. Parisian, Inc.*, 27 F. App'x 631, 637-38 (7th Cir. 2001) (barring claim by res judicata despite differences in the legal claims at issue); *Nwoke v. Univ. of Chi. Med. Ctr.*, No. 19-00358, 2020 WL 3000285, at *2 (N.D. Ill. June 4, 2020) (same where "the underlying factual allegations are largely identical"), *aff'd*, Nos. 20-2242, 20-3413, 2021 WL 3483434 (7th Cir. Aug. 9, 2021).

In sum, whether considered under this traditional analysis or by the terms of the Settlement Agreement, the identity-of-claims element—like the first two elements—is met. In addition to release, res judicata imposes a separate bar to the IAB Cases.

### C. The IAB Actions Violate the Court-Ordered Injunction against Further Litigation of Released Claims

In addition to being barred by release and res judicata, the IAB Plaintiffs violated the Court's Litigation Injunction by filing these cases. The Court specifically enjoined all class members "from commencing or prosecuting any action, suit, proceeding, claim or cause of action . . . based upon, relating to, or arising out of, any of the Released Claims." Order & Final J. ¶ 24. That is exactly what the IAB Cases seek to do. As such, IAB Plaintiffs' violation of the Court-ordered injunction provides a third ground for dismissing the IAB Cases without further leave to amend. *See, e.g.*, *Breslow v. Prudential-Bache Props., Inc.*, No. 91-1230, 1993 WL 150052, at *2-4 (N.D. Ill. May 7, 1993) (enjoining further prosecution of case that was filed in violation of an injunction against further litigation; "[w]hat the injunction actually says—not what the parties think it ought to have said—controls subsequent proceedings" (quoting *Scandia Down Corp. v. Euroquilt, Inc.*, 772 F.2d 1423, 1432 (7th Cir. 1985))).

## CONCLUSION

Settled law, whether examined under the doctrine of release or res judicata, bars the IAB Plaintiffs' attempt to relitigate the Released Claims. For these reasons, the IAB Cases should never have been filed, as any counsel who conducted a reasonable pre-filing investigation should have realized the claims were barred. But even if that misstep could be excused, the continued prosecution of these cases by the remaining IAB Plaintiffs after TikTok alerted them and their counsel to the Settlement Agreement cannot be excused.[6] The Court should therefore enforce the Settlement Agreement and the prior Litigation Injunction and dismiss the IAB Cases with prejudice.

---

[6] Four IAB Cases (*Rahn*, *Smith*, *Arroyo*, and *Kowalski*) have already been voluntarily dismissed.

Dated:  August 11, 2023       By: */s/ Anthony J Weibell*

Anthony J Weibell
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:  (650) 493-9300
Facsimile:  (650) 565-5100
Email:  aweibell@wsgr.com

*Lead Counsel for all Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that, the foregoing document was filed electronically through the Court's Electronic Case Filing System. Service of this document is being made upon all counsel of record in this case by the Notice of Electronic Filing issues through the Court's Electronic Case Filing System on this date.

Dated:  August 11, 2023          By: */s/ Anthony J Weibell*    
                                               Anthony J Weibell