# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **IN RE: TIKTOK, INC.,** **CONSUMER PRIVACY LITIGATION,** | MDL Docket No. 2948 |
| | Master Docket No.: 1:20-cv-04699 |
| **This Document Relates to:** | Hon. Rebecca R. Pallmeyer |
| Bravo v. TikTok, Inc.  23-cv-00225 | |
| Murphy v. TikTok, Inc.  23-cv-00504 | |
| Buckley v. TikTok, Inc.  23-cv-00841 | |
| Tado v. TikTok, Inc.  23-cv-01430 | |
| Recht v. TikTok, Inc.  23-cv-02248 | |
| Fleming v. TikTok, Inc.  23-cv-02260 | |
| E.K. v. TikTok, Inc.  23-cv-02262 | |
| Androshchuk v. TikTok, Inc.  23-cv-02462 | |
| Albaran v. TikTok, Inc.  23-cv-02463 | |
| G.R. v. TikTok, Inc.  23-cv-02464 | |
| Moody v. TikTok, Inc.  23-cv-02465 | |
| Schulte v. TikTok, Inc.  23-cv-02466 | |
| Fugok v. TikTok, Inc.  23-cv-02467 | |

### *IN-APP BROWSER* PLAINTIFFS' OPPOSITION TO DISMISSAL OF THE *IN-APP BROWSER* CLAIMS ON THE BASIS OF THE *BIOMETRIC DATA* SETTLEMENT

I. **INTRODUCTION**

The *In-App Browser* cases concern TikTok's practice of secretly injecting JavaScript code into third-party websites accessed from the TikTok app, which allowed TikTok to intercept, view and record users' private activities on those websites. TikTok used this valuable information to command massive advertising revenue. All the *In-App Browser* cases allege federal and state wiretapping claims, which broadly prohibit the interception and eavesdropping of any wire, oral, or electronic communications without the consent of at least one of the parties to the communication.

Unfortunately, TikTok has a long history of secretly collecting user data, albeit of different forms and by strikingly different means. In the now-terminated MDL, *In Re: TikTok, Inc., Consumer Privacy Litigation*, MDL No. 2948 (the "*Biometric Data*" case)[1], plaintiffs alleged unlawful data collection through an entirely different function of the TikTok app – the video-sharing function – and asserted different legal claims arising from that unique function. Specifically, the *Biometric Data* case involved "defendants' conduct with respect to the scanning, capture, retention and dissemination of facial geometry and other biometric information of users of the app." *In re: TikTok, Inc., Consumer Privacy Litig.*, 481 F. Supp.3d 1331, 1331 (J.P.M.L. 2020). Importantly, none of the allegations of the *Biometric Data* complaint refer to TikTok's surreptitious interception of users' activity on third-party websites and, not surprisingly, the *Biometric Data* plaintiffs did not allege any wiretapping claims. Rather, their "core claim" was a violation of the Illinois Biometric Information Privacy Act, which, as alleged in the *Biometric Data* Complaint, arose when the plaintiffs there recorded videos, posted videos, searched for videos and liked videos while using the video-sharing functions of the Tik-Tok app.[2]

---

[1] For purposes of this brief, "*Biometric Data*" refers to the cases filed in this MDL, *In re: TikTok, Inc., Consumer Privacy Litig.*, Case No. 1:20-cv-04699. "*In-App Browser*" refers to the newly-filed cases, beginning with Plaintiff Austin Recht's filing, alleging that TikTok illegally wiretapped, keystroke logged and key event logged individuals' activities on third-party websites using an in-app browser.

[2] *See* Declaration of Roland Tellis ("Tellis Decl."), Exh. 1, at pp. 5-19. Further citations to the exhibits attached to the Tellis Decl. will cite just the exhibit.

The *Biometric Data* plaintiffs reached a classwide settlement two years before the *In-App Browser* cases were filed. The *Biometric Data* class settlement did not, and could not, release Plaintiffs' claims in the *In-App Browser* cases. A careful analysis of the *Biometric Data* case, including its procedural history, the allegations of the consolidated complaint, the terms of the settlement agreement, the settlement briefs (both at the preliminary approval and final approval stage), the dissemination of class notice, and the MDL Court's Orders leave no doubt that the two sets of cases do not share a single common factual predicate, let alone an ***identical*** one, as required for dismissal of the *In-App Browser* cases. Against this backdrop, barring the *In-App Browser* claims based on the *Biometric Data* Settlement would raise grave due process concerns.

