UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: TIKTOK, INC., CONSUMER PRIVACY LITIGATION | ) ) ) ) | MDL No. 2948-A |
| | ) | Master Docket No. 20 C 4699 |
| **This Document Relates to:** | ) ) | Judge Rebecca R. Pallmeyer |
| Bravo v. TikTok, Inc. | 23 C 225 ) | |
| Murphy v. TikTok, Inc. | 23 C 504 ) | |
| Buckley v. TikTok, Inc. | 23 C 841 ) | |
| Tado v. TikTok, Inc. | 23 C 1430 ) | |
| Recht v. TikTok, Inc. | 23 C 2248 ) | |
| Fleming v. TikTok, Inc. | 23 C 2260 ) | |
| E.K. v. TikTok, Inc. | 23 C 2262 ) | |
| Androshchuk v. TikTok, Inc. | 23 C 2462 ) | |
| Albaran v. TikTok, Inc. | 23 C 2463 ) | |
| G.R. v. TikTok, Inc. | 23 C 2464 ) | |
| Moody v. TikTok, Inc. | 23 C 2465 ) | |
| Schulte v. TikTok, Inc. | 23 C 2466 ) | |
| Fugok v. TikTok, Inc. | 23 C 2467 ) | |

**PLAINTIFFS' MOTION FOR APPOINTMENT OF
<u>PLAINTIFFS' STEERING COMMITTEE</u>**

I.     **INTRODUCTION**

This case concerns TikTok's practice of using JavaScript code to secretly intercept, view, and record users' private activities on third-party websites (the "*IAB Cases*"). On January 25, 2024, this Court denied TikTok's motion to dismiss the *IAB Cases* and designated this newly coordinated matter as "MDL No. 2948-A." (Dkt. 316). The Court also scheduled an in-person status hearing for March 7, 2024, to discuss "the next procedural steps, including appoint of counsel and development of a revised case management order." *Id.*

Pursuant to Federal Rule of Civil Procedure 23(g), Plaintiffs in the *IAB Cases* have met

and conferred extensively and reached unanimous[1] agreement on a proposed leadership structure, subject to the Court's approval. MANUAL FOR COMPLEX LITIGATION §21.272 (the "MANUAL") (4th ed. 2005) ("private ordering" is the most common method for selection of plaintiffs' counsel.) Plaintiffs respectfully request the Court's appointment of an 11-person Plaintiffs' Steering Committee ("PSC") comprised of Roland Tellis of Baron & Budd, P.C., as Chair of the PSC, along with Carey Alexander of Scott+Scott Attorneys at Law LLP, Stephen R. Basser of Barrack, Rodos & Bacine, Kate M. Baxter-Kauf of Lockridge Grindal Nauen PLLP, James E. Cecchi of Carella, Byrne, Cecchi, Brody & Agnello, P.C., Israel David of Israel David LLC, MaryBeth V. Gibson of Gibson Consumer Law Group, LLC, Tyler S. Graden of Kessler Topaz Meltzer & Check, LLP, John Herman of Herman Jones LLP, Michael R. Reese of Reese LLP, and Bryan P. Thompson of Chicago Consumer Law Center, P.C.

In compliance with this Court's prior directive, the proposed PSC is comprised of "lawyers who 'are capable and experienced,' and who 'will responsibly and fairly represent all plaintiffs, keeping in mind the benefits of diversity of experience, skills, and backgrounds.'" *In Re: Abbott Laboratories*, *et al.*, MDL No. 3026. Indeed, the proposed PSC reflects a well-managed leadership structure populated by talented lawyers, recognizes the Court's desire for efficiency, balanced against the financial and professional resources necessary to effectively litigate this matter, and meets the goal of achieving diversity among counsel.

Plaintiffs propose that the PSC be responsible for overseeing all aspects of this MDL on behalf of all Plaintiffs including: (i) steering the overall litigation; (ii) presenting arguments to

---

[1] As the Court noted, some of the *IAB Cases* were voluntarily dismissed leaving a total of thirteen *IAB Cases* currently pending before this Court. (Dkt. 316, n. 10). The proposed PSC was not intended to exclude any participants. Rather, it consists of all Plaintiffs' counsel who have pending *IAB Cases* and who have actively participated in the organization and litigation of the matter.

the Court; (iii) preparing all briefing; (iv) managing all discovery; (v) convening meetings of counsel; (vi) all settlement negotiations; and (vii) all other duties required for the proper coordination of Plaintiffs' pretrial activities.