TikTok's anticipated arguments to the contrary lack merit.[3]

## II. THE *BIOMETRIC DATA* AND *IN-APP BROWSER* CASES DO NOT SHARE A COMMON FACTUAL PREDICATE

### A. From Start to Finish, the Core Factual Allegation of the *Biometric Data* Cases Concerned the Capture of Biometric Data from TikTok's Video Sharing Function

The procedural history of the *Biometric Data* cases and the *Biometric Data* Settlement is well-documented in multiple briefs and Court Orders.[4] From the very beginning, the core factual issue involved "the scanning, capture, retention, and dissemination of the facial geometry and other biometric information of users of the app," as recognized by the Judicial Panel on Multi-District Litigation. *See In re TikTok, Inc., Consumer Privacy Litig.*, 481 F. Supp. 3d 1331, 1331 (J.P.M.L. 2020). Thereafter, the allegations of Plaintiffs' Consolidated Amended Class Action Complaint again centered on TikTok's unlawful scanning, capture, retention, and dissemination of facial geometry and other biometric information, occurring *in the video sharing functions* of the TikTok app.[5] Indeed, in both the Settlement Agreement and related Addendum, the settling

---

[3] *In-App Browser* plaintiffs reserve their right to request leave to file a reply in support of this brief addressing any new arguments raised by TikTok that were not previously raised in any of the briefing before the Joint Panel on Multi-District Litigation.

[4] *See* Exh. 1 at 1-4, Exh. 4 at ¶¶ 14-41, Exh. 5 at ¶¶ 9-23; Exh. 6 at 8-10; Exh. 7 at 2-6; Exh. 8 at 1-4, 8-13; Exh. 9 at 1-2, 4-9.

[5] *See* Exh. 2 at 2-3; Exh. 7 at 1-2, 5-6; Exh. 8 at 2-3; Exh. 9 at 1, 4-6; Exh. 10 at 2 (defining both the Nationwide Class and Illinois Subclass with reference to the "TikTok video sharing application").

parties defined the TikTok "App" as the "video-sharing application."[6] From consolidation to final approval, there was never a reference to TikTok's use of JavaScript code in an in-app browser to monitor consumers' activities on third-party websites, including TikTok's keystroke logging, which is at issue in the *In-App Browser* cases.

### B. The *Biometric Data* Plaintiffs *Never* Alleged *In-App Browser's* Wiretapping Claims

In stark contrast to the *In-App Browser* complaints, notably absent from the *Biometric Data* Complaint were **any** wiretapping claims under federal or state laws. The *Biometric Data* complaint focused on TikTok's collection of facial recognition information and other biometric information when users engaged with the video sharing platform, including during the video creation, sharing and browsing functions. The *Biometric Data* Complaint also alleged violations of law caused by TikTok's collection of information from users' mobile devices (such as G.P.S. location and clipboard contents) and the transfer of that information outside of the U.S.[7]

To illustrate the obvious divergence between the two groups of cases, the word "video" appears a staggering 324 times in the 119-page *Biometric Data* Complaint, and "biometric" appears 138 times while the words "in-app browser," "keystroke logging," and "third-party website" ***do not appear even once***. And, conversely, the terms facial geometry scans, voice prints, or any other biometric markers are not mentioned **even once** in the *In-App Browser* cases. Quite simply, the allegations in the *In-App Browser* cases do not involve making or recording videos, sharing videos, sending messages or any other activity involving the "video sharing application" that formed the basis of the class definition in the *Biometric Data* MDL.

Next, the *Biometric Data* Complaint describes the various ways TikTok collects data and the types of data extracted as follows:

> Defendants have used automated software, proprietary algorithms, AI, facial recognition, and other technologies to commercially profit from Plaintiffs' and Class Members' identities, unique identifying information, biometric data and information, images, video and digital recordings, audio recordings, clipboard data,

---

[6] *Id*.
[7] Exh. 1. at §§ V-VI; *see also* Exh. 14 at ¶¶ 13-18 (detailing investigation into BIPA and Video Privacy Protection Act Claims underlying the *Biometric Data* Complaint).

> geolocation, names, e-mail addresses, passcodes, social media accounts, messaging services, telephone numbers, and other private, non-public, or confidential data and information, or meaningful combinations thereof…[8]

Again, there is no mention of TikTok's use of an in-app browser, its monitoring of users' activity on third-party websites, or its keystroke logging.