The PSC will operate through subcommittees with distinct responsibilities, including Law and Briefing, Offensive Discovery, Defensive Discovery, Third-Party Discovery, Experts, Settlement, and Trial. The Law and Briefing Subcommittee will be responsible for pleading challenges, class certification, summary judgment, and will assist with pre-trial and trial-related briefing. The Discovery Subcommittees will take responsibility for all aspects of written and deposition discovery, beginning with the negotiation of a Protective Order and ESI Protocol. The Expert Subcommittee will handle all aspects of expert designation and discovery, including identifying appropriate experts, working with them to ensure timely preparation of expert reports, rebutting Defendants' experts, taking and defending depositions, and *Daubert* challenges. The Settlement Subcommittee will take responsibility for all settlement discussions and the Trial Subcommittee will work with all other subcommittees to ensure that Plaintiffs' cases are ready for trial in a timely and efficient manner.

To maintain efficiency, the proposed PSC will enforce the use of proven methodologies from prior cases and MDLS to monitor billing, control costs, and avoid duplication. All attorneys will be required to maintain contemporaneous timekeeping records and to submit detailed monthly time reports to the Chair of the PSC to ensure that multiple attorneys are not performing duplicative or unnecessary work.

As Chair of the PSC, Mr. Tellis will oversee the assignment and coordination of work. He will review and monitor subcommittee progress and manage PSC resources to effectively advance the *IAB* Cases. And, if necessary, Mr. Tellis will retain the tie-breaking vote in any

instance of deadlocked PSC or subcommittee decisions. Plaintiffs believe that this structure and allocation of resources will encourage efficiency and clarity without requiring appointment of "Lead Counsel" among this group. Foregoing the traditional "Lead Counsel" structure seen in other MDLs in favor of a PSC structure with a Chair, as proposed here, has achieved the consensus of Plaintiffs' counsel in the *IAB Cases*, and reflects both the cooperative effort of counsel and their willingness to set aside ego in service to this litigation.

The proposed PSC also offers the Court a diverse and geographically balanced structure consisting of nationally recognized counsel with unparalleled experience litigating complex MDL cases and provides the best foundation to litigate the *IAB* Cases ably and efficiently. To be sure, this is not a small or simple case. Recognizing the substantial discovery and litigation burdens that will inevitably fall on Plaintiffs in an MDL against a world-wide social media conglomerate, Plaintiffs have proposed a reasonably large slate with the experience and diversity necessary to effectively confront those challenges. Plaintiffs further expect that this litigation will require prolonged commitments and resources by Plaintiffs' counsel; this consideration is also reflected in the proposed PSC's size. The proposed PSC easily satisfies the Rule 23(g) factors.

**II.     LEGAL STANDARD**

Federal Rule 23(g)(3) provides that "[t]he court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3); *Moehrl v. National Assoc. of Realtors*, Case No. 19-cv-01610, 2020 WL 5260511, *1 (N.D. Ill. May 20, 2020). Pursuant to Rule 23(g)(1)(A), courts must typically consider the following factors: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class[.] Fed.

R. Civ. P. 23(g)(1)(A)(i)–(iv); *In re Navistar Maxxforce Engines Marketing, Sales Practices and Prods. Liab. Litig.*, Case No. 14-cv-10318, 2015 WL 1216318, *1 (N.D. Ill. March 5, 2015) ("*In re Navistar*"). The most important goal in appointing counsel is achieving efficiency and economy without jeopardizing fairness to the parties. MANUAL at § 10.221.

### III. DISCUSSION

#### A. Plaintiffs' Proposed PSC is the Product of Collaborative Private Ordering

The most common and efficient method of selecting class counsel is "private ordering." MANUAL § 21.272. Pursuant to this method, "[t]he lawyers agree who should be lead class counsel and the court approves the selection after a review to ensure that the counsel selected is adequate to represent the class interests." *Id*. It is counsel who "are best informed [about who is best suited to lead the case] and have the greatest incentive to keep attorney fees in check." *In re Parking Heaters Memorandum Antitrust Litig.*, 310 F.R.D. 54, 58 (E.D.N.Y. 2015).