### C. Confirmatory Discovery Taken in the *Biometric Data* Cases was Limited to TikTok's Warranty Regarding the Collection of Biometric Data

The confirmatory discovery that TikTok agreed to provide was ***never*** intended to allow the *Biometric Data* plaintiffs to discover additional claims, and certainly not the *In-App Browser* claims. Instead, the *Biometric Data* Settlement described the intended, limited purpose of the confirmatory discovery as follows: "TikTok will provide the following confirmatory discovery to confirm this warranty."[9] Namely, that "TikTok warrants that it has not used the App ***to collect biometric identifiers or biometric information*** as defined by the Illinois Biometric Information Privacy Act."[10] Accordingly, the *Biometric Data* plaintiffs never had the confirmatory discovery necessary to plumb TikTok's source code for information about the *In-App Browser* claims. ***All*** the discovery focused on TikTok's warranty which was limited to the *Biometric Data* claims.[11]

Tellingly, the injunctive relief sought as a result of the confirmatory discovery was aimed specifically at TikTok's collection of biometric data; wiretapping and data interception (much less on a third-party website via the in-app browser) were not part of the enjoined conduct.[12]

### D. The *Biometric Data* Settlement Briefing Never Mentions Any Facts Related to the *In-App Browser* Claims

The preliminary and final approval briefing, and related Orders, make clear that the core factual issue in the *Biometric Data* cases was the capture of biometric data. Nowhere in any of

---

[8] Exh. 1 at ¶ 9.
[9] Exh. 3 at § 7.1.
[10] *Id*.
[11] *See id*. at 7.3: "Interrogatories. TikTok will respond under oath to a supplemental interrogatory designed to elicit an explanation of the function and purpose of up to 20 specific terms in the source code that the third-party expert believes in good faith to be potentially related to the collection of biometric data from users."; *see also, id*. at 7.6: "Depositions. TikTok will make available Fed. R. Civ. P. 30(b)(6) witness(es) for depositions by written question to verify the warranty that TikTok has not collected biometric identifiers or biometric information from users of the App."
[12] *See id.* at § 6.1 and Addendum at § 4.1.

these documents is there a single mention of TikTok's use of an in-app browser to monitor users' activity on third-party websites. The focus of the briefing and Orders was on activity during users' engagement with the video-sharing function of the app.[13] While Judge Lee highlighted a number of common issues shared by the *Biometric Data* class in his Orders,[14] counsel submitted sixteen common issues that predominated over any individual issues, including: issues related to the collection, use and sharing of biometric data, unauthorized access to plaintiffs' devices, disclosure of video viewing histories, etc.[15] ***Nowhere*** among this list, or the list included in Judge Lee's Order, is there any mention of TikTok's use of JavaScript code and an in-app browser to monitor users' activities on third-party websites, or TikTok's keystroke logging.

### E. *Biometric Data* Co-Lead Counsel Filed an *In-App Browser* Case

The actions of *Biometric Data's* co-lead counsel further confirm that the *In-App Browser* claims were not released by the *Biometric Data* Settlement. Judge Lee issued his Order and Final Judgment Granting Final Approval of Class Action Settlement on August 22, 2022.[16] Just days before that, software researcher Felix Krause ("Mr. Krause") released new evidence proving that TikTok's in-app browser used JavaScript insertions to log keystrokes, key events and other information while users interacted with third-party websites.[17] Although there was a brief appeal of Judge Lee's Order and Final Judgment, it was dismissed on October 12, 2022,[18] rendering the *Biometric Data* Settlement's Effective Date as October 13, 2022.[19]

The first *In-App Browser* case was filed on November 25, 2022, alleging new claims arising from TikTok's illegal practice of wiretapping and keystroke logging individuals'

---

[13] Exh. 2 at 1-4; Exh. 7 at 1-5; Exh. 8 at 2-4; Exh. 9 at 1-2.
[14] *See* Exh. 7 at 14.
[15] Exh. 2 at 39-41.
[16] Exhs. 9 and 10.
[17] Krause, Felix, "iOS Privacy: Announcing InAppBrowser.com – see what JavaScript commands get injected through an in-app browser" Felix Krause, Aug. 18, 2022 (available at https://krausefx.com/blog/announcing-inappbrowsercom-see-what-javascript-commands-get-executed-in-an-in-app-browser).
[18] Exh. 13.
[19] *See* Exh. 3 at § 2.12: "'Effective Date' means the first date after either (i) the time to appeal the Final Order and Judgment has expired with no appeal having been filed or (ii) the Final Order and Judgment is affirmed on appeal by a reviewing court and no longer reviewable by any court."

interactions with third-party websites. Thereafter, co-lead counsel and a PSC member from the *Biometric Data* cases – Katrina Carroll and Jonathan Jagher – filed an *In-App Browser* case on December 27, 2022, alleging claims nearly identical to those of *In-App Browser* Plaintiff Recht.[20] Absent from the complaint filed by Ms. Carroll and Mr. Jagher was any mention of the *Biometric Data* cases or settlement. Instead, Ms. Carroll and Mr. Jagher filed a brief supporting the creation of a new MDL for the new *In-App Browser* claims asserted against TikTok – declining to support TikTok's position that the *In-App Browser* cases arose from the same core set of facts as the *Biometric Data* cases.[21] These filings confirm that (1) the *In-App Browser* claims were not alleged in the *Biometric Data* cases, and (2) counsel in the *Biometric Data* cases did not release of the *In-App Browser* claims as part of the *Biometric Data* Settlement. *Johnson v. Winco Foods, LLC*, No. EDCV 172288DOCSHKX, 2019 WL 6139161, at *8 (C.D. Cal. Sept. 18, 2019) (subsequent claims were not alleged in a prior action and neither counsel, nor the plaintiff, contemplated that the subsequent claims would be released).