Here, counsel began coordinating their activities shortly after TikTok filed a Notice of Potential Tag-Along Action in the first-filed *Recht* case. Mr. Tellis immediately began working to organize a new MDL and collaborated with all counsel to oppose TikTok's efforts to dismiss the *IAB* Cases. As a natural outgrowth of counsels' prior collaboration, the undersigned firms worked together to organize a leadership structure for the *IAB* Cases. Through cooperative discussions, Plaintiffs' counsel agreed that the proposed PSC would effectively incorporate the skills and experience of counsel while allowing a case of this size to proceed efficiently.

#### B. Members of the Proposed PSC Have Taken Steps to Advance the *IAB* Cases

In appointing counsel, courts routinely look to which counsel expended the most resources in identifying and investigating the potential claims of the class. *Walker v. Discovery Fin. Servs.*, Case No. 10-cv-6994, 2011 WL 2160889, *3-4 (N.D. Ill. May 26, 2011) (concluding work performed and resources expended by counsel was a decisive factor). Here, members of

the proposed PSC have already invested significant time and resources in developing the *IAB* Cases. They collectively researched TikTok's conduct, vetted class representatives, filed complaints, opposed TikTok's attempt to transfer the *IAB* Cases to the *Biometric Data* MDL, filed a motion to transfer the *IAB* Cases to a new MDL, prepared a joint opposition brief in response to the Court's Order, and retained expert consultants. In sum, the proposed PSC has demonstrated a willingness to jointly dedicate the resources necessary to prosecute this important MDL expeditiously.

## C.  The Proposed PSC Has Extensive Experience Handling Complex Class Actions

Courts also look at counsel's experience litigating similar cases as well as their knowledge of the applicable laws. *See Walker*, 2011 WL 2160889, at *5. Plaintiffs believe that the proposed PSC presents a leadership structure with experience in high-profile, high-stakes, and complex class action litigation that maximizes opportunities for successfully resolving this case. The proposed PSC is also uniquely positioned to prosecute this MDL because it is comprised of members experienced in litigation involving social media applications like TikTok and data privacy litigation.

The proposed PSC has successfully led numerous national consumer class actions, including through trial. Its members bring outstanding reputation and experience which will benefit the putative classes and this Court's oversight of this MDL. Plaintiffs briefly discuss each PSC member below, supplemented by the resumes attached hereto as Exhibits 1-11.

## D.        Experience and Credentials of the Proposed PSC Members

### Roland Tellis, Baron & Budd, P.C. – PSC Chair

Roland Tellis is a Partner in the law firm of Baron & Budd, P.C. where he manages the Firm's Los Angeles Office and is the Chair of the Consumer Class Action Practice Group. Mr.

Tellis has more than 28 years of experience in complex, high-profile litigation helping to recover tens of billions of dollars for plaintiffs and class members.

Mr. Tellis filed the first *IAB Case*, petitioned the JPML for the formation of a new MDL, and led the opposition of TikTok's motion to dismiss. He has helped organize the leadership slate and has received unanimous support to serve as PSC Chair. Mr. Tellis's resume reflects his experience litigating complex class action cases, including his appointment as Lead Counsel in numerous MDLs. Additionally, Mr. Tellis has pursued data privacy litigation against LinkedIn and Google and was appointed to the Plaintiffs' leadership group in *In re: Social Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.*, Case No. 22-md-3047, a mass tort action against TikTok, Facebook and others, involving dangerously addictive social media applications.

Mr. Tellis has been recognized for his leadership and contributions to complex MDLs and class actions generally. He was recently invited to speak at the 2023 MDL Transferee Judges' Conference on a panel called *Resolving MDLs*, and at Duke Law's Bolch Judicial Institute on "*MDL Pre-Trial Issues*" and "*MDL Leadership.*" A copy of Mr. Tellis's resume is attached as Exhibit 1.

### Carey Alexander, Scott+Scott Attorneys at Law LLP

Carey Alexander is a partner in Scott+Scott's Consumer Practice Group. Since joining the bar in 2014, Mr. Alexander's practice has been exclusively focused on litigating high-profile consumer protection and data privacy class actions. Mr. Alexander currently serves as Interim Co-Lead Class Counsel in *Alves v. BJ's Wholesale Club, Inc.*, Case No. 2284CV02509 (Mass. Sup. Ct.) (Krupp, J.) and as part of the appointed leadership group prosecuting *In re: BPS Direct, LLC and Cabela's, LLC Wiretapping Litig.*, Case No. 2:23-md-03074 (E.D. Pa.) (Kearney, J.), both of which assert similar electronic eavesdropping violations under many of the laws at issue

in this action. Mr. Alexander has long engaged with issues relating to new technologies including through service as a representative to the New York City Bar Association's Task Force on Digital Technologies. A copy of Mr. Alexander's resume is attached as Exhibit 2.