F. **References in the *Biometric Data* Complaint to "Browsing History" and "Internet Browsing History" Do Not Refer to the In-App Browser**

The *In-App Browser* plaintiffs anticipate TikTok likely will recycle the same or similar arguments and reasoning it made in prior briefings to the JPML.[22] There, TikTok argued that passing references to buzzword terms like "browsing history" and "internet browsing history" indicate the complete subsummation of the claims brought by the *In-App Browser* plaintiffs. The assertion that these passing references indicated or even included allegations regarding TikTok's illegal wiretapping and keystroke logging of individuals' activities on third-party websites is incorrect for several reasons.

---

[20] *See* Exh. 11.
[21] *See* Exh. 12 at 1 ("Plaintiff's action, like all other actions in the Member Cases, stems from Defendants' . . . unlawful practiced of surreptitiously intercepting Plaintiff's and other consumer's private electronic communications in violation of the Federal Wiretap Act, 18 U.S.C. § 2510, *et seq*. and analog state causes of action").
[22] Exh. 16.

First, TikTok erroneously relies on the term "browsing history" to argue that the *In-App Browser* plaintiffs' claims have already been considered and determined by the Court under the Settlement Agreement. The term "browsing history" is just one of 18 types of data at issue in the *Biometric Data* case.[23] This reference must be interpreted within the context of the Court's and *Biometric Data* counsel's understanding, which consistently refers to the term in the context of "video viewing histories," a phrase both the Court and *Biometric Data* counsel used repeatedly.[24] As a result, the use and context of these two terms together show the Court's and *Biometric Data* counsel's mutual understanding of the terms are related to a record of the videos a user has viewed. This can be contrasted with what is at issue in this case: keystroke data illegally tracked and scraped by TikTok when one utilizes the in-app browser.

Second, TikTok's reliance on the term "internet browsing history" is similarly without merit. Defendants have omitted the full context surrounding the phrase as used by both the *Biometric Data* Court and counsel. The *Biometric Data* Complaint specifically alleges TikTok extracts a user's data from their mobile device "even when the TikTok app is not in use." Moreover, the related footnote in the *Biometric Data* Complaint cites a section of TikTok's privacy policy that lists data TikTok automatically collects, even if the person who downloaded the app does not create an account (*i.e.,* does not actually use the app). Thus, "internet browsing history," as used by the *Biometric Data* Court and counsel, references data pulled from the default internet browser on a user's device (such as Safari). This reference is distinct from the conduct alleged here involving TikTok's in-app browser and its surreptitious insertion of JavaScript code for the sole purposes of monitoring a user's activity on third party websites.[25]

Furthermore, TikTok's dependence on the phrase "internet browsing history" to lump the distinct claims alleged here with the *Biometric Data* Settlement Agreement fundamentally misrepresents the *In-App Browser* claims. The former references a static, stored record of a

---

[23] Exh. 1 at ¶ 156.
[24] *See*, *e.g.*, Exh. 2 at 4 ("private viewing histories") and 7 ("video viewing histories"); Exh. 9 at 6 ("video viewing histories").
[25] *See* Exh. 15 at ¶¶ 87-96 (describing use of in-app browser on the TikTok app).

7

user's previously visited website, allegedly acquired regardless of whether the TikTok app was even open or running. By contrast, the latter relates to claims that TikTok actively harvested a user's activity from third-party websites through a real-time keystroke and key event wiretapping scheme implemented at a point in the application when a user would believe they have left the TikTok app entirely and were, instead, browsing third-party websites. References in the *Biometric Data* Settlement Agreement and related proceedings to data concerning "internet browsing history," or even video browsing history generally, are profoundly different from the keystroke data contentions made against TikTok here.

### III. THE LAW GOVERNING THE NOTICE AND EFFECT OF PRIOR SETTLEMENT AGREEMENTS CONFIRMS THAT THE *BIOMETRIC DATA* SETTLEMENT DID NOT RELEASE CLAIMS ASSERTED IN THE *IN-APP BROWSER* CASES

#### A. The *Biometric Data* Settlement Failed to Provide Notice to *In-App Browser* Plaintiffs or Class Members That Their *In-App Browser* Claims Were Being Released

The certified settlement classes in the *Biometric Data* cases only included users who used TikTok as a video-sharing application, and not users who accessed third-party websites from the app.[26] The class notices make clear that the *Biometric Data* Settlement resolves claims related to the "video-sharing application" at issue in the *Biometric Data* MDL. Undeniably absent from the notice is any mention of third-party websites, keystroke logging, or an in-app browser.