### Stephen R. Basser, Barrack, Rodos & Bacine

Stephen R. Basser is a partner with Barrack, Rodos & Bacine. Mr. Basser has served in a leadership role in a variety of cases, including: *In re: McKesson HBOC, Inc., Securities Litig.*, Master File No. 99-cv-20743 (Whyte, J.) (N.D. Cal.), (Co-Lead Counsel resulting in settlement of $1.0425 billion), *In re: Apollo Group, Inc. Securities Litig.*, Master File No. CV-04-2147-PHX (J. Teilborg) (D. Ariz.), (Lead and First Chair Trial Counsel resulting in jury verdict of $145 million), *Castillo v. Costco Wholesale Corp.*, Case No. 2:23-cv-01548-JHC (W.D. Wash.) (Executive Committee), *In re: Lincare Holdings Data Breach Litig.*, Case No. 8:22-cv-01472 (M.D. Fl.) (Executive Committee), *In re: Forefront Dermatology Data Breach Litig.*, Case No. 1:21-cv-00887-1 (E.D. Wis.) (Executive Committee), *In re: Apria Healthcare Data Breach Litig.*, Master File No. 1:23-cv-01003-RLY-KMB (S.D. Ind.) (Executive Committee), and *In re: Shields Health Care Group Data Breach Litig.*, Case No. 1:22-cv-10901 (D. Mass.) (Executive Committee). Significantly, Mr. Basser was instrumental, in the *Anthem Health Data Breach Litigation*, in identifying and developing cyber-expert witnesses and the supporting expert presentation. A copy of Mr. Basser's resume is attached as Exhibit 3.

### Kate M. Baxter-Kauf, Lockridge Grindal Nauen PLLP

Kate M. Baxter-Kauf is a partner at Lockridge Grindal Nauen PLLP. Ms. Baxter-Kauf has deep experience in data breach, antitrust law, business litigation, and securities litigation. For the past several years, she has been on the forefront of cutting-edge cybersecurity and privacy litigation. She has actively litigated the legal and technological issues that will be involved here – wiretap claims and session replay technologies.

8

Ms. Baxter-Kauf is currently appointed as Interim Co-Lead Class Counsel in *In re: BPS Direct, LLC, and Cabela's, LLC Wiretapping Litigation*, Case No. 2:23-md-3074 (E.D. Pa.); *Johnson v. Cornerstone National Insurance Co.,* Case No. 2: 22-cv-04135-WJE (W.D. Mo.) and *Holmes v. Elephant Insurance Co.,* Case No. 3:22-cv-00487 (E.D. Va.). The *BPS* litigation involves session replay technology and wiretap claims. Ms. Baxter-Kauf is also appointed as a pre-approved member of the leadership team in conjunction with Co-Lead Counsel in *In re: Geico Customer Data Breach Litig.*, Case No. 1:21-cv-002210-KAM-SJB (E.D.N.Y). She is a frequent speaker on data breach and privacy issues at conferences across the country. A copy of Ms. Baxter-Kauf's resume is attached as Exhibit 4.

### James E. Cecchi, Carella, Byrne, Cecchi, Brody & Agnello, P.C.

Before entering private practice, James E. Cecchi clerked for the Honorable Nicholas H. Politan in the District of New Jersey and then served as an Assistant United States Attorney ("AUSA") in Newark, New Jersey. As an AUSA, Mr. Cecchi developed skills as an effective trial advocate and as a dogged investigator—skills that have proven immensely valuable in complex MDL cases. Mr. Cecchi's experience as a former Assistant United States Attorney is a distinguishing factor that adds to the already diverse nature of the proposed PSC.