As noted on the settlement website, the *Biometric Data* action's core facts center on allegations that TikTok collected, and used, "without sufficient notice and consent, Plaintiffs' personal data in connection with their use of the TikTok – Make Your Day **video-sharing application** (and/or its predecessor app Musical.ly) distributed in the U.S." (emphasis added).[27]

---

[26] *See* Exh. 2 at 12 (settlement class definitions reference only the video sharing functions of the app); *see also* Exh. 12 (referencing only the video sharing functions of the app).

[27] https://www.tiktokdataprivacysettlement.com/important-documents.php

> **If you and/or your minor child used the TikTok and/or Musical.ly application, You May Be Entitled to a Payment from a Class Action Settlement.**
>
> If you live in Illinois and used the TikTok app in Illinois to create videos, you may be entitled to up to 6x the Payment.
>
> - Plaintiffs filed a class action complaint alleging that TikTok, Inc. f/k/a Musical.ly, Inc; ByteDance, Inc.; Musical.ly n/k/a TikTok, Ltd. and Beijing ByteDance Technology Co. Ltd. (collectively, the "Defendants"), violated federal and state law by collecting and using, without sufficient notice and consent, Plaintiffs' personal data in connection with their use of the TikTok - Make Your Day video-sharing application (and/or its predecessor app Musical.ly) distributed in the U.S. (the "App.").

Moreover, the Claim Form provided to class members in the *Biometric Data* MDL only asks three questions, none of which relate to the *In-App Browser* Plaintiffs' access of third-party websites, or Defendants' interception of personal information and data on third-party websites, and instead relate to use of the video viewing and creating functions of the app:[28]

**II. CLASS MEMBER DETAILS**

| | |
|---|---|
| Do you currently reside in the United States? | Yes ☐ No ☐ |
| Are you both (1) a resident of Illinois (2) who used the TikTok – Make Your Day video-sharing application (and/or its Musical.ly predecessor) to **create** videos while living in Illinois? | Yes ☐ No ☐ |
| Did you use the TikTok - Make Your Day video-sharing application (and/or its Musical.ly predecessor) distributed in the U.S. prior to September 30, 2021? | Yes ☐ No ☐ |

The definition, notice, and claim form are consistent with the *Biometric Data* factual predicate of users' use of the video-sharing function in the TikTok app, and not accessing third-party websites.

---

[28] *Id.*

9

Plaintiffs expect TikTok to rely on several inapposite cases to support its arguments. Each is distinguishable because, in those cases, class members received *actual* notice of the claims they were releasing, which is not the case here. In *Skilstaf, Inc. v. CVS Caremark Corp.*, Skilstaf participated in the prior case's settlement proceedings, objected, corresponded with counsel in the case, and was given a specific opportunity to opt out by the court. *Skilstaf, Inc. v. CVS Caremark Corp.*, No. C 09-02514 SI, 2010 WL 199717, at *3 (N.D. Cal. Jan. 13, 2010), *aff'd*, 669 F.3d 1005 (9th Cir. 2012). The *Skilstaf* court emphasized that Skilstaf did not opt out when given the opportunity to do so and noted that if Skilstaf's notice of the terms of the settlement had come solely from the settlement and opt out notice, the Court would share Skilstaf's due process concerns. *Id.* But, due to Skilstaf's "unique position," its claim that it lacked notice of the scope of the release was significantly undermined. *Id.*

Similarly, the court in *Tropp v. W.-Southern Life Ins. Co.,* held that a release encompassed subsequent claims of the plaintiff regarding her deceased mother's insurance policy because the mother was "properly notified by Rust Consulting, the firm hired to provide notification materials to all class members. [The mother] could have opted out of the class after she received notice of the settlement, but did not do so." *Tropp v. W.-S. Life Ins. Co.,* 381 F.3d 591, 596 (7th Cir. 2004). Likewise*,* the plaintiff in *Schulte v. Fifth Third Bank* was prevented from maintaining an action based on an identical factual predicate: the resequencing of debit card transactions. *Schulte v. Fifth Third Bank,* No. 09 C 6655, 2012 WL 2254197, at *3 (N.D. Ill. June 15, 2012). The *Schulte* plaintiff also received notice but "did not object to the broad release . . . or opt out . . ." *Id.* at *4. Finally, the plaintiff in *In re VMS L.P. Sec. Litig.* also received notice of the claims – he filed a claim and received payment. The court further found that the facts of both cases were part of the same sequence of events. *Matter of VMS Ltd. Partnership Sec. Litig.,* No. 90 C 2412, 1995 WL 678493, at *1 (N.D. Ill. Nov. 8, 1995) ("[W]ithout the released claim there are no new claims."). That is certainly not the case here.