Mr. Cecchi has had the privilege to be in some of the largest national and complex litigations in recent years. His formal leadership and committee roles on behalf of Plaintiffs in these important cases include: Sole Lead Counsel - *In re: American Medical Collection Agency, Inc. Customer Data Security Breach Litig.*, MDL No. 2904 (D.N.J.), a nationwide MDL involving the largest medical data breach in the United States; and Sole Lead Counsel - *In re: Samsung Customer Data Security Breach Litig.*, MDL No. 3055 (D.N.J.), a nationwide MDL involving massive data breach related to highly sensitive personal and electronic information. These appointments reflect the confidence that other courts have expressed regarding Mr.

Cecchi's skills and professionalism in handling large and important litigations. A copy of Mr. Cecchi's resume is attached as Exhibit 5.

### Israel David, Israel David LLC

Israel David has nearly 30 years of experience representing corporations, boards of directors, and nationwide classes in a wide array of civil litigation, with an emphasis on securities, data-privacy, and antitrust cases. Mr. David regularly litigates "bet-the-company" cases through trial and appeal across the United States. Mr. David's experience includes over 25 years (including 17 as a partner) with the elite international law firm Fried, Frank, Harris, Shriver & Jacobson LLP.

Mr. David's career includes experience as Co-Lead Counsel, a member of Plaintiffs' Executive Committees, and in some of the most high-profile class actions in the country, including *In re: American Airlines/JetBlue Antitrust Litig.* (Case No. 22-cv-07374-AMD-TAM) (E.D.N.Y) – Co-Lead Counsel in a high-profile antitrust class action lawsuit against American Airlines and JetBlue Airlines; *Gerber v. Twitter, Inc.* (Case No. 23-cv-00186-KAW) (N.D. Cal.) – Co-Lead Counsel in a data privacy class action lawsuit involving over 200 million Twitter users; and *Tuteur v. Metropolitan Opera Association, Inc.* (Case No. 23-cv-03997-GS) (S.D.N.Y.) – Interim Lead Counsel in a data privacy class action lawsuit involving a data security incident at The Metropolitan Opera in New York City. These appointments reflect judicial trust of Mr. David to successfully litigate complex data privacy cases on behalf of putative classes and class members. A copy of Mr. David's resume is attached as Exhibit 6.

### MaryBeth V. Gibson, Gibson Consumer Law Group, LLC

MaryBeth Gibson has practiced law in Georgia for over thirty years and specializes in class actions involving complex civil litigation, including data privacy litigation, data breach and misuse, consumer fraud, and business torts. Ms. Gibson's experience has earned her leadership

appointments in multiple data breach cases in the health care, financial, and retail industries. Ms. Gibson's experience includes several wiretapping cases throughout the country including, notably, *In re: Marriott Int. Customer Data Breach Sec. Litig.*, where the Court certified Rule 23(b)(3) damages classes and Rule 23(c)(4) issues classes. Ms. Gibson' extensive experience litigating data privacy cases has contributed to the development of data privacy law with respect to pleading and briefing standing, concrete harm and damages.

Ms. Gibson serves as Chair for the Consumer Privacy/Data Breach Litigation Group for the American Association for Justice and Co-Chair of the Georgia State Bar e-Discovery and Use of Technology Section, and as a member of Working Group 11 on Data Security and Privacy regarding Liability on Data Security and Privacy in Healthcare and Exploring Greater Efficiencies in Data Breach and Privacy Class Action Litigation. A copy of Ms. Gibson's resume is attached as Exhibit 7.

### Tyler S. Graden, Kessler Topaz Meltzer & Check, LLP

Tyler S. Graden is a partner in Kessler Topaz Meltzer & Check's Consumer Protection and Data Privacy practice groups. Mr. Graden has over a decade of experience litigating complex class actions involving state and federal law across the country. Mr. Graden is currently leading litigation on behalf of a putative class of plaintiffs in *Doe v. Kaiser Foundation Health Plan, Inc.*, Case No. 3:23-cv-02865 (N.D. Cal.), which alleges the unlawful use of session replay and other eavesdropping technology under federal law, as well as state statutory and common law. Mr. Graden is also currently working under the direction of co-lead counsel on behalf of the local government and school district plaintiffs in *In re: Social Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.*, Case No. 22-md-3047.

Mr. Graden has also served as a member of several trial teams that have tried class actions to jury verdict, including a Rule 23(c)(4) issues class trial in multidistrict litigation (*In re: FCA US*

*LLC Monostable Electronic Gearshift Litig.*, Case No. 16-md-2744 (E.D. Mich.)). A copy of Mr. Graden's firm resume is attached hereto as Exhibit 8.