Critically, unlike the above cases, the *Biometric Data* class notice did not inform class members of the existence of, let alone release, the *In-App Browser* claims, nor did it inform

10

TikTok users they might be class members if they used TikTok's in-app browser or visited third-party websites from the app. Thus, the *In-App Browser* plaintiffs have not been "independently compensated for the broad release of any [*In-App Browser* claims]." *See Hendricks*, 2016 WL 692739, at *3.

### B. The *Biometric Data* Settlement Cannot Release Class Claims in the *In-App Browser* Cases Because They Do Not Arise From the Same Factual Predicate

Even if the *In-App Browser* plaintiffs did receive notice of the *Biometric Data* Settlement, that agreement cannot release class claims (whether known or unknown) that are not based on the ***identical*** factual predicate as that underlying the claims in the settled *Biometric Data* case. *Williams v. Gen. Elec. Cap. Auto Lease, Inc.*, 159 F.3d 266, 273–74 (7th Cir. 1998) ("The weight of authority holds that a federal court may release not only those claims alleged in the complaint, but also a claim based on the ***identical*** factual predicate as that underlying the claims in the settled class action") (internal citation omitted) (emphasis added); *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) ("a settlement agreement's bare assertion that a party will not be liable for a broad swath of potential claims does not necessarily make it so."); *Schulte v. Fifth Third Bank*, No. 90 C 6655, 2012 WL 2254197, at *2 (N.D. Ill. June 16, 2012) (quoting *Williams* for the identical factual predicate standard); *In re Auction Houses Antitrust Litig.*, 42 F. App'x 511, 519 (2d Cir. 2002) ("[W]e have never affirmed the approval of a class action settlement which included the uncompensated impairment of non-class claims unless the non-class claims were based on the identical factual predicate as the class claims."); Joseph M. McLaughlin, McLaughlin on Class Actions § 6:29 (19th ed. 2022 update). Nearly every Circuit has adopted this standard, with none rejecting it. *See* William B. Rubenstein, Newberg and Rubenstein on Class Actions § 18:19 (6th ed. 2023 update).

Here, as discussed above, the factual predicate of the *Biometric Data* cases and the *In-App Browser* cases are not similar, let alone identical. Indeed, to prevail on their wiretapping claims, the *In-App Browser* plaintiffs will not rely on any facts concerning TikTok's collection

11

of biometric data via the video sharing function.[29] The Ninth Circuit's opinion in *Hesse* is particularly instructive on this point. In *Hesse*, Sprint negotiated a nationwide settlement agreement between itself and a class of customers for billing them for certain regulatory fees (the *Benney* litigation). *Hesse,* 598 F.3d at 584. A set of Washington plaintiffs filed a separate class action alleging violations of Washington state law related to billing for taxes. Sprint moved for summary judgment, relying on the *Benney* settlement which broadly released "any and all claims… that have been, could have been, or in the future might be asserted in [this action]." *Id.* The *Hesse* court found that the subsequent claims were based on new factual allegations and involved different conduct by the defendant. Like the *In-App Browser* claims, the *Benney* case did not include the Washington plaintiffs' state-specific claims, or "even pretend to prosecute those claims on their behalf." *Id.* at 589. Accordingly, the Ninth Circuit held that the release could not preclude the Washington plaintiffs because the *Benney* case "did not adequately represent the Washington Plaintiffs" as the Washington plaintiffs' claims were "based on a set of facts different from those underlying the claims settled in the *Benney* Settlement." *Id.* at 587.

Similar to *Hesse* and *Benney*'s overlap regarding improper billing practices*,* the *Biometric Data* and *In-App Browser* claims both arguably raise questions that fall under the broad umbrella of data privacy. But, like the differences in the improper billing practices described above, the method by which TikTok collected that data, the type of data and the location from which the data was collected, are factually distinct, with (a) biometric data harvesting via the video creating, sharing and browsing function on the one hand, and (b) interception of data transmitted to third-party websites via the in-app browser on the other. *See Mata v. Manpower Inc*., No. 14-CV-03787-LHK, 2016 WL 948997, at *7 (N.D. Cal. Mar. 14, 2016) (claim based on untimely receipt of paychecks different factual predicate than failure to pay wages); *Hendricks v. Starkist Co*, No. 13-CV-00729-HSG, 2016 WL 692739, at *3 (N.D.