### John Herman, Herman Jones LLP

John Herman has spent his thirty plus year career handling complex technology disputes. Mr. Herman has built a team of technology-savvy attorneys and staff to work on cases such as this one. The prospective class members will greatly benefit from Mr. Herman's experience in dealing with the complex technological issues that will likely arise in this case.

Mr. Herman and his firm have been appointed to leadership positions in a number of significant technology matters including, but not limited to: *In re: Amazon.com, Inc. Shareholder Derivative Litig.*, Lead Case No. 2:22-cv-00559-JCC (W.D. Wash.) (Co-Lead Counsel in shareholder derivative case arising out of biometric privacy matters) and *In re: Google Digital Advert. Antitrust Litig.*, MDL No. 1:21-md-03010-PKC (S.D.N.Y.) (Herman Jones filed first antitrust suit against Google for its ad technology monopoly).

These appointments reflect judicial trust of Mr. Herman, his experience, and ability to successfully litigate complex data privacy cases on behalf of putative classes and class members. A copy of Mr. Herman's resume is attached as Exhibit 9.

### Michael R. Reese, Reese LLP

Michael R. Reese is the founding and managing partner of Reese LLP. Prior to beginning private practice in 2000, Mr. Reese was an assistant district attorney in the New York County District Attorney's Office where he prosecuted and tried violent felony and white collar crimes.

Mr. Reese is a member of both the Trial and General Bars of the Northern District of Illinois. Mr. Reese has been appointed to lead numerous class actions and MDLs, including two recent examples in the Northern District of Illinois: *Seresto Flea and Tick Collar Marketing, Sales Practices and Prods. Liab. Litig.*, MDL 3009, Master Case No. 1:21-cv-04447 (N.D. Ill.)

12

(Co-Lead Counsel in class action that settled for $15 million) and *In re: Fairlife Milk Products Marketing and Sales Practices Litig.*, MDL 2909, Master Case No. 1:19-cv-03924 (N.D. Ill.) (Co-Lead Counsel in MDL that settled for $21 million).

As class counsel, Mr. Reese has successfully litigated numerous class actions and recovered hundreds of millions of dollars as well as significant injunctive relief for consumers. Finally, Mr. Reese also is an accomplished appellate lawyer, having argued successfully before numerous appellate courts, including, but not limited to, the Seventh Circuit Court of Appeals. *See, e.g.*, *Tri-State Water Treatment, Inc. v. Bauer*, 845 F.3d 350 (7th Cir. 2017). A copy of Mr. Reese's resume is attached as Exhibit 10.

### Bryan P. Thompson, Chicago Consumer Law Center, P.C.

Bryan P. Thompson has significant experience in class action and complex consumer litigation gained by dedicating his entire career to representing consumers in financial services, consumer protection, and data privacy litigation, typically against much larger companies with greater resources.

Mr. Thompson has been counsel or lead counsel in both individual and class actions filed under the Fair Debt Collection Practices Act, Fair Credit Reporting Act, Illinois Consumer Fraud Act, and other federal and state consumer protection statutes. For example, Mr. Thompson was appointed Lead Counsel in *Badillo v. Consumer Protection Legal Center*, Case No. 2020-CV-2962 (Cir. Ct. Cook County), resulting in one of the first class-wide settlements under the Illinois Debt Settlement Consumer Protection Act. *Id*. Mr. Thompson also worked closely with the Plaintiffs' Steering Committee in *In re: LastPass Data Security Incident Litig.,* Case No. 1:22-CV-12047-PBS (D. Mass.).

Mr. Thompson is a Certified Information Privacy Professional (CIPP/US) recognized by the International Association of Privacy Professionals, often considered the gold standard in

13

privacy certification. Mr. Thompson also frequently presents continuing legal education courses and lectures on consumer law and privacy topics and has held leadership positions in legal and consumer law focused groups. A copy of Mr. Thompson's resume is attached as Exhibit 11.

### E. The Proposed PSC Will Commit the Time and Resources Necessary to Obtain the Best Results for the Putative Classes

To date, the proposed PSC have demonstrated this commitment, which extends beyond their financial undertakings. The proposed PSC can and will devote the attorneys, staff, and financial resources necessary to achieve the best possible result for the putative class, having done so in numerous other complex class actions. Indeed, in successfully prosecuting high stakes, resource-intensive class actions throughout the country, the proposed PSC has demonstrated an ability and willingness to dedicate substantial resources to vigorously prosecute this case without delay.