---

[29] *See, e.g., In re W. States Wholesale Nat. Gas Antitrust Litig*., 725 F. App'x 560, 563 (9th Cir. 2018) (holding that claims for paying inflated prices on natural gas futures contracts was not based on identical factual predicate as previous litigation; each would "depend on proof of different facts to establish a different injury.").

Cal. Feb. 19, 2016) ("That the underlying fact of underfilling could play some part in both this [fraud and consumer protection] lawsuit and a possible future antitrust action does not compel the conclusion that the two actions are based on an identical factual predicate.").

### IV. A COMPLETE DISMISSAL OF THE *IN-APP BROWSER* CLAIMS IS NOT WARRANTED

Even if the Court is inclined to accept TikTok's assertion that the *Biometric Data* Settlement released the *In-App Browser* claims (which it should not), the Court should still allow two categories of *In-App Browser* claims to proceed because they fall outside the time limitations included in the definition of the *Biometric Data* Settlement's "Released Claims" and are, therefore, not part of an "identical factual predicate" between the two cases. *In re Conseco Life Ins. Co. Cost of Ins. Litig.,* No. ML 04-1610 AHM, 2005 WL 5678842, at *7 (C.D. Cal. Apr. 26, 2005) (Plaintiffs' claims were not based on an identical factual predicate as the prior claims because they "occurred years after the [prior] settlement and therefore could not have been asserted in [that] litigation"); *Kleen Prod. LLC v. Int'l Paper*, 306 F.R.D. 585, 606 (N.D. Ill. 2015) (*aff'd sub nom. Kleen Prod. LLC v. Int'l Paper Co.*, 831 F.3d 919 (7th Cir. 2016).

First, the Court should not dismiss claims asserted by TikTok users who downloaded and used the app for the first time after September 30, 2021. The definition of "Released Claims" only applies the Released Parties[30] which include the Class Representatives and Class Members (*i.e.* members of the Nationwide Class and Illinois Subclass).[31] Individuals who joined TikTok for the first time after September 30, 2021 ***do not*** fall within the "Class" definitions certified by Judge Lee and, thus, their claims were not released.[32] For these individuals, *In-App Browser* claims exist from the date they first joined TikTok through the present.

Second, the Court should not dismiss *In-App Browser* claims by TikTok users that arise after the "Effective Date" of the *Biometric Data* Settlement because the "Released Claims" include only those "arising from the beginning of time through the effective date" of October 13,

---

[30] Exh. 3 at ¶ 2.30.
[31] *Id*. at ¶¶ 2.4 and 2.26.
[32] Exh. 10 at 2 (defining the classes and specifying that inclusion ended on September 30, 2021).

2022.[33]  Accordingly, no *In-App Browser* claims by any TikTok user (whether new or old) arising after October 12, 2022 were released.

### V. THE COURT SHOULD ALLOW DISCOVERY INTO ARGUMENTS TIKTOK RAISES ABOUT MATTERS OUTSIDE OF THE PLEADINGS

Plaintiffs anticipate that TikTok will argue, as it has done before, that there is no evidence that TikTok's JavaScript code insertions were actually used to track keystrokes, intercept any wire communications,[34] and/or that confirmatory discovery in the *Biometric Data* case proved that counsel in those cases investigated the *In-App Browser* wiretapping allegations.[35]  If the Court intends to consider these arguments – which Plaintiffs anticipate will include TikTok's reliance on documents or other information not available on public case dockets – then the Court should allow the *In-App Browser* plaintiffs to engage in discovery to test the merits of TikTok's position.  *See* Fed. R. Civ. Proc. 12(d); *Patterson v. Respondus, Inc.*, 593 F. Supp. 873, 803-04 (N.D. Ill. 2022).

For the sake of argument, and to preserve Plaintiffs' opposition, Plaintiffs anticipate TikTok will rely on a November 4, 2022 *Forbes* article for the position that Mr. Krause allegedly reneged on his exposé of TikTok's in-app browser JavaScript code's data interception.  But the *Forbes* author simply claims that he has seen "no evidence TikTok is actually [using the JavaScript code]" and made no independent investigation to ascertain whether Mr. Krause's claim was true.[36]

TikTok has also claimed that the *Biometric Data* plaintiffs "tasked an expert with examining the TikTok app source code to look for precisely the sort of data-privacy asserted in Mr. Recht's [*In-App* Browser] complaint.  Plaintiffs' expert presumably found *nothing* regarding

---

[33] Exh. 3 at ¶ 2.30.
[34] *See* Exh. 16 at 9, n.3 (arguing about the impact of a Forbes article on the merits of Plaintiffs' complaints).
[35] *Id*. (arguing TikTok's presumption that plaintiff's expert found nothing regarding the tracking of keystroke data).
[36] *See*, Exhibit 16 at 9 and n.3 (citing Mozur, Paul, et al., *TikTok Browser Can Track User's Keystrokes, According to New Research*, FORBES, Aug. 19, 2022 (updated Aug. 21, 2022), https://www.nytimes.com/2022/08/19/technology/tiktok-browser-tracking.html).

the tracking of keystroke or key event data, otherwise that issue would have been raised by the plaintiffs in that [*Biometric Data*] action."[37] TikTok's argument on this point goes well beyond the pleadings. TikTok cannot rely on what the *Biometric Data* plaintiffs' expert did or did not find in his review of the TikTok app source code, or what counsel in the *Biometric Data* cases concluded, without allowing the *In-App Browser* plaintiffs an opportunity to engage in discovery on those matters.