### F. The Proposed PSC is Committed to Diversity

The court may also consider whether counsel "captures the benefits of diversity of experience, skills, and backgrounds." Bolch Judicial Inst., *Guidelines and Best Practices for Large and Mass-Tort MDLs*, DUKE LAW SCHOOL, 38 (2d ed. 2018). In this regard, the Bolch Judicial Institute recommends:

> [In] appointing a leadership team, courts should be mindful of the benefits of diversity of all types. In particular, the strong repeat player dynamic that has historically existed reduces fresh outlooks and innovative ideas, and increases pressure to go along with the group and conform, all of which may negatively impact the plaintiffs whose cases are being pursued in the MDL. At the same time, leadership needs repeat players who understand the ropes. Thus a balanced team, with diversity of skills, expertise, prior casework and role, and demographics, should be sought.

Bolch Guidelines at 37.

The proposed PSC represents the diversity of legal talent available in this country. They reflect a diversity of skills and expertise, as well as demographics, including gender, age, race,

14

and geography. In sum, the proposed PSC reflects a rich tapestry of skills that will lend unique perspective and insight in the representation of the putative classes.

### G. The Proposed PSC is Structured to Ensure Efficiency and to Avoid Duplicative Efforts

This Court has previously recognized that appointment of a large leadership slate is not an impediment to efficiency or economy. *See In re: Abbott Laboratories, et al.,* Case Management Order No. 2, ECF No. 109 at 3. In *Abbott*, the Court conditionally appointed 26 attorneys to leadership, including five co-lead counsel, five executive committee members, 15 steering committee members, and one liaison counsel. *Id*. at 3-4. Although the Court expressed concern that the involvement of 26 attorneys could cause duplication of efforts, the leadership group identified the distinct roles to be played by the various attorneys. The proposed PSC here is smaller than the leadership slate in *Abbott* but has nevertheless outlined for the Court how the proposed PSC will be organized to ensure efficiency and to avoid duplicative efforts.

### IV. CONCLUSION

Plaintiffs respectfully request that the Court grant this motion and appoint the proposed Plaintiffs' PSC to litigate the *IAB* Cases on behalf of the putative classes.

Dated: February 21, 2024     By:  */s/ Roland Tellis*
Roland Tellis
rtellis@baronbudd.com
**BARON & BUDD, P.C.**
15910 Ventura Blvd., Suite 1600
Encino, CA 91436
Telephone: (818) 839-2333

Stephen R. Basser
sbasser@barrack.com
**BARRACK, RODOS & BACINE**
One America Plaza
600 West Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800

15

James E. Cecchi
jcecchi@carellabyrne.com
**CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, NJ 07068
Telephone: (973) 993-700

Bryan P. Thompson
bryan.thompson@cclc-law.com
**CHICAGO CONSUMER LAW CENTER, P.C.**
650 Warrenville Road, Suite 100
Lisle, IL 60532
Telephone: (312) 584-2614

MaryBeth V. Gibson
marybeth@gibsonconsumerlawgroup.com
**GIBSON CONSUMER LAW GROUP, LLC**
4729 Roswell Road
Suite 208-108
Atlanta, GA 30342
Telephone: (678) 642-2503

John Herman
jherman@hermanjones.com
**HERMAN JONES LLP**
3424 Peachtree Road NE
Suite 1650
Atlanta, GA 30326
Telephone: (404) 504-6555

Israel David
Israel.david@davidllc.com
**ISRAEL DAVID LLC**
17 State Street
Suite 4010
New York, NY 10004
Telephone: (212) 739-0622

Tyler S. Graden
tgraden@ktmc.com
**KESSLER, TOPAZ, MELTZER & CHECK, LLP**
280 King of Prussia Road

Radnor, PA 19087
Telephone: 610-667-7706

Kate M. Baxter-Kauf
kmbaxter-kauf@locklaw.com
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Avenue South
Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900

Michael R. Reese
mreese@reesellp.com
**REESE LLP**
100 West 93rd Street
Sixteenth Floor
New York, NY 10025
Telephone: (212) 643-0500

Carey Alexander
calexander@scott-scott.com
**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Ave., 17th Floor
New York, NY 10169
Telephone: (212) 223-6444

*Counsel for Plaintiffs and the Putative Classes*