At a minimum, if TikTok intends to rely on so-called "confirmatory discovery" conducted in the *Biometric Data* cases, Plaintiffs should be provided access to the source code that the prior expert apparently reviewed, all interrogatories propounded and responses, all document requests propounded and responses, transcripts of all deposition questions and answers, a transcript of the "candid question-and-answer session" between Co-Lead Counsel and TikTok's counsel, all expert reports or analyses, and a copy of Co-Lead Counsel's analyses of the confirmatory discovery and expert analyses.

## VI. CONCLUSION

Based on the facts and law above, Plaintiffs respectfully request that the Court allow all *In-App Browser* claims to move forward. In the alternative, the Court should allow at least the two categories of claims which fall outside the *Biometric Data* Settlement's time limitations to proceed.

Dated: August 11, 2023

Respectfully submitted,

By: */s/ Roland Tellis*
Roland Tellis

**BARON & BUDD, P.C.**
Roland Tellis (SBN 186269)
Sterling Cluff (SBN 267142)
David Fernandes (SBN 280944)
Shannon Royster (SBN 314126)
Jay Lichter (SBN 266960)

---

[37] Exh. 16 at 9 and n.3.

15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Telephone: 818-839-2333

*Counsel for Plaintiff Austin Recht*

James E. Cecchi
Kevin G. Cooper
**Carella Byrne Cecchi Brody & Agnello, P.C.**
5 Becker Farm Rd.
Roseland, NJ 07068
Tel. 973-994-1700
jcecchi@carellabyrne.com
kcooper@carellabyrne.com
*Counsel for Plaintiff Carina Fleming*

Bryan P. Thompson
**Chicago Consumer Law Center, P.C.**
650 Warrenville Road, Suite 100
Lisle, IL 60532
Tel. 312-858-3239 | Fax 312-610-5646
bryan.thompson@cclc-law.com

*Counsel for Plaintiff Katie Murphy*

**HERMAN JONES LLP**
John C. Herman (Ga. Bar No. 348370)
jherman@hermanjones.com
Candace N. Smith (Ga. Bar. No. 654910)
csmith@hermanjones.com
Connely M. Doizé (Ga. Bar No. 663453)
cdoize@hermanjones.com
3424 Peachtree Road, N.E., Suite 1650
Atlanta, Georgia 30326
Telephone: (404) 504-6500
Facsimile: (404) 504-6501

*Counsel for Plaintiff Grace Schulte*

Israel David
Blake Hunter Yagman
**ISRAEL DAVID LLC**
17 State Street, Suite 4010
New York, New York 10004
Telephone: (212) 739-0622
Facsimile: (212) 739-0628

israel.david@davidllc.com
blake.yagman@davidllc.com

*Counsel for Plaintiff E.K.*

Joseph H. Meltzer
Melissa L. Yeates
Tyler S. Graden
Jordan E. Jacobson
**KESSLER TOPAZ MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056
jmeltzer@ktmc.com
myeates@ktmc.com
tgraden@ktmc.com
jjacobson@ktmc.com

*Counsel for Plaintiffs Bradley Fugok, Adam K. Storey, and Yevgeniy S. Androshchuk*

Kate M. Baxter-Kauf (*pro hac vice*)
Kyle Pozan (IL Bar No. 6306761)
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue S., Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981 0981
kmbaxter-kauf@locklaw.com
kjpozan@locklaw.com

*Counsel for Plaintiff Buckley*

Michael R. Reese
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
mreese@reesellp.com

*Counsel for Plaintiff Anibeth Bravo*

17

Joseph P. Guglielmo (*pro hac vice*)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
jguglielmo@scott-scott.com

*Counsel for Plaintiff G.R., a Minor, by and through Her Guardian Mayra De La Cruz*

MaryBeth V. Gibson (*pro hac vice*)
**THE FINLEY FIRM, P.C.**
3535 Piedmont Rd.
Building 14, Suite 230
Atlanta, GA 30305
Phone: (404) 978-6971
Fax: (404) 320-9978
mgibson@thefinleyfirm.com

*Counsel for Plaintiff Melanie Tado